TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2091/0647/0627
    Facsimile: (213) 894-7631
    E-mail: Mack.Jenkins@usdoj.gov
         Veronica.Dragalin@usdoj.gov
         Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>JOSE LUIS HUIZAR, et al.<br><br>      Defendants. | No. CR 20-326(A)-JFW<br><br>GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS DAE YONG LEE, 940 HILL, AND SHEN ZHEN NEW WORLD I, LLC'S MOTIONS TO SEVER (CR 200 AND CR 201)<br><br>Date:    October 15, 2021<br>Time:    8:00 a.m.<br>Location: Courtroom of the Hon.<br>          John F. Walter |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins,

Veronica Dragalin, and Melissa Mills, hereby files its Omnibus[1] Opposition to defendants DAE YONG LEE and 940 HILL's Motion to Sever (CR 200) and defendant SHEN ZHEN NEW WORLD I, LLC's Motion to Sever (CR 201).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 7, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


/S/
_____
MACK E. JENKINS
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] In order to make the Court's review more efficient, the government responds to both severance motions in this single filing, which does not exceed the 25-page limit.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................1

TABLE OF AUTHORITIES...............................................1

I.    INTRODUCTION.................................................1

II.   FACTUAL BACKGROUND..........................................2

III.  ARGUMENT....................................................5

      A.    Legal Standard........................................5

      B.    Defendants Fail to Meet the Heavy Burden of Showing
            Undue Prejudice Warranting Severance..................6

            1.    A Joint Trial Where the Indictment Charges All
                  Defendants in a Single Honest Services Scheme Is
                  Analogous to a Conspiracy Case..................8

            2.    The Court's Jury Instructions Will Mitigate
                  Against Any Undue Prejudice....................16

            3.    Different Degrees of Culpability Do Not Require
                  Severance, Particularly Where Risk of Prejudice
                  Is Slight......................................20

      C.    A Joint Trial Will Promote Efficiency and Serve the
            Interests of Justice.................................24

IV.   CONCLUSION.................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Bourjaily v. United States,
    483 U.S. 171 (1987) ....................................... 10

Bruton v. United States,
    391 U.S. 123 (1968) ....................................... 16

Richardson v. Marsh,
    481 U.S. 200 (1987) ..................................... 5, 24

Robinson v. United States,
    33 F.2d 238 (9th Cir. 1929) ............................... 8

Sendejas v. United States,
    428 F.2d 1040 (9th Cir. 1970) ............................ 11

United States v. Blankenship,
    382 F.3d 1110 (11th Cir. 2004) ........................... 14

United States v. Boone,
    628 F.3d 927 (7th Cir. 2010) .................... 10, 11, 14

United States v. Burke,
    789 F. Supp. 2d 395 (E.D.N.Y. 2011) ..................... 14

United States v. DeRosa,
    637 F.2d 889 (9th Cir. 1982) .......................... 20, 21

United States v. DiNome,
    954 F.2d 839 (2d Cir. 1992) .............................. 13

United States v. Escalante,
    637 F.2d 1197 (9th Cir. 1980) .......................... 6, 15

United States v. Fernandez,
    388 F.3d 1199 (9th Cir. 2004) .......................... 9, 15

United States v. Gilbert,
    504 F. Supp. 565 (S.D.N.Y. 1980) ........................ 20

United States v. Hanley,
    190 F.3d 1017 (9th Cir. 1999) ........................... 16

United States v. Hernandez-Orellana,
    539 F.3d 994 (9th Cir. 2008) ........................... 7, 20

United States v. Lewis,
    787 F.2d 1318 (9th Cir. 1986) ........................... 17

United States v. Lothian,
    976 F.2d 1257 (9th Cir. 1992) .......................... 8, 11

United States v. Marcello,
    731 F.2d 1354 (9th Cir. 1984) ............................. 19

United States v. McDonald,
    576 F.2d 1350 (9th Cir. 1978) ............................. 6

United States v. Miller,
    874 F.2d 1255 (9th Cir. 1989) ............................. 17

United States v. Nelson,
    137 F.3d 1094 (9th Cir. 1998) ............................. 16

United States v. Sampol,
    636 F.2d 621 (D.C. Cir. 1980) ......................... 13, 17

United States v. Shkreli,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ....................... 20

United States v. Stapleton,
    293 F.3d 1111 (9th Cir. 2002) ............................. 9

United States v. Sullivan,
    522 F.3d 967 (9th Cir. 2008) ........................... 7, 10

United States v. Van Cauwenberghe,
    827 F.2d 424 (9th Cir. 1987) ........................ 16, 19-20

United States v. Vasquez-Velasco,
    15 F.3d 833 (9th Cir. 1994) ............................... 20

United States v. Weatherspoon,
    410 F.3d 1142 (9th Cir. 2005) ............................. 17

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988) .......................... 11-12

Zafiro v. United States,
    506 U.S. 534 (1993) ........................... 5, 15, 18-19

**Statutes**

18 U.S.C. § 666 ............................................. 2

18 U.S.C. § 1001 ............................................ 2

18 U.S.C. § 1014 .......................................... 2-3

18 U.S.C. § 1341 ............................................ 1

18 U.S.C. § 1343 ............................................ 1

18 U.S.C. § 1519 ............................................ 2

18 U.S.C. § 1952 ............................................ 2

18 U.S.C. § 1956 .............................................. 2

18 U.S.C. § 1962 .............................................. 1

26 U.S.C. § 7201 .............................................. 3

31 U.S.C. § 5324 .............................................. 2

**Other**

Fed. R. Evid. 401 ............................................ 11

Fed. R. Evid. 801............................................ 10, 12

Fed. R. Crim. Proc. 14 ................................... 5, 6, 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        This case is about public officials commodifying their powerful

4   positions with the City of Los Angeles due to their greed for money

5   and power. It is also about wealthy businesspersons who fed this

6   appetite by illicitly purchasing favored treatment from these

7   officials to fuel their own greed while in pursuit of lucrative

8   advantages during a booming development era in downtown Los Angeles.

