TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2091/0647/0627
    Facsimile: (213) 894-7631
    E-mail: Mack.Jenkins@usdoj.gov
        Veronica.Dragalin@usdoj.gov
        Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JOSE LUIS HUIZAR, et al.<br><br>        Defendants. | No. CR 20-326(A)-JFW<br><br>GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COUNTS AND STRIKE LANGUAGE FROM THE FIRST SUPERSEDING INDICTMENT (CR 229, 231, 235, 251); DECLARATION OF MACK E. JENKINS AND EXHIBITS<br><br>Date:     November 15, 2021<br>Time:     8:00 a.m.<br>Location: Courtroom of the Hon.<br>          John F. Walter |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins,

Veronica Dragalin, and Melissa Mills, hereby files its Omnibus[1] Opposition to Defendants' Motion to Dismiss and/or Strike (CR 235), Defendants DAE YONG LEE and 940 HILL LLC's Motion to Strike Count 5 Language (CR 229), Defendants DAE YONG LEE and 940 HILL LLC's Motion to Strike Count 25 Language (CR 231), and Defendants' Supplemental Motion to Dismiss Counts 2-17 (CR 251).

This Opposition is based upon the attached memorandum of points and authorities, the Declaration of Mack E. Jenkins and exhibits attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 14, 2021         Respectfully submitted,

                                TRACY L. WILKISON
                                Acting United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                 /s/ Mack E. Jenkins
                                _____
                                MACK E. JENKINS
                                VERONICA DRAGALIN
                                MELISSA MILLS
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

---

[1] In order to make the Court's review more efficient, the government responds in this single filing to defendants' four motions to dismiss and strike.

## TABLE OF CONTENTS

I.   INTRODUCTION..............................................................1

II.  BACKGROUND................................................................4

     A.   Summary of Relevant Counts in the Indictment..............4

     B.   Defendants' Challenges to the Indictment..................5

III. ARGUMENT..................................................................6

     A.   Legal Standard for Motions to Dismiss/Strike..............6

     B.   Applicable Law for Charged Statutes.......................8

     C.   Count 1: The RICO Conspiracy.............................12

     D.   Counts 2-17: Honest Services Fraud.......................15

          1.   There Is No Basis for Striking Specific "Means
               and Methods" in the Honest Services Fraud Counts....15

          2.   Count 2 Is Not Time-Barred Because It Properly
               Alleges that the Violation Affected a Financial
               Institution.........................................16

          3.   Defendants Fail to Meet the Standard for Striking
               Language from Count 5...............................19

          4.   The Arguments in Defendants' Supplemental Motion
               to Dismiss Counts 2-17 Lack Merit...................24

     E.   Counts 18-21: Travel Act Violations......................28

          1.   The Travel Act Counts Properly State an Offense.....28

          2.   The California Bribery Statutes Fall Within the
               Generic Definition of Bribery as Contemplated By
               the Travel Act......................................33

          3.   Defendants' Federalism Argument Misstates the Law
               and Was Squarely Rejected By the Supreme Court......36

          4.   The FSI Is Sufficiently Detailed to Allege
               Violations of the Travel Act........................37

     F.   Counts 22-29: Federal Program Bribery....................38

          1.   The Counts Alleging a Continuous Stream-of-
               Benefits Bribery Scheme Are Not Duplicitous.........38

          2.   Counts 22 and 23 Are Not Time-Barred................41

3.    Defendants' Request to Strike Language from
      Counts 24 and 25 Should Be Denied...................42

4.    Count 29 Alleges a Clear and Unambiguous Quid Pro
      Quo................................................44

G.  Constitutionality of Charged Statutes....................46

1.    The Federal Program Bribery Statute Is
      Constitutional......................................46

2.    The Honest Services Statute Is Not
      Unconstitutionally Vague...........................48

3.    The Incorporation of California "Bribery" into
      RICO, Travel Act, Money Laundering Statutes Does
      Not Make the Statutes Vague........................50

IV.   CONCLUSION................................................52

**TABLE OF EXHIBITS**

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A | June 4, 2021 Letter from government to defense | 4:28, 17:28 |
| B | June 2, 2020 E-mail chain | 3:23 |
| C | December 16, 2020 E-mail chain | 3:23 |
| D | March 11, 2021 E-mail chain | 3:23 |
| E | August 24, 2021 E-mail chain | 3:23 |
| F | August 26, 2021 E-mail chain | 3:23 |
| G | September 23, 2021 E-mail chain | 3:23 |
| H | September 23, 2021 E-mail chain | 3:23 |
| I | September 30, 2021 Letter from Harland Braun to Acting U.S. Attorney | 3:23 |
| J | October 13, 2021 E-mail chain | 3:23 |

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

Beck v. Prupis,
        529 U.S. 494 (2000) ........................................12

Chi v. United States,
        140 S.Ct. 2826 (2020) .....................................30

Hamling v. United States,
        418 U.S. 87 (1974) .........................................6

Hirsch v. Arthur Andersen & Co.,
        72 F.3d 1085 (2d Cir. 1995) ................................5

Kolender v. Lawson,
        461 U.S. 352 (1983).....................................47, 48

Kotteakos v. United States,
        328 U.S. 750 (1946) .......................................23

McCormick v. United States,
        500 U.S. 257 (1992) .......................................10

McNally v. United States,
        483 U.S. 350 (1987) .......................................51

Miserendino v. United States,
        307 F. Supp. 3d 480 (E.D. Va. 2019) ..................... 44

Perrin v. United States,
        44 U.S. 37 (1979) ..................................29, 30, 36

Rewis v. United States,
        401 U.S. 808 (1971) ...................................... 36

Sabri v. United States,
        541 U.S. 600 (2004) .......................................46

Salinas v. United States,
        522 U.S. 52 (1997) ........................................11

Skilling v. United States,
        561 U.S. 358 (2010) ...............................48, 49, 51

United States v. Agne,
        214 F.3d 47 (1st Cir. 2000) ...............................16

United States v. Asefi,
        788 Fed. Appx. 449 (9th Cir. 2019) .......................40

United States v. Blagojevich,
    794 F.3d 729 (7th Cir. 2015) ................................20

United States v. Bohonus,
    628 F.2d 1167 (9th Cir. 1980) .............................14

United States v. Boren,
    278 F.3d 911 (9th Cir. 2002) ...............................6

United States v. Boyland,
    862 F.3d 279 (2d Cir. 2017) ...............................43

United States v. Brooklier,
    685 F.2d 1208 (9th Cir. 1982) .............................11

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982) ..............................38

United States v. Bustamante,
    45 F.3d 933 (5th Cir. 1995) ...............................42

United States v. Bustamante,
    493 F.3d 879 (7th Cir. 2007) ..........................25, 26

United States v. Bynum,
    327 F.3d 986 (9th Cir. 2003) ..............................46

United States v. Camiel,
    689 F.2d 31 (3d Cir. 1982) ................................24

United States v. Carollo,
    No. 10 CR. 654 HB, 2011 WL 5023241 (S.D.N.Y. Oct. 20, 2011)...16

United States v. Carpenter,
    961 F.2d 824 (9th Cir. 1992) ..........................10, 45

United States v. Cecil,
    608 F.2d 1294 (9th Cir. 1979) .........................37, 38

United States v. Cerna,
    No. CR 08-0730 WHA,
    2010 WL 1459444 (N.D. Cal. Apr. 9, 2010) ..............13, 14

United States v. Chandler,
    388 F.3d 796 (11th Cir. 2004) ......................... 24, 27

United States v. Chi,
    936 F.3d 888 (9th Cir. 2019) ..........................passim

United States v. Cisneros,
    26 F. Supp. 2d 24 (D.D.C. 2014) ...........................13

United States v. Dansker,
    537 F.2d 40 (3rd Cir. 1976) ................................ 30

United States v. Dischner,
    974 F.2d 1502 (9th Cir. 1992) ...............................46

United States v. Donagher,
    520 F. Supp. 3d 1034 (N.D. Ill. 2021) ......................47

United States v. Dougherty,
    No. CR 19-64, 2020 WL 5231684 (E.D. Pa. Sept. 1, 2020) ......20

United States v. Evans,
    504 U.S. 268 (1992) .................................9, 18, 19

United States v. Fernandez,
    388 F.3d 1199 (9th Cir. 2004) ...............................8

United States v. Fiander,
    547 F.3d 1036 (9th Cir. 2008) ..............................11

United States v. Fitzgerald,
    514 F. Supp. 3d 721 (D. Md. 2021) ..........................39

United States v. Ganim,
    510 F.3d 134 (2d Cir. 2007) ................................ 9

United States v. Grass,
    274 F. Supp. 2d 648 (M.D. Pa. 2003) ........................17

United States v. Hedgepeth,
    434 F.3d 609 (3d Cir. 2006) .................................6

United States v. Hines,
    541 F.3d 833 (8th Cir. 2008) ............................... 40

United States v. Jackson,
    668 F. Appx. 685 (11th Cir. 2017) ..........................43

United States v. Jensen,
    93 F.3d 667 (9th Cir. 1996) ...............................6, 7

United States v. Kaplan,
    836 F.3d 1199 (9th Cir. 2016) ..............................27

United States v. Kelly,
    874 F.3d 1037 (9th Cir. 2017) .............................6, 23

United States v. Kimbrew,
    944 F.3d 810 (9th Cir. 2019) .....................8, 9, 18, 21

iii

United States v. Mancuso,
    718 F.3d 780 (9th Cir. 2013) ........................38, 39, 42

United States v. Manzo,
    851 F. Supp. 2d 797 (D.N.J. 2012) ...........................30

United States v. Martin,
    4 F.3d 757 (9th Cir. 1993) ..................................38

United States v. McDonnell,
    136 S. Ct. 2355 (2016) ..................................passim

United States v. McGeehan,
    584 F.3d 560 (3d Cir. 2009) ..................................5

United States v. Mills,
    No. 16-CR-20460, 2018 WL 5306947 (E.D. Mich. Oct. 26, 2018)...12

United States v. Milovanovic,
    678 F.3d 713 (9th Cir. 2012) ....................2, 4, 7, 14

United States v. Morales,
    11 F.3d 915 (9th Cir. 1993) .................................42

United States v. Moss,
    9 F.3d 543 (6th Cir. 1993) ...................................7

United States v. Mullins,
    613 F.3d 1273 (10th Cir. 2010) ..............................15

United States v. Nardello,
    393 U.S. 286 (1969) .........................................29

United States v. Nelson,
    712 F.3d 498 (11th Cir. 2013) ...........................49, 50

United States v. Newell,
    658 F.3d 1 (1st Cir. 2011) ..................................39

United States v. Nosal,
    No. C 08-0237 MHP, 2010 WL 934257 (N.D. Cal. Jan. 6, 2010).....5

United States v. Oakar,
    111 F.3d 146 (D.C. Cir. 1997) ............................7, 8

United States v. Parlavecchhio,
    903 F. Supp. 788 (D.N.J. 1995) ..............................30

United States v. Provenzano,
    334 F.2d 678 (3d Cir. 1964) .................................42

iv

*United States v. Rich*,
 No. 18-2268, 2021 WL 4144059 (6th Cir. Sept. 13, 2021) ....7, 13

*United States v. Robles*,
 698 F. Appx. 905 (9th Cir. 2017) ............................43

*United States v. Rodriguez-Rivera*,
 918 F.3d 32 (1st Cir. 2019) .................................5

*United States v. Root*,
 366 F.2d 377 (9th Cir. 1966) ................................7

*United States v. Rosen*,
 716 F.3d 691 (2d Cir. 2013) ............................47, 49

*United States v. Salerno*,
 481 U.S. 739 (1987) .......................................46

*United States v. Sanderson*,
 966 F.2d 184 (6th Cir. 1992) ...........................39, 40

*United States v. Sears, Roebuck & Co.*,
 785 F.2d 777 (9th Cir. 1986) ...............................41

*United States v. Seng*,
 934 F.3d 110 (2d Cir. 2019) ............................43, 48

*United States v. Serpico*,
 320 F.3d 691 (7th Cir. 2003) ...........................15, 16

*United States v. Shoemaker*,
 No. 11-CR-00038, 2012 WL 313620 (N.D. Miss. Feb. 1, 2012).....42

*United States v. Siegelman*,
 640 F.3d 1159 (11th Cir. 2011) ........................10, 45

*United States v. Silver*,
 864 F.3d 102 (2d Cir. 2017) ................................44

