1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3         **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,        )**
                                        **)**
6              **PLAINTIFF,            )        CASE NO.**
                                        **)**
7              **vs.                   )        CR 20-326-JFW**
                                        **)**
8   **JOSE LUIS HUIZAR, et al.,        )**
                                        **)        PAGES 1 TO 47**
9              **DEFENDANTS.           )**
    _____**)**

10

11

12

13              **REPORTER'S TRANSCRIPT OF**
             **MOTION TO DISMISS COUNTS 22 AND 23**
14              **MONDAY, MARCH 7, 2022**
                    **8:02 A.M.**
15            **LOS ANGELES, CALIFORNIA**

16

17

18

19

20

21

22
    _____
23

           **MIRANDA ALGORRI, CSR 12743, RPR, CRR**
24          FEDERAL OFFICIAL COURT REPORTER
            350 WEST 1ST STREET, SUITE 4455
25         LOS ANGELES, CALIFORNIA 90012
              MIRANDAALGORRI@GMAIL.COM

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

NICOLA T. HANNA
UNITED STATES ATTORNEY
BY:  MACK JENKINS
BY:  VERONICA DRAGALIN
BY:  MELISSA MILLS
Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT HUIZAR:**

HILARY L. POTASHNER
FEDERAL PUBLIC DEFENDER
BY:  CAREL ALÉ
BY:  CHARLES SNYDER
BY:  ADAM OLIN
Deputy Federal Public Defenders
Central District of California
321 East Second Street
Los Angeles, California 90012

**FOR THE DEFENDANT SHEN ZHEN NEW WORLD I AND DEFENDANT CHAN:**

LAW OFFICES OF RICHARD M. STEINGARD
BY:  RICHARD M. STEINGARD
800 Wilshire Boulevard
Suite 1050
Los Angeles, California 90017

**FOR THE DEFENDANTS LEE AND 940 HILL:**

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW
BY:  ARIEL A. NEUMAN
1875 Century Park East
23rd Floor
Los Angeles, California 90067

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 08:02AM | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 08:02AM | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 08:02AM | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 08:03AM | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 08:03AM | 25 |

1    **LOS ANGELES, CALIFORNIA; MONDAY, MARCH 7, 2022**

2    **8:02 A.M.**

3    ---

4

5    THE CLERK:  Calling item 1, CR 20-326(A)-JFW,

6    United States of America versus Jose Luis Huizar.

7    Counsel, please state your appearances.

8    MR. JENKINS:  Good morning, Your Honor.

9    Mack Jenkins, Veronica Dragalin, Melissa Mills on behalf of the

10   United States.  For the record, also in the audience is

11   Special Agent Andrew Civetti of the FBI.

12   MS. ALÉ:  Good morning, Your Honor.  Carel Alé,

13   Charles Snyder, and Adam Olin on behalf of Mr. Jose Huizar who

14   is present here today.

15   MR. NEUMAN:  Good morning, Your Honor.

16   Ariel Neuman on behalf of Dae Yong Lee whose waiver is on file

17   and 940 Hill, LLC.

18   MR. STEINGARD:  Good morning, Your Honor.

19   Richard Steingard for Shen Zhen New World I, LLC.  I am also

20   specially appearing for Harland Braun on behalf of his client

21   Raymond Chan who is present in court.

22   THE COURT:  All right.  Good morning to all.

23   It's good to see you all in person rather than on Zoom.  Even

24   though Mr. Steingard has mastered his appearances by Zoom, now

25   we are back in court.

1        The Court has two matters on calendar this

2   morning.  The first is the defendant's Motion to Dismiss

3   Counts 22 and 23 of the Indictment that was filed on

4   January 31st of 2022 and appears as docket No. 359.  The

08:04AM  5   Government filed its opposition on February 7th.  It appears as

6   docket No. 371, and the defendant filed a reply on

7   February 14th.  It appears as docket No. 377.

8        The second matter that is on the Court's calendar

9   this morning will be the Court's ruling on the pending motions

08:04AM 10   to sever which appear as docket Nos. 200 and 201.

11        I will first take the joint Motion to Dismiss

12   Counts 22 and 23, and I will hear argument from the defense.  I

13   assume this is Mr. Snyder's motion.  Then I'm prepared to rule.

14        MR. SNYDER:  Sure.  So just very briefly, I think

08:05AM 15   we said most of what we wanted to say in the papers.  I think,

16   you know, the main points are that the Government previously

17   argued and the Court previously held that Counts 22 and 23 are

18   not duplicitous because they charge one cumulative

19   stream-of-benefits bribe directed at obtaining assistance with

08:05AM 20   the L.A. Grand Hotel as opportunities arise.  Because that's

21   the unitary offense and it's not a continuing offense, it's

22   time barred if all of the elements existed outside the

23   limitations period.

24        So the question is whether, as alleged and

08:05AM 25   argued, that unitary stream-of-benefits bribe involving Huang

1    and Huizar directed at obtaining assistance with the

2    L.A. Grand Hotel project existed one day outside the

3    limitations period.  And I think clearly based on the FSI it

4    did.

08:06AM    5         It describes an undifferentiated course of

6    conduct involving Mr. Huizar and Mr. Huang running from 2013 to

7    2018 all with the same alleged object which is assistance with

8    the L.A. Grand Hotel project.  That unitary continuous course

9    of conduct didn't magically start and stop one day before and

08:06AM    10   then resume one day after the limitations period as the

11   Government argues in opposition.  If it was a unitary offense,

12   it ran continuously for the entire time.

13        And the activity that's alleged outside the

14   period is more than sufficient to satisfy the elements of

08:06AM    15   Section 666.  And in particular, as the Court recognized in its

16   duplicity holding one of the things it specifically alleged is

17   the 2014 loan from or the collateral that was provided to

18   secure the loan which was obviously outside the limitations

19   period.

08:06AM    20        So I don't -- I think, you know, the bottom line

21   is that, based on the premises that have already been

22   established, I don't believe that there is really a sound basis

23   for differentiating between a unitary bribe that, you know,

24   existed within the limitations period and a unitary bribe that

08:07AM    25   looks exactly the same and had the same goal and proceeded in

1    an undifferentiated way up to one day before which is

2    essentially what the Government is arguing.  This is just an

3    artifical attempt to end run the limitations period.

4              So with that I will submit.

08:07AM    5              THE COURT:  The Court makes the following ruling:

6              Counts 22 and 23 charge Huizar, Chan, and

7    Wei Huang and SZNW with federal program bribery in violation of

8    18 United States Code Section 666(a)(1)(B) and (a)(2).  At the

9    hearing on January 7th of 2022, the Court denied defendant's

08:08AM   10    Motion to Dismiss Counts 22 and 23 as duplicitous and partly

11    time-barred.

