1        **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5  **UNITED STATES OF AMERICA,**          )
                                          )
6              **PLAINTIFF,**             )      **CASE NO.**
                                          )
7              **vs.**                    )      **CR 20-326-JFW**
                                          )
8  **JOSE LUIS HUIZAR, et al.,**          )
                                          )      **PAGES 1 TO 41**
9              **DEFENDANTS.**            )
   _____)

10

11

12

13                  **REPORTER'S TRANSCRIPT OF**
                         **STATUS HEARING**
14                  **FRIDAY, MARCH 25, 2022**
                           **8:56 A.M.**
15                 **LOS ANGELES, CALIFORNIA**

16

17

18

19

20

21

22
   _____
23
                **MIRANDA ALGORRI, CSR 12743, RPR, CRR**
24              FEDERAL OFFICIAL COURT REPORTER
                350 WEST 1ST STREET, SUITE 4455
25              LOS ANGELES, CALIFORNIA 90012
                   MIRANDAALGORRI@GMAIL.COM

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         NICOLA T. HANNA
          UNITED STATES ATTORNEY
5         BY:  MACK JENKINS
          BY:  VERONICA DRAGALIN
6         BY:  CASSIE PALMER
          Assistant United States Attorneys
7         United States Courthouse
          312 North Spring Street
8         Los Angeles, California 90012

9

     **FOR THE DEFENDANT HUIZAR:**

10
          HILARY L. POTASHNER
11        FEDERAL PUBLIC DEFENDER
          BY:  CAREL ALÉ
12        BY:  ADAM OLIN
          Deputy Federal Public Defenders
13        Central District of California
          321 East Second Street
14        Los Angeles, California 90012

15
     **FOR DEFENDANT CHAN:**

16
          BRAUN & BRAUN, LLP
17        BY:  HARLAND BRAUN
          10880 Wilshire Boulevard
18        Suite 1020
          Los Angeles, California 90024

19

20   **FOR THE DEFENDANT SHENZHEN NEW WORLD I AND DEFENDANT CHAN:**

21        LAW OFFICES OF RICHARD M. STEINGARD
          BY:  RICHARD M. STEINGARD
22        800 Wilshire Boulevard
          Suite 1050
23        Los Angeles, California 90017

24

25

1            **APPEARANCES OF COUNSEL CON'T:**

2

**FOR THE DEFENDANTS LEE AND 940 HILL:**

3

    BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW
4    BY:  ARIEL A. NEUMAN
    1875 Century Park East
5    23rd Floor
    Los Angeles, California 90067

