Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

[And on Behalf of Jose Huizar and Raymond Chan]

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSE LUIS HUIZAR, ET AL.,<br><br>    Defendants. | CR-20-326(A)-JFW<br><br>**NOTICE OF MOTION; MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL; EXHIBITS (FILED UNDER SEAL)**<br><br>**Hearing Date: August 8, 2022**<br>**Hearing Time: 8:00 a.m.** |

**TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 8, 2022, at 8:00 a.m., or as soon thereafter as the matter may be heard, defendants Shen Zhen New World I, LLC, Jose Huizar, and Raymond Chan will move this Honorable Court for an order that the government provide discovery, to wit, the details of conversations between

government counsel and Terrence Jones, George Esparza's attorney, in and about March, 2020, regarding the parties' plea negotiations and draft factual bases.

This Motion is based on the attached Memorandum of Points and Authorities, declaration of counsel, exhibits (filed contemporaneously under seal), all pleadings and files in this matter, and such evidence and argument as may presented at the hearing on this motion.

Dated: July 19, 2022                     Respectfully submitted,

**LAW OFFICES OF RICHARD M. STEINGARD**

By:  /s/ Richard M. Steingard
     Richard M. Steingard
     Attorney for Defendant
     **SHEN ZHEN NEW WORLD I, LLC**

     [And on Behalf of Jose Huizar and Raymond Chan]

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................1

II.    STATEMENT OF RELEVANT FACTS  ................................................2

     A.    George Esparza's Cooperation and Proffer Sessions ............................2

     B.    The Factual Basis for Esparza's Plea ...................................................4

     C.    Esparza's March 25, 2020 Interview.....................................................9

     D.    Esparza's Execution of the Factual Basis............................................11

     E.    Defense Counsels' Request for Information About
        the Conversations Between the Prosecutors and Mr. Jones .................11

III.    ARGUMENT  .......................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brady v. Maryland,*
    373 U.S. 83 (1963) ........................................................................12

LAW
OFFICES OF
RICHARD M.
STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INDEX OF EXHIBITS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A-1 | November 13, 2018 FD-302 Interview Report of George Esparza | 2:14, 2:17, 2:19, 2:24, 2:27, 14:8 |
| A-2 | December 12, 2018 FD-302 Interview Report of George Esparza | n/a |
| A-3 | January 15, 2019 FD-302 Interview Report of George Esparza | 2:14, 2:17, 2:20, 3:4, 4:18, 4:26, 6:2, 7:17, 10:9, 10:18 |
| A-4 | March 26, 2019 FD-302 Interview Report of George Esparza | 6:12 |
| A-5 | June 6, 2019 FD-302 Interview Report of George Esparza | 2:17, 4:2 |
| A-6 | March 25, 2020 FD-302 Interview Report of George Esparza | 2:28 |
| B | February 14, 2020 E-mail from AUSA Mack Jenkins to Terrence Jones with Draft Factual Basis Attached | 4:8 |
| C | March 10, 2020 to March 23, 2020 E-mail Thread Between AUSAs and Terrence Jones | 4:21, 10:1, 13:15 |
| D | Highlighted Revised Draft Factual Basis from AUSA Mack Jenkins' March 23, 2020 E-mail | 5:19 |
| E | March 25, 2020 E-mail from AUSA Veronica Dragalin with Revised Draft Factual Basis Attached | 11:3 |
| F | April 1, 2020 E-mail from Terrence Jones to AUSAs Veronica Dragalin and Mack Jenkins with Executed Factual Basis Attached | 11:7 |
| G | May 23, 2022 to July 14, 2022 E-mail Thread Between Richard Steingard and AUSAs | 11:16 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants Shen Zhen New World I, LLC ("SZNW"), Jose Huizar, and Raymond Chan ("the defendants") move this Court for an order compelling the government to disclose their conversations with Terrence Jones, George Esparza's attorney, in March 2020.  As set forth below, after Esparza had been cooperating with the government for approximately 16 months, and while the parties were engaged in plea negotiations, the prosecutors had several conversations with Mr. Jones about (1) arranging an interview with Esparza to focus on the LA Grand Hotel's expansion project and (2) the factual basis for Esparza's plea.  Based on those conversations—which this motion seeks to elicit—the government felt the need to "help enlighten Esparza's recollection" of certain events related to the hotel's expansion project.  To do so, they sent Mr. Jones a revised factual basis that contained a variety of highlighted "facts" and events that Esparza had previously never mentioned in his many debriefings.  These "facts" went so far as to include what Esparza was thinking and meant when he and others made certain statements during conversations that had occurred three years earlier.  Unsurprisingly, Esparza adopted the government's version of events.

