Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>                    Defendant. | **CR-20-326(A)-JFW**<br><br>**JOINT FILING REGARDING THE GOVERNMENT'S DISCLOSURE OF ITS WITNESS AND EXHIBIT LISTS**<br><br>**Hearing Date: August 8, 2022**<br>**Hearing Time: 8:00 a.m.** |

The United States of America, by and through Assistant U.S. Attorneys Mack Jenkins, Cassie Palmer, Susan Har, and Jamari Buxton, and Shen Zhen New World I, LLC, by and through its counsel, Richard Steingard, submit this joint filing regarding the government's disclosure of its witness and exhibit lists. Essentially, the parties disagree about whether the government's witness and exhibit lists, disclosed on June 7, 2022, were final lists or subject to future modifications.  The parties have attempted to resolve this matter but are unable to

reach agreement.  Accordingly, the parties ask that the Court intervene and provide guidance on these issues.

DATED: August 1, 2022                    RICHARD M. STEINGARD
                                         Law Offices of Richard M. Steingard


                                  By:    /s/
                                         RICHARD M. STEINGARD
                                         Attorney for Defendant Shen Zhen
                                         New World I, LLC

DATED: August 1, 2022                    TRACY L. WILKINSON
                                         United States Attorney


                                  By:    /s/
                                         MACK JENKINS
                                         SUSAN HAR
                                         CASSIE PALMER
                                         JAMARI BUXTON
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

LAW
OFFICES OF
RICHARD M.
STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**DEFENDANT'S POSITION**..................................................................1

I.      INTRODUCTION ...............................................................1

II.     STATEMENT OF RELEVANT FACTS  ....................................2

III.    ARGUMENT  ......................................................................6

**GOVERNMENT'S POSITION**..............................................................7

I.      INTRODUCTION ...............................................................7

II.     RELEVANT FACTS  ............................................................9
        A.      The Court's Prior Observations on the Record Establish
                that Exclusion Is Disfavored in this Context ....................9
        B.      The Parties' Meet-and-Confers ...................................11
        C.      May 3, 2022 Meet-and-Confer ....................................11
        D.      The Parties' Discussions in June and July 2022................12

III.    RELEVANT LAW ON EXCLUSION  .......................................14

IV.     ARGUMENT  ...................................................................15
        A.      The Government Has Acted in Good Faith and Made Every
                Reasonable Effort to Update and Accommodate the Defense ...........15
        B.      Changes to the Exhibit List, Including as Contemplated
                by the Court's Order, Are Expected ....................................17
        C.      In the Most Recent Trial in This Matter, Both Sides Acted
                in Good Faith to Supplement Their Respective Exhibit Lists...........19
        D.      There Is No Prejudice to the Defense.................................20
        E.      Conversely, There Will Be Prejudice to the Government...............21

V.      CONCLUSION  ................................................................22

**SZNW'S REPLY**..............................................................................23

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

4

*Taylor v. Illinois,*
      484 U.S. 400 (1988)........................................................................14

5

6

*United States v. Finley,*
      301 F.3d 1000 (9th Cir. 2002) .....................................................15

7

8

*United States v. Gee,*
      695 F.2d 1165 (9th Cir. 1983) .....................................................15

9

10

*United States v. Peters,*
      937 F.2d 1422 (9th Cir. 1991) .....................................................14

11

12

*United States v. Verduzco,*
      373 F.3d 1022 (9th Cir. 2004) .....................................................14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

iv

## **INDEX OF EXHIBITS**

| Exhibit | Description | Page(s) |
|---|---|---|
| A | June 7 through July 13, 2022 E-mail correspondence between Richard Steingard and AUSAs Susan Har, Mack Jenkins, Jamari Buxton and Cassie Palmer | 5:1, 11:18, 12:20, 13:18, 14:1 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

## DEFENDANT'S POSITION

### I.  INTRODUCTION

From the early stages of this case, the parties have engaged in extensive conversations and litigation about when certain pre-trial events should occur.  For the most part, the parties negotiated dates—often with the Court's input—and entered into proposed stipulations, which the Court usually granted and converted to Court Orders.  One such event, the one at issue here, concerns the government's disclosure of its witness and exhibit lists.

At the end of March 2022, after the Court granted Shen Zhen New World I, LLC ("SZNW") a severance, the Court asked the parties about the status of the government's trial witnesses and exhibits.  The government represented that it had already produced 90 % of its trial exhibits to SZNW.  Accepting the government's representation, the Court instructed the government to produce an informal listing of its witnesses and exhibits to SZNW in early April, with a final list to follow.

In April 2022, the government provided SZNW with informal lists identifying 46 trial witnesses and 630 trial exhibits.  At the same time, the parties stipulated that the government would disclose its final witness and exhibit list on June 7, 2022, subject to any "straggler" exhibits based on witness trial prep.  The Court so ordered.

On June 7, 2022, the government provided its final witness and exhibit lists, identifying 36 trial witnesses—this list deleted 13 names from the April list and added 3 new witnesses.  The government's exhibits list identified 387 exhibits—this list *eliminated almost 500 exhibits* from the prior list and *added approximately 200 new exhibits*.  Per the above, SZNW understood that these were the government's final trial witness and exhibit lists.

