1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**


UNITED STATES OF AMERICA,          )
                                   )
          PLAINTIFF,               )      CASE NO.
                                   )
          vs.                      )      CR 20-326-JFW
                                   )
JOSE LUIS HUIZAR, et al.,          )
                                   )      PAGES 1 TO 37
          DEFENDANTS.              )
_____)



**REPORTER'S TRANSCRIPT OF**
**MOTION TO COMPEL**
**MONDAY, AUGUST 8, 2022**
**8:28 A.M.**
**LOS ANGELES, CALIFORNIA**


_____

**MIRANDA ALGORRI, CSR 12743, RPR, CRR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

<pre>
 1                      APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4         NICOLA T. HANNA
           UNITED STATES ATTORNEY
 5         BY:  MACK JENKINS
           BY:  SUSAN HAR
 6         BY:  JAMARI BUXTON
           Assistant United States Attorneys
 7         United States Courthouse
           312 North Spring Street
 8         Los Angeles, California 90012

 9

10    FOR THE DEFENDANT HUIZAR:

11         HILARY L. POTASHNER
           FEDERAL PUBLIC DEFENDER
12         BY:  CAREL ALÉ
           BY:  ADAM OLIN
13         Deputy Federal Public Defenders
           Central District of California
14         321 East Second Street
           Los Angeles, California 90012

15

16    FOR DEFENDANT CHAN:

17         BRAUN & BRAUN, LLP
           BY:  HARLAND BRAUN
18         10880 Wilshire Boulevard
           Suite 1020
19         Los Angeles, California 90024

20    FOR THE DEFENDANT SHEN ZHEN NEW WORLD I:

21         LAW OFFICES OF RICHARD M. STEINGARD
           BY:  RICHARD M. STEINGARD
22         800 Wilshire Boulevard
           Suite 1050
23         Los Angeles, California 90017

24

25
</pre>

**LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 8, 2022**

**8:28 A.M.**

**---**

08:28AM  THE CLERK:  Calling item 2, CR 20-326A-JFW,
United States of America versus Shen Zhen New World I, LLC.

Please state your appearances.

MR. JENKINS:  Good morning, Your Honor.
Mack Jenkins, Susan Har, Jamari Buxton, and also joining us at
08:28AM  counsel table is Special Agent Andy Civetti on behalf of the
United States.

MR. STEINGARD:  Good morning, Your Honor.
Richard Steingard for Shen Zhen New World I, LLC.

MR. BRAUN:  Good morning, Your Honor.
08:28AM  Harland Braun, B-r-a-u-n, for Ray Chan who is present in the
audience.

MR. OLIN:  Good morning, Your Honor.  Adam Olin
and Carel Alé on behalf of Mr. Huizar who has waived his
presence today.

08:28AM  THE COURT:  Good morning to all.  Counsel can
remain seated at counsel table, or you can use the lectern,
whichever you prefer.  If you do remain at counsel table, make
sure you have a microphone close to you.  And also, if you feel
comfortable when you're speaking, you can remove your mask.

08:29AM  This matter is on the Court's calendar for a

hearing on the Motion to Compel discovery that was filed on

July 19th.  It appears as docket No. 613.  That motion included

Exhibits A through G that were filed under seal.  The

Government filed its opposition on July 27th of -- actually,

08:29AM the Government filed its opposition on July 21st.  It appears

as -- no.  It's July 27th.  It appears as docket No. 613.  And

then the defendants filed a reply.

In the motion, the defendants move the Court for

an order compelling the Government to disclose their

08:30AM conversation with -- the conversations with Terrance Jones who

is Mr. George Esparza's attorney, those conversations occurring

during the month of March of 2020.  The defendants argue that

Esparza had been cooperating for approximately 16 months, and

while the parties were engaged in plea negotiations with the

08:30AM Government, Esparza and his counsel had several conversations

and discussions that ultimately resulted in the factual basis

for Esparza's plea of guilty which was attached as an exhibit

to his plea agreement.

Prior to the filing of this motion, counsel --

08:31AM defense counsel requested in an e-mail dated May 17th any

memorandum, notes or -- any memorandum or notes of the

prosecutors' and agent's conversation with Esparza's attorney

Jones that defendants claim were necessary to, quote,

"improperly help enlighten Esparza's recollection" as well as

08:31AM an accounting of those conversations.  I don't quite understand

what an accounting is, but we'll get to that in a minute.  In
its e-mail on June 3rd, the Government advised that, based upon
a reasonably diligent search, it did not possess any notes by
Government counsel other than what the Government had already
produced.

Then there was further e-mail back and forth in
June with respect to respective positions.  The parties
ultimately conferred, and in a July 14th e-mail to defense
counsel, the Government again explained that the conversations
with Jones -- Mr. Jones that were at issue generated no *Brady*
information.  And the e-mail indicated, "We reviewed, and our
position is that there is no *Brady*, and I nor any agents have
notes of phone calls with Mr. Jones."  The Government adds that
they're not sure what there is to litigate.  The Government
points out that the communications as *Brady* have already been
litigated and resolved and denied in a prior motion.

According to defense counsel -- I believe it was
Mr. Steingard -- indicated that he spoke to Esparza's counsel
Mr. Jones and stated he cannot recall the substance of his
conversations with the Government.  As a result, this motion
was filed.

