Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>Defendant. | CR-20-326(A)-JFW<br><br>**JOINT MOTION *IN LIMINE* NO. 2: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING  THE EXPANSION OF THE SHERATON UNIVERSAL HOTEL; DECLARATION OF RICHARD M. STEINGARD**<br><br>Date:   September 23, 2022<br>Time:  8:00 a.m.<br>Crtrm: 7A<br><br>Trial Date: October 25, 2022<br><br>Assigned to Hon. John F. Walter |

i

# **TABLE OF CONTENTS**

**Identification of Matters in Dispute** ...................................................1

**SZNW's Motion**......................................................................................2

I.      INTRODUCTION ............................................................................2

II.     STATEMENT OF RELEVANT FACTS ........................................2

III.    ARGUMENT ...................................................................................3

**Government's Opposition**

I.      INTRODUCTION ............................................................................7

II.     RELEVANT FACTS ......................................................................8

III.    ARGUMENT .................................................................................11
        A.      The Sheraton Universal Project Is Direct Evidence
                of Defendant's Motive and Intent....................................11
        B.      That a Third Party Unexpectedly Thwarted the Sheraton
                Universal Project Does Not Negate the Relevance of
                This Evidence to Defendant's Motive................................13
        C.      Evidence of Sheraton Universal Project Is Not Unduly
                Prejudicial or Confusing...................................................16

V.      CONCLUSION ...............................................................................17

**SZNW's Reply** ......................................................................................18

**Declaration of Richard M. Steingard**...............................................23

LAW
OFFICES OF
RICHARD M.
STEINGARD

## <u>TABLE OF AUTHORITIES</u>

<u>**FEDERAL CASES**</u>

*United States v. Beckman,*
    298 F.3d 788 (9th Cir. 2002) ............................................................. 4

*United States v. Bradshaw,*
    690 F.2d 704 (9th Cir. 1982) ........................................................... 11

*United States v. Bucher*
    375 F.3d 929 (9th Cir. 2004) ........................................................... 11

*United States v. Daly,*
    974 F.3d 1215 (9th Cir. 1992) ........................................................... 5

*United States v. Dorsey,*
    677 F.3d 944 (9th Cir. 2012) ............................................................. 5

*United States v. Fuertes,*
    805 F.3d 485 (4th Cir. 2015) ............................................................. 4

*United States v. Gorman,*
    613 F.3d 711 (7th Cir. 2010) ............................................................. 4

*United States v. Green,*
    617 F.3d 233 (3d Cir. 2010) .............................................................. 4

*United States v. Livoti,*
    196 F.3d 322 (2d Cir. 1999) ............................................................ 16

*United States v. Parker,*
    549 F.2d 1217 (9th Cir. 1977) ......................................................... 16

*United States v. Tramunti,*
    513 F.2d 1087 (2d Cir. 1975) .......................................................... 16

*United States v. Vizcarra-Martinez,*
    66 F.3d 1006 (9th Cir. 1995) ................................................... 2, 4-5

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Wells,*
    879 F.3d 900 (9th Cir. 2018) ........................................................ 4-5

*United States v. Williams,*
    989 F.2d 1061 (9th Cir. 1993) .........................................................5

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 403 ..............................................................6, 16

LAW
OFFICES OF
RICHARD M.
STEINGARD

## TABLE OF EXHIBITS

| Exhibit | Description | Page |
|---------|-------------|------|
| A | January 27, 2022 Report of Interview with Rose Fistrovic (Casino_2096624) | 3:18 |
| 1 | www.sznewworld.com – 1/12/2011 News re Sheraton (Casino_2101550) | 9:3 |
| 2 | 3/18/16 Email Thread Jeff DiMarzio-Victor Li-Satoru Kato Re: Status for the New Design (Casino_0720774) | 9:24, 15:1 |
| 3 | 6/7/2018 LA Grand Application (Casino_0815590) | 10:5 |
| 4 | 6/7/2018 Sheraton Universal Application (Casino_0824817) | 10:8, 13:27 |
| 5 | 6/13/2018 Sheraton Universal LADBS Filing Receipt (Casino_08245675) | 13:28 |
| 6 | 5/3/16 Email Thread Satoru Kato-Raymond Chan et al. Re: New World Hotels Expansion Study (Casino_0717494) | 14:25 |
| 7 | Sheraton Universal Application – Entitlement Request (Casino_0825254) | 15:7 |
| 8 | Sheraton Universal Application – Architectural Plans (Casino_0825290) | 15:8 |
| 9 | Sheraton Universal Application Tree Inventory Report (Casino_0825324) | 15:9 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

v

## IDENTIFICATION OF MATTERS IN DISPUTE

**Defendant's Position:** SZNW moves this Court for an order excluding evidence of its redevelopment of the Sheraton Universal Hotel, which is not located in Jose Huizar's district. The First Superseding Indictment ("FSI") briefly alludes to the Sheraton Universal in Count 1, alleging RICO conspiracy against Jose Huizar and Raymond Chan, but not SZNW; it is not named or referenced in the charges against SZNW. It is thus irrelevant to the case, which alleges a bribery scheme only in connection with the LA Grand Hotel, and its admission creates the potential for confusing the jury.

