Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>            Defendant. | CR-20-326(A)-JFW<br><br>**JOINT MOTION *IN LIMINE* NO. 6: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE HEARSAY STATEMENTS THAT ARE INADMISSIBLE AS CO-SCHEMER STATEMENTS; DECLARATION OF RICHARD M. STEINGARD**<br><br>Date:   September 23, 2022<br>Time:  8:00 a.m.<br>Crtrm: 7A<br><br>Trial Date: October 25, 2022<br><br>Assigned to Hon. John F. Walter |

LAW
OFFICES OF
RICHARD M.
STEINGARD

i

# <u>TABLE OF CONTENTS</u>

**Identification of Matters in Dispute** ...............................................................1

**SZNW's Motion** .................................................................................................2

I.     INTRODUCTION ..........................................................................................2

II.    ARGUMENT ..................................................................................................3
       A.    George Esparza's Cooperation and Proffer Sessions ...........................3
       B.    The Factual Basis for Esparza's Plea ...................................................5
       C.    Esparza's March 25, 2020, Interview .................................................10
       D.    Esparza's Execution of the Factual Basis...........................................11
       E.    Defense Counsels' Request for Information About
           the Conversations Between the Prosecutors and Mr. Jones ...............12

**<u>Government's Opposition</u>** .................................................................................8

I.     INTRODUCTION ..........................................................................................8

II.    FACTUAL BACKGROUND .........................................................................9
       A.    SZNW, Huang, Huizar, Chan, Esparza, and Zheng
           Participate in the L.A. Grand Hotel Bribery Scheme............................9
       B.    Evidence About the Pay-to-Play Scheme and
           the Power of Huizar.............................................................................10
       C.    Defendant's Payment of Collateral So Huizar Can
           Settle a Damaging Lawsuit..................................................................10
       D.    Defendant's Extravagant Financial Benefits to
           Huizar/Esparza.....................................................................................11
       E.    Huizar's Assistance to Defendant .......................................................12

III.   LEGAL STANDARD....................................................................................14

IV.   ARGUMENT................................................................................................16
       A.    The Government Will Establish at Trial that
           SZNW, Huang, Zheng, Chan, Huizar, and Esparza
           Participated in the L.A. Grand Hotel Bribery Scheme as
           Co-Schemers.......................................................................................16
       B.    Huizar Agreed to Perform Official Acts in Connection
           with the L.A. Grand Hotel Project.......................................................17

LAW
OFFICES OF
RICHARD M.
STEINGARD

V.    CONCLUSION ............................................................................................... 19

**SZNW's Reply** ............................................................................................ 20

**Declaration of Richard M. Steingard** ..................................................... 23

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4  *Bourjaily v. United States,*
5      483 U.S. 171 (1987)...........................................................................3, 5, 14

6  *McCutcheon v. Federal Election Com'n,*
7      572 U.S. 185 (2014).................................................................................6

8  *McDonnell v. United States,*
9      579 U.S. 550. Ct. 2355 (2016)..................................................6, 17, 19

10 *Robinson v. United States,*
11     33 F.2d 238 (9th Cir. 1929) ................................................................14, 20

12 *Sendejas v. United States,*
13     428 F.2d 1040 (9th Cir. 1970) ...............................................................15

14 *United States v. Felix,*
15     663 Fed. Appx. 557 (9th Cir. 2016)...........................................................7

16 *United States v. Garrido,*
17     713 F.3d 985 (9th Cir. 2013) ....................................................................17

18 *United States v. Graciano-Cabanilla,*
19     113 Fed. App'x 761 (9th Cir. 2003) ............................................................15

20 *United States v. Guyton,*
21     36 F.3d 655 (7th Cir. 1994) .......................................................................15

22 *United States v. Kimbrew,*
23     944 F.3d 810 (9th Cir. 2019) ....................................................................18

24 *United States v. Larson,*
25     460 F.3d 1200 (9th Cir. 2006) ..................................................................14

26 *United States v. Lloyd,*
27     807 F.3d 1128 (9th Cir. 1929) ..................................................................15
28

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Lothian,*
    976 F.2d 1257 (9th Cir. 2015) ...............................................................4, 14

*United States v. McDonnell,*
    136 S. Ct. 2355 (2016) ...............................................................................21

*United States v. Nazemian,*
    948 F.2d 522 (9th Cir. 1991) ....................................................................14

*United States v. Payne,*
    437 F.3d 540 (6th Cir. 2006) ....................................................................15

*United States v. Schmit,*
    881 F.2d 608 (9th Cir. 1989) ....................................................................15

*United States v. Silver,*
    948 F.3d 538 (2d Cir. 2020)......................................................................17

*United States v. Silverman,*
    861 F.2d 571 (9th Cir. 1988) ..................................................................3, 5

*United States v. Smith,*
    893 F.2d 1573 (9th Cir. 1990) ..................................................................15

*United States v. Valles-Valencia,*
    811 F.2d 1232 (9th Cir. 1987) ..................................................................15

