Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
724 S. Spring St., 9th Fl.
Los Angeles, California 90014
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Craig Wilke (SBN 150728)
*craig@craigwilkelaw.com*
305 N. Harbor Blvd., Suite 216
Fullerton, California 92832-1901
Telephone: (714) 870-8900
Facsimile: (714) 879-2278

Attorneys for Defendant
Shen Zhen New World I, LLC

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>　　　　Defendant. | CR-20-326(A)-JFW<br><br>**DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S REPLY TO GOVERNMENT'S RESPONSE TO MEMORANDUM RE OUTSTANDING PRETRIAL ISSUES**<br><br>**Pretrial Conf: Oct. 14, 2022**<br>**Trial: Oct. 25. 2022** |

///

///

///

1

Defendant Shen Zhen New World I, LLC, by and through its counsel, Richard M. Steingard and Craig Wilke, hereby submits this reply to the government's response to the memorandum addressing various outstanding pretrial issues. (ECF 722.)

Dated: October 20, 2022                  Respectfully Submitted,

/s/
RICHARD M. STEINGARD
CRAIG WILKE
Attorneys for Defendant
SHEN ZHEN NEW WORLD I, LLC

2

# MEMORANDUM

## A. Wei Huang's Status.

In its response to SZNW's objection to evidence of Wei Huang's current presence in China, failure to appear to answer the indictment, and alleged "fugitive" status (ECF 702: 3-4), the government proffers eleven "facts" that it seeks to introduce through FBI Agent Andrew Civetti, and from Ricky Zheng. (ECF 722: 2-4.) The government argues that these "facts" and testimony tend to prove "that Huang intended to avoid arrest and prosecution by fleeing the United States shortly after the FBI executed its search warrants and for not submitting to the pending arrest warrant once the indictment was returned." (*Id.* at 3-5.) The government contends that this evidence is relevant and probative of Huang's "consciousness of guilt."

The government cannot establish the preliminary facts necessary for the proffered evidence to be relevant to Huang's knowledge of or intent to commit the underlying crimes with which he and SZNW are charged. Fed. R. Evid. 104(b). Even if the government could establish the preliminary facts on which the relevance of the proffered evidence depends, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. Fed. R. Evid. 403. Admission of the proffered evidence relating to attorney Craig Wilke's dual representation of Wei Huang and SNZW would also create a conflict of interest requiring him to withdraw from further representation of SZNW. *See* Wilke Decl. (filed under seal). In such case, SZNW would require a continuance of the October 27, 2022 trial date.

Citing as its sole authority a nearly half-century old case construing a statute of limitations tolling provision, *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1976), the government argues that Huang's return to China after believing himself to be the target of an FBI investigation for which an indictment would not

be returned for another two years and his failure to voluntarily return to the United States after being indicted tends to prove his – and SZNW's – "consciousness of guilt." The issue in *Wazney* was whether the defendant was a "person fleeing from justice" within the meaning of 18 U.S.C. 3282 which tolls the statute of limitations under such circumstances. *Id.* at 1288. The court's analysis was one of statutory interpretation and had nothing to do with whether a reasonable inference of the requisite mental state for the charged crime could be drawn from the defendant's conduct. *Id.* at 1289. The *Wazney* court held that "to establish that the accused was 'fleeing from justice' within the meaning of section 3290, the prosecution must meet the burden of proving that the accused concealed himself *with the intent to avoid arrest or prosecution*." *Id.* While the defendant's knowledge "that he was wanted by the police, coupled with his failure to submit to arrest, is enough to establish the requisite specific intent to avoid arrest or prosecution" so as to toll the statute of limitations, *id.,* the court said nothing about the defendant's "consciousness of guilt" of the crime for which he was arrested or prosecuted.

      The Ninth Circuit clearly disfavors instructing the jury that it may infer consciousness of guilt from a defendant's flight. Ninth Cir. Model Crim. Jury Instr. 3.18, comment. (2022). Case law addressing the propriety of such an instruction is instructive here. In *United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988), the Ninth Circuit stated that "[f]light instructions are valid only if there is evidence to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged." *Id.* at 581 (emphasis added) (citing *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)). This "chain of unbroken inferences" consists of the following:

> (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from

> consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id.* (quoting *Myers*, 550 F.2d at 1049). In *United States v. King*, 200 F.3d 1207 (9th Cir. 1999), the Ninth Circuit applied this same analysis to determine whether "flight evidence is probative of a defendant's guilt . . . ." *Id.* at 1215. As the offering party, the government has the burden to prove these preliminary facts. Fed. R. Evid. 104(b).

