E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal Bar. No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-1 |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT JOSÉ LUIS HUIZAR'S *EX PARTE* APPLICATION FOR ORDER TO ENFORCE TRIAL ORDER AND EXCLUDE FROM TRIAL ANY GOVERNMENT EXHIBIT NOT PRODUCED BY THE EXHIBIT DEADLINE; EXHIBITS 1-3 |
| v. | |
| JOSÉ LUIS HUIZAR, | |
| Defendant. | Hearing Date: December 16, 2022<br>Hearing Time: 8:00 AM<br>Location:    Courtroom of the<br>             Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files its opposition to defendant José Luis Huizar's Ex Parte Application

for Order to Enforce Trial Order and Exclude from Trial Any Government Exhibit Not Produced by the Exhibit Deadline, or, in the Alternative, Request for a Status Conference. (Dkt. No. 849.)

    This opposition is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 12, 2022       Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


    */s/*
MACK E. JENKINS
CASSIE D. PALMER
SUSAN S. HAR
BRIAN R. FAERSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Exhibits**

| Exhibit | Description | Cite(s) |
|---|---|---|
| 1 | Government Exhibit List (circulated Oct. 11, 2022) | Pgs. 1, 3, 6 |
| 2 | Dec. 7, 2022 Email Re: Additional Transcripts | Pg. 7 |
| 3 | June 14, 2018 Source Debrief re: Meeting with Jose Huizar (with Highlights) (Trial Ex. 242T) | Pg. 8 |
| 4 | September 14, 2017 Chiang-Chan Recorded Call Line Sheet (with Highlights) (Trial Ex. 255T) | Pg. 8 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant's application employs exaggerated claims of prejudice that rest on inaccurate and misleading characterizations that falsely impugn the government and the extensive efforts it has made to meet and exceed the requirements set forth in the Court's various orders related to the three trials in this matter.  Most importantly, it is undisputed that the government provided defendant with its fulsome exhibit list on October 11, 2022.  (Ex. 1.)  It is also undisputed that the defense does not take any issue with over 100 of the government-provided audio/video exhibit files.  And it cannot be disputed that, by December 7, 2022, the government identified for the defense the specific portions of **all but two** of the recordings (which do not even relate to defendant Huizar) that the government intends to introduce at trial in its case-in-chief through highlighted transcripts and source debriefs--more than two and a half months before trial and six weeks before the Court-ordered deadlines for the "Final Transcripts and Translations" and the Joint Pretrial Exhibit Stipulation.

Having failed to receive the requested continuance of the trial date, defendant now seeks to invent claims of prejudice where there are none.  The Court should reject defendant's latest tactic at gamesmanship and permit the government and the defense to continue doing exactly what the Court expects them to do and what the government has accomplished with prior defense counsel in the last two trials: fairly prepare for trial.

## II. RELEVANT LAW ON EXCLUSION

The Ninth Circuit has repeatedly held that the "trial court should not impose a sanction harsher than necessary to accomplish the goals of [criminal rule requiring government to disclose discovery]." United States v. Gee, 695 F.2d 1165, 1169 (9th 1983). Exclusion may be an appropriate remedy for a discovery violation where "the omission was willful and motivated by a desire to obtain a tactical advantage." Taylor v. Illinois, 484 U.S. 400, 415 (1988) (upholding trial court's exclusion of witness where defendant deliberately failed to identify witness prior to trial); see also United States v. Peters, 937 F.2d 1422, 1426 (9th Cir. 1991) (holding district court erred in excluding testimony of forensic pathologist because no willful or blatant discovery violation occurred). Where there was an omission of some sort that was not willfully done to gain a tactical advantage, the Ninth Circuit has frequently held that exclusion is too harsh a sanction. United States v. Verduzco, 373 F.3d 1022, 1033 (9th Cir. 2004) ("Exclusion of a witness as a sanction for a violation of a discovery rule in a criminal trial is generally appropriate only in cases involving willful and blatant violations." (cleaned up) (citing cases).) This is because "the severe sanction of total exclusion of the testimony was disproportionate to the alleged harm suffered[.]" United States v. Finley, 301 F.3d 1000, 1018 (9th Cir. 2002).

