E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal Bar. No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>JOSE LUIS HUIZAR,<br>RAYMOND SHE WAH CHAN,<br>  aka "She Wah Kwong," et al.,<br><br>           Defendants. | No. CR 2:20-326(A)-JFW-1,2<br><br>GOVERNMENT'S OFFER OF PROOF REGARDING JOINT MOTION *IN LIMINE* NO. 6; EXHIBITS<br><br>Trial Date:  February 21, 2023<br>Trial Time:  8:00 AM<br>Location:    Courtroom of the<br>             Hon. of the Hon.<br>             John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby submits this Offer of Proof Regarding Joint Motion in Limine No. 6

(Dkt. No. 886) pursuant to the Court's Order dated January 11, 2023 (Dkt. No. 903).

    This Offer of Proof is based on the below brief and supporting exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 13, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____
MACK E. JENKINS
CASSIE D. PALMER
SUSAN S. HAR
BRIAN R. FAERSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**TABLE OF EXHIBITS**[1]

| Trial Ex. # | Title | Author | Date | Bates Number | Witness |
|---|---|---|---|---|---|
| Ex. 2 | Jose HUIZAR Oaths of Office (2005-2015) | Defendant HUIZAR | 2005-2015 | N/A | Civetti |
| Ex. 5 | City of Los Angeles Code of Ethics | City Council | Updated 7/05 | N/A | Civetti; Keller; Ovrom |
| Ex. 6 | Los Angeles City Ethics Commission - Revolving Door Brochure | LA City Ethics Commission | N/A | N/A | Civetti; Ovrom |
| Ex. 7A | HUIZAR Form 700 (2013) | Defendant HUIZAR | 6/9/2014 | Casino_2050745-2050754 | Civetti |
| Ex. 7B | HUIZAR Form 700 (2014) | Defendant HUIZAR | 4/1/2015 | Casino_2050755-2050758 | Civetti; Alvarez |
| Ex. 7C | HUIZAR Form 700 (2015) | Defendant HUIZAR | 3/30/2016 | Casino_2050759-2050762 | Civetti; Alvarez |
| Ex. 7D | HUIZAR Form 700 (2016) | Defendant HUIZAR | 4/3/2017 | Casino_2050763-2050766 | Civetti |
| Ex. 7E | HUIZAR Form 700 (2017) | Defendant HUIZAR | 4/2/2018 | Casino_2050767-2050770 | Civetti |
| Ex. 7F | HUIZAR Form 700 (2018) | Defendant HUIZAR | 4/2/2019 | Casino_2050771-2050774 | Civetti |
| Ex. 201 | Raymond CHAN Oath of Office (2014) | Defendant CHAN | 2014 | N/A | Civetti |
| Ex. 203A | CHAN Form 700 (2013) | Defendant CHAN | 4/1/2014 | Casino_0724667-0724668 | Civetti |
| Ex. 203B | CHAN Form 700 (2014) | Defendant CHAN | 3/13/2015 | Casino_0724673 | Civetti |
| Ex. 203C | CHAN Form 700 (2015) | Defendant CHAN | 3/31/2016 | Casino_0724680 | Civetti |

---

[1] As part of its ongoing trial preparations, the government realized it had not received each of the Form 700s for the relevant years from the City, and that certain of the forms contained redactions.  On January 12, 2023, the government made a subsequent request to the City to complete these exhibits and will provide them to the defense upon receipt.

1

| Ex. 203D | CHAN Form 700 (2016) | Defendant CHAN | 3/30/2017 | Casino_0724681 | Civetti |
|---|---|---|---|---|---|
| Ex. 204A | CHAN Form 60 (2013) | Defendant CHAN | 4/8/2014 | Casino_0724669-0724670 | Civetti |
| Ex. 204B | CHAN Form 60 (2014) | Defendant CHAN | 3/13/2015 | Casino_0724674-0724675 | Civetti |
| Ex. 204C | CHAN Form 60 (2015) | Defendant CHAN | 3/31/2016 | Casino_0724679 | Civetti |

**OFFER OF PROOF**

**I. OVERVIEW**

Pursuant to the Court's Order, the government files this Offer of Proof regarding JMIL No. 6, in which defendant Jose Huizar seeks to exclude "improper expert opinion re: ethics of Jessica Levinson." As described in its opposition, in lieu of providing extensive expert testimony, the government presently seeks to introduce only limited lay testimony and supporting records relating to the ethics requirements, which are directly relevant to facts of consequence at the trial: defendants Huizar's and Chan's violation of their fiduciary duties to the City and their corrupt intents, concealment of the pay-to-play scheme, and defendant Huizar's tax evasion count. This limited testimony will be presented separately through witnesses who, due to their respective roles, each have distinct personal experiences and/or understandings of the relevant ethics rules.

