E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT RAYMOND CHAN'S *EX PARTE* APPLICATION TO MODIFY CONDITIONS OF RELEASE; EXHIBITS |
| v. | |
| RAYMOND SHE WAH CHAN, aka "She Wah Kwong," | Hearing Date: N/A |
| Defendant. | Hearing Time: N/A |
| | Location:     N/A |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files its opposition to defendant Raymond Chan's Ex Parte Motion to Allow Defendant Raymond Chan to Discuss the Case with His Son Jeremy Chan and to Allow Jeremy Chan to Participate in the Preparation of the Defense (Dkt. No. 919).

The government's opposition is based upon the attached memorandum of points and authorities and the exhibits attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 30, 2023             Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

___/s/_____
BRIAN R. FAERSTEIN
MACK E. JENKINS
CASSIE D. PALMER
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................ii

TABLE OF EXHIBITS....................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION.....................................................1

II.   RELEVANT BACKGROUND..............................................2

     A.    Defendant's Initial Appearance and Bond Conditions........2

     B.    Relevant Allegations and Evidence Bearing on
           Defendant's No-Contact Bond Condition.....................3

     C.    Defendant's Contravention of His No-Contact Bond
           Condition and Belated Request to Modify His Bond..........6

III. ARGUMENT.........................................................8

     A.    The Court Should Not Modify Defendant's Bar on
           Contacting Witnesses Besides Jeremy Chan..................8

     B.    The Court Should Not Modify Defendant's Bar on
           Discussing the Case with Jeremy Chan.....................10

     C.    The Court Should Bar Jeremy Chan from Participating on
           the Legal Defense Team...................................11

IV.   CONCLUSION......................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Holloway v. Arkansas,
  435 U.S. 475 (1978) ............................................. 13

Mannhalt v. Reed,
  847 F.2d 576 (9th Cir. 1988) ............................... 12, 13

Sanders v. Ratelle,
  21 F.3d 1446 (9th Cir. 1994) ................................... 13

United States v. Magana,
  127 F.3d 1 (1st Cir. 1997) ..................................... 14

United States v. Pritchard,
  781 F.2d 179 (10th Cir. 1986) .................................. 14

Wheat v. United States,
  486 U.S. 153 (1988) ........................................ 11, 12

**Statutes**

18 U.S.C. § 1962(d) ................................................. 3

**Other Authorities**

Rules of Prof'l Conduct R. 3.17 (2018) ............................ 12

**TABLE OF EXHIBITS**

| Exhibit | Description | Cite |
|---|---|---|
| A | Email from Raymond Chan to George Chiang and Jeremy Chan with attached "People Who Influence the Project" chart on January 2, 2017 (redacted) | P. 5:10-13 |
| B | Group text message exchange between Raymond Chan, George Chiang, and Jeremy Chan on January 16, 2017 (redacted) | P. 5:13-15 |
| C | Text message exchange between Raymond Chan and Jeremy Chan on September 14, 2017 (redacted) | P. 5:15-20 |
| D | Compilation of selected checks from Synergy Alliance Advisors to Jeremy Chan and Raymond Chan (redacted) | P. 5:20 – 6:2 |
| E | FBI notes (highlighted) of 1/24/23 meeting with Yan Yan | P. 7:1-10 9:1-4 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

More than two years after defendant Raymond Chan agreed to conditions of pretrial release prohibiting his contact with any known witnesses and, specifically, with respect to his son, Jeremy Chan, any discussion of the case, defendant now belatedly and urgently moves to modify these conditions after having contravened them, apparently on a repeated basis.  In his ex parte motion to modify the conditions of his bond (the "motion" or "Mot."), defendant seeks the Court's permission to continue to contact witnesses for scheduling purposes personally, discuss the case with Jeremy Chan, and enable Jeremy Chan's conflicted role on defendant's legal defense team.[1] (Dkt. No. 919.)

However, the Court's bar on defendant's contacts with witnesses, including case-specific discussions with Jeremy Chan, is as necessary now as it was at the outset of the case -- and likely more so given defendant's admitted history of violating the no-contact bond conditions and with trial just weeks away.  The allegations and evidence in this case, including defendant's alleged efforts to obstruct and influence other officials and witnesses, warrants the continued bar on his contact with witnesses for any purpose.

