# EXHIBIT E

***SUBJECT TO PROTECTIVE ORDER - Sensitive Material***

1/24/2023

YAN-YAN, Counsel Don Conway

AUSA Susan Har, SA Ciro Ulinski

**[AGENT NOTE**: The above parties met in preparation for YAN's anticipated testimony.**]**

**[Agent Note**: YAN was advised that the interview was voluntary. YAN was instructed that he could end the interview at any time. YAN was advised that lying to the FBI was a federal offense and that lying included omitting information. YAN affirmatively acknowledged he understood all of these admonishments and that he must be completely truthful.**]**

**[Agent Note**: During the course of the interview, YAN was shown items previously produced in discovery: Exhibits 771, 272]

**RAY CHAN**

YAN last spoke with RAY CHAN a few weeks prior. YAN spoke with CHAN approximately once per month, but YAN did not discuss the trial, HUIZAR, or CHAN's charges. YAN received text messages in a group chat along with all of the KUNG FU students group chat wherein CHAN shared general information about the trial updates and that CHAN was innocent. YAN did not recall if she responded. Since the trial, YAN mentioned to CHAN that she saw him at the trial, which CHAN confirmed that he was in attendance. YAN did not discuss her trial with CHAN. The KUNG-FU class YAN practiced with CHAN had been closed since approximately 2020 due to COVID. YAN continued to practice KUNG FU at her home.

YAN was unsure about her relationship with CHAN and meeting CHAN around 2013 or 2014. YAN's colleague at the SHERATON "DENNIS" did KUNG FU. DENNIS first introduced YAN to CHAN at a KUNG FU class held at CHAN's house. YAN did not know CHAN was the KUNG FU Master until she arrived at the class and YAN later learned of CHAN's position at the city and LA Department of Building and Safety (DBS). The class had approximately 8-10 students and was held twice a week on CHAN's deck. Students did not have to pay for the class- except for the gear students needed to purchase on their own such as $10 uniforms or sparring gear. The class was called LA BXG- BUK XING GOON [SP]. YAN was the seventh student. Other students included JEREMY CHAN ("JEREMY"), another student that went to college in Illinois, and another from SAN FRANCISCO with different occupations and backgrounds. At some point GEORGE CHIANG was also a KUNG FU student. JEREMY was CHAN's Son and was first student who did not train often when YAN started. YAN did not have personal relationship with JEREMY, and would not have hung out one on one. YAN did not discuss the case with

RICO_TRIAL_014316

**\*SUBJECT TO PROTECTIVE ORDER - Sensitive Material\***

*SUBJECT TO PROTECTIVE ORDER - Sensitive Material*

JEREMY. The group occasionally socialized but YAN had other social groups as well.

YAN went through the LA DBS accounting clerk interviews and process and was unaware of any specific recommendations made by CHAN on YAN's behalf. YAN did not interact with CHAN in her accountant role.

YAN talked via phone with CHAN after the FBI search at her home and generally discussed that the FBI was at her house. YAN did not get to finish the conversation because CHAN cut YAN off during the call. YAN never talked about the HUIZAR related loan on the call and never discussed the loan with CHAN ever or the fact of her involvement.

**SYNERGY and CCC**

YAN only worked part-time at SYNERGY about once per week- for about a year or less, at an office building downtown. YAN was unsure but understood SYNERGY and CCC were the same company. YAN did not know what CCC stood for but understood that it was a consulting company. After YAN failed the accountant exam, she only worked part time for the city and CHAN knew she had an accounting background. CHAN asked YAN to work for the company and YAN believed CHAN knew YAN worked for LA DBS at the time. YAN did not have to apply for the position. CHIANG and CHAN were both YAN's only bosses and did not recall CHIANG or CHAN's position relative to the companies. There were approximately four employees that included STEPHANIE LNU and her office assistant EVEN LNU. YAN did not understand JEREMY to be an employee and JEREMY was not part of YAN's daily routine but was seen in passing at the company. YAN interacted with CHAN about once per week related to work in the office. CHAN would occasionally ask YAN to do small little things and nothing weird that stood out to her. CHAN mostly asked STEPHANIE to do things for him because STEPHANIE was the office assistant there daily. CHIANG nor CHAN asked YAN to do anything unusual. YAN did not recall checks from SYNERGY to LA BXG- the KUNG FU group. YAN recalled that at some point she found out was that LA BXG was also a company of CHAN's as well based on something that YAN saw. YAN did not discuss LA BXG- the company with CHAN nor knew of what kind of company it was.

YAN prepared profit and loss statements for the company- monthly or quarterly, with information received from CHIANG that YAN organized and compiled. YAN used the office computer and did not have a company email address. YAN did not have access to the company's bank and was not able to write or cash checks on behalf of the company. Incoming checks were written and received by CHIANG or CHAN. YAN left the company because the company was ended when the FBI investigation became public and YAN had not worked at the company since.

**WEI HUANG**

RICO_TRIAL_014317

*SUBJECT TO PROTECTIVE ORDER - Sensitive Material*

***SUBJECT TO PROTECTIVE ORDER - Sensitive Material***

CHAN knew WEI HUANG. CHAN worked for the city and "was a big boss as well" but YAN did not know the nature of the relationship between CHAN and HUANG.

**Additional**

- YAN heard CHAIRMAN YUEN- of HAZEN's, name discussed in the office when YAN worked at SYNERGY.
- YAN did not know the name DERON WILLIAMS or any contract with WILLIAMS and SYNERGY
- YAN said that she believed CHAN was innocent but YAN did not know the charges against CHAN.

RICO_TRIAL_014318

***SUBJECT TO PROTECTIVE ORDER - Sensitive Material***