# ATTACHMENT A

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2091/0363/3289/3819
Facsimile: (213) 894-6436
E-mail: Mack.Jenkins@usdoj.gov
Cassie.Palmer@usdoj.gov
Susan.Har@usdoj.gov
Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RAYMOND SHE WAH CHAN,
aka "She Wah Kwong,"

Defendant.

No. CR 2:20-326(A)-JFW-2

GOVERNMENT'S REPLY TO DEFENDANT RAYMOND CHAN'S RESPONSE TO ORDER TO SHOW CAUSE FILED 1/31/2023

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files its reply to defendant Raymond Chan's Response to Order to Show Cause Filed 1/31/2023. (Dkt. No. 924.) The government has contemporaneously filed an ex parte application seeking leave from the Court to file this reply.

The government's reply is based upon the attached memorandum of points and authorities and the exhibits attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 6, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

*/s/*

SUSAN S. HAR
MACK E. JENKINS
CASSIE D. PALMER
BRIAN R. FAERSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF EXHIBITS....................ii

GOVERNMENT'S REPLY....................1

I. OVERVIEW....................1

II. Defendant Concedes Knowledge of His Bond Condition....................3

III. Defendant Continues to Flout the Court-Ordered Condition of No- Witness Contact....................3

IV. The Government Has Continuing Concerns That Jeremy Chan Has Participated in, and Will Continue to Participate in, the Case in a Legal Capacity....................8

V. CONCLUSION....................11

**TABLE OF EXHIBITS**


| Exhibit | Description | Cite |
| --- | --- | --- |
| A | Defendant-BXG Group Text Messages Re: Federal Investigation (redacted) | p. 5 |
| B | FBI (highlighted) notes of 1/24/23 meeting with Yan Yan | p. 6 |
| C | FBI (highlighted) notes of 2/2/23 meeting with Yan Yan | p. 6 |

**GOVERNMENT'S REPLY**

**I. OVERVIEW**

On January 31, 2023, the Court denied defendant Raymond Chan's ex parte application to modify the conditions of his pre-trial release, and confirmed that (1) defendant remains prohibited from having contact with witnesses; (2) defendant remains prohibited from communicating with Jeremy Chan about the substance of the case (in which Jeremy Chan is also implicated); and (3) Jeremy Chan is not permitted to participate in the preparation of the defense "regardless of whether Jeremy Chan serves as trial counsel or is part of the legal defense team that prepares the defense case for trial." (Dkt. No. 922.) That same day, the Court also issued an Order to Show Cause ("OSC") why defendant's bond should not be revoked, in light of his admitted repeated violations of his conditions of pre-trial release, including his contact with witnesses beyond Jeremy Chan. (Dkt. No. 923.) Additionally, the Court ordered defendant to provide (1) a list of witnesses defendant had contacted since December 1, 2020; (2) the dates of those contacts; and (3) whether the contact was oral or in writing. (Id.)

In his response to the OSC (the "response" or "Resp."), defendant and his counsel deliberately sidestep the Court's instruction to identify the specific witnesses that defendant has contacted and the dates and form of those contacts. (Dkt. No. 924.) Instead, defendant attempts to relitigate his repeated violations of his pretrial release conditions and essentially improperly seeks reconsideration of the Court's order denying defendant's ex parte application to modify his bond conditions. (Id.)

Accordingly, the government files this reply to provide material information via the attached exhibits regarding defendant's recent contacts with a government witness, Yan Yan, for the Court's consideration. Most troublingly, by largely disregarding the Court's order that defendant provide a list describing the dates and form of his contacts with witnesses, defendant omits material information regarding his numerous and ongoing contacts with Yan Yan--including after she testified as a witness in the SZNW trial and even after the January 25, 2023 status conference, when this Court made clear that defendant should cease contacts with witnesses.

The government also addresses its continuing concern about Jeremy Chan's participation on the "defense team," particularly in light of the vague and at times defiant assertions defendant and defense counsel make in their declarations in support of the response. Notwithstanding the unequivocal nature of the Court's January 31, 2023 order precluding Jeremy Chan from participating in the preparation of the defense, the defense's response to the OSC reveals a flippant and noncompliant attitude towards the Court's orders, justified by convoluted and illogical interpretations of such orders, and leaves more questions than it answers as to whether defendant will comply with his pretrial release conditions going forward.

Based on the current record, specifically related to defendant's repeated and ongoing contacts with witnesses like Yan Yan, revocation of defendant's bond and his remand would be supported; however, the government defers to the Court's judgment on that matter and makes no recommendation on this issue.

