E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-2 |
|---|---|
| Plaintiff, | JOINT STATEMENT RE: DISPUTED SUMMARY OF THE CASE |
| v. | Trial Date: February 21, 2023 |
| RAYMOND SHE WAH CHAN, aka "She Wah Kwong" | Trial Time: 8:00 A.M. Location:  Courtroom of the Hon. John F. Walter |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Mack E. Jenkins,
Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, and defendant
RAYMOND SHE WAH CHAN, by and through his counsel of record, Harland
W. Braun and Brendan J. Pratt, hereby submit their Joint Statement

1  regarding Disputed Summary of the Case, pursuant to the Court's Trial
2  Order.  (See Dkt. No. 147.)

3      On February 1, 2023, the government provided the defense with a
4  draft proposed summary of the case and solicited any edits.  On
5  February 6, 2023, defendant provided the government with his own
6  proposed statement of the defense case.  The government reiterated
7  its request for edits to the draft it had circulated, explaining that
8  the purpose of the summary of the case was to summarize the
9  government's allegations to provide an overview of the case to the
10 jury.  By way of example, the government provided defense counsel
11 with the filed versions of the agreed-upon summaries of the case from
12 the two prior trials in this proceeding, but defendant declined to
13 provide edits to the government's proposed version, indicating that
14 the jury needs "both sides."
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

1        The parties further met and conferred in person on February 7,

2   2023, but could not agree on a Joint Summary of the Case (or on the

3   purpose of the summary of the case).  This filing therefore includes

4   both the government's version and the defendant's version, followed

5   by the parties' respective positions.

6   Dated: February 8, 2023          Respectfully submitted,

7                                    E. MARTIN ESTRADA
                                     United States Attorney
8

9                                     /s/
                                     _____
                                     SUSAN S. HAR
10                                   MACK E. JENKINS
                                     CASSIE D. PALMER
11                                   BRIAN R. FAERSTEIN
                                     Assistant United States Attorneys
12
                                     Attorneys for Plaintiff
13                                   UNITED STATES OF AMERICA

14

15  Dated: February 8, 2023           /s/ per email authorization
                                     _____
16                                   HARLAND W. BRAUN
                                     BRENDAN J. PRATT
17                                   Attorneys for Defendant
                                     RAYMOND SHE WAH CHAN

18

19

20

21

22

23

24

25

26

27

28

1

## GOVERNMENT'S PROPOSED SUMMARY OF THE CASE

2      This is a federal criminal case against defendant Raymond Chan

3 ("defendant Chan").  From May 2013 to June 2016, defendant Chan was

4 the head of the Los Angeles Department of Building and Safety

5 ("LADBS" or "Building and Safety") and oversaw operations of five

6 bureaus and the approval of tens of thousands of building projects

7 annually.  From June 2016 to June 2017, defendant Chan was the Deputy

8 Mayor of Economic Development for the City of Los Angeles (the

9 "City").  In this role, defendant Chan oversaw the heads of seven

10 City departments, including his former department (LADBS) as well as

11 the Department of City Planning (the "Planning Department").

12     From 2005 through November 2018, Jose Huizar was the

13 Councilmember for Los Angeles Council District 14 (or "CD-14"), which

14 spanned much of downtown Los Angeles, and he was the Chair of City

15 Council's Planning and Land Use Management (or "PLUM") Committee,

16 which oversees the approval of large-scale commercial and residential

17 real estate development projects.  The City Council approval process

18 for large-scale real estate development projects required numerous

19 official actions by public officials like Huizar.

20     The government alleges that defendant Chan was a member of a

21 racketeering conspiracy, led by Huizar, along with Huizar's special

22 assistant, George Esparza; a consultant, George Chiang; and others.