9   The First Superseding Indictment ("FSI") charges all defendants with

10   a scheme to defraud the City of Los Angeles and its citizens of their

11   right to the honest services of their public officials, in violation

12   of 18 U.S.C. §§ 1341, 1343, and 1346.  (CR 71, FSI ¶¶ 44-46, Counts

13   2-17.)  The FSI also charges defendants JOSE HUIZAR and RAYMOND CHAN

14   (the public officials) with RICO conspiracy in violation of 18 U.S.C.

15   § 1962(d).  (FSI Count 1.)  While defendants WEI HUANG, SHEN ZHEN NEW

16   WORLD I, LLC ("SZNW"), DAE YONG LEE ("LEE"), and 940 HILL, LLC ("940

17   HILL") (collectively, the "Developer Defendants") are not charged in

18   Count One, the alleged means and methods of the scheme to defraud are

19   nearly identical to the means by which the object of the RICO

20   conspiracy was to be accomplished. (Compare FSI ¶ 45 with FSI ¶ 42.)

21   The honest services scheme and the RICO conspiracy scheme cover the

22   same time-period,[1] and implicate the same public officials,

23   consultants, and developers.  (FSI ¶¶ 40, 44.)  Thus, at trial, proof

24   of the overt acts of the RICO conspiracy will also prove the honest

25   services scheme.  Although the Developer Defendants are not charged

26

27 ───────────────

28        [1] Contrary to defendant SZNW's claim that the "evidence spans
approximately 15 years" (CR 201 at 20), the alleged honest services
scheme and RICO conspiracy span less than 8 years.

with the same substantive violations as defendant HUIZAR, defendant HUIZAR committed additional crimes in furtherance of and to conceal the honest services scheme he executed with the Developer Defendants.

As such, much of the most compelling evidence at trial will be admissible against all four defendants who participated in a joint honest services scheme.[2]  Nevertheless, the Developer Defendants have filed two motions to sever (CR 200 and CR 201), requesting separate trials from the very person they both are alleged to have bribed and both for the same general purpose.  Because the Developer Defendants have failed to overcome the high burden of showing undue prejudice warranting severance, this Court should deny the severance motions. A joint trial will promote efficiency for the Court, witnesses, and parties and serve the interests of justice.

**II.  FACTUAL BACKGROUND**

In addition to the joint honest services scheme, each defendant is charged with additional substantive crimes that all flow from and are related to the central underlying honest services scheme, which essentially operated as a bribery pay-to-play scheme.  These additional crimes include violations of other bribery-related laws, such as Federal Program Bribery in violation of 18 U.S.C. § 666 (charged against all defendants), and Travel Act in violation of 18 U.S.C. § 1952(a)(3) (charged against defendants HUIZAR, HUANG, and SZNW).  They also include crimes relating to the co-schemers' efforts

---

[2] Because defendant LEE is the corporate representative of defendant 940 HILL, LLC and represented by the same counsel, those two defendants at trial will be treated as one and the same. Defendants HUIZAR, CHAN, and SZNW are the additional three defendants.  If defendant HUANG, who is currently a fugitive, is apprehended before trial, the evidence against him and SZNW will be identical, as defendant HUANG was the Chairman and agent of SZNW.

to conceal their bribery scheme, including Obstruction of Justice in violation of 18 U.S.C. § 1519 (charged against defendants LEE and HILL), False Statements in violation of 18 U.S.C. § 1001 (charged against defendants HUIZAR and CHAN), Money Laundering in violation of 18 U.S.C. § 1956, Structuring in violation of 31 U.S.C. § 5324, False Statements to a Financial Institution, in violation of 18 U.S.C. § 1014, and Tax Evasion in violation of 26 U.S.C. § 7201 (charged against defendant HUIZAR only).

Defendant HUIZAR's additional crimes committed in furtherance of and to conceal the honest services scheme implicate the Developer Defendants directly.  For example, defendant HUANG, Chairman and President of defendant SZNW, is alleged to have directly participated in the L.A. Grand Hotel Bribery Scheme (O.A. 1-84), and is charged, along with defendant SZNW, with substantive crimes arising out of that scheme (Counts 2-4, 18-21, 23).  The FSI alleges and specifically mentions defendant HUANG in various other acts in furtherance of the scheme including defendant HUIZAR's solicitation of campaign contributions from developers, including from defendant HUANG (O.A. 351), defendant HUIZAR's solicitation of contributions to a high school, including from defendant HUANG (O.A. 353), defendant HUIZAR's money laundering and structuring arising out of a trip to Australia with defendant HUANG (O.A. 361, 365, 366), the co-schemers' concern about detection on defendant HUANG's private jet flights to Las Vegas (O.A. 429-433), defendant HUIZAR's concealment of a large cash sum at his residence, including cash accepted from defendant HAUNG (O.A. 445), defendant HUIZAR's witness tampering relating to defendant HUANG (O.A. 446), and defendant CHAN's false statements regarding his knowledge of the corrupt relationship between

3

 1 | defendants HUANG and HUIZAR (O.A. 452).