*United States v. Silver*,
 948 F.3d 538 (2d Cir. 2020) ........................14, 18, 44

*United States v. Singh*,
 979 F.3d 697 (9th Cir. 2020) ..........................24, 25

*United States v. Sittenfeld*,
 522 F. Supp. 3d 353 (S.D. Ohio 2021) ..................20, 22

*United States v. Spano*,
 401 F.3d 837 (7th Cir. 2005) ...............................47

United States v. Stargell,
    738 F.3d 1018 (9th Cir. 2013) ...........................15, 16

United States v. Stinson,
    647 F.3d 1196 (9th Cir. 2011) ............................. 11

United States v. Sun-Diamond Growers of California,
    526 U.S. 398 (1999) ......................................33

United States v. Tello,
    687 F.3d 785 (7th Cir. 2012) .............................12

United States v. Terrigno,
    838 F.2d 371 (9th Cir. 1988) ..............................7

United States v. Terry,
    707 F.3d 607 (6th Cir. 2013) .............................20

United States v. Thomas,
    986 F.3d 723 (7th Cir. 2021) .............................11

United States v. Ubakanma,
    215 F.3d 421 (4th Cir. 2000) .............................17

United States v. UCO Oil Co.,
    546 F.2d 833 (9th Cir. 1976) .............................40

United States v. Watchmaker,
    761 F.2d 1459 (11th Cir. 1985) ...........................51

United States v. Yannotti,
    541 F.3d 112 (2d Cir. 2008) ..........................12, 13

United States v. Yashar,
    166 F.3d 873 (7th Cir. 1999) .............................42

**Federal Statutes**

18 U.S.C. § 201 ....................................30, 31, 32

18 U.S.C. § 666 .......................................passim

18 U.S.C. § 982 ...........................................17

18 U.S.C. § 1346 .......................................... 49

18 U.S.C. § 1957 .......................................... 31

18 U.S.C. § 1962 ..........................................12

18 U.S.C. § 1964 ..........................................12

vi

**State Statutes**

California Penal Code § 67 .....................................28, 35

California Penal Code § 67.5...................................28, 35

California Penal Code § 68 .................................. 28, 36

**Other**

Fed. R. Crim. P. 7...............................................7

Black's Law Dictionary...................................33, 34, 35

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3        As set forth clearly and comprehensively in the First

4    Superseding Indictment (CR 74, "FSI" or "indictment"), the CD-14

5    Enterprise and those defendants who engaged with and profited from it

6    follows the all too familiar criminal tropes of government

7    corruption.  Defendant JOSE HUIZAR, the leader of the enterprise, got

8    greedy, got brazen, got sloppy, and got caught.  The pull of power

9    and profit caused defendants HUIZAR and RAYMOND CHAN to commodify

10   their powerful City positions.  This, in turn, drew into their orbit

11   defendants WEI HUANG, SHEN ZHEN NEW WORLD I, LLC, DAVID LEE, and 940

12   HILL, LLC – who sought to significantly benefit from the enterprise's

13   financial and political opportunism.

14       Devoid of legal support and amidst the flood of incriminating

15   facts streaming from multiple sources over an extended period of

16   time, defendants now spin a fanciful tale that would have one believe

17   that defendants HUIZAR and CHAN were mere martyrs of the "evanglis[m]

18   for robust development" movement, victimized by "ambitious

19   prosecutors" who "pursued this case [with] [sic] uncommon fervor."[1]

20   Defendants LEE and 940 HILL similarly paint a myopic tale of a public

21   official "subject to federal prosecution for 'pressuring' private

22   parties to voluntarily settle disputes on matters," which they

23   caution may lead other public officials to "shrink from participating

24   in such efforts,"[2] while conveniently glossing over the key

25   allegations in the FSI that defendant HUIZAR did so in exchange for a

26   _____

27       [1] Defendants JOSE HUIZAR, RAYMOND CHAN, and SHEN ZHEN NEW WORLD
     I, LLC's Joint Motion to Dismiss and/or Strike (CR 235) at 1, 3, 6.

28       [2] Defendants LEE and 940 HILL's Motion to Strike Language from
     Count 25 (CR 231) at 19.

1  bag of cash shortly before he used the power of his office and his

2  vote to leverage a result to substantially benefit the payor.

3  Defendants' thinly veiled theme in their motions is as misplaced as

4  it is misleading.  A motion to dismiss is an improper vehicle to

5  audition closing arguments.  <u>United States v. Milovanovic</u>, 678 F.3d

6  713, 724 (9th Cir. 2012) ("A motion to dismiss the indictment is not

7  a device for a summary trial of the evidence.") (quotation marks

8  omitted).  Ignoring material allegations conveying both direct and

9  circumstantial evidence of knowledge, intent, and consciousness of

10 guilt misapprehends the law governing such motions and permeates

11 defendants' arguments here with fatal flaws.  <u>United States v. Kelly</u>,

12 874 F.3d 1037, 1047 (9th Cir. 2017) (court "must accept the truth of

13 the allegations in the indictment").  Similarly, defendants invent a

14 new standard for what a court can strike from a duly returned

15 indictment.[3]  <u>See</u> <u>United States v. Oakar</u>, 111 F.3d 146, 157 (D.C.

16 Cir. 1997) ("Material that can fairly be described as 'surplus' may

17 <u>only</u> be stricken if it is irrelevant <u>and</u> prejudicial.") (emphasis

18 added); <u>United States v. Terrigno</u>, 838 F.2d 371, 373 (9th Cir. 1988).

19 At other turns, they repeatedly ask the Court to issue orders that

20 are premature, incorrect statements of the law, and that will be

21 squarely addressed by the model jury instructions.[4]

22      While pushing hard to contrive a narrative impugning the

23

24 ───────────────

25      [3] <u>See</u>, <u>e.g.</u>, CR 235 at 13 (arguing, without citing a single case
   for the broad authority of such strikes, that "overt acts in Count 1

26 should be stricken because they *fail to allege a bribery predicate*
   and only will invite confusion") (emphasis added).

27      [4] <u>See</u>, <u>e.g.</u>, CR 235 at 17 (arguing, again without citing
   authority, that the Court should strike several overt acts or in the

28 alternative, "enter an order specifying that an agreement to pressure
   a labor union *cannot support a conviction*") (emphasis added).

integrity of the prosecution[5] and using hyperbolic rhetoric in attempt to evade binding case law,[6] defendants' motions repeatedly stray outside the legal boundaries and purpose of motions to challenge an indictment.  And, notably, defendants do not allege any actual government misconduct here.[7]  As the defendants also concede at various other points in their motions, the FSI properly alleges corruption by defendants that falls squarely within the heartland of what the Supreme Court and the Ninth Circuit have repeatedly confirmed is criminal corrupt conduct that threatens the integrity and viability of our democracy.  Accordingly, each of their motions

---

[5] See, e.g., CR 235 at 2 (arguing Supreme Court "has spent the last 30 years ... [seeking to] rein in federal prosecutors . . . assigning themselves the tasks of valiantly stepping and selecting who should be charged and imprisoned [sic]"); at 3 ("riding a self-generated crush of negative press, the government has pursued this case [sic] uncommon fervor."); at 6 ("individual prosecutors [] are ill-suited to reliably answer those questions [re: what is federal corruption crime]"); at 6 ("[N]o class of charges has tempted ambitious prosecutors more" than federal corruption.  "Nor has any posed greater risks of illegitimate political pressures and personal interests intertwining[.]"); at 6 (accusing the Department of Justice of "repeatedly insert[ing] itself into the political realm in self-aggrandizing and antidemocratic ways" by investigating political officials).

[6] See, e.g., CR 235 at 2 ("The Federal Programs Bribery statue employs language so boundless and sweeping that even a moment's reflection reveals it to be virtually meaningless[.]"); at 5 ("RICO overt acts do not exist.").

[7] Unfortunately, however, Harland Braun, counsel for defendant CHAN has sent increasingly unprofessional and bizarre personal attacks against the prosecutors assigned to this case, which the government believes is now necessary to incorporate into the record.  See Declaration of Mack E. Jenkins ¶ 3 and Exhibits B-J.  Compare CDCA Civility and Professionalism Guidelines (stating "Uncivil behavior does not constitute effective advocacy .... [it] fails to advance the client's lawful interests .... [and] causes the public to lose faith in the legal profession and its ability to benefit society. For these reasons, we find that civility and professionalism among advocates, between lawyer and client, and between bench and bar are essential to the administration of justice.") (available at https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines)

to dismiss and/or strike should fail.

**II.   BACKGROUND**

    **A.   Summary of Relevant Counts in the Indictment**

       Count 1 of the FSI charges one RICO conspiracy that alleges the existence of the CD-14 Enterprise, defines the objectives of that single enterprise, and sets forth the means by which defendants HUIZAR and CHAN and other members and associates of the CD-14 Enterprise agreed to conduct the affairs of the enterprise.  (FSI ¶¶ 37-41, p. 10-12.)  The indictment then sets forth 452 overt acts committed "in furtherance of the conspiracy and to accomplish the object of the conspiracy."  (FSI ¶ 43, pp. 15-100.)  The overt acts are organized by headings and subheadings.  The headings separate and organize overt acts by specific development projects, which were pending before defendant HUIZAR as the Chair of the PLUM Committee and as the Councilmember representing Downtown Los Angeles in Council District 14: the L.A. Grand Hotel Project (FSI ¶ 17, p. 6), the 940 Hill Project (FSI ¶ 23, p. 6-7), the Luxe Hotel Project (FSI ¶ 24, p. 7), and Project M (FSI ¶ 29, p. 7-8).  The subheadings further provide clear context for the overt acts and how they support the overall RICO conspiracy, using terms such as "Benefits," "Requests," "Official Acts," and "Indirect Bribe Payments."

       Although defendants WEI HUANG, SZNW, LEE, and 940 HILL (collectively, the "Developer Defendants") are not charged in Count 1, they are named in many of the overt acts in Count 1 as associating with enterprise members.  As the government has explained to defendants in letters, the factual allegations in Count 1 provide additional detail underlying the substantive bribery charges against the Developer Defendants.  (Jenkins Decl. ¶ 2, Ex. A.)

The indictment also charges a single scheme to defraud, centered around defendant HUIZAR and CD-14, that employed nearly identical means and methods as the RICO conspiracy, had the same participants, and operated in the same manner as the conspiracy.  (FSI ¶¶ 44-45, p. 101-103.)  Counts 2-17 charge multiple executions of the single scheme to defraud by various combinations of defendants, and the substantive honest services fraud counts track the same organization by specific development project as outlined in Count 1.  (FSI ¶¶ 46-47, p. 103-107.)

Counts 18-21 charge substantive violations of the Travel Act for the same conduct described in Count 1 implicating the L.A. Grand Hotel Project.  (FSI ¶ 48, p. 108-110.)  The counts specifically allege that defendant HUIZAR agreed to accept, and defendants HUANG and SZNW agreed to pay, specific benefits "in exchange for defendant HUIZAR agreeing to perform official acts to benefit the L.A. Grand Hotel Project," which, again, was a specific matter that could by law be brought before defendant HUIZAR in multiple venues.  (Id.)

Counts 22-30 charge substantive violations of 18 U.S.C. § 666, Federal Program Bribery.  (FSI ¶¶ 49-58, p. 111-119.)  Each count identifies the applicable specific matter, i.e., development project (or, as to Businessperson A, the City resolution), and the specific type of benefit paid/accepted, and alleges that the benefit was paid "to influence and reward [the public official] in connection with business, transaction, and series of transactions of the City of Los Angeles having a value of $5,000 or more."  (Id.)

**B.   Defendants' Challenges to the Indictment**

On September 7, 2021, defendants HUIZAR, CHAN, and SZNW filed a joint motion to dismiss and/or strike challenging Counts 1 (RICO

Conspiracy), 2-17 (Honest Services Fraud), 18-21 (Travel Act), 22-30 (Federal Program Bribery).  (CR 235.)  Defendants LEE and 940 HILL joined in this motion.  (CR 237.)

The same day, defendants LEE and 940 HILL filed two separate motions to strike language from the indictment, on largely the same basis.  Specifically, they challenged the allegation "using their office to negotiate with and exert pressure on labor unions to resolve issues on projects" in Count 5 (CR 229) and "pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project" in Count 25 (CR 231).

On September 16, 2021, defendants HUIZAR, CHAN, SZNW, LEE, and 940 HILL filed a supplemental motion to dismiss Counts 2-17 (CR 251).