12              In relevant part, the Court concluded that

13    bribery was not limited to one-for-one exchanges and could be

14    accomplished through an ongoing course of conduct.  Because the

08:08AM   15    First Superseding Indictment alleged an ongoing course of

16    conduct or scheme, the Court concluded that the First

17    Superseding Indictment could be read to charge only one

18    violation in each count.

19              For example, the counts could be read to allege

08:08AM   20    that the stream of benefits from October 28, 2015, to December

21    of 2018 included -- including casino gambling chips,

22    accommodations, and travel expenses and the $575,000 in

23    collateral for Mr. Huizar's personal loan from Bank One were

24    cumulatively offered with the intent to influence Huizar in

08:08AM   25    connection with the L.A. Grand Hotel project.

1    The evidence may even show, for example, that

2 there was a single offer or solicitation of items of value even

3 if those items of value were split up over time.  Accordingly,

4 the Court concluded that Counts 22 and 23 were not duplicitous.

08:09AM    5 The Court cautioned, however, that its ruling was solely based

6 on the allegations of the First Superseding Indictment.  And

7 after hearing the evidence at trial, the Court might provide a

8 specific unanimity instruction to the jury, if necessary, or

9 require the Government to elect between any offending

08:09AM   10 duplicitous charges in Counts 22 and 23.

11    The Court for the most part also rejected

12 defendants' arguments that many of the quids and quos within

13 Counts 22 and 23 were time-barred because the First Superseding

14 Indictment limited itself to offending conduct that occurred

08:09AM   15 between October 28, 2015, and December of 2018.

16    With respect to Defendant Huizar, who was named

17 in the original Indictment, the Court concluded that this

18 entire time period was within the five-year statute of

19 limitations.  With respect to SZNW and Mr. Chan, who were not

08:10AM   20 named in the original Indictment, the Court concluded that any

21 bribes occurring more than five years before the First

22 Superseding Indictment was returned were time-barred.

23    In making its ruling as to SZNW and Mr. Chan, the

24 Court relied on *United States versus Yashar*, which is

08:10AM   25 Y-a-s-h-a-r, 166 F.3d 873, and rejected the Government's

argument that the continuing violation doctrine might extend the statute of limitations if the prosecution charged a continuous course of conduct under Section 666.

Based upon the Court's ruling, the defendants now move to dismiss Counts 22 and 23 as time-barred contending that the net result of the Court's decision is that Counts 22 and 23 must be dismissed in their entirety.  If Counts 22 and 23 allege a single stream of benefits or bribe that began with trips to Las Vegas in 2013 and includes a loan transaction from 2014, all of the elements of that bribe existed more than five years before the First Superseding Indictment was returned. And because 666 is not a continuing offense, the statute started to run once all of the elements existed, not when the last act occurred.  The single offense charged in Counts 22 and 23 pursuant to the defendants' argument are, therefore, time-barred.

Defendants' argument is based upon several misconceptions.  As an initial matter, the scheme alleged in Counts 22 and 23 is expressly limited to conduct occurring within the five-year statute of limitations and, thus, does not encompass the conduct in 2013 and 2014.  Thus, in order to obtain a conviction in Counts 22 and 23, the Government will have to prove the defendants committed Section 666 offenses during the limitation period.

There are four elements that the Government must

prove beyond a reasonable doubt to prove that the defendant

committed the offense of bribery under Section 666.

First is a corrupt solicitation or offer of

anything of value;

Two, with the intent of being influenced or

influencing any person in connection with a qualifying

transaction or series of transactions;

Three, where the transaction or series of

transactions involves anything of value of $5,000 or more; and,

Four, the relevant organization, government, or

agency received during a one-year period benefits in excess of

$10,000 under a federal program.

In this case, although the First Superseding

Indictment alleges the defendant took trips to Las Vegas as

early as 2013 and that the loan transaction occurred in 2014,

that does not necessarily mean that the elements of the offense

charged in Counts 22 and 23 were met or even first met outside

the statute of limitations period.

For example, as the Court reads the First

Superseding Indictment, the elements of the charged offenses

may not have been met until May 9 of 2017 when, according to

overt act No. 68, Ricky Zheng stated to Mr. Huang -- stated

that Mr. Huang expected to lay out everything in front of

Defendant Huizar in an upcoming trip to Cabo San Lucas which

referred to the assistance Huang expected from Defendant Huizar

on the L.A. Grand Hotel project.  Zheng stated that otherwise Chairman Huang will ask Defendant Huizar to pay back that 600,000 already.  Esparza stated that Defendant Huizar was not going to do that either, referring to paying back the 600,000.  Mr. Zheng then responded, Chairman Huang will push him.

In other words, the offer of something of value may have been forgiveness or cancelation of the loan and other benefits which occurred in 2017 rather than the initial loan transaction itself which occurred in 2014.

This example exposes the weakness of the defendants' arguments.  Defendants asked the Court to dismiss the First Superseding Indictment as a matter of law on statute of limitations grounds based upon their construction of the Government's allegations.  The Court cannot do so when the allegations of the First Superseding Indictment also support a reading that defendants committed offending conduct which occurred within the statute of limitations, especially given that Counts 22 and 23 limit themselves to such timely conduct.  It will be for a jury to decide whether the elements of the offense, in fact, occurred within the statute of limitations based upon the instructions of the Court that a conviction may only rest on post-limitations conduct.

Moreover, the Court agrees with the Government that the fact -- that the fact that the Government -- that the defendants may have committed additional violations of the

1  statute earlier in time does not bar their prosecution for

2  independent commissions of the crime within the statute of

3  limitations.

4          Defendants argue relying on the 7th Circuit's

08:15AM  5  decision in *Yashar* that the statute of limitations began to run

6  once all of the elements of the offense existed regardless of

7  whether the defendants continued to engage in criminal conduct.

8  However, as the 11th Circuit in *United States versus Keen* at

9  676 F.3d 981 recognized, the 7th Circuit's decision in *Yashar*

08:16AM  10  is not applicable to the facts presented here.  *Yashar* did not

11  involve the independent commission of a second 666 offense.

12  Rather, *Yashar* involved a defendant who, while continuing to

13  commit related criminal conduct after completing an earlier 666

14  offense, never committed a second 666 offense.

08:16AM  15          As the 8th Circuit held in *United States versus*

16  *Askia*, A-s-k-i-a, at 893 F.3d 1110 -- and I quote -- "We see

17  nothing in criminal law that would prevent the prosecution of

18  an individual who commits a series of thefts or embezzlements

19  over a number of years from being prosecuted for those crimes

08:16AM  20  that occurred within the limitations period just because a few

21  of the embezzlements or thefts occurred outside the five years.

22  The Government is precluded from prosecuting violations

23  committed more than five years prior to the date of the

24  Indictment but would be free to charge and prosecute any

08:16AM  25  666(a)(1)(A) violations committed within the limitation

period."  That's the end of the quote.