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| | 1 |

```
                    LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 25, 2022

                              8:56 A.M.

                                ---

08:56AM    THE CLERK:  Calling item 2, CR 20-326(A)-JFW,
         United States of America versus Jose Luis Huizar, et al.
                    Counsel, please state your appearances.
                    MR. JENKINS:  Good morning, Your Honor.
                    Mack Jenkins, Veronica Dragalin, Special Agent
08:56AM  Andrew Civetti, and AUSA Cassie Palmer on behalf of the
         United States.
                    MS. ALÉ:  Good morning, Your Honor.
                    Carel Alé from the Federal Public Defender's
         Office along with Adam Olin for Mr. Huizar who has waived his
08:57AM  appearance for today.
                    MR. BRAUN:  Good morning, Your Honor.
                    Harland Braun, B-r-a-u-n, for Mr. Chan who is
         present in the audience.
                    MR. NEUMAN:  Good morning, Your Honor.
08:57AM  Ariel Neuman for Dae Yong Lee whose waiver is on
         file and for 940 Hill, LLC.
                    MR. STEINGARD:  Good morning.
                    Richard Steingard for ShenZhen New World I.
                    THE COURT:  All right.  Good morning to all.  In
08:57AM  light of the Court's calendar, I wasn't able to set this matter
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1   for status conference based upon the issues that have arisen

2   with respect to modifying the scheduling order until this

3   morning.  I'm not sure how much we will be able to accomplish

4   this morning because we have a deliberating jury.

08:57AM   5              In any event, by way of background, on May 13 in

6   docket No. 187, I continued the trial in this case and set

7   various agreed-upon pretrial dates in an effort to manage this

8   complex case.  In February of 2022 in docket No. 368, I

9   continued the trial to October 18th over the objection of

08:58AM   10  Co-defendants Lee and SZNW and set revised pretrial dates based

11  upon that new trial date.

12             Then on March 7 of 2022, I severed Mr. Lee and

13  940 Hill and Mr. Steingard's client SZNW, and we discussed and

14  tentatively agreed to trial dates for the severed trials, the

08:59AM   15  first of which was for Mr. Neuman's client, and that trial date

16  was agreed to -- tentatively agreed to commence on June 14th.

17  And as to Mr. Steingard's client, it was tentatively agreed to

18  for August 2nd of 2022.

19             The Court did not set any new pretrial dates

08:59AM   20  because I was confident -- it turned out overly confident --

21  that counsel would be able to agree on new dates.  But based

22  upon docket Nos. 403, 404, 407, and 408, apparently I was

23  incorrect in terms of whether or not counsel would be able to

24  come to an agreement.

09:00AM   25             I can tell you that -- well, I can tell you today

1  that I'm not going to sit here and negotiate the dates with

2  you.  This is my least favorite exercise in terms of coming up

3  with dates.  And I find it, quite frankly, disappointing that

4  counsel couldn't come up with agreed-upon dates.  But I have

09:00AM  5  some suggestions.

6  First, let me tell the Government that any

7  attempt to modify this schedule based on the Court's case that

8  I tried in *Elmezayen* is not helpful nor persuasive.  This case

9  is far more complex than *Elmezayen*.  Although there were a lot

09:01AM  10  of trial exhibits in *Elmezayen*, most of them were not very

11  controversial, and we were able to manage that case on pretrial

12  filings and disclosures which cut the case down from a

13  three-week trial -- we ended up -- somebody has correctly

14  counted the days.  I don't remember, or course.  It was a

09:01AM  15  nine-day trial which was originally estimated for three or four

16  weeks.  But this case is far different than *Elmezayen*.  I don't

17  know why you picked that case.

18  In any event, second, I don't agree that, because

19  the trials have been severed, that the severance requires a

09:02AM  20  reduction in the pretrial conference -- the pretrial dates that

21  govern the preparation of the actions for trial.  The whole

22  purpose of the Court's scheduling order is to give all counsel

23  an opportunity to resolve as many issues as can be resolved

24  pretrial so that we can all be comfortable that, when we do

09:02AM  25  start the trial, all of these pretrial issues have been

1    resolved and, based upon my experience in complex cases, one of

2    which was the *Elmezayen* case, it significantly reduces the time

3    that it takes to try a case.  That's the goal that I have in

4    this case, and that's the goal we have all had since the

09:03AM    5    beginning of this case.

6                The schedule also gives the Court an opportunity

7    to spend its limited resources to resolve these pretrial issues

8    so that we have a streamlined trial which I think is beneficial

9    for all concerned.  Some of the schedules that have been

09:03AM    10    proposed simply don't give me enough time.

11                The consistent backlog that we have of criminal

12    cases and the consistent failure to fill our remaining openings

13    have basically required the Court to stop trying civil cases

14    until we can devote our energies to resolving all of the

09:04AM    15    criminal cases that we have, many of which are custody cases.

16    And every trial date that I set is always subject to

17    continuance because, if I have a custody case, that custody

18    case is going to take priority over any non-custody case which

19    this case certainly is a non-custody case.

09:04AM    20                So with that, I'm somewhat confused and, quite

21    frankly, I started this very early -- I looked at it over the

22    weekend, and then started it very early this morning.  Again,

23    my least favorite exercise is to try to figure out dates.

24                Let me just begin to make sure I have an

09:05AM    25    understanding of what the dispute is.  The Government has

1    proposed a schedule for each of the three trials, and that

2    schedule is set forth on page 11 of the Government's filing

3    which is docket No. 403.  So that's where we begin.

4              You have also -- I just noticed this because I'm

09:05AM    5    looking at the order that appears as docket No. 30 -- 368.  So

6    the Government has also modified the agreed-upon dates in the

7    order that I signed which is 368 in column No. 3 of

8    docket No. 403; is that correct?

9              MS. DRAGALIN:  Yes, Your Honor.

09:06AM   10              THE COURT:  Okay.  So that's where we begin.

11              Then the first set of issues with respect to

12    dates are Mr. Neuman's client, and those -- Mr. Neuman, again,

13    I'm working back and forth with the number of different

14    documents.  So your docket No. 404 has a joint trial court

09:06AM   15    order which is column No. 1.  Those dates run or are copied

16    from the existing dates in the order 368?

17              MR. NEUMAN:  Correct.

18              THE COURT:  Is that correct?

19              MR. NEUMAN:  Yes.