Prior to filing this motion, defense counsel requested any memoranda or notes of the prosecutors' and agents' conversations with Mr. Jones that led the government to believe it had to "help enlighten Esparza's recollection" in this manner, as well as an accounting of the conversations.  The government advised that there were no memos or notes of the conversations and declined to provide any information about the conversations.  SZNW's counsel also contacted Mr. Jones, who could not recall the conversations at issue.  Consequently, defendants move this Court for an order that instructs the government to provide a detailed summary of its conversations with Mr. Jones relative to this issue.

LAW
OFFICES OF
RICHARD M.
STEINGARD

## II.

### STATEMENT OF RELEVANT FACTS

A. <u>George Esparza's Cooperation and Proffer Sessions</u>

Beginning in November 2018, federal prosecutors and agents debriefed George Esparza, Jose Huizar's Special Assistant, as part of its extensive public corruption investigation. Over the span of approximately 16 months, the government interviewed Esparza five times, all in the presence of his counsel, Terrence Jones. The interviews were lengthy; although not audio or video recorded, the FBI took notes and then drafted reports of the interviews, ranging from 8 to 22 pages.[1]

The meetings addressed a wide variety of topics, including Esparza's interactions with SZNW's owner, Wei Huang, and others associated with SZNW. Esparza described the many benefits that Huang had provided to Huizar and Esparza on trips to Las Vegas and Australia. (Exs. A-1 at pp. 2-6; A-3 at p. 7.) Esparza also explained Huang's involvement in a loan that Huizar obtained from East West Bank in order to settle a sexual harassment lawsuit against him. (Exs. A-1 at pp. 11-12; A-3 at pp. 2-4; A-5 at pp. 2-18.) In addition, Esparza discussed Huang or SZNW's relatively routine requests to Huizar and his office staff, involving arranging meetings, making phone calls, and drafting letters. (Ex. A-1 at p. 14; A-3 at pp. 7-9.)

In contrast to Esparza's recollection of these events, he had very little to say about SZNW's plans to expand the LA Grand Hotel. At his initial interview, Esparza said he "could not remember exactly what Huizar helped regarding these projects." (Ex. A-1 at p. 14.) At his third interview, Esparza recalled that on one

---

[1] The defendants are submitting all of their exhibits under seal. The agents' reports of the first five Esparza interviews, dated between November 2018 and March 2019, are attached as Exhibits A-1 through A-5. A sixth report, dated March 25, 2020, is attached as Exhibit A-6.

occasion he attended a meeting with Huizar, Huang, Chan, and representatives from LA Department of City Planning and LA Department of Building and Safety. During this meeting, "Huang provided a presentation about what they wanted to do to expand the LA Hotel Downtown." (Ex. A-3 at p. 5.) Esparza said that "the discussion of Huang's hotel expansion was brought up a lot of times," Huang wanted to build 'the tallest tower in downtown and West of the Mississippi," but that "[a]t times the conversations between Huang and Huizar just seemed to be bullshitting around." (*Id*.) Esparza said "Huizar told Huang he would help Huang because"—using more graphic terms—Huizar would have "bragging rights" and be credited with having built the tallest building downtown. (*Id*.) Esparza explained that he had limited information about the project because "[t]he filing for this project happened after Esparza already left Huizar's office, so Esparza was not part of any recent conversations regarding the tower." (*Id*.)[2] Lastly, although not

[2]      During this interview, Esparza was asked about Huang's "asks" of Huizar. Esparza said that around 2016, "Huang needed a letter of support from Huizar in order for the Chinese government to allow Huang to come to the United States." (*Id*. at p. 9.) Esparza added that "Huang needed the letter to be for a business reason," but did not elaborate further. (*Id*.) The letter of support Esparza was referring to may have been the one that was produced in discovery which references the expansion of the LA Grand Hotel.