One month later, SZNW provided the government with its motions *in* limine; one MIL noted the absence of certain witnesses and exhibits.  After reviewing the MILs, the government advised that it was adding witnesses and

LAW OFFICES OF RICHARD M. STEINGARD

exhibits to its lists to address some of the points raised in SZNW's MIL.  When SZNW objected, the government indicated that in its view, the court ordered deadline for witness and exhibit lists was merely aspirational.  SZNW disagrees. The parties agreed on the June 7 date; other than "straggler" exhibits, the parties never discussed later additions or subsequent disclosure dates; and the Court ordered June 7 as the date of disclosure.  There was and is no ambiguity, and certainly none that would permit the government to unilaterally add witnesses and exhibits.  Accordingly, SZNW asks that the Court order that the government adhere to its June 7 witness and exhibit list and, absent good cause, may not unilaterally amend them.

## II. STATEMENT OF RELEVANT FACTS

In December 2020, the government issued a First Superseding Indictment against SZNW and, shortly thereafter, began producing an extraordinary volume of discovery.  The government's discovery now tops 2.1 million pages.  Because of the enormous volume of material, the parties conferred about various pretrial dates, including the early disclosure of the government's trial witness and exhibit lists.

In early May 2021, the parties submitted a proposed stipulation that reflected agreements on most pre-trial dates, and disagreements on a few.  (ECF 182).  At a hearing on May 10, 2021, the Court addressed the various dates, including the parties' contrasting dates for the government's disclosure of witness and exhibit lists.  (RT 5/10/21 at pp. 16-28.)  Ultimately, the Court adopted the government's proposed date—February 15, 2022—but, in recognition of the vast amount of material, ordered that the parties begin a meet and confer process by which the government would informally provide its trial exhibits.  (*Id.*)  Thereafter, the government provided the defense with three installments of its anticipated trial exhibits, beginning in August 2021 and ending in early January 2022.  The final

installment contained over 1000 exhibits and covered 389 of the 452 overt acts in the First Superseding Indictment.[1]

Under the Court's order, the government was to provide its trial witness and exhibit lists on February 15, 2022.  However, on January 7, 2022, the Court addressed defendants SZNW's motion to sever and ordered the government to file an offer of proof establishing a single honest services fraud scheme.  (ECF 330.)  At a hearing on January 31, 2022, because the severance motion was still pending, the government advised that it would continue working on its trial witness and exhibit lists, but the Court stayed their actual disclosure pending a ruling on the severance motions.  (RT 1/31/22 at pp. 124-6.)

On March 7, 2022, the Court granted SZNW a severance and ordered that the parties file a stipulation concerning a revised schedule for pretrial proceedings.  (ECF 390.)  When the parties could not reach agreement on dates, they filed their respective positions and again returned to court.  (ECF 403 (government); 406 (SZNW).)

On March 25, 2022, the Court held a status conference to address the parties' scheduling disagreements.  Regarding the exhibits for SZNW, the government pointed to its informal disclosure of exhibits that was provided to counsel in January 2022.  (RT 3/25/22 at p. 26.)  The Court asked whether that production constituted a "final version of the exhibit list;" the government represented that it was "a version" but that it constituted 90 % of its trial exhibits for the SZNW case.  (*Id*. at pp. 27-28.)  The government advised that some exhibits

---

[1]     In August 2021, the defendants moved for reconsideration of the date set for the government's disclosure of its trial witnesses and exhibits based on the slow pace with which the government was informally producing its exhibits.  (ECF 209 (defendants' motion); 225 (government's opposition); & 227 (defendants' reply).)  On September 15, 2021, the Court held a hearing and, while sympathetic to the defense, declined to change the "formal" date previously set for the government's disclosure of its trial witnesses and exhibits.  (RT 9/15/21 at pp. 49- 53.)

may be duplicative—"just to clarify, the 90% of these 400, there are some duplicative documents"—and added that "when we get closer to the final list, the Government would make sure that there are no duplicative documents within it." (*Id*. at 28.)  The Court accepted the government's representations and because the government's disclosure had largely been accomplished, ordered the government to provide an initial list of witnesses and exhibits to SZNW within ten days.  (*Id*. at. pp. 30-1.)

On April 4, 2022, the government provided SZNW with two lists, one identifying 46 trial witnesses and another identifying 630 trial exhibits.[2] Thereafter, the parties negotiated the dates for various pre-trial disclosures, motions, and the like.  The parties agreed that the government's disclosure of its witness and exhibits would occur on or before June 7, 2022.  The parties agreed that the government could add "straggler" exhibits identified during witness prep sessions, but otherwise did not discuss or set dates for subsequent or "more final" witness and exhibit lists.  To the contrary, the parties stipulated to only one disclosure date – June 7 (ECF 427) – and the Court so ordered.  (ECF 428.)

On June 7, 2022, the government provided SZNW with its witness and exhibit lists.  The witness list reflected that the government would call 36 trial witnesses—13 witnesses had been deleted from the April 4 list (including Isidra and Salvador Huizar) and 3 new witnesses had been added.  The government's exhibit list now contained 387 exhibits—nearly *500 exhibits* had been eliminated from the April 4 list (the one that supposedly contained 90 % of the government's exhibits) and approximately *200 new exhibits* had been added.[3]

---

[2]     As will become relevant below, the government's witness list included two of Jose Huizar's relatives, Isidra and Salvador Huizar.

[3]     The government also provided electronic copies of most exhibits.

The government's email attaching the witness and exhibit lists characterized them as "early" lists.  (Exhibit A.)  Unsure what the government intended, SZNW's counsel took the precautionary step of reminding the government of their agreement that, other than "straggler exhibits, the lists were final.  (*Id.*)

Based on these lists, SZNW prepared its motions *in limine* ("MIL") which, per the Court's order, were to be provided to the government on July 5, 2022. (ECF 428.)[4]  One of SZNW's MILs sought to exclude evidence of Jose Huizar and George Esparza's money laundering activities.  That MIL noted that Salvador and Isidra Huizar, who allegedly participated in the money laundering, were not named on the government's witness list.  The MIL also noted that the government's exhibit list did not include Jose, Salvador, or Isidra Huizar's bank records.  In addition, the MIL noted that the only exhibits referencing Huizar and Esparza's exchange of Australian dollars to U.S. currency were a series of photographs that Esparza had taken.