In addition to the meet and confers where the
Government confirms that it doesn't have any *Brady* with respect
to these conversations, the conversation is unclear that gives
rise to this as a result of the e-mail that Mr. Jenkins sent to

|  |  |
|---|---|
|  | 1 |
|  | 2 |
|  | 3 |
|  | 4 |
| 08:34AM | 5 |

1   Mr. Jones including enclosing a revised factual basis for the

2   plea -- for his plea.  And it referenced a conversation between

3   Mr. Jones and one of the former prosecution team members

4   Ms. Dragalin who is no longer with the Government.

08:34AM  5   Mr. Steingard, so that's the -- that's the

6   conversation that you're focused on, that is, the

7   March 23rd, 2020 e-mail from Mr. Jenkins?

8   MR. STEINGARD:  I will give you the typical

9   lawyer reaction answer, yes and no.  I should grab a

08:35AM  10   microphone.  Yes and no, Your Honor.  That is certainly where

11   the pivot occurs.  But the phraseology in the e-mail that

12   you're referencing, Exhibit C, is -- and I'm quoting, "We have

13   gone through it," meaning the factual basis, "based on

14   conversations," plural, "with you," et cetera.

08:35AM  15   THE COURT:  Right.  So it's the March 20 however

16   many conversations there were.

17   MR. STEINGARD:  You're correct.

18   THE COURT:  So as I understand it, that's the

19   focus of the motion.  You want me to order the Government to

08:35AM  20   prepare a memorandum detailing those conversations when the

21   Government has already stated and represented to you that there

22   is no *Brady* material associated with those conversations;

23   correct?

24   MR. STEINGARD:  In essence, to cut to the core,

08:36AM  25   yes.  That's what we're asking, Your Honor.  I think it's a

little more nuanced than you might have described it, but yes.

THE COURT:  What do we expect to gain from -- is that what you're referring to as an accounting of those conversations?

08:36AM  MR. STEINGARD:  You are not the first person who has pointed out to me that that is a poor phrase, and we changed it, I believe, in the motion to call it a summary, a detailed summary.  I think, when you write an e-mail, sometimes you bang out something and later look at it and regret it.

08:36AM  So the accounting, in my mind at the time, was simply what -- it's just what happened, Your Honor.  We know -- I don't know if you want to get into argument now.

THE COURT:  Sure.  Go ahead and argue.

MR. STEINGARD:  It would be great if I believed
08:36AM  that the Government's perception of *Brady* and my perception of *Brady* matched.  But I think that that's just not the case.  And while I take them at their word that, based on their perception of *Brady*, there is nothing to produce, there was a clear pivot that occurred, a change that occurred based on conversations
08:37AM  that they had with Mr. Esparza's attorney from one factual basis that was extremely limited and narrow to a factual basis that the Government drafted containing a variety of e-mails, text messages, phone calls including, as we put in the motion, even what Mr. Esparza was thinking about during a conversation
08:37AM  even though he never previously mentioned that.

1                 This all comes on top of arrangements being made

2     to interview Mr. Esparza specifically about this topic.

3                 THE COURT:  But these are all -- these are all

4     the natural progression of dealing with defense counsel, a

08:38AM   5     cooperating defendant, and the Government.  I mean, you have

6     many, many years of experience of negotiating cooperation plea

7     agreements, and there's nothing improper about the Government

8     and counsel for a cooperating defendant as well as the

9     defendant to have the cooperating defendant or the cooperating

08:38AM  10     witness's memory refreshed with documents, with conversations.

11     And you have been provided with all that.  You have a wealth of

12     information to cross-examine Mr. Esparza.

13                 It's similar to what we went through with

14     Mr. Kim.  It was the same issue with respect to Mr. Kim.  There

08:38AM  15     were two issues.  One prevented the Government from getting

16     into attorney/client relationship or invading the

17     attorney/client privilege by asking -- I don't know who they

18     were going to ask, but in any event, I precluded it.

19                 It was the same thing throughout the course of

08:39AM  20     the interviews with Mr. Kim.  There were conversations with the

21     Government, and those conversations came out during the course

22     of cross-examination of Mr. Kim very effectively through

23     cross-examination by Mr. Neuman given all of the materials that

24     the Government had disclosed.  I don't see this being any

08:39AM  25     different than the Kim scenario.

1          So he pivoted.  That is the nature of a

2  cooperating defendant's plea agreement.  You have what you need

3  to cross-examine him.

4          MR. STEINGARD:  I hear that, Your Honor.  I think

08:39AM   5  it's important from our standpoint to be able to show the jury

6  what Mr. Esparza's state of mind was at one point.  Something

7  was said by his attorney to the Government that made the

8  Government feel like we need to tell this man some new facts,

9  some facts that he's never previously mentioned.  I'm not

08:40AM  10  claiming that there's improper coaching.  That's

11  cross-examination.

12          THE COURT:  That's the thrust of what I get from

13  the motion is basically somehow these are clandestine phone

14  calls which improperly suggested, because there were no notes

08:40AM  15  taken by the Government or no notes taken by the agents of

16  these conversations, that there was somehow some improper

17  shaping of Esparza's testimony for purposes of including it in

18  the proffer -- not in the proffer, in the ultimate factual

19  basis for the plea which ultimately Esparza, when I took his

08:40AM  20  plea, affirmed that everything in there was true.

21          To the extent it's not true, to the extent that

22  the state of mind becomes an issue, you have the ability to

23  cross-examine him.

24          How the Government is going to be able to sit

08:41AM  25  down and recreate something that happened in 2020, one, is

problematic and, two, I don't think is required under the law

based upon the Government's representation that there's no

*Brady* material.

I sat through all of the issues with respect to

08:41AM   Kim and the trial, and there were many opportunities to argue

about *Brady* during that trial.  But that issue was never

raised.

I have now dealt with these prosecutors for a

number of years, and I believe firmly that they fully

08:41AM   understand their obligations under *Brady*.  As I have warned

them on many, many occasions, if it turns out they have

violated their *Brady* violations, then they are going to bear

the consequences.