**Government's Position:** Evidence that Wei Huang owned two properties in the City that he contemporaneously sought to redevelop is highly probative of defendant's motive and intent to bribe public officials (Jose Huizar and George Esparza) who were the central power brokers over both.

It is also probative of the scheme and, in particular, the conduct of co-schemers Huizar and Esparza and their solicitation and expectation of benefits from Wei Huang, the owner of two redevelopment properties in the City.

The government would be prejudiced by the exclusion of this significant evidence because it would be forced to present a misleading and incomplete story of Huang's interests in the United States, and the relevant percipient witnesses worked on both properties at the same time, and that joint work is reflected in many of the documents.

## JOINT MOTION *IN LIMINE* NO. 2
## SZNW'S MOTION TO EXCLUDE EVIDENCE AND TESTIMONY
## REGARDING THE EXPANSION OF THE SHERATON
## UNIVERSAL HOTEL

### I.    INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding evidence and testimony concerning SZNW's plan to expand the Sheraton Universal Hotel.  In 2016, SZNW and its owner, Wei Huang, undertook to expand two hotels that they owned, the LA Grand Hotel in downtown Los Angeles and the Sheraton Universal in Universal City.  While the former is in Jose Huizar's district (CD-14) and is the centerpiece of the government's bribery case against SZNW, the latter is in a different district and is completely unrelated to the charges.  Despite this, the government claims that evidence of the expansion of the Sheraton Universal should be admitted because it is "inextricably intertwined" with the case.

As discussed below, several circuits have banned or severely criticized the "inextricably intertwined" theory of admissibility, and for good reason as it has the effect of improperly expanding the scope of a government prosecution.  Although the Ninth Circuit continues to permit the introduction of evidence under this theory, it does so under limited circumstances—only when the evidence at issue serves as the basis for a charged crime or is necessary to tell a coherent story. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).  Because neither of these scenarios apply, any evidence and testimony regarding the Sheraton Universal's expansion should be excluded.

### II.    STATEMENT OF RELEVANT FACTS

On June 7, 2018, SZNW filed two applications with the City of Los Angeles, one to build a major hotel and condominium tower on the grounds of the LA Grand Hotel, and the other to build an equally impressive structure at the

Sheraton Universal.  The construction and engineering firm "Psomas" was hired on both projects and assigned Rose Fistrovic as the project manager.

While the LA Grand Hotel project proceeded forward, the idea of building an addition to the Sheraton Universal was fleeting.  As Ms. Fistrovic explained in a pre-trial interview with the government, NBC Universal owned a property adjacent to the Universal Sheraton and had a covenant which required its consent for SZNW to develop the hotel's property.  NBC Universal exercised that covenant, killing the project.  Ms. Fistrovic stated,

> The Universal Sheraton had a slightly different entitlement request because it was in a different area and zoning code. Psomas started preparing the application for the Universal Sheraton project; however, during the outreach faze, NBC Universal disclosed that there was a conditional covenant between NBC Universal's adjacent property and Huang's Universal Sheraton. NBC said they had the first right to approve the project and their approval was needed to proceed with the project. Huang never disclosed this with Psomas and never provided the project proposal to NBC. NBC made threats or statements to Huang that they would reject the project.  Huang ultimately decided not to move forward.

(Report of Interview with Rose Fistrovic, January 27, 2022, Casino_2096624-8, attached as Exhibit A.)

The government has advised that it seeks to introduce evidence of the Sheraton Universal's expansion under the "inextricably intertwined" theory. According to the government's witness and exhibit lists, the government seeks to admit eight exhibits regarding the plans to develop the Sheraton Universal and names six different witnesses to discuss these exhibits.

## III.   ARGUMENT

The government claims that the evidence of the Sheraton Universal's expansion is "inextricably intertwined" with the charges.  This argument is fallacious.

The "inextricably intertwined" theory of admissibility permits the government to introduce evidence that would otherwise be inadmissible under Rule 404(b), Federal Rules of Evidence ("FRE").  Rule 404(b) prohibits the admission of other crimes, wrong or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, "[e]vidence of 'other acts' is not subject to the Rule 404(b) analysis if it is 'inextricably intertwined' with the offense."  *See United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018), citing *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002).