*United States v. Williams,*
    989 F.2d 1061 (9th Cir. 1993) ....................................................................3

*United States v. Yarbrough,*
    852 F.2d 1522 (9th Cir. 1988) .............................................................3-4, 14

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401 ...............................................................................................7

Fed. R. Evid. 402 ...............................................................................................7

Fed. R. Evid. 801 ............................................................................... 3-5, 8, 20

LAW
OFFICES OF
RICHARD M.
STEINGARD

Fed. R. Evid. 805 ..................................................................................7

**MISCELLANEOUS AUTHORITIES**

Levie, *Hearsay and Conspiracy*, 52 Mich. L. Rev. 1159 (1954) .............................5

# **TABLE OF EXHIBITS**

| **Exhibit** | **Description** | **Page** |
|---|---|---|
| 1 | FBI 302 Report Re: Interview of George Esparza on November 13, 2018 | 9:11, 9:13, 9:18, 10:5, 10:8, 11:1, 11:20 |
| 2 | FBI 302 Report Re: Interview of George Esparza on June 6, 2019 | 9:11, 9:15, 9:16, 10:5, 12:9 |
| 3 | FBI 302 Report Re: Interview of George Esparza on January 15, 2019 | 9:14, 10:12, 11:1, 11:5, 12:7, 13:11, 13:18 |
| 4 | FBI 302 Report Re: Interview of Ricky Zheng on April 8, 2019 | 11:3 |
| 5 | FBI 302 Report Re: Interview of Ricky Zheng on February 21, 2019 | 11:28, 13:11 |

LAW OFFICES OF RICHARD M. STEINGARD

## <u>IDENTIFICATION OF MATTERS IN DISPUTE</u>

**Defendant's Position:** SZNW moves this Court for an order excluding hearsay statements absent the government making a prima facie showing that the speakers were engaged in an alleged bribery scheme involving the redevelopment of the LA Grand Hotel.

**Government's Position:** This MIL is largely redundant of MILs #1 and #4. The government will introduce ample evidence at trial showing the existence of the L.A. Grand Hotel bribery scheme involving defendant, its owner, Wei Huang, Jose Huizar, George Esparza, and others.  That evidence will include wiretap recordings, emails, text messages, and other out-of-court statements.  The government will lay a proper foundation showing these out-of-court statements were made during and in furtherance of the scheme and thus qualify as admissible co-schemer statements under Rule 801(d)(2)(E), consistent with the Court's rulings of admissibility of such statements in the Lee/940 Hill trial.

# JOINT MOTION *IN LIMINE* NO. 6
# SZNW'S MOTION TO EXCLUDE HEARSAY STATEMENTS
# THAT ARE INADMISSIBLE AS CO-SCHEMER STATEMENTS

## I.     INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding hearsay statements that the government seeks to introduce as co-schemer statements under Rule 801(d)(2)(E), Federal Rules of Evidence ("FRE").  Based on the government's witness and exhibit lists, the government seeks to admit innumerable hearsay statements by Jose Huizar, Raymond Chan, George Esparza, Ricky Zheng, and several others – including wiretap interceptions, text and email messages and electronic documents seized from computers.  Indeed, the government's case against SZNW is largely built on these hearsay statements, as well as hearsay within hearsay and the declarant's speculations and conjecture.

Like the co-conspirator exception, the co-schemer exception requires the government to establish the existence of a scheme involving the defendant and the declarant, and the declarant's statement must be made during the course of, and in furtherance of, the scheme.  In fact, the government cannot show these required prongs.

The nature and scope of the alleged co-schemer statements are far too numerous and broad to list, describe, or even summarize here.  Thus, we cannot present a "Statement of Facts" section to assist the Court in its analysis of the issue.  Rather, the Court will need to address the co-schemer exception on a witness-by-witness and statement-by-statement basis.  This *in limine* motion seeks to apprise the Court of this significant issue and require that the government make a preliminary showing of such a scheme in anticipation of SZNW's numerous objections on this basis.

//
//

## II.   ARGUMENT

Under Federal Rule of Evidence 801(d)(2)(E), a statement that would otherwise be inadmissible hearsay may be admitted if it "is offered against an opposing party" and "was made by the party's coconspirator during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).  To admit a statement under the co-conspirator exception, the government must prove by a preponderance of the evidence (1) that a conspiracy existed, (2) that it included the defendant and the declarant, (3) that the statement was made during the course of the conspiracy, and (4) that the statement was made in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  Rule 801 provides that "[t]he statement must be considered but does not by itself establish … the existence of the conspiracy or participation in it under (E)." See Fed. R. Evid. 801(d)(2)(E).  Due to its "presumptive unreliability, a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence." *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988).