Through Agent Civetti and Ricky Zheng, the government seeks to introduce evidence of Huang's alleged flight, including but not limited to the following:

- By November 19, 2018, SZNW's owner Wei Huang knew that the FBI was investigating Jose Huizar, wanted to interview him about the investigation, and had searched Ricky Zheng's phone, (Civetti proffer ¶¶ 1-4; Zheng proffer ¶ 1);
- According to Zheng, Huang was "very concerned" and "expressed . . . that [he] was now the target," (Zheng proffer ¶ 2);[1]
- On November 20, 2018, Huang returned to China and has not returned to the United States since then despite owning a residence in San Marino, California, at which one of his adult children reside even though he had previously traveled to the United States four to eight times annually over the previous six years (Civetti proffer ¶¶ 5-8; Zheng proffer ¶ 2-3); and
- Huang has not appeared in court to answer the indictment filed on November 12, 2020, even though his attorney Craig Wilke is also an

---

[1] Despite proffering Zheng's testimony on this point, and although the date for Jencks Act statements has long since passed (ECF 635), the government has not produced any reports, memorandum, notes, recordings, or transcripts of statements by Zheng to this effect.

5

attorney for SZNW and "has been participating in SZNW's defense since at least April 2022," (Civetti proffer ¶¶ 9-11).

The government offers no argument as to how its proffered evidence supports the necessary "chain of inferences" that would make this evidence probative of Huang's consciousness of guilt for the crimes with which SZNW is now charged.

Huang and his family are Chinese citizens. Huang resides in China where he owns and operates a large, well-regarded real estate development company. He has never permanently resided in the United States, and he does not speak English. As of November 2018, he had not been charged with any crime, and had not been told that he was under investigation for any crime much less any crime with which he and his company are now charged. There is no evidence that Huang had any knowledge of the American criminal justice system, that he knew the conduct for which he is now charged was a crime, that he was aware of the requisite mental state for criminal liability, or that he otherwise consulted with counsel prior to returning to China. Given these facts, the totality of the circumstances negates the necessary inferences that Huang's return to China in November 2018 and his failure to voluntarily return to the United States after being indicted are probative of his guilt for the crimes with which SZNW is now charged. *See United States v. Castro*, 2022 WL 4448908 (D. Nev. 2022) (excluding evidence of defendant's foreign travel where defendant had legitimate business purpose for travel); *United States v. Labbad*, 2013 WL 12387558 (C.D. Cal. Mar. 18, 2013) (excluding evidence of defendant's pre-indictment foreign travel due to danger of unfair prejudice).

Even if the government's evidence established the inferences necessary for the evidence to be probative of Huang's guilt, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting

cumulative evidence. Fed. R. Evid. 403. This is a criminal trial against a corporate defendant whose owner is a Chinese citizen and resident. To counter the inferences from the government's evidence, the defense would present evidence of Huang's life, family and business in China, his ability to travel to the United States or lack thereof including the effect of the COVID-19 pandemic on his ability to travel, and potentially waive his attorney-client privilege in order to present evidence what he knew about the case and when he knew it.

Finally, admission of the proffered evidence concerning one of his attorneys' dual representation of Huang and SZNW – of which the government has been fully aware since it began and has never objected – would effectively turn the attorney's presence at trial as counsel for SZNW into evidence of SZNW's culpability, creating a conflict of interest requiring the attorney to withdraw from his representation of SZNW a week before the start of trial. (*See* Wilke Decl., filed under seal.) For all these reasons, the Court should exclude the government's proffered evidence about Huang's return to China in 2018 and his failure to return to the United States after he was indicted in 2018.

**B.  "Other Schemes" Evidence**

After the Court asked SZNW's counsel to reserve his remarks at the motions *in limine* hearing, SZNW seeks additional findings from the Court on the permissible extent of the government's "other schemes" evidence. The government resists any such instructions, preferring that they be permitted to ask George Esparza an undefined array of questions that potentially fall outside the Court's ruling, to which the defense could object on a question-by-question basis. The government's position is transparent: better to be able ask possibly inadmissible questions and have the objections sustained, knowing that the jury at least heard the questions, than be precluded from asking the questions in the first

/

place. SZNW seeks to avoid this very scenario either through more detailed instructions from the Court or a hearing outside the jury's presence.

The government also advises that it will seek to elicit "other schemes" evidence through Agent Civetti. Again, the boundaries of the government's intended questions are somewhat vague, but they apparently seek to educate the jury about Huizar's other alleged schemes, just without the developers' actual names.[2] Again, SZNW asks that the Court provide directions that the government must follow or, alternatively, hold a hearing with Agent Civetti outside the jury's presence. On an issue so significant that it supported a rarely granted severance, SZNW's requests are reasonable.

C. **Agent Civetti's Testimony at Beginning and End of the Government's Case in Chief**

SZNW objects to Agent Civetti testifying twice but is aware that the Court permitted it in the earlier trial. For the same reasons stated above, if the Court intends on permitting the agent to testify at the beginning and end of the government's case-in-chief, SZNW asks that the Court provide guidance on what is and is not admissible.

---

[2] SZNW filed it memorandum on October 10, 2022. Three days later, after defense counsel raised the issue with the government during a phone conference, the government advised that it would in fact seek to introduce Agent Civetti's testimony. (Exhibit A.) On October 16, 2022, SZNWW's counsel suggested that they confer to try to narrow the issues. (*Id.*) The government has not responded, although, in fairness, all counsel have been extremely busy with related matters.