## III. ARGUMENT

### A. The Government Complied with the Court's Order

In compliance with the Court's order, the government provided defendants Huizar and Chan with its exhibit list on October 11,

2022.¹  (See Ex. 1.)  Contrary to defendant's claims that the government's exhibits are "disorganized," the exhibit list actually is highly organized, systematically grouping the exhibits into seven categories based on the relevant defendant or sub-scheme to mirror the FSI.  Each of the seven categories are divided into sub-categories, which identify the relevant exhibits as (A) Background, (B) Correspondence & Records, (C) Text Messages, (D) Audio Recordings & Translations, (E) Photographs & Videos, and, where applicable, additional miscellaneous sub-categories.  (See id.)

As most relevant to this motion, the government provided the audio/video files in two forms: either (1) fully clipped and synced audio/video files (which had been prepared by the time of trials in Lee/940 Hill and SZNW), or (2) complete recordings of calls, meetings, or interviews from which the government intends to play all or portions of during its case-in-chief.  During pretrial litigation in the SZNW matter, counsel for SZNW complained of prejudice based on exhibits that the government had inadvertently omitted from its exhibit list by the disclosure deadline.  (See Dkt. No. 621.)  To avoid a similar claim of unfair surprise in the RICO trial, the

---

¹ This was true notwithstanding that the government team was contending with multiple time-sensitive deadlines, including the fact that the trial in Shen Zhen New World I, LLC was scheduled to begin approximately two and a half weeks later and various productions to the Court and SZNW counsel were due that very same day and week.

Per the request of defendant Huizar's counsel to provide the exhibits on a hard drive, the government provided all exhibits soon thereafter on the defense-provided hard drive.  Defendant does not take issue with the timing of the delivery of the exhibits.

3

government worked diligently to identify, and included, the comprehensive universe of the relevant recordings.[2]

In a thinly veiled attempt to divert the government's time, attention, and resources away from the actual merits of the case, defendant brings an application to preclude the government from introducing exhibits **that were indisputably all disclosed on the October 11 exhibit list**. Despite this fulsome disclosure, defendant complains that the government did not provide the recordings in "final" or "trial ready" form. (Mot. at 1.) Compounding the frivolousness of the claim, as explained below, defendant's application also rests on numerous misleading and incorrect characterizations to bolster his meritless claim of prejudice.

**B. Defendant's Application Is Riddled with Misleading and False Characterizations to Exaggerate His Unfounded Claim of Prejudice**

As a general matter, defendant seems to suggest that he is at a total loss regarding the evidentiary value of approximately "52 hours" of government-identified recordings because of a complete lack of context, transcripts, and translations. Defendant's claim is, at best, exaggerated and, at worst, demonstrably untrue.

*Defendant Misleadingly Claims That Producing Full Files for 52 Hours of Recordings Is "As Good As Not Producing Exhibits at All"*

---

[2] Of course, despite the government's diligent efforts, the government likely will seek to add additional recordings or clips if, for example, a recording or excerpt was inadvertently overlooked or later comes to the government's attention during witness preparation. Should those instances arise, the government will promptly bring the supplemental exhibit(s) to the defense's attention and explain their relevance and why they were not disclosed earlier. Further, if necessary, after a meaningful meet and confer, the government will raise the issue with the Court if the defense objects to the inclusion of the recording on the exhibit list.

As best as the government can make out, defendant's primary complaint seems to be with the "52 hours" of complete recordings catalogued in defense's Exhibits J, K, and L.[3] Defendant makes the remarkable claim that providing the exhibits "in that form was as good as not producing exhibits at all." (Mot. at 4.)