**II. SUPPORTING TESTIMONY AND RECORDS**

The government anticipates that the following witnesses will testify about the relevant ethics rules and records, none of which are reasonably in dispute:

**1. FBI Special Agent Andrew Civetti.** Similar to his testimony in the Lee/940 Hill and SZNW trials, Agent Civetti will introduce the City Code of Ethics (Trial Ex. 5) and defendants Huizar's and Chan's Oaths of Office (Trial Exs. 2, 201), which confirm their express understanding of, and agreement to abide by, the City Code of Ethics. Agent Civetti will also introduce the Los Angeles City Ethics Commission Revolving Door pamphlet, which explains, among other topics, the revolving door bans and rules regarding the negotiation of future employment (Trial Ex. 6), and,

3

like the City Code of Ethics, is available through the official government website for the Los Angeles City Ethics Commission. As alleged in the FSI, to prevent former City officials from exercising or appearing to exercise improper influence over City decisions, the Los Angeles Municipal Code contained both temporary and permanent "revolving door" restrictions. (FSI ¶ 7.) The restrictions imposed a lifetime ban on receiving compensation to attempt to influence City action on a specific matter in which the City official personally and substantially participated in during their City service, either personally or through an agent. (Id.) The restrictions also imposed a one-year ban, or "cooling-off" period, during which the City official was prohibited from attempting to influence action, either personally or through an agent, on a matter pending before any City agency for compensation. (Id.)

This testimony and evidence are relevant because they set forth the ethics rules applicable to public officials like defendants Huizar and Chan and restrict conflicts of interest, the acceptance of favors and gratuities, and the use of city employment for private gain. Two elements of the honest services wire fraud counts are that (1) defendant owed a fiduciary duty to the City of Los Angeles or its citizens, and (2) defendant acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right to honest services. This evidence and testimony are therefore relevant to both these elements and is admissible for the jury to consider as part of its determination as to whether defendants Huizar/Chan had such a fiduciary duty; what the contours of that fiduciary duty entailed; whether their relationship with various developers and their proxies deprived the City of Los Angeles and its citizens of

4

their right to honest services; and/or whether defendants Huizar/Chan had the requisite corrupt intent. Even if such ethics violations were not, standing alone, violations of any specific federal law, they are relevant and probative evidence of the defendants' willingness and intent to ignore City rules in order to enrich themselves.

Agent Civetti will admit defendants Huizar's and Chan's Form 700 and Form 60 disclosures from 2013 to 2018 (Trial Exs. 7A-7F), which were obtained via production from the City of Los Angeles and/or from official government websites for the California Fair Political Practices Commission and the Los Angeles City Ethics Commission. As alleged in the FSI, under the California Political Reform Act, every elected official and public employee who made or influenced governmental decisions was required to submit a Statement of Economic Interest, also known as the Form 700, annually. (FSI ¶ 6.) Agent Civetti will generally testify, based on his investigation in this case and from information obtained from publicly available government websites, about the requirements to submit the Forms 700 and 60; the purpose of the Forms 700 and 60 to ensure transparency and accountability; and the attendant financial disclosure obligations.

As part of the alleged RICO conspiracy, in order to conceal their scheme, members and associates of the enterprise intentionally failed to disclose illicit payments and benefits received on Forms 700. (FSI ¶¶ 42.d, 45.c.) Defendant Huizar is specifically alleged to have concealed the many financial benefits he received through the pay-to-play scheme by not reporting those benefits on his Forms 700. (FSI ¶ 43, OAs 437-444.) The FSI also alleges as part of Count 41 that defendant Huizar attempted to evade or defeat taxes by

5

intentionally omitting from his Form 700 income and financial benefits that he accepted in the 2017 calendar year. (FSI ¶ 65.) The testimony and evidence relating to defendants Huizar's and Chan's public financial disclosures is therefore relevant because they pertain to their (and other co-conspirators like George Esparza's) corrupt intent, acts of concealment of the pay-to-play scheme, and to defendant Huizar's tax evasion count.

**2. George Esparza.** Just as he did in the prior Lee/940 Hill and SZNW trials, Esparza will testify that, as a public official, he had a duty to serve the constituents of Council District 14. Esparza will testify that he understood he was bound by City ethics rules, including that he was prohibited from engaging in a transaction that presented a conflict of interest and prohibited from accepting money for favors or acts in the course of his duties. Esparza will also testify that he had a duty to fill out Form 700s disclosing benefits or gifts he received. Consistent with Esparza's factual basis in his plea agreement, he will testify that he intentionally failed to report any of the financial benefits he received from Wei Huang, David Lee, Justin Kim, or Businessperson A as gifts on his applicable Form 700s.