Additionally, the restrictions on defendant's contacts with Jeremy Chan are especially critical, given Jeremy Chan's involvement in the Luxe Hotel project bribery scheme (including his receipt of

---

[1] Defense counsel did not contact the government to advise on the substance of the proposed ex parte application or to solicit the government's position on the application prior to its submission, as required by Local Rule 7-19.1.  Government counsel subsequently alerted defendant's counsel of this failing and requested it be corrected going forward.

thousands of dollars in payment) and his potential testimony regarding those events at trial.  Defendant's request that Jeremy Chan be permitted to participate in the preparation of the defense further presents a risk of an actual conflict of interest, regardless of whether Jeremy Chan serves as trial counsel or is part of the legal defense team that prepares the defense case for trial.  In short, Jeremy Chan should not be permitted to substantively discuss the case with defendant or any other witness, and he should not be permitted to continue to act in a role (including as legal counsel) other than strictly as a percipient witness.

**II.  RELEVANT BACKGROUND**

   **A.  Defendant's Initial Appearance and Bond Conditions**

On November 12, 2020, defendant was charged in the First Superseding Indictment ("FSI") with RICO conspiracy, seven counts of honest services wire fraud, three counts of federal program bribery, and one count of making false statements to the FBI.  (Dkt. No. 74.)

Defendant made his initial appearance on December 1, 2020, and was released on a $150,000 appearance bond, with his wife as surety.  (Dkt. Nos. 100, 104.)  Defendant's bail conditions included a condition routinely imposed in this District to avoid actual or the perception of witness tampering, namely, that defendant "[a]void all contact, directly or indirectly (including by any electronic means), with any person who is a known victim or witness in the subject investigation or prosecution."  (Dkt. 100.)  As to contact with Jeremy Chan (a known witness), defendant's conditions of release contemplated that defendant could communicate with him, but specifically prohibited any discussion of the criminal case:  "No discussion of pending action."  (Id.)  Defendant initialed all pages

and signed the last page of the bond form. (Id.) Defendant was represented during his initial appearance and arraignment by Harland Braun, who has continuously represented defendant up to the date of this filing.[2] (Dkt. Nos. 97, 100.)

### B. Relevant Allegations and Evidence Bearing on Defendant's No-Contact Bond Condition

The FSI includes numerous allegations, supported by evidence the government will present at trial, regarding defendant's efforts to improperly influence others and obstruct the government's investigation. The FSI's allegations and supporting evidence further demonstrate Jeremy Chan's involvement in defendant's underlying alleged criminal conduct.

With respect to defendant, the FSI alleges that, following the execution of search warrants, defendant prepared a "script" for Businessperson A to follow if approached by authorities, containing defendant's misleading version of events about an attempted bribery scheme defendant had orchestrated. (FSI Count One, Overt Acts (OA) 450-51.) Defendant also allegedly informed George Chiang ("Chiang") about an interview request defendant received from the FBI moments after telling the FBI he would not disclose it to anyone.[3] (Id., OA 435.) When defendant ultimately did speak with the FBI, defendant allegedly made materially false statements regarding several key aspects of the charged RICO conspiracy. (Id., OA 452; FSI Count 39.)

---

[2] As of September 2, 2022, Brendan Joseph Pratt, an active member of the California State Bar and associate at Mr. Braun's law firm, Braun & Braun LLP, also represents defendant. (Dkt. No. 664.)

[3] Chiang has pled guilty to RICO conspiracy, in violation of 18 U.S.C. § 1962(d), arising out of the same core conduct alleged against defendant Chan in the FSI. (See Case No. CR 20-203-JFW, Dkt. Nos. 1, 7, 29.)

3

The FSI also alleges other acts defendant improperly took to influence the statements and actions of public officials. For example, the FSI alleges that defendant, in his capacity as the Interim General Manager of the Los Angeles Department of Building and Safety ("LADBS"), covertly sent his codefendant, then-City Councilmember José Huizar, "talking points" and, separately, a draft motion to advance defendant's objective of stopping the consolidation of the Planning Department and LADBS in order to preserve his leadership position at LADBS. (FSI Count One, OAs 23-24, 27-28.) On another occasion, defendant, in his capacity as Deputy Mayor, allegedly exerted pressure over a Mayor-appointed public official to approve the Luxe Hotel redevelopment project. (Id., OA 202.)