**II. Defendant Concedes Knowledge of His Bond Condition**

In his declaration in support of the response, defendant concedes that he signed and was aware of the bond condition at issue: that he avoid all contact with any person who is a "witness in the subject investigation or prosecution." (Resp., Chan Decl. ¶ 4a (emphasis added); see also Dkt. No. 100.) With respect to Jeremy Chan, an obviously known witness but also defendant's son, the condition carved out an exception so as not to restrict all contact, but prohibited "discussion of [the] pending action"--a condition that defendant similarly admits he signed. (Id.)

**III. Defendant Continues to Flout the Court-Ordered Condition of No-Witness Contact**

Notwithstanding the Court's specific order that defendant provide the dates and form of his contacts with witnesses, defendant, via his sworn declaration, offers only a conclusory and non-specific description of his contacts with Yan Yan, an important and known witness who has testified previously. (See Resp., Chan Decl. ¶ 11d.) Defendant's description in his declaration is misleading and omits material information regarding his contacts with Yan Yan.

First, defendant offers the incredible illogic that he did not understand Yan Yan to be a "known witness"; that is, defendant claims that he understood a "known witness" to be someone he knew was to testify at trial. (Resp., Chan Decl. ¶ 11d (claiming he did not know Yan Yan "would be involved in this case" until reviewing the September/October 2022 witness list and "observ[ing] her on the witness stand" at the SZNW trial). This explanation defies credulity. Defendant's bond condition prohibited contact with known witnesses "in the subject investigation or prosecution"--not

witnesses known to have testified. (See id. ¶ 4a (emphasis added).) It is for that same reason that in December 2020, the Honorable Karen L. Stevenson specified that, with respect to Jeremy Chan--a witness who was obviously "known" long before any testifying witnesses were identified--the condition was modified to preclude only discussion of the action.[1] (Dkt. No. 100.)

Defendant clearly knew that Yan Yan was a witness in the "subject investigation or prosecution." He knew it by his own claimed discussion with her in November 2018 regarding her involvement in the settlement loan for Jose Huizar. (Resp., Chan Decl. ¶ 11d.) He knew it by the First Superseding Indictment identifying Yan Yan ("Employee E") as an employee of Shen Zhen Company and alleging her involvement in structuring the settlement funds. (See FSI ¶ 21, OA 38, 44-45.) He knew it by the extensive discovery relating to Yan Yan, including documents reflecting her name as the signatory for Wei Huang's collateral ostensibly on behalf of Grace Luck Holdings and by the FBI reports of interviews of Yan Yan concerning the same. He knew it by the pre-trial litigation seeking to suppress purported attorney-client communications relating to Yan Yan and the Grace Luck Holdings-related settlement arrangement. (See Dkt. Nos. 275, 316, 338, 339.)

[1] Troublingly, Mr. Braun, advances the same illogical interpretation of this standard pre-trial release condition. (Braun Decl. ¶ 18b (claiming that defendant contacted fifteen witnesses, arguing that none of were "Government witnesses" and "[n]one of these persons were *known witnesses*").) Nothing in the condition distinguishes between "government" or "defense" witnesses or is limited to testifying witnesses; the condition prohibits contact with all witnesses to the investigation for the same reason--to ward off undue influence or witness tampering.

Second, even after Yan Yan testified at the SZNW trial, defendant continued to have multiple contacts with her--a fact that is, troublingly, disclosed nowhere in defendant's declaration. For instance, immediately following the verdict in the SZNW trial, defendant sent a lengthy text message to the martial arts group thread on November 10, 2022, explaining what he observed in the trial and providing his take on the testifying witnesses. (Ex. A at 17-19 ("Many of them know me and they all testified that I never went to Vegas. . . . These witnesses also said many positive things about me.").)[2] On January 19, 2023, defendant sent another message to the group thread including Yan Yan in which he touted Jose Huizar's guilty plea as a positive development for his case and declaring that he would "continue to fight to reclaim [his] innocence and reputation . . . unless the government[] dismiss my case."[3] (Id. at 20.) The influence that such messages could have on a testifying witness with whom defendant claims to have a persuasive power dynamic akin to a "father-daughter like relationship" is self-evident. (Resp., Chan Decl. ¶ 11d.) These messages also demonstrate that defendant's sworn claim--that "at no point in this case did I ever reach out to any individuals later identified by the government's prosecutors as witnesses, to discuss the details of the pending case against me"--is false. (Id. ¶ 11f.)

---

[2] For privacy reasons, the photograph of one of the participants in the group messages has been redacted. Yan Yan does not send any messages in the messages displayed in Exhibit A.

[3] Defendant's reference to the government potentially dismissing his case is further evidence of his manipulation and falsity since the government had just recently, on January 9, 2023, provided the defendant and his counsel a reverse proffer outlining how it would prove each of the dozen counts against him and emphasizing the government's view of the strength of its evidence.