23 The racketeering conspiracy consisted of an agreement to operate a

24 pay-to-play scheme within the City, wherein defendant Chan, Huizar,

25 Esparza, and other public officials solicited, agreed to receive, and

26 received financial benefits from developers and their proxies, like

27 Chiang, in exchange for official acts.

28

1

1    As part of the racketeering conspiracy, the government alleges
2    that defendant Chan and the other members sought to maintain or
3    elevate the conspirators' placement in prominent and powerful City
4    positions.  In 2013, City Council was considering consolidating the
5    Planning Department and LADBS, which, if approved, would cost
6    defendant Chan's position as the then-Interim General Manager of
7    LADBS.  Defendant Chan took a number of actions to stop this
8    consolidation, including sending Huizar a draft motion and "talking
9    points."  Huizar utilized these documents from defendant Chan to help
10   stall and ultimately terminate the consolidation of the two
11   departments, which consequently saved defendant Chan's leadership
12   position at LADBS.  The following year, defendant Chan was elevated
13   to permanent General Manager of LADBS.

14   As part of the racketeering conspiracy, the government alleges
15   that defendant Chan facilitated, aided, and abetted corrupt
16   relationships between Huizar and real estate developers with whom
17   defendant Chan had relationships.  Those developers provided
18   financial benefits to Huizar in exchange for favorable official acts
19   relating to their real estate development projects that required
20   various City approvals.  One such developer was Chairman Wei Huang, a
21   Chinese national and billionaire real estate developer, who through
22   his wholly owned company, Shen Zhen New World I, LLC ("Shen Zhen"),
23   acquired the L.A. Grand Hotel Downtown ("L.A. Grand Hotel") located
24   in Huizar's Council District, CD-14.  Huang planned to redevelop the
25   13-story L.A. Grand Hotel into a 77-story skyscraper, which, at that
26   time, would have made it the tallest tower west of the Mississippi
27   River.  Defendant Chan introduced Huang to Huizar and described

28

Huizar as the person who had power over redevelopment projects both in downtown and greater Los Angeles.

Following defendant's Chan's introduction, the government alleges that Huang provided a series of bribes and benefits to Huizar and Esparza in exchange for their future official acts to secure the various approvals the L.A. Grand Hotel redevelopment project would need from City Council. The bribes defendant Chan aided and facilitated included Huang arranging for and providing $600,000 in collateral in support of a loan to Huizar for the purpose of confidentially settling a sexual harassment lawsuit filed against Huizar in 2013 by a former staff member. As a result of the collateral Huang provided and defendant Chan facilitated, Huizar was able to quietly settle the lawsuit in late 2014 and was successfully re-elected to his CD-14 seat in 2015.

As the government alleges, Huang's bribes to Huizar and known to defendant Chan also included: (1) all-expense-paid trips, including stays at luxury hotels and flights on private jets and commercial airlines; (2) over $200,000 in gambling chips at casinos in Las Vegas and Australia; (3) escort and prostitution services; and (4) planning political fundraisers for and pledging political contributions to Huizar's wife's election campaign for Huizar's CD-14 seat in 2020. At Huang's request, defendant Chan participated in conversations and meetings to enlist Huizar's help in his capacity as the Councilmember for CD-14 to resolve various issues at the L.A. Grand Hotel and to discuss the formal approvals the L.A. Grand Hotel redevelopment project needed from the City, which are known as entitlements.

1    Defendant Chan also introduced Huizar to Chairman Fuer Yuan,

2  another Chinese national and real estate developer, who through his

3  company Jia Yuan USA Co., Inc., also known as "Hazens," acquired the

4  Luxe City Center Hotel in downtown Los Angeles.  Yuan planned to

5  redevelop the Luxe Hotel property into a $700 million mixed-use

6  development to include 80,000 square feet of commercial space, 650

7  residential units, and 300 hotel rooms (the "Luxe Hotel Project").