 2 |     The joint trial in this case would include four defendants: two
 3 | public officials and two developers.  While the honest services
 4 | scheme implicated several development projects in downtown Los
 5 | Angeles, the scheme operated in the same manner and had, as defendant
 6 | SZNW recognizes, "a single common denominator: a connection to JOSE
 7 | HUIZAR."  (CR 201 at 1.)  Specifically, the FSI alleges that the RICO
 8 | enterprise and honest services scheme implicated four major
 9 | development projects in defendant HUIZAR's district, CD-14: the L.A.
10 | Grand Hotel Project, the 940 Hill Project, the Luxe Hotel Project,
11 | and Project M.  At trial, the government will prove how the City
12 | development and approval process operated, the powerful role
13 | defendant HUIZAR played both on the City Council and as the Chair of
14 | the Planning and Land Use Management Committee, and the way in which
15 | public officials (defendants HUIZAR and CHAN and their co-schemers)
16 | were able to abuse the City process to illicitly solicit and accept
17 | benefits from consultants and developers in exchange for their
18 | agreement to commit official acts on development projects, including
19 | on an "as needed" basis.  Percipient witnesses, cooperators, law
20 | enforcement agents, and experts will testify about how the scheme
21 | operated to the benefit of all four defendants.

22 |     The government will also present evidence of the benefits
23 | offered and provided by various developers and consultants, including
24 | the Developer Defendants, in exchange for official acts and
25 | agreements to commit official acts to advantage their respective
26 | development projects.  Because bribery requires a *quid pro quo*, proof
27 | of the corrupt intent on both sides of the equation will be
28 | interrelated, meaning that evidence of the public officials' corrupt

intent is probative of the developers' corrupt intent and vice versa. As such, this evidence will be admissible, relevant, and probative against all four defendants who participated in the charged joint honest services scheme.

## III. ARGUMENT

### A. Legal Standard

As the Supreme Court has recognized, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Joint trials "play a vital role in the criminal justice system." Richardson v. Marsh, 481 U.S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id. at 210. "For these reasons, [courts] repeatedly have approved of joint trials." Zafiro, 506 U.S. at 537. "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 538-539.

The Supreme Court has also recognized that "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540. In Richardson v. Marsh, the Supreme Court observed:

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and

> randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit.

481 U.S. at 209-10.

Under Rule 14, the defendant has the burden of proving "clear," "manifest," or "undue" prejudice from a court's denial of a severance motion and the resulting joint trial.  United States v. McDonald, 576 F.2d 1350, 1355 (9th Cir. 1978).  A defendant:

> must show more than that a separate trial would have given him a better chance for acquittal.  He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.

United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980).  "In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.  Clearly, this is not an easy burden to meet."  Id. (internal citations omitted).

### B. Defendants Fail to Meet the Heavy Burden of Showing Undue Prejudice Warranting Severance

The Ninth Circuit has developed a four-part test to aid the district court's determination regarding severance, including: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendant] could show, with some particularity, a risk that the joint trial would compromise a

6

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008). "The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury." United States v. Sullivan, 522 F.3d 967, 981-82 (9th Cir. 2008).

As discussed below, each of the four factors supports a joint trial here. As to the first and third factors, the joint trial in this case would include four defendants who are all charged in the exact same honest services bribery scheme stemming from their similar conduct involving the same former City Councilmember seeking similar illicit favors. Although certain of the evidence and the legal concepts in this case are arguably complex, the evidence and legal concepts all stem from the central and commonly understood crime of bribery and are well within the competence of an ordinary juror. A jury may reasonably be expected to collate and appraise the individual evidence against each defendant. As to the second factor, this Court's diligent and tailored jury instructions on the limited purposes for which certain evidence may be used, both during trial and at the conclusion of evidence, will sufficiently mitigate against any unfair prejudice. As to the fourth factor, there is no particular or credible risk that a joint trial of the Developer Defendants alongside the public officials that each schemed to bribe would compromise any specific trial right or prevent the jury from making a reliable judgment about guilt or innocence.

1          1.   A Joint Trial Where the Indictment Charges All
                Defendants in a Single Honest Services Scheme Is
2               Analogous to a Conspiracy Case

3          While the Developer Defendants recognize that joint trials are

4     particularly appropriate where co-defendants are charged with

5     conspiracy, defendants in both motions overlook a fundamental flaw in

6     their argument that the absence of a charged conspiracy in this case

7     will lead to a spillover of inadmissible evidence and therefore

8     warrants separate trials.  See, e.g., CR 200 at 1, 13; CR 201 at 17.

9     Specifically, all defendants in this case are charged in a single

10    honest service bribery scheme, alleged to have operated in the same

11    way, which makes this case analogous to a conspiracy case, including

12    for purposes of a severance analysis.

13         The Ninth Circuit has long recognized that "mail and wire fraud

14    are treated like conspiracy in several respects.  Similar evidentiary

15    rules apply.  Just as acts and statements of co-conspirators are

16    admissible against other conspirators, so too are the statements and

17    acts of co-participants in a scheme to defraud admissible against

18    other participants."  United States v. Lothian, 976 F.2d 1257, 1262

19    (9th Cir. 1992) (citing Robinson v. United States, 33 F.2d 238, 240

20    (9th Cir. 1929) ("[I]f a conspiracy exists in fact [as when a scheme

21    to defraud is shared by several], the rules of evidence are the same

22    as where a conspiracy is charged.") (alterations in original)).