## III. ARGUMENT

### A.   Legal Standard for Motions to Dismiss/Strike

Defendants cobble together non-precedential case law in an effort to distort the well-established legal standard that applies to motions challenging an indictment.[8]  The Ninth Circuit law is clear and straightforward: "In determining whether an indictment charges a

---

[8] Defendants cite an unpublished Northern District of California opinion for the proposition that the Court "need not credit general, conclusory allegations 'when they are belied by the more specific facts in the indictment.'" (CR 235 at 3) (quoting United States v. Nosal, No. C 08-0237 MHP, 2010 WL 934257, at *2 (N.D. Cal. Jan. 6, 2010), rev'd and remanded, 642 F.3d 781 (9th Cir. 2011), on reh'g en banc, 676 F.3d 854 (9th Cir. 2012), and aff'd, 676 F.3d 854 (9th Cir. 2012) (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995)).  The Second Circuit case relied on by Nosal was a civil case examining a motion to dismiss under the Federal Rules of Civil Procedure.  Pleading standards in civil and criminal cases are not the same.  See United States v. Rodriguez-Rivera, 918 F.3d 32, 34 (1st Cir. 2019).  Defendants fail to cite any Ninth Circuit law directing courts to ignore certain allegations in an indictment. Defendants also cite a Third Circuit case for the legal standard on motions to dismiss, without noting that the opinion was subsequently vacated.  United States v. McGeehan, 584 F.3d 560, 562 (3d Cir. 2009), vacated, 625 F.3d 159 (3d Cir. 2010).

cognizable offense, we are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." Kelly, 874 F.3d at 1047. "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and second, enables him to plead an acquittal or a conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). "Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." United States v. Hedgepeth, 434 F.3d 609, 612-613 (3d Cir. 2006).

"[A] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996). "There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the evidence." Id. "A motion to dismiss the indictment is not a device for a summary trial of the evidence." Milovanovic, 678 F.3d at 724 (quotation marks omitted).

"The purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant against prejudicial or inflammatory

allegations that are neither relevant nor material to the charges." Terrigno, 838 F.2d at 373 (streamlined). Facts that "may be somewhat prejudicial" need not be stricken if "relevant and material" to the charged offenses. Id. at 373. "Words that are employed in an indictment that are descriptive of that which is legally essential to the charge in the indictment cannot be stricken out as surplusage." United States v. Root, 366 F.2d 377, 381 (9th Cir. 1966) (emphasis added). "[T]he government is not limited solely to pleading the elements of the offense (with anything falling outside the elements subject to being struck as surplusage)." United States v. Rich, --- F. App'x ----, 2021 WL 4144059, at *35 (6th Cir. Sep. 13, 2021). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993).

The "scope of a district court's discretion to strike material from an indictment is narrow." Oakar, 111 F.3d at 157. "Material that can fairly be described as 'surplus' may only be stricken if it is irrelevant and prejudicial." Id. Surplusage is not a basis for dismissal. United States v. Fernandez, 388 F.3d 1199, 1221 (9th Cir. 2004).

### B. Applicable Law for Charged Statutes

In United States v. McDonnell, the Supreme Court held that there are two requirements for proving an "official act." 136 S. Ct. 2355 (2016). First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that involves "a formal exercise of governmental power that is similar in nature to a lawsuit

before a court, a determination before an agency, or a hearing before a committee." Id. at 2369. The matter must be "pending" or must be a matter that "may by law be brought" before any public official, meaning that the matter must be "relatively circumscribed" and, with respect to a matter that may by law be brought, "something within the specific duties of an official's position – the function conferred by the authority of his office." Id.

Second, the public official must "make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so." Id. at 2370 (emphasis removed). "The bribe recipient need not be the final decisionmaker." United States v. Kimbrew, 944 F.3d 810, 814 (9th Cir. 2019) (citing McDonnell, 136 S. Ct. at 2370). "A public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on another official to perform an 'official act.'" McDonnell, 136 S. Ct. at 2370.

Essential to the crime of bribery is the public official's agreement to be influenced in the performance of an official act in exchange for a thing of value, not the actual performance of the official act. As the Supreme Court made clear in McDonnell, "[u]nder this Court's precedents, a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." McDonnell, 136 S. Ct. at 2370–71 (citing United States v. Evans, 504 U.S. 255, 268 (1992)). Therefore, the indictment need not allege, and the government need not prove at trial, that the official actually performed any official acts, only

9

that he corruptly agreed to do so in exchange for things of value. See Kimbrew, 944 F.3d at 814 ("It is immaterial whether the bribe recipient ever intended to follow through with his end of the bargain, so long as he agreed to perform the official act.").

In addition, the "agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain." McDonnell, 136 S. Ct. at 2371. Accordingly, a specific official act need not be identified by the bribe payor or recipient at the time the corrupt agreement is made. One or both of the parties may identify the particular official act some point later in their scheme or not at all. "[S]o long as the jury finds that an official accepted gifts in exchange for a promise to perform official acts for the giver, it need not find that the specific act to be performed was identified at the time of the promise, nor need it link each specific benefit to a single official act." United States v. Ganim, 510 F.3d 134, 147 (2d Cir. 2007). "[T]o require otherwise could subvert the ends of justice in cases – such as the one before us – involving ongoing schemes." Id. In other words, "a briber might anticipatorily seek to induce official action relevant to a circumstance yet-to-come.... [A] bribe tied to a contingency is no less a bribe." Kimbrew, 944 F.3d at 815.

The Ninth Circuit Model Criminal Jury Instructions provide a concise description of bribery law in this Circuit:

> In the Ninth Circuit, bribery requires at least an implicit quid pro quo. United States v. Kincaid-Chauncey, 556 F.3d 923, 941 (9th Cir. 2009). "Only individuals who can be shown to have had the specific intent to trade official actions for items of value are subject to criminal punishment on this theory of honest services fraud." Id. at 943 n.15. The quid pro quo need not be explicit, and an implicit quid pro quo need not concern a specific official act. Id. at 945-46 (citing [United States v.] Kemp, 500

10

1  F.3d [257] at 282 [(3rd Cir. 2007)] ("[T]he government need
2  not prove that each gift was provided with the intent to
   prompt a specific official act.")).  A quid pro quo
3  requirement is satisfied if the evidence shows a course of
   conduct of favors and gifts flowing to a public official in
4  exchange for a pattern of official acts favorable to the
   donor.  Id. at 943.  Bribery is to be distinguished from
5  legal lobbying activities. Id. at 942, 946 (citing Kemp,
   500 F.3d at 281-82).  These principles are consistent with
6  the appellate decisions cited by the Supreme Court.

7  Ninth Circuit Model Criminal Jury Instruction No. 8.123 (June 2021

8  ed.).

9       As for bribery involving campaign contributions (which is only a

10  fraction of the scheme presented here), in McCormick v. United

11  States, 500 U.S. 257 (1992), the Supreme Court held that campaign

12  contributions may violate the Hobbs Act only when "the payments

13  [were] made in return for an explicit promise or undertaking by the

14  official to perform or not to perform an official act."  Id. at 273.

15  The Ninth Circuit has held that the McCormick requirement is

16  satisfied so long as the terms of the quid pro quo are "clear and

17  unambiguous," but the understanding need not be verbally explicit.

18  United States v. Carpenter, 961 F.2d 824, 827 (9th Cir. 1992) (the

19  jury may consider both direct and circumstantial evidence, including

20  the context in which a conversation took place, to determine if there

21  was a meeting of the minds on a quid pro quo");  United States v.

22  Siegelman, 640 F.3d 1159, 1170-1172 (11th Cir. 2011) (assumed,

23  without deciding, that a quid pro quo instruction is required under

24  section 666 when the thing of value is a campaign contribution, and

25  held that McCormick's explicit quid pro quo requirement is satisfied

26  where the campaign contribution is made in return for a specific

27  official action, but the agreement need not be "express").

28

1

### C.   Count 1: The RICO Conspiracy

2    Defendants ask the Court to "dismiss or strike many of the RICO

3 allegations because they do not describe 'racketeering acts' and will

4 mislead the jury about what is and is not a federal bribery crime."

5 (CR 235 at 4.)  Defendants' argument misses the mark entirely.

6 Courts have repeatedly denied motions to strike RICO overt acts on

7 this basis because it fails to recognize the difference between

8 "racketeering acts" and "overt acts."

9    Defendants make the curious claim that "RICO overt actions do

10 not exist."  (CR 235 at 5.)  A RICO conspiracy charge requires the

11 government allege that defendants' plans would, if achieved, violate

12 the RICO Act.  That it does not require "overt acts" denominated as

13 such does not relieve the government of its burden to establish, for

14 example, a common purpose, the potential existence of an enterprise,

15 or its continued threat of criminal activity.  For this reason, it is

16 not atypical for a RICO conspiracy to allege overt acts in

17 furtherance of the conspiracy.  See, e.g., United States v. Stinson,

18 647 F.3d 1196, 1203 (9th Cir. 2011).  Nor is it improper.  To the

19 contrary, it is the regular practice in this District.[9]  This

20 practice benefits the defendants, Court, and jury by outlining how

21 the government intends to prove its case, which also serves to

22 highlight where defendants should focus their challenges.

23    The government must prove that the defendant was involved in a

24 scheme.  See United States v. Fiander, 547 F.3d 1036, 1041 (9th Cir.

25 2008); United States v. Brooklier, 685 F.2d 1208, 1222 (9th Cir.

26

27    [9] See, e.g., United States v. Gonzales, et al., (10-CR-567-MWF);
United States v. White, et al., 10-CR-923-SJO; United States v.

28 Martinez, et al., (14-CR-338-DMG); United States v. Landa-Rodríguez,
(18-CR-173-GW).

1982).  And in cases involving schemes, "[t]he government is
"entitled to prove the scheme as a whole," and "a scheme is not
limited to an isolated instance of conduct."  United States v.
Thomas, 986 F.3d 723, 729 (7th Cir. 2021).  The fact that the RICO
conspiracy statute does not require overt acts means only that it "is
even more comprehensive than the general conspiracy offense in
§ 371."  Salinas v. United States, 522 U.S. 52, 63 (1997) ("The RICO
conspiracy statute, § 1962(d), broadened conspiracy coverage by
omitting the requirement of an overt act[.]").

Defendants cite no authority limiting the government's proof to
the statutorily enumerated predicated acts.  In fact, courts have
rejected this type of argument.  See, e.g., United States v. Mills,
No. 16-CR-20460, 2018 WL 5306947, at *3 (E.D. Mich. Oct. 26, 2018)
("Although Johnson is correct that the sort of firearms offenses he
allegedly committed in overt acts 31 and 32 are not among those
offenses listed in § 1961(1), he misses the mark that they should be
stricken on that basis.").  "[T]he Government may find it beneficial
to include such overt acts in an indictment to present a more
detailed picture of the scope and context of the conspiracy and a
defendant's agreement to participate in that conspiracy.  In other
words, while an indictment must allege that the defendants conspired
to conduct the affairs of the enterprise through a pattern of
racketeering activity, it may allege the commission of overt acts in
furtherance of the conspiracy." Id. (emphasis in original).

"An overt act does not itself have to be unlawful."  Ninth
Circuit Model Criminal Jury Instruction No. 8.20.  Although an overt
act may be a discrete act or event in furtherance of a conspiracy, it
is not an allegation of a racketeering act.  See Beck v. Prupis, 529

U.S. 494, 506-507 (2000) (distinguishing between overt acts in furtherance of a conspiracy and racketeering acts for purposes of a civil suit brought under 18 U.S.C. § 1964(c) based on a violation of § 1962(d)); accord United States v. Tello, 687 F.3d 785, 792, 796-797 (7th Cir. 2012) (addressing what proof a § 1962(d) conspiracy charge requires and differentiating between predicate acts of racketeering and overt acts); United States v. Yannotti, 541 F.3d 112, 129 (2d Cir. 2008) (holding that "overt acts are not distinct offenses that must be proven to sustain a RICO conspiracy conviction").

At this stage, it is not the role of the Court to determine whether the facts support the charge.  "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged quid pro quo.  The jury may consider a broad range of pertinent evidence, including the nature of the transaction, to answer that question." McDonnell, 136 S. Ct. at 2371 (emphasis added).  The evidence may include acts or events that do not by themselves constitute an "official act" because it may still be evidence of corrupt intent, among other things.  Id. at 2371 ("Of course, this is not to say that setting up a meeting, hosting an event, or making a phone call is always an innocent act, or is irrelevant, in cases like this one.").