As the Court has already concluded, regardless of any earlier conduct alleged, the First Superseding Indictment adequately alleges the defendants committed independent 666 violations within the limitation period.

Notably, defendants fail to recognize that a continuing offense, which is a term of art for the purposes of the statute of limitations, is not the same as a single scheme or ongoing course of illegal conduct which may be charged in a single count without rendering the count duplicitous.

As the 10th Circuit stated in the *Jaynes* case, J-a-y-n-e-s, at 75 F.3d 1493, a continuing offense is not the same as a scheme or pattern of illegal conduct.  Separate offenses may be a part of a common scheme about being continuing for limitations periods.  Accordingly, as the Government points out, it is entirely consistent for the Court to hold 666 is not a continuing offense for limitation purposes while also recognizing a continuous course of conduct or single scheme can be aggregated into a single count without making the count duplicitous.

In fact, the 7th Circuit in *Yashar* concluded as much.  While it held that 666 was not a continuing offense for limitations purposes, it also recognized that multiple payments over a period of time could be charged in a single count as part of a single scheme.

1          Finally, and perhaps most importantly, defendants

2    entirely ignore that the Court left open the possibly that,

3    after hearing the evidence, the Court might conclude that the

4    evidence does not support that defendants engaged in a single

08:18AM   5    scheme between October 28, 2015, and December of 2018 and,

6    thus, the Court must -- might ultimately conclude that

7    Counts 22 and 23 were, in fact, duplicitous.

8          In such an event, the Court will provide a

9    specific unanimity instruction to the jury, if necessary, or

08:19AM   10   require the Government to elect between the offending

11   duplicitous charges in those counts.  If the Court so concludes

12   and provides a unanimity instruction or requires the Government

13   to elect between specific transactions or bribes that occurred

14   after October 28, 2015, the counts would clearly not be barred

08:19AM   15   by the statute of limitations.

16         Defendants recognized as much in their previous

17   Motion to Dismiss as they did not argue that the counts in

18   their entirety were time-barred but instead argued that certain

19   of the quids and quos were time-barred.

08:19AM   20         For the foregoing reasons, the defendants' joint

21   Motion to Dismiss, docket No. 359, is denied.

22         The next issue that I want to -- or motions that

23   I want to rule on are the two pending motions to sever.  Those

24   motions are docket Nos. 200 and 201 filed by Mr. Steingard's

08:20AM   25   clients and Mr. Neuman's clients.

                    This matter has been pending for some time, and

the Court on January 7th held a hearing on the defendants'

supplemental Motion to Dismiss which is docket No. 251,

Counts 2 through 17, and the defendants' motion to sever which

08:20AM   I had just referred to as dockets 200 and 201.

                    I made an extensive ruling on the record and

denied the supplemental Motion to Dismiss.  I concluded that

the supplemental Motion to Dismiss which challenged the First

Superseding Indictment based upon *Kotteakos* was premature

08:21AM   because it necessarily involved the evaluation of evidence that

the Government will present or offer at trial.

                    Specifically, I ruled that there were -- that

whether there are one or more schemes to defraud should be

resolved at trial by a properly instructed jury.

08:21AM   In denying that motion, I also noted whether the

Government can prove a single scheme to defraud or whether the

evidence will demonstrate that there were multiple schemes was

also relevant to Defendant Lee, 940 Hill, and SZNW's motion to

sever.

08:21AM   At the January 7th hearing, I issued a tentative

ruling on the severance motion and discussed my tentative

thoughts with counsel regarding severance.

                    So I'm prepared to rule on this motion.  I don't

think I need any argument, but if anybody wants to argue, I

08:22AM   will hear briefly from you.

```
 1              Hearing no request for argument, I will then
 2    rule.
 3              Although the Court concluded the defendants were
 4    properly joined under Federal Rule of Criminal Procedure 8(b),
 5    the Court also noted that notwithstanding proper joinder of the
 6    defendants' Rule 14, which both defendants moved under, and the
 7    Supreme Court case such as Zafiro, Z-a-f-i-r-o, at 506 U.S. 534
 8    cautioned that the Court should consider severance under
 9    Rule 14 if there is a serious risk that a joint trial would
10    compromise a specific trial right or prevent a jury from making
11    a reliable judgment about guilt or innocence.
12              At the January 7th hearing, the Court explored
13    the potential issues relating to the admissibility of
14    statements or other evidence that would be offered against the
15    defendants if the Government failed to satisfy the Court by a
16    preponderance of the evidence that a single scheme exists and
17    that Lee, 940 Hill, and SZNW were participants in a single
18    scheme.
19              On the single scheme issue, the Court cited to
20    United States versus Chandler at 388 F.3d 796 -- and I quote --
21    "For a wheel conspiracy to exist, those people who formed the
22    wheel's spokes must have been aware and must do something in
23    furtherance of some single illegal enterprise.  If not, there
24    is no rim to enclose the spokes.  A single conspiracy is not
25    established in absence of any evidence that a common goal
```

overlapping membership among various spokes of a conspiracy or
interdependence of the spokes.  Indeed, in order for a single
conspiracy or scheme to exist, the co-conspirators or
co-schemers must not only share the common goal but must
share -- not only must share the same goal but must share a
common goal."

         The Court tentatively concluded that, based upon
the evidence relied on by the Government in its omnibus
opposition to the defendants' motion to sever, that the
Government would not be able to demonstrate that 940 Hill, Lee,
and SZNW were participants in a single scheme.  However, the
Court decided to give the Government an opportunity to
demonstrate that there was a single scheme before ruling on the
motions to sever.

         Specifically, the Court ordered the Government to
file an offer of proof identifying the evidence that the
Government would offer to establish a single scheme.  The
Court's order was very specific.  The offer of proof was
supposed to include all of the evidence the Government intended
to offer to establish that its honest services fraud charge
alleged in Counts 2 through 17 of the First Superseding
Indictment established a single bribery scheme and that
940 Hill, Lee, and SZNW were participants in that alleged
single scheme.

         The Court's minute order filed on January 7th

08:25AM

also specifically advised the Government what the Court expected and wanted in the offer of proof.  That minute order indicated that the Government shall set forth the evidence it intends to offer to establish that defendants 940 Hill, Lee, SZNW were participants in a single scheme alleged in the First Superseding Indictment.

08:25AM

        The Government shall narrowly tailor and limit the offer of proof only to the evidence relevant to the existence of a single scheme and defendants 940 Hill, Lee, and SZNW's participation in that scheme.

08:26AM

        On January 21st the Government filed its offer of proof which appears as docket No. 353 entitled Government's supplemental brief in support of omnibus opposition to defendants Lee, 940 Hill, and SZNW's motions to sever.  On February 3rd of 2022, defendants Lee, 940 Hill, and SZNW filed their replies which appear as docket Nos. 369 and 370.