09:07AM   20              THE COURT:  Okay.  And then you figured out the

21    dates before trial.  And then you have another column which is

22    the Government's proposal column.  Those dates don't appear to

23    be consistent with the dates that the Government has proposed

24    in 403.

09:07AM   25              MR. NEUMAN:  Correct.  This was the proposal that

we thought we were negotiating immediately after severance that

week -- or actually that day I contacted Government counsel to

negotiate dates.  They sent the dates that are in this

column 3.

09:07AM          THE COURT:  All right.  So those aren't dates

that ended up in the joint -- in their docket 403.

MR. NEUMAN:  That's correct.  These are the dates

we were negotiating back to.  So the last column is our

response to their initial proposal which, as you will see,

09:08AM  largely accepts it but does modify a few dates.  And it was

after that that on I believe it was the following -- I think we

sent this on a Thursday and on a Monday they sent what appears

in 403.

THE COURT:  All right.  So the dates that appear

09:08AM  in 403, the Government's proposed dates do not appear in your

document.

MR. NEUMAN:  That's correct because what I was

operating off of is what was originally proposed by the

Government and then just apparently taken back.

09:08AM          THE COURT:  All right.  I have to go back again.

I'm not going to sit here and go through these dates.  So it

doesn't seem to me like these dates are that much -- there's

that much difference in these dates.

MR. NEUMAN:  Between 403 and these dates,

09:09AM  Your Honor, or between our --

1          THE COURT:  Between 403.

2          MR. NEUMAN:  There are, Your Honor.  The most

3     significant is that the proposal both that they originally

4     proposed and that we responded to set the disclosure dates

09:09AM    5     largely in April for most witness exhibit -- excuse me --

6     witness list, exhibit list.  They have MIL filings in April, a

7     hearing on MIL's in early May whereas the new proposal in 403

8     puts all of that basically at the end of May, early June except

9     for the MIL hearing.  Basically there would be no further

09:09AM   10     disclosures except a *Giglio/Brady* declaration until May 23rd.

11          THE COURT:  I guess this doesn't answer the

12     question in terms of what has been disclosed.

13          MR. NEUMAN:  I talked about it in the filing, but

14     I'm happy to discuss it with the Court.

09:10AM   15          THE COURT:  Again, I'm not going to sit here and

16     go through each of these dates.  I was looking at the schedule

17     for the -- the original schedule for the May 24th, '22, trial

18     which is docket No. 187.  I thought those dates were probably

19     most relevant dates because at one point in time I had advised

09:10AM   20     all counsel that they should continue to work -- continue to

21     work consistent with those dates and, even if I continued the

22     trial, I thought that those pretrial dates were in the

23     ballpark.

24          MR. NEUMAN:  That's what we were operating under

09:11AM   25     as well, Your Honor, when we were -- when we responded to the

Government's initial proposal trying to align with those dates

in 187 -- document 187 -- excuse me -- accounting for the fact

that the trial had been continued by a couple weeks and giving

them a little space because they said they needed a little

09:11AM breathing room but largely trying to track those dates, and the

Government doesn't agree.

THE COURT:  All right.  So, Mr. Jenkins, what's

the problem?

MR. JENKINS:  Your Honor, I will let

09:11AM AUSA Dragalin, with the Court's indulgence, respond.

THE COURT:  Okay.

MS. DRAGALIN:  Your Honor, we have produced a

draft exhibit list and draft witness list to Defendant Lee's

counsel.  I would estimate that about 90 percent of our

09:11AM exhibits are already identified on that list.  We are

continuing to finalize our exhibit list so that, by the time we

have the court-required meet and confer, we're actually talking

about the documents that will be introduced at trial.  So we're

finalizing that.  We're going through that process now.  We're

09:12AM setting witness prep sessions.  In our experience, when we meet

with witnesses again to prepare them for trial, some of whom we

haven't spoken to in two years, we may identify additional

documents that we need to add to our exhibit list for purposes

of trying this case.

09:12AM So all we're asking for is to get a more

1    finalized -- an actual final exhibit list that we're ready to

2    present to the defense so that we're having meet and confer

3    efforts about actual documents that would be exhibits at trial.

4         So we have identified the universe of key

5    documents already for all defendants for their respective

6    cases, and we're just asking for a little bit more time to

7    finalize our trial preparations when we meet with witnesses and

8    can come up with the admissible evidence that the Government

9    ultimately intends to introduce at these respective trials.

10        THE COURT:  So what's the difference in the

11   current dates with respect to the -- with the exhibits?  Do you

12   have May 23rd as your -- Government's pretrial exhibit list.

13   And, Mr. Neuman, you have --

14        MR. NEUMAN:  April 4th.

15        THE COURT:  I thought it was April 15th.  I'm

16   sorry.  April 4th.

17        MR. NEUMAN:  That's what the Government

18   originally proposed was April 15th.  That was the day -- two

19   days after severance.  Now they've gone back and said May 23rd.

20   We came back to the April 15th date and said April 4th is more

21   in line with the Court's comments about continuing to prepare.

22   And that's where we kind of came up with that day and trying to

23   get the witness and exhibit list finalized in advance to the

24   motion in limine because -- I don't want to get into the

25   details, but there's a number of issues with the draft,

especially exhibit list, that we have been given.

THE COURT:  So how many exhibits have been listed on this exhibit list?

MR. NEUMAN:  It's hard to say exactly, Your Honor.  And this is one of the things I sent to counsel last night.  There's 103 that we can identify.  Some of those, though, are attachments to e-mails identified as separate documents.  There seems to be duplicates.  And in the Government's status report, there's at least an indication that there's going to be 200 exhibits for the 940 Hill trial.  Now, that may not be the case, but there's an indication of that. I'm glad to hear we have 90 percent of them, but that doesn't appear consistent with what was in the status report.

MS. DRAGALIN:  To be clear, the Government stated it will be less than 200.  That's an overestimation to set a -- to inform the Court that we don't think this trial will be that complicated.  The David Lee trial is relatively straightforward, not very document heavy.  So 200 was a maximum outside boundary.  We expected it to be less than 200.

THE COURT:  So it's not that complicated, and there are not that many exhibits.  Why isn't the Government able to produce the exhibits next week?

MS. DRAGALIN:  We have produced the exhibits we have already identified.  We're asking for a chance to meet with our witnesses and add 10 percent more exhibits while we