During the same interview, Esparza also mentioned another of Huang's "asks:" a request for a land use attorney which, Esparza explained, led to a meeting between Huang, Huizar and Tom Walsh, a union leader. (*Id*.) It is unclear what Esparza was referring to. In discovery, the government produced a 2013 email from Harris Chan, SZNW's then-Owner Representative, to Esparza asking for the name of a labor consultant to analyze SZNW's agreement with the union. This email led to a meeting between Huang, Huizar, and Walsh. The government also produced several 2016 emails regarding Huang's request to Esparza and Huizar for the names of some land use consultants for the expansion project, but that request did not involve Walsh. Thus, during Esparza's interview with the government, when he described Huang's request for a land use attorney, he may have been referring to one of these two events, or he may have conflated them, or he may have been describing some other matter.

specific to the LA Grand Hotel's expansion project, Esparza stated at his fifth interview that "Huizar did not do anything major for Huang."  (Ex. A-5 at p. 4.)

Other than these few statements, Esparza did not provide any information about SZNW's expansion of the LA Grand Hotel in his first five interviews.

B.  The Factual Basis for Esparza's Plea

After the five interviews had occurred, on February 14, 2020, AUSA Mack Jenkins emailed Mr. Jones and attached a factual bases for Esparza's plea. (Exhibit B.)  AUSA Jenkins' email stated, "Please closely review with your client and call to discuss any factual or legal issues."  (Id.; underlines in original.)  The factual basis contained a section entitled "LA Grand Hotel Bribery Scheme." Under this heading, the factual basis listed numerous benefits that Huang conferred on Huizar and Esparza.  (Id. at ¶¶ 12-13, 16.)  As to reciprocal benefits that Huizar and Esparza provided to Huang, the factual basis (1) referenced the 2014 City Council's resolution recognizing Huang and (2) made vague and unspecific references to "official acts" that would be required of Huizar "at various stages of the City approval process" for the expansion of the LA Grand Hotel.  (Id. at ¶¶ 18-9.)  In Esparza's prior interviews, he had mentioned the former—Esparza listed it as one of Huang's "asks" (Ex. A-3 at p. 8)—but never said anything about the latter.

On March 10, 2020, AUSA Veronica Dragalin emailed Mr. Jones and attached the five FBI reports of Esparza's prior interviews.  (Exhibit C, attaching Exs. A-1 through A-5 to this motion.)  AUSA Dragalin stated, "As we mentioned on the phone, the particular areas we want [Esparza] to focus on are the Godoy settlement and his role in facilitating/arranging that payment, and the concept that the Chairman asked Huizar for favors in return, specifically with regard to the LA Grand Hotel redevelopment project.  The January 15, 2019 report [Ex. A-3 to this motion] has the most detail on this latter subject."  (Id.)

The next day, AUSA Dragalin emailed Mr. Jones to schedule an interview with Esparza, presumably to address the two areas she asked that Esparza "focus on." (*Id*.) Mr. Jones promptly responded that he would check with his client. (*Id*.) Two days later, having not heard from Mr. Jones, AUSA Dragalin emailed again, asking for Esparza and Jones' availability on March 16. (*Id*.) Mr. Jones responded that they were available, which AUSA Dragalin confirmed. (*Id*.) However, on March 15, 2020, Mr. Jones emailed to say that for personal reasons, he had to cancel the March 16 meeting and proposed that they meet later that week. (*Id*.) If the government responded to Mr. Jones' email, they did not provide it in discovery.

On March 23, 2020, AUSA Jenkins emailed Mr. Jones. (*Id*.) He wrote, "[A]s discussed, please find attached a revised <u>draft</u> Factual Basis for your client. *We have gone through it based on conversations with you, and [AUSA Dragalin] has identified where particular evidence would help enlighten Mr. Esparza's recollection (those areas are highlighted in yellow)...* Please confirm receipt and let us know if we can meet with your client tomorrow or soon thereafter to finalize this." (*Id.*; underline in original; italics added.)