On July 6, 2022, after reviewing SZNW's MILs, the government emailed SZNW's counsel to say, in relevant part, that they now intended to call Isidra and Salvador Huizar as witnesses at trial and introduce their bank records as exhibits through a summary witness.  (*Id.*)  On July 8, 2022, the government emailed SZNW's counsel to advise that it would also be adding to its exhibit list a series of text messages between Huizar and Esparza concerning the exchange of Australian currency.  (*Id.*)  On June 10, 2022, SZNW's counsel responded to both of the government's emails noting, in relevant part, that it objected to the additional witnesses and exhibits that were not contained on the lists provided on June 7.

---

[4]     Because the government's exhibits had changed so dramatically, the parties agreed that if SZNW provided any MIL after July 5, the government would be allotted a commensurate amount of time to prepare its opposition.  On July 5, 2022, SZNW provided the government with nine of its 11 MILs.  The next day SZNW provided another MIL.  On July 11, SZNW provided the last MIL.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1
2
(*Id.*)  The parties engaged in subsequent discussions but were unable to reach any agreement.[5]

3    ## III.    ARGUMENT

4    There is a clear and obvious disconnect between what the parties negotiated,
5    agreed to, stipulated to, and the Court ordered concerning the government's
6    disclosure of its trial witnesses and exhibits, and what the government believes are
7    its porous limitations.  Like any other deadline set by the Court, absent an
8    agreement between the parties or an order of the Court, the dates are final.  This
9    Court in particular has expressed this viewpoint, beginning with its Criminal Trial
10    Order (ECF 150), and by repeatedly setting firm dates that pertained to both
11    parties.  The government cannot simply disregard, ignore, or modify dates that are
12    set by the Court.

13    Yet that is precisely what the government perceives it can do with
14    identifying its trial witnesses and exhibits.  After telling the Court in March that
15    SZNW possessed 90 % of its trial exhibits, two months later the government
16    slashed 75 % of that list and then added another 200 exhibits.  This, of course,
17    rendered much of SZNW's analysis of the claimed "90 % trial exhibits" as an
18    exercise in futility.  Adding insult to injury, the government felt unharnessed by the
19    June 7 list and believes it can amend it now, after reviewing SZNW *in limine*
20    motions, and in the future.

21    Thus, the issue is not only that the government current attempts to amend its
22    witness and exhibit lists, but future efforts as well. Through its recent exchanges
23    with defense counsel, the government has made clear its intention to continue
24

25
26    _____
27
28    [5]    On July 18, 2022, the government orally advised SZNW that on or about
July 21, 2022—six weeks after the Court-ordered date for the government's
witness and exhibit lists—it would be providing "revised" witness and exhibit lists
that included the witnesses and exhibits referenced in the government's June 8 and
10 emails.

modifying its witness and exhibit lists—not by *eliminating* witnesses and exhibits, but by *adding* to them—whenever it desires.  Other than discussing "straggler" exhibits based on witness prep, the government did not raise this with defense counsel when negotiating and agreeing to disclosure dates, nor with the Court when stipulating to dates.  Thus, the defense never understood that the Court's deadlines were self-adjustable.

To be clear, SZNW does not take the position that the government's (or defense's) witness and exhibit lists are necessarily etched in concrete.  SZNW understands and appreciates that the Court may permit the government to amend its witness and exhibit lists prior to trial and, for good cause, SZNW may not object to it doing so.  But reviewing SZNW's *in limine* motions and realizing deficits in its case are not good cause.  Indeed, the government's modifications seized on the fact that SZNW complied with *its* obligations to provide fully briefed MILs to the government on a specific date.

In sum, there are no grounds presently before the Court to permit the government to unilaterally amend the deadlines stipulated to by the parties and ordered by the Court.  SZNW asks that the Court enforce its prior order and reject the government's current attempts to revise its witness and exhibit lists, as well as any future attempts to do so without good cause.

## **GOVERNMENT'S POSITION**

### **I.    INTRODUCTION[6]**

As the government has repeatedly explained in pre-trial litigation, court hearings, and correspondence with counsel, there is no mystery or surprise in its case, which is largely previewed in detail through the 139-page "speaking" First

---

[6]    All facts stated herein are as of July 27, 2022.  The defense requested to present a joint filing, and the government obliged.  Defendant circulated its motion to the government on July 19.  The government provided this opposition to the defense on July 27.

Superseding Indictment ("FSI"), which was filed November 12, 2020. Acting in good faith, government counsel has been available to counsel for defendant Shen Zhen New World I, LLC ("defendant" or "SZNW") at every turn, from answering questions about where to find specific discovery, to meeting with the defense to go over the significance and relevance of dozens of documents and witnesses the defense identified for discussion, person-by-person, document-by-document. The government also provided the defense with an index cataloguing specific discovery that supports the overt acts and counts in the FSI.

Despite the government's efforts, SZNW counsel now seeks to hamstring the government and the presentation of its case by precluding it from making good-faith and reasonable modifications to the exhibit and witness lists, consistent with its ongoing trial preparation. Defendant insists that the government's exhibit list provided on June 7--over <u>four months</u> before the October 18 trial in this matter--is largely set in stone. To be clear: the government in this case has and will continue to abide by all Court orders and treat them exactly as such--Court orders. However, defendant's motion here amounts to the type of "gotcha" exclusionary litigation and gamesmanship that the Court has previously disapproved.