MR. STEINGARD:  Your Honor, I hear you.  I

08:42AM   just -- when you're on this side of the coin, you just view it

so differently than the Government espouses it and the Court is

saying it.

THE COURT:  I've been on your side of the coin,

and I know how frustrating it is when you're dealing with

08:42AM   cooperating witnesses.  But I also know how effective it is to

cross-examine cooperating witnesses.  And Mr. Kim was an

absolute horrible witness because of all of the impeachment

material that the Government had provided consistent with its

obligations.

08:42AM   And he, in fact -- in fact, if my memory serves

1    me -- Mr. Jenkins can correct me if I'm wrong -- his attorney

2    was actually apoplectic at what Mr. Neuman was doing to him in

3    terms of cross-examining him with all this material.  And

4    Mr. Neuman at one point in time asked me to instruct Mr. Kim's

08:43AM    5    lawyer, whose name I can't remember right now, to not make any

6    statements.

7              He was sitting right where -- right behind

8    Agent Civetti, and at a break he expressed his displeasure at

9    how Mr. Neuman was, in effect, effectively cross-examining him.

08:43AM    10             Did I get that right, Mr. Jenkins?

11             MR. JENKINS:  You did, Your Honor.

12             MR. STEINGARD:  Your Honor, I hear what you're

13    saying.  I don't want to belabor the point.  I think our papers

14    laid out something -- something that --

08:43AM    15             THE COURT:  I understand --

16             MR. STEINGARD:  Something that the lawyer said --

17             THE COURT:  I was particularly impressed with

18    your side-by-side comparison of these new paragraphs and how

19    the, as you call it, the pivot changed in the factual basis.

08:43AM    20    To me, that's going to be effective cross-examination.

21             Mr. Esparza -- did you watch any of Esparza's

22    testimony?

23             MR. STEINGARD:  I did see his testimony.

24             THE COURT:  He's an interesting -- he's an

08:44AM    25    interesting witness.  I thought that he was very candid when he

didn't know something.  Or when he testified to a fact that was not in favor of the Government, he had no hesitation.  He was just there and testifying to what he could remember and what he could recall.

08:44AM    MR. STEINGARD:  Your Honor, again, you've given me your thoughts, and I haven't been able to persuade you to move off of them.  So I will submit it -- unless my co-counsel who joined in the motion have something, I will submit it on behalf of my client.

08:44AM    MR. BRAUN:  We will submit it, Your Honor.

    THE COURT:  Public defender?

    MR. OLIN:  No, Your Honor.  Thank you.

    THE COURT:  All right.  I'm not going to belabor the ruling.  I have ruled on a similar motion although I

08:45AM    understand -- I know it was different.  However, the legal principles and the legal standard apply to this motion.  So I'm going to incorporate my ruling in the motion that I made during the hearing on April 25th as my ruling in this motion.

    I simply find that the defendants' suggestion

08:45AM    that the Government be required to prepare a summary of those conversations in March of 2020 with Mr. Jones, Mr. Esparza's attorney, are not required under the law based upon the Government's representation that there were no -- there is no *Brady* material in connection with those issues.  The Government

08:46AM    has turned over all of the information with respect to the

1  negotiations, and all of the drafts of the factual basis are

2  included in the motion as Exhibit A.

3          In light of the Government's representation that

4  it lacks *Brady* material re the Esparza factual basis which

08:46AM  5  includes, because I thought that was a very important point

6  that Mr. Steingard made, includes any oral *Brady* evidence.  In

7  absence of that, I find it is unnecessary to require the

8  Government to prepare the summary of those contacts.  So the

9  motion will be denied.

08:47AM  10          All right.  The next motion or next issue relates

11  to -- this is a joint filing regarding the Government's

12  disclosure of its witness and exhibit lists.  As I'm able to

13  piece through the joint statement -- I guess this joint

14  statement seeks guidance.  Let me provide some background.

08:48AM  15          It really relates -- it begins with the

16  stipulation and order that has been entered in this case, and

17  that was the stipulation and order that was filed on April 6th

18  setting forth the pretrial dates for the severed trial of

19  Mr. Steingard's client which is currently set for October 18th

08:48AM  20  of 2022.

21          This joint filing regarding the Government's

22  disclosure of its witness list is specific to Mr. Steingard's

23  client Shen Zhen New World.

24          After I severed the cases on March 7th and

08:49AM  25  ordered the parties to meet and confer regarding dates, the

1    parties couldn't agree on dates.  So I ended up holding a

2    hearing -- I believe it was on March 25th -- where we set or

3    talked about dates.  And that hearing ultimately resulted in

4    the order that I referred to as docket No. 428 which set the

08:49AM    5    trial for Mr. Steingard's client of October 18th of 2022 and

6    set forth briefing and hearing schedule for motions and other

7    pretrial deadlines that's set forth in the order which I

8    ultimately accepted and signed.  That was obviously after the

9    March 25th of 2022 hearing.

08:50AM    10           Prior to the stipulation and order being signed

11    and as a result of the discussions that I had with Government

12    counsel regarding the status of exhibits -- and that discussion

13    was with Ms. Dragalin who indicated -- we're talking about the

14    disclosure, the informal list of documents.  And Mr. Steingard

08:50AM    15    talked about or discussed the various variations that he had

16    received, and the last one was in January.  He didn't consider

17    that to be an exhibit list -- the trial exhibit list and

18    acknowledges that, if the Government thinks it's a trial list,

19    then he thinks he must have it.