A growing number of courts have abandoned or criticized this theory of admissibility.  *See United States v. Fuertes*, 805 F.3d 485, 494 n. 4 (4th Cir. 2015), collecting cases including, *inter alia*, *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (abandoning the "inextricable intertwinement doctrine" because it "has outlived its usefulness" and "become overused, vague, and quite unhelpful"); *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) ("[T]he inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b).").  While the Ninth Circuit has not entirely forsaken this theory, it has clearly limited its use.  *See, e.g., Vizcarra-Martinez*, 66 F.3d at 1013 (evidence defendant possessed a personal use quantity of methamphetamine was not inextricably intertwined with transaction with which he was charged -- possession of hydriodic acid with knowledge that it would be used to manufacture methamphetamine); *Wells,* 879 F.3d at 928 (evidence that defendant disobeyed an order was not inextricably intertwined with murder/firearms charges).

The Court has permitted the government to introduce such evidence under two circumstances.  The first category concerns other-act evidence that is part of the transaction that serves as the basis for the criminal charge.  *Vizcarra-Martinez*, 66 F.3d at 1012; *Wells*, 879 F.3d at 928.  For example, in *United States v.*

4

*Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), the Ninth Circuit found that contemporaneous cocaine sales were inextricably intertwined with the charged crime of sales of cocaine.

The second category is if the other-act evidence is necessary to offer a "coherent and comprehensible story." *Vizcarra-Martinez*, 66 F.3d at 1012-13. This exception is also limited and allows the admission of other-act evidence only where "the prosecution would encounter . . . difficulty in presenting the evidence relevant to its case against the defendant" without offering the other act evidence. *Id.* at 1013. "In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story,' we ask whether the evidence bears directly on the charged crime. There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Wells*, 879 F.3d at 928-29 (cleaned up). The paradigmatic example is the felon-in-possession case, where the Court has approved admission of the circumstances in which the defendant possessed the firearm. *Vizcarra-Martinez,* 66 F.3d at 1013, citing *United States v. Daly*, 974 F.3d 1215, 1216 (9th Cir. 1992); *Wells*, 879 F.3d at 928; *United States v. Dorsey*, 677 F.3d 944, 951-2 (9th Cir. 2012), citing *Vizcarra-Martinez*, 66 F.3d 1006 (where defendant was charged with discharging a firearm in relation to a crime of violence, it was proper to allow the testimony of two witnesses who had seen the defendant with the gun before the charged shooting "[b]because the testimony bore directly on the commission of the charged crimes" – that is, "it tended to prove that Dorsey had the means to commit the charged crimes and that he was in fact the shooter").

As is readily apparent, neither of these narrow categories apply to the instant case. The short-lived Sheraton Universal project was located in a different council

district and is unrelated to the bribery charges.[1]  It is not a part of the charges against SZNW and, other than sharing the same owner and project team, has no connection to the expansion of the LA Grand Hotel.

Further, the prosecution will not encounter any difficulty presenting its case relevant to the *charged* crimes without mentioning the Sheraton Universal's expansion.  Clearly, whatever may have been Psomas' limited preparatory work for the Sheraton Universal does not bear "directly" on the charged crimes.  Again, it is not mentioned in the First Superseding Indictment, nor does it have the requisite "contextual or substantive connection" to be inextricably intertwined.  Indeed, the very opposite is true: the presentation of an *unrelated* hotel project would be a side foray into an entirely different topic that has nothing to do with the LA Grand Hotel.

Finally, whatever may be the minimal probative value of this evidence is significantly outweighed by its prejudice nature and very real potential for the jury's confusion.  FRE 403.  If the government was permitted to introduce evidence of the Sheraton's expansion project, the jury would have to be instructed that SZNW is not charged with any crime relative to that endeavor.  This would only serve to confuse the jury.  For this reason as well, this evidence and testimony should be excluded.

---

[1]   Due to its brevity, there was no possibility that the Sheraton Universal's expansion project would ever come before the PLUM Committee during Jose Huizar's tenure.  As noted above, the application for the Sheraton Universal's remodel was filed with the City in June 2018.  Five months later, the government searched Huizar's home and office.  Within weeks, the City Council stripped Huizar of all committee assignments, including the PLUM Committee.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## GOVERNMENT'S OPPOSITION

### I.     INTRODUCTION

A critical issue at trial will be the motive and intent of defendant Shen Zhen New World I, LLC ("SZNW" or "defendant") and co-defendant Wei Huang, SZNW's 100% owner and a fugitive from justice,  specifically pertaining to defendant/Huang's illicit relationship with then-Councilmember and PLUM Chair Jose Huizar and his office.[2]  It is highly relevant and probative that Huang owned and was seeking to redevelop not only the L.A. Grand Hotel, which sat directly in Huizar's Council District, but also the Sheraton Universal, which was located within a different Council District for Los Angeles.  That Huang owned not one but <u>two</u> properties each requiring approval for redevelopment by two City bodies over which Huizar wielded great influence (PLUM and City Council) is highly probative of Huang's intent to bribe Huizar on behalf of defendant SZNW and, accordingly, should be presented for the jury's consideration, not kept from them.