"[M]ere conversations or narrative declarations between coconspirators" are not statements in furtherance of a conspiracy. *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993).  Rather, for a statement to be "in furtherance of" a conspiracy, it "must advance a common objective of the conspiracy or set in motion a transaction that is an integral part of the conspiracy." *Id.* (*citing United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988)).  The types of coconspirator statements that may be in furtherance of the conspiracy include (1) statements made to induce enlistment or further participation in the group's activities, (2) statements made to prompt further action on the part of conspirators, (3) statements made to reassure members of a conspiracy's continued existence, (4) statements made to allay a coconspirator's fears, and (5) statements made to

keep coconspirators abreast of an ongoing conspiracy's activities. *Yarbrough*, 852 F.2d at 1535-36.

Although SZNW is not charged with conspiracy, "[m]ail and wire fraud share as a common first element the existence of a scheme to defraud, which, when more than one person is involved, is analogous to a conspiracy." *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992). "Because an essential element of these offenses is a fraudulent scheme, mail and wire fraud are treated like conspiracy in several respects." *Id*. at 1262-63. "Just as acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants." *Id*.; *see also* Advisory Comm. Notes, Fed. R. Evid. 801, 1974 Enactment, Note to Subdivision 801(d)(2)(E) ("While the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for purposes of this rule event though no conspiracy has been charged.").

Whether the co-conspirator statement or co-schemer statement exception applies, however, it is clear that agency principles require at the very least a "concert of action" or "meeting of the minds" in which the parties are working toward a common goal:

> By all accounts, the exemption was based upon agency principles, the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all. See 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01] pp. 801-232 and 801-233 (1985) (Weinstein & Berger); Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv.L.Rev. 1378, 1384 (1972) (Davenport). As Judge Learned Hand explained this in a frequently quoted remark:

4

> "When men enter into an agreement for an unlawful end, they become
> ad hoc agents for one another, and have made a 'partnership in crime.'
> What one does pursuant to their common purpose, all do, and, as
> declarations may be such acts, they are competent against all." *Van
> Riper v. United States,* 13 F.2d 961, 967 (2d Cir.), cert. denied *sub
> nom. Ackerson v. United States,* 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed.
> 848 (1926).

*Bourjaily*, 483 U.S. at 188-89 (Blackmun, J., dissenting).[1]

In the present case, the government has charged SZNW with entering into a *quid pro quo* bribery arrangement with Huizar, Esparza, and Chan. Essentially, the government alleges that Huang provided financial benefits to Huizar (*e.g.*, trips on private planes, expensive hotel stays, gambling chips, a $600,000 loan, etc.) and, in exchange, Huizar provided, or agreed to provide, one or more "official acts" to unlawfully further SZNW's effort to build a 77-story tower at the LA Grand Hotel. Esparza and Chan are alleged to have facilitated the scheme. Consequently, the co-schemer exception only applies if the government establishes that Huang and Huizar *agreed* to this arrangement, that the declarant of any proffered statement was part of the scheme, and that the proffered statement was made in the course of and furtherance of that scheme. In the absence of proof of each of these elements, any such statement is inadmissible.

In fact, there is no evidence, direct or circumstantial, proving or inferring that Huang and Huizar had such an arrangement or understanding. It is undisputed that Huang conferred benefits on Huizar, but Huizar never committed, or agreed to

---

[1]    The Advisory Committee Notes to Rule 801(d)(2)(E) address the danger in applying the co-conspirator exception too broadly, and thereby explain the reason why Congress imposed the limitations here discussed—that the government must prove the existence of a conspiracy involving the defendant and the declarant and that the statement was made during the course of and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E) (1972 Adv. Comm. Note), citing Levie, *Hearsay and Conspiracy*, 52 Mich. L. Rev. 1159 (1954); *see also Silverman*, 861 F.2d at 578.

commit, an "official act" in connection with the expansion of the LA Grand Hotel. There is no evidence Huang made any improper request of Huizar in connection with the hotel,[2] or that Huizar offered improper assistance, or that Huizar took any such action, or that Huang and Huizar had such an agreement.  Absent proof beyond a reasonable doubt establishing Huizar's commission of an "official act," or an agreement to commit an "official act," the benefits Huang provided are not bribes – they are, at most, "tawdry" gifts – and SZNW cannot be convicted of bribery.  *McDonnell*, 136 S.Ct. 2375.

Indeed, the parallels to *McDonnell* are striking.  In *McDonnell*, the defense concedes that a constituent provided Governor McDonnell with a myriad of financial benefits, but there was no evidence that the Governor committed, or agreed to commit, an "official act" in exchange for the benefits.  So too here.  At most, the evidence arguably suggest that Huang provided benefits to Huizar so that he (Huang) could have "access" to Huizar and thereby make requests for Huizar's lawful assistance, such as helping with a visa application, inquiring about his son's admission status to college, and arranging meetings with union representatives. *See*, *e.g.*, *McCutcheon v. Federal Election Com'n*, 572 U.S. 185, 192 (2014) ("We have said that government regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford."); *McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016) (characterizing arranging meetings, hosting events, and helping constituents as "innocent" or "irrelevant" acts).