The hyperbole of defendant's claims is self-evident, given the vast universe of discovery in this case. Even in the parties' most recent stipulation to the Court seeking to continue the trial, defendant explained that the complete discovery in this case consists of over 93,000 files of intercepted wire sessions, as well as over 260 hours of audio recordings. (Dkt. No. 831 at 6.) Those intercepted calls and recordings do not even include the hundreds of hours of video footage, including from the casino surveillance footage and authorized CCTV interception.

Of those tens of thousands of audio/visual files, the government culled down the universe of recordings to fewer than 200 files for purposes of the trial exhibit list. The point of the exhibit list disclosure deadline was to narrow drastically the otherwise incredibly voluminous discovery in this case, and the government did exactly that when it identified less than 200 recordings as exhibits, or less than 0.2% of the audio-visual recordings in discovery. And the government followed this same resource-intensive process related to the recordings in the last two trials with no issues raised by any

---

[3] Defendant's application identifies "71" recordings totaling 52 hours, 37 minutes and 24 seconds. (Mot. at 1.) But Exhibits J, K, and L collectively comprise 73 files with a slightly different recording time. In any event, adopting defendant's calculation, the defense does not take any issue with 105 of the government-provided audio/video exhibit files. (Mot. at 1. (implicitly conceding that of the 176 audio/video recordings, only 71 of them, or less than half, were "complete and unedited recordings").)

5

of those counsel who were able to fairly prepare for and present their defenses.

***Defendant Misleadingly Claims He Would Need to "Simply Speculate" Over the Relevance of 52 Hours of Recordings***

Next, defendant claims that he is left to "simply speculate" (Mot. at 2) or "simply guess what part of those hours-long recordings the government intended to use at trial and could not raise specific objections" during the meet and confer (Mot. at 4). Not so.

Defense counsel, who have been on this case for nearly two and a half years,[4] conveniently ignore the fact that the 139-page "speaking" FSI (Dkt. No. 74), which was filed on November 12, 2020, <u>details specific recorded telephone calls and meetings by date, participants, subject matter, and even specific quoted language</u>. The exhibit list, which is organized to mirror the FSI, clearly delineates those same recordings relating to the (1) CD-14 Enterprise & Huizar, (2) Raymond Chan, (3) Shen Zhen New World, (4) 940 Hill, (5) Hazens, (6) Carmel Partners, and (7) Businessperson A. (Ex. 1.)

Counsel also omits that, early this year, the government expended tremendous time and energy to provide a detailed index cataloguing the specific discovery that supports each of the numerous overt acts and counts in the FSI--including by matching the applicable overt act to the supporting wire call with the specific session number or to the specific recording with the 1D FBI number (the "Annotated FSI Index"). The government included the same session numbers or 1D FBI numbers in the descriptions of its exhibit list. Despite that, many of the recordings about which defendant now

---

[4] Specifically, Carel Alé and Charles Snyder were appointed as counsel of record in July 2020. (Dkt. No. 31 [7/24/2020 Order Conditionally Appointing Counsel for Defendant].)

tells this Court he is only able to "speculate" as to their import were specifically identified in the Annotated FSI Index.

Notwithstanding that the government repeatedly reminded the defense that it had all the foregoing facts and resources, the defense continues to misleadingly suggest that it is completely in the dark and must "simply speculate" about the purpose of the recording exhibits. Counsel was amply equipped long before the November 29 meet-and-confer to apprehend and assess the relevance of the recordings on the exhibit list and to come prepared to raise specific objections.

As of the date of this filing, defendant's claim is even less meritorious now because the government has provided transcripts (either in the form of line sheets or more "final" versions) and source debriefs[5] with highlights of the specific portions of the recordings (consisting of the 52 hours, including the foreign language portions) about which defendant complains, save the two recordings unrelated to Huizar.[6] (See Ex. 2.) Some of those highlighted transcripts, which were provided on a rolling basis, were provided as early as November 11. (See Mot. at 3.) Defendant is thus able to identify any additional portions he wishes to include

---

[5] A source debrief is a detailed report in which the source provides a near-contemporaneous explanation to the FBI of the most notable portions of the just-recorded meeting.