This testimony is relevant to the fiduciary duty-related elements for the honest services counts against defendants Huizar and Chan, as well as to explain the need to conceal financial benefits solicited and received by public officials as part of the shared RICO scheme.

**3. Kevin Keller.** The government anticipates that Keller will testify that, consistent with the Revolving Door pamphlet (Trial Ex. 6), a City official cannot, while holding a City position, negotiate

6

their next position with a developer who has pending work before the official because that would create a conflict of interest.  The government expects Keller will testify that there are City ethics rules that prohibit such behavior, including prohibiting an official from striking an agreement with a developer to be paid after the official leaves the City.  Keller will also testify that based on his personal experience as a City official for over 20 years, City officials receive ethics training, are required to complete Form 700s, and that there is a one-year cooling off period during which time departed City officials are prohibited from working on anything with the City.

This testimony is relevant to the fiduciary duty-related elements for the honest services counts against defendants Huizar and Chan, as well as to explain the need to conceal financial benefits as part of the shared RICO scheme.  The testimony is also relevant to defendant Chan's corrupt intent and provides context for defendant Chan's conduct, including negotiating his deal with George Chiang to be paid consulting fees while defendant Chan was still with the City in exchange for his official acts to benefit the Luxe Hotel Project (FSI ¶ 43, OA 194), acting as Hazens' shadow consultant from within the City to benefit the Luxe Hotel Project (FSI ¶ 43, OA 195-205), then immediately but surreptitiously continuing his work for Hazens upon leaving the City, in violation of City ethics rules (FSI ¶ 43, OA 206).

**4.  Bud Ovrom.**  Ovrom is the former General Manager of the Los Angeles Department of Building and Safety and former Deputy Mayor of Economic Development--the exact two City positions defendant CHAN held during the time of much of the conduct alleged in this case.

7

The government expects that Ovrom will testify that that, per the City ethics rules, officials are precluded from working on all City matters for a year or two after leaving the City. In addition, Ovrom will testify that there is a lifetime ban for working on matters that an official "directly" worked on during their time with the City.

This testimony is relevant to the fiduciary duty-related elements for the honest services counts against defendants Huizar and Chan. This testimony is also relevant to defendant Chan's corrupt intent and providing context for defendant Chan's conduct, including negotiating a deal with George Chiang to be paid consulting fees while defendant Chan was still with the City in exchange for his official acts to benefit the Luxe Hotel Project (FSI ¶ 43, OA 194), acting as Hazens' shadow consultant from within the City to benefit the Luxe Hotel Project (FSI ¶ 43, OA 195-205), then immediately but surreptitiously continuing his work for Hazens upon leaving the City, in violation of City ethics rules (FSI ¶ 43, OA 206).

**5. Mayra Alvarez.** In 2015, Alvarez was the Special Assistant to the Special Assistant before her position changed to the Executive Assistant and Scheduler for defendant Huizar. Alvarez will testify that she personally drafted defendant Huizar's Form 700 disclosures. Alvarez will testify that, as part of accurately completing these disclosures, she was responsible for logging all gifts received by defendant Huizar's office and that there were certain rules regarding gifts; for example, a "gift" included anything above $50; gifts from an individual source could not cumulatively exceed $400 per year; and an official could not receive more than $100 of gifts per year from restricted sources, which included anyone with business with the City. In on order to fulfill this responsibility, Alvarez maintained

8

a Google spreadsheet that categorized the gifts and documented the amount, source, and date.  Alvarez will further explain that many of the events or gifts that she logged and inputted into the Form 700 were <u>over</u> the monetary limit and that defendant Huizar would edit or remove those items before the Form 700 was submitted.

As part of the alleged RICO conspiracy, in order to conceal their scheme, members and associates of the enterprise intentionally failed to disclose illicit payments and benefits received on Forms 700.  (FSI ¶¶ 42.d, 45.c.)  Defendant Huizar is specifically alleged to have concealed the many financial benefits he received through the pay-to-play scheme by failing to report those benefits on his Forms 700.  (FSI ¶ 43, OAs 437-444.)  The FSI also alleges as part of Count 41 that defendant Huizar attempted to evade or defeat taxes by intentionally omitting from his Form 700 income and financial benefits that he accepted in the 2017 calendar year.  (FSI ¶ 65.)  The testimony and evidence relating to defendant Huizar's Form 700 is therefore relevant because they pertain to defendant Huizar's corrupt intent, his acts of concealment of the pay-to-play scheme, and to his tax evasion count.