With respect to Jeremy Chan, whom the FSI identifies as "CHAN Relative 1," the FSI alleges that he worked closely with defendant, Chiang, Chiang and defendant's company Synergy Alliance Advisors ("Synergy"), and others to advance the objectives of the Luxe Hotel bribery scheme. Among other things, the FSI alleges that defendant, Chiang, and Jeremy Chan coordinated a plan for Synergy to take control of the approval process for the Luxe Hotel redevelopment project submitted by Hazens Real Estate Group ("Hazens"), with defendant using his position as Deputy Mayor to exert influence in consideration of later payments from Hazens (through Synergy) for his involvement (Id., OAs 194-95); that Jeremy Chan helped prepare Synergy's retainer agreement with Hazens, which contemplated "milestone" bonus payments for Chiang and Synergy (and ultimately defendant and Jeremy Chan) for stages of project approval (id.); that Jeremy Chan and defendant discussed such bonus "milestones" during the approval process (id. at OA 209); and that Jeremy Chan received

4

at least two payments totaling $15,000 from Synergy for his work on the approval process (id., OAs 210, 213).  Count 28 of the FSI alleges that Jeremy Chan's receipt of $15,000 from Synergy is among the benefits that defendant corruptly solicited and agreed to accept in connection to his assistance with the approval process for the Luxe Hotel project.  (FSI Count 28.)

At trial, the government intends to present evidence of Jeremy Chan's participation in the Luxe Hotel bribery scheme, as well as his work for other developers as facilitated by defendant.[4]  Among the exhibits the government intends to offer are an email from defendant to Jeremy Chan and Chiang charting out the "People Who Influence the [Luxe Hotel] Project" and the entitlement matters they oversaw (Exhibit A hereto); a group text message exchange between defendant, Jeremy Chan, and Chiang reflecting Jeremy Chan's review of the Synergy/Hazens retainer agreement (Exhibit B hereto); a text message exchange between defendant and Jeremy Chan in which they discuss the City Planning Commission's approval of the Luxe Hotel project, the consequent "Good news for milestones" (bonuses they would receive from Hazens), and the fact that they were "Still waiting for the 2nd payment" (Exhibit C hereto); and checks from Synergy to Jeremy Chan

---

[4] The Joint Pretrial Exhibit Stipulation filed by the parties on January 17, 2023 (prior to codefendant Huizar's change of plea), contained over twenty exhibits for which the government listed Jeremy Chan as a relevant and/or potentially testifying witness.  (See Dkt. No. 907 (prior Trial Exh. Nos. 275, 427, 713, 752A-C, 753A, 753F, 753K-O, 753T, 772, 773, 777F, 778, 785F, 785I, 785K).)  All of these exhibits are included in the amended exhibit list the government sent to defendant Chan's counsel on January 24, 2023.

sourced from the bonus payments received from Hazens for assistance with the Luxe Hotel project approval process (Exhibit D hereto).[5]

### C. Defendant's Contravention of His No-Contact Bond Condition and Belated Request to Modify His Bond

During the January 25, 2023 status conference, Mr. Braun acknowledged that defendant had failed to comply with his no-contact bond condition in at least two ways.

First, Mr. Braun explained that, "[i]n terms of my client, we did – what we did was I interviewed 15 witnesses on Zoom, and Mr. Chan called the witnesses and arranged for the time," in contravention of the condition that defendant not contact any witnesses.[6]  (1/25/23 Hr'g Tr. at 18:24 – 19:2.)  In his motion, defendant seeks an order allowing him to continue "contact[ing] defense witnesses only to allow him to schedule telephonic conferences with his attorneys or arrange for the witnesses to come to court to testify."  (Mot. at 1.)

Mr. Braun represents in his declaration in support of the motion that defendant only has contacted witnesses (other than Jeremy Chan) for purposes of scheduling.  However, this assertion is belied by information the government has obtained as part of its ongoing trial

---

[5] Several of the exhibits attached hereto were produced pursuant to the protective order in this case (Dkt. No. 47) based upon personally identifiable information or other sensitive information contained in the documents.  Accordingly, the government has redacted the information in the exhibits that is subject to the protective order, including phone numbers and financial account information (except for the last four digits), for purposes of this filing.

[6] Mr. Braun stated he was "not aware of the bond condition," later claiming "I wasn't at the arraignment."  (1/25/23 Hr'g Tr. at 19:2, 20:22-23.)  However, the minute entries for defendant's initial appearance and post-indictment arraignment both reflect Mr. Braun having been "present" while appearing on defendant's behalf.  (Dkt. Nos. 97, 100.)  In his declaration, Mr. Braun now claims that he does not recall the condition at issue.  (Mot. at 3.)