Defendant's post-SZNW trial contact with Yan Yan was not limited to just the text message thread with the martial arts group. It also continued to include regular in-person meetings, as well as communications in one-on-one text messages.[4] (Exs. B, C.)

Third, and even more troublingly, defendant had contact with Yan Yan as recently as January 29, 2023--four days after the January 25 status conference during which this Court specifically admonished that "if [defendant] violat[d] the terms of his bond, I'm going to revoke his bond." (1/25/23 Hr'g Tr. at 19:15-18 (emphasis added); see also id. at 18:19-22 (AUSA Jenkins explaining that defendant "has been contacting Government witnesses which is also in violation of the court order, Docket 100").) Specifically, during a meeting with Yan Yan on February 2, 2023, the government learned from Yan Yan that defendant attended a dinner with Yan Yan and other martial arts students on January 29, 2023. (Ex. C.)

While defendant may protest that attending a social group dinner with Yan Yan was harmless, defendant's flagrant and repeated flouting of his bond condition raises serious concerns about his ability to follow the Court's instructions. These serious concerns are highlighted when, after being given the opportunity, via court order, to fully come clean about these violations, defendant instead has chosen a course of evasion, material omissions, and defiance. (See Resp. Chan Decl. ¶ 11d (claiming he merely provided "honest and simple updates about my case").) Pre-trial release conditions are not suggestions, and it is not for defendant to elect which to follow

[4] Yan Yan has declined to provide her consent for the government to review her one-on-one text messages with defendant.

and when, as he sees fit. They are Court orders that condition defendant's pre-trial release. 18 U.S.C. §§ 3142(a)(2), (c), (h).

Other than an incomplete and generalized description of his contact with Yan Yan (which the government first flagged at the status conference and in its opposition to defendant's ex parte application to modify his bond conditions), defendant fails to specifically identify the other known witnesses with whom he has had contact over the last two years. (Resp., Chan Decl. ¶ 11 (describing that "many friends and former colleagues contacted [him]").) Even with respect to the 20 potential (defense) witnesses that defendant admits he contacted, defendant does not identify five of those witnesses and he does not specify the number and dates of all contacts, or the form of the contacts (oral or in writing), when he (1) sought to confirm if they would testify, and (2) coordinated scheduling for interviews. (See id. ¶ 11f.) He also does not disclose (3) whether there was any post-interview contact.

Defense counsel claims that the "requirement that I disclose these fifteen witnesses as part of the litigation raises an issue about whether Raymond Chan's right to counsel was violated by this forced premature disclosure to the Government." (Resp., Braun Decl. ¶ 11.) But this is yet another red herring. Even prior to any of the Court's concerns raised herein, the Court had already has ordered that defendant file his witness list on or before February 13, which is just ten days after the date (February 3) defendant was ordered to account for his prior contacts with all known witnesses in this case. Yet defendant, like all other counsel, filed no written objection asserting such a procedure violated some amorphous Constitutional consideration. However, now having been caught repeatedly violating

a court order and being reasonably required to answer for his conduct, defendant appears to use this purported constitutional assertion as a shield against responding to the Court's unequivocal order to disclose his prior violations of his bond conditions. This point is made all the more obvious by the fact that defendant concealed from his Court-ordered declaration numerous contacts with Yan Yan after observing her testify in the SZNW trial.[5]

Accordingly, the record remains unclear as to whether defendant has had contact with other known witnesses (testifying or otherwise) since December 2020, and the government has substantial doubts as to the credibility of defendant's assertions in his cursory accounting of his contacts in his response to the Court's OSC.

## IV. The Government Has Continuing Concerns That Jeremy Chan Has Participated in, and Will Continue to Participate in, the Case in a Legal Capacity

In the response, both defendant and defense counsel also sow significant doubt as to whether they will abide by the Court's order--not to mention the existing bond condition--that going forward Jeremy Chan not discuss the case with defendant nor participate in his defense.

---

[5] Defense counsel also makes the dubious claim that he had not reviewed the "five-page booking documentation used on December 1, 2020"--i.e., defendant's conditions of pretrial release (Dkt. No. 100)--because he "certainly did not accompany Raymond Chan when he was photographed, fingerprinted, and booked, nor did I sign any of the five pages of documentation." (Resp., Braun Decl. ¶ 5.) Of course, defendant's bond conditions were not entered behind closed doors during the "booking process," but rather in open court when defendant made his initial appearance with Mr. Braun present and serving as counsel. (Dkt. No. 100.) In effect, defense counsel doubles down on his previous claim that he was not aware of the specific bond conditions, which gives the government additional concern as to defendant and his counsel's compliance with those conditions going forward.