8  Chiang, as the owner of Synergy Alliance Advisors ("Synergy"), acted

9  as an agent for Hazens and Chairman Yuan.  The government alleges

10 that, starting in 2014, Chairman Yuan, through Chiang, provided a

11 series of bribes and benefits to Huizar in exchange for future

12 official acts to secure various entitlements the Luxe Hotel Project

13 would need approved by City Council, including benefits directed to

14 Huizar's associates and pledges for political contributions to

15 Huizar's wife's election campaign.

16    The government alleges that while defendant Chan still worked

17 for the City, and beginning not later than 2017, defendant Chan

18 agreed with Chiang that Chiang would pay a portion of the Synergy

19 consulting fees to defendant Chan in exchange for his assistance on

20 the Luxe Hotel Project in his official capacity, including by

21 exerting power over and influence on various City departments like

22 the Planning Department and the City Planning Commission (or "CPC"),

23 and on Councilmember Huizar, the Chair of PLUM, to take official acts

24 favorable to the Luxe Hotel Project.

25    After defendant Chan retired from the City in July 2017, he

26 began openly working with Chiang at Synergy, and the two also formed

27 CCC Investment Inc., a real estate brokerage firm.  The government

28

4

alleges that, as payment for his official acts while he was a public official with the City, defendant Chan benefitted by 50% of monthly consulting fees and over half-a-million dollars of shared bonus payments from Hazens to Synergy.  In August 2017, shortly after leaving the City, defendant Chan formed LABXG Inc. to receive payments from Synergy.

The government alleges that, after he left the City and became a private consultant, defendant Chan continued to further the goals of the racketeering conspiracy by seeking to bribe other public officials, including Huizar's Planning Director, to perform favorable official acts for the Luxe Hotel Project and projects for other Synergy clients, including through indirect financial payments to the public officials' relatives.

In November 2018, the Federal Bureau of Investigation (or the "FBI") conducted a voluntary interview of defendant Chan regarding Huizar and Chairman Huang of Shen Zhen.  According to the government, during the interview, defendant Chan falsely stated that he was not involved with the settlement of Huizar's 2013 sexual harassment lawsuit.  In fact, defendant Chan helped encourage Huang to fund the lawsuit settlement and was present during the initial and continued conversations with Huizar and Huang about the settlement.  During the interview, defendant Chan also falsely stated that Huang did not have anything in front of Huizar that needed Huizar's help or involvement, and that Huang never asked Huizar for anything.  In fact, defendant Chan worked closely with Huang and Huizar to secure Huizar's help with matters relating to the L.A. Grand Hotel and its redevelopment.

Based on these allegations, defendant Chan is charged in:

- Count 1 with conspiracy to engage in racketeering activity;
- Counts 2, 3, and 4 with aiding and abetting wire fraud through a scheme to deprive the City of Los Angeles and its citizens of their right to honest services of their public officials through bribery in connection with Shen Zhen's L.A. Grand Hotel;
- Counts 12, 13, 14, and 15 with wire fraud through a scheme to deprive the City of Los Angeles and its citizens of their right to honest services of their public officials through bribery, and aiding and abetting bribery, in connection with Hazens' Luxe Hotel Project;
- Counts 22 and 27 with aiding and abetting bribes to a public official;
- Count 28 with agreeing to accept and accepting bribes as a public official; and
- Count 39 with making false statements to the FBI.

The charges against defendant Chan are labeled Counts 1-4, 12-15, 22, 27-28, and 39 because they are part of a larger indictment involving other individuals and entities.  You are not to ascribe any significance to that fact or the numbers assigned to the charges or to speculate as to how those other charges were resolved.

Defendant Chan is presumed innocent of all twelve of the charges against him in the indictment.  To overcome that presumption, the government must prove each of the elements of each offense charged beyond a reasonable doubt.

6

## DEFENDANT'S PROPOSED SUMMARY OF THE CASE

Defendant Raymond Chan ("Chan") had always been a model American citizen.

Professionally, Chan joined the City as a junior engineer. After 30 years of hard work, Chan was promoted through the rank and became the general manager of the Department of Building and Safety (LADBS). After Chan retired from LADBS, Mayor Garcetti rehired him on a 1-year contract as the Deputy Mayor of Economic Development.