23    The law is also well-settled that co-schemers are liable for the acts

24    of other participants in a scheme to defraud to the same extent as

25    they would be in a charged conspiracy.  See Lothian, 976 F.2d at 1263

26    ("Like co-conspirators, knowing participants in the scheme are

27    legally liable for their co-schemers' use of the mails or wires.")

28    (cleaned up); United States v. Stapleton, 293 F.3d 1111, 1120 (9th

Cir. 2002) ("[T]he substantive law of this circuit is that co-schemer liability for mail or wire fraud does not require proof of a conspiracy.  We have held that co-schemer liability is possible for knowing participants in the fraudulent scheme for which the mails or wires were used.") (charges included only substantive fraud offenses and no conspiracy); see also Ninth Circuit Model Jury Instruction No. 8.122 ("If you decide that the defendant was a member of a scheme to defraud and that the defendant had the intent to defraud, the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.").

When viewed through this lens, the same rationale that favors joint trials in conspiracy cases applies to this case, which charges all defendants in a single honest services bribery scheme.  See, e.g., United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004) ("a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials").

A central issue at trial will be whether the Developer Defendants had the requisite corrupt intent in providing benefits to defendant HUIZAR.  That corrupt intent will be informed by whether defendant HUIZAR illicitly solicited bribes in return for his official acts.  "[B]ecause a person's state of mind is rarely susceptible of proof by direct evidence, specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence."

1  United States v. Boone, 628 F.3d 927, 936 (7th Cir. 2010) (cleaned

2  up); see also United States v. Sullivan, 522 F.3d 967, 974 (9th Cir.

3  2008) ("It is settled law that intent to defraud may be established

4  by circumstantial evidence.  Intent may be inferred from

5  misrepresentations made by the defendants, and the scheme itself may

6  be probative circumstantial evidence of an intent to defraud.")

7  (cleaned up).

8                    a.   Defendants' Prejudice Analysis Is Fundamentally
                          Flawed
9

10      Based on the above legal framework, defendant SZNW is incorrect

11 in arguing that statements made by co-schemers HUIZAR and George

12 Esparza in furtherance of the bribery scheme are "inapplicable to and

13 inadmissible against SZNW."  CR 201 at 18-19.  As defendant SZNW

14 recognizes, the co-schemers' "attempts to conceal their identities

15 and/or avoid contact with law enforcement reflect an awareness of

16 wrongdoing."  Id. at 19.  This is directly relevant to the Developer

17 Defendants' intent during their interactions with these co-schemers.

18 That is, the jury can properly infer a nefarious and corrupt

19 relationship between defendant HUIZAR/Esparza and defendant SZNW

20 based on the co-schemers' statements and conduct, which are thus

21 admissible against defendant SZNW.  See, e.g., Boone, 628 F.3d at 935

22 (evidence of co-schemers' conduct "was directly relevant to establish

23 a critical component of the scheme" and therefore admissible as

24 "direct evidence of the offense [theft of honest services]" and to

25 establish defendant's knowledge).  The admission of co-conspirator

26 statements pursuant to Federal Rule of Evidence 801(d)(2)(E) requires

27 only that: (1) the declaration was made during the life of a

28 conspiracy; (2) it was made in furtherance of the conspiracy; and (3)

                                      10

there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it. See Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987). The defendant need not be present at the time the co-conspirator made the statement. Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."). As articulated above, these same rules apply to co-schemers. See, e.g., Lothian, 976 F.2d 1257, 1262.

For the same reasons, defendant LEE is incorrect in arguing that "the post hoc recordings of Kim and Mr. Lee, and any circumstantial evidence regarding the specifics of the alleged payment from Mr. Lee's perspective (e.g., what he did or did not tell others, whether and how he accounted for it, etc.), shed no light on Huizar's knowledge or intent." CR 200 at 14. Defendant LEE's statements in furtherance of the scheme -- whether during the scheme or "post hoc" --- and his conduct in attempting to conceal the bribe payment, are all directly relevant to and thus admissible against defendant HUIZAR. See United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) (admitting co-conspirator statements made to informant related to concealment of the conspiracy). This is because that evidence makes it more probable that the $500,000 cash payment by defendant LEE was intended as a bribe to defendant HUIZAR and co-schemer Esparza needing concealment and shady accounting rather than a legitimate business transaction. See Fed. R. Evid. 401; Boone, 628 F.3d at 937 ("[e]ven evidence unrelated to [defendant] directly was

relevant in that it showed that the dealings regarding that property were not routine").

Although not charged in the instant indictment, Justin Kim is a co-schemer in the 940 Hill Bribery Scheme and pled guilty to the same before this Court.  Thus, defendant LEE's statements to Kim in furtherance of concealing the scheme are admissible against (co-schemer) defendant LEE and (co-schemer) defendant HUIZAR, as are defendant HUIZAR's statements to Kim against defendant LEE.  As a co-schemer, defendant LEE's statements to non-schemers in furtherance of the scheme are also admissible against defendant HUIZAR.  See United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988) (co-conspirator statements need not be made to another member of the conspiracy in order to be admissible under Federal Rule 801(d)(2)(E)).