Because the jury can consider a broad range of evidence in this context, there is no basis to strike any of the relevant and informative allegations in Count 1 of the indictment that are expressly alleged to have been committed "in furtherance" of the conspiracy.  See, e.g., United States v. Cisneros, 26 F. Supp. 2d 24, 55 (D.D.C. 2014) (explaining, in denying a motion to strike introductory allegations in a bribery indictment, that such

information "concerns either essential elements of the charges ... or provides useful and important background information"); United States v. Rich, No. 18-2268, 2021 WL 4144059, at *35 (6th Cir. Sept. 13, 2021) (unpublished) ("Here, the overt acts were legally relevant because they tended to show either an agreement to form a RICO enterprise or the actual existence of the enterprise.  Accordingly, the district court did not err by including the overt acts that were supported by the evidence in the indictment."); United States v. Cerna, No. CR 08-0730 WHA, 2010 WL 1459444, at *3 (N.D. Cal. Apr. 9, 2010) (rejecting defendants' argument that "none of the overt acts are racketeering acts or racketeering predicates" and denying motion to strike because the overt acts listed in the RICO conspiracy count were explicitly alleged to be acts taken in furtherance of the conspiracy and were not described in inflammatory language).

Thus, in this case, the government may properly allege overt acts that are not standalone "racketeering acts" or independent bribery offenses.  Defendants have failed to demonstrate a legal or factual basis for striking any overt acts from Count 1.

D.   **Counts 2-17: Honest Services Fraud**

1.   There Is No Basis for Striking Specific "Means and Methods" in the Honest Services Fraud Counts

Defendants ask the Court to strike certain charging language from the Honest Services Fraud counts because they target "lawful conduct."  (CR 235 at 23.)  Again, their legal attack is misaimed.

The term "honest services" requires the government to prove that the defendant breached a fiduciary duty by accepting a bribe.  United States v. Milovanovic, 678 F.3d 713, 721-22, 728-29 (9th Cir. 2012). The Ninth Circuit assumes a breach of a fiduciary duty whenever a

1    public official accepts a bribe: "When a public official is bribed,

2    he is paid for making a decision while purporting to be exercising

3    his independent discretion [and] the fraud element is therefore

4    satisfied."  United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir.

5    1980).  Honest services fraud does not require evidence of a meeting

6    of the minds.  United States v. Silver, 948 F.3d 538, 552 (2d Cir.

7    2020).

8         For the reasons outlined above in Section III.C, defendants have

9    failed to establish a legal or factual basis for striking certain

10   "means and methods" from the general charging language in Counts 2-17

11   on the basis that they target "lawful conduct" or do not describe

12   "official acts."  There is simply no support in the law for such a

13   claim.  Just as the RICO conspiracy overt acts do not have to each be

14   independent racketeering predicates or standalone crimes, the "means

15   and methods" employed by schemers in furtherance of an honest

16   services fraud scheme do not have to independently be standalone

17   crimes.

18         2.   Count 2 Is Not Time-Barred Because It Properly Alleges
                that the Violation Affected a Financial Institution

19

20        Defendants ask this Court to dismiss Count 2 as time-barred

21   because the FSI fails to properly plead *how* a financial institution

22   was "affected."  (CR 235 at 26-29.)  In describing the scheme to

23   defraud, the FSI alleges that the scheme to defraud "affected at

24   least one financial institution."  (FSI ¶ 44, p. 101.)[10]

25

26        [10] Defendants only move to dismiss Count 2 as time-barred, but
    feign confusion over which count in the indictment the government

27   alleges "affected" a financial institution.  (CR 235 at 29.)  In lieu
    of a Bill of Particulars, defendants sought clarification on this

28   point, and the government responded: "As to Count 2, the government
                         *(footnote cont'd on next page)*

As defendants recognize (CR 235 at 27:23-27), a financial institution need not suffer actual loss in order to be "affect[ed]" by the scheme – only a "new or increased risk of loss" is required. United States v. Stargell, 738 F.3d 1018, 1022 (9th Cir. 2013); see also United States v. Mullins, 613 F.3d 1273, 1280 (10th Cir. 2010) (holding that "actual financial loss from the fraud ... isn't necessary" to find effect on financial institution).  This provision is designed to "protect financial institutions ... by deterring would-be criminals from including financial institutions in their schemes."  United States v. Serpico, 320 F.3d 691, 694 (7th Cir. 2003) (fraud affects a financial institution if a bank is exposed to a risk of loss even if the institution never suffers an actual loss).  "Just as society punishes someone who recklessly fires a gun, whether or not he hits anyone, protection for financial institutions is much more effective if there's a cost to putting those institutions at risk, whether or not there is actual harm."  Id. at 694-95.

The allegations in the FSI make clear that the collateral provided by defendant HUANG to defendant HUIZAR to secure a loan from Bank 1 was in fact a bribe and therefore part of the fraudulent scheme.  Count 2 alleges the wire transfer out from defendant HUIZAR's bank account at Bank 1 of the personal loan secured by HUANG's fraudulent collateral.  Like in Stargell, "because the [collateral funds] were fraudulent, the banks were exposed to the risk of loss on each loan involved in the scheme" and the fraudulent loan thus "'affected' the bank regardless of whether there was actual financial loss."  738 F.3d at 1022.

---

alleges that [Bank Name] (referred to in the indictment as "Bank 1") was affected by the scheme to defraud."  (Jenkins Decl. ¶ 2, Ex. A.) (emphasis added).

1       Defendant's reliance on out-of-Circuit cases examining

2  sufficiency of the evidence at trial is unavailing, particularly in

3  light of their tension with Ninth Circuit precedent.  The First

4  Circuit in United States v. Agne, 214 F.3d 47, 52 (1st Cir. 2000),

5  relied on by defendants (CR 235 at 28:1-3), did not follow the law in

6  the Ninth Circuit holding that risk of loss is sufficient to "affect"

7  a financial institution, and examined not the sufficiency of

8  indictment allegations but instead the evidence at trial.  Defendants

9  cite United States v. Carollo, No. 10 CR. 654 HB, 2011 WL 5023241, at

10 *4 (S.D.N.Y. Oct. 20, 2011), where the district court declined to

11 follow other Circuits in holding that "an increased risk of loss is

12 sufficient to trigger § 3293," which is inconsistent with controlling

13 Ninth Circuit law.

14      Defendants' reliance on other courts interpreting different

15 statutes as requiring "an allegation that the financial institution

16 was affected in an adverse manner" similarly fails to comport with

17 the Ninth Circuit's interpretation of "affecting" a financial

18 institution for purposes of extending the statute of limitations.

19 See CR 235 at 28 (citing United States v. Grass, 274 F. Supp. 2d 648,

20 654 (M.D. Pa. 2003) (interpreting 18 U.S.C. § 982(a)(2)(A)) and

21 United States v. Ubakanma, 215 F.3d 421, 426 (4th Cir. 2000)

22 (interpreting sentencing enhancement)).

23      Here, the indictment alleges the necessary element that the

24 "violation affected at least one financial institution." (FSI ¶ 44,

25 p. 101).  The FSI also alleges as overt acts the predicate facts that

26 explain how Bank 1 was placed at an increased risk of loss, in that

27 the collateral provided by defendant HUANG for the loan issued by

28 Bank 1 was a bribe in furtherance of a fraudulent scheme (FSI OA 38,

1  41-43), and the loan payments to Bank 1 were further bribes accepted
2  by defendant HUIZAR and laundered through his family's accounts (FSI
3  OA 367-418).  Discovery in the case further makes clear that had Bank
4  1 representatives known the true nature of the collateral payment,
5  the bank would have denied the request to open the loan for defendant
6  HUIZAR under any circumstances because it would have placed the bank
7  at risk of financial loss.  (See, e.g., Casino_2007543, 2053971.)

8      For these reasons, defendant's arguments as to the timeliness of
9  Count 2 fail.

10         3.   Defendants Fail to Meet the Standard for Striking
                Language from Count 5

12     Defendants seek to strike language from Count 5 that alleges
13  that in exchange for bribes, defendant HUIZAR and George Esparza
14  performed an "official act" by "using their office to negotiate with
15  and exert pressure on labor unions to resolve issues on projects,"
16  because they argue that this allegation "is squarely inconsistent
17  with the Supreme Court's ruling in McDonnell." (CR 229 at 8.)

18     Essential to the crime of bribery is the public official's
19  agreement to be influenced in the performance of an official act in
20  exchange for a thing of value, not the performance of the official
21  act.  "[A] public official is not required to actually make a
22  decision or take an action on a 'question, matter, cause, suit,
23  proceeding or controversy'; it is enough that the official agree to
24  do so."  McDonnell, 136 S. Ct. at 2370-71 (citing Evans, 504 U.S. at
25  268).  "The official can be convicted even if he never intended to
26  perform the official act for which he was bribed.  In short,
27  execution is immaterial."  Kimbrew, 944 F.3d at 815-16.  Importantly,
28  the "agreement need not be explicit, and the public official need not

1    specify the means that he will use to perform his end of the

2    bargain." McDonnell, 136 S. Ct. at 2371.  Thus, McDonnell does not

3    require "identification of a particular act of influence," but only

4    "requires identification of a particular question or matter to be

5    influenced." United States v. Silver, 948 F.3d 538, 552-53 (2d Cir.

6    2020), cert. denied, 141 S. Ct. 656 (2021) (emphasis in original)

7    (holding that bribery does not require "a promise to perform a

8    particular official act").

9         Therefore, the indictment need not allege, and the government

10   need not prove at trial, that defendant HUIZAR actually performed any

11   official acts, only that he corruptly agreed to do so in exchange for

12   things of value.  The indictment clearly makes this allegation with

13   respect to the 940 Hill Bribery Scheme.

14       The indictment identifies a specific question or matter – the

15   union appeal on the 940 Hill Project – that was pending starting on

16   August 8, 2016 and that "could ultimately reach the PLUM Committee,

17   which defendant HUIZAR chaired." (FSI OA 85, 87, p. 29-30.)

18   McDonnell's definition of an "official act" requires a "decision or

19   action" on a "specific and focused" matter "that is 'pending' or 'may

20   by law be brought' before a public official." McDonnell, 136 S. Ct.

21   at 2372.  And importantly, it is the "matter" that must be "focused

22   and concrete," not the "action." Id. at 2369.  Thus, here, the

23   indictment clearly identifies a focused and concrete "matter" – the

24   union appeal on the 940 Hill Project, which was pending and would

25   ultimately require a vote by defendant HUIZAR, as defendant LEE well

26   knew.

27       The indictment further alleges that defendant HUIZAR demanded

28   and ultimately agreed to accept $500,000 in cash in exchange for his

"help" to "resolve" that specific pending matter.  (FSI OA 89, 93, p. 31-32.)  Contrary to defendants' assertion that defendant HUIZAR and Esparza made "an alleged promise to use their offices to negotiate with and exert pressure on Labor Organization A" (CR 229 at 9:19-20), the indictment does not allege that defendant HUIZAR or Esparza conveyed the means by which they would "help" resolve the appeal to Justin Kim or defendant LEE.  Nor does the law require such express conversations.  Otherwise, "the law's effect could be frustrated by knowing winks and nods."  Evans, 504 U.S. 255, 274, (Kennedy, J., concurring in part and concurring in the judgment).  To avoid that problem, as the Seventh Circuit has aptly noted, "'Nudge, nudge, wink, wink, you know what I mean' can amount to" an honest services fraud violation, "just as it can furnish the gist of a Monty Python sketch."  United States v. Blagojevich, 794 F.3d 729, 738 (7th Cir. 2015) (Easterbrook, J.).  "As most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess."  United States v. Terry, 707 F.3d 607, 613 (6th Cir. 2013).

Defendants rely on United States v. Dougherty, No. CR 19-64, 2020 WL 5231684 (E.D. Pa. Sept. 1, 2020) and United States v. Sittenfeld, 522 F. Supp. 3d 353, 373 (S.D. Ohio 2021), to argue that a motion to strike is proper on the ground that certain identified means of accomplishing defendant HUIZAR's end of the bargain do not meet the definition of "official act."  (CR 229 at 11.)  As the Dougherty court recognized, the "indictment need not allege everything McDonnell requires in jury instructions," and "it is a jury question whether the facts alleged in the Indictment amount to

an 'official act.'" Id. at *11 (denying the defense motion to dismiss or in the alternative motion to strike for failure to allege "official acts" meeting McDonnell standard).  Similarly, the Sittenfeld court noted that the question of inferences taken from what the participants say, mean and do, are all matters that "a jury is fully equipped to assess," while "[a] court ruling on a motion to dismiss, with only select quotes from longer audio recordings, and without the aid of live testimony, is not so equipped."  522 F. Supp. 3d at 373 (citation omitted).