08:26AM

        After carefully reviewing the Government's offer of proof, the Court concludes the Government has failed to present sufficient evidence from which the Court could find or conclude at this time by a preponderance of the evidence that a single scheme exists.  The Government fails to cite to evidence that connects Lee, 940 Hill to SZNW or any of the other developers or schemes alleged in the First Superseding Indictment.

08:27AM

        As the defendant Lee states, the Government's

submission does not identify any evidence that Mr. Lee or

940 Hill were aware of any other developers, corrupt conduct

with relation to Mr. Huizar or his office at the time of Lee's

alleged bribe.  It does not identify any evidence demonstrating

that Mr. Lee and 940 Hill benefited from the alleged activities

of other developers relating to other projects, nor does the

Government offer evidence that Lee and 940 Hill had a goal

except to move the 940 Hill development forward.

While the Government argues that Lee and 940 Hill

must have intended to participate in an overall scheme to keep

Mr. Huizar and his family in power, because Mr. Lee intended to

pursue other projects in Huizar's district, it offers no

evidence of this.

The Court agrees that the Government has failed

to offer evidence as to defendant Lee, 940 Hill that even

suggests that they were part of a single scheme to defraud with

respect to Counts 2 through 17.

While the Government argues at length that a

single scheme exists as to Huizar, Esparza, and others, even if

true, that is irrelevant as to whether Lee and 940 Hill were

part of that scheme as a spoke that was interconnected with

other developers, had a common goal, and/or benefited from the

success of the entire operation.  The Government's submission

only confirms that Lee, 940 Hill's motion for severance should

be granted.

08:28AM

The same is true for SZNW.  The Government's offer of proof fails to establish by a preponderance of the evidence that there was an overall agreement among all alleged schemers that the spokes knew each other, that each of the spokes' benefits were probably dependent upon the spokes of others, or that they shared a common goal.

08:29AM

Because the Government should have fully understood the Court's instructions that the offer of proof focused solely on the evidence of a single scheme, the only reasonable conclusion after reviewing the Government's offer of proof is the Government did not present such evidence because none exists.

08:29AM

In ruling on severance, the Court recognizes that the Supreme Court has indicated in the federal system that there is a definite preference for joint trials for defendants who are indicted together.  The Supreme Court held that joint trials play a vital role in the criminal justice system.  This is especially true in this district at this point in time given our huge backlog of criminal cases resulting from delays caused by COVID-19.  Joint trials also promote efficiency and serve the interest of justice by avoiding inconsistent verdicts.

08:29AM

In deciding the severance issue before trial, the Court does not have the benefit of a fully developed record upon which to gauge whether to grant a severance motion.

08:30AM

Instead, the Court must look at the First Superseding

Indictment and determine prospectively the parties' anticipated evidence and theories and strategies for presenting their cases in order to determine whether severance is appropriate.

As the Court noted in the *Dunkin* case at 204 Westlaw 964113, while a trial court must decide a severance motion prospectively based upon its discretionary assessments of the strategies and evidence as forecast by the parties, an appellate court has a full trial record by which it may, with the ambit of its review powers, determine the existence of irreconcilable conflict and its possible effect on the verdict. That is why the Court requested the Government to file its offer of proof so the Court could make a reasoned assessment of the strategies and evidence in this case.

After carefully considering the First Superseding Indictment and the Government's offer of proof, the Court concludes the severance of Lee, 940 Hill, and SZNW is appropriate because there is a significant danger that defendants will be severely prejudiced by a joint trial with their co-defendants.

To assess the prejudicial effect of a joint trial, the 9th Circuit in cases such as *Brady* at 579 F.2d 1121; *Gaines*, G-a-i-n-e-s, at 563 F.3d 1352; and *Escalante*, E-s-c-a-l-a-n-t-e, at 637 F.2d 1197 have held that the Court must examine whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate

defendants given its volume and limited admissibility among defendants.  The Court recognizes that the 9th Circuit has held that the prejudicial effect of evidence relating to the guilt of co-defendants in most cases can be neutralized or addressed by careful jury instructions.

The Court has full faith in our jury system and every reason to believe that jurors are capable of understanding and applying limiting instructions.  In this case, however, given the complexity, the number of defendants, and unindicted co-schemers, the nature, scope, and duration of the wide variety of schemes at issue, the Court concludes that jury instructions will not be an acceptable method of eliminating or safeguarding against the risk of prejudice to the defendants.

The Court recognizes that there is always a risk of some degree of garden variety prejudice in any joint trial, and that type of prejudice does not suffice in and of itself to warrant severance.  The risk of prejudice varies with the facts of each case.

In determining whether jurors can reasonably be expected to compartmentalize evidence, this Court considers a number of factors:  The number of defendants, the number of counts, the complexity of the Indictment, the estimated length of trial, disparities and the amount or type of proof offered against each defendant, disparities and the degrees of

involvement by each defendant in the overall scheme, possible conflict between various defense theories or trial strategies, prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant.

08:33AM      Judicial economy, the efficient administration of justice is also a factor to consider in assessing whether to sever.  The cases noted that none of these factors is by itself dispositive.  Instead, the Court must consider them together to determine whether the jury will be able to attribute the evidence accurately as to each defendant.

      The ultimate question for the Court is whether the jury will be able to separate the evidence presented to it and distinguish among the defendants in a multi-defendant suit.

      In this case the Court concludes that a jury would find it difficult to compartmentalize the evidence, and because there is a corresponding high risk to defendants Lee, 940 Hill, and SZNW, severance under Rule 14(b) is justified.

      As the number of counts and defendants in an Indictment increases, the resulting complex trial record makes it more difficult for a jury to clearly focus on and consider the evidence and charges against the defendant separately.  In this case, the approximately 139-page First Superseding Indictment alleges 41 counts and 452 overt acts.  The Indictment charges a RICO enterprise honest services mail and wire fraud, travel act violations, bribery, money laundering,

false statements, tax evasion, and obstruction.

They name six defendants, and there are at least six cooperating co-schemers who have either pled guilty or are subject to non-prosecution agreements.  There are charged and uncharged city officials and their associates, developers and their associates, consultants, and lobbyists all who played a role in the alleged pay-to-play schemes.  Some of the defendants are named only in separate substantive counts, and others in both RICO and substantive counts.  Many of the predicate RICO acts correspond to the substantive counts while others do not.

There are four pay-to-play schemes involving the development of at least four separate properties.  The First Superseding Indictment includes multiple other schemes not involving specific property developments.  84 of the 542 overt acts and 7 of the 41 counts are asserted against SZNW.  33 of the 452 overt acts and 3 of the 41 counts are asserted against Lee and 940 Hill.

Defendant Lee and 940 Hill is charged only with conduct relating to a single alleged pay-to-play scheme involving the 940 Hill property.  Defendant SZNW is charged with conduct primarily relating to its development of the L.A. Grand Hotel.