1    finalize our trial preparation.

2              THE COURT:  So you have actually produced paper

3    copies of the exhibits to the defense?

4              MS. DRAGALIN:  We have given them the Bates

09:15AM  5    numbers to the exact documents that we intend to use as

6    exhibits.

7              THE COURT:  And they're on a list somewhere?

8              MS. DRAGALIN:  Yes.  They're in -- we gave that

9    list in an Excel form to the Government -- to the defense.

09:15AM  10             MR. NEUMAN:  Like I said, Your Honor, there's a

11   lot of problems -- there's a lot of duplications on the list.

12   There are -- there's a number of issues.  I don't want to get

13   the Court involved in the nitty-gritty of it.

14             But I'm fine with them if they need to add a

09:16AM  15   couple documents as we go.  But the representation to us was

16   this is an early draft exhibit list.  We can't get you the full

17   exhibit list until this May 23rd date.  The Court had indicated

18   they should be ready to do it within a week of severance.  We

19   suggested two or three weeks from severance, and we're told no.

09:16AM  20             So I don't know why they need until May 23rd.  If

21   they need to add a document or two after April 4th when we're

22   asking for disclosure, I'm not looking to jam them here.  I'm

23   looking to figure out where in this massive discovery their

24   exhibits are going to be pulled from.

09:16AM  25             Even this week they identified additional

1   documents to us that they apparently knew about but didn't

2   disclose on the exhibit list.  So there's an issue here.

3              THE COURT:  More importantly, there's a

4   meet-and-confer process.  So that's where the -- that's where

09:17AM   5   the issues -- even if you disclose 90 -- if there's another

6   10 percent to disclose, as Mr. Neuman is indicating, he doesn't

7   mind if those come later because ultimately at the

8   meet-and-confer process you're going to sit down and have all

9   of the exhibits, and that's going to generate the final

09:17AM   10   pretrial exhibit stipulation.  And you will be able to discuss

11   each of those exhibits and what their -- and formulate any

12   objections that you may have.  And if you don't have any

13   objections, there's going to be a place in the pretrial exhibit

14   stipulation.

09:17AM   15              So all of this jockeying back and forth with

16   respect to trial exhibits to me is a nonissue because

17   ultimately the meet-and-confer process -- or the meet and

18   confer is really the main event that is going to be

19   determinative of how many of these exhibits are going to be

09:18AM   20   pre-admitted and how many are going to be objected to and then

21   how are we going to resolve those objections.

22              MR. NEUMAN:  Understood.  I think what we're

23   trying to do is build in a buffer there where we can look at

24   these exhibits, examine them, and come to that meet and confer

09:18AM   25   in a meaningful way and also address any issues in the motions

in limine that need to be addressed whereas the Government has

a much shorter time frame for that to occur much closer to

trial.

THE COURT:  But if you have 90 percent of them,

you should be able to sit down and do that now.

MR. NEUMAN:  That wasn't my impression until this

moment, Your Honor.

THE COURT:  Okay.  All right.

MR. NEUMAN:  I do think -- the other issue,

Your Honor -- and this is up to the Court's preference -- I

would go with what the Court previously said about having

motions in limine heard earlier and resolved earlier.

THE COURT:  Well, the problem that you folks are

going to run into is that I only have a limited amount of

resources to devote to this case.

MR. NEUMAN:  Right.

THE COURT:  I have already devoted a significant

amount of time ruling on all the pretrial motions which I'm

more than willing to do because obviously this is a very

important case to both sides and it presents very interesting

issues.

But, quite frankly, we're running out of room to

continue to spend that kind of time.  I want to have the

motions in limine heard -- filed and heard much earlier because

it's going to take me -- given my calendar and given what I

have coming up, it's going to take me a significant amount of time to rule on those motions in limine.  I haven't seen them. I don't know how complicated they are.

The alternative is, what's going to happen to you folks is all the motions in limine are going to get filed close to the trial date.  I'm not going to be able to rule on the motions in limine in a timely fashion because they're going to be very important to the conduct of the trial.  So what's going to happen is you're going to get a ruling on the morning of trial on motions in limine or we're going to continue the trial to allow you to govern the preparation of the trial in accordance with the rulings on the motions in limine.

MR. NEUMAN:  We are in accord with the Court's preference, and the Government is trying to move that, quite frankly.

THE COURT:  So --

MR. NEUMAN:  We need to work that out.

THE COURT:  You need to work it out.  And the motions in limine are going to be driven by what's happening in the pretrial exhibit stipulation, or are there other motions in limine that can be prepared and filed earlier based upon other issues you have in the case?

MR. NEUMAN:  They need to be worked out based on the witnesses and exhibit lists, and we're trying to meet and confer with the Government on it to move it along so that they

1    can be resolved as quickly as possible.  I think both sides are

2    working in good faith to do that.  We do need these disclosures

3    because, as I say, despite counsel's comments, there's a lot of

4    problems with this draft exhibit list.  I don't want to file

09:21AM  5    motions in limine on a draft exhibit list that has issues that

6    are going to be corrected, you know, in a week or two.

7              THE COURT:  And trust me, if that happens and I

8    rule on something that's going to be changed and the ruling

9    becomes moot or not important, then I'm going to start ordering

09:21AM  10   sanctions against everybody in this case.

11             MR. NEUMAN:  Nobody wants that.  It's a waste of

12   time for everybody.  That's why I would like to get these lists

13   as close to final.  I get it there might be a couple documents

14   at the end of the day.  I think it can be much more final than

09:21AM  15   it is, quite frankly, by this week but certainly by the end of

16   next week or early the following week.  And then, if there's a

17   few stragglers that come, that's what always happens.  Every

18   case is like that.

19             THE COURT:  What concerns me is that counsel have

09:22AM  20   over the past however many months worked cooperative in these

21   scheduling issues, and it seems that there's some reason that

22   it's not -- that spirit of cooperation has ended.  I'm not

23   casting any -- it appears to me it's the Government who wants

24   to shorten all these time periods.

09:22AM  25             MS. DRAGALIN:  Your Honor, we have gone from one

big trial where we agreed to very early deadlines to now having

three separate trials, the first two of which are now much