AUSA Jenkins' email attached a revised factual basis with yellow and blue highlighting. (Exhibit D.) As to the section for the "LA Grand Hotel Bribery Scheme," the government slightly modified a paragraph addressing the financial benefits that Huang provided to Huizar and Esparza on a trip to Australia. (*Id*. at ¶ 13.) More significantly, the government added seven new paragraphs—¶¶ 20 through 26—concerning the LA Grand Hotel's expansion project. With one exception (¶ 24), the new paragraphs contained "facts" and events that Esparza <u>had never previously</u> <u>mentioned</u>, including describing several three-year old text, emails and phone conversations telling Esparza what he was thinking when someone else made a statement or what he meant when he made a statement. We address the new paragraphs below:

| ¶ | Revised Factual Basis | Esparza's Prior Statements |
|---|---|---|
| 20 | On August 4, 2016, co-conspirators HUIZAR and CHAN, officials from the Planning Department, and CD-14 staff members met with co-conspirator HUANG and his team to discuss the expansion of the L.A. Grand Hotel, including co-conspirator HUANG's interest in pursuing TOT rebates, TFAR, and other incentives from the City. | In Esparza's third interview he referenced this meeting (Ex. A-3 at p. 5), **but never stated that "Huang's interest [was]  in pursuing TOT rebates, TFAR, and other incentives from the City."** |
| 21 | On August 15, 2016, Esparza texted Huizar regarding Huang's expansion project: "Reminder boss to decide what land use expediters you want to recommend to the Chairman." | In Esparza third interview, he mentioned Huang's request for a list of "land use attorneys," but that was in reference to a meeting with union leader Tom Walsh. (Ex. A-4 at p. 9; see also fn. 2.) **Esparza never mentioned Huang's request for "land us expediters" or the quoted  text message.** |
| 22 | On December 16, 2016, defendant ESPARZA forwarded an e-mail to co-conspirator HUIZAR from KUK listing a number of consultants, writing: "Hi Boss, Here is the list of land use consultants per [KUK]'s past recommendations. Chairman [HUANG] would like us to schedule interviews on Monday." | As noted above, Esparza previously said Huang asked Huizar for "land use attorneys" in connection with a meeting with Tom Walsh **but never mentioned the quoted email.** |

LAW
OFFICES OF
RICHARD M.
STEINGARD

| ¶ | Revised Factual Basis | Esparza's Prior Statements |
|---|---|---|
| 23 | On April 27, 2017, in a telephone call between defendant ESPARZA and ZHENG, the two discussed a proposed consultant for the L.A. Grand Hotel expansion project. Defendant ESPARZA stated: "So, remember, the Chairman was gonna hire [a specific consultant]?... JOSE [HUIZAR] wanted me to tell the Chairman not to hire him anymore." When ZHENG asked why, defendant ESPARZA responded: "Because, ah, JOSE [HUIZAR] can't trust him, he's not a, he's not a—he's, he's too loyal to another elected official, to another person. So JOSE [HUIZAR] doesn't think it's a good idea, it's not a good idea to—-to put him on the project." | Again, Esparza previously mentioned that Huang asked Huizar for a list of "land use attorneys" regarding a meeting with Walsh **but never mentioned a call with Zheng, Huizar's position that Huang not hire a specific consultant, or anything else contained in this paragraph.** |
| 24 | Co-conspirator HUANG brought up the L.A. Grand Hotel expansion project on numerous occasions in the presence of defendant ESPARZA and co-conspirator HUIZAR. Co-conspirator HUANG, through translation provided by ZHENG, expressed to co-conspirator HUIZAR that he wanted to build the tallest tower west of the Mississippi.  In response, co-conspirator HUIZAR expressed his support of the project. | Esparza made these statements during one of his interviews.  (Ex. A-3 at p. 5.) |

LAW
OFFICES OF
RICHARD M.
STEINGARD

| ¶ | Revised Factual Basis | Esparza's Prior Statements |
|---|---|---|
| 25 | On May 9, 2017, in a telephone call, defendant ESPARZA and ZHENG discussed the relationship between co-conspirators HUANG and HUIZAR. ZHENG stated that co-conspirator HUANG expected to lay everything in front of co-conspirator HUIZAR at an upcoming trip to Cabo San Lucas, which defendant ESPARZA understood to refer to the assistance co-conspirator HUANG expected from co-conspirator HUIZAR on the L.A. Grand Hotel expansion project. ZHENG added that coconspirator HUANG was "going to make [co-conspirator HUIZAR] think that, make it, otherwise Chairman [HUANG] ask him to, uh, pay back that $600,000 already. Last night." When defendant ESPARZA stated that "[HUIZAR]'s not going to do that either," ZHENG responded: "Chairman [HUANG] will push him."  According to ZHENG, co-conspirator HUANG raised this issue with co-conspirator HUIZAR the previous evening at the same time that co-conspirator HUANG told coconspirator HUIZAR that co-conspirator HUANG heard from multiple sources that the FBI was looking into co-conspirator HUIZAR. | **Esparza never mentioned this conversation, Zheng's statement about a trip to Cabo San Lucas, Huang's request that Huizar pay back the $600,000 loan, or what Esparza understood when Zheng said, "Huang expected to lay everything in front of co-conspirator Huizar at an upcoming trip to Cabo San Lucas."** |