While the government would face significant prejudice were it unable to make reasonable modifications to its own exhibit and witness lists, defendant faces none. Defendant mostly complains about the changes between the informal April 4 exhibit list and June 7 list, but begrudgingly acknowledges that the schedule explicitly contemplated a revised exhibit list on June 7. As for the post-June 7 modifications to the exhibit and witness lists, those have been largely limited to two discrete categories of evidence--(1) Jose Huizar's money laundering, and (2) certain texts by Huizar and George Esparza relating to their concealment efforts. Defendant faces no prejudice by these additions and, indeed, claims none, given that (1) both topics are squarely identified in the FSI in relation to SZNW; (2) other

LAW OFFICES OF RICHARD M. STEINGARD

exhibits on the June 7 exhibit list already related to those topics; (3) during the MIL meet-and-confer process, the government confirmed it would seek to put on these categories of evidence; (4) because of the government's express representations, the defense presented full briefs moving to exclude these two categories of evidence; and (5) the parties have yet to complete their ongoing work on the joint exhibit stipulation process, through which the defense has yet another opportunity to raise any substantive objections to the exhibits.  Accordingly, defendant's instant motion is both premature and unnecessary.

Changes to the exhibit and witness lists are a natural and expected part of trial preparation, particularly when trial is still nearly three months away.  The government has acted--and will continue to act--in good faith, making only reasonable adjustments that are helpful to the jury and communicating them early and often to the defense, so that both sides may fairly present their cases without surprise, as the Court intended.  In this way, this case will be decided on the legal and factual merits, and not as a result of attempts to exploit perceived tactical advantages.

## II.   **RELEVANT FACTS**

### A. The Court's Prior Observations on the Record Establish that Exclusion Is Disfavored in this Context

The Court has repeatedly expressed that its goal is to conduct a fair trial by which both sides can prepare for trial and efficiently present their respective cases, and to mitigate any surprises.

For example, during the May 10, 2021 hearing and then at the September 20, 2021 hearing, the parties and the Court discussed the timing for the government to disclose its exhibits (this was <u>before</u> defendants had received the government's complete index cataloguing the supporting documents for the overt acts).  At the May 10 hearing, the government raised concerns about following "a strict

timeline" or facing an "exclusionary penalty for not meeting certain deadlines." (5/10/21 Hr'g Tr. at 27:1-5.)  At that hearing, and then again at the September 20 hearing, the Court expressly assured the government that the point was not to impose gotcha penalties "until I get a sense that either the Government or defense is not acting in good faith." (Id. at 27:6-13; 9/20/21 Hr'g Tr. at 51:16-21.)  Rather, the Court explained that the point was to "manage this case in the most efficient way so that we have a trial that can be put on both from the Government and the defense in an efficient manner[.]" (5/10/21 Hr'g Tr. at 27:8-13.)  Along those same lines, the Court explained that the purpose of the early disclosure for the government's exhibits was to "get the bulk of the exhibits to the defense so counsel could begin the meet-and-confer-process" and work towards stipulations on those exhibits by the time of trial. (Id. at 17:8-22.)  Recognizing the obvious need for flexibility, the Court also noted that "[a]s we get closer to trial, to the extent that the exhibit list doesn't contain certain exhibits because they were recently produced or recently discovered or if there was some inadvertence by not including them on the list, certainly you're not going to be bound by the exhibit list." (Id.) (emphasis added).

The Court has also commented that "it's been my effort to make sure that there are no surprises that occur at the time of trial" for both sides. (4/25/22 Hr'g Tr. 46:21-47:1.)  Moreover, the Court (and defendants) have recognized that "it's undisputed that the Government has made full and complete production of documents." (9/20/21 Hr'g Tr. at 52:8-10.)  Coupled with the fact that "the detailed [FSI] in this case amply previews the Government's case in chief," the Court observed that "the government's case is not a secret." (Id. at 52:20-22; 53:17) (emphasis added).

Since the time of those hearings, the government has provided defendant with an even more detailed preview of its case via an index cataloguing the

documents supporting the overt acts in the FSI. It provided early and informal exhibit and witness lists on April 4, 2022. And, pursuant to the Court's scheduling order, it provided revised exhibit and witness lists on June 7, 2022. (See Dkt. No. 428.)

As is relevant here, the June 7 exhibit list included certain exhibits pertaining to Huizar's and Esparza's efforts to avoid detection and to limit certain conversations on the phone, as well as documents reflecting Esparza's efforts to exchange the cash he and Huizar obtained in Australia from defendant and Wei Huang.

### B. The Parties' Meet-and-Confers

In describing the parties' more recent discussions about the exhibit list and MILs, defendant skips over multiple salient facts.

### C. May 3, 2022 Meet-and-Confer

The parties engaged in multiple meet-and-confers regarding the parties' MILs, including one as early as May 3, 2022 at defendant's request. During that discussion, and as memorialized in part in the government's email on June 14, 2022, (Def. Ex. A at 2-3), the government gave an advanced preview of the forthcoming deletions and additions in the upcoming June 7 exhibit list. For example, the government advised during the May 3 meet-and-confer that it would no longer seek to introduce evidence regarding the LADBS consolidation; accordingly, documents related to that topic were omitted in the June 7 exhibit list. Likewise, the government advised that it would seek to introduce evidence about defendant's instructions to Huizar's office to obtain media presence at the AUP graduation at the L.A. Grand Hotel and of a recorded call between Esparza and Ricky Zheng discussing deliberately stalling Shanghai Construction's project as punishment for failing to participate in Huizar's pay-to-play scheme.