08:51AM    20           In any event, we were discussing various

21    disclosures, and I suggested to the Government that, in light

22    of their representation, that 90 percent of the exhibits had

23    been disclosed to Mr. Steingard that it should have been easy

24    for the Government to produce those exhibits, and I suggested

08:51AM    25    the following Monday might be a good date.

                    Mr. Steingard suggested that, if the March 28th
didn't work, that we could move it to April and agreed he could
work with Government counsel.

                    As a result, the Government -- prior, actually,
to the stipulation of April 6th, on April 4th I think -- this
is according to my notes -- the Government provided
Mr. Steingard with two lists.  One was a trial exhibit list
which contained 630 trial exhibits, and the other was a witness
list which contained 46 witnesses.  I'm not sure -- I didn't
have a lot of time to go through this this weekend.

                    I'm not sure what happens next except what I
think this joint statement is all about and that is the
Government recognizing that it had an obligation to disclose
the Government's witness list and the Government's exhibit list
pursuant to the order that I had signed, which is
docket No. 428.  On June 7th, which was the deadline to make
that disclosure, they did disclose a witness list which someone
has characterized as 36 witnesses -- 13 were deleted from the
original list which that was provided in early April -- and an
exhibit list which now contains 387 exhibits which has -- 500
of the original exhibits were eliminated and 200 new exhibits
were added.  Somebody has calculated 75 percent reduction.

                    The Government, as I understand it, they take the
position, based upon the Court's comments at a hearing -- I'm
not quite sure what the hearing is -- that "We're not going to

play gotcha," and this was at page 10 of the joint statement,

"recognizing the obvious need for flexibility" -- and I'm

quoting from the joint statement.  The Court also noted -- now

I'm quoting from one of the hearings -- "As we get closer to

08:54AM   the trial, to the extent the exhibit list does not contain

certain exhibits because they were recently produced or

recently discovered or if there was some inadvertence by not

including them in the list, certainly you're not going to be

bound by that exhibit list.

08:55AM         The Government somehow now relies on those

statements to justify its position that the -- in response to

Mr. Steingard's complaint about the -- not so much complaining

about the June 7th disclosure, but the real issue arises, as I

understand it, when the Government chose to add new exhibits

08:55AM   and two witnesses who had been disclosed in April but were not

on the June 7th witness list in July.  And that was discovered

during the course of the various meet and confers with respect

to the motions in limine.

        The Government to me in its joint statement takes

08:56AM   a very cavalier attitude based upon my comments that the

June 7th witness and exhibit lists were not firm deadlines and

somehow it's a draft.  And certainly, with respect to the April

production, I can understand those comments.  But certainly,

once a court order is signed requiring disclosures, as this one

08:56AM   does on June 7th, 2022, I don't see how the Government can

1    basically take -- basically take the position with

2    Mr. Steingard, hey, don't worry about it.  We're far away from

3    trial, and we can modify or update this witness and exhibit

4    list as we see fit.  That's just totally inconsistent with the

08:57AM    5    court order that I signed and also inconsistent with what you

6    rely on in terms of my statements.

7            Obviously, as we get closer to trial, to the

8    extent the exhibit list didn't contain certain exhibits because

9    they were recently produced or recently discovered or, if there

08:57AM    10    was inadvertence, then you're not going to be bound by the

11    exhibit list, and you can update the exhibit list.  But I don't

12    see how those comments apply to what you have done with respect

13    to the July production because there's absolutely no

14    justification under any of the points that I made in my

08:57AM    15    comments as to why you wouldn't be bound by the exhibit list.

16    You just simply take the position that this is a -- tantamount

17    to a draft that we can change based upon whatever we want.

18            So I'm troubled by the Government's position with

19    respect to these exhibits.

08:58AM    20            MR. JENKINS:  Your Honor, we understand and hear

21    the Court's frustration.  That is certainly not our intent to

22    be cavalier by any regards.  In fact, our position is

23    precisely, in our view, in line with the Court's comments that

24    the post-July production were the result of both categories

08:58AM    25    that the Court has identified that it would essentially forgive

1    our failure to timely comply, specifically --

2              THE COURT:  But the problem is there's no showing

3    of that.  Your portion of the joint statement just takes the

4    position that you could treat this as a draft, and there was no

08:58AM    5    effort to justify under any of my comments as to why these

6    specific documents were either recently discovered or there was

7    some inadvertence.  There's just simply no showing of that.

8              I admittedly went through this quickly over the

9    weekend, but I didn't see anything.  To me it was just a

08:59AM   10    strident position by the Government we can do whatever we want

11    with respect to this exhibit list and witness list because

12    we're so far away from trial.

13             That doesn't help Mr. Steingard because

14    Mr. Steingard needs some certainty in terms of what the trial

08:59AM   15    exhibits and witness lists are going to be because obviously

16    he's now spent some time on one of these motions in limine,

17    which remind me to talk to -- raise that -- these 11 or

18    12 motions in limine.

19             But he's now worked up a motion in limine with

08:59AM   20    respect to I believe it was the money laundering count based

21    upon the Government's failure to include certain documents.

22    And the witnesses I'm not so concerned about because those

23    witnesses were disclosed earlier in April.  So he's wasted his

24    time, as I understand it, preparing that motion.  He doesn't

09:00AM   25    have unlimited resources like the Federal Government has.

1   MR. JENKINS:  Your Honor, so, respectfully, I

2   think the Court did overlook our specific citations to both

3   inadvertence and documents that were recently discovered.