Defendant also makes the nonsensical argument that the Sheraton Universal Project is irrelevant because it was short-lived and would not have made it to Huizar's desk in his capacity as PLUM Chair due to unexpected obstacles that ultimately thwarted the project--namely, acts in 2018 by NBC Universal and the federal government.  But what matters is Huang's motive, intent, belief, and understanding at the time he formed and developed his relationship with Huizar throughout 2013 to 2018, including by conferring financial benefits to Huizar and his Office throughout the entirety of that relationship, not any after-the-fact developments that impacted the project's feasibility and Huizar's ability to approve it.

---

[2]     References to Huizar encompass Jose Huizar, Huizar's Office, and other public officials and associates working at his direction, like George Esparza and Raymond Chan.

The Court should deny defendant's motion.

## II.    RELEVANT FACTS

As the First Superseding Indictment ("FSI") alleges, the government's theory of the case is that defendant/Huang sought to shower Huizar and his associates with an ongoing stream of financial benefits in exchange for various political favors, including official acts like "voting on projects in . . . the PLUM Committee and City Council" and "taking . . . action in the PLUM Committee to expedite . . . the approval process and affect project costs."  (FSI ¶ 45.b.)  For the jury to understand what defendant/Huang's motives and intentions were in connection with Huang's dealings and relationship with Huizar, the government must explain who Wei Huang is and all he stood to gain from corrupting that relationship.

The government will introduce evidence that Huang is a Chinese national billionaire and the Chairman and President of the Shenzhen New World Group, which includes defendant.  (FSI ¶¶ 17-18.)  Over the last 20 years, Huang's company has grown to become a major real estate developer in China, with a portfolio that included a number of impressive high-rise office, commercial, and residential buildings all located there.

In March 2010, Huang made his first commercial foray into the U.S. real estate market with the $90 million purchase of what was then the Marriott Downtown Los Angeles, later rebranded as the L.A. Grand Hotel, located in Huizar's Council District, Council District 14 ("CD-14") of the City of Los Angeles. (See FSI ¶ 18.)  Nine months later, in January 2011, Huang made his second purchase: $60 million for the Sheraton Universal Hotel located in Council District 4 for the City of Los Angeles.  (See id. ¶ 17.)  Following the purchase of the Sheraton Universal, Shenzhen New World Group's website touted both acquisitions, quoting Huang as stating: "The acquisition of Sheraton Universal

strengthen[s] our company's investment strategy on U.S. real estate, and perfect[s] our[] investment in Los Angeles.  We believed that Los Angeles's real estate market[] has great potential for development." (Gov. Ex. 1 Casino_2101550.)[3] Huang was the 100% owner of both properties; he owned (and owns) no other commercial properties anywhere else in the United States.  Because the L.A. Grand Hotel and the Sheraton Universal Hotel reflected Huang's collective American investment, Huang ensured that both properties were managed jointly.  For example, Harris Chan served as the Managing Director for SZNW Investment in U.S.A. and managed both hotels.  The same was true of Virginia Clark when she took over and oversaw both hotels as part of her role as the Chief Operations Officer who oversaw the entire United States division, i.e., the two hotels in Los Angeles.

Thus, when co-defendant Raymond Chan introduced Huang to Huizar in 2013, Huizar understood Huang to be the owner of two properties in Los Angeles, including one in Huizar's District.  (See FSI p. 15, OA 1.)  And Huang understood that Huizar not only was a member of the City Council, but the Councilmember for CD-14 and the Chair of the PLUM Committee.  (See FSI ¶ 8.)  Both the PLUM Committee and City Council must approve large-scale development projects for Los Angeles.  (FSI ¶¶ 2-3.)

At least by early 2016, Huang began taking concrete steps to actualize his plans to develop both the L.A. Grand Hotel and the Sheraton Universal.  Among other things, Huang enlisted DiMarzio/Kato Architecture to create the new building design for both properties.  (See Gov. Ex. 2 Casino_0720774.)  By June 2018, Psomas--the consulting company Huang hired to shepherd both projects through the lengthy and difficult City approval process--submitted redevelopment

---

[3]       Also available at http://www.sznewworld.com/en/p2-01-01.asp?id=594.

applications to the City for the L.A. Grand Hotel and the Sheraton Universal. Huang sought to massively redevelop the L.A. Grand Hotel from a 13-story hotel to a mix-used, 77-story skyscraper consisting of 224 apartment units, 599 hotel rooms, 242 condominium units, and nearly 30,000 square feet of commercial space.  (Gov. Ex. 3 Casino_0815590.)  This would make it the largest skyscraper West of the Mississippi.  The Sheraton Universal Project would add onto the existing hotel a new 31-story hotel with 551 guest rooms, a restaurant, and rooftop pool/lounge.[4]  (Gov. Ex. 4 Casino_0824817.)

Notwithstanding the years of planning that preceded the formal submission of the Sheraton Universal Project application, that project was ultimately dropped after a unique procedural hurdle emerged.  Specifically, NBC Universal refused to approve the project and exercised a conditional covenant over the property.  (Def. Ex. A.)