SZNW submits that the absence of an agreement between Huang and Huizar mandates the exclusion of a significant portion of the government's evidence and

---

[2]     In regard to the LA Grand Hotel's expansion project, Huang asked Huizar for a list of recommended land use consultants and, later, for a letter that outlined the project.  These are not "official acts."  *McDonnell v. United States*, 136 S. Ct. 2355 (2016).

is fatal to the case.  While SZNW does not expect the Court to litigate pre-trial each witness and exhibit, the Court should require the government to make a pre-trial *prima facie* case of such a scheme beyond a mere recitation of the allegations in the First Superseding Indictment.

In addition, some witnesses' statements that the government will seek to introduce are hearsay within hearsay.  Under FRE 805, such statements are only admissible "if each part of the combined statements conforms with an exception to the rule."  Because the government cannot establish a common scheme between Huang and Huizar, such statements also fall outside the scope of Rule 805 and, for that reason as well, are inadmissible.

Finally, in pretrial interviews and in some of the government's trial exhibits (*e.g.*, text and emails messages, wiretap intercepted recordings, etc.), several prospective witnesses offered speculation or conjecture about what Huang or others may have been thinking or may have understood.  These speculative statements are irrelevant and should not be admitted into evidence.  *United States v. Felix*, 663 Fed. Appx. 557, 559 (9th Cir. 2016) ("informant's subjective beliefs about Felix's purpose in showing him a gun… would have been inadmissible as speculation"); FRE 401, 402.

# GOVERNMENT'S OPPOSITION

## I.    INTRODUCTION

At trial, the government will seek to introduce wiretap recordings, emails, text messages, and other out-of-court statements relevant to the L.A. Grand Hotel bribery scheme involving defendant Shen Zhen New World I, LLC ("SZNW" or "defendant"), its owner Wei Huang, Jose Huizar, and others, that constitute admissible co-conspirator/co-schemer statements under Federal Rule of Evidence 801(d)(2)(E).  To do that, the government will lay a proper foundation showing that (1) a conspiracy/scheme existed, (2) SZNW and Huang participated in the scheme, and (3) the statement at issue was made in furtherance of the scheme.  The Court is already well-aware of these principles, having ruled in the Lee/940 Hill trial that the government established the appropriate foundation to admit a wide variety of co-schemer statements related to that bribery scheme.

Stating the obvious, defendant's motion in limine warns that the government must lay the above foundation in order to admit co-conspirator statements in the trial against SZNW.  Defendant goes on to argue that the government is incapable of doing so because, according to defendant, there is no direct or circumstantial evidence that any bribery scheme existed and because, in defendant's view, Huizar did not agree to perform any official act as part of that scheme.  This reflects a fundamental misunderstanding of the evidence, which clearly supports the existence of a bribery scheme involving Huang, SZNW, Huizar, and others, and also of the law, which does not require that the government prove a mutual agreement, even though it can here.

The Court should deny the motion.

///
///
///

## II.    FACTUAL BACKGROUND[3]

A.    <u>SZNW, Huang, Huizar, Chan, Esparza, and Zheng Participate in the</u>
<u>L.A. Grand Hotel Bribery Scheme</u>

The government will establish at trial that SZNW, Huang, Huizar, Raymond
Chan, George Esparza, and Ricky Zheng (acting as an agent for defendants SZNW
and Huang) engaged in a scheme to defraud the City of Los Angeles and its
citizens of their right to honest services through bribery, among other offenses.
Specifically, the evidence will show that in February 2013, Chan, who was then
the Interim General Manager of LADBS, introduced Huang, who owns SZNW, to
Huizar and Huizar's Special Assistant, Esparza.  (FSI Overt Act ["OA"] 1; Gov.
Ex. 1 at 2, 14; Gov. Ex. 2 at 1.)  At the time, Chan, who speaks Chinese, was
introducing Huizar to numerous affluent Chinese commercial real estate
investors/developers, like Huang, with whom Chan had connections.  (Gov. Ex. 1
at 11; Gov. Ex. 3 at 2, 4.)  Esparza will testify that his understanding was that Chan
planted the seed of Huang and Huizar going to Las Vegas together.  (<u>See</u> Gov. Ex.
2 at 2.)  Soon after, in March 2013, Huang, Zheng, Huizar, and Esparza traveled on
a private jet to Las Vegas, where Huang lavished Huizar and Esparza with various
benefits, including thousands of dollars in gambling chips.  (FSI OA 3; Gov. Ex. 1
at 2-6.)

---

[3]    The factual and legal background sections largely mirror the same sections
in the government's opposition to defendant's MIL No. 4 seeking to exclude
defendant Raymond Chan's Radar Screens because that motion significantly
overlaps with the instant one, causing various factual and legal redundancies.

B.   Evidence About The Pay-to-Play Scheme and the Power of Huizar

As the Chair of the PLUM Committee, every major development project in the City of Los Angeles passed through Huizar, meaning that Huizar could fast-track, stall, and/or torpedo projects at various steps in the extensive City approval process as he saw fit.  (See FSI ¶ 8; see Gov. Ex. 1 at 12; Gov. Ex. 2 at 1-2.)  The evidence will show that Huizar used this power to entice and extract benefits from investors/developers, often through Esparza, who interfaced with the various representatives on Huizar's behalf.  (See Gov. Ex. 1 at 12).  According to Esparza, if investors/developers did not cooperate, and "pay to play," they did not get favorable treatment from Huizar and may get adverse treatment.  (See id.)