[6] The remaining two recordings are of defendant Chan's interviews with the FBI (Exhibits 226 and 227), which do not directly relate to defendant Huizar (that is, the government is introducing those recordings against defendant Chan for their lies, not their truth). Moreover, once again, the most salient parts of those interviews – the false statements - are described in the FSI. (FSI OA 452, pp. 100; ¶ 63 (Count Thirty-Nine).)

True to its word, the government provided all the highlighted transcripts on a rolling basis and long before the January 20 deadline.

7

based on the Rule of Completeness so that the parties can further meet and confer, and so that the government can decide whether it will agree to expand (or shorten) the selected excerpts. That is all part of normal process before the government can prepare <u>final</u> transcripts and <u>final</u> translations before the Court-ordered deadline for "Final Transcripts and Translations" on January 20, 2023. And it is the same process the government has successfully completed without issue with defense counsel for the last two trials.[7]

***Defendant Falsely Claims the Government Has Not Produced Transcripts of "Any Kind" for Approximately 52 Hours of Recordings***

Furthering his quest to manufacture prejudice, defendant contends that the government "has not produced transcripts of any kind" for the 52 hours of recordings relating to Businessperson A. (Mot. at 4.) Again, this is demonstrably false.

As the government repeatedly has pointed out to the defense, defendant has all the line sheets in discovery for the wiretapped recordings, <u>which have fulsome transcriptions of the parts pertinent to the investigation</u>, which are the only parts the government would use as exhibits for trial. (<u>See, e.g.</u>, Ex. 4.) For the recorded source meetings, defendant similarly has detailed debriefs describing the meeting and, often, the specific back-and-forth dialogue of the meeting. (<u>See, e.g.</u>, Ex. 3.) And the government already provided in

---

[7] Specifically, for the Lee/940 Hill and SZNW trials, the government first identified by the exhibit list deadline the full recordings from which the ultimate exhibit would later be excerpted. By the transcripts/translation deadline, the government identified the selected excerpt(s) and provided its proposed transcript and/or translation. And it was not until sometime much closer to trial that the government prepared and provided the "trial ready" recording exhibit in the form of a clipped recording with a synced, rolling transcript with photographs of the speakers.

8

discovery long ago transcripts of Chan's FBI interviews. Put simply, the government has provided some form of a transcript for every single recording about which defendant now complains he has none "of any kind".

***Defendant Falsely Claims That the "Majority" of the 52 Hours of Recordings Are in a Foreign Language***

Finally, defendant falsely claims that that the "majority" of the 52 hours of recordings are in a foreign language. (Mot. at 1, 4.) By the government's count, there are less than 7 hours of audio in the recordings that consist of dialogue in a foreign language, which, again, is extensively described in English in the source debriefs. Thirteen percent of 52 hours is not close to a "majority."

**C. There Is No Prejudice to the Defense**

As explained above, defendant catastrophizes his claim of prejudice. Much of defendant's efforts seem aimed at setting the fictitious groundwork to request another trial continuance after this Court denied the parties' latest request. (See Dkt. No. 838.) Nothing in defendant's application can credibly challenge the fact that defendant has the time and resources to review the provided exhibits and transcripts, as clearly aided by the Annotated FSI and detailed speaking indictment. Moreover, defendant will have had the highlights of the portions of all recordings the government intends to admit, save two, for nearly two and a half months before trial. Defendant's claims to the contrary are meritless and do not demonstrate any manner of prejudice. Conversely, there will be substantial and unfair prejudice to the government should the Court exclude dozens of its recordings from trial--all of which were long ago produced in discovery and were disclosed on the exhibit list by

9

October 11, and many of which have been described in detail in the FSI and the Annotated FSI Index.  Defendant's request here is unsupported by law, is based on misleading and false claims, and should be rejected.

**IV.  CONCLUSION**

For the foregoing reasons, defendant's request for relief should be denied.