6

preparation.  Specifically, during a meeting with at least one witness on the government's witness list -- Yan Yan -- the government learned that defendant has not only maintained contact with Yan Yan throughout the life of the case (including <u>after</u> watching Yan Yan testify in the Shen Zhen New World trial) but has even sought to discuss substantive aspects of the case and his defense.  (<u>See</u> Exhibit E hereto (FBI highlighted notes of 1/24/23 meeting with Yan Yan) at 1.)  Specifically, defendant has sent group text messages to Yan Yan proclaiming his innocence, while knowing full well that Yan Yan is to testify at his trial.

Second, as to Jeremy Chan, Mr. Braun requested during the hearing that Jeremy Chan "<u>continue</u> to talk to me about the case as well as his father."  (1/25/23 Hr'g Tr. at 19:10-11 (emphasis added).)  In his motion, defendant elaborates on defendant's contacts with Jeremy Chan since bond was imposed in this case.  Defendant states that "Jeremy Chan has actively participated in meetings with the Government and has attended many sessions of cases [sic] related to his father's case."  (Mot. at 4.)  While defendant and Mr. Braun attempt to shift blame to the government for not reminding them about the conditions of the bond that defendant signed with Mr. Braun present, the issue came to a head when Jeremy Chan appeared at counsel table alongside defendant and Mr. Braun during the January 20, 2023 hearing (following codefendant Huizar's change of plea). (Dkt. No. 913.)  At that hearing, Mr. Braun introduced Jeremy Chan as "co-counsel" (1/20/23 Hr'g Tr. at 3:11-12), and Jeremy Chan substantively advocated as counsel for defendant while also providing his perspective as a percipient witness with personal knowledge of the underlying facts at issue in response to the Court's questions.

7

(See id. at 18:19 – 19:7, 22:2-8, 22:11-15, 23:2-6, 25:6-12, 25:13-24.) Defendant now seeks an order not only permitting him to continue "talk[ing] to his son about the case" but also authorizing "Jeremy Chan to participate in the preparation of the defense." (Mot. at 4.)

For the reasons described herein, the Court should deny defendant's belated request to modify the conditions of his release with respect to (1) defendant's contacts with any witness (other than Jeremy Chan), and (2) defendant's contacts with Jeremy Chan regarding this case. The Court should further deny defendant's request with respect to (3) Jeremy Chan participating in the preparation of the defense to the extent Jeremy Chan would be doing so in the capacity as legal counsel and/or meeting with other prospective witnesses in this case.[7]

**III. ARGUMENT**

**A. The Court Should Not Modify Defendant's Bar on Contacting Witnesses Besides Jeremy Chan**

Defendant's request to modify his bond to permit his assisting in witness scheduling matters should be rejected. This routinely imposed bond condition barring contact with witnesses was well justified at the outset of this case, and is further justified based on the nature of the allegations against defendant, as summarized above. The continuing need for this prohibition has only been reinforced by defendant's violation of this condition by contacting defense witnesses, despite the clear language of his bond. Moreover,

---

[7] To be clear, as the government stated during the January 25 hearing, the government does not object to defense counsel (without defendant present) interviewing witnesses, including Jeremy Chan, in the ordinary course. (See 1/25/23 Hr'g Tr. at 19:19-25.)

8

as noted above, defendant apparently also has been contacting at least one witness on the government's witness list regarding more than just simple scheduling matters, including communications about aspects of his defense. (See Exh. E.) If anything, defendant's restriction on communicating with witnesses should be strictly enforced, not removed.

Moreover, defendant's request to contact all witnesses (other than Jeremy Chan) "only . . . to schedule telephonic conferences with his attorneys or arrange for the witnesses to come to court to testify" defies common sense. (Mot. at 1, 4.) Defendant offers no explanation for why this purely administrative task cannot be handled by the retained attorneys or staff at Mr. Braun's law firm, Braun & Braun LLP, which defendant pays to provide these basic services. Indeed, during the January 25 hearing, the Court counseled Mr. Braun, "in order to be on the safe side," to "tell Mr. Chan to cease arranging interviews with these witnesses and have someone from your office call the witnesses to make arrangements," and Mr. Braun affirmed to the Court that he would. (1/25/23 Hr'g Tr. at 20:12-15.) Considering this administrative task can be handled by others, the real purpose behind defendant's request to continue making such contacts is evident: to influence and/or implicitly pressure witnesses who will be testifying by having defendant be the one to personally convey the request to help him prepare his defense at trial.