Defendant's declaration makes clear that, despite his knowledge of the specific condition that he have "no discussion of [the] pending action" with Jeremy Chan (Resp., Chan Decl. ¶ 4a), he has done precisely that throughout the life of this case.[6] Even beyond just discussing the case, defendant admits that he has discussed the case with Jeremy Chan (whom he describes as a licensed attorney with "an expert technical understanding of the evidence") in a legal or quasi-legal capacity, and that Jeremy Chan has spent "thousands of hours over the past 2 years helping [defendant] review, prepare, and organize trial exhibits and demonstratives." (Id. ¶ 10.) Defendant asserts that Jeremy Chan "has become an indispensable part of my defense team and his exclusion would be an incalculable loss to me." (Id.)

While defendant does not expressly admit that Jeremy Chan was provided access to the discovery in this case, that seems to be the reasonable conclusion based on Jeremy Chan's review of purported "trial exhibits and demonstratives" for thousands of hours over the last two years. (Resp., Chan Decl. ¶ 10.) The Court's Protective Order in this case restricted access to discovery marked as Cooperator Materials and Sensitive Materials to the Defense Team and defendant. (Dkt. No. 47 ¶ 5f.) The Defense Team was specifically defined to exclude defendant's family members. (Id. ¶ 5c ("The Defense Team does not include defendant, defendant's family members or any other associates of defendant.") (emphasis added).) Should

[6] Elsewhere in his declaration, defendant offers a similarly illogical rationalization for his violations with respect to Jeremy Chan that he offered with respect to Yan Yan: that he did not intend to violate the conditions of his release because Jeremy Chan "was not a victim or a co-defendant in this case" and "was not identified as a government witness until sometime in or around December 2022." (Resp., Chan Decl. ¶ 9.)

Jeremy Chan have reviewed discovery subject to the Protective Order--as enabled by defendant--this would a violation of yet another Court order.

Defense counsel similarly fails to state clearly that he will comply with the Court's order barring Jeremy Chan from participating in the preparation of the case. In his declaration, Mr. Braun again concedes that "Jeremy Chan would not be counsel of record," but asserts that the circumstances of this case "should not prohibit a father talking to his son, particularly when his son has gone to law school and is a licensed attorney." (Resp., Braun Decl. ¶ 17.) Mr. Braun's challenge of the Court's January 31, 2023 order restricting Jeremy Chan's participation in preparing the defense, and notable absence of any reassurances that the defense will nevertheless comply with such order, leaves it ambiguous at best as to how defense counsel will proceed leading up to and during trial.

The Court should reject defendant's and Mr. Braun's already failed attempt to relitigate Jeremy Chan's role as anything other than a percipient witness in this case. As the Court correctly held: Jeremy Chan's participation in the preparation of the defense "would present a risk of an actual conflict of interest regardless of whether Jeremy Chan serves as trial counsel or is part of the legal defense team that prepares the defense case for trial," and that it would violate the intended purpose of Federal Rule of Evidence 615 if Jeremy Chan were "to be present during meetings with other potential witnesses." (Dkt. No. 922 at 3.) Notably, neither defendant's nor Mr. Braun's declarations disclose one way or the other if Jeremy Chan participated in the interviews of the 15 potential defense witnesses. Even if defendant excused himself from the interviews, the presence

of Jeremy Chan as defendant's son, proxy, and mouthpiece for the defense in those interviews would be highly problematic.

Finally, the defense's broad reliance on "constitutional issues" left to be "litigated another day," as well as defendant's attempts to shift blame to the government for his violations of his Court-ordered pre-trial release conditions, are not well taken. Prior to January 26, 2023, the defense never sought judicial relief from defendant's bond conditions, which the government has no authority to "waive" or remove. And when defendant finally sought such relief for the first time less than two weeks ago, the Court denied the application. Defendant's remarks in this regard are more a reflection of his dismissive attitude towards the Court's orders and his unwillingness to take responsibility for his own actions and decisions--none of which inspires confidence that he will strictly comply with his bond conditions moving forward, as he is required to do.

**V. CONCLUSION**

For the foregoing reasons, the government submits this reply to (1) supplement the record with evidence establishing that defendant has repeatedly violated multiple court orders regarding contacting Yan Yan, a known witness; (2) correct the record as to the misleading and incomplete information provided by defendant's declaration; and (3) establish that the record supports revocation of defendant's bond and remand for his failure to follow court orders and for offering an insufficient and incredible showing that he will cease such violations. That said, the government defers to the Court's judgment on this matter and makes no recommendation as to the ultimate ruling on its Order to Show Cause.