Through these years, he was well recognized for his success in leading LADBS and other development related departments implementing many programs to improve customer services, streamline procedures, and cut red tape. Understanding development was the steam engine for the City's economy, Chan was very focused on recruiting investment from other parts of the country and around the world to Los Angeles. During Chan's era, L.A. enjoyed the largest and longest development cycle that largely benefit the City's economy. One of the many awards that he received, named him "Building Boom Booster."

Chan was well loved and respected by his friends and associates because Chan was caring and helpful, generous, and ethical, and trustworthy. Chan considered helping people as one of his life missions and he helped hundreds of people. Chan also lent money to many people and, on many occasions, he gave money to people who could not afford to take care of their essential need. From an ethical standpoint, Chan declined all invitations to trips, rejected expensive gifts and cash from people whom he associated professionally.

Chan did not engage in any unethical or criminal activities but he was indicted by the government with 12 Counts.

The government in its Joint Statement makes several allegations against Chan. We would like to briefly explain our position to each allegation (not in order). Facts and evidence will be provided in trial to prove Chan's innocence.

***Government's 1st Allegation*** *– Huizar used a draft motion and "talking points" to help stall and ultimately terminate the consolidation of the Planning Department and the Building and Safety Department (LADBS), which consequently saved Chan's leadership position at LADBS.*

7

The consolidation movement, during Mayor Villaraigosa's administration, was the result of a territorial battle between the LADBS general manager Bud Ovrom and the Planning Director Michael Logrande. Both wanted to take over some or all functions from the other's department. Ovrom lost this battle. But to compensate for his loss, Mayor Villaraigosa reassigned Ovrom to the Convention Center as Executive Director. A consultant, Matrix, was hired to structure a plan to implement the consolidation.

This consolidation would result in a larger bureaucracy with less efficiency that would slow down construction and economic development. Many oppositions were raised from the members of the construction and development industry, union leaders, neighbor groups, city staffers, and councilmembers. Shortly after Mayor Garcetti took office, he also voiced his opposition.

Two councilmembers Curren Price and Tom LaBonge initiated a motion allowing Matrix more time to recommend more services improvement options in addition to a plan for consolidating two departments.  The motion was unanimously approved by all councilmembers and Mayor Garcetti. Meanwhile, Mayor Garcetti reconfirmed Chan as the interim LADBS general manager.

Subsequently, Matrix issued a report recommending 329 service improvements among many departments but opposing consolidation. The report was supported by the City Legislative Analyst and the City Administrative Officer and unanimously approved by the 15 councilmembers and Mayor Garcetti. Consolidation was terminated.

In two weeks, Mayor Garcetti appointed Chan as the permanent LADBS general manager. Later, Planning Director Michael Logrande was fired by Mayor Garcetti due to his lack of performance.

Before the Price-LaBonge motion was initiated and based on Huizar's request, Chan did submit a draft motion to Huizar for his review. Huizar decided not to use Chan's draft motion.

*__Government's 2nd Allegation (Count 22)__ – Chan aided and facilitated bribes for Huizar included Huang providing $600,000 in collateral in support of a loan to Huizar for a sexual harassment lawsuit.*

Shortly after a sexual harassment complaint against Huizar was publicized, his assistant, George Esparza, suggested to Huizar that Huizar should ask Huang to provide help to settle the complaint

because they just returned from a Vegas trip with Huang, where Huang lost a million dollar. So Huang must have the money to help Huizar.

Huizar contacted Harris Chan, the general manager of Huang's hotels, to seek help from Huang. Huang agreed to help. But the settlement negotiation with the complainant failed - a lawsuit then followed. At that time, Huizar was campaigning for his reelection. However, with no viable opponent in sight, Huizar decided to fight the lawsuit. Seven months later, a rumor that County Supervisor Gloria Molina would run against Huizar made him decide to settle the lawsuit.

Huizar asked Chan to calculate the amount of equity that he had in his two properties to see if there was enough to settle the lawsuit. Chan did that but Huizar said there was not enough for the settlement. Huizar said he would ask Huang for help.