Accordingly, Ninth Circuit law on co-schemer liability and the resulting evidence rules make much of the evidence admissible against all of the co-schemers who participated in the scheme.  Thus, for example, all of defendant HUIZAR's statements and conduct in furtherance of the L.A. Grand Hotel Bribery Scheme is admissible against defendant SZNW, including defendant HUIZAR's statements to co-schemer Esparza (O.A. 429-433), his efforts to conceal the bribe payments he received by smuggling Australian cash into the country (O.A. 361-366, Counts 35-36), laundering cash from defendant HUANG through his family members (O.A. 367-400, Counts 31-34), failing to report the benefits on Forms 700 and tax returns (O.A. 437-444, Count 41), stashing cash at his residence (O.A. 445), and failing to disclose defendant HUANG's purported "loan" on his mortgage application (Count 37).  Defendant HUIZAR's attempted witness

tampering of co-schemer Esparza with respect to defendant HUANG (O.A. 446-447) is also admissible against defendant SZNW.  In addition, defendant HUIZAR's conduct in soliciting campaign contributions from defendant HUANG (O.A. 351) and contributions to High School A from defendant HUANG (O.A. 353) as part of the established pay-to-play scheme, is admissible against defendant SZNW.  Similarly, defendant CHAN's false statements to conceal the L.A. Grand Hotel Bribery Scheme are admissible against defendant SZNW (O.A. 452, Count 39).  Thus, while defendant SZNW mistakenly points to "money laundering, loan fraud, tax evasion, obstruction of justice, witness tampering, and false statements to the government" as crimes charged that do not "directly apply to SZNW" (CR 201 at 6), defendant SZNW fails to recognize the proper legal standard for admissibility.  Co-schemers' conduct giving rise to these additional charges flow from the underlying L.A. Grand Hotel Bribery Scheme, and they demonstrate an effort to conceal the bribery scheme by co-schemers; this evidence is therefore admissible against defendant SZNW.  Similarly, defendant HUIZAR's false statements attempting to conceal his participation in the 940 Hill Bribery Scheme (Count 40) with defendants LEE and 940 Hill are admissible against defendants LEE and 940 HILL.

> b.  *Defendants' Case Citations on Prejudice Have No Resemblance to the Instant Matter*

This case is readily distinguishable from the cases the Developer Defendants rely on to support severance, where defendants faced joint trials on crimes that were drastically different from each other (as opposed to here where they are not dissimilar and instead linked by the thread of a common scheme, common co-schemer, and common illegal conduct).  For example, United States v. Sampol,

13

on which both Developer Defendants rely (see CR 200 at 9, CR 201 at 19), involved "a prosecution arising out of assassination of the former Chilean ambassador to the United States and an American associate, [where] seven defendants were charged with conspiracy to murder foreign official, murder of foreign official, first-degree murder, and murder by use of explosives to blow up a vehicle engaged in interstate commerce." 636 F.2d 621 (D.C. Cir. 1980).  One defendant "was indicted on two counts of making false statements to a grand jury, and one count of misprision of a felony.  He was not alleged to have been a member of the conspiracy to kill Orlando Letelier, nor to have participated in the murders in any way."  Id. at 642.  United States v. DiNome, on which defendant LEE relies (CR 200 at 9), involved two defendants who were convicted only of mail and wire fraud after a joint trial with co-defendants charged with RICO, "including vicious murders, loansharking, auto theft, pornography, and firearms trafficking." 954 F.2d 839, 844 (2d Cir. 1992).  The other cases on which defendants rely involved similar egregious circumstances and are similarly inapt to the honest services bribery scheme here.  See United States v. Burke, 789 F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (defendant charged with witness tampering was facing trial with co-defendants "charged with participating in comparatively violent criminal acts, including three murders, several robberies and assaults as predicate acts of an alleged RICO conspiracy spanning three decades"); United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004) (noting that severance is mandated where "gruesome evidence against one defendant overwhelms the de minimus evidence against the co-defendant(s)") (citation omitted).

14

1   While the FSI alleges additional conduct related to the pay-to-

2   play bribery scheme by defendant HUIZAR and crimes against defendant

3   HUIZAR arising out of his efforts to conceal the pay-to-play scheme

4   in which the Developer Defendants were active and charged

5   participants, the additional crimes are not of a "provocative nature"

6   and do not implicate "gruesome evidence" of murders, like in the

7   cases relied on by defendants and whose courts cited such

8   inflammatory facts as the basis to sever.  There is plainly no such

9   inflammatory imbalance of evidence improperly tilting the scales

10  here.  Instead, additional evidence of defendant HUIZAR's corrupt

11  solicitation of additional bribes from other developers will be

12  proper for the jury to consider against the Developer Defendants

13  because it demonstrates the manner in which the scheme operated.

14  See, e.g., Boone, 628 F.3d at 936 ("Evidence that similarly-bold

15  requests were made by [a co-schemer] and members of her office to

16  other persons at their initial contacts with the office was relevant

17  to demonstrate the manner in which the scheme operated, and to

18  establish that [defendant], as housing coordinator, had knowledge of

19  that scheme and acted in furtherance of it.").  While some of the

20  evidence pertaining to separate components of the scheme may not

21  directly implicate the Developer Defendants (e.g., Project M Bribery

22  Scheme, Luxe Hotel Bribery Scheme, Businessperson A Schemes), this

23  evidence is of the same nature and character as the crimes charged

24  against the Developer Defendants and will not provoke an improper

25  emotional response from the jury.  Simply put, the additional

26  allegations against co-schemer HUIZAR do not present a risk of undue

27  prejudice warranting separate trials for the Developer Defendants.