Defendants argue that "negotiating with or pressuring a private party to take a private action is not a formal exercise of governmental power" because "whether the labor organization should voluntarily dismiss its own administrative appeal" is a "purely private question."  (CR 229 at 16.)  This ignores the key fact underpinning the "official act" in this case – the administrative appeal was pending before defendant HUIZAR not in some other forum.[11] The government agrees that the McDonnell definition of "official act" would not be met if defendant 940 HILL and Labor Organization A had a dispute in California Superior Court, for example, and defendants LEE and 940 HILL paid defendant HUIZAR $500,000 cash in exchange for defendant HUIZAR using the clout of his office as a Councilmember to

---

[11] The 940 Hill bribery theory in the indictment does not rely on McDonnell's alternate path to finding an "official act" when the question or matter is not pending before the public official being bribed but is instead pending before another public official. "A public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on another official to perform an 'official act.'" McDonnell, 136 S. Ct. at 2370.  This theory applies when the "bribe recipient" is not "the final decisionmaker." Kimbrew, 944 F.3d at 814.  Here, defendant HUIZAR was the bribe recipient and final decisionmaker on the union appeal.

serve as a mediator of that dispute and persuade the labor
organization to drop its appeal.  For that reason, the indictment
does not allege that defendant HUANG enlisting defendant HUIZAR to
resolve such a "private dispute" constituted an "official act."  (See
OA 54 under the heading "Requests to defendant HUIZAR.")  The 940
Hill appeal was different in that defendant HUIZAR was the ultimate
arbiter of that dispute.  It would be the equivalent of paying a
bribe to the judge in the California Superior Court case to pressure
one of the parties to drop the lawsuit.  Defendants can hardly argue
that paying cash to a state court judge for such an action does not
meet the definition of "official act."  If that is defendants'
contention, then it is an illustration that their interpretation of
McDonnell leads to an absurd result.

Defendants highlight the concern of chilling public "officials'
interactions with the people they serve and thus damage[ing] their
ability to effectively perform their duties." (CR 229 at 19:9-11.)
Defendants also raise concerns of federal prosecutors deciding "what
can and cannot be said by a public official to persuade a constituent
to voluntarily withdraw a land-use appeal."  (CR 231 at 20:18-27.)
Defendants' argument fails to recognize the key criminal element
missing from their hypotheticals – accepting bags of cash in exchange
for those acts – and "fails to recognize the difference between a
general position in favor of development and a promise of official
action on a specific project, which is what the Indictment alleges
and what federal bribery law prohibits." Sittenfeld, 522 F. Supp. 3d
at 373.  Here, the indictment satisfies McDonnell, because it
identifies a "matter," the union appeal on the 940 Hill Project,
"which is a focused and concrete matter."  Id. at 376.  And the

indictment alleges that defendant HUIZAR agreed to take action to resolve that matter in exchange for cash.  "To be sure, the exact form that action would take was perhaps a bit up in the air," but that is of no consequence.  Id.  An agreement to resolve the matter "could constitute an agreement to undertake an official act, even if the precise form of [defendant HUIZAR's] efforts is unknown at the time the agreement is made.  To hold otherwise would allow public officials to avoid criminality by the mere artifice of saying – 'I'll get it done, I just can't tell you how.'"  Id.  This Court should deny defendants' request to strike language that comports with McDonnell.

> ### 4.   The Arguments in Defendants' Supplemental Motion to Dismiss Counts 2-17 Lack Merit

Defendants filed a Supplemental Motion to Dismiss Counts 2-17 based on the government's recent statements in filings and in court. (CR 251 at 1:4-10.)  As noted above, the sufficiency of indictment allegations must be considered based on the four corners of the indictment and the allegations must be accepted as true.  Kelly, 874 F.3d at 1047 (courts "are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment").  For that reason alone, the Court should dismiss defendants' supplemental motion.  The FSI clearly alleges a single "scheme to defraud" and describes the means and methods through which this single scheme to defraud operated.  (FSI ¶¶ 44-45, p. 101.)

Defendants rely on Kotteakos v. United States, 328 U.S. 750 (1946) and subsequent cases to argue that Counts 2-17 should be

dismissed because "the pleadings, facts, representations in court, and law clearly show multiple schemes." (CR 251 at 5-7.) In Kotteakos, the Supreme Court concluded that the proof at trial made out a case "not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment" because "there were 'at least eight, and perhaps more, separate and independent groups, none of which had any connection with any other, though all dealt independently with Brown as their agent." 328 U.S. at 754-55. To use a wheel metaphor, "the pattern was that of separate spokes meeting at a common center ... without the rim of the wheel to enclose the spokes." Id. Similarly, in United States v. Chandler, relied on by defendants (CR 251 at 6), the Eleventh Circuit reversed a trial conviction where "the government has conceded that there is no proof to support defendants' membership in the indicted conspiracy" and instead the defendants were "convicted of conspiracies not charged in the indictment." 388 F.3d 796, 813 (11th Cir. 2004). And in United States v. Camiel, the only other case relied on by defendants (CR 251 at 7), the Third Circuit held that the evidence was insufficient to support an inference of a single, unitary scheme involving all alleged co-schemers as found by the jury and as charged in the indictment. 689 F.2d 31, 37 (3d Cir. 1982).

None of these cases support defendants' contention that dismissal of counts is appropriate where an indictment alleges a single scheme to defraud.

As articulated recently by the Ninth Circuit, "[a] single conspiracy may involve several subagreements or subgroups of conspirators." United States v. Singh, 979 F.3d 697, 722 (9th Cir. 2020), cert. denied sub nom. Matsura v. United States, 210 L. Ed. 2d

25

833 (May 24, 2021).  "One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy."  Ninth Circuit Model Criminal Jury Instruction No. 8.20.  For a single conspiracy to exist, it is not necessary for every member of the conspiracy to participate in each overt act or execution of their scheme.  For example, an indictment charging 10 gang members and associates in a single drug trafficking conspiracy does not become separate conspiracies because only a smaller combination of the gang members delivered cocaine on one occasion, and a different combination delivered methamphetamine on another occasion.

"Typically, the inference of an overall agreement is drawn from ... proof that the key participants and the method of operation remained constant throughout the conspiracy."  Singh, 979 F.3d at 721 (citation omitted).  Here, the scheme to defraud alleges methods of operation and key participants that remained constant throughout the scheme.  Specifically, the indictment alleges that defendants HUIZAR and CHAN and their co-schemers would demand, solicit, and agree to accept benefits from developers and their proxies in exchange for certain types of enumerated official acts.  The indictment further alleges that all defendants would conceal their scheme through certain specified methods.  (FSI ¶ 45(a)-(d), p. 101-103.)

As relevant here, a "hub and spoke" conspiracy refers to "an arrangement in which a core conspirator ... moves from spoke to spoke, directing the functions of the conspiracy."  United States v. Bustamante, 493 F.3d 879, 885-86 (7th Cir. 2007) (cleaned up).

"[F]or such a conspiracy to exist, those people who form the wheel's spoke must have been aware of each other and must do something in furtherance of some single, illegal enterprise." Id. (cleaned up); see also Singh, 979 F.3d at 722 (a single conspiracy is established by proof that "each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation").

In contrast to the Chandler case, where one person "was the only person common to the ten otherwise completely separate undertakings, no other person moving with him from spoke to spoke," 388 F.3d at 808, in this case, in addition to defendant HUIZAR, many of the other CD-14 Enterprise members and associates moved from spoke to spoke. For example, defendant CHAN was directly implicated in the L.A. Grand Hotel Bribery Scheme and two Luxe Hotel Bribery Schemes, but is also mentioned in overt acts in furtherance of additional pay-to-play conduct (OA 342, 351, 354).  George Esparza was integral to the L.A. Grand Hotel and the 940 Hill Bribery Schemes, and was also mentioned in the Luxe Hotel and the Project M Bribery Schemes, and in defendant HUIZAR's other pay-to-play conduct and efforts to conceal his crimes. While Justin Kim was integral to the 940 Hill Bribery Scheme, his name also appears in connection with a fundraiser hosted at defendant HUANG's hotel (OA 73), Kim discussed his common goals with George Chiang in connection with the Luxe Hotel Bribery Scheme (OA 169), and participated in a meeting with defendant HUIZAR, Esparza, and Morrie Goldman (the lobbyist for Project M) to establish the PAC to benefit HUIZAR Relative 1's campaign (OA 344).  Similarly, George Chiang was aware of defendant CHAN's role in saving defendant HUIZAR's career (OA 47) and was involved in fundraising overlapping with defendant

SZNW (OA 76), while playing an integral role in the Luxe Hotel Bribery Schemes.

Furthermore, "[a]n agreement to commit a crime can be explicit or tacit, and can be proved by direct or circumstantial evidence, including inferences from circumstantial evidence." United States v. Kaplan, 836 F.3d 1199, 1212 (9th Cir. 2016) (quotation marks and citation omitted).  Here, direct evidence at trial will establish that the Developer Defendants (and other developers named in the indictment) knew about each other[12] and had a common goal to keep defendant HUIZAR in power through bribes.  In addition, direct evidence will establish, and the jury can draw the inference, that the consultants who moved with defendant HUIZAR "from spoke to spoke" informed their respective developer clients about the common scheme. As is clear from the allegations in the indictment, the crossover between the various CD-14 Enterprise members and associates draws a rim around the hub-and-spoke conspiracy alleged in the indictment.

**E.   Counts 18-21: Travel Act Violations**

1.   The Travel Act Counts Properly State an Offense

Counts 18-21 of the FSI charge defendants HUIZAR and SZNW with violating the Travel Act.  These charges relate to defendant HUIZAR's trips across California state lines —— specifically, to Australia and Las Vegas —— to accept defendant SZNW's bribes, which were prohibited by California Penal Code §§ 67, 67.5, and 68.  These California bribery statutes are appropriate predicates under the Travel Act, and

---

[12] See, e.g., Government's Opposition to Defendant Lee's Motion to Compel (CR 221) at 6-7 ("when Kim speculated whether Councilman HUIZAR was involved in 'just ours or if there are others,' defendant LEE responded 'there's probably more'; ... (f) defendant LEE stated 'HUIZAR was probably not caught with just one or two things, the way I look at it, we're probably just a drop in the ocean'").

defendants' motion to dismiss Counts 18-21 on that basis should be denied.

The categorical approach applies to determining whether California Penal Code §§ 67, 67.5, and 68 may serve as predicates for "unlawful activity" under the Travel Act.  See United States v. Chi, 936 F.3d 888, 894-95 (9th Cir. 2019) (employing categorical analysis in determining that a foreign bribery statute was an appropriate "specified unlawful activity" predicate for money laundering statute).  Under the categorical approach, the predicate state bribery statutes are compared to the generic federal definition of bribery to determine whether they are a categorical match.  If so, as here, they are appropriate predicate offenses for violations of the Travel Act.

### a.   Supreme Court Precedent Requires a Broad Interpretation of "Bribery"

Recognizing Congress's clear intent that the Travel Act's prohibited activities be read broadly, the Supreme Court has roundly rejected past efforts to "dictate a narrow interpretation of bribery" and other Travel Act offenses.  Perrin v. United States, 444 U.S. 37, 49-50 (1979), citing United States v. Nardello, 393 U.S. 286, 296 (1969) (declining to give extortion "an unnaturally narrow reading" in light of the intended scope of the Travel Act).

In Perrin, the defendant was charged with Travel Act offenses that were predicated on violations of a state statute prohibiting commercial bribery.  444 U.S. at 39.  The defendant urged the Court to adopt a narrow reading of "bribery" and to hold that a state commercial bribery statute could not serve as a predicate statute for purposes of his Travel Act bribery charge.  Id. at 41.  After

analyzing at some length the history of the Travel Act, the Court determined that Congress had intended the provisions of that statute to be read broadly rather than constrained to the narrow common-law definitions of "bribery" and other offenses.  Id. at 41-48. Recognizing that expansive scope, the Court next considered the "ordinary, contemporary, common meaning" of bribery at the time the Travel Act was enacted in 1961.  Id. at 49.  The Court held that this "generic definition of bribery" was sufficiently broad to encompass commercial bribery.  Id.