The complexity of this case increases the risk of prejudice to the defendants who are charged with a scheme to

defraud and the honest services fraud and bribery counts but
not in the RICO conspiracy.  To determine defendant Lee,
940 Hill, and SZNW's guilt or innocence in a joint trial, a
jury would be required to distinguish between the RICO
conspiracy evidence and the substantive scheme counts evidence
which would make determining whether the Government had proven
the elements of each charge against each defendant even more
complicated and confusing.

       At the end of the trial, the jurors would be
required to remember all of the evidence separately admitted on
each of the pay-to-play schemes and to which counts and to whom
it applies, a daunting task given the number of charges, overt
acts, schemes, and individuals involved.  The risk of prejudice
is high, and it's unlikely the jury would be able to
compartmentalize and consider the evidence relative to a
particular defendant under these circumstances.

       The Government argues that the crimes charged
against Lee, 940 Hill, and SZNW require proof of the entire
fraudulent scheme including evidence of Defendant Huizar and
Chan and their co-schemers dealing with other developers
seeking favorable treatment.

       The First Superseding Indictment RICO and honest
services and bribery charges will allow the Government to
introduce some evidence of criminal activities in which
defendants did not participate in order to prove the enterprise

and the fraudulent scheme.  However, in this case, there's a substantial amount of evidence of schemes and acts which these defendants played absolutely no part.

While evidence relating to their development projects will be used to prove the existence of the enterprise and scheme to defraud against Defendants Huizar and Chan, the majority of the evidence in this case involves unrelated conduct involving Huizar and Chan and other co-schemers and has absolutely nothing to do with Lee, 940 Hill, and SZNW.

This evidentiary disparity where a jury will listen to countless hours of testimony related to other conduct and other defendants is particularly prejudicial.  Inevitable prejudice is caused by the slow but deliberate accumulation of evidence against the major players.

Defendants have made a sufficient showing of the disproportional involvement in the overall scheme to establish the substantial risk that they would be prejudiced by the gradually accumulating effect of evidence of Mr. Huizar's widespread wrongdoing.  The sheer volume of evidence against the other schemers would dwarf the amount of evidence presented against defendants Lee, 940 Hill, and SZNW.  Those defendants may sit in court for days and even weeks without their names even being mentioned which would result in harm that no limiting instruction could cure.

Moreover, there is a real danger that the jury

will infer that, because of the overwhelming amount of evidence that other developers paid Mr. Huizar bribes to benefit their projects, that defendants Lee, 940 Hill, and SZNW must have also paid a bribe to Mr. Huizar.

The Court is mindful of its duty to protect the integrity of the jury's consideration of the evidence against the more minimally involved defendants by guarding against both guilt by association and guilt by confusion.

The fact that there would be an evidentiary overlap in the separate trials -- in the separate trials that may result in longer trial time is not dispositive in this case.  And the fact that multiple trials may take more time than one should be weighed, but it's not determinative.  To the contrary, the Court concludes that the interest of judicial economy, the efficient administration of justice is best served by severance.

Absence severance, defendant Lee, 940 Hill, and SZNW would be required to sit through a trial at least three times as long as would be necessary to try them separately. Severance would permit more streamlined trials with clear evidentiary boundaries and meaningful limiting instructions to guide the jury to consider the general potentially prejudicial scheme evidence in its proper compartment.  The Government would be able to tailor and limit its witnesses and its exhibits.

1        Jurors in the cases against defendants Lee,

2   940 Hill, and SZNW would not have to sit through complex

3   instructions relating to RICO charges and money laundering.

4   Moreover, the jury in the larger more complex RICO case would

5   be able to focus on the evidence against defendants Huizar and

6   Chan and not worrying about parsing out the First Superseding

7   Indictment counts and supporting evidence that apply to the

8   other defendants.

9        The Government contends that all of these issues

10  can be minimized through the use of limiting instructions.

11  There is a strong presumption that jurors are able to

12  compartmentalize evidence by following or respecting limiting

13  instructions that specified defendants against whom the

14  evidence may be considered.  But in this case there is a

15  significant risk that the overwhelming nature of the

16  pay-to-play evidence against defendants Huizar and Chan will

17  spill over and influence the Court's consideration of the

18  limited discrete evidence that will be properly admitted

19  against defendants Lee, 940 Hill, and SZNW that simply cannot

20  be addressed by limiting instructions.

21        After consideration of the relevant factors, the

22  Court finds that the complex nature of this case presents more

23  than the garden variety prejudice inherent in any joint trial.

24  The Court finds that a joint trial would result in the risk

25  that the jury would improperly rely on spillover evidence

```
 1    against defendants Lee, 940 Hill, and SZNW.  The Court, thus,
 2    concludes that severance in this case will minimize the overall
 3    potential for prejudice for all parties and maximize the
 4    reliability of jury's judgments about guilt or innocence.
 5               Accordingly, the Court will grant defendants'
 6    motions for severance.
 7               All right.  That raises the issue then of timing.
 8    At the hearing on January 31st where I agreed to continue the
 9    trial of Mr. Huizar and Chan to October 18th, we discussed
10    several of the pretrial dates that we're approaching which were
11    dependent upon -- in terms of the nature of the work, depending
12    upon whether or not the Court would grant the severance motion.
13               As a result, the Court paused several of the
14    pretrial deadlines that had been set in the court's order which
15    set the pretrial schedule for the trial which was set for
16    May 24th of 2022.
17               I also looked at that order -- Mr. Snyder, why
18    was your motion timely?  The motion deadline to dismiss had
19    passed.
20               MR. SNYDER:  It was timely because it was based
21    on the Court's ruling, and so we couldn't have brought the
22    motion earlier.  I mean, reality is things are going to come up
23    throughout the course of the case and trying to bring things as
24    quickly as possible to the Court's attention.
25               But the motion didn't arise -- the basis for the
```

motion didn't arise until the Court issued a ruling that kind

of agreed partly with us and agreed partly with the Government.

THE COURT:  The same thing happened in connection

with the supplemental Motion to Dismiss, and there was an

ex parte application requesting permission to file the motion

that I granted.

MR. SNYDER:  Understood.  I think we should do

that going forward.  So we will.

THE COURT:  All right.  In any event, so several

of those dates, for example, the disclosure of the Government's

witness list, the exhibits which are subject to the Court's

amended trial order with respect to disclosure, meet and

confer, joint pretrial stipulation, the motions in limine dates

which were for February -- March 7th -- filing of the motions

in limine were March 9, and the hearing on the motions in

limine for March 28.  All those dates were, as I said, held in

abeyance pending the Court's ruling.  The rest of the dates set

forth in the order all look like they fall -- they begin on

March 25th.