shorter and will be much more streamlined.  So we are proposing

adjusted schedules for those two early trials that are more

09:22AM  consistent with what that type of case warrants, one that's

not -- does not involve proving a RICO conspiracy, does not

involve having dozens and dozens of witnesses.  So that is what

has changed in the meantime.

We have been working hard on it.  We have not

09:23AM  paused in our efforts to working on the exhibit lists.  We're

continuing those efforts to this day.  It's ongoing and not yet

in its final set.  We're asking for --

THE COURT:  The question is why not?  I mean, you

have all these documents.  You have a good sense of what the

09:23AM  documents are.  It's been my experience that what happens in

this pretrial exhibit stipulation is that the Government wants

to make sure that they covered all the bases and put as many on

there.  But based upon what Mr. Neuman is saying and how I deal

with these issues, if there are documents that are not on the

09:23AM  list that straggle in, you're not going to be precluded from

using them.

I guess I just don't understand why the

Government can't produce immediately all of the proposed

exhibits that they intend to use in the Lee trial.  I mean,

09:24AM  this is not rocket science.  You've got a number of assistants

who are working on this case.  You have a very good case agent.

And you should be able to pull these documents -- I practiced

law for 40 years.  I know what it takes to put documents

together.  It just doesn't seem to me to be that difficult of

an exercise, especially when you're not going to be precluded

from adding a late document to the list.

MS. DRAGALIN:  Understood, Your Honor.  And we --

THE COURT:  You keep saying understood and you

keep saying 90 percent, but why hasn't it been done earlier?

MS. DRAGALIN:  We will comply with the Court's

order to produce an updated list, whatever the Court --

THE COURT:  The problem is I don't want to make

orders.  I want counsel to be able to sit down and, consistent

with my comments throughout the course of this case, to be able

to resolve these things and not all of a sudden just take some

arbitrary position saying, okay, we've got three trials and

here are the new dates and we're not going to negotiate.

That is inconsistent with the way that we have

handled this case up to this point in time, and I don't want it

to deteriorate any further because we're all going to be

together for a long time and many days and I want this to go as

smoothly as possible.

I understand there may be issues that come up,

and I'm going to rule on those issues.  But these things to me

are just a waste of time and they're silly.

1          MS. DRAGALIN:  We will make sure that we have

2     enough staffing on this case to meet all of the obligations the

3     Government has.  We can add additional prosecutors --

4          THE COURT:  How many more prosecutors do you need

09:26AM   5     to add to -- somebody in this case -- and I, quite frankly,

6     think that Agent Civetti has a good handle on these

7     documents -- to be able to sit down for a couple days with a

8     room full of documents, wherever they are, whatever they may

9     be, pull all of the documents, all of the trial team get

09:26AM   10    together and say, okay, let's go through 200 pieces of paper or

11    200 exhibits and is this something that should be on the list?

12    We don't know.  Put it on the list in an abundance of caution

13    if it's not on the list and then get it to Mr. Neuman and then

14    go from there.

09:26AM   15         MS. DRAGALIN:  We did that, Your Honor.  That is

16    the process we went through, and we produced to them what we

17    came up with by January 11th and then more recently by

18    March 9th.  And so we have --

19         THE COURT:  So to me there should be no issues.

09:26AM   20    I'm not going to spend the rest of the morning trying to figure

21    out who did what to whom in this thing.  Based on what

22    everybody is saying is that this process has moved smoothly

23    along and you should be prepared to sit down and meet and

24    confer because all of the exhibits are out there and Mr. Neuman

09:27AM   25    has them and he can sit there with his team and review them and

        1    then you can get together next week and come up with a pretrial

        2    exhibit stipulation.  I'm not saying that's going to be the

        3    date, but what you're telling me is that it's all done, but I

        4    don't believe it.

09:27AM 5            MS. DRAGALIN:  It's done with the exception of we

        6    are going to meet with witnesses and we may identify additional

        7    things we want to add to the list.  So as long as the

        8    Government has that opportunity, we are -- I don't think there

        9    is a dispute.

09:27AM 10           THE COURT:  Well, no one is depriving you of that

       11    opportunity.

       12            MS. DRAGALIN:  Then there is no issue,

       13    Your Honor.

       14            THE COURT:  Okay.

09:27AM 15           MR. NEUMAN:  I guess we will see.  It sounds to

       16    me like we should go back and try again in terms of dates with

       17    the Government in terms of motions in limine and so on.

       18            THE COURT:  Let me hear from Mr. Steingard

       19    because the second trial -- the first trial to me is not -- the

09:28AM 20   scheduling, although we're getting close to it, is not as

       21    difficult as some of the issues that Mr. Steingard's trial is

       22    going to present because his trial apparently is going to be

       23    several weeks long.

       24            MR. NEUMAN:  The only last comment, Your Honor,

09:28AM 25   is I think that's part of the point is that our trial is going

1    first and a lot of these dates that we have asked for from the

2    Government that they, quite frankly, proposed originally have

3    nothing to do with their trial.  They don't interfere, don't

4    get in the way.  That's why I was just surprised that we ended

09:28AM   5    up here.  We will work with them and see if we can work this

6    out.

7                    MR. STEINGARD:  Good morning again, Your Honor.

8                    THE COURT:  I don't understand where you got your

9    dates.

09:28AM   10                    MR. STEINGARD:  Which dates?

11                    THE COURT:  Docket No. 407.

12                    MR. STEINGARD:  Right.  Sure.  So --

13                    THE COURT:  Actually, your Government current

14    proposal -- so you did use the -- for your column on page 11 on

09:29AM   15    the current proposal, you did use docket No. 403.

16                    MR. STEINGARD:  We did.  The middle column,

17    Your Honor, as you can see on 407 is simply where the

18    negotiations began.

19                    THE COURT:  Okay.

09:29AM   20                    MR. STEINGARD:  The negotiations went from it

21    should be the middle column to the left column, our proposal,

22    and then the next thing we know, we have the Government's

23    proposal which the Court has already discussed.

24                    THE COURT:  So how many exhibits do you have?

09:30AM   25                    MR. STEINGARD:  Well, none.