///

LAW
OFFICES OF
RICHARD M.
STEINGARD

| ¶ | Revised Factual Basis | Esparza's Prior Statements |
|---|---|---|
| 26 | On May 9, 2017, in a telephone call between defendant ESPARZA and another HUIZAR staff member, defendant ESPARZA stated: "Chairman [HUANG] should have all the leverage in the world [be]cause of what [HUIZAR] owes [HUANG]." Defendant ESPARZA meant that coconspirator HUANG expected co-conspirator's assistance on the L.A. Grand Hotel expansion project, or any other requested assistance, from co-conspirator HUIZAR because of the financial benefits coconspirator HUANG had provided to co-conspirator HUIZAR. | **Esparza never mentioned this conversation, Huang's claimed "leverage" over Huizar, or what he (Esparza) meant when he said, "Chairman [HUANG] should have all the leverage in the world [be]cause of what [HUIZAR] owes [HUANG]."** |

It bears noting that during the government's prior interviews with Esparza, they had him review various documents, emails, and text messages, but they never showed him the text or emails referenced in the new paragraphs, nor did they play the recorded conversations or show him line sheets or transcripts for the above-referenced calls. Rather, through the revised and highlighted factual basis, the government "help[ed] enlighten" Esparza by simply telling him what the government thought the "facts" were, including what he was thinking and what he meant.

C. Esparza's March 25, 2020 Interview

Two days after sending Mr. Jones the revised factual basis, on March 25, 2020, the government interviewed Esparza again. (Ex. A-6.) As noted above, AUSA Dragalin requested this interview in her March 10 and 12, 2020 emails, indicating, in relevant part, that they wanted Esparza to focus on "the concept that the Chairman asked Huizar for favors in return, specifically with regard to the LA

Grand Hotel redevelopment project." (Exhibit C.)  Thus, the March 25 interview focused on "Huang's Project" (Ex. A-6 at p. 1), but Esparza knew little about it. Esparza "vividly recalled" an August 4, 2016 meeting between Huizar, Huang, Chan and others "because Huang was considerably late and Chan was 'pissed off.'" (Ex. E at p. 1.)  According to the report of the interview, Esparza stated that "[t]he meeting was to discuss Huang's development project in Huizar's district" but provided no other details. (Ex. E at p. 1.)  Esparza had previously told the government about this meeting, noting that Huang made a presentation of what they wanted to do to the hotel. (Ex. A-3 at p. 5.)

Esparza's only other reference to the expansion project during this interview concerned Huang's request to Huizar for a list of land use consultants. Esparza said that on a flight back from Las Vegas, "Huang asked Huizar directly who Huang should hire as a land use consultant. Huang said he was in the process of hiring someone to assist with the project." (*Id*.)  Esparza explained that Huizar told Esparza he wanted Huang to hire certain land use attorneys who would give Huizar a referral fee and not others who might steer Huang towards a different councilmember. (*Id*.)  As noted above, Esparza may have told the government about this event in a prior interview. (*See* Ex. A-3 at p. 9 & fn. 2, *supra*.)

In other words, when the government asked Esparza to "focus" on "the concept that the Chairman asked Huizar for favors in return, specifically with regard to the LA Grand Hotel redevelopment project" (Ex. C), Esparza repeated the limited information he had previously provided.[3]

///

///

_____

[3]      According to the March 25, 2020 interview report, part of the meeting with Esparza concerned "potential cooperation and plea agreements including Esparza's factual basis. (Ex. A-6 at p. 1.)  However, the agent did not record or memorialize any part of those conversations in his notes or report

LAW OFFICES OF RICHARD M. STEINGARD

D. Esparza's Execution of the Factual Basis

On March 25, 2020, presumably after the meeting with Esparza ended, AUSA Dragalin emailed Mr. Jones and attached a revised factual basis. (Exhibit E.) This factual basis was identical to the one that AUSA Jenkins had sent Mr. Jones on March 23, 2020, except that the yellow and blue highlights had been removed. On April 1, 2020, Mr. Jones emailed AUSAs Dragalin and Jenkins and attached the executed copy of the factual basis. (Exhibit F.)