Unsurprisingly, exhibits supporting those topics were included in the June 7 exhibit list. (See id.)

### D.  The Parties' Discussions in June and July 2022

During another MIL meet-and-confer on June 24, 2022 (while the Lee/940 Hill trial was ongoing), counsel for SZNW, Richard Steingard and Craig Wilke, inquired as to whether the government would be seeking to introduce evidence of concealment; that is, evidence that Huizar and Esparza sought to conceal financial benefits provided by defendant, like their trips to Vegas and efforts to exchange their Australian currency.  The government confirmed that it would seek to introduce such evidence of their corrupt relationship.  This conduct is expressly charged in the FSI.  (FSI pp. 87-89, OA 361-366; pp. 95-96, OA 429-433.)

Defense counsel also posed the same question as it related to evidence about Jose Huizar's money laundering, which is also expressly charged in the FSI.  (FSI pp. 89-95, OA 367-428.)  Because only a few members of the government team were able to attend this meet-and-confer, they advised that the government would provide its position on that topic after consulting with counsel engaged in the Lee/940 Hill trial.  The defense had no objection.

Three days later, government counsel reached out to the defense and advised it had "answers to the questions tabled from last week." (Def. Ex. A at 9.)  The parties met and conferred again on June 28, during which time the government advised that it would seek to admit evidence of money laundering and that defense counsel should therefore prepare their motion if they wished to exclude it. Consistent with these meet-and-confers, defendant issued a total of eleven motions in limine, including one to exclude acts of concealment and one to exclude

evidence of Huizar's money laundering.[7]  Thus, defendant's characterization that "the government's modifications seized on the fact that SZNW complied with *its* obligations to provide fully briefed MILs to the government on a specific date" is incorrect and disingenuous.  (See Mot. at 7.)  The categories of evidence were discussed as part of the meet-and-confers well before the defense provided any motions and all related to conduct expressly charged and linked to defendant/Huang in the FSI.

The government also followed up with e-mail notice to the defense as soon as it confirmed the additional money laundering and concealment exhibits and witnesses, consistent with the representations it had already made during the meet-and-confers.  To the extent it was not obvious or clear that to present the money laundering component of the case expressly charged in the FSI the government would need to introduce <u>evidence</u> of said money laundering, government counsel confirmed via email on July 6 that it would call Isidra and Salvador Huizar (participants in the money laundering scheme) for this purpose and supply the relevant summary charts and bank record excerpts (which are due September 2). (Def. Ex. A at 4.)

Similarly, the government flagged via email on July 8 that it would seek to introduce additional "concealment" text messages, as described in overt acts 362-366 and 429-433 of the FSI--all discovery the defense had long possessed.  (Def.

---

[7]     As a professional courtesy to the defense, the government was flexible with the defense in meeting the Court-ordered deadline of July 5 to provide MILs.  That is, the defense asked the government to receive belatedly certain motions past the Court's July 5 deadline.  While the government disputes the characterization that the informal extension was necessary due to the "dramatic" changes between the April 4 and June 7 exhibit lists, the government nonetheless agreed to receive the motions as the defense prepared them.  Accordingly, one MIL was provided on July 6 and another on July 11.

LAW OFFICES OF RICHARD M. STEINGARD

Ex. A at 1.)  Sensitive to the fact that defendant's concealment MIL, which had been provided by that point, did not specifically address these supplemental text messages, the government also offered to provide a few additional days for the defense to revise its concealment MIL, which is not due to be filed with the Court until August 29.  (See id.)  Defense counsel declined.

The parties have started their ongoing work in preparing the joint exhibit stipulation, including by meeting and conferring on July 26 for several hours.  In advance of that conference, and to facilitate an efficient process, the government provided the defense with specific revisions to the exhibit list, consistent with its prior representations in meet-and-confers and emails.  The government also provided an electronic copy of those supplemental exhibits.

### III.    RELEVANT LAW ON EXCLUSION

Exclusion may be an appropriate remedy for a discovery violation where "the omission was willful and motivated by a desire to obtain a tactical advantage." Taylor v. Illinois, 484 U.S. 400, 415 (1988) (upholding trial court's exclusion of witness where defendant deliberately failed to identify witness prior to trial); see also United States v. Peters, 937 F.2d 1422, 1426 (9th Cir. 1991) (holding district court erred in excluding testimony of forensic pathologist because no willful or blatant discovery violation occurred).  This is consistent with this Court's statements on the record about how the exhibit list schedule was not to be weaponized to punish imperfect compliance, absent a showing of bad faith.  (See supra pp. 3-4.)  Where there was an omission of some sort that was not willfully done to gain a tactical advantage, the Ninth Circuit has frequently held that exclusion is too harsh a sanction.  United States v. Verduzco, 373 F.3d 1022, 1033 (9th Cir. 2004) ("Exclusion of a witness as a sanction for a violation of a discovery rule in a criminal trial is generally appropriate only in cases involving willful and blatant violations." (cleaned up) (citing cases).)  This is because "the severe

LAW
OFFICES OF
RICHARD M.
STEINGARD

sanction of total exclusion of the testimony was disproportionate to the alleged harm suffered[.]"  United States v. Finley, 301 F.3d 1000, 1018 (9th Cir. 2002). The Ninth Circuit has repeatedly held in such contexts that the "trial court should not impose a sanction harsher than necessary to accomplish the goals of [criminal rule requiring government to disclose discovery]."  United States v. Gee, 695 F.2d 1165, 1169 (9th 1983).