4   Specifically, on page 17 of the joint filing it reads, lines 3

09:00AM   5   to 7, that the June 7th exhibit list --

6   THE COURT:  Wait a minute.  What line?

7   MR. JENKINS:  Starting at line 2 of page 17.

8   THE COURT:  Okay.

9   MR. JENKINS:  Beginning halfway towards the end

09:00AM   10   of line 2 that the June 7 exhibit list inadvertently omitted a

11   subset of the relevant concealment text messages while

12   identifying others, and that oversight was caught early through

13   the meet-and-confer process is to be expected.

14   THE COURT:  Right.  But that's a conclusion.

09:00AM   15   There's no declaration.  What is the inadvertence?

16   MR. JENKINS:  The inadvertence that it was not

17   located during the review process.  Certain ones were, and

18   other ones were not.

19   THE COURT:  That's just a conclusion.  There's no

09:01AM   20   declaration by any prosecutor telling me that, you know, we did

21   this, we did this, we did this, and on a certain day we did

22   this and on that day we did this, and then ultimately we found

23   these documents.  That constitutes inadvertence.  Just

24   concluding that it was inadvertent doesn't give me any comfort

09:01AM   25   that you aren't taking the position that I have articulated.

1     MR. JENKINS:  Understood, Your Honor.  Then we

2 would be, to the extent there is new material, we would provide

3 such a declaration.  We were, again, citing the Court's

4 comments, we were tailoring our arguments to those comments.

09:01AM 5     THE COURT:  You were tailoring the argument, but

6 there's no evidence supporting the argument.

7     MR. JENKINS:  Understood, Your Honor.  And we

8 would like to supplement that with a declaration because, on

9 page 18 at lines 24 through the end, it cites an example,

09:02AM 10 meaning -- including there's additional examples -- and I

11 understand this is not supported by a declaration, but it can

12 be.  For example, in a recent interview with the defendant's

13 architects, DeMarzio/Kato, the Government learned that the

14 architecture firm had worked on projects for Wei Huang and

09:02AM 15 defendant's parent company as early as 2002 in China.

16     THE COURT:  Those aren't the documents

17 Mr. Steingard is concerned about, as I understand.

18     MR. JENKINS:  I think he's concerned about

19 anything past June 7th, Your Honor.

09:02AM 20     Just one last final point is that, with respect

21 to Mr. Steingard wasting his time, as we argued in our

22 opposition, his motion in limine is categorical meaning it

23 covers money laundering.  So money laundering text messages, if

24 the Court grants that motion, would be excluded.  So we

09:02AM 25 disagree, respectfully, that he's wasted his time because, as

we pointed out, his motion in limine covers these new items
that he is focused on.

So we don't believe -- again, we take the Court's
point that it isn't simply the date for which we produced these
things.  But in a prejudice analysis, we continue to assert,
Your Honor, that both related to his trial preparation and his
motion practice there has been none.

And we can support, again, the basis for our
failures to timely comply by declarations, but we do believe a
prejudice analysis is appropriate, and we believe it has not
been shown, Your Honor.

THE COURT:  All right.  The other point is that
the Government relies on the joint pretrial exhibit -- joint
pretrial exhibit stipulation that's due to be filed on
August 23rd.  I noted on the order -- I was looking at this --
the conference regarding the exhibit list occurred on -- it was
supposed to occur according to this order on July 26th.

Was that conference held?

MR. JENKINS:  It was, Your Honor.

THE COURT:  What was the -- what was the upshot
of the conference regarding the exhibit list?  What was your --
what was your folks' understanding as to what that conference
was supposed to do?

MR. JENKINS:  Yes, Your Honor.  Consistent with
the conference in the Lee trial, I can tell you how it went,

1   and then Mr. Steingard can also contribute.  But we met

2   virtually because of COVID issues by video.  We went through

3   literally exhibit-by-exhibit, the positions of the defense in

4   terms of any relevant -- or any objections.

09:04AM   5        To the extent we could respond to them sort of

6   shortly without debating each exhibit, we provided -- for

7   example, Mr. Steingard asked why is this relevant?  And we

8   would give some high level analysis.  That may or may not

9   change his ultimate position.

09:04AM   10       We did that exhibit-by-exhibit.  To the extent

11  some exhibits were -- for example, photographs by categories,

12  at some point we analyzed it by category so it didn't take

13  multiple days.  I believe today, based off that conversation,

14  Mr. Steingard is going to present us with his written

09:05AM   15  positions.  So this was all verbal.  We went through it again

16  sort of a tentative, we would object to this, let's talk about

17  this exhibit, let's talk about these categories.  To the extent

18  that changed anything on Mr. Steingard or the Government's

19  position, we will amend that.

09:05AM   20       Today Mr. Steingard is going to get his, we will

21  say, most updated position on each of those exhibits.  We will

22  in turn evaluate whether we modify, for example, through

23  redactions or eliminate exhibits or be prepared to litigate

24  them.  And then we are still on track to file them later this

09:05AM   25  month, Your Honor.

1      THE COURT:  So the joint pretrial exhibit

2  stipulation is going to contain a list of all of the -- all of

3  the exhibits and the objections, if any, and the responses to

4  the objections?

09:05AM  5      MR. JENKINS:  Yes, Your Honor.

6      THE COURT:  And that's going to be filed on

7  August 23rd?

8      MR. JENKINS:  Yes, Your Honor.

9      THE COURT:  So I take it that the conference

09:06AM  10  regarding the exhibit list, that the -- that all of the

11  exhibits that were not only produced on -- in April but also in

12  June and those that were produced in July are included in that

13  list?

14      MR. JENKINS:  That is correct, Your Honor.

09:06AM  15      THE COURT:  So I guess my question,

16  Mr. Steingard, to you is I understand your frustration with the

17  tenor and tone of the Government's response to your concerns

18  about the late discovered exhibits, but what's the prejudice

19  that you have suffered with respect to the late disclosure

09:07AM  20  other than an irritant of having to -- in any event, I won't

21  comment.