In November 2018, the federal government executed 16 search warrants, including at Huizar's home and office at City Hall.  The searches were widely reported in the local media. Shortly thereafter, Huizar was suspended from City Council and stripped of all his council committee assignments, including as chair of the PLUM Committee.

///

///

///

---

[4]     Throughout 2016 to 2018, Huang continued to treat Huizar to lavish, paid vacations, including to Australia and Pebble Beach, and at least <u>eight</u> more Las Vegas trips, during each of which Huang gave Huizar at least $10,000 in gambling chips.

### III.   ARGUMENT

A.   The Sheraton Universal Project Is Direct Evidence of Defendant's Motive and Intent

"Motive is evidence of the commission of any crime."  United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir. 1982).  "Culpable intent can be inferred from the defendant's conduct and from the surrounding circumstances."  United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004) (cleaned up).

Each of the charges against defendant require the government to prove that defendant (acting primarily through Huang) had the requisite, culpable intent to bribe Jose Huizar and/or George Esparza.  And although the FSI expressly alleges that Huang acquired not one but "two development properties in the City" (FSI ¶ 17), and that the means and methods of Huang's honest services fraud scheme included seeking official acts like "voting on projects in . . . the PLUM Committee and City Council" and "taking . . . action in the PLUM Committee to expedite . . . the approval process and affect project costs" in exchange for bribes and kickbacks (id. ¶ 45.b), defendant now seeks to exclude evidence of one-half of the actual financial, professional, and reputational stake that Huang had invested in the United States, in the City of Los Angeles, and in Jose Huizar.  That Huang stood to gain the guaranteed approval of two large, multi-million-dollar development projects in the City, rather than one, is direct evidence of his motive and intent to develop a corrupt relationship with Huizar.  Huang's ownership of two properties in the City, not just one, also provides important context for Huang's extravagant benefits to Huizar--which the government contends exceeded more than $1.5 million.  (See FSI pp. 16-17, OA 4-22 (Las Vegas group expenses worth approximately $890,388 and gambling chips directly to Huizar worth approximately $259,500); pp. 19-21, 23, OA 34-43, 49 ($600,000 collateral for Huizar's personal loan, which the bank took and applied to Huizar's balance after he failed to make interest payments); p. 87, OA 361 (Australia trip, including a

11

$10,980 commercial airline ticket for Huizar); p. 29, OA 77 (expense-paid trip to Pebble Beach).)

The importance of the Sheraton Universal is not unlike the probative evidence of the Little Tokyo Galleria Project that this Court admitted in the Lee/940 Hill trial for largely the same reasons, over defense objection. Notwithstanding that the predicate wire for the honest services fraud count and bribery count related solely to the 940 Hill Project (rather than the Little Tokyo Galleria Project), the Court admitted a wide variety of evidence that Lee sought entitlements for the Little Tokyo Galleria Project, of which he was a part-owner.[5] That evidence was highly relevant and probative of Lee/940 Hill's motive and intent, given that the Little Tokyo Galleria Project also required approval by the PLUM Committee and City Council.  (See e.g., Lee/940 Hill Trial Tr. 6/17/22 [Kuk Testimony] at 824:7-17 (explaining approvals for Little Tokyo Galleria Project needed to go through PLUM Committee and City Council).)  By comparison, the Sheraton Universal is even more relevant and significant here, given the lengthy period over which Huang developed a corrupt relationship with Huizar as well as the frequency and direct face-to-face interactions between Huang and Huizar over a period of years.  In addition, unlike defendant Lee, Huang was the sole owner of the properties and 100% of his U.S.-based properties needed Huizar's help at the time of their corrupt interactions; this further highlights Huizar's then-value to Huang.

B.   The Sheraton Universal Project Is Direct Evidence of Co-Schemer Conduct

Huang's ownership of two properties within the City that he sought to redevelop is also highly relevant to how his two co-schemers, Jose Huizar and

---

[5]   The evidence at the Lee/940 Hill trial also showed that defendant Lee owned a number of additional properties, many of which did not need Huizar's official help at the time of the bribe.

George Esparza, viewed and approached Huang.  Evidence of co-schemers' conduct is "directly relevant to establish a critical component of the scheme" and therefore admissible as "direct evidence of the offense [theft of honest services]." United States v. Boone, 628 F.3d 927, 935 (7th Cir. 2010).