Esparza will testify that Chan advertised the importance of Huizar and PLUM to the Chinese developers, including Huang.  (See Gov. Ex. 3 at 6.)  According to Esparza, during a dinner attended by Huang and other Chinese developer representatives, Chan explained that Huizar, as the PLUM Chairman, had the power to (1) put things on the agenda, (2) overturn rules, and (3) change ordinances.  (Id.)  Chan went on to say, "if you do not have a relationship with Jose [Huizar] your project would be at the end of the list."  (Id.)  Esparza will testify that on another occasion, Chan told Huang that Huizar was the "downtown guy," and that Chan and Huizar could do whatever Huang needed.  (Id. at 5.)  Esparza will also testify that, on yet another occasion, Chan explained to Huang: "the idea of Huizar is the investment." (Id.)

C.   Defendant's Payment of Collateral So Huizar Can Settle a Damaging Lawsuit

The evidence will show that Huang followed Chan's advice and invested in Huizar.  Between 2013 and 2014, Huizar, Chan, and Huang agreed that Huang would supply $600,000 as collateral to enable Huizar to get a loan and settle a sexual harassment lawsuit against him confidentially, so as not to jeopardize Huizar's 2015 re-election bid.  (See FSI OA 25-26, 30, 33, 35, 37, 40-43; see Gov.

Ex. 1 at 11-12; Gov. Ex. 3 at 2-3.)  Zheng will testify that he was present during a dinner meeting between Huang and Chan in which Huang and Chan discussed the need to provide the payment for Huizar.  (See Gov. Ex. 4 at 1.)  The evidence will show that the parties deliberately structured the transaction in a convoluted fashion to conceal the connection between Huang and Huizar.  (See Gov. Ex. 3 at 2-3.) Esparza will testify that Huizar said Huang could not give the $600,000 to Huizar directly because it would reveal a conflict of interest for Huang, and that Huizar and Huang wanted the payment to look clean and have no ties to Huang.  (See id. at 3.)  Esparza will testify that Zheng separately told Esparza that Huang did not want to be seen giving a gift or a bribe to Huizar.  (See id.)

> D.    Defendant's Extravagant Financial Benefits to Huizar/Esparza

In addition to the $600,000 supplied by Huang, the evidence will show that the scheme involved at least nineteen documented Las Vegas trips between 2013 and 2017 during which Huang and/or Zheng gave Huizar approximately $259,500 in gambling chips and gave Esparza approximately $38,000 in gambling chips. (FSI OA 4-22.)  Esparza will testify that, during the trips, he and Huizar occasionally rode in private jets, utilized multiple limos, regularly stayed in luxurious villas, played golf, and partied at nightclubs where the bills were regularly in the tens of thousands of dollars, all free of charge for them. (See Gov. Ex. 1 at 3-6.)  The evidence will further show that Huang, Zheng, Huizar, and Esparza traveled to Australia together in January 2016, where Huizar and Esparza received more financial benefits from Huang, including a $10,980 commercial airline ticket for Huizar, hotels, meals, alcohol, and other expenses (FSI OA 361), and that in August 2018, Huang and Huizar traveled to a golf resort in Northern California together, where Huizar again received various additional benefits from Huang.  (Id. OA 77.)

Zheng will testify that Zheng warned Huang he could not provide the $600,000 because Huizar was a government official.  (See Gov. Ex. 5 at 4.)  Zheng

will also testify that he warned Huang on multiple occasions not to invite Huizar and Esparza to Las Vegas.  (See id.)

The evidence will show that these benefits came with expectations and that each side understood their end of the bargain.  Esparza will testify that because of Huang's $600,000 payment and the money he provided Huizar during trips, there was an expectation that Huizar would be there no matter what if Huang needed something.  (See Gov. Ex. 3 at 5.)  Esparza will testify that everyone saw Huang's $600,000 payment as a long-term investment so when Huang needed something from Huizar down the road, Huizar would help.  (See Gov. Ex. 2 at 4.)  Thus, when Huang told Huizar to jump, Huizar jumped.  (See id. Ex. A-3 at 4.)

E.     Huizar's Assistance to Defendant

Huang requested a series of favors from Huizar/Esparza, including that Huizar support a visa application for a SZNW affiliate employee (FSI OA 51), that Huizar help Huang's son gain admission to USC (id. OA 52), and that Huizar help negotiate a parking dispute with landowners near the L.A. Grand Hotel (id. OA 54).  The evidence will also show that Huang/SZNW also sought Huizar's assistance in facilitating the approval of the L.A. Grand Hotel Project, which could include official acts like "(1) presenting motions and resolutions in various City committees to benefit the L.A. Grand Hotel Project; (2) voting on the L.A. Grand Hotel Project in various City committees, including the PLUM Committee, and City Council; (3) taking action in the PLUM Committee to expedite the approval process of the L.A. Grand Hotel Project; and (4) exerting pressure on other City officials to influence the approval process of the L.A. Grand Hotel Project."  (See id. ¶ 50.)