In light of the allegations in this case, the evidence the government has marshaled in support, and defendant's prior violations of the no-contact bond condition, defendant should not be permitted to contact any witnesses for even a purportedly clerical purpose.

The risk is too great of defendant improperly influencing or attempting to influence witnesses, whether directly or indirectly.

### B. The Court Should Not Modify Defendant's Bar on Discussing the Case with Jeremy Chan

Defendant's request to communicate with Jeremy Chan about the substance of the case similarly should be denied. Not only is Jeremy Chan a material witness -- who may be called to testify by the government or the defense -- but also the evidence implicates him in the underlying charged conduct.[8] Thus, there is a uniquely heightened risk of defendant influencing or attempting to influence Jeremy Chan's testimony and aligning their testimony about critical events that will likely be contested at trial.

First, defendant suggested during the January 25 hearing that if the government does not call Jeremy Chan to testify, the defense would do so during its case. (See 1/25/23 Hr'g Tr. at 17:14-20 (Mr. Braun (as to whether Jeremy Chan would be called as a defense witness): "I think if they call [Jeremy Chan] based on their Indictment, the cross-examination would be sufficient, but I don't know.").) In fact, Mr. Braun intimated that he might attempt to call Jeremy Chan as an expert witness notwithstanding the fact that he is a percipient witness to critical events regarding the Luxe Hotel project bribery scheme. (Id. at 53:22-23.) Jeremy Chan is a putative material witness in this case, and defendant should not discuss the case with him.

---

[8] As far as the government is aware, Jeremy Chan does not have independent criminal defense counsel for himself nor is the government aware of any joint defense agreement involving Jeremy Chan.

10

Second, the same concerns (outlined above) driving the need to bar defendant's contacts with any witness in this case apply with even greater force as to Jeremy Chan given his participation in the underlying charged conduct. Defendant has a track record of attempting to influence co-conspirators, such as Businessperson A, to align with defendant's version of events. With trial only several weeks away, the risk of defendant attempting to influence Jeremy Chan's testimony, to the extent he has not already done so, is great. Indeed, it is hard to imagine what discussions defendant and Jeremy Chan could legitimately need to have about the case that did not lend themselves to aligning their stories. And any legitimate burden imposed on defendant in restricting his communications with his son about the case is comparatively minor at this stage.

The Court thus should reject defendant's belated and eleventh-hour request to modify the prohibition on his discussing the case with Jeremy Chan.

**C. The Court Should Bar Jeremy Chan from Participating on the Legal Defense Team**

The Court should further reject defendant's request that Jeremy Chan be permitted "to participate in the preparation of the defense," (Mot. at 4), to the extent such request is premised on Jeremy Chan offering legal counsel in any capacity, as opposed to his meeting one-on-one with Mr. Braun and Mr. Pratt strictly as a percipient witness.

During the January 25 hearing, Mr. Braun conceded that Jeremy Chan serving as defense counsel would constitute "a non-waivable conflict in terms of being counsel of record." (1/25/23 Hr'g Tr. at 19:7-9.) Mr. Braun referred the Court to Wheat v. United States, 486

11

U.S. 153 (1988), in which the Supreme Court stated, "we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  Id. at 163; see also id. at 160 (district court must "take adequate steps to ascertain whether the conflicts warrant separate counsel").  Here, an actual conflict is implicated by Jeremy Chan's involvement in advancing and benefitting from the Luxe Hotel bribery scheme as alleged in the FSI, which the government intends to prove at trial.  See Mannhalt v. Reed, 847 F.2d 576, 581 (9th Cir. 1988) ("[W]hen an attorney is accused of crimes similar or related to those of his client, an actual conflict exists because the potential for diminished effectiveness in representation is so great.").[9]

The potential implications of this actual conflict are not exclusively limited to Jeremy Chan serving as counsel at trial.  The Ninth Circuit has recognized that "the harm [of a conflict] may not consist solely of what counsel does, but of 'what the advocate finds

---

[9] An actual conflict for Jeremy Chan also exists under the Rules of Professional Conduct of the State Bar of California based on Jeremy Chan's status as a prospective testifying witness.  See Rules of Prof'l Conduct R. 3.17 (2018) ("A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: . . . the lawyer has obtained informed written consent from the client."); see also id. cmt. n.3 ("Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced.").  Attorneys appearing before the Central District of California are bound by the California Rules of Professional Conduct.  See L.Cr.R. 57-1 (incorporating L.R. 83-3.1.2, requiring attorneys to comply with the Rules of Professional Conduct of the State Bar of California).