Over two consecutive weekend trips to Vegas, Huizar sought help from Huang and Huang agreed to help Huizar. (This was the second time Huizar asked Huang for help and Huang agreed.) Huang told Chan about his support for Huizar and his Executive Director, Ricky Zheng, had hired an attorney, Henry Yong, to handle the arrangement of the fund. Huang also agreed with Chan that the arrangement had to be legitimate. Huang asked Chan to reiterate this message to Huizar and Zheng. Chan did.

Subsequently, Huizar and Attorney Yong structured the funding arrangement and they completed the funding process with Esparza, Zheng, and Yan Yan, an employee of one of Huang's hotels. The sexual harassment lawsuit was settled shortly after.

Chan knew about the lawsuit and Huang's support, and Chan was in one or two gatherings where the lawsuit was mentioned. However, Chan's involvement with this matter included: (1) suggesting Huizar to settle after the rumor of Supervisor Molina's running for his seat; (2) helping Huizar to find out the equity in his properties; and (3) advising Huang, Huizar, and Zheng that the fund arrangement had to be legitimate. Chan mentioned his involvement to the FBI during his interviews on November 7th and 8th, 2018.

***Government's 3rd Allegation (Count 22)** – Chan participated in conversations and meetings to enlist Huizar's help for Huang's planned L.A. Grand Hotel redevelopment project.*

9

Seven months after the lawsuit was settled. Huang asked Chan if his downtown hotel could be expanded – *the first time* Chan heard of Huang's idea of expanding the Hotel. Chan found out from staffers that approximately 500,000 sq. ft. could be added to the hotel. Chan told Huang.

A year later, Chan and his staffers met with Huang's architects. The purpose of the meeting was for Huang's architects to verify if the hotel could actually add 500,000 sq. ft. Chan's staffers provided them with relevant documents.

Soon after that, Chan retired form LADBS as general manager but was rehired by Mayor Garcetti, on a 1-year contract, as the Deputy Mayor of Economic Development.

A month later, Huizar's office invited Chan and senior staffers from the Planning Department to a meeting related to the L.A. Grand Hotel project. The attendees included Huizar, Huizar's staffers, Chan, Chan staffers, Planning Department's senior staffers, Huang, and the project's development team. It was a "meet and greet" meeting where there were exchanges of general questions and answers including design concepts and the type of available City's incentives. In the meeting, it was suggested that Huizar's office would take the lead to assist this project.

Two months later, Huizar told Chan that he received a drafted letter from Huang, through Zheng, for him to sign. The letter was to show support for L.A. grand and Chan's name was mentioned. Chan told Huizar to remove Chan's name from the draft letter and Huizar did. That was Chan's last involvement with the project.

***Government's 4th Allegation (Count 22)*** *– Chan also knew of other Huang's bribes to Huizar such as (1) all-expense-paid trips to Vegas and Australia, (2)over $200,000 in gambling chips at casinos; and (3) escort services.*

Starting in 2013, Huang invited Chan *multiple times* to join his Vegas trips. Chan always turned down the invitation because Chan knew that these trips would be inappropriate for public officials to go. Chan also advised Huang and Huizar, together and individually, that they should not take these trips together. Both ignored Chan's advice. Chan heard from Zheng that in those Vegas trips, there were transfers of gambling chips and escort services. But Chan was never there to verify.

***Government's 5th Allegation (Count 39) – During his interviews with the FBI on November 7th and 8th, 2018, Chan falsely stated that (1) he was not involved with the settlement of Huizar's sexual harassment lawsuit, while Chan was in some discussions; and (2) Huang did not have anything in front of Huizar that needed Huizar's help or involvement, and that Huang never asked Huizar for anything, while Chan had worked closely with Huang and Huizar on the L.A. Grand project.***

On November 7, 2018, Chan had a voluntary interview with the FBI. On November 8, 2018, Chan voluntarily called the FBI as he remembered and obtained more information.