28

If the Court concludes that any particular evidence pertaining to the honest services bribery scheme is unduly prejudicial to the Developer Defendants, this Court is capable of crafting, with the aid of the parties, instructions to assist the jury in compartmentalizing the evidence, which is the standard and preferred practice in such isolated scenarios. As in most cases, the "drastic measure[]" of severance is not required here, where jury instructions will "suffice to cure any risk of prejudice." See Zafiro, 506 U.S. at 537.

### 2. The Court's Jury Instructions Will Mitigate Against Any Undue Prejudice

"The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." Escalante, 637 F.2d 1197, 1201. "Generally, when evidence is heard by the jury that ... is applicable only to limited defendants or in a limited manner, a cautionary instruction from the judge is sufficient to cure any prejudice to the defendant." Id. The Ninth Circuit has "repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." Fernandez, 388 F.3d 1199, 1243. Thus, a defendant "seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." United States v. Hanley, 190 F.3d 1017, 1027 (9th Cir. 1999) (quoting United States v. Nelson, 137 F.3d 1094, 1108 (9th Cir.)). For example, in United States v. Van Cauwenberghe, the defendant argued "that he suffered from aspersions of guilt by association with the more

16

culpable [co-defendant]." 827 F.2d 424, 432 (9th Cir. 1987).  The
Ninth Circuit rejected that argument, noting that "[w]hen, as here,
the district court instructed the jury to consider the guilt or
innocence of each co-defendant separately, in light of the evidence
against that defendant, the jury is presumed to have obeyed." Id.
(citations omitted).  Defendants offer nothing that contravenes this
standard Ninth Circuit guidance regarding potential spillover
evidence here.

Instead, defendants again rely on inapposite cases in attempt to
prop up a failing claim: here, that limiting instructions would be
insufficient.  See CR 200 at 13 (relying on Bruton and Miller); CR
201 at 19-20 (relying on Bruton, Miller, Weatherspoon, Lewis, and
Sampol).  Defendants have not identified any potential Bruton
statements, so their reliance on Bruton v. United States, 391 U.S.
123 (1968), to argue the danger of jurors ignoring jury instructions
is misplaced.  The Supreme Court's concern about the limits of jury
instructions applied in the context "where the powerfully
incriminating extrajudicial statements of a codefendant, who stands
accused side-by-side with the defendant, are deliberately spread
before the jury in a joint trial," which are not present here.  Id.
at 135.  Although the FSI charges false statements made by defendant
HUIZAR and defendant CHAN to conceal their involvement in the bribery
scheme implicating the Developer Defendants, those false statements
do not present a Bruton issue because they do not at all inculpate,

17

1  much less "powerfully incriminate[e]," the other defendants.[3]

2  Accordingly, defendants' <u>Bruton</u> claim is a red herring.

3      Both defendants also rely on <u>United States v. Miller</u>, 874 F.2d

4  1255, 1263 (9th Cir. 1989), which held that limiting instructions on

5  polygraph evidence were insufficient to cure prejudice; this is

6  inapposite to the issue of severance.  The other cases relied on by

7  defendant SZNW similarly identify shortcomings of particular limiting

8  instructions in unrelated contexts and do not support defendants'

9  arguments that they are entitled to separate trials.  <u>See United</u>

10  <u>States v. Weatherspoon</u>, 410 F.3d 1142, 1151 (9th Cir. 2005) (holding

11  that "the curative instructions offered here did not neutralize the

12  harm of the improper statements" made by a prosecutor); <u>United States</u>

13  <u>v. Lewis</u>, 787 F.2d 1318, 1323 (9th Cir.), <u>opinion amended on denial</u>

14  <u>of reh'g</u>, 798 F.2d 1250 (9th Cir. 1986) (district court failed to

15  timely instruct the jury regarding evidence of defendant's prior

16  conviction); <u>Sampol</u>, 636 F.2d 621 (limiting instructions "could not

17  provide their intended protection against prejudice in the face of

18  [the] emotional evidence" regarding murder plot that defendant was

19  not alleged to have participated in).  Defendants' reliance on these

20

21       [3] Indeed, defendant HUIZAR's alleged false statements do not

22  even mention defendants LEE and 940 HILL: "Specifically, regarding
the 940 Hill Project bribery scheme, defendant HUIZAR falsely stated

23  that: (a) he told George Esparza that the hundreds of thousands of
dollars cash payment Justin Kim provided to Esparza was 'yours, I do

24  not want it'; and (b) he did not discuss Esparza giving defendant
HUIZAR the money from Kim in April 2018." (FSI Count 40.)  Defendant

25  CHAN's alleged false statements exculpate, rather than inculpate,
defendant HUANG: "Specifically, defendant CHAN falsely stated that:

26  (a) he was 'not involved' and had 'no involvement' in the settlement
of Jose Luis Huizar's 2013 sexual harassment lawsuit; (b) 'Chairman

27  [Wei Huang] doesn't have anything ... in front of Jose [Huizar]'s
district ... that needs Jose [Huizar]'s help or involvement'; and (c)

28  '[Huang] never asked Jose [Huizar] for anything,' including help on
Huang's hotel."  (FSI Count 39.)

cases that have distinct and dispositive evidentiary issues
warranting severance implicitly concedes they lack legal support for
the actual scenario presented here.