By definition, commercial bribery — which involves bribes to private individuals rather than public officials — requires no action whatsoever by a public official.  Thus, defendants' argument that Congress intended, in 1961, for the Travel Act definition of bribery to be narrowly tailored not only to offenses including official action, but to a particular construct of "official action," fails under Perrin's holding that even commercial bribery with no official action at all qualifies as bribery under the Travel Act.

> b.   As a Matter of Settled Law, the Generic Definition of "Bribery" Is Not Bound by the Constraints of 18 U.S.C. § 201

Defendants' tortuous attempt to link the "ordinary, contemporary, common meaning" of bribery at the time of the Travel Act's passage in 1961 to one particular federal bribery statute not charged in this case and, by extension, to the Supreme Court's 2016 interpretation of that statute in McDonnell, is similarly fatally flawed.  Defendants' arguments were expressly rejected by this Court in the Chi case as contrary to the dictates of Perrin, and that rejection was affirmed by the Ninth Circuit.  Chi, 936 F.3d at 897.

1   The Supreme Court denied certiorari.  Chi v. United States, 140 S.Ct.

2   2826 (2020).[13]

3        In Chi, the defendant was convicted of violating 18 U.S.C.

4   § 1957 by engaging in a monetary transaction that was derived from a

5   specified unlawful activity, namely, an "offense against a foreign

6   nation. . . involving bribery of a public official."  Id. at 892.

7   Before trial, the defendant moved to dismiss the indictment,

8   alleging, as defendants HUIZAR and SZNW do here, that the indictment

9   failed to adequately state an offense.  Id.  This Court denied the

10  defense motion, rejecting Chi's argument that the indictment was

11  required to allege a violation of 18 U.S.C. § 201, a U.S. statute

12  addressing bribery of public officials that was not charged in the

13  case.  Id.  The Court then denied Chi's request at trial for a jury

14  instruction that would require the jury to find, pursuant to

15  McDonnell, that he "intend[ed] to be influenced in the performance of

16  an official act."  Id. at 892, n. 5.  Instead, the Court conducted a

17  categorical analysis of the foreign bribery statute at issue and

18  determined that it fell "within the category of conduct of bribery by

19  a public official," as contemplated by the money laundering statute.

20

21        [13] Defendants cite Chi in support of the categorical approach,

22  but they fail to acknowledge Chi's plain rejection of their
    substantive arguments.  Instead, their motion dwells at some length

23  on two opinions from the District of New Jersey and another from the
    Third Circuit, apparently in pursuit of constraints on Perrin's broad

24  definition of "bribery."  None are helpful to defendants.  One held
    that bribery required the briber to know that the bribee was a public

25  official.  United States v. Dansker, 537 F.2d 40 (3rd Cir. 1976).
    Another held that bribery required a public official, not merely a

26  losing candidate.  United States v. Manzo, 851 F.Supp.2d 797, 804-05
    (D.N.J. 2012).  The third held that bribery required a donor/donee

27  relationship between briber and bribee.  United States v.
    Parlavechhio, 903 F. Supp. 788 (D.N.J. 1995).  All are inapplicable

28  to the present case, where defendant HUIZAR was a public official,
    defendant SZNW knew it, and they had a donor/donee relationship.

1   Id. at 892.  The Court also read the translated foreign statute to

2   the jury.  Id.

3        On appeal, Chi again argued that the predicate foreign bribery

4   statute was required to fit within the definition of bribery

5   prescribed by 18 U.S.C. § 201.  Id. at 893.  Specifically, the

6   defendant urged the Court to depart from Perrin and its reliance on

7   the broad "ordinary, contemporary, common meaning" of bribery, and to

8   instead hold that "bribery of a public official" was intended by

9   Congress as a specific reference to 18 U.S.C. § 201.  Id.  The Ninth

10  Circuit declined that invitation, because the money laundering

11  statute did not contain any such reference.  Id. at 896 ("had

12  Congress intended to criminalize the laundering of bribery proceeds

13  only where the foreign bribery statutes tracked the requirements of

14  § 201, it would have said so").  Instead, absent any statutory basis

15  for referring to and adopting the elements of § 201, the Ninth

16  Circuit in Chi was compelled to "interpret bribery of a public

17  official per Perrin's instruction."  Id. at 896-97.

18       Like the money laundering statute in Chi, the Travel Act

19  contains no reference to § 201, nor any other clue of a congressional

20  intent to adopt the elements of that separate statute.  Indeed, § 201

21  was not even in existence when the Travel Act was enacted in 1961, so

22  Congress's lack of any signaled intent to incorporate the then-

23  unfinished elements of an embryonic statute is unsurprising.[14]

24  _____

25       [14] From 1948 until the current § 201 was enacted in 1962, a
    predecessor § 201 prohibited the giving or offering of anything of
26  value to an officer or other person "to influence his decisions."
    See Historical and Statutory Notes to 18 U.S.C. § 201.  Even assuming
27  that Congress secretly intended for the Travel Act to cross-reference
    this particular bribery statute, defendants' attempts to read the
28  McDonnell definition of "official act" into this statute —— which
    contained no such term —— would fail.

32

1    Defendants' arguments for the use of § 201 as the basis for a

2    bribery definition were also squarely rejected by the Ninth Circuit

3    in Chi on still another basis.  While defendants' reasons for

4    preferring § 201 are obvious, that particular statute is far from the

5    only federal provision governing bribery.  As such, the Chi Court saw

6    no reason why the elements of § 201 in particular should apply,

7    rather than any of the many other federal statutes, regulations, and

8    legal provisions addressing bribery:

> Furthermore, even if "bribery of a public official" were
> interpreted as a reference to a specific federal statute,
> it is not clear to which statute it would refer. . . .
> [§ 201] is "merely one strand of an intricate web of
> regulations, both administrative and criminal, governing
> the acceptance of gifts and other self-enriching actions by
> public officials." . . . . Faced with this web of
> regulation, [the applicable statute] gives no indication
> which——if any——federal law should define the meaning of
> "bribery of a public official."  **Hence, absent a statutory
> basis to refer to and adopt the elements of § 201, we
> interpret "bribery of a public official" per Perrin's
> instruction.**

16   Chi, 936 F.3d at 896-97, quoting United States v. Sun-Diamond Growers

17   of California, 526 U.S. 398, 409 (1999).

18           2.    The California Bribery Statutes Fall Within the
19                 Generic Definition of Bribery as Contemplated By the
                   Travel Act

20                 a.    Chi Explains How to Determine the Generic
21                       Definition of Bribery, and How to Compare the
                         Predicate Statute

22   Chi is also instructive in determining how to define "bribery."

23   After rejecting the defendant's attempt to limit the definition of

24   bribery to the boundaries of § 201, the Court in Chi proceeded to

25   determine how to interpret bribery under the dictates of Perrin.  To

26   do so, the Court considered the "ordinary meaning of the term" by

27   referencing two sources that were operational at the time the charged

28   statute was enacted in 2001, namely: the relevant edition of Black's

Law Dictionary; and the Model Penal Code, which was adopted in 1962. Id. at 897.  With reference to those contemporary sources, the Court found that the applicable ordinary meaning of bribery in 2001 had three elements: 1) both a bribe-giver and a bribe-taker, 2) a benefit given by the bribe-giver, and 3) something given by the bribe-taker, including official action or exercise of discretion as a public servant.  Id.

Next, the Court compared the foreign predicate statute, which prescribed criminal penalties for "[a] public official ... who receives, demands, or promises to accept a bribe in connection with his/her duties," and found that it contained the same three elements. Id.  The Court rejected the defendant's argument that the third applicable element —— something given by the bribe-taker —— was missing from the foreign statute, noting that the phrase "in connection with his/her duties" necessarily required the type of official action or official exercise of discretion required by the charged U.S. statute.  Id. at 897-89.

> b.   The Operative Definition of "Bribery" as Contemplated By the Travel Act

The relevant Black's Law Dictionary definition at the time of the Travel Act's passage in 1961 was expansive, citing to the following four alternative descriptions of bribery:

- The offering, giving, receiving, or soliciting of any thing of value to influence action as official or in discharge of legal or public duty.

- The corrupt tendering or receiving of a price for official action.

- The receiving or offering any undue reward by or to any

34

1    person concerned in the administration of public justice or

2    a public officer to influence his behavior in office.

3  • The taking or giving a reward for public office.

4 Black's Law Dictionary (4th Ed. 1951), citations omitted.[15]

5    *c. Analysis of the California Bribery Statutes*

      *Demonstrates that They Are Consistent With the*

6      *Broad Generic Definition*

7    The California bribery statutes serving as Travel Act predicates

8 in Counts 18 through 21 are fully consistent with this broad

9 contemporary meaning of bribery at the time of the Travel Act's

10 passage.  Section 67 of the California Penal Code prescribes

11 penalties for a person who "gives or offers any bribe to any

12 executive officer in this state, with intent to influence him in

13 respect to any act, decision, vote, opinion, or other proceeding as

14 such officer."  As the Ninth Circuit found in <u>Chi</u> with the phrase "in

15 connection with his/her duties", the clause "in respect to any act,

16 decision, vote, opinion, or other proceeding as such officer"

17 reflects the type of official action or discharge of duty

18 contemplated by the operative bribery definition.

19    Section 67.5 of the California Penal Code prescribes penalties

20 for a person who "gives or offers as a bribe to any ministerial

21 officer, employee, or appointee of the State of California, county or

22 city therein, or political subdivision thereof, any thing."  This

23 code section, while more succinct, addresses the same conduct by

24 incorporating the key words "as a bribe," which goes back to the core

25 definition of bribery —— a concept that inherently involves an offer,

26

27    [15] Unsurprisingly, nothing in the ordinary, contemporary, common definition of bribery in 1961 embraced the future constraints that

28 the <u>McDonnell</u> Court would place on one particular federal bribery statute 55 years later.

request, or agreement to exchange something of value for an exercise of official duties.

Section 68 of the California Penal Code prescribes penalties for any public official who "asks, receives, or agrees to receive, any bribe, upon any agreement or understanding that his or her vote, opinion, or action upon any matter then pending, or that may be brought before him or her in his or her official capacity, shall be influenced thereby."  As in <u>Chi</u>, this statute explicitly invokes the public official's action or exercise of duties and thus meets the generic definition of bribery.  936 F.3d at 897-98.

### 3. Defendants' Federalism Argument Misstates the Law and Was Squarely Rejected By the Supreme Court

Defendants' plea for dismissal of the Travel Act counts continues with yet another argument that was roundly rejected by binding precedent, this time by the Supreme Court in <u>Perrin</u>. Specifically, defendants invoke vague federalism concerns with a cite to <u>Rewis v. United States</u>, 401 U.S. 808, 812 (1971), warning that the Travel Act charges in this case "would upset the delicate balance between state and federal police powers that Congress intended with the Travel Act's passage."  (CR 235 at 42:9-10.)  The Supreme Court in <u>Perrin</u>, faced with a similar attempt to bend <u>Rewis</u> to serve the defendant's purposes, found that, with the Travel Act, "it is clear beyond doubt that Congress intended to add a second layer of enforcement supplementing what it found to be inadequate state authority and state enforcement."  <u>Perrin</u>, 444 U.S. at 42.  The <u>Perrin</u> Court went on to distinguish the federalism concerns voiced in <u>Rewis</u>, which were limited to an insufficient nexus to interstate commerce:

Reliance on the federalism principles articulated in <u>Rewis</u>
to dictate a narrow interpretation of "bribery" is
misplaced. . . .  [S]o long as the interstate nexus is
present, the [Travel Act] **reflects a clear and deliberate**
**intent on the part of Congress to alter the federal-state**
**balance in order to reinforce state law enforcement.  In**
**defining an "unlawful activity," Congress has clearly**
**stated its intention to include violations of state as well**
**as federal bribery law.**

Defendants' federalism argument misstates the law and was

expressly rejected by Supreme Court in <u>Perrin</u>.  Like defendants'

other meritless arguments, it should be given no weight, and their

motion to dismiss the Travel Act counts should be denied.