So we have to -- with respect to the trial date,

as counsel may or may not know, we're fortunately coming out of

our COVID-19 era, but we're still on a system -- a reservation

system for jury trials, and there are preferences for jury

trials.  Obviously the preference is for criminal cases, but

the first preference is with respect to cases where defendants

1       have been in custody or are in custody.

2               So we have a procedure by which we, within a

3       certain time frame given the trial date, have to make a request

4       for a jury panel.  I don't know how much longer we're going to

08:47AM  5      be operating under that system or whether or not there are -- I

6       have several criminal custody cases that have to be tried which

7       hopefully will be tried between now and May 24th.

8               But with respect to -- as I indicated, I think it

9       was in response to Mr. Steingard's questions, my intention is

08:47AM  10     to try Mr. Lee and 940 Hill first.  I'm prepared to at least

11      tentatively go forward with the May 24th trial date for those

12      two defendants which means that I'm going to have to work out

13      the various dates that we put on hold.  I think they're --

14      given just eyeballing some of these dates, I think they're

08:48AM  15     still all very doable with a May 24th, '22, trial date.

16              Let me hear from Mr. Neuman.

17              MR. NEUMAN:  Thank you, Your Honor.  I'm

18      scrambling here to find that scheduling order.

19              THE COURT:  It's docket No. 187.

08:48AM  20             MR. NEUMAN:  Thank you.

21              THE COURT:  The only thing that we -- I have on

22      my notes that the -- all of the experts had been disclosed by

23      the date of January 15th.  The first date that we paused was

24      the Government's witness list which is February 15th and the

08:49AM  25     Government's exhibit list February 15th and then the exchange

1    of the motions in limine which was February 14th.  Those are

2    really the dates that are at issue.

3              There is one date that I couldn't put my hands on

4    in terms of -- it was -- whether or not it had been

08:49AM   5    accomplished, and that was the 404(b) evidence that was

6    supposed to be disclosed according to the order on February 1st

7    of 2022.  I don't know if that had -- if we paused that date I

8    don't remember.  I assume that we did since it was a

9    February 1st date.

08:49AM   10              MR. NEUMAN:  The Government, at least as to my

11   clients, did comply with that.  So we do have that notice.

12              THE COURT:  You have to get closer to the

13   microphone.

14              MR. NEUMAN:  I'm sorry.  As to the 404(b), we do

08:49AM   15   have that notice at least as to my clients.

16              THE COURT:  Okay.

17              MR. NEUMAN:  We did get that one done.

18   Everything else was paused.  I found the scheduling order.  So

19   thank you, Your Honor.

08:50AM   20              My sense is I'd like to talk to my team, but we

21   might, if the Court is amenable, want an extra two weeks or so

22   beyond the May 24th date just given the time that's passed, but

23   I think within that time frame.  And if the Court is not

24   amenable we will get ready for May 24th and work out a schedule

08:50AM   25   with the Government.  I think it probably makes sense for us to

confer with the Government on schedule rather than try to do it

here.

THE COURT:  It is not my intent to go through and

negotiate dates.  You folks have been able to work together and

come up with dates in the past.

MR. NEUMAN:  I know one of my -- my associate who

is supposed to try the case with me has a wedding some day.

That's why I'm hesitant.  He's not getting married.  That's why

I want to be careful, Your Honor.

THE COURT:  He is or is not getting married?

MR. NEUMAN:  He has to go to a close family

member's wedding is what I understand.  So I just -- like I

say, I think, if we have two weeks or so, we should be fine.

But if the Court wants to do it May 24th, we will obviously be

ready.  That's what we said.

THE COURT:  I don't have any problem with that.

Unfortunately -- again, we're somewhat in a state of flux

although -- continuing to go out I think gives us a better

chance of actually having a firm trial date which, of course,

is always my preference and I'm sure your preference so we can

have some certainty in terms of witnesses.

MR. NEUMAN:  He's telling me it's Memorial -- I

just texted him.  He's telling me Memorial Day weekend which is

probably the 30th I'm guessing.

THE COURT:  Well, two weeks it looks like would

```
 1    bring us to -- actually that would be three weeks.  Probably

 2    June 14th.

 3                    MR. NEUMAN:  That's fine for us.  I see the

 4    Government conferring.

 5                    THE COURT:  Mr. Jenkins?

 6                    MR. JENKINS:  We will be ready, Your Honor.

 7                    THE COURT:  Okay.

 8                    MR. NEUMAN:  So we can work backwards from that

 9    with the Government for appropriate dates if that is amenable

10    with the Court.

11                    THE COURT:  Well, let's then -- we will continue

12    the -- I actually don't have -- we will set the date for

13    940 Hill on June 14th, and then I will ask counsel to meet and

14    confer.

15                    How many motions in limine do you expect to file?

16                    MR. NEUMAN:  I have to go back and count, but I

17    think it was five or so.  I think -- there is this question, in

18    light of the Court's ruling, whether we should file a motion to

19    exclude evidence outside of the 940 Hill, Lee scheme, or we can

20    just address that during the course of the trial.  That is

21    obviously an issue that depended on the Court's ruling.  But,

22    otherwise, the 404(b) is going to be the most substantive

23    motion in limine that we have to deal with I think in this

24    case.

25                    THE COURT:  All right.  I'm looking at the -- we
```

had hearings on the motions in limine on the other schedule --

on the May 24th trial schedule for March 28th which gave me two

months to work on those.  I'd like to try to keep the same

framework because you folks file a lot of paper and it takes me

08:55AM   spending an enormous amount of time in this case.

Also, I urge you to -- I'm about ready to put a

page limitation on these motions because I, over the weekend,

reviewed this most recent motion to compel production of

cooperator devices and accounts.  It's some 33 pages long.  I

08:55AM   felt in the middle of it that I was rereading the same motion.

There are just too many pages of irrelevant information and

argument that is just simply not necessary.

So I urge you to, when preparing these motions,

to keep that in mind and limit the number of pages.  I have

08:56AM   always found writing a brief is much harder if it's shorter,

but it's also much more persuasive and much more helpful to the

Court because the amount of -- the quantity of materials that I

have read so far in this case -- and I know I'm going to have

to continue to read -- is substantial.  And I do read

08:56AM   everything.  But it's getting to be a little bit monotonous

reading motions that go on and on and on and on for, in my

view, not advancing the ball.

In any event, with that June 14th trial date,

again, keeping in mind hopefully our reservation system will be

08:56AM   complete or abandoned by that period of time and we can simply

go back to the old system of telling the jury commissioner that

we need a jury for June 14th and we won't have to make a

reservation.  And I will keep counsel advised as we go on in

terms of whether or not we can actually try it on June 14th.

As I said, I hope to have my custody cases tried

this month and certainly by the end of April.  Civil cases

unfortunately don't stand much chance of getting tried for a

while.  Hopefully we will be able to squeeze some civil cases

in.