```
 1              THE COURT:  None?

 2              MR. STEINGARD:  None.  We don't have any

 3    exhibits.  We have not been given the draft exhibit list or a

 4    draft witness list that was afforded to Mr. Neuman.  That's not

 5    to say that that might not work in our case.  It just hasn't

 6    been -- hasn't been offered or broached.

 7              Discussions sort of broke down.  Unfortunately,

 8    they just sort of broke down, Your Honor.  I'd like to

 9    resurrect them, but right now -- I think the Court's input

10    today will resurrect those discussions.

11              The Government's current proposal, that which is

12    in their filing 403, actually has us getting the witness and

13    exhibit lists after we have filed and litigated the motions in

14    limine.

15              THE COURT:  So when are we going to litigate the

16    motions in limine?  So that would be easy for me to decide

17    because there would be no motions in limine.

18              MR. STEINGARD:  It works for the Court.

19              THE COURT:  I like that part of the schedule.

20              MR. STEINGARD:  But I think the Court gets --

21    humor aside, I think the Court gets my point which is that the

22    Government's proposal, which puts everything on the ShenZhen

23    case -- nothing happens in March.  Nothing happens in April.

24    Nothing happens in May.  Ironically, during the Neuman -- I'm

25    sorry -- the Neuman trial -- the 940 Hill trial -- the Neuman
```

09:30AM (line 5)
09:30AM (line 10)
09:30AM (line 15)
09:31AM (line 20)
09:31AM (line 25)

1    trial must be another case.

2              THE COURT:  That will come afterwards.

3              MR. STEINGARD:  Right.  And I'm happy to

4    represent him.

09:31AM    5              THE COURT:  For free?

6              MR. STEINGARD:  I can't hear you, Your Honor.

7              THE COURT:  For free?

8              MR. STEINGARD:  I still can't hear you.

9              THE COURT:  Oh, okay.

09:31AM   10              MR. STEINGARD:  The dates don't work.

11              THE COURT:  Mr. Braun wants to be your

12    co-counsel.

13              MR. STEINGARD:  Good by me.

14              The dates of the Government's current proposal

09:32AM   15    don't work, clearly, for a variety of reasons including the

16    fact that they have -- the earliest dates they have actually

17    occurred during the 940 Hill trial.  My dates -- I tried to

18    give them a buffer where all of the litigation or the work we

19    did together would end by mid-May.  That would give them a

09:32AM   20    month to focus strictly on the 940 Hill trial, maybe more than

21    Mr. Neuman would like, and then resume after that trial ends,

22    about ten days after it ends.

23              I thought that was a nice structure.  We get the

24    filings out of the way, exhibit list, witness list, motions in

09:32AM   25    limine.  We work together.  We get those into the Court.  We

 1    then give -- I was giving the Government a break because they

 2    do have a trial to attend to.  And then resuming the activities

 3    at the very end of -- at the very end of June.

 4              THE COURT:  Well, let me ask the Government.

 5    What's the status of the exhibits with respect to

 6    Mr. Steingard's case?

 7              MS. DRAGALIN:  We have produced the exhibit list

 8    to all defendants, and it lists all exhibits for the joint big

 9    trial.  That list then shows which exhibits correspond to which

10    counts.  So we have produced a list that --

11              THE COURT:  That was produced consistent with the

12    earlier deadline on February 15th?

13              MS. DRAGALIN:  Yes.  It was produced in January,

14    Your Honor.

15              MR. STEINGARD:  That was the -- we talked about

16    an informal -- the list goes way back.  The Government, with

17    the Court's push, gave us an informal list of documents that

18    correlate between an overt act in the RICO and the discovery.

19    And we did get that.  I don't think it was ever was finalized,

20    but we did get three or four variations of that.  I think the

21    last one was in January.

22              I didn't consider that to be the exhibit list

23    that we're talking about, a trial exhibit list.  But if the

24    Government says that's their trial exhibit list, I now have it

25    apparently.

1          THE COURT:  We put all those dates on hold, the

2     February 15th and the conference on March 1st and the joint

3     exhibit stipulation on March 15th pending the ruling on the

4     severance.

09:34AM    5          So is that what Mr. Steingard now has?  Is that

6     the final version of the exhibit list?

7          MS. DRAGALIN:  It's a version of the exhibit list

8     that keys each document with Bates numbers to a specific overt

9     account, and it allows to filter so that -- and it's organized

09:34AM   10     in order of overt acts.  So Mr. Steingard can look at all

11     documents for overt acts 1 through 85, and that would identify

12     the documents that support the ShenZhen scheme.

13          THE COURT:  So I take it then your belief is that

14     you have at least produced the 90 percent number, the

09:35AM   15     90 percent number to Mr. Steingard?

16          MS. DRAGALIN:  Yes.  And it --

17          THE COURT:  It should be easy for you.  Those

18     documents that have been produced to Mr. Steingard are included

19     among the trial exhibits that were anticipated for the entire

09:35AM   20     trial.  So is that true?

21          MS. DRAGALIN:  Yes.

22          THE COURT:  So it shouldn't be difficult to break

23     out the documents that you're going to be offering only in

24     connection with Mr. Steingard's trial because they're all --

09:35AM   25     presumably they're already there.  So somebody just needs to go

1    through the list and check off that this is one that's going to

2    be used in Steingard's trial.

3                MS. DRAGALIN:  And we identified which those are

4    by overt act numbers.  So Mr. Steingard has that Excel, and he

09:35AM  5   can look at overt acts 1 through 85, and that is the list of

6    documents that support the ShenZhen scheme.

7                THE COURT:  Well, it's easy to say.  I'm sure

8    he's appreciative of the fact that they refer to overt acts.

9    But he's more concerned with knowing what the actual trial

09:36AM  10  exhibits are going to be, and then he can make a determination

11   as to whether or not they're relevant to an overt act.

12               So how many exhibits -- if you had to send

13   Mr. Steingard a list on Monday of all of the exhibits that were

14   going to be used just for his trial which represent 90 percent

09:36AM  15  as of today of all of those exhibits, how many exhibits would

16   be on that list?

17               MS. DRAGALIN:  I would approximate about 400,

18   Your Honor.

19               THE COURT:  Okay.

09:36AM  20               MS. DRAGALIN:  Just to clarify, the 90 percent of

21   those 400, there are sometimes duplicative documents.  So when

22   we get closer to the final list, the Government would make sure

23   that there are no duplicative documents within it.  So in some

24   ways that list may get smaller, but we may add straggler

09:37AM  25  documents as we have previously discussed.

1          THE COURT:  So if Mr. Steingard was unable to

2     determine those 400 exhibits on the document that you provided

3     him, you could easily tell him these are the 400?

4          MS. DRAGALIN:  Yes, Your Honor.

09:37AM   5          THE COURT:  Mr. Steingard, are you able to figure

6     out the 400?

7          MR. STEINGARD:  You know, it's simply a matter of

8     who does the exercise.  I'm happy to create what I think is

9     their witness list -- their exhibit list, and I will send it to

09:37AM   10    them and they -- I don't see why I do that exercise, but I'm

11    happy to.  I will send it to them and say, is this it?  And

12    what else is there?  And I assume that they should be able to

13    say in relatively short order, here is what you didn't know or

14    here is what didn't make the list.  The only thing we need is a

09:37AM   15    date for that.  If March 28th doesn't work, we can move it to

16    April 5, April 10.

17          I can work with Government counsel on this.  What

18    I can't do, what I can't agree to is putting it over to

19    July 19th three weeks before trial -- I'm sorry -- July 11th,

09:38AM   20    three weeks before trial which is what their current proposal

21    was which just doesn't work for anybody.

22          THE COURT:  All right.  Let me --

23          MR. STEINGARD:  Can I just stay with that,

24    Your Honor?

09:38AM   25          THE COURT:  Sure.

1          MR. STEINGARD:  Because while the exhibits are

2    one thing, the witness list is another.  And we have not

3    received any witness list, draft or otherwise.  Again, I would

4    think that the Government could be able to get this to us now.

09:38AM  5    But if they need a week or two, understood.  But I think we may

6    need to -- the Court's involvement on something like that as

7    well.  They have us getting the witness list two weeks before

8    trial.

9          THE COURT:  How many witnesses is the Government

09:38AM  10   going to call in this case?

11         MS. DRAGALIN:  Your Honor, subject to certain

12   stipulations that maybe would get rid of certain witnesses like

13   agents and custodians, we would estimate that somewhere around

14   40 to 50 witnesses for the ShenZhen trial.

09:39AM  15        THE COURT:  So you have a pretty good idea who

16   those 40 or 50 witnesses are going to be?

17         MS. DRAGALIN:  We have an idea of the universe of

18   people that could be included on the witness list, yes.

19         THE COURT:  So why don't you give Mr. Steingard

09:39AM  20   the list of 50?

21         MS. DRAGALIN:  We haven't yet as a team sat down

22   to put that list together, but we can do so by a date that the

23   Court thinks is reasonable.

24         THE COURT:  So start off with 50, and then you

09:39AM  25   can --

```
 1                   MR. STEINGARD:  That's fine.

 2                   THE COURT:  -- work down.

 3                   MR. STEINGARD:  At least it's a start.  Can we

 4        say -- I mean, I can work with the Government.  I assume that

 5        list can be provided in ten days.  Is that unreasonable?

 6                   THE COURT:  I think it can be produced on Monday,

 7        but that's me.

 8                   MR. STEINGARD:  I didn't want to, you know --

 9        whatever the expression.

10                   MS. DRAGALIN:  We will take the ten days,

11        Your Honor.

12                   MR. STEINGARD:  Ten days.

13                   THE COURT:  Again, I was going through all

14        this -- in any event, let me -- anything else, Mr. Steingard?