E. Defense Counsels' Request for Information About the Conversations Between the Prosecutors and Mr. Jones

On or about April 29, 2022, the government produced the various emails and factual bases discussed above (along with a large volume of other materials). On May 23, 2022, defense counsel emailed the government asking that they provide any memoranda or notes regarding the prosecutors' conversation with Mr. Jones which prompted the government to believe that they needed to "help enlighten Mr. Esparza's recollection," as well as an accounting of the prosecutors' call with Mr. Jones. (Exhibit G.) On June 3, 2022, AUSA Susan Har responded, "Based on a reasonably diligent search, the government does not believe it is in possession of any notes by government counsel regarding the referenced conversation other than what has already been produced and, even if there were any AUSA notes, it is our position that they would be exempt from discovery under Rule 16(a)(2)." (*Id*.) AUSA Har did not address the defendants' request for an accounting of the call.

On June 6, 2022, defense counsel emailed AUSA Har asking her to ascertain whether an agent was on the call with the prosecutors and Mr. Jones and, if so, whether the agent had any notes; defense counsel also repeated their request for a summary of the prosecutors' call with Mr. Jones. (*Id*.) On June 15, 2022, AUSA Har responded that she was fairly certain no agents were on the call and asked that the defense clarify the basis for the request for an accounting of the call. (*Id*.) On June 15, 2022, defense counsel clarified the basis for the request. (*Id*.) That same

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    day, AUSA Jenkins – who was in trial at the time – responded by stating, "There is
2    no <u>Brady</u> information to produce in response to your below request."  (*Id*.) The
3    parties have had further discussions about the production of an accounting of the
4    calls but have been unsuccessful in resolving the dispute.  (*Id*.)[4]

5        On July 15, 2022, SZNW's counsel spoke with Mr. Jones and explained the
6    nature of this motion, including Mr. Jenkins' March 23, 2020 email to Mr. Jones,
7    and asked if he remembered the conversations that Mr. Jenkins was referring to.
8    Mr. Jones stated that without more, he could not recall the substance of his
9    conversations with Mr. Jenkins.  (Declaration of Richard Steingard, ¶ 2.)

### III.

### ARGUMENT

12       In a prior motion to compel, the parties litigated a similar issue concerning
13   the government's obligations to produce communications and evidence of
14   conversations between the prosecutors and counsel for cooperating witnesses, such
15   as scheduling notices.  (ECF Nos. 381, 418, & 430.)  Because the parties fully
16   briefed the cases and statutes in this area, and the Court is quite aware of the
17   relevant law at issue, we need not repeat the case and statute citations here but
18   incorporate them as though set forth herein.

19       In the prior motion, the government produced FBI reports detailing the
20   witnesses' statements and factual bases supporting their pleas.  (RT 4/25/22 at pp.
21   14-19.)  Based on the record presented in the defense filings, the Court denied the
22   motion.  (*Id*. at pp. 40-1.)

---

[4]      Per the Court's scheduling order, the government is to produce all *Brady* and
*Giglio* materials on or before July 29, 2022. Because the government represented
that there is "no *Brady* material to produce"—as opposed to saying that it is not yet
obligated to produce *Brady* material—SZNW has proceeded to file the instant
motion before the *Brady* deadline.  Should the government produce *Brady* material
concerning the prosecutors' conversations with Mr. Jones after the filing of this
motion, SZNW will promptly notify the Court and, if appropriate, withdraw the
motion.

The instant matter is different.  As described above, between November 2018 and June 2019, the government interviewed Esparza on five separate occasions.  The interviews were lengthy, extensive, and covered a considerable number of issues.  As to Huang,  Esparza provided detailed accountings of benefits that he and Huizar received from Huang on the Las Vegas and Australia trips and gave an equally detailed accounting of Huang's involvement in Huizar's successful attempt to obtain a loan to settle a sexual harassment lawsuit against him.  Esparza also ticked off various "asks" that Huang made of Huizar, as well as Huizar's responses to those requests.