## IV.  ARGUMENT

### A.  The Government Has Acted in Good Faith and Made Every Reasonable Effort to Update and Accommodate the Defense

The government has acted in good faith and made every reasonable effort to update and accommodate defense counsel, both throughout this case and specifically in relation to the revisions to the June 7 exhibit list.  This was done to avoid surprise--to the extent there can be any surprise three months before trial after the government provided full discovery about charged conduct expressly referenced in the FSI--and ensure the defense had a fair opportunity to prepare, while also affording the government its right to put on a compelling and efficient trial in this significant case.

Defendant's filing suggests that the government has "ignore[d]" or "self-adjust[ed]" the Court's deadlines.  (Mot. at 6, 7.)  This is false.  The Court's schedule ordered that the government disclose its exhibit and witness lists to the defense on June 7.  The government disclosed its exhibit and witness lists on June 7.

Defendant also paints the government's subsequent modifications to the June 7 exhibit list as sinister or underhanded, insinuating some sort of unfairness. This is both false and nonsensical.  As detailed above, the changes to the June 7 exhibit list have been modest and, importantly, clearly and openly articulated to the defense with reasonable notice and, again, relate to charged topics for which the

defense will have been on detailed notice for nearly two years by the time this case gets to trial.

With respect to the money laundering evidence, this change naturally resulted through the parties' MIL meet and confer, as that process was intended. The defense inquired whether the government would be putting on evidence of Huizar's money laundering in the SZNW trial. Once the government team was able to confer internally (including with counsel who were simultaneously in the Lee/940 Hill trial while also seeking to aid the preparation of the SZNW trial) and confirmed it <u>would</u> seek to present the money laundering component, the government promptly relayed this information to the defense--it did not blindside them or delay in providing the information. And on July 5, the defense provided the government with a robust, 12-page motion <u>in limine</u> to exclude evidence of Huizar's money laundering activities.[8]

The same is true for the concealment text messages. While the June 7 exhibit list contained certain evidentiary items relating to Huizar and Esparza's concealment efforts and trip to Australia, it inadvertently omitted others. As defendant and the Court knows, the government team has been in transition, with the recent departures of two of the three long-standing AUSAs on the case. Due to

_____

[8] Nor is there any unfairness because the defense happened to raise the issue during the meet-and-confer discussion. Meet-and-confers are a Court-ordered requirement, and their purpose is for both sides to discuss openly specific aspects of the potential government and defense cases. Following that discussion, it is to be expected that either side may adjust or tailor their case presentation and trial preparation. Indeed, that is the point. Defendant's version of a meet-and-confer would apparently be a Court-ordered exercise in futility with neither side learning or offering any relevant information. For example, the government does not take any issue with the fact that <u>it</u> was the one to first raise two potential defenses during the meet-and-confers--including one that the defense expressed it had not previously considered. The defense then stated it wanted to preserve its ability to pursue such defensive paths, and the government prepared its affirmative MILs.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1  the Lee/940 Hill trial, three AUSAs and the case agent were fully engaged in trial

2  preparation and then trial for that matter for all of May and June.  That the June 7

3  exhibit list inadvertently omitted a sub-set of the relevant concealment text

4  messages, while identifying others, and that the oversight was caught early through

5  the MIL meet-and-confer process, is to be expected.  And when the government

6  realized the omission, it promptly advised defense counsel and offered additional

7  time for the defense to revise its concealment MIL.  Tellingly, defense counsel

8  declined to address the items on their legal or factual merits, instead opting to

9  exploit inadvertence with yet further litigation asking the Court to grant defendant

10 a windfall by excluding relevant, probative, and charged conduct.

**B.  Changes to the Exhibit List, Including as Contemplated by the Court's Order, Are Expected**

Demonstrating the lack of legal or factual support for his motion, defendant

spends most of its brief complaining about changes from the April 4 to June 7

exhibit lists, <u>notwithstanding the fact that the Court's order contemplated a June 7</u>

<u>disclosure date</u>.  Defendant cites to nothing that precluded the government from

providing a revised exhibit list by the Court-ordered deadline.  That is especially

true given the advance notice the government provided during the May 3 meet-

and-confer regarding some of the forthcoming changes.

With respect to the modest changes to the more recent June 7 exhibit and

witness lists, the defense's chief complaint appears to be that the government

contemplates modifying them "not by *eliminating* witness and exhibits, but by

*adding* to them."[9]  (Mot. at 7) (emphasis in original).  Under that logic, the

---

[9]      Ironically, when it came to the changes from the informal April 4 exhibit list, defendant's grievance was that it purportedly <u>cut</u> "nearly 500 exhibits." Defendant also seemingly raises no issues about the fact that the June 7 witness list cut a total of 10 witnesses, as compared to the April 4 witness list.

government would have been better served had it simply dumped a vastly overinclusive set of documents and witnesses on defendant, to avoid any risk of later being precluded from making additions. But, of course, the government elected not to do that. Instead, acting in good faith, it provided judicious and streamlined working versions of the exhibit and witness lists; that should not now render them perfect or immovable.

As the government already pointed out to the defense, the Court's scheduling order in this case <u>necessarily contemplates changes to the exhibit list</u>. For instance, the current schedule includes at least the following deadlines:

- 7/25/22 – Conference Regarding the Exhibit List
- 8/23/22 – Joint Pre-Trial Exhibit Stipulation
- 9/2/22 - Government Charts and Summaries
- 9/16/22 - Final Transcripts and Translations
- 9/16/22 – Hearing re: MILs
- 10/4/22 - Expert Offer of Proof

(Dkt. No. 428 at 2-3.)