22      MR. STEINGARD:  Well, I think, Your Honor, if I

23  can back up for a moment, this has been an issue that we have

24  been -- we started talking about whatever it was, a year and a

09:07AM  25  half, almost two years ago, whenever this case was first

1    indicted, is how early should there be a production of a

2    Government exhibit list.  We asked for one day.  The Government

3    came back with a different date.  We had a hearing.  The Court

4    agreed with us in some respects, agreed with the Government.

09:07AM    5    Set a firm date.  That was for a joint trial.  It wasn't the

6    date we wanted, but it was a date we agreed we had to live with

7    based on the Court's order.

8         Fast forward, the Government is turning over at

9    the Court's behest various interim exhibit lists because

09:07AM   10    there's over 2 million pages of documents.  We complained about

11    the pace.  The Court agreed with us that the pace was too slow

12    but said, I'm not going to change the timetable.  By January we

13    thought we had almost all the exhibits that the Government was

14    going to use, if not all.  Perhaps that's too harsh, but

09:08AM   15    certainly almost all.

16         THE COURT:  Right.  And that came with the April

17    production.

18         MR. STEINGARD:  The April production was -- took

19    that big list which was for all the defendants and said, here

09:08AM   20    you are, Shen Zhen New World.  Here are just your exhibits.

21    And we accepted that and began working on in limine motions and

22    examining what we understood the trial would be.  In a case of

23    this size for us, which the Government has already told you

24    against Shen Zhen is going to be extensive, we begin -- we

09:08AM   25    began that process --

THE COURT:  But you can't -- there is no -- the Government did what it indicated that it would do in the March 25th hearing.  And certainly there's no criticism of the Government that I can see in making that a preliminary draft of the exhibit list because the whole goal in this is to try to move the case forward in terms of responding to your legitimate request for the production of exhibits.

MR. STEINGARD:  We're perfectly aligned on that, Your Honor.  We're appreciative that we all did this and we were working together again.  We were told at that juncture, you now have 90 percent of your exhibits.  We just need the other 10 percent.  Come June 7th we get -- we're told 80 percent of the exhibits we gave you before, they're gone.

THE COURT:  But --

MR. STEINGARD:  Here's 150 new ones.

THE COURT:  So what?

MR. STEINGARD:  I agree.  Hang on.

THE COURT:  That's the deadline and --

MR. STEINGARD:  I agree.  And that's the deadline, Your Honor.  I agree with you 100 percent.  They made their shift, and whether it was strategy or whatever, they made the decision.  Did we waste time playing with exhibits that -- 500 exhibits they're not using and not look at 150 they added?  Yes.  But you're right.  That was the firm date.

We then began the exchanges of in limines.  We

gave the Government 11 in limines.  They gave us two.  One of

them dealt with the money laundering and specifically pointed

out these witnesses aren't there and, by the way, there are no

records other than these half dozen photographs.

09:10AM       The Government realizing what we had just written

says, okay, we're adding back the two witnesses, and we're

adding in all these bank records and other documents.  Then

they say, by the way, we're not done yet.  We found more

documents that we want to use.

09:11AM       We just received -- we just exchanged in limine

motions, Your Honor.  In other words, the Government gave us

back their oppositions, and we gave the Government our

oppositions.  In the Government's oppositions, they tell us, by

the way, we're adding three more exhibits to our list.

09:11AM       This -- they have a different perception of what

we understood the Court's deadline to mean.  We are not

inflexible as the Government would suggest.  This is not a game

of gotcha.  But every time there's a new exhibit and a new

change and the promise there's more coming, the equation of

09:11AM  this trial changes.

       Every time they add an exhibit we have

2.1 million documents to figure out whether there's another

document that may affect that.  That could be a text message.

That could be an e-mail.  That could be a phone call.  That

09:12AM  could be a witness statement.  That could be a record.  That

1    could be a document.  We start fresh with each document.

2           We understood the Court's order to be here are

3    your exhibits.  That's your trial case.  There's a carve-out

4    agreed to by both sides.  There never was, if you look at your

09:12AM  5    schedule of dates, there's not another date for the Government

6    to provide an exhibit list and witness list.  We didn't agree

7    to one.  We never discussed one.

8           THE COURT:  Well, I agree.  That's why I raised

9    the pretrial exhibit stipulation because the Government I

09:12AM 10   thought, at least I took from the joint statement, that they

11   said, well, there's no big deal because we have the conference

12   regarding the exhibit list and we have the joint pretrial

13   exhibit stipulation.

14          But that's not the purpose of the conference with

09:13AM 15   respect to the exhibit list and the joint pretrial exhibit

16   stipulation.  Those exercises are designed to resolve any

17   objections to the exhibits that are on the Government's exhibit

18   list.  So that argument is just simply not well-taken.

19          MR. STEINGARD:  Your Honor, we're working from

09:13AM 20   what we are being given, and what we are being told is this is

21   an ongoing process, what they call an iterative process.  There

22   will be this exhibit list.  Then there will be another exhibit

23   list.

24          THE COURT:  Well, I'm going to put an end to

09:13AM 25   this.  There isn't going to be any other exhibit list.  The

first thing I'm going to do is order the Government to file a

supplemental brief telling me what these new exhibits are and

why they were allegedly recently or inadvertently not

disclosed.  And you can file that by August 15th.

09:14AM        Then, Mr. Steingard, you can tell me what the

prejudice is that you have suffered.  You can file that by

August 19th.  Then I will take a look at it and figure out

what, if any, penalty should be imposed.