As part of the pay-to-play scheme, Esparza was trained "to size [developers] up" and determine whether "they would be willing to play." (See Lee/940 Hill Trial Tr. 6/17/22 [Esparza Testimony] at 926:2-5.)  And the request that Huizar/Esparza would make "depend on who the stakeholder was"; for example, if it was a developer with a "new hotel, a new housing project . . . [the request] would start off very small." (Id. at 926:6-11.)  In this way, Huizar tailored the request to the specific developer, or to the "cow," to see how much "milk" they were willing to give.  (Id. at 927:23-928:2.)  A "big ask" or an act that would be a "heavy lift" on Huizar's part required a commensurate benefit to Huizar so that it would "be worth it for him to move on it." (Id. at 942:22-943:6; 952:16-953:8.)  Thus Huizar/Esparza's understanding that Huang owned two properties in the City for which he was seeking approvals for large redevelopment projects directly informed Huizar/Esparza's approach and heightened their expectations of what level of benefit Wei Huang would and should provide in connection with the pay-to-play scheme.

C.   That a Third Party Unexpectedly Thwarted the Sheraton Universal Project Does Not Negate the Relevance of This Evidence to Defendant's Motive

Defendant self-servingly mischaracterizes the factual record when it claims that "the idea of building an addition to the Sheraton Universal was fleeting" and "short-lived." (Mot. at 2, 4.)

The application to develop the Sheraton Universal was submitted by Psomas in June 2018.  (Gov Ex. 4 Casino_0824817 [Sheraton Universal application]; Gov. Ex. 5 Casino_08245675 [City Receipt confirming submission of Sheraton

13

Universal Project application].)  Defendant narrowly focuses on the fact that, after submission of the initial application for the Sheraton Universal Project, Psomas learned that under a governing set of CC&Rs (Conditions, Covenants, and Restrictions), NBC Universal, which had previously owned the Sheraton Universal property, had the first right of approval (or disapproval) for any development on that property.  (Def. Ex. A.)  According to Ms. Fistrovic, Huang failed to seek NBC Universal's initial approval prior to submitting the application.  After NBC Universal communicated in 2018 that it would reject the project, Huang ultimately decided not to move forward.  (Id.)

What defendant ignores is that Huang actively began working on his plans to redevelop the Sheraton Universal by, at the very latest, early 2016--more than two years before he unexpectedly learned about NBC Universal's refusal to approve the redevelopment project based on a CC&R.  Huang largely used the same team to prepare the applications for both the L.A. Grand Hotel Project and the Sheraton Universal Project, including Psomas and the architecture firm, DiMarzio/Kato.  For example, in a March 18, 2016 email from defendant's employee (Assistant Project Manager for the L.A. Grand Hotel) to defendant's architect, Jeff DiMarzio, defendant asked "[h]ow is the new building design for both hotels?  Chairman want to know the progress, please advise thank you."  (Gov. Ex. 2 Casino_0720774 (emphasis added).)  Subsequent emails show that the team would discuss both projects simultaneously.  As one example, in a May 3, 2016 email from DiMarzio to Raymond Chan, DiMarzio wrote that "[w]e are going to start a design exercise to add a tower to each of New World's 2 LA properties.  The LA Hotel and the Sheraton Universal.  Chairman Huang's idea is to test the maximum allowable development for each property."  (Gov. Ex. 6 Casino_0717494.)  Indeed, defendant even acknowledges this critical point that "[i]n 2016, SZNW and its

owner, Wei Huang, undertook to expand two hotels that they owned."  (Mot. at 1 (emphasis added).)[6]

Due to the intensive nature of the City approval process, significant financial investment and work had been performed for the Sheraton Universal Project by the time the application was submitted.  The application package included multiple detailed components, including a 35-page attachment detailing the various entitlements it sought (Gov. Ex. 7 Casino_0825254), a 32-page conceptual architecture plan with digital renderings of the anticipated project (Gov. Ex. 8 Casino_0825290), and even a 33-page "Tree Inventory Report" (Gov. Ex. 9 Casino_0825324).

The reasonable conclusion from this evidence is that years before the formal application was submitted, Huang had long intended to redevelop the Sheraton Universal.  And the jury is entitled to consider evidence of that property and Huang's plans for the Sheraton Universal to make reasonable inferences about Huang's corrupt purposes in forming and developing his relationship with Huizar throughout the same relevant time period.

For a similar reason, defendant misses the mark further still when it argues that "[d]ue to its brevity, there was no possibility that the Sheraton Universal's expansion project would ever come before the PLUM Committee during Jose Huizar's tenure" and that Huizar lost his PLUM Committee assignment five months after Sheraton Universal application was submitted once "the government searched Huizar's home and office."  (Mot. at 5 n.1.)  Again, what matters is Huang's state of mind throughout the many preceding years (2013 to 2018) that he and other agents of defendant were heaping financial benefits onto Jose Huizar while Huang simultaneously owned two properties in Los Angeles that he intended

---

[6]   Defendant also does not address the evidence showing that Huang sought to support Richelle Rios' campaign after Jose Huizar was termed out in 2020, thereby ensuring that his corrupt investment continued.

to redevelop.  And the probative nature of the evidence is not negated by the fact that the federal government took certain overt actions at the end of 2018 that publicly revealed its criminal investigation into Huizar, thereby prompting Huang to abandon both projects and become a fugitive from justice.