For example, Harris Chan, who served as the Managing Director of SZNW Investment U.S. for most of 2013 and oversaw the L.A. Grand Hotel and Sheraton Universal Hotel during that period, will testify that during at least one dinner he attended in 2013 with Huang, Huizar, and Raymond Chan, Huang asked Huizar

12

and Raymond Chan to support SZNW and ensure everything went smoothly with SZNW's renovations.  Huang further stated that he wanted the renovation process expedited.  In response, Huizar agreed to the request and stated that he would work with Raymond Chan to ensure it worked out.  Raymond Chan also agreed to the request by instructing Huang to provide draft permits/applications to Raymond Chan to review prior to these applications being submitted to the City.  At subsequent dinners between Huang, Huizar, Chan, and Harris, Huang provided updates on the renovations.

As another example, Esparza and Zheng will testify that Huang made it well-known he wanted to expand the L.A. Grand Hotel and build "the tallest tower in downtown and West of the Mississippi."  (See Gov. Ex. 3 at 5; see Gov. Ex. 5 at 5.)[4]  Zheng will testify that Huang was aware of Huizar's and Chan's power to help the project, and that Huang knew he needed Huizar, who chaired the PLUM Committee, in order to approve the project.  (See id. at 6.)  Esparza will testify that Huizar told Huang he would help with the project because "this tallest building would be [Huizar's] penis downtown," and that on multiple occasions Huizar said the L.A. Grand Hotel "would be the tallest thing there" and his "big dick above the city."  (See Gov. Ex. 3 at 5.)

## III.   LEGAL STANDARD

Federal Rule of Evidence 801(d)(2)(E) provides that a statement offered against an opposing party is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  To admit a co-conspirator statement for the truth of its contents against a defendant, the government must show by a preponderance that: (1) a conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in

---

[4]   Zheng will testify that Chan advised Huang to build an entirely new tower on the L.A. Grand Hotel site as opposed adding to the existing hotel.  (See id. at 6.)

furtherance of the conspiracy.  United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006); see Bourjaily v. United States, 483 U.S. 171, 175 (1987).  "Just as acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants."  United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir. 1992); see Robinson v. United States, 33 F.2d 238, 240 (9th Cir. 1929) ("[I]f a conspiracy exists in fact [as when a scheme to defraud is shared by several], the rules of evidence are the same as where a conspiracy is charged.")

To be "in furtherance," the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy.  United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988). Examples of admissible co-conspirator statements include, among other things: "statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities."  United States v. Nazemian, 948 F.2d 522, 529 (9th Cir. 1991) (citations omitted).  Likewise, "[s]tatements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)."  See United States v. Payne, 437 F.3d 540, 546 (6th Cir. 2006).  And though the statement must be in furtherance of a conspiracy, it need not be the exclusive, or even primary, purpose of the declaration.  See United States v. Guyton, 36 F.3d 655, 659 (7th Cir. 1994).

A co-conspirator statement need not be made in the presence of the defendant, or even made to another conspirator, to be admissible.  See Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-

14

conspirator."); <u>United States v. Lloyd</u>, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E)."). Nor, for that matter, must the statement be communicated to another person at all to qualify as a co-conspirator statement. <u>See, e.g.</u>, <u>United States v. Schmit</u>, 881 F.2d 608, 613 (9th Cir. 1989) ("Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated."); <u>United States v. Smith</u>, 893 F.2d 1573 (9th Cir. 1990) (calendar/drug ledger was admissible as coconspirator statement where government established that ledger was made during course and in furtherance of conspiracy, and identity of author of ledger was reasonably certain); <u>United States v. Valles-Valencia</u>, 811 F.2d 1232, 1237 (9th Cir. 1987) (same); <u>United States v. Graciano-Cabanilla</u>, 113 Fed. App'x 761, 762 (9th Cir. 2004) (pay-owe ledger seized from alleged co-conspirator was admissible as non-hearsay co-conspirator's statement).

The Court is well-aware of this authority, having ruled in the Lee/940 Hill trial that the government had established a proper foundation to admit in evidence various types of co-conspirator statements, including Esparza's iPhone notes, handwritten notes, and recordings related to the Lee/940 Hill bribery scheme. (<u>See</u> 5/13/22 Hr'g Tr. at 13-23.)

## IV.   ARGUMENT

A.   <u>The Government Will Establish at Trial that SZNW, Huang, Zheng, Chan, Huizar, and Esparza Participated in the L.A. Grand Hotel Bribery Scheme as Co-Schemers</u>

Defendant contends that there is no direct or circumstantial evidence that Huang/SZNW and Huizar engaged in a bribery scheme (<u>see</u> Mot. at 4), and thus

1    that the government cannot lay a foundation to admit co-conspirator/co-schemer

2    statements at trial.  Not so.