12

himself compelled to <u>refrain</u> from doing, not only at trial but also' during pretrial proceedings and preparation." Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir. 1994) (quoting Holloway v. Arkansas, 435 U.S. 475, 490 (1978)) (emphasis in original). For example, as the court observed in Mannhalt, "a vigorous defense might uncover evidence of the attorney's own crimes, and the attorney could not give unbiased advice to his client about whether to testify or whether to accept a guilty plea." Id. at 581.

During the January 25 hearing, Mr. Braun touted Jeremy Chan's value as an attorney in the preparation of defendant's case. (See 1/25/23 Hr'g Tr. at 19:3-6 (Mr. Braun: "As far as Mr. Jeremy Chan is concerned, you know, he's a lawyer. He's very knowledgeable in the building area. And he has prepared documentation and worked with me in terms of the ethics issues involved."); 48:1-3 (Mr. Braun (regarding Jeremy Chan's real estate law background): "I found out he knows more about land use than his father. He basically is a specialist in land use and getting approvals and so forth.").) In his declaration in support of the motion, Mr. Braun once again focuses on Jeremy Chan's legal background, describing him as "an expert in real estate law, entitlements, etc., [who] has been a valuable resource for me in preparing this case." (Mot. at 4.)

Mr. Braun's request for an order allowing Jeremy Chan to "participate in the preparation of the defense" thus appears to be premised on Jeremy Chan continuing to participate as part of defendant's legal defense team. Even if Jeremy Chan is barred from discussing the case with defendant (as he should be), his involvement as part of defendant's defense team presents many of the same potential pitfalls that arise when trial counsel has an actual

13

conflict.  Moreover, given Jeremy Chan's direct involvement in the underlying charged conduct and his prospective testimony at trial, it would be improper for Jeremy Chan to meet with other potential witnesses, under the auspices as counsel helping prepare the defense. Such contacts would pose a significant risk of witnesses aligning their testimony for trial and effectively allow an end run around the dictates and spirit of the sequestration principles of Federal Rule of Evidence 615.[10]

Defendant has been and will continue to be fully afforded his Sixth Amendment right to effective assistance of counsel, as he has been ably represented by Mr. Braun (and more recently, Mr. Pratt) since the inception of the case against him.  Given the actual conflicts presented by the representation of Jeremy Chan as his third attorney, however, the government believes that such a conflict likely constitutes an unwaivable conflict.[11]

---

[10] See, e.g., United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997) ("Apart from this 'heartland' of courtroom sequestration mandated by Rule 615, the court retains discretion to add other restrictions or not, as it judges appropriate.  The regulation of witness conduct outside the courtroom is thus left to the district judge's discretion."); United States v. Pritchard, 781 F.2d 179, 183 (10th Cir. 1986) ("[Rule] 615 requires not only that witnesses be excluded from the courtroom, but that witnesses also refrain from discussing their testimony outside the courtroom.  Any other rule would allow witnesses to tailor their testimony to each other's and indirectly defeat the purposes of Rule 615.").

[11] Mr. Braun claims that Jeremy Chan's "inability to discuss the case with me or his father or participate in the preparation of the case would require an unnecessary request for a continuance." (Mot. at 4.)  However, the defense has had more than two years to prepare its case for trial, and apparently has engaged in the prohibited contacts it seeks to continue here for much of that time.  Moreover, the government does not seek to restrict Mr. Braun and Mr. Pratt from meeting with Jeremy Chan in his capacity as a prospective percipient witness at trial.  The Court's enforcement of defendant's existing bond conditions should not constitute good cause for a continuance.

14

## IV. CONCLUSION

Accordingly, the government respectfully requests that the Court deny defendant's <u>ex parte</u> application to modify his bond as to (1) contacting witnesses for any purpose, including scheduling matters and (2) discussing the case with Jeremy Chan.  The government further requests that the Court deny defendant's request as to (3) permitting Jeremy Chan to participate in the preparation of the defense to the extent Jeremy Chan would be doing so in the capacity as legal counsel and/or meeting with other prospective witnesses in this case.