In the interviews, Chan told the FBI that he knew about the lawsuit and Huang's help, but not the arrangement of the settlement fund because he was not involved with that. Chan also told the FBI that he suggested to Huizar that he should settle after the rumor of Supervisor Molina's running against him, and Chan helped Huizar to find out the equity in his properties.

During the November 7th interview, there was a 5½ minute conversation (00:49:03 to 00:54:41) where three topics were discussed:

1st Topic (00:49:03 to 00:49:47): The New L.A. Grand Hotel.

2nd Topic (00:49:38 to 00:54:05): The sexual harassment lawsuit and Existing Hotel Remodel.

3rd Topic (00:54:05 to 00:54:41): The new L.A, Grand Hotel

It was during the 2nd Topic (00:49:38 to 00:54:05) that Chan mentioned *"Huang did not have anything in front of Huizar that needed Huizar's help or involvement, and that Huang never asked Huizar for anything."* The reason Chan said that was because *at the time* of the lawsuit (2013-2014), Huang's hotel was only doing *remodeling and stuff like that* and *did nothing that involved any of the entitlement, any of the zoning* that needed Huizar's help.

Indeed, Chan mentioned the new L.A. Grand Hotel at least four times (at approximate times: 00:40:00, 00:49:00, 00:52:00, and 00:54:00) during the November 7th interview.

***Government's 6th Allegation (Count 28) – While Chan still worked for the City, Chan agreed with George Chiang, an agent of Hazens, that Chiang would pay a portion of his consulting fees to Chan in exchange for his assistance on the Luxe Hotel Project by exerting power over and influence***

*on various City departments like the Planning Department and the City Planning Commission (or*
*"CPC") to take official acts favorable to the Luxe Hotel Project. (In the First Superseding*
*Indictment, the government was referring to Deputy Planning Director Kevin Keller and CPC*
*President David Ambroz.)*

Chan and Chiang met in 2014 and became best friends. They treated each other like brothers. Chan taught Chiang Chinese Martial arts for free. Chan also mentored Chiang on different management skills to improve his effectiveness and efficiency.

From 2014 till Chan retired from the City in June 2017, Chan helped Chiang to handle and/or resolve many personal and business issues for Chiang's clients. Chan also helped Chiang with his clients' development projects (the Luxe Project was one of them) by advising him on how to handle and/or resolve various issues. However, Chan never played favoritism or used his official position to pressure any City's officials to benefit Chiang's projects.

Chan was alleged by the government of pressuring Planning Deputy Director Kevin Keller to meet with Chiang and the Luxe Hotel's Chairman Fuer Yuan in February 2017.

Since 2015, Keller had been willingly helping Chiang on the Luxe Project because the Luxe Project was the most important development in the Los Angeles Downtown district at that time. And prior to 2017, Keller and Chiang already had multiple lunches and coffees. Further, Keller had already attended a lunch and a dinner with Chiang, Chairman Yuan and others, Chan included. And in June 2016, through the request of Sonnet Hui, the project manager of the Luxe Project and a business friend of Keller, Keller set up a meeting for Yuan to meet Mayor Garcetti where Mayor Garcetti expressed his support for the Luxe Project.

In February 2017, based on Chiang's request, Chan invited Keller to have dinner with Chiang, Yuan, Chan, and others to celebrate Chinese New Year. After the dinner, Keller sent a text message, *"Really enjoyed seeing everyone. A fun evening."*

The government also alleged that in a May 2017 meeting, Chan pressured CPC President David Ambroz to vote favorably on the Luxe Project.

12

Ambroz was a close friend of Chan's boss, Mayor's Chief of Staff, Ana Guerrero. While Chan was a Deputy Mayor, Ambroz never agreed with Chan on any policies or project cases. They had a dysfunctional working relationship. Seven weeks before Chan retired, they had lunch for the purpose of patching up this tense relationship. During the 1-hour lunch, there were brief talk regarding various development policies and projects. One topic that dominated most of their conversation was digital signs. Ambroz was well known for being an opponent of digital signs. After lunch, they parted well.