Defendant LEE argues that he would have to object and interrupt
"testimony with frequent and repetitive limiting instructions."  (CR
200 at 12.)  Defendant SZNW similarly argues that "non-stop limiting
instructions to the jury cannot cure the evidentiary taint and
spillover that are inherent in a joint trial."  (CR 201 at 18.)
First, as stated above, the government asserts that defendants
significantly overshoot their claim about what evidence will be
inadmissible against their clients.  Second, under their rationale,
joint trials would never be feasible.  Rather than requiring a
question-by-question objection and limiting instruction, the Court
has broad discretion to control the presentation of evidence in a
manner that is efficient and clear.

For example, if the Court rules that evidence of other
components of the honest services bribery scheme is inadmissible
against the Developer Defendants, the Court can instruct the jury,
for instance, before the testimony of lobbyist Morrie Goldman that
this witness's testimony is not admissible against the Developer
Defendants.[4]  Such an instruction would easily permit the jury to
compartmentalize that evidence and consider it for its intended
purpose--only against defendant HUIZAR in connection with the crimes
involving Project M.  For witnesses who will offer testimony on more
than one component of the honest services bribery scheme, such as
George Esparza or FBI Special Agent Andrew Civetti, the Court can

_____

[4] The Court could also repeat the instruction at the end of
testimony and as part of the closing instructions.

1   instruct the jury as to the admissibility of portions of the

2   testimony.  Or, if the Court has concerns of potential jury

3   confusion, the particular witness's testimony could be bifurcated to

4   separately cover the CD-14 Enterprise, the L.A. Grand Hotel Bribery

5   Scheme, and the 940 Hill Bribery Scheme to keep the testimony more

6   distinct in the jury's mind.  As the Supreme Court noted, "Rule 14

7   does not require severance even if prejudice is shown; rather, it

8   leaves the tailoring of the relief to be granted, if any, to the

9   district court's sound discretion."  <u>Zafiro</u>, 506 U.S. at 537.  This

10  Court has broad discretion to tailor relief short of severance to

11  address any potential (and credible) threats of undue prejudice.

         3.   <u>Different Degrees of Culpability Do Not Require</u>

12                <u>Severance, Particularly Where Risk of Prejudice Is</u>

13                <u>Slight</u>

14  Defendant LEE argues that his alleged level of culpability is

15  markedly less than that of the other defendants, warranting a

16  separate trial.  (CR 200 at 8-10).  Defendant SZNW similarly argues

17  there is a risk of an unreliable verdict because the *quid pro quo*

18  evidence against defendant SZNW "is non-existent or, at best, weak,

19  compared to that present in the other schemes alleged in the

20  indictment."  (CR 201 at 21-22.)[5]  While defendant LEE points to

21  "lurid acts of corruption" and the "multi-million dollar

22  international developer" implicated in the L.A. Grand Hotel Bribery

23  Scheme (CR 201 at 1), defendant SZNW points to "bags of cash"

24  exchanged by other co-defendants in the 940 Hill Bribery Scheme (CR

25

26       [5] Defendant SZNW raises several meritless arguments regarding
the government's theory of the case and perceived lack of evidence of

27  an explicit *quid pro quo* with respect to the L.A. Grand Hotel Bribery
Scheme.  Those arguments are better suited for a motion to dismiss

28  the indictment.  The government will therefore not specifically
address those legally and factually misleading arguments here.

200 at 5).  Both Developer Defendants seek to distance and distinguish themselves from each other -- while tellingly pointing at the other as the more guilty-appearing party -- and from defendant HUIZAR; but their arguments fail for the same reasons.

"The fact that there may be more incriminating evidence against one defendant than there is against another, is insufficient to justify a separate trial for the latter." United States v. Marcello, 731 F.2d 1354, 1360 (9th Cir. 1984); see also Van Cauwenberghe, 827 F.2d at 432 ("the mere fact that a criminal defendant is jointly tried with a more culpable codefendant is not alone sufficient to constitute an abuse of the district court's discretion"); Hernandez-Orellana, 539 F.3d at 1002 (rejecting "catchall guilt-by-association argument" and noting that defendant's "burden [is] a heavy one, and the district court's decision not to sever trials seldom will be disturbed").  "The most common reason for severing a trial is where co-defendants present mutually exclusive or irreconcilable defenses." United States v. Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir. 1994). This was a basis for granting a severance in a case relied on by defendant LEE (CR 200 at 14), United States v. Shkreli, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) (granting severance where the "defenses amount to more than simple finger pointing by two defendants").  Severance is also appropriate where a joint trial would inhibit a defendant's right to put on a defense.  For example, in United States v. Gilbert, on which defendant LEE relies (CR 200 at 8), the trial court granted a severance where two defendants argued they required a third co-defendant "Gilbert's exculpatory testimony, foreclosed if they are tried together and Gilbert does not take the stand, or purchased at intolerable 'spillover' cost if Gilbert testifies and is cross-

1  examined on his checkered past." 504 F. Supp. 565, 566 (S.D.N.Y.

2  1980).  Defendants have not identified any such exculpatory

3  testimony, or any other mutually exclusive or irreconcilable defense.

4       United States v. DeRosa, 637 F.2d 889 (9th Cir. 1982), a case on

5  which defendant SZNW relies (CR 201 at 21), actually illustrates how

6  a joint trial in this case is appropriate.  In DeRosa, the government

7  indicted five defendants connected to drug transactions.  Id. at 892.