    4.   <u>The FSI Is Sufficiently Detailed to Allege Violations</u>
       <u>of the Travel Act</u>

After demanding the dismissal of the Travel Act counts for

failure to state a bribery offense, which defendants contend requires

a quid pro quo, an official act, and a linkage between the two,

defendants proceed to recognize that the Travel Act counts do in fact

specifically allege all of these things.  (CR 235 at 42:15-19)

("Thus, by its own language, the Travel Act counts contain a *quid pro*

*quo* and an 'official act' as elements of the charges, and a linkage

between the two.").  Nonetheless, defendants complain that the 138-

page indictment fails to provide a sufficiently detailed description

of the charges, claiming ignorance as to what "official act"

defendant HUIZAR is alleged to have agreed to perform to benefit the

L.A. Grand Hotel Project.  Defendants rely on <u>United States v. Cecil</u>,

608 F.2d 1294, 1296 (9th Cir. 1979), which held, "[t]he requirement

that an indictment contain a few basic factual allegations accords

defendants adequate notice of the charges against them and assures

them that their prosecution will proceed on the basis of facts

presented to the grand jury."

1    The Court in Cecil was faced with a "rather barren" indictment
2    that merely tracked the language of the statute, stated that the
3    conspiracies occurred in two specified states "and elsewhere," and
4    offered the name of some of the alleged co-conspirators.  Id. at
5    1296-97.  In stark contrast, the FSI contains far more than Cecil's
6    baseline requirement of "a few basic factual allegations."  Id. at
7    1296.  Indeed, it features a 15-page section prominently labeled
8    "L.A. Grand Hotel Bribery Scheme," which proceeds to detail 84 overt
9    acts.  As Cecil requires, the FSI is sufficiently detailed to provide
10   adequate notice of the specific official acts alleged, including
11   those alleged in connection with the Travel Act counts, and to assure
12   defendants that their prosecution will proceed on facts that were
13   presented to the grand jury.  See United States v. Buckley, 689 F.2d
14   893, 899 (9th Cir. 1982) ("an indictment should be: (1) read as a
15   whole; (2) read to include facts which are necessarily implied; and
16   (3) construed according to common sense").

17   **F.   Counts 22-29: Federal Program Bribery**

18            1.   The Counts Alleging a Continuous Stream-of-Benefits
                  Bribery Scheme Are Not Duplicitous
19

20   Counts 22, 23, and 29 are not duplicitous, because they each
21   allege a single continuing offense —— specifically, an ongoing
22   stream-of-benefits bribery scheme.  An indictment is duplicitous if
23   it joins two or more distinct and separate offenses into a single
24   count.  United States v. Mancuso, 718 F.3d 780, 792 (9th Cir. 2013).
25   The question is not whether the evidence might support charging
26   multiple crimes instead of one, but "rather solely to assess whether
27   the indictment itself can be read to charge only one violation in
28   each count."  Id. (quoting United States v. Martin, 4 F.3d 757, 759

(9th Cir. 1993)).  Thus, even though the statute may allow the government to charge each separate act as an individual count, it need not do so; instead, it may elect to charge the series of acts as one ongoing scheme in a single count.  See Mancuso, 718 F.3d at 792 (rejecting defendant's duplicity claims, holding that possession of drugs with the intent to distribute and maintaining a drug-involved premises were properly alleged as continuing offenses, and holding that "[t]he continuous nature of an offense prevents the indictment from being duplicitous") (internal quotation omitted).

Here, the indictment alleges a stream-of-benefits bribery scheme involving numerous individual benefits to defendant HUIZAR to influence his expected support of defendant SZNW's L.A. Grand Hotel Project (Counts 22 and 23) and his ongoing support of Project M (Count 29).  In light of the continuous nature of the bribery scheme, Counts 22, 23, and 29 were properly charged.  See, e.g., United States v. Fitzgerald, 514 F. Supp. 3d 721, 756-57 (D. Md. 2021) (single charge alleging stream-of-benefits bribery was not duplicitous because the charged bribery conduct was part of a single continuing scheme).

Charging a single ongoing scheme in a single count simplifies and streamlines the charges, more accurately reflects the course of the defendants' conduct, avoids concerns about overcharging, and appropriately limits the defendants' sentencing exposure to a single punishment for a single ongoing scheme.

Denying defendants' motion to dismiss on duplicity grounds is also consistent with repeated holdings by multiple courts that the government may aggregate multiple instances of § 666 bribery conduct in a single count where they were part of a single plan or scheme.

United States v. Newell, 658 F.3d 1, 24 (1st Cir. 2011); see also United States v. Sanderson, 966 F.2d 184, 189 (6th Cir. 1992) (holding that aggregation to reach the statutory threshold was appropriate in a case involving a single scheme); United States v. Hines, 541 F.3d 833, 837 (8th Cir. 2008) (holding that § 666 "permits the government to aggregate multiple transactions in single count to reach the $5,000 minimum as long as they were part of a single plan or scheme") (citations omitted).

An analysis of whether multiple acts may be properly charged as part of the same offense without violating the principle of duplicity should be "guided by 'the presumption against construing penal statutes so as to lead to multiple punishment.'" United States v. Asefi, 788 Fed. Appx. 449, 451 (9th Cir. 2019) (unpublished) (quoting United States v. UCO Oil Co., 546 F.2d 833, 837 (9th Cir. 1976)). This presumption weighs heavily in favor of charging the instant bribery scheme in a single count for each participant's continuing course of criminal conduct.

Of course, the other side of the duplicity coin is multiplicity. Had the government elected to charge each of the many individual instances on which defendant HUIZAR or his surrogate(s) were provided with financial benefits with the intent that he be influenced in the exercise of his public office, defendants would undoubtedly be accusing the government of overcharging and thus unfairly inflating the available penalties. See UCO Oil Co., 546 F.2d at 835 ("On the other hand, an indictment may not charge a single offense in several counts without offending the rule against multiplicity. Here the vice would be that the punishment provided for a single offense may be pyramided by a multi-count indictment."). Defendants' requested

remedy would compel the government to supersede with dozens of individual charges alleging a separate § 666 violation for each of defendants' acts of bribery, each of which would carry a separate 10-year statutory maximum penalty and a separate fine of potentially hundreds of thousands of dollars or more.[16]   Notwithstanding defendants' currently stated preference to face an additional multitude of individual charges and penalties, the presumption against construing statutes to confer multiple punishment weighs strongly against dismissing Counts 22, 23, and 29 for duplicity.

### 2.   Counts 22 and 23 Are Not Time-Barred

Defendants argue that many of the quids and quos alleged in Counts 22 and 23 are untimely.  (CR 235 at 45-47.)  This fails to recognize that Counts 22 and 23 specifically allege a time period within the five-year statute of limitations, beginning on October 28, 2015 (FSI ¶¶ 49, 50 at p. 111-112).  The original indictment in this case was returned on July 31, 2020, and included the conduct charged in Counts 22 and 23.  (CR 36.)  "Once an indictment is returned the statute of limitations is tolled as to the charges contained in the indictment."  United States v. Sears, Roebuck & Co., 785 F.2d 777, 778 (9th Cir. 1986).  "A superseding indictment returned while the first indictment is pending is timely unless it broadens or substantially amends the charges in the original indictment." Id. (internal quotation marks and citations omitted).  Thus, all conduct occurring after October 28, 2015 is within the statute of limitations.

---

[16] Defendants' stated concerns about a potential jury verdict finding a defendant guilty of § 666 but lacking clarity as to the specific bribery conduct found by the jury can be more properly addressed by a specific unanimity instruction if necessary. [keep?]

41

In any event, "the statute of limitations does not bar the introduction of evidence of acts that occurred outside of the limitations period." United States v. Mancuso, 718 F.3d 780, 790 (9th Cir. 2013); United States v. Provenzano, 334 F.2d 678, 688 (3d Cir. 1964) (holding that pre-limitations conduct as part of an ongoing extortionate scheme was relevant for the purpose of interpreting post-limitations conduct). Thus, at trial, the government may prove Counts 22 and 23 with evidence that falls outside the limitations period.[17]

   3. <u>Defendants' Request to Strike Language from Counts 24 and 25 Should Be Denied</u>

Defendants argue that "the act of exerting pressuring [sic] on a labor union" in Counts 24 and 25 fails to meet McDonnell's definition of a "qualifying quo." (CR 235 at 43, 47; CR 231[18].) The Court should

---

[17] In addition, courts have held that in situations in which there have been a series of multiple bribes, prosecutors may apply the continuing course of criminal conduct doctrine. See, e.g., United States v. Morales, 11 F.3d 915, 916-17 (9th Cir. 1993) (a series of bribe payments to an IRS employee that had been combined and charged as a single count were "part of a course of criminal conduct," so the changed Guidelines applied to all of the bribery payments, including to defendant's conduct that occurred before the Guidelines were amended); United States v. Bustamante, 45 F.3d 933 (5th Cir. 1995) (holding that since a Congressman's acceptance of a series of gratuities constituted "continuing criminal behavior," prosecutors could target every act in the scheme, including his initial 1985 acceptance of a loan guarantee that occurred eight years before the 1993 indictment); United States v. Shoemaker, No. 11-CR-00038, 2012 WL 313620, at *2 (N.D. Miss. Feb. 1, 2012) (holding that because the bribery and kickback scheme was combined into a single count under 18 U.S.C. §666, government could charge acts that occurred over five years before indictment since they were part of a common illegal scheme); but see United States v. Yashar, 166 F.3d 873, 878 (7th Cir. 1999) (declining to follow Ninth Circuit reasoning in Morales).

[18] It is unclear why defendants LEE and 940 HILL filed a separate motion to strike this allegation in Count 25 (CR 231), making largely the same arguments as the motion to strike a nearly identical allegation in Count 5 (CR 229).

deny defendants' request to strike this language from Counts 24 and 25.

Several Circuit Courts have held that McDonnell's definition of "official act" does not apply to 18 U.S.C. § 666.  E.g., United States v. Seng, 934 F.3d 110, 131-38 (2d Cir. 2019) (holding that McDonnell's official act limitation does not apply to 18 U.S.C. § 666 prosecutions); United States v. Boyland, 862 F.3d 279, 291 (2d Cir. 2017) (holding that the McDonnell "official act" standard did not apply to jury instructions for § 666 because "[t]hat section is more expansive than 201 ... [because it] prohibits individuals from soliciting ... anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of an organization, government, or agency") (emphasis in original) (internal citations and quotation marks omitted); United States v. Jackson, 668 F. Appx. 685 (11th Cir. 2017) ("This case is materially different from the posture in McDonnell ... given that §666(a)(1)(B) does not use the term 'official act,' there was no objection to the actual jury charge about the elements of a §666(a)(1)(B) offense, much less a request for a specific definition of 'official act.'").  In United States v. Robles, the Ninth Circuit refused to review a § 666 conviction under the heightened "official act" requirement because McDonnell "addressed the interpretation of [a statute] other than § 666." 698 F. Appx. 905 (9th Cir. 2017) (unpublished).

Nevertheless, the § 666 counts in the indictment allege "official acts" that meet the McDonnell definition.  For the reasons set forth above in Section III.D.2, the fact that the indictment goes beyond the McDonnell requirements by specifically alleging the means

43

by which the officials could accomplish the promised official acts does not mean the government failed to allege "a qualifying quo." (CR 235 at 47.)   The indictment specifically identifies a "focused and concrete" matter pending before defendant HUIZAR for each of the bribes alleged in the indictment – specific development projects that were filed with the City, or contemplated to be filed with the City, on which defendant HUIZAR could take numerous official acts in his capacity as the Chair of the PLUM Committee and CD-14 Councilmember. The only exception is Count 30, which alleges a City resolution as the official act as opposed to a development project.  (FSI ¶ 57, p. 119.)  A government resolution honoring an individual is "indisputably an official act" post-McDonnell.  United States v. Silver, 948 F.3d 538, 570 (2d Cir. 2020); United States v. Silver, 864 F.3d 102, 121 (2d Cir. 2017) ("The only proven act remaining within the statute of limitations is thus the resolution and proclamation honoring Dr. Taub.  The Government argues, and Silver concedes, that the resolution is an "official act" under McDonnell. We agree[.]"); see also Miserendino v. United States, 307 F. Supp. 3d 480, 491 (E.D. Va. 2019) ("[O]btaining a state assembly resolution honoring a specific individual remain 'official acts' under McDonnell.") (citations omitted).

Defendants' argument on this basis fails for the same reason as Count 5.

4.   Count 29 Alleges a Clear and Unambiguous Quid Pro Quo

Defendants ask the Court to dismiss Count 29 with prejudice or to strike from Count 29 Company M's third contribution because "it is not supported by a clear-and-unambiguous quid pro quo."  (CR 235 at 47-48.)