Before we conclude, let me --

MR. NEUMAN:  Can I raise one issue, Your Honor?

THE COURT:  Sure.

MR. NEUMAN:  This is a bit premature because I

haven't had a chance to raise it with the Government directly.

I know my co-counsel has.  I just want to get a sense of the

Court's timing if we were to do this which is, given the high

profile nature of this case, we have discussed a jury

questionnaire.  Like I said, I haven't conferred with the

Government yet on their view, and I'm not sure what kind of

timing is necessary if the Court were to allow such a

questionnaire to be sent out.

THE COURT:  Well, in this particular case with

respect to your client, you can go ahead and prepare a

questionnaire but I doubt whether or not I'm inclined to use a

questionnaire.  I do use a questionnaire in connection with

selecting the jury.  It's typically one or two pages, and I

incorporate counsel's suggested questions in my questionnaire,

and that's passed out to the jury in addition to the background

questionnaire.

But I don't think -- you can file something to

convince me otherwise, but I don't think a 30-page

questionnaire or even a multiple page questionnaire in this

case passed out prior to the jury and then having counsel

review the results of that questionnaire, I just don't think

it's necessary in this case.  I think we can do it the

old-fashioned way.

MR. NEUMAN:  Okay.  I will talk to the Government

and, if we need to, file something with the Court if

appropriate.

THE COURT:  Okay.  Mr. Steingard, that raises the

issue as to when we're going to be able to try your case.

MR. STEINGARD:  Yes.  Thank you, Your Honor.  My

thinking is -- and I'm guessing this would hold true for the

Government -- we would probably prefer to have a hard date as

opposed to a trailing situation if the Court is comfortable

with that.

THE COURT:  Sure.  I mean, I'm always in favor of

firm dates.  Unfortunately our firm dates over the last two

years have not been so firm.

I think we have to also focus on the fact that --

I just raise this, and I will hear from Mr. Jenkins.  If we try
the Lee, 940 Hill on June 14th, based upon what we had
discussed in prior hearings, that case may take a week or a
little longer.

09:00AM
              Right, Mr. Jenkins?

              MR. JENKINS:  That is correct, Your Honor.

              THE COURT:  But we're going to need a break from
the conclusion of that case because your client's case, as I
understand, is going to be far more -- is going to take --
09:00AM
there's going to be a lot more evidence, and it's going to take
quite a bit longer.  I don't want to put the Government in the
position of having to prepare for your trial during the trial
of Mr. Neuman's client.

              I'm thinking maybe a firm date sometime in July.

09:01AM
              MR. STEINGARD:  That's where I was at too,
Your Honor.  First of all, we have that 4th of July holiday,
jurors' plans, other counsel's plans, the Court's plans.  So I
was thinking July --

              THE COURT:  I have no plans other than to try
09:01AM
this case.  It seems that my Christmas and any New Years was
devoted to motions in this case.  So I'm in it for the long
haul.

              I was thinking maybe July 26th.

              MR. STEINGARD:  I think that's fine.  I think
09:01AM
that -- yeah.  That works for me.

1          THE COURT:  Mr. Jenkins?

2          MR. JENKINS:  Your Honor, in light of the

3   comment, we still anticipate that would require us to be

4   preparing for that trial.  We expect Shen Zen trial to last

09:02AM   5   upwards of four weeks.

6          THE COURT:  Well, I don't think it's going to

7   take four weeks.  I don't know what you -- and we're going to

8   work through the case management issues on this case because I

9   have yet to see how this case is going to take four weeks.

09:02AM  10   There is additional testimony and additional evidence, but I

11   can't imagine the case taking more than a couple weeks.

12          In fact, once I get a better handle on -- that

13   was the problem with the offer of proof.  I am continually

14   perplexed not only by Government lawyers but also defense

09:02AM  15   lawyers.  When I ask for an offer of proof, I don't want just

16   some general argument in terms of what may be out there or may

17   not be out there, which may come to fruition, may not come to

18   fruition.  I want actual evidence.

19          Attaching proffer agreements, pleas, that is of

09:03AM  20   no help whatsoever in terms of what is the nuts and bolts

21   evidence that you're going to produce.  I would have expected,

22   if there was evidence, for example, of the consultants.  You

23   are going to try to use the consultants as the bridge to

24   connect all of these -- all of the developer defendants.

09:03AM  25          Maybe the -- I guess the evidence doesn't exist,

but I didn't see any evidence that, you know -- I once had a

case of -- a bid rigging case where everybody got in the room

and said, okay, here's what we're going to do and here's how

we're going to do it.  We're cutting up the market, and we're

09:03AM  going to do this and this and this.  I guess that evidence

doesn't exist here.

We have a number of consultants, a number of

lobbyists running around doing various things, but they're all

doing it and not in connection with the overall single scheme

09:04AM  to defraud.  They're all separately trying to move their

clients, the developer's respective projects.  That's the

problem I see.

MR. JENKINS:  Understood, Your Honor.  With that

in mind, it will take us time to fine tune it.  I think we can

09:04AM  certainly fine tune it consistent with the Court's ruling.  We

would just ask for early August in part because there will be

multiple witnesses.  It's in the middle of people's travel

schedules.  A lot of these witnesses will just have testified

in June.

09:04AM  THE COURT:  All right.  August 2nd.

MR. STEINGARD:  That's fine by the defense.

MR. JENKINS:  Thank you, Your Honor.

MR. STEINGARD:  Your Honor, I assume what you'd

like is a -- what I think will be a different schedule of --

09:04AM  THE COURT:  Yes.  Yes.  With an August 2nd date,

I expect that you're going to now go back and consistent with

the -- the timing of the schedule in docket No. 187, go back

and work out another schedule that is somewhat consistent with

that.

09:05AM          MR. STEINGARD:  Okay.  Very good.  The only

question I have is whether Your Honor is still comfortable if,

for instance, the Huizar team or the 940 Hill, Lee's team have

a motion that we feel is appropriate to join in or to be a part

of, are you still comfortable with us doing it as a group as

09:05AM    opposed to do you now slice the case up where it's 940 Hill and

Lee, Shen Zen, and the Huizar team.  I don't want to make

duplicate work.  For example, the Motion to Compel is a joint

motion.  Are you comfortable with us still doing that?

          THE COURT:  Well, on certain motions like that.

09:05AM    Obviously, if it's case specific, there's not going to be any

joint motion.  And no more are we going to have -- well, I

don't know if that answers your question.

          MR. STEINGARD:  It absolutely does.  I think

that's all I have.  Thank you.

09:05AM          THE COURT:  All right.  I don't have anything

else.

          Oh, and this motion to compel, first, it took me

a long time to figure out what cooperators' devices and

accounts were or are.  But I guess what leaped out at me is the

09:06AM    phone.  I, quite frankly, lost interest in the motion at some

1    point in time although it looks like my underlinings go all the

2    way to page 23.