15                   MR. STEINGARD:  Well, I assume --

16                   THE COURT:  I have an overall suggestion.

17                   MR. STEINGARD:  You have made clear you want time

18        with the motions in limine; so I will work with Government

19        counsel.

20                   THE COURT:  Well, here's another issue that I

21        have.  It seems to me that -- and I know we're -- I hope that

22        we have considerably advanced the ball this morning.  With

23        respect to your trial and the Huizar trial, given that -- I

24        understand that we're running up against some dates -- both

25        sides, quite frankly, are going to need some time to prepare.
```

09:39AM (line 5)
09:40AM (line 10)
09:40AM (line 15)
09:40AM (line 20)
09:41AM (line 25)

1          It seems to me that what we should consider is

2     moving the Huizar/Chan trial, and that would then open up and

3     everybody have more time to deal with the issues with respect

4     to SZNW's trial.  And, quite frankly, it would probably be more

09:41AM   5     beneficial to Mr. Huizar and Mr. Chan's trial preparation

6     because, as I understand what's going to take place in the two

7     prior trials is that all of the RICO Acts are basically going

8     to be tried in your two trials.

9          That may -- I know the Government probably would

09:42AM   10     not be happy about that, but it would certainly give Mr. Huizar

11     and Mr. Chan's counsel a very good look at what the case is

12     going to be -- how the case is going to unfold, especially in

13     light of spending probably three or four weeks in the combined

14     trials.  Certainly going to understand what the trial exhibits

09:42AM   15     are and certainly going to understand what the witnesses are.

16          And I think it would be beneficial to the

17     Government because the work that's done with respect to

18     preparing each of those trials in terms of trial exhibits,

19     witness preparation is going to be carried over into the

09:42AM   20     Huizar/Chan trial.  And that would open up -- if we did that,

21     then that not only would open up more time for the SZNW trial,

22     but with respect that Mr. Neuman and Government counsel felt

23     they needed a little additional time in connection with that

24     case, it would also allow some flexibility in the continued

09:43AM   25     preparation.

1          As I'm sure all of counsel know, I'm loathe to

2     continue things.  But in this case it seems to me that it makes

3     sense.  And also from the Court's standpoint, I don't know how

4     much longer I'm going to be able to work seven days a week to

09:43AM  5     try to keep up with the calendar.

6          MR. STEINGARD:  Well, your comments are directed

7     to the Government and to the federal defenders about moving the

8     Huizar/Chan trial.  That doesn't affect the ShenZhen trial.

9          THE COURT:  What does the Huizar/Chan team think

09:44AM  10     about that?

11          MS. ALÉ:  Your Honor, I don't think we have an

12     objection to that.  I think we're happy to meet with the

13     Government and figure out a date that could work for both

14     parties.

09:44AM  15          I will just simply note that I think, if we push

16     back -- right now it's set at the end of October.  If we push

17     back toward November/December, that might create issues with

18     witnesses and the holidays and things like that.  But those are

19     things that I'm sure we can handle at a meet and confer.

09:44AM  20          THE COURT:  Mr. Braun?

21          MR. BRAUN:  We will agree to a later --

22          THE COURT:  What I would suggest is that we put

23     the Huizar/Chan trial over to January.  That way we're not

24     working through the holidays like we did or at least I did this

09:44AM  25     year.  Then we could certainly be flexible with respect to the

1    two pending trials.

2              Let me ask the Government what your thoughts are.

3              MR. JENKINS:  We hear the Court's concerns.  We

4    think that concern is best addressed -- we don't want to

09:45AM  5    continue the Huizar/Chan trial.  This case is to us the most

6    culpable defendants, and in the Government's view, that's the

7    case that should be given priority.  And obviously the Court

8    and the parties are giving it priority.

9              Our way to address that would be to continue the

09:45AM  10    corporation's trial who has a fugitive defendant and an

11    alterego to January and --

12              THE COURT:  Well, that I saw in your papers and I

13    haven't commented on it because I'm not going to do that.

14              MR. JENKINS:  Understood, Your Honor.  Just the

09:45AM  15    Court -- the Court asked the Government's position.  That is

16    ours.  We are happy -- if the Court is directing us to change

17    the Huizar/Chan date, for the record, we are opposed to that,

18    but we will work with the Federal Public Defender's Office.  We

19    have been able to --

09:45AM  20              THE COURT:  If you're opposed to it, we will just

21    continue with the same schedule.  I can tell you that the

22    schedule is going to be compressed, and I'm going to set dates

23    that you're going to have to live with.  And if the

24    compliance -- if you don't comply with those dates, I'm going

09:46AM  25    to preclude evidence.

1          MR. JENKINS:  Understood, Your Honor.  That is

2     certainly the counterpoint to -- so certainly I think we can

3     work it out.  We were just responding to your request.  I think

4     we can work it out.  Ultimately we agree with the Court that we

09:46AM  5     want as much flexibility and to minimize the Court's resources.

6          So if that's the best way to do it, we will work

7     with the Federal Public Defender's Office.  And we want to make

8     sure the Court is available to hear this case, so we will work

9     in our best interests to do that.

09:46AM 10          THE COURT:  If I'm still on the bench.  I will

11     promise you that I'm not going to leave this with someone else.

12     I'm invested in this.  As I said before, I'm interested in the

13     case.  I think it's a fascinating case.  But I also -- and what

14     concerned me about reviewing all these documents is we have got

09:47AM 15     excellent counsel representing -- on all sides of this case.

16     There shouldn't be these kinds of issues that come up.

17          MR. JENKINS:  I will take some responsibility for

18     that, Your Honor.  I recently was in trial.  I deferred to -- I

19     think all counsel on our side have added resources.  We will

09:47AM 20     get back on the same page or at least close to the same page.

21          Part of our concern is we do want the Court to

22     hear this trial.  If the Court will still be available, I

23     promise in January 2023 we will make that work, Your Honor.

24          THE COURT:  So, Mr. Neuman, what are your

09:47AM 25     thoughts?

1          MR. NEUMAN:  In terms of the pretrial dates or in

2     terms of the trial date, Your Honor?

3          THE COURT:  Continue the trial date, or are we

4     going to try to work with these existing dates and see if we

09:47AM  5     can get --

6          MR. NEUMAN:  I think the problem is there are no

7     existing dates at the moment, Your Honor.  I don't know what

8     Government counsel took away from the Court's comments.  I took

9     away that either what they originally proposed or what we

09:48AM  10    proposed is probably what we should be doing with the ability

11    to add things along the way.  But it seems to me we need to set

12    some dates.

13          I don't at this moment see continuing our trial

14    by a week or two unless we talked about the Court may need to.

09:48AM  15          THE COURT:  Well, whatever happens with respect

16    to my criminal calendar, moving things into the future gives

17    you more certainty that I'm going to have cleaned up the

18    backlog.  But I'm -- right now I'm -- I don't know how many

19    criminal cases I have set for the date that -- what is our

09:48AM  20    date?

21          MR. NEUMAN:  June 14th.

22          THE COURT:  June 14th.  But there are a lot of

23    them.

24          MR. NEUMAN:  Right.

09:49AM  25          THE COURT:  Many of them are in custody.

                    MR. NEUMAN:  I guess, Your Honor, to -- the Court

asked my thoughts.  I think we need to get some of these

pretrial issues out of the way relatively soon.  I think we

need a more final exhibit list, a more final witness list.  We

09:49AM   need the motions in limine filed and adjudicated, and we need

some of the other disclosures.  We could do that by mid-May and

at that point look at the Court's calendar, look at where the

Court stands and say does it make sense to kick this into July?

Various people, I'm sure, are going to have scheduling things

09:49AM   that pop up.  I know I do.

                    But that, to me, makes sense just to get a lot of

this resolved in the next month, month and a half as opposed to

kicking it down the road to the end of May which is what the

Government was proposing.

09:49AM             THE COURT:  Well, as I said, I'm not going to sit

here and negotiate dates.  So I'm going to ask counsel to meet

and confer and come up with some new dates and then file a

joint report.

                    But I think -- Mr. Steingard, what about, if we

09:50AM   continue the Huizar/Chan trial to January, that's going to give

us some better flexibility in terms of -- and I understand the

Government's concern.  You know, they have a lot of resources.

I'm sure that trial counsel want to be involved in the

preparation.  And I know there is no real overlap, but there is

09:50AM   an overlap because your case is going to be more significant.

1          So I would think that your case would be -- if we
2     move the -- I'm not suggesting October, but if we move the
3     Huizar/Chan to January, then we have September --
4     September/October time frame that we could fit your case in and
09:50AM  5     work the pretrial dates back from that which would then give a
6     nice clear break.  We could try Mr. Neuman's case.  Then we
7     have a nice clear break, and then we have the next series of
8     dates looking at a September/October trial date.
9          MR. STEINGARD:  Well, I think the starting point
09:51AM 10     will be the discussions between the Huizar/Chan team and the
11     Government to see if that is going to January.  If that is the
12     case, we will work with the Government to see what works.
13          THE COURT:  Well, I think it's already agreed
14     that -- everybody has agreed to January.  If the Government is
09:51AM 15     going to continue with its objection --
16          MR. JENKINS:  We are not based off the Court's
17     comments and ours, what the Court is proposing seems
18     appropriate.
19          MR. STEINGARD:  I think that it may make sense.
09:51AM 20     I'd like to work with the Government if it's all right with
21     you.
22          THE COURT:  As I said, I'm not going to sit here
23     and -- I mean, if I have to, I will sit down and work out all
24     these dates.  But that is my least favorite activity.  And it
09:51AM 25     makes no sense for me to artificially impose dates that don't

1    work because people have -- some people have lives outside the

2    practice of law.

3                        MR. STEINGARD:  We will work with the Government

4    and see if we can modify the trial date, if necessary, to

5    accommodate their needs, my needs, the Court's needs.  We will

6    get that done, Your Honor.

7                        THE COURT:  Okay.  All right.  Is there anything

8    else?

9                        MS. DRAGALIN:  Not from the Government,

10   Your Honor.

11                       MS. ALÉ:  Nothing further from the Huizar team.

12                       MR. NEUMAN:  Not at this time, Your Honor.

13                       MR. STEINGARD:  Thank you.  No.

14                       THE COURT:  Shannon made a good point.  Just so I

15   can keep tabs on what you folks are doing, is there a

16   convenient date that you can file a status report?

17                       MR. NEUMAN:  I'd like to get, at least as to my

18   trial, by Tuesday of next week.

19                       THE COURT:  I think with respect to your trial it

20   should be a separate status report.

21                       MR. NEUMAN:  That's fine.

22                       THE COURT:  So I can focus on those dates.  And

23   then -- so is that acceptable sometime next week?

24                       MS. DRAGALIN:  Yes, Your Honor.

25                       THE COURT:  Okay.  So by Tuesday of next week?