But as to the expansion of the LA Grand Hotel—the central focus of the charges against SZNW—Esparza provided little information in his first five interviews with the government.  Consequently, the government sent him the reports of his prior interviews, asked him to "focus" on Huang's request to Huizar for "favors in return, specifically with regard to the LA Grand Hotel redevelopment project," and scheduled another meeting with him  (Exhibit C.)  Before the government met with Esparza, the prosecutors had conversations with his counsel.  (*Id*.)  As the government wrote to Mr. Jones, "*Based on conversations with you*," the prosecutors "help[ed] enlighten Esparza's recollection" by spoon-feeding him a series of "facts" and events, none of which he had previously recounted.  (*Id*.; emphasis added)  The government included not just portions of text, email and phone conversations, but also what Esparza understood Zheng was referring to in one conversation ("Zheng stated that Huang "expected to lay everything in front of co-conspirator Huizar at an upcoming trip to Cabo San Lucas, *which defendant Esparza understood to refer to the assistance co-conspirator Huang expected from co-conspirator Huizar on the L.A. Grand Hotel expansion project*"), and what Esparza meant in another conversation ("Esparza stated: 'Chairman [Huang] should have all the leverage in the world [be]cause of what [Huizar] owes [Huang].' *Defendant Esparza meant that coconspirator Huang*

1    *expected co-conspirator's assistance on the L.A. Grand Hotel expansion project,*

2    *or any other requested assistance, from co-conspirator Huizar because of the*

3    *financial benefits coconspirator Huang had provided to co-conspirator Huizar*.").

4       The government's "enlighten[ment]" came when Esparza was at his most

5    vulnerable—in the midst of plea negotiations—when he would have known that

6    any disagreements with the government or push-back on their claimed version of

7    events could affect his coveted goal of "earning a spot on [the government's]

8    team."  (Ex. A-1 at p. 2; bracketed words in original.)   Moreover, the

9    government's additions to Esparza's factual basis concerned significant

10   allegations.  For instance, the FSI alleges as overt acts the two May 9, 2017 phone

11   conversations (Count 1, OA 68 & 69), and the Court cited Esparza and Zheng's

12   May 9, 2017 conversation in denying one of the defendants' motions to dismiss.

13   (RT 3/7/22 at pp. 9-10, citing FSI, Count 1, OA 68.)

14       This was not the government asking Esparza about his recollection of a

15   conversation that occurred three years earlier, "planting a seed" that might lead

16   Esparza to remember a specific call, or playing a recording of a wiretap-intercepted

17   call and leadingly asking Esparza what he was thinking when Zheng made a

18   particular statement.  Rather, this was the government effectively telling a

19   cooperating witness during a critical stage of plea negotiations what the

20   prosecutors wanted, expected, and needed him to say.

21   ///

22   ///

23   ///

24

25

26

27

28



In sum, the defendants seek to learn what occurred during Mr. Jones' March 2020 calls with the prosecutors.  Whatever Mr. Jones said, and whatever the prosecutors responded, led the government to believe that they needed to "help enlighten Mr. Esparza's recollection."  Because there are no notes or memos of the calls, the defendants ask that the Court order the government to provide a detailed summary of those conversations.

Dated: July 19, 2022                    Respectfully submitted,

                                         **LAW OFFICES OF RICHARD M. STEINGARD**


                              By:  */s/ Richard M. Steingard*
                                   Richard M. Steingard

                                   [And on Behalf of Jose Huizar
                                   and Raymond Chan]


LAW
OFFICES OF
RICHARD M.
STEINGARD

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice law in the State of California and before this Honorable Court.  My firm represents Shen Zhen New World I, LLC in the above-captioned matter.  I submit this declaration in support of our motion to compel the government to provide the details of conversations between government counsel and Terrence Jones, George Esparza's attorney, in and about March, 2020.

2.      On July 15, 2022, I spoke with Mr. Jones and explained the nature of this motion, including Mr. Jenkins' March 23, 2020 email to Mr. Jones.  I asked Mr. Jones if he recalled the conversations with the prosecutors.  Mr. Jones stated that without more, he could not recall the substance of these conversations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 19th day of July 2022, in Los Angeles, California.


_____

Richard M. Steingard

LAW
OFFICES OF
RICHARD M.
STEINGARD

16