Each of these deadlines either expressly or implicitly contemplate modifications to the government's exhibit and witness lists, including to add charts and summaries (and corresponding, supporting excerpted records) and transcripts and translations (and corresponding excerpts of the A/V files). This is separate and apart from any adjustments resulting from ongoing trial preparations and meetings with witnesses, including individuals who have not met with the government in several years and some who have never spoken with the government at all. For example, in a recent interview with defendant's architects, DiMarzio/Kato, the government learned that the architecture firm had worked on projects for Wei Huang and defendant's parent company as early as 2002 in China; accordingly, the government included an additional exhibit documenting that project. The exhibit

conference and pre-trial exhibit stipulation is also a significant part of the process for the government to fine-tune and adjust the presentation of its case, which will include modifications based on defendant's objections that may necessitate eliminating or trading out certain exhibits. Depending on the Court's rulings or comments on the MILs, the government may be further required, or may simply choose, to further adjust its case for strategic reasons.

### C.  In the Most Recent Trial in This Matter, Both Sides Acted in Good Faith to Supplement Their Respective Exhibit Lists

Further informing the government's understanding is the professional and collegial manner in which it was able to work with counsel for defendants Lee and 940 Hill for the June trial. There, the government continued to revise its exhibit and witness lists, including during the exhibit stipulation process (which took multiple rounds) and even during trial. (See, e.g., Dkt. No. 461 [Second Joint Pre-Trial Exhibit Stipulation] (noting that the government revised its Exhibit List as a result of the meet and confer process).) Likewise, the defense revised its exhibit list before and during trial multiple times, which was after the Court's deadline for the defendants' list. And the parties would discuss new exhibits the night prior to when a party sought to admit them in order to minimize in-trial objections; moreover, those objections were based on the Rules of Evidence, not timing. During the final status conference, the Court recognizing the evolving nature of the exhibit list, instructed the government only that "if you're going to revise this exhibit list again, let's not start recreating numbers. Let's use the same numbers. . . . If you're going to add an exhibit, put it at the end so it follows in the correct numerical sequence." (6/3/22 Hr'g Tr. at 6:11-15.) The government intends to follow this instruction once it files its first exhibit stipulation with the Court on August 23 for any new exhibits added after that date.

In the Lee/940 Hill case, both sides recognized and understood that changes are a natural and inevitable part of the trial preparation, meet-and-confer, and trial process, consistent with evolving trial strategy.  As was true in that case, motions to exclude evidence should be based on legitimate evidentiary rules--and not gotcha litigation weaponizing a schedule aimed at facilitating an efficient and fair trial.  This practice from the first trial helped both parties finetune their trial presentations for the jury and minimized unnecessary litigation; the same practice should be followed here.

### D.  There Is No Prejudice to the Defense

Most fatal to its motion, defendant has identified <u>no</u> prejudice that it faces due to the changes to the June 7 exhibit and witness lists adding evidence of money laundering and acts of concealment.  The defense has had ample notice of the government's case through the Complaint, FSI, full discovery, and specific discovery index.  It has also had specific and advance notice that the government would seek to introduce evidence of money laundering and acts of concealment through the meet-and-confer process.  The defense prepared fully briefed motions <u>in limine</u> on those topics <u>after</u> the government advised it of such.  And the parties have begun the work in preparing the joint exhibit stipulation.  All this has occurred three months before trial.

As for future revisions to the exhibit and witness lists, the government will continue to do what it always has: provide clear and reasonable notice to the defense on material changes.  There is no risk that the defense will not be able to preserve or present any objections to supplemental exhibits.  To the extent the government adds any exhibits that are not already subject to the current MILs (and later, the Court's rulings on those MILs), the government would have no objection to a supplemental briefing schedule to permit the defense to file briefing on the

LAW
OFFICES OF
RICHARD M.
STEINGARD

matter.[10]  And, given the Court's requirement of a joint exhibit stipulation, the government, with defense's input, would update that stipulation for any supplemental exhibits, as the parties did throughout the Lee/940 Hill trial.

### E.   Conversely, There __Will__ Be Prejudice to the Government

Rather than seeking to avoid prejudice, defendant's filing is aimed at hamstringing the government from putting on its case as it sees fit, that will be helpful to the jury, and as described in the FSI.  Trial preparation and trial is, by its nature, an evolving and iterative process.  It is not always linear.  Because the government has the burden of proof, it also has a strong interest in presenting a compelling and streamlined case.  With those goals in mind, the government needs the ability to adjust its exhibit and witness lists within reason, consistent with trial strategy and trial preparation and based on an ongoing evaluation of the case, witness testimony, and Court rulings.  A blanket bar on changing its own exhibit and witness lists four months before trial is unreasonable and would cause significant prejudice to the government and be a disproportionate sanction.  This is particularly true when no bad faith is demonstrated and no meaningful harm results.

Defendant suggests that the government should seek leave from the Court and present "good cause" each and every single time it sought to adjust its exhibit and witness lists.  (Mot. at 7.)  This is unworkable and impractical and demonstrates a disconnect with routine trial practice.  The government should not be forced to provide a detailed dissection of every change to the exhibit and witness lists--and the specific rationale prompting each such change--and engage

---

[10]     Likewise, the government requests that the Court order a joint stipulation on the defense's exhibits, so the government can raise its objections through that mechanism, just as it did in the prior trial.  (See, e.g., Dkt. No. 456 (ordering parties to prepare a joint stipulation on defendants Lee/940 Hill's exhibit list.)