        I want to make it very clear to the Government

09:14AM   that this concept of a moving target exhibit list is going to

stop today.  So whatever you need to do to make sure you have

all of the exhibits -- I assume they're now all on the list

because now you've entered the phase of resolving objections to

those exhibits.  So there shouldn't be any additional exhibits;

09:15AM   correct?

        MR. JENKINS:  Your Honor, that's not correct.  It

is certainly -- at this stage we don't expect and don't have in

mind mining our current discovery for new exhibits.  But that

is part of the iterative process.  By that we mean we're

09:15AM   looking for documents when we meet with witnesses.  We have

people on our witness list we have not spoken to.

        THE COURT:  I understand that, but that's

contemplated in terms of my comments that you're relying on

that, if a document hadn't been -- it says recently discovered,

09:15AM   and obviously, if you're going to be interviewing witnesses and

1    you recently discover documents, then you can give those to

2    Mr. Steingard.

3              It's not a gotcha, but I'm concerned about the

4    tenor of the Government's position that the July 7th date was

09:15AM  5    just simply a draft of the exhibit list that can be modified by

6    the Government without regard to making, in my view, an

7    adequate showing as to why that modification should be

8    permitted.  So it's not a gotcha.  It's just simply what I take

9    from the joint statement.  I may have misinterpreted, but

09:16AM  10   that's what I got from it.

11             MR. JENKINS:  Yes.  That certainly was not our

12   intention, but we hear the Court's concern, and we will address

13   it.  But to back up to your question, for this August 15th

14   deadline, there are a handful of additional exhibits that we

09:16AM  15   would like to include on that, and we will support those with a

16   declaration.

17             THE COURT:  All right.  The motions in limine, I

18   was shocked when I saw or read that there were some 11 or

19   12 motions in limine that were going to be filed by the defense

09:17AM  20   in this case.  Is that the number?

21             MR. STEINGARD:  The Government has conceded on

22   one issue, so we're down to ten.  I have a list here if

23   Your Honor wants me to hand it up.

24             THE COURT:  No.  I don't need a list.

09:17AM  25             Is the Government going to have any motions in

```
 1   limine?
 2                  MR. JENKINS:  Two.
 3                  THE COURT:  Two.  So we're back up to 12.  So I
 4   don't know how much work these motions in limine are going to
 5   be.  But I can see from the schedule that we have that I
 6   shouldn't -- I should have allowed myself more time because the
 7   filing of these motions in limine is currently set for
 8   August 29th and we have a hearing date of September 16th which
 9   in the ordinary case would probably give me sufficient time to
10   rule on the motions in limine.  And I assume that many of these
11   motions in limine you're going to want rulings close to
12   November 16th so you can use those rulings to guide your trial
13   preparation.
14                  As I see it -- as I'm going through the schedule
15   right now, the exchange of joint motions in limine oppositions,
16   that was on August 2nd.  That's been accomplished?
17                  MR. STEINGARD:  Yes.
18                  THE COURT:  Now we're just talking about the
19   replies?
20                  MR. STEINGARD:  Correct.  We're down to the
21   replies.
22                  THE COURT:  I'm going to ask that those
23   replies -- and the reply and the filing date are the same
24   dates, August 29th.  I'm going to -- I'm going to move that
25   date up to the 24th.  Is that going to cause any considerable
```

09:17AM (line 5)
09:17AM (line 10)
09:18AM (line 15)
09:18AM (line 20)
09:19AM (line 25)

difficulty?  And the reason I'm doing that is, by the time I

get courtesy copies, that gives me an additional weekend rather

than filing them on the 29th, I lose a weekend to work on those

motions in limine.  So if I have the motions in limine filed on

09:19AM  the 24th, then I can prepare my boxes to take home over the

weekend so I can look at them.

           MR. STEINGARD:  The answer is does that affect

us?  You know, the bulk of this, the reply briefs, ten of them

are on the defense and me.  I had targeted the 29th.  I can

09:20AM  certainly attempt that.  But may I make another suggestion,

Your Honor?

           THE COURT:  Sure.

           MR. STEINGARD:  I'd just like to ask if

Government counsel and I can talk --

09:20AM            THE COURT:  Why don't you pull your mask down.

           MR. STEINGARD:  Yes.  I'm going to suggest that

the Government counsel and I talk and we take a look at the

revised -- the schedule of dates and see if we can take a look

at those dates and possibly even consider an extra week or two

09:20AM  at the back end for the trial maybe.

           With Your Honor's permission, I just suggest that

you give Mr. Jenkins and his team and me the opportunity to go

over the dates again to see whether they can be modified to

accommodate the Court.

09:20AM            We realized -- when we realized there were so

many in limines, we also realized this was going to tax the
Court to be ready in such a short amount of time.  I think
working together we may be able to effectively propose some new
dates to the Court that don't necessarily require moving up the
date and cramming everything in and making you take home boxes
for the weekend.

THE COURT:  I take home boxes every weekend, but
this is just a different box full of documents.

MR. STEINGARD:  This would be a big box.

THE COURT:  I'm not adverse to that because
the -- quite frankly, the -- I have been in back-to-back
trials, and I'm starting another trial on Wednesday that is
going to -- at least the lawyers think it's going to take some
time to try.

So I would encourage the back end, if you move it
a couple weeks, that would be helpful.  But I will leave it up
to counsel to meet and confer.  I also have obviously a
continuing calendar of criminal trials, and obviously those
trials where the defendant is in custody, I'm going to have to
give priority to those trials.