Evidence of the Sheraton Universal Project Is Not Unduly Prejudicial or Confusing

Finally, defendant argues that evidence of the Sheraton Universal Project should be excluded under Rule 403.  (Mot. at 5.)  Defendant cites the "prejudice [sic] nature" of the evidence (Mot. at 5), but provides no explanation why Huang's ownership of a second property in the City, which he sought to redevelop, would be <u>unfairly</u> prejudicial.  <u>See</u> <u>United States v. Parker</u>, 549 F.2d 1217, 1222 (9th Cir. 1977) ("[E]vidence relevant to a defendant's motive is not rendered inadmissible because it is of a highly prejudicial nature.  The best evidence often is." (cleaned up).)  Nothing about Huang, a billionaire real estate developer, also having a second hotel project in Los Angeles is "sensational, inflammatory, [or] prejudicial," much less in a manner that outweighs its relevance.  <u>See</u> <u>United States v. Tramunti</u>, 513 F.2d 1087, 1105 (2d Cir. 1975).  And evidence should "not be excluded as unduly prejudicial when it is not more inflammatory than the charged crime."  <u>United States v. Livoti</u>, 196 F.3d 322, 326 (2nd Cir. 1999).

Nor will evidence of the Sheraton Universal Project confuse or mislead the jury, particularly as it relates to the charges.  The substantive honest services wire fraud jury instruction will clearly detail as an element that the scheme consisted of a bribe in exchange for at least one official act in connection with the specific matter -- the L.A. Grand Hotel Project -- supporting that charge.  (<u>See</u> Dkt. No. 584 [Lee/940 Hill Jury Instructions (Given)] at 23-25 (describing the second element as involving "at least one official act by Jose Huizar or George Esparza <u>on the CREED LA appeal filed against the 940 Hill Project</u>" (emphasis added).)  The same will be true for the instructions on the bribery and Travel Act violations; that is, the relevant elements of those crimes will specifically refer to the L.A. Grand

16

Hotel Project.  Furthermore, a special verdict form can be crafted to further identify the charged acts if helpful to the jury.  (See 1/7/2022 Hr'g Tr. at 17:24-18:4 ("[T]he Court will require the Government to specify the quos or official acts in the jury instructions that they contend support each of the bribery charges.").)

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

## SZNW'S REPLY

As with virtually all the oppositions to SZNW's *in limine motions*, the government claims that the evidence sought to be excluded is "critical" to the government's case, the evidence is "highly relevant" and "highly probative," and SZNW's positions are baseless or, in this case, "nonsensical."  In support, the government argues that SZNW's alleged bribe of Jose Huizar included Huizar's unspecified "official acts" in connection with the redevelopment of the Sheraton Universal.  The government cites to no evidence that this was part of SZNW's alleged bribe – there is no witness or document stating or inferring such—but simply points to two facts: (1) in or around 2016, SZNW contemplated a redevelopment of the Sheraton Universal which ended shortly after the plans were filed with the City and (2) Huizar sat on the PLUM Committee and the City Council which, by all accounts, would never have considered the Sheraton project.  These two facts do not support the proffered introduction of evidence.

**To be clear, SZNW has no objection to the government introducing evidence that Huang owned the Sheraton Universal.**  But the government's case against SZNW is aptly named the "L.A. Grand Hotel Bribery Scheme" and concerns the redevelopment of that hotel  The FSI makes no meaningful reference to the Sheraton Universal,[7] and no reference at all to its redevelopment.  (Ct 1, Overt Acts ("OA") 1-84, Counts 2-4, 18-21, & 23.)  Indeed, the FSI reflects that

---

[7]     Count 1, OA 1 states, "In or around February 2013, defendant CHAN, then the Interim General Manager of LADBS, introduced defendant HUIZAR and George Esparza to Wei Huang, who owned Shen Zhen Company and the L.A. Grand Hotel (located in CD-14), *and another property located in a different City district.*" (Emphasis added.)  Count 1, OA 56 states, "On June 27, 2017, at defendant HUIZAR's direction, George Esparza put Virginia Clark in touch with a CD-14 staff member *to discuss and facilitate resolving union issues at Wei Huang's two hotels in the City .*" (Emphasis added**.)**

the **sole** focus of the government's charges is the 77-story tower to be built at the LA Grand Hotel. (*See e.g.*, Count 1, OA 17 ("In June 2018, defendants HUANG and SHEN ZHEN Company applied to redevelop the L.A. Grand Hotel into a 77-story skyscraper featuring a mix of residential and commercial uses ("L.A. Grand Hotel Project")"); OA 57 ("On May 4, 2016, defendant CHAN, in his capacity as General Manager of LADBS, agreed to meet with consultants for Shen Zhen Company to discuss the 'hotel expansion study' and 'Chairman Huang's idea ... to test the maximum allowable development' for the property and defendant CHAN's 'help to get started.'"); ()A 58 ("In or around July 2016, defendant CHAN participated in a conference call with Wei Huang and consultants hired by Shen Zhen Company to discuss the expansion of the L.A. Grand Hotel, and the City's approvals for the development project.") OA 59 Overt Act ("On August 4, 2016, defendants HUIZAR and CHAN met with Wei Huang and senior officials from the Planning Department, senior CD-14 staff members, and members of Huang's team to discuss the expansion of the L.A. Grand Hotel, including Huang's interest in pursuing Transient Occupancy Tax rebates, Transfer of Floor Area Rights ("TFAR"), and other incentives from the City.")