3          As detailed at length above, the government will present ample evidence to

4    establish a threshold bribery scheme involving Huang, Zheng, Huizar, Esparza,

5    and Chan.  That evidence will show all the components of the scheme as early as

6    2013, based on Chan's introduction of Huang and Huizar in February 2013; their

7    immediate travel to Las Vegas on Huang's dime; Huang's provision of extravagant

8    benefits to Huizar/Esparza on that trip; and Huang's 2013 ask of Huizar and Chan

9    to support SZNW and its renovations, which Huizar/Chan agreed to do.

10         Further, bolstering evidence of the scheme will be presented in the years that

11   followed.  Between 2013 and 2014, Huizar, Chan, and Huang crafted a plan for

12   Huang to provide $600,000 in collateral for Huizar to settle a sexual harassment

13   lawsuit, with Zheng and Esparza assisting to conceal the true origin of those funds.

14   Throughout 2013 to 2018, Huang/Zheng continued to shower Huizar/Esparza with

15   benefits, including paid trips to Las Vegas, Australia, and a golf resort and

16   thousands of dollars in gambling chips/money.  Within in this same timeframe,

17   Huang and SZNW, aided by Chan, began exploring the expansion of the L.A.

18   Grand Hotel and Sheraton Universal Hotel, two massive undertakings that would

19   necessarily pass through Huizar and the PLUM Committee.  Chan communicated

20   to Huang, and Huang knew, that SZNW needed Huizar to get the tallest building

21   west of the Mississippi built.  Likewise, there was an expectation that Huizar

22   would be there for Huang at all times, and would jump at Huang's request, based

23   on the various benefits Huizar had received from Huang.  According to Esparza,

24   Huizar ultimately told Huang he would help SZNW with the L.A. Grand Hotel

25   expansion project.  The government will thus lay the proper foundation to admit

26   various co-conspirator statements at trial.

27

28

B.    Huizar Agreed to Perform Official Acts in Connection with the L.A. Grand Hotel Project

Defendant argues further that Huizar "never committed, or agreed, to commit an 'official act' in connection with the expansion of the LA Grand Hotel," apparently to suggest again that no scheme existed.  (See Mot. at 4-5.)  Defendant is both legally and factually wrong.

First, the government is not required to establish such a mutual agreement between Huang/SZNW and Huizar to prove the alleged bribery scheme.  See United States v. Silver, 948 F.3d 538, 551 (2d Cir. 2020) (rejecting argument that honest services fraud requires a "meeting of the minds between the payor and the official as to the corrupt purpose of the payments"); see also United States v. Garrido, 713 F.3d 985, 996–97 (9th Cir. 2013) (defining quid pro quo for briber to mean briber's "intent to give or receive something of value in exchange for an official act") (emphasis added).

Second, even though the government need not prove that Huizar agreed to perform an official act, the evidence supports that there was, in fact, such an agreement here.  The Supreme Court defined the term "official act" in McDonnell v. United States, 579 U.S. 550 (2016) as "a decision or action on a 'question, matter, cause, suit, proceeding or controversy'" involving "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee."  Id. at 574.  An agreement to perform an official act "need not be explicit," and the public official "need not specify the means that he will use to perform his end of the bargain.  Id. at 572.

The Ninth Circuit has made clear that "the question or matter at issue need not currently be pending or capable of being brought before a public official." United States v. Kimbrew, 944 F.3d 810, 815 (9th Cir. 2019) (emphasis in original).  Rather, the Ninth Circuit has explained that an official act also

17

encompasses scenarios in which a briber anticipatorily seeks to induce official action relevant to <u>a circumstance yet-to-come</u>:

> For example, on the eve of anticipated marijuana legalization—but while its sale was still illegal—an entrepreneur might bribe an official to "reserve" his services to help obtain a future dispensary permit.  A quid pro quo of that nature remains a private inducement attached to the provision of a "formal exercise of government power," albeit a contingent one.  But a bribe tied to a contingency is no less a bribe.

<u>Id.</u> (citation omitted).

Here, the evidence will show that in exchange for financial and other benefits from Huang and SZNW, Huizar agreed to help Huang and SZNW in connection with a specific "matter" -- the L.A. Grand Hotel project -- which might involve: "(1) presenting motions and resolutions in various City committees to benefit the L.A. Grand Hotel Project; (2) voting on the L.A. Grand Hotel Project in various City committees, including the PLUM Committee, and City Council; (3) taking action in the PLUM Committee to expedite the approval process of the L.A. Grand Hotel Project; and (4) exerting pressure on other City officials to influence the approval process of the L.A. Grand Hotel Project."  (FSI ¶ 50.)  Each of these require the "formal exercise of governmental power"; thus, they are unquestionably official acts under <u>McDonnell</u>.