Chan did not recall if the Luxe Hotel was even mentioned during lunch. In fact, at the time of the May lunch, the Luxe Project was under the review of the Planning Department and no one knew if the Planning Department would send an approval or denial recommendation to the CPC. Two months after Chan retired, the Planning Department sent a recommendation to approve the project to the CPC. Three months after Chan retired, the CPC had its 1st hearing on the Luxe Project and voted unanimously favoring the project. Four months after Chan retired, the CPC had its 2nd hearing and again voted unanimously favoring the Luxe Project.

From the day Chan met Chiang in 2014 to the day Chan retired from the City, Chan never asked for or received any kind of benefits from Chiang for helping Chiang. To Chan, Chiang was a brother he never had. Months before Chan retired as a Deputy Mayor, Chan and Chiang agreed that after Chan retired, they would work together as partners - to provide consulting services to development projects and to sell real estate properties to potential clients.  All net profit would be shared 50-50. This was the only agreement that Chan and Chiang had before they became partners.

    Right after Chan retired, he worked daily in Chiang's company (Synergy) to set up the operational logistics and recruit business for their partnership business. Chan also helped Chiang with his Synergy's work which was different from their partnership business. Chiang was very appreciative of Chan's hard work and offered to share a portion of his Luxe Project's monthly consulting fees with Chan. Chan refused and told Chiang that he needed money to raise his young family. Chiang then offered to share a small portion of the next two success bonuses that he would receive from the Luxe Project once certain milestones were reached. Chan accepted that offer.

In October 2017, Chiang received one of his success bonuses of $150,000 and he paid Chan $36,432,74. In December 2017, Chiang received another bonus of $185,000, he paid Chan $33,507.23. In the six months working together, Chiang made approximately $400,000 <u>after</u> sharing $70,000 with Chan. Chan was grateful because that was not part of their 50/50 partnership agreement.

In 2018, Chan, Chiang, and their consultants provided consulting services to 11 projects and brokered two real estates transactions. After expenses, Chan and Chiang split their annual net profit (salaries included) based on their 50-50 agreement – each received approximately $320,000.

***<u>Government's 7th Allegation</u> – After Chan became a private consultant, he bribed other public officials, including Huizar's Planning Director, to perform favorable official acts for the Luxe Hotel Project and projects for other Synergy clients, including through indirect financial payments to the public officials' relatives.***

After Chan retired, he spent 18 months helping Andy Wang to launch his failing home automation and kitchen cabinet businesses, <u>without compensation.</u> Chan did not know that Wang was already caught by the government for bribing two councilmembers and one council aid. While Chan spent hundreds of hours helping Wang, Wang was acting as an undercover agent for the government to trap Chan.

In November 2017, Wang asked Chan to recommend someone to organize a promotional event. Chan recommended Ave Jacinto, the wife of a Public Work Commissioner, who had extensive experience in sales and event organization. Ms. Jacinto worked hard and produced a very successful event and Wang was impressed and paid her $6,000. Five months later, in March 2018, Wang decided to re-hire Ms. Jacinto to help develop and promote his businesses. From April to December, Ms. Jacinto worked numerous hours to hold or attend more than 25 meetings, develop a business plan and a sales brochure, recruit potential clients, and organize a major promotional event for Wang. For her eight months work, Ms. Jacinto was paid a total of approximately $16,110. That was the money the government alleged as bribe money for Chan to influence Ms. Jacinto's husband, the Public Works Commissioner Joel Jacinto.

Chan also introduced another community leader, Hal Bastian, who has a nickname, Mayor of Downtown, to help Wang recruit potential clients. Wang also paid Bastian approximately $15,000. Bastian and the pay that he received from Wang was not mentioned by the government.

In May 2018, Shawn Kuk, the Planning Deputy from Huizar's office decided to leave the office in a few months. It was because with two young children and going through a divorce, his salary was inadequate. Chan, Chiang, and Kuk had reached an agreement that after Kuk left the City, Kuk would work with Chan and Chiang as an independent consultant – not to influence City's officials but only to advise Chan and Chiang on entitlement processes and policies.