8  Count one charged four defendants with participating in a RICO

9  enterprise.  The remaining counts charged "various combinations of

10 the defendants with distributing and attempting to distribute

11 narcotics."  After the presentation of the government's case, the

12 trial judge dismissed the RICO count against two of the defendants.

13 Id.  Those defendants moved for severance, which the trial court

14 denied.  Id. at 897.  The Ninth Circuit held that denial was not an

15 abuse of discretion, id. at 899, even though the "RICO count was the

16 sole basis" for the initial joinder.  Id. at 897.  In making this

17 decision, the court reasoned that the risk of prejudice was "slight,"

18 id. at 898, because "[a]ll of the evidence detailing" one defendant's

19 involvement "would have been admissible in a separate trial"; "[w]ith

20 one exception, none of the evidence that the jury was told not to use

21 against [the defendant] ...  contained any specific reference to

22 [him]"; and "almost all the evidence referring to [the defendant]

23 related to a short time period," meaning "the jury could easily

24 compartmentalize the evidence ... and should have had no trouble

25 following the trial judge's instruction to disregard evidence against

26 [the defendant] in considering his guilt or innocence."  Id. at 898–

27 99.  The court also noted that the trial judge "guided the jury

28

1   throughout the trial with exemplary instructions." Id. at 899.

2   These same factors support denial of defendants' Motion.

3   Here, all of the evidence on Count One to prove the RICO

4   conspiracy is coextensive with the evidence to prove the honest

5   services scheme charging all defendants.  Even if the Court rules

6   that evidence of other components of the honest services scheme is

7   not admissible against the Developer Defendants, a jury could

8   reasonably compartmentalize the evidence.  Like in DeRosa, the

9   evidence against defendants HUIZAR and CHAN that pertain to other

10  components of the honest services scheme would not even mention the

11  Developer Defendants.  For example, the evidence pertaining to the

12  Project M Bribery Scheme or Businessperson A Schemes will not mention

13  defendants SZNW, LEE, or 940 HILL.  While the evidence will implicate

14  co-defendant HUIZAR, this does not result in "prejudicial propensity

15  evidence" against the Developer Defendants.  (CR 201 at 2, 18.)

16  Further, like in DeRosa, the evidence against the Developer

17  Defendants can be compartmentalized because of the specific

18  development projects at the center of each component and the nature

19  of the bribes provided.  As the FSI itself clearly outlines, the case

20  is already intrinsically compartmentalized.  For example, evidence

21  against defendant SZNW relates to the L.A. Grand Hotel Project and

22  benefits provided by defendants HUANG and SZNW to defendant HUIZAR

23  and Esparza during trips to Las Vegas and Australia and in the form

24  of a purported "loan."  The evidence against defendants LEE and 940

25  HILL relates to a separate project, the 940 Hill Project, and

26  involves very different alleged benefits, namely a large sum of cash.

27  The Project M bribery scheme involves yet another separate

28  development project, Project M, and a different form of benefit,

namely, PAC contributions.  And the Luxe Hotel Bribery Scheme also involves a separate project and yet another different type of (indirect) benefit in the form of consulting fees as well as PAC contributions.  Each of these schemes fall under a distinct FSI header naming the scheme/project that will serve as an easy-to-follow guide for the jury to navigate during its deliberations.[6]  Because the crimes charged against the Developer Defendants arise out of distinct development projects, if necessary, a jury will be able to parse and compartmentalize the evidence and follow the judge's instructions to keep these schemes distinct.  Therefore, even in the event that the Court disagrees with the government's position that all of the evidence is admissible against all defendants to prove the honest services scheme, the Court can still guide the jury with instructions (aided by the FSI), plus any potential prejudice occasioned by joinder would be too "slight" to require severance.

## C.  A Joint Trial Will Promote Efficiency and Serve the Interests of Justice

Defendant LEE argues that "a joint trial would not necessarily be more efficient than a separate trial."  (CR 200 at 14.)  This novel assertion defies logic and precedent; the Developer Defendants are asking this Court and the government to have two separate trials to prove the same bribery scheme twice--once at a trial with only defendants LEE and 940 HILL, and then again at a trial with defendant HUIZAR.  The same numerous percipient witnesses would testify about their conversations with and conduct of defendants HUIZAR, LEE, and 940 HILL, the same experts would testify about the City processes

---

[6] In light of the various counts, schemes, and defendants, the government will propose the Court provide a trial indictment to aid the jury during its deliberations.

involved, and the same case agents would testify about the evidence of the scheme seized from digital devices and third parties.  Two separate juries would have to consider all of that same identical evidence and be asked to answer very similar questions about whether it constituted a pay-to-play scheme.

Unlike more common gang-related multi-defendant cases in which one particular defendant's separate drug trafficking or firearms offenses could be separated from the rest, the crime alleged here is one that requires two sides of an equation: public officials and developers.  The Developer Defendants do not suggest carving out a separate part of the case that can be tried in isolation, they request to be severed from the very (same) person they (both) are alleged to have bribed for the same purpose.  This would result in having to prove defendant HUIZAR's corrupt pay-to-play scheme in three separate trials — a serious and unwarranted burden on the Court, the jury pool, the government, and the justice system as a whole.  "It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying[.]"  Richardson, 481 U.S. at 209-10.  A joint trial in this case will promote efficiency and "serve the interests of justice[.]"  Id. at 210.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny the Developer Defendants' motions to sever.