1    As noted above, campaign contributions can serve as bribes so

2    long as the terms of the quid pro quo are "clear and unambiguous,"

3    and the understanding need not be verbally explicit.  Carpenter, 961

4    F.2d at 827; Siegelman, 640 F.3d at 1170-1172 (McCormick's explicit

5    quid pro quo requirement is satisfied where the campaign contribution

6    is made in return for a specific official action, but the agreement

7    need not be "express").

8    The indictment alleges a "clear and unambiguous" solicitation by

9    defendant HUIZAR of $100,000 in contributions to PAC A in exchange

10   for specific official acts on Project M.  Of the total $100,000, half

11   came in the "third contribution" solicited by defendant HUIZAR

12   between January 2018 and June 2018 (FSI OA 262-275, p. 67-71), and

13   the other half came in the "fourth contribution" solicited by

14   defendant HUIZAR between August and November 2018 (FSI OA 275-300, p.

15   71-77).  Defendants only challenge the third contribution as failing

16   to allege a clear quid pro quo.

17   With respect to the "third contribution," Overt Act 264 alleges

18   that defendant HUIZAR asked if Company M would "help with PAC" in the

19   same conversation that Morrie Goldman conveyed the company's ask for

20   official acts from defendant HUIZAR on Project M.  (FSI OA 264, p.

21   68.)  The context and timing of the conversations between January and

22   June 2018 establish that defendant HUIZAR made a "clear and

23   unambiguous" connection between the PAC contributions and his

24   official acts to benefit Project M, specifically in agreeing to

25   approve Project M in the PLUM Committee and City Council with a

26   favorable affordable housing requirement (OA 262), approving the

27   height of the project (OA 264), and pressuring officials from the

28   Planning Department to approve the height of Project M (OA 272, 273).

1     There is no basis to dismiss or strike language from Count 29.

2     **G.   Constitutionality of Charged Statutes**

3     Defendants argue that several of the charged statutes are

4     facially unconstitutional or unconstitutional as applied.  (CR 235 at

5     48.)  Courts have repeatedly rejected defendants' arguments and

6     upheld the constitutionality of the statutes charged in the

7     indictment.

8     "A facial challenge to a legislative Act is ... the most

9     difficult challenge to mount successfully, since the challenger must

10    establish that no set of circumstances exists under which the Act

11    would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

12    "To be successful in [their] facial challenge to the

13    constitutionality of § 666 [and other challenged statutes],

14    [defendants] must demonstrate that there is no set of circumstances

15    in which the statute could be applied in a constitutionally valid

16    manner." United States v. Bynum, 327 F.3d 986, 990 (9th Cir. 2003).

17    "Outside the first amendment context ... a defendant has

18    standing to raise a vagueness challenge only if the statute is vague

19    as applied to his or her specific conduct." United States v.

20    Dischner, 974 F.2d 1502, 1510 (9th Cir. 1992) (en banc), cert.

21    denied, 113 S.Ct. 1290 (1993).

22    1.   The Federal Program Bribery Statute Is Constitutional

23    Defendants' argument that 18 U.S.C. § 666(a)(1)(B) and (a)(2)

24    are facially unconstitutional and unconstitutional as applied must

25    fail.  (CR 235 at 48-62.)  Courts have repeatedly rejected facial and

26    as applied challenges to the constitutionality of § 666.  See, e.g.,

27    Sabri v. United States, 541 U.S. 600 (2004) (holding that 18 U.S.C.

28    § 666(a)(2) was not facially unconstitutional); United States v.

1  <u>Bynum</u>, 327 F.3d 986 (9th Cir. 2003) (holding that 18 U.S.C. § 666 was
2  facially constitutional); <u>United States v. Rosen</u>, 716 F.3d 691 (2d
3  Cir. 2013) (holding that federal bribery and honest services mail and
4  wire fraud statutes were not unconstitutionally vague as applied to
5  defendant's alleged conduct of paying state legislators, under cloak
6  of sham consulting contracts, to take official action to benefit
7  defendant and his company as the opportunities for such actions
8  arose); <u>United States v. Spano</u>, 401 F.3d 837 (7th Cir. 2005) (holding
9  that 18 U.S.C. § 666(a)(2) was not unconstitutional in case where
10 defendants were part of a conspiracy to bribe the town's Director of
11 Public Safety for a favorable result in an investigation whether
12 certain police officers were residing outside town limits in
13 violation of a town ordinance).

14     Defendants cite no case showing that § 666 implicates a First
15 Amendment right to trigger the overbreadth doctrine.  Even <u>McDonnell</u>,
16 the case on which defendants hinge their First Amendment attack, does
17 not mention the overbreadth doctrine.  Courts have rejected
18 constitutional challenges to § 666 on this basis.  <u>See</u>, <u>e.g.</u>, <u>United</u>
19 <u>States v. Donagher</u>, 520 F. Supp. 3d 1034, 1053 (N.D. Ill. 2021)
20 (noting that terms in § 666 "sufficiently cabin the subject matter of
21 a bribe or reward to economic transactional activity and, in so
22 doing, avoid any overbreadth concerns suggested by <u>McDonnell</u>").

23     Defendants' vagueness challenge fares not better.  Arising from
24 the Fifth Amendment's due process clause, "the void-for-vagueness
25 doctrine requires that a penal statute define the criminal offense
26 with sufficient definiteness that ordinary people can understand what
27 conduct is prohibited and in a manner that does not encourage
28 arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461

U.S. 352, 357 (1983).  Vagueness and overbreadth have been

"traditionally viewed ... as logically related and similar

doctrines." Id. at 358 n.8.  "Every circuit court to have addressed

this issue has held that § 666 is not void for vagueness.  While

Defendants [may] attempt to downplay these cases on the ground that

some of them predate McDonnell, that argument falls flat.  Far from

breaking new ground in this area, McDonnell applied long-standing

concepts.  And numerous courts have rejected vagueness challenges to

§ 666 after McDonnell." Donagher, 520 F. Supp. 3d at 1054 (citations

omitted).

That leaves defendants' contention that § 666 interferes too

much with the principle of federalism rooted in the Tenth Amendment.

(CR 235 at 56.)  But the Second Circuit recently rebuffed an

identical argument.  See United States v. Ng Lap Seng, 934 F.3d 110,

138 (2d Cir. 2019) ("No federalism concerns render § 666(a)(2)

constitutionally infirm.").  As that court emphasized, "Congress was

within its prerogative to protect [federal] spending ... from the

menace of local administrators on the take." Id. (citation omitted).

Although defendants dedicate six pages of their brief to this

argument, they fail to cite this case, let alone address the Second

Circuit's analysis.

In sum, none of Defendants' constitutional challenges warrant

the Court striking down § 666 as unconstitutional.

### 2. The Honest Services Statute Is Not Unconstitutionally Vague

Although defendants recognize this Court is bound to apply

Skilling v. United States, 561 U.S. 358 (2010), they nevertheless ask

1    the Court to find the honest services statute unconstitutionally

2    vague.  (CR 236 at 65.)  Their argument fails.

3         In Skilling, the Supreme Court rejected the assertion that

4    § 1346 was impermissibly vague, but construed the statute to cover

5    only cases involving "fraudulent schemes to deprive another of honest

6    services through bribes or kickbacks supplied by a third party who

7    had not been deceived," or cases involving "offenders who, in

8    violation of a fiduciary duty, participated in bribery or kickback

9    schemes." Skilling, 561 U.S. at 404, 407.  Thus, defendants' argument

10   that Section 1346 is vague as applied to the defendants was already

11   decided in Skilling; the Supreme Court held that Section 1346 is not

12   void for vagueness where the defendant deprives the citizens of the

13   intangible right to honest services through bribery or kickbacks.

14   Id. at 368.  This is precisely what the indictment alleges.  (FSI

15   ¶ 44, p. 101.)  Given the well-developed state of federal bribery

16   law, "[a] criminal defendant who participated in a bribery or

17   kickback scheme, in short, cannot tenably complain about prosecution

18   under § 1346 on vagueness grounds."  Id. at 413.

19        Circuits that have considered as-applied challenges to an honest

20   services fraud charge for bribery since Skilling and have wholly

21   rejected them, echoing the Supreme Court's finding that it is well-

22   established that bribery – the quid pro quo exchange of things of

23   value for influencing official acts - is prohibited under the

24   statute.  See, e.g., United States v. Rosen, 716 F.3d 691, 700 (2d

25   Cir. 2013) (holding that the defendant's payment of bribes to state

26   legislators to take official action as opportunities arose had been

27   established as "plainly unlawful"); United States v. Nelson, 712 F.3d

28   498, 508-09 (11th Cir. 2013) (holding that Section 1346 was not vague

1  where applied to a public official who agreed to take favorable

2  action for a third party paying him bribes through a middleman).

3      Defendants have been charged with engaging in a typical bribery

4  scheme, at the heart of which is the intent to accept/provide things

5  of value in exchange for influencing official acts.  Skilling made

6  clear that such schemes fall squarely within the meaning of the

7  honest services fraud statute.  Defendants thus had fair notice that

8  bribing a public official was proscribed by the honest services fraud

9  statute, and the requirement that the government allege intent to

10 bribe the public official — which the indictment does here — "blunts

11 any argument that the defendant lacked notice that his conduct was

12 unlawful."  Nelson, 712 F.3d at 508.  In fact, "defendants charged

13 with bribery or kickbacks face an uphill climb in arguing they did

14 not or could not reasonably understand that their conduct was illegal

15 under the [honest services fraud] statute."  Id. at 508; see also id.

16 at 509 (emphasizing that the court has "described bribery of a public

17 official as the 'paradigm case' of honest-services fraud").

18 Defendants had clear notice that the alleged conduct was unlawful.

19          3.   The Incorporation of California "Bribery" into RICO,
                Travel Act, Money Laundering Statutes Does Not Make
20              the Statutes Vague

21     Defendants also argue that the generic reference to "bribery" in

22 the RICO, Travel Act, and money-laundering statutes is

23 unconstitutionally vague and violates the separation of powers and

24 Due Process clause.  (CR 235 at 62-65.)  Defendants also argue that

25 unless subjected to the McDonnell limits, California's bribery

26 statutes are unconstitutional when incorporated into federal law.

27 (Id. at 65.)

28

                                    50

1    This argument misstates the Supreme Court's concern over
2    federalism in <u>McNally</u>, <u>Skilling</u>, and <u>McDonnell</u>.  In those cases, the
3    Court was concerned that the application of the federal statutes in
4    an overly broad manner could intrude on the states' "prerogative to
5    regulate the permissible scope of interactions between state
6    officials and their constituents."  <u>McDonnell</u>, 136 S. Ct. at 2373.
7    <u>See</u> <u>McNally v. United States</u>, 483 U.S. 350, 360 (1987); <u>Skilling</u>, 561
8    U.S. at 409.  In other words, the Supreme Court was concerned that
9    federal law would criminalize acts that the states wanted to be
10   legal.  There is no danger of that here.  If, as defendants suggest,
11   the California bribery statute has broader application than federal
12   bribery standards, a federal charge based on that broader state
13   offense would simply be the federal government holding a state
14   official to account for conduct the state has already proscribed.

15   "[R]eferences to state law serve a definitional purpose, to
16   identify generally the kind of activity made illegal by the federal
17   statute."  <u>United States v. Watchmaker</u>, 761 F.2d 1459, 1469 (11th
18   Cir. 1985) (quotation omitted) (noting that state law citations are
19   only "an illustration of the activities which were considered to fall
20   within the category of 'extortion' under state law").  As described
21   above in Section III.E, California bribery statutes do not make the
22   federal statutes unconstitutional.

23   Lastly, as defendants recognize, "by its own language, the
24   Travel Act counts contain a quid pro quo and an 'official act' as
25   elements of the charges, and a linkage between the two."  (CR 235 at
26   45:18-19.)  Defendants urge the Court to "incorporate the principles
27   of <u>McDonnell</u> into the generic definition of bribery, requiring an
28   'official act' as defined in that case as well as a quid pro quo."

(CR 235 at 38:22-24.)   The indictment already alleges a quid pro quo and "official acts" that meet the <u>McDonnell</u> principles for all of the federal statutes charged in the indictment.   There is no basis to dismiss counts or strike allegations for failure to satisfy <u>McDonnell</u>.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Defendants' Motions to Dismiss and/or Strike.