3              As I -- again, I just read this briefly.  As I

4    understand it, Mr. Huizar's phone is in the possession of the

09:07AM    5    Government, and the Government has been unable to access

6    Mr. Huizar's phone.  There was a search warrant that was issued

7    for the phone, and there's going to be another extension of

8    that search warrant applied for by the Government.

9              Why isn't Mr. Huizar entitled to have his -- not

09:08AM   10    his phone -- I understand the Government is going to maintain

11    possession of the phone in hopes they can access it.  But why

12    isn't a copy of the contents of the phone -- why can't

13    Mr. Huizar make that?

14              MS. DRAGALIN:  Your Honor, there are a couple

09:08AM   15    reasons for that.  One is right now the phone is physically

16    connected to a specific type of device that is continuously

17    trying to break the passcode that's on it.  And so removing the

18    device from that connected device would pause our efforts in

19    trying to continuously try different combinations of passcodes.

09:08AM   20              The other thing is that defense counsel -- prior

21    defense counsel had represented to us that Mr. Huizar does not

22    recall his iTunes password.  And without the iTunes password,

23    there is no way -- my understanding is there is no way to make

24    a forensic image of this phone because you cannot break into it

09:09AM   25    to extract out the data on it without that password.

1          And so it is currently hooked up to a device

2     trying to break the password.  But our understanding is that

3     the defense also does not have that password.  So they're

4     asking for a device to -- into which they have previously

09:09AM  5     represented to us they cannot enter.

6          The other additional fact that's not included in

7     the motion, Your Honor, is that prior counsel had previously

8     imaged this device before giving it to the Government.  And so

9     the defense should have an image of this device already in

09:09AM 10     their possession prepared and created by Defendant Huizar's

11     prior counsel.

12          THE COURT:  Mr. Snyder, is that true?  I'm sorry.

13          MS. ALÉ:  Sorry.  This was my motion.  I will try

14     to be more concise --

09:09AM 15          THE COURT:  Why don't you go up to the lectern.

16     If you feel comfortable, you can take your mask off so we can

17     have a clear record.  Make sure the microphone is close so we

18     can hear you.

19          MS. ALÉ:  Thank you, Your Honor.  I will try to

09:10AM 20     be more concise in the future in my briefing.

21          My understanding was that the imaged phone had

22     been turned over to the Government, and I can confirm that.

23          THE COURT:  Is there something wrong with -- get

24     closer to the microphone.  Your voice is not picking up.  We've

09:10AM 25     had a problem -- we have a problem with the sound system in the

courtroom.  If you will get closer to the microphone, I think
it will be better.

          MS. ALÉ:  Yes, Your Honor.

          THE COURT:  That's better.

          MS. ALÉ:  My understanding is that the imaged
phone had been turned over to the Government by prior counsel,
and I can confirm that or the Government can confirm that.

          MS. DRAGALIN:  It was, Your Honor.  It is also
password protected, and we have been unable to actually get
into the image of the phone which is also password protected.

          MS. ALÉ:  Right.  So we don't have an imaged
copy, and we couldn't get one from prior counsel because it was
turned over to the Government.

          THE COURT:  So the imaged copy that prior counsel
had went to the Government, and you don't have a copy.

          MS. ALÉ:  That was my understanding.

          MS. DRAGALIN:  I don't believe that's correct,
Your Honor.  There was a copy made for the Government that was
turned over to the Government, but prior counsel maintained an
original.  If I can just look at Agent Civetti.  He's not sure
if that's --

          AGENT CIVETTI:  I'm not aware if they turned over
their original or if they made a copy.  I do have an image of
that original file.

          THE COURT:  We're talking about the same phone;

1    right?

2                    MS. ALÉ:  Correct, Your Honor.

3                    THE COURT:  And if prior counsel had made an

4    image of the phone and prior counsel still has the image of

09:11AM    5    that phone, then you can call prior counsel and get a copy of

6    the -- pick up the image.

7                    MS. ALÉ:  Correct, Your Honor.  That was not my

8    understanding.  But I will confirm and, if necessary, withdraw

9    that particular request.

09:11AM    10                   THE COURT:  Okay.  Well, that raises another

11   issue.  The issue with respect to this particular Motion to

12   Compel production of documents, the -- I'm going to require

13   counsel to prepare -- Government can go ahead and file an

14   opposition, but ultimately I'm going to require counsel to

09:12AM    15   prepare a joint statement.  And that joint statement is going

16   to set out each of the items that are in dispute and in a

17   paragraph form tell me why that item should be produced, and

18   the Government can respond in a couple of paragraphs as to why

19   it shouldn't be produced, and then the defense can reply.

09:12AM    20                   So I will have a joint statement and one document

21   where I can go through and I can clearly figure out what it is

22   that you want and what counsel's respective positions are with

23   respect to the items, and then I can make a ruling.  Obviously

24   the law is important, but in these discovery disputes I don't

09:13AM    25   find that it was really that helpful.

1    MS. ALÉ:  Understood, Your Honor.  I will keep

2    that in mind going forward.

3    THE COURT:  All right.  So I don't know what the

4    briefing -- this is set for -- on April something.

09:13AM   5    MS. ALÉ:  April 25th.

6    THE COURT:  April 25th.  We can keep that same

7    date.  When the Government files its opposition, I want you to

8    meet and confer and come up with this -- prepare a joint

9    statement.

09:13AM   10    MS. DRAGALIN:  Your Honor, may we -- if the Court

11    finds the joint statement format to be more useful, can we go

12    ahead and just file a joint statement where we set forth our

13    position rather than an opposition, or would the Court prefer

14    having both?

09:14AM   15    THE COURT:  No.  The joint statement is

16    preferable, but I don't want to eliminate counsel's points and

17    authorities on some case law.  I mean, there are some cases out

18    there and discovery issues that may be helpful.  So you can do

19    a separate but brief separate document setting out the

09:14AM   20    opposition in terms of simply addressing what the law is that

21    governs the particular motion.  But the guts of the motion, the

22    joint statement I think is going to be what is more helpful.

23    MS. DRAGALIN:  Understood.  Thank you,

24    Your Honor.

09:14AM   25    MS. ALÉ:  Thank you, Your Honor.

1          THE COURT:  All right.  Well, it was nice to see

2  everybody back in court again.  We will continue on with moving

3  this case forward.

4          MR. JENKINS:  Thank you, Your Honor.

09:14AM  5          MS. ALÉ:  Thank you, Your Honor.

6          (Proceedings concluded at 9:14 a.m.)

```
1                   CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5               I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                   DATED THIS  20TH  DAY OF MARCH, 2022.

16

17

18                   /S/ MIRANDA ALGORRI

19                   _____
                     MIRANDA ALGORRI, CSR NO. 12743, CRR
20                   FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```