```
 1   Wednesday?
 2              MR. NEUMAN:  Tuesday or Wednesday.  I want to
 3   know what's happening over the next two months.
 4              THE COURT:  So let's say Wednesday will be the
 5   status report with respect to the Lee/940 Hill dates.  Then a
 6   couple weeks for the other status report?
 7              MR. STEINGARD:  Yeah.  I think two weeks is good.
 8   We can do that in two weeks.
 9              THE COURT:  Okay.  So let me -- how about
10   April 8?
11              MR. STEINGARD:  Very good.
12              MS. DRAGALIN:  Yes, Your Honor.
13              THE COURT:  All right.  Thank you very much.
14   Everybody have a pleasant weekend.
15              MR. JENKINS:  Thank you, Your Honor.  You as
16   well.
17              MS. ALÉ:  Thank you, Your Honor.
18              THE COURT:  It may be for naught if we end up
19   with this new B12 variant.
20              (Proceedings concluded at 9:54 a.m.)
21
22
23
24
25
```

1                  CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5            I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6  COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7  THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8  PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9  FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13  THE UNITED STATES.

14

15              DATED THIS  5TH  DAY OF APRIL, 2022.

16

17

18              /S/ MIRANDA ALGORRI

19              MIRANDA ALGORRI, CSR NO. 12743, CRR
                   FEDERAL OFFICIAL COURT REPORTER

20

21

22

23

24

25