LAW
OFFICES OF
RICHARD M.
STEINGARD

the Court at every turn to decide whether a change resulted from witness preparation, a change in trial strategy, correcting an inadvertent omission, or something else.  This would be extremely onerous for all involved, and an exceedingly inefficient use of time, particularly as the parties move closer to trial and should be finetuning their presentations for the jury, not fueling further unnecessary filings.  The government has already been inconvenienced by this premature and unnecessary filing, due in large part to defendant's unilateral selection of an August 8 hearing date, thereby forcing the government to respond at the same time it was preparing <u>eleven</u> oppositions to the defense's motions <u>in limine</u>.

To be clear, the government does not expect there will be voluminous changes to the exhibit and witness lists moving forward, and the government views Court orders as just that (orders).  But it must have the ability to adjust based on the exhibits that are due in September under the current schedule, witness preparation, the parties' ongoing meet-and-confers, and other trial preparation--and not to have its case presentation frozen in time based on lists provided in early June for a mid-October trial.  This is why government counsel specifically addressed this issue at multiple hearings in this case and relied on the Court's responses to those inquiries in how it has prepared for trial against defendant and how it proceeded to trial against Lee/940 Hill.  Defendant's request here is unsupported by law or fact, is a disproportionate sanction for ordinary trial preparation, and is inconsistent with the Court's guidance on how it manages its trials.

## V.   **CONCLUSION**

For the foregoing reasons, defendant's request for relief should be denied.

//

//

## SZNW'S REPLY

The government's position is notable not just for its length, but for what it does not say.  After telling the Court three months ago that it had already provided SZNW with 90% of its trial exhibits, the government now offers no acknowledgment, explanation, or defense for making such a gross misrepresentation.  Instead, condensed to its core, the government insists that it always acts in good faith, opines that its June 7 exhibit list was always intended to be a preliminary packet, and advises that it will continue to add trial exhibits whenever it sees fit, up to and through trial.

The government's position is inconsistent with what the defense understood to be the parties' stipulation and court order.  After several discussions with government counsel, and believing it already possessed 90 % of the government's trial exhibits, SZNW agreed with the government to firm dates for the final disclosure of any remaining exhibits.  The parties' understanding included a carve-out for new exhibits based on the parties' witness trial prep, but there were no discussions about subsequently adding exhibits or setting dates to disclose "more final" exhibit lists.

The parties' agreement was memorialized into a stipulation and adopted by the Court as an order that provided each party with a firm deadline by which to produce its exhibits.  The government first breached that order by adding exhibits after receiving and reviewing SZNW's *in limine* motions.  It again breached the order by adding more exhibits after the defense provided it with the instant motion. It anticipatorily and prospectively breached the order a third time by renumbering its exhibit list in order to reserve numerical spaces for an additional 150 exhibits.

Notwithstanding the government's disparagement of SZNW's counsel, SZNW appreciates that circumstances may justify additions to the government's exhibit list.  But the government perceives itself as both the pitcher and the umpire,

deciding whether additional exhibits should be added and whether it is appropriate to do so.  SZNW does not view the Court's order this way.

With over 2.1 million pages of discovery, every additional exhibit takes on new meaning and work for the defense. For starters, are there other emails, texts, wiretap intercepts, consensual recordings, and/or other documents that concern the new exhibits and, if so, where are they located? How do the new exhibits affect the approximate 500 exhibits already identified by the government?  Do the new exhibits raise evidentiary issues that need to be raised with the government or Court?  Are there additional questions that must now be asked of witnesses that concern the new exhibits?  And does the defense now need a witness to address the new exhibits?  The government is apparently unconcerned with these realities but that does not mean they are nonexistent or inconsequential.

The issue does not seem that complicated.  The Court set a date for the government to disclose its exhibits—after over six years of investigating the case, 18 months of trial prep, and an in-court representation that SZNW already possessed 90 % of its trial exhibits, the defense (and perhaps the Court) understandably believed that the government would have disclosed all or virtually all its exhibits by the agreed-upon and court-ordered date.  While SZNW will certainly agree to be flexible, it never understood that the government could amend its exhibit list carte blanche, much less that it could do so after analyzing SZNW's motions and realizing that there were gaps in its evidence.

///

///

///

1      Accordingly, we ask that the Court address the parties' different perceptions

2 of the disclosure order, including the government's unilateral decision to add new

3 exhibits after the agreed deadline and its affirmative representation that it fully

4 intends on continuing to do so.

5

6 DATED: August 1, 2022              RICHARD M. STEINGARD

7                                      Law Offices of Richard M. Steingard

8

9                   By:  /s/

10                          RICHARD M. STEINGARD

                             Attorney for Defendant Shen Zhen

11                          New World I, LLC

12 DATED: August 1, 2022              TRACY L. WILKINSON

13                          United States Attorney

14

15                   By:  /s/

16                          MACK JENKINS

17                          SUSAN HAR

                             CASSIE PALMER

18                          JAMARI BUXTON

19                          Assistant United States Attorneys

20

                             Attorneys for Plaintiff

21                          UNITED STATES OF AMERICA

22

23

24

25

26

27

28


LAW
OFFICES OF
RICHARD M.
STEINGARD

25

1

## **LOCAL RULE 5-4.3.4 ATTESTATION**

2     I attest and certify that all other signatories listed, and on whose behalf this

3     filing is submitted, concur with the filing's content and have authorized the filing.

4

5     DATED: August 1, 2022                    By:  /s/

6                                                   RICHARD M. STEINGARD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28