As you know, we're still operating under the
effects of all of the continuances that were granted during the
pandemic.  We were able to get Mr. Lee's trial concluded
although I just saw on the docket apparently that -- we
continue the saga with Mr. Lee.

|  | 1 | In any event, that's fine.  I will wait to hear |
|--|---|--|

1        In any event, that's fine.  I will wait to hear

2  from counsel.  And if you need any additional time on the

3  August 15th and August 19th date, we can certainly have

4  those -- continue those dates also.

09:23AM    5        MR. JENKINS:  Your Honor, just so we understand,

6  you're talking about a continuance of the trial date at least a

7  couple weeks?

8        THE COURT:  Yeah.  I think that's what

9  Mr. Steingard is suggesting or at least floating because that

09:23AM   10  would -- that would -- the schedule is compressed, and I know

11  from the Lee case how much work is involved by both sides, the

12  defense and the Government.  We worked very hard in that case,

13  and I think we were able to try that case in eight or nine

14  days?

09:24AM   15        MR. JENKINS:  Nine days with jury deliberation,

16  Your Honor.  On that point, our concern particularly, as the

17  Government who has to try all three cases, is that the third

18  trial is going to compress into that schedule.

19        THE COURT:  That one is not until February.

09:24AM   20        MR. JENKINS:  That's correct, but there's

21  advanced deadlines.  And having done the last trial while also

22  trying to respond to multiple e-mails from the next trial's

23  counsel which led to some of the concerns Mr. Steingard is

24  raising in terms of the documents not being produced or being

09:24AM   25  unclear which evidence we're going to pursue because there are

now two new AUSAs who weren't on the case as many years as I
have been, and that you will see in the declaration was part of
the issue.

So we're okay with a continuance, but our
position is ideally that the Huizar trial date would stay and
the Shen Zhen trial would be the last one considering it's an
entity whose sole owner is a fugitive.  Our concern is doing
anything that would compromise the case against the two lead
defendants.

So our request would be that if that trial
date -- I understand the Court's schedule is more compressed
than ours certainly.  But if we move the Shen Zhen trial past
the Huizar trial, we think it would --

THE COURT:  I'm not adverse to that.

MR. STEINGARD:  I think we have had that
conversation.  I think Mr. Jenkins just suggested we put off
the Shen Zhen trial until after the -- we did not agree to that
before.  The Court did not agree to it before.  I had not known
that was going to be suggested now.  It's certainly something I
will talk to Mr. Jenkins and his team about.  But I don't want
to give any misimpressions.  That's not our --

THE COURT:  Well, I didn't -- I'm not sure it's
entirely accurate to say I didn't agree to it.  I didn't accept
the Government's suggestion because you had objected to it.
But I think, in what we're facing in terms of these deadlines,

1  that -- and knowing the amount of work that we put in the Lee

2  case -- I haven't compared the deadlines in the Huizar case

3  with the deadlines -- the dates that those items are due

4  compared to this trial.  But to me that may make more sense to

09:26AM  5  put your client's trial after the Huizar trial.

6          Your individual client is not going to be

7  participating in a trial.  We're talking about a corporate

8  entity.  And certainly you have the -- I don't see what harm it

9  would be for the corporate entity to have its trial after the

09:27AM  10  Huizar trial.  It would certainly eliminate a lot of these

11  issues we're going to be faced with in the next couple months.

12          MR. STEINGARD:  Your Honor, I'm happy to talk to

13  Mr. Jenkins about that, but I don't want to provide any kind of

14  misperception.  This was floated, whatever it was, back in

09:27AM  15  February or March maybe, and we did not want to do that.  I can

16  consult with Mr. Jenkins again and with my client, but our goal

17  was to go to trial sooner rather than later.

18          My suggestion of pushing it back a couple weeks

19  was to accommodate the Court in the compressed schedule, not to

09:27AM  20  suggest that we go third.  So I will talk to Mr. Jenkins about

21  it and my client, and we will have an answer for you relatively

22  soon.

23          THE COURT:  Also give your client an opportunity

24  to appear.

09:27AM  25          MR. STEINGARD:  Actually, I don't represent

|   |   |
|---|---|
|   | 1 |

1   Wei Huang, but I can let him know he is invited.

2                    THE COURT:  He's always welcome.

3                    MR. STEINGARD:  I don't even know if people can

4   get out of China these days and whether they can get out the

09:28AM   5   last two plus years since COVID hit.  I don't know that anyone

6   is being allowed out of China.  I know the Government makes

7   much of the fugitive status.  The reality isn't quite that.

8                    We will take to heart your comments and have a

9   conversation and see if we can work together.

09:28AM  10                    THE COURT:  All right.

11                    MR. STEINGARD:  Thank you.

12                    THE COURT:  Unless there's -- if these dates

13   aren't moved, I would ask that those motions in limine be filed

14   on the date that I suggested.

09:28AM  15                    MR. STEINGARD:  August 24.  Yes.

16                    MR. JENKINS:  Yes, Your Honor.  The Government

17   can comply with that reply deadline.

18                    THE COURT:  Anything else from the Government?

19                    MR. JENKINS:  Nothing from the Government,

09:28AM  20   Your Honor.

21                    THE COURT:  Anything else from the defense?

22                    MR. STEINGARD:  No.  Thank you, Your Honor.

23                    THE COURT:  All right.

24                    (Proceedings concluded at 9:28 a.m.)

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13  THE UNITED STATES.

14

15          DATED THIS  26TH  DAY OF AUGUST, 2022.

16

17

18          /S/ MIRANDA ALGORRI

19          _____
            MIRANDA ALGORRI, CSR NO. 12743, CRR
20          FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25