The actual charges against SZNW do not mention or refer to the redevelopment of the Sheraton Universal and focus solely on the LA Grand Hotel. Counts 2-4, the honest services fraud counts, are entitled "The L.A. Grand Hotel Project;" Counts 18-21, the Travel Act counts, all claim that SZNW's alleged bribes were "in exchange for defendant HUIZAR agreeing to perform official acts to benefit the L.A. Grand Hotel Project;" and Count 23, the federal program bribery count, similarly asserts that in making the alleged bribes, SZNW "intend[ed] to influence and reward Huizar in connection with the L.A. Grand Hotel Project."

Thus, to the extent the government argues that SZNW intended to bribe Huizar to commit an "official act" and somehow influence the Sheraton Universal

19

redevelopment, it is not charged in the FSI and, at best, would constitute Rule 404(b) evidence. The government did not give notice of an intent to introduce such evidence—the deadline long since passed—and it does not seek its admission on that basis. Rather, the government claims the Sheraton's redevelopment is evidence of SZNW's "motive." But motive of what? Surely, the government cannot claim that SZNW's alleged bribing of Huizar to commit an "official act" with respect to the Sheraton Universal is evidence of its motive to do so in regard to the LA Grand Hotel project, or vice versa.

The government also argues that "Huang's ownership of <u>two</u> properties in the City, not just one, also provides important context for Huang's extravagant benefits to Huizar--which the government contends exceeded more than $1.5 million." While we fail to see the government's point, it again bears emphasizing that SZNW does not object to the government's introduction of evidence that SZNW owned two properties in Los Angeles.

The government advances two additional points. First, the government likens this issue to one faced by the Court in the *940 Hill/Lee* case. SZNW was not a party to that case and is unaware of the issue, arguments, or resolution of any such issue. Second, the government claims that the Sheraton redevelopment evidence is relevant to Huizar and George Esparza's views of SZNW and Wei Huang. Again, we fail to see the government's point.

Lastly, the government tacitly concedes that the introduction of the Sheraton redevelopment as part of the bribe scheme creates the potential for jury confusion, but its solution is to include in the jury instructions that a conviction can only be based on "official acts" in connection with the LA Grand Hotel and/or provide the jury with a special verdict form. These prophylactic options only heighten the jury's potential confusion—what are they to do with the evidence of the Sheraton's redevelopment? How and for what should it be considered? The government does

not propose a limiting instruction that the jury "can only consider this evidence for the limited purpose of…"

In sum, accepting the government's statements in the *in limine* motions, the government has a tremendous amount of evidence showing SZNW's commission of the charged crimes. Its efforts to expand their presentation to include the short-lived redevelopment of a different hotel in a different district, and the potential jury confusion that it creates, warrants its exclusion.

///

///

///

1    DATED: August 29, 2022                    RICHARD M. STEINGARD
2                                              Law Offices of Richard M. Steingard
3
4                                         By:  /s/
5                                              RICHARD M. STEINGARD
                                               Attorney for Defendant Shen Zhen
6                                              New World I, LLC
7    DATED: August 29, 2022                    TRACY L. WILKINSON
8                                              United States Attorney
9
10                                        By:  /s/
11                                             MACK JENKINS
                                               SUSAN HAR
12                                             CASSIE PALMER
                                               JAMARI BUXTON
13                                             Assistant United States Attorneys
14
15                                             Attorneys for Plaintiff
16                                             UNITED STATES OF AMERICA
17
18
19
20
21
22
23
24
25
26
27
28

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding evidence of its redevelopment of the Sheraton Universal Hotel, which is not located in Jose Huizar's district.  The First Superseding Indictment ("FSI") briefly alludes to the Sheraton Universal in Count 1, alleging RICO conspiracy against Jose Huizar and Raymond Chan, but not SZNW; it is not named or referenced in the charges against SZNW.  It is thus irrelevant to the case, which alleges a bribery scheme only in connection with the LA Grand Hotel, and its admission creates the potential for confusing the jury.

3.      Counsel for both parties have met and conferred about this motion in limine. Counsel for the government has refused to stipulate that such matter will not be mentioned or referenced.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.


_____
Richard M. Steingard

23

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: August 29, 2022          By: _____

RICHARD M. STEINGARD