Critically, even for official acts, the government <u>would not be required to prove</u> that the agreement between SZNW and Huizar was explicit, nor that Huizar articulated precisely how he would help SZNW in connection with the L.A. Grand Hotel project, or even that Huizar actually intended to carry out the agreement. <u>See</u> <u>McDonnell</u>, 579 U.S. at 572.  It is more than sufficient that Huizar agreed to take unspecified official action in connection with the L.A. Grand Hotel project,

even if that project was a "circumstance yet-to-come."  See <u>Kimbrew</u>, 944 F.3d at 815.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

## SZNW'S REPLY

The government wants the best of all possible worlds: admission of hearsay statements by anyone it designates a "co-schemer" under Fed. R. Evid. 801(d)(2)(E)'s co-conspirator exception, while at the same time, claiming it need not show a conspiratorial agreement, a meeting of the minds, a concert of action, or even a common purpose between the alleged briber and bribee.

The government seems to acknowledge the basis for the co-conspirator's exception, as it cites *Robinson v. United States*, 33 F.2d 238, 240 (9th Cir. 1929) for the proposition that "if a conspiracy exists in fact [as when a scheme to defraud is shared by several], the rules of evidence are the same as where a conspiracy is charged."  Indeed, as stated in SZNW's motion, above, the co-conspirator exception is based on the theory of agency – that is, when there is a criminal agreement, the partners in crime become agents for one another, and statements and acts by any pursuant to their common purpose are admissible against all. But if, as the government asserts, honest services bribery does not require a conspiratorial agreement or a meeting of the minds, then the rationale for the co-conspirator exception – which allows the introduction of otherwise inadmissible hearsay evidence – does not exist; if no such agreement or meeting of the minds is proven, the government cannot claim the benefits of this exception to the hearsay rule.   The government also claims that it "need not prove that Huizar agreed to perform an official act," although it assures that the evidence will support an "official act."  It then skirts what the specific "official act" is, merely identifying the various manners in which Huizar *could* improperly assist any development project.  The government then dampens expectations by indicating that it need prove anything more than "a circumstance yet-to-come."  Needless to say, SZNW disagrees.  As the Supreme Court has stated, the fact that a businessman (or developer) provides an elected official with a benefit – be it loans, gambling chips, expensive cars, campaign donations, or Dodger tickets – and that the businessmen

1  (or developer) has a project in the elected official's district which the elected
2  official, in theory, *could* improperly influence, is clearly insufficient to sustain a
3  conviction. *United States v. McDonnell,* 136 S. Ct. 2355 (2016).

4      To bolster the claim that Huizar must have planned to improperly influence
5  the LA Grand Hotel development project, the government cites to a handful of
6  non-criminal favors that he performed for Huang, stretched over five years, such as
7  supporting a visa application, helping with local college admissions, and
8  negotiating a parking dispute.  The government quite correctly calls these Huang's
9  "smaller asks" of Huizar.  (ECF 619 at 7, n.7.)  As Shawn Kuk testified at the *940*
10 *Hill/Lee* trial, these are the everyday lot of city politicians.  (RT 6/17/22 at 839.)
11 They do not support, much less prove, a briber/bribee relationship.  (*See* MIL 7 to
12 exclude innocent or irrelevant acts.)

13     Perhaps because its evidence of a *quid-pro-quo* is lacking, the government
14 paints an ambitious picture of a vast pay-to-play scheme involving multiple
15 developers with SZNW lumped in as just another businessman targeted by Huizar.
16 As discussed in MIL 10, this "other schemes" evidence is unrelated to SZNW and
17 should be excluded.  The Court should not evaluate whether the government may
18 introduce purported co-schemer statements based on the conduct of other
19 developers in totally unrelated schemes.

20     In sum, SZNW's motion *in limine* asks that the Court require the
21 government to make a prima facie case of a bribery scheme, including an
22 agreement and a meeting of the minds, before admitting any co-schemer
23 statements.  Based on that which the government proffers in its opposition, it will
24 not be able to do so.
25 ///
26 ///
27 ///
28

21

1

2

3

4

5

6    DATED: August 29, 2022       RICHARD M. STEINGARD

7                             Law Offices of Richard M. Steingard

8

9                     By:  /s/

10                          RICHARD M. STEINGARD
                             Attorney for Defendant Shen Zhen

11                         New World I, LLC

12

13    DATED: August 29, 2022       TRACY L. WILKINSON
                             United States Attorney

14

15                     By:  /s/

16                          MACK JENKINS

17                         SUSAN HAR
                         CASSIE PALMER

18                         JAMARI BUXTON
                         Assistant United States Attorneys

19

20                         Attorneys for Plaintiff

21                         UNITED STATES OF AMERICA

22

23

24

25

26

27

28

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding hearsay statements absent the government making a prima facie showing that the speakers were engaged in an alleged bribery scheme involving the redevelopment of the LA Grand Hotel. Because so much of the government's case is based on alleged co-schemer statements, if those statements are deemed inadmissible, there likely would be insufficient evidence to proceed to trial.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, we were unable to agree on whether alleged co-schemer statements should be admitted at trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.


Richard M. Steingard

23

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: August 29, 2022          By: _____

RICHARD M. STEINGARD

24