Chan thought that Kuk, after he left the City, could introduce some of the people in the development industry whom he knew to Wang.  And Wang would pay him a finder's fee or commission when a sale was made.  So Chan introduced Kuk to Wang.

 The government immediately exercised excessive entrapment on Kuk and Chan. The government, through Wang, attempted multiple times to get Kuk to accept $10,000 in the form of a check and cash.  But Kuk never took the $10,000 and eventually Chan told Wang to stop that. So the entrapment effort failed.

*__Government's 8th Allegation__ – Chan was a member of Huizar's racketeering enterprise to enrich members and advance the goals of the enterprise.*

A summary of what Chan did will show that Chan was not a member of Huizar's enterprise:

1.   Chan told Huizar not to go to Vegas with Huang.

2.   Chan did not ask Huang to help Huizar with his lawsuit settlement nor Chan engaged in facilitating the settlement fund.

3.   Huizar requested Yuan to contribute $100,000 to a Political Actions Committee that supported Huizar's wife's campaign and Yuan agreed. Chan and Chiang stopped that and Yuan did not made the contribution.

4.   Chan told Chiang many times, in person and over the phone, not to trust Huizar. Some of phone conversations were recorded by the government.

5.   After Chan retired, he held nine fundraising events for City, County, and State political candidates. Chan did not hold any fundraising event for Huizar.

6.   After Chan retired, he attended four fundraising events for political candidates. Chan did not attend Huizar's fund raising event.

7.   Huizar held the council seat for 14 years, there were a total of $3.7 million contributed to his campaigns and office holders. Chan and his wife contributed only $1,600, after Chan retired.

8.   Huizar's wife announced her candidacy for Huizar's seat in September 2018 and terminated her campaign in 2019. In these 4 months. There were a total of $101,129 (387 contributions) contributed to her campaign. Chan and his wife did not make any contribution.

As the government stated in its statement, Chan is presumed innocent until proven guilty. We will show facts and overwhelming evidence in trial to prove Chan's  innocence beyond a reasonable doubt.

16

1

**GOVERNMENT'S POSITION**

2    The government's Proposed Summary of the Case most closely

3    follows this Court's orders (Dkt. Nos. 147, 441), most clearly

4    summarizes the relevant facts and allegations pertaining to defendant

5    Raymond Chan in the First Superseding Indictment, and most closely

6    aligns with the agreed-upon summaries that defense counsel agreed to,

7    and this Court accepted, in both the Lee/940 Hill and SZNW trials.

8    (Dkt. Nos. 469, 751.)

9    As in the other two trials, the government understands the

10   purpose of the summary of the case to be a statement that is read to

11   the prospective jurors to apprise them of the allegations of the

12   indictment so they have a general understanding of the facts at issue

13   in the case prior to jury selection.  The government's proposed

14   version fairly and accurately summarizes those factual allegations,

15   which it has the burden to prove beyond a reasonable doubt at trial.

16   The defense's proposal, by contrast, is largely a point-by-point

17   rebuttal of the government's allegations and effectively constitutes

18   closing argument before the jury is even seated.  The proposal is

19   replete with excessive detail and improper argument, and largely

20   consists of purported facts and hearsay that may not be evidentiarily

21   admissible at trial.  Defendant's proposed summary also claims the

22   government engaged in "excessive entrapment," a legal defense that

23   defendant has not previously raised, is not supported by the facts,

24   and is inappropriate to reference to the jury prior to the

25   commencement of voir dire.

26   Accordingly, the government respectfully requests that the Court

27   accept the government's proposed version of the Summary of the Case.

28

17

**DEFENDANT'S POSITION**

Defense counsel provided the following position in a February 8, 2023 email: "Chan's version is obviously his side of the case, The jury will have to decide whether to believe Chan or the lying government witnesses. Let the Judge decide which to use or best to use both. The Judge can tell the jury that Mr. Chan WILL testify."

18