1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS (Cal. Bar No. 242101)
   Assistant United States Attorney
3  Chief, Criminal Division
   CASSIE D. PALMER (Cal. Bar No. 268383)
4  SUSAN S. HAR (Cal. Bar No. 301924)
   BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
5  Assistant United States Attorneys
   Public Corruption & Civil Rights Section
6       1500 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-2091/0363/3289/3819
8       Facsimile: (213) 894-6436
        E-mail:   Mack.Jenkins@usdoj.gov
9                 Cassie.Palmer@usdoj.gov
                  Susan.Har@usdoj.gov
10                Brian.Faerstein@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

12
                   UNITED STATES DISTRICT COURT
13
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
14
   UNITED STATES OF AMERICA,          No. CR 20-326(A)-JFW-2
15
              Plaintiff,              RESPONSE TO (1) DEFENDANT'S FILED
16                                    OBJECTIONS (DKT. 962) AND
              v.                      (2) UNFILED PRELIMINARY COMMENTS
17                                    ON PROPOSED JURY INSTRUCTIONS AND
   RAYMOND SHE WAH CHAN,              VERDICT FORMS; COMMENT ON CITY
18   aka "She Wah Kwong,"             ETHICS RULES (EXHIBIT A)

19            Defendant.              Trial Date:  February 21, 2023
                                      Trial Time:  8:30 A.M.
20                                    Location:    Courtroom of the
                                                   Hon. John F. Walter
21

22

23
        Plaintiff United States of America, by and through its counsel
24
   of record, the United States Attorney for the Central District of
25
   California and Assistant United States Attorneys Mack E. Jenkins,
26
   Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby
27
   submits its Response to (1) Defendant's Filed Objections (Dkt. 962),
28

and (2) Unfiled Preliminary Comments on Proposed Jury Instructions and Verdict Forms; Comment on City Ethics Rules (Exhibit A).

This response is based upon the attached memorandum of points and authorities and accompanying exhibit, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 28, 2023          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  ___/s/ Cassie D. Palmer_____
                                  CASSIE D. PALMER
                                  MACK E. JENKINS
                                  SUSAN S. HAR
                                  BRIAN R. FAERSTEIN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

TABLE OF AUTHORITIES...............................................i

TABLE OF EXHIBITS................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION AND BACKGROUND..................................1

II.   ARGUMENT....................................................4

    A.   The Government Has Charged Cognizable Theories and the
        Proposed Instructions and Verdict Form Accurately
        Reflect the Law.........................................4

    B.   Defendant Fails to Show That the Government Seeks to
        Constructively Amend the FSI Through the Jury
        Instructions............................................8

III. CONCLUSION..................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Federal Cases**

Kelly v. United States,
   140 S. Ct. 1565 (2020) ........................................ 7

McDonnell v. United States,
   579 U.S. 550 (2016) .................................. 10-11, 12

Stirone v. United States,
   361 U.S. 212 (1960) ................................. 8, 9, 14

United States v. Baker,
   63 F.3d 1478 (9th Cir. 1995) ................................ 13

United States v. Doherty,
   867 F.2d 47-56 (1st Cir. 1989) ........................... 7-8

United States v. Emery,
   186 F.3d 921 (8th Cir. 1999) ................................ 13

United States v. Fernandez,
   388 F.3d 1199 (9th Cir. 2004) .............................. 3

United States v. Granberry,
   908 F.2d 278 (8th Cir. 1990) ................................ 7

United States v. Hartz,
   458 F.3d 1011 (9th Cir. 2006) ..................... 9, 10, 14

United States v. Hicks,
   217 F.3d 1038 (9th Cir. 2000) ..................... 9-10, 13

United States v. Kaplan,
   836 F.3d 1199 (9th Cir. 2016) ..................... 9, 13

United States v. Kimbrew,
   944 F.3d 810 (9th Cir. 2019) ............................... 11

United States v. Lopez-Gonzalez,
   183 F.3d 933 (9th Cir. 1999) ............................... 13

United States v. Rodriguez,
   971 F.3d 1005 (9th Cir. 2020) ..................... 9, 13

United States v. Von Stoll,
   726 F.2d 584 (9th Cir. 1984) ..................... 9, 13

United States v. Wallace,
   59 F.3d 333 (2d Cir. 1995) ................................. 13

i

United States v. Yates,
    16 F.4th 256 (9th Cir. 2021)  ................................... 7

**Federal Statutes**

18 U.S.C. § 2 .............................................. 5, 6

18 U.S.C. § 201 ........................................... 10, 11

## TABLE OF EXHIBITS

| Exhibit | Description | Cite |
|---------|-------------|------|
| A | Defendant's Preliminary Comments on Proposed Jury Instructions and Verdict Forms; Comment of City Ethics Rules (provided to government by email on February 13, 2023) | 1, 3 |

1                 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.   INTRODUCTION AND BACKGROUND**

3      On February 13, 2023, the government filed its proposed verdict

4 form (CR 945) and jury instructions (both instructions for during

5 trial (CR 944) and for the end of trial (CR 942)).  As noted in the

6 government's concurrently filed statement (CR 941), defendant failed

7 to timely provide any positions regarding the verdict form or jury

8 instructions.  (Id. at 1-2.)  After the government had prepared these

9 filings, defendant belatedly sent the government a document titled

10 "Preliminary Comments on Proposed Jury Instructions and Verdict

11 Forms; Comment on City Ethics Rules" (the "Commentary") without any

12 explanation in the transmitting email as to the purpose of the

13 Commentary.  (Ex. A.)  In response, the government advised

14 defendant's counsel that he should file the Commentary directly with

15 the Court if he wished it to be part of the record because the

16 government had already filed the aforementioned documents per the

17 Court's scheduling order.[1]  Defendant's counsel did not file the

18 Commentary at that time.

19      At the Final Pretrial Conference on February 15, 2023,

20 defendant's counsel raised some of the arguments in the Commentary

21 and said he believed he had filed and/or preserved those arguments.

22 The government advised defendant's counsel and the Court that the

23 Commentary had not been filed and government counsel provided a paper

24

25 _____

26     [1] Specifically, government counsel stated: "[T]hank you for
sending us this document.  Because it was not in the format requested
by the court for today's court ordered filings or timely provided, we
27 could not incorporate it into the jury instructions document Cassie
filed earlier today.  However, if you mean this to be your position
28 regarding jury instructions[,] we have no objection to you filing it
as your own standalone document."

1  copy for the Court's reference.  The Court ordered defendant to file

2  the Commentary on the docket if he wished to preserve the arguments

3  he had raised therein.  On February 17, 2023, defendant filed his

4  "Objections to Government's Jury Instructions" raising new challenges

5  to the government's jury instructions that were not included in the

6  unfiled Commentary.  (CR 962 ("Objections").)

7      In an effort to make a clear record, the government submits this

8  response to (1) the Commentary, which defendant never filed but

9  raised orally at the Final Pretrial Conference, and (2) the

10  Objections, which defendant belatedly filed well after the government

11  repeatedly sought to meet and confer with defendant on the

12  government's proposed jury instructions and verdict form.  The

13  government attaches the Commentary as Exhibit A (so it is preserved

14  in the record) and addresses herein the objections defendant appears

15  to maintain in both the Commentary and the Objections.[2]  The

16  government is responding to defendant's arguments (in whatever form

17  he made them) so that, if the Court elects to consider any of his

18  objections, the government will have provided a fulsome response

19  sufficient to overrule all of them.

20      In the Commentary, defendant: (1) claims that the application of

21  a RICO theory to a case involving public officials is problematic;

22  and (2) argues the government's bribery theories and instructions are

23  infirm.[3]  In the Objections, defendant: (1) brings a broad,

24  _____

25     [2] The government's response here supplements the positions it
set forth in its Statement Regarding the Government's Proposed

26  Verdict Form and Jury Instructions (CR. 941), which the government
filed in response to defendant's failure to timely meet and confer

27  regarding the government's proposed instructions and verdict form.

   [3] Defendant also appeared to initially request in the unfiled

28  Commentary that the Court exclude evidence relating to Los Angeles

*(footnote cont'd on next page)*

1    unspecified constructive amendment challenge to the government's

2    proposed jury instructions on each count of the First Superseding

3    Indictment ("FSI"), relying on a bare assertion that the jury

4    instructions "appear to be language adopted by the Government rather

5    than language from the Indictment"; (2) makes a specific constructive

6    amendment challenge to the government's instructions on Counts 12 and

7    13, arguing that the instruction impermissibly adds "advis[ing]

8    another official" to the FSI; and (3) objects to Counts 2-5 of the

9    FSI that charge defendant with aiding and abetting Honest Services

10   Fraud, asserting that those counts "only accuse Jose Huizar of

11   misconduct" and provide "no reference to Defendant Chan nor any

12   explanation of how Defendant Chan could be criminally responsible for

13   the conduct of Jose Huizar."  (CR 962 at 2.)

14        The Court should reject defendant's erroneous arguments and deny

15   his unfounded requests.[4]

16

17   _____

18   City Ethics Rules but that request does not appear in the Objections
     that he filed with the Court, which the government concludes means

19   that he has withdrawn it.  In any case, defendant's objection is
     untimely, to the extent it challenges ethics testimony, because he

20   failed to move to exclude any ethics evidence (opinion or otherwise)
     and did not join in defendant Huizar's motion to exclude ethics

21   opinion testimony.  (See CR 886.)  And any concern that the jury may
     be confused about what defendant is actually charged with will be

22   ameliorated by the detailed jury instructions on the charges and the
     limiting instruction relating to the ethics evidence.  See CR 977 at

23   7 (Gov't Proposed Jury Instruction No. 7 – Evidence for a Limited
     Purpose re: Ethics and Campaign Finance); United States v. Fernandez,

24   388 F.3d 1199, 1243 (9th Cir. 2004) ("We have repeatedly held that a
     district court's careful and frequent limiting instructions to the

25   jury, explaining how and against whom certain evidence may be
     considered, can reduce or eliminate any possibility of prejudice

26   arising from a joint trial.") (internal citations omitted).

          [4] The Court already has ruled that defendant's responses to the

27   government's jury instructions were untimely.  The government
     nevertheless provides this response to defendant's objections to the

28   jury instructions to make a complete record as to why there are not
     just untimely but also unmeritorious.

                                      3

## II.  ARGUMENT

### A.  The Government Has Charged Cognizable Theories and the Proposed Instructions and Verdict Form Accurately Reflect the Law

Defendant first claims in the Commentary that "there are serious structural problems with the government's case" because the government "has attempted to apply a RICO theory designed for a criminal enterprise to the raising of political funds, as well as the building approval process in Los Angeles." (Ex. A at 2.)  Defendant argues that the line between "legal and illegal is murky," but "the jury instructions and the jury verdicts require rules that they protect free expression and democratic political expression" but "neither do in this case[.]"  (Id.)  Defendant offers no alternative or additional language he would include in the jury instructions or verdict form to ensure such protection of "free expression and democratic political expression" -- as is contemplated and required by the Court's pretrial process for meeting and conferring on the proposed instructions and verdict form -- nor does he explain precisely how the government's proposed instructions fail to do so.

Defendant also notes in the Commentary that "McDonnell has limited the definition of 'official act' and Kelly has limited the definition of property fraud to eliminate incidental expenses," concluding (correctly) that not "every corrupt act by state or local officials is a federal crime."  (Id.)  Defendant broadly contends that the application of "the incoherent RICO statute to state political conduct and fundraising is constitutionally dangerous." (Id.)

4

1    Furthermore, in the Objections, defendant appears to argue that
2  the four Honest Services Fraud counts (Counts 2-5[5] of the FSI) do not
3  apply to him because those counts "only accuse Jose Huizar of
4  misconduct" and provide "no reference to Defendant Chan nor any
5  explanation of how Defendant Chan could be criminally responsible for
6  the conduct of Jose Huizar."  (CR 962 at 2.)
7    First, with respect to how the government charged this case, as
8  the Court noted at the Final Pretrial Conference, the FSI has been
9  challenged in extensive pretrial litigation, including the RICO
10  count, the Honest Services Fraud and bribery counts, and the official
11  acts alleged within those counts.  Indeed, defendants have moved to
12  dismiss and strike language from the RICO count, all Honest Services
13  Fraud counts, all bribery counts, and all Travel Act counts,
14  including moving to strike several official acts alleged in the FSI
15  based upon arguments similar to those defendant raises here.  (See CR
16  229 & 231 (Lee/940 Hill's Mot. to Strike Language from Counts 5 & 25,
17  respectively (Honest Services Fraud and Bribery Counts against
18  Lee/940 Hill)); 235 (All Defs' Motion to Dismiss or Strike Language
19  from Counts 1-30 (RICO; Honest Services Fraud; Bribery; and Travel
20  Act)); 251 (All Defs' Motion to Dismiss Counts 2-17 (Honest Services
21  Fraud)).)  The Court denied these motions and held that the
22  government's theories were cognizable and properly alleged in the
23  FSI.  (See CR 324 (Denying CR 229 & 231), 330 (Denying CR 235, 251).)
24  Defendant's attempt to relitigate these issues on the eve of trial
25  under the auspices of purported arguments on the jury instructions
26  not only constitutes an untimely attack on the FSI but also presents
27
28    [5] Defendant is not charged in Count Five.  He is charged with
    aiding and abetting Counts Two, Three, and Four.

nothing new or different than the arguments the Court has already considered and rejected.[6]  The Court should decline to revisit those rulings.

With respect to the portions of the Commentary that appear aimed at the jury instructions and verdict form, as opposed to a broad attack on the FSI, defendant poses several questions: (1) "Where is the definition of an 'official act'[; (2)] where is normal conduct by a public official excluded?"; and (3) "Where are incidental labor costs defined and excluded?"  (Id. at 1-2.)

As to defendant's first and second questions, the definition of "official act" is set forth in detail in the government's proposed instructions, as follows:

> "Official act" means any decision or action on a question, matter, cause, suit, proceeding, or controversy involving the formal exercise of governmental power.  The question, matter, cause, suit, proceeding, or controversy must be pending, or be able by law to be brought, before a public official, and the question, matter, cause, suit, proceeding, or controversy must be something specific and focused, rather than a broad policy objective.
>
> The official's decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official.  The bribe recipient need not be the final decisionmaker.

---

[6] Moreover, as the government's proposed instruction No. 29 makes clear, the government's theory as to Counts 2, 3, and 4 is that defendant aided and abetted the commission of Honest Services Wire Fraud by Huizar and Shen Zhen.  (See CR 942 at 44-49.)  Under the aiding and abetting theory, the government does not need to satisfy every element of Honest Services Wire Fraud.  The government only needs to prove, among others, that defendant aided another's commission of the offense with respect to just one element.  (See Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed) [Aiding and Abetting (18 U.S.C. § 2(a)].)  As for Count 5, defendant is correct.  The government already acknowledged in its trial brief that only Counts 2-4, but not Count 5, apply to defendant.  (CR 943 at 1.)

6

> The government does not need to prove that the official ever actually intended to perform an official act or that the official ever did, in fact, perform an official act.
>
> Merely arranging a meeting, hosting an event, or giving a speech do not qualify as the taking of a specific action.

(CR 942 at 54:2-19 (Instruction No. 28: Honest Services Wire Fraud).) Notably, this definition not only includes what an official act is (the first three paragraphs), but also includes what it is not (the last sentence). That last sentence encompasses "normal conduct by a public official" that, without more, does "not qualify as the taking of a specific action."

Third, defendant's contention that the "thing of value" alleged by the government is insufficient under Kelly v. United States, 140 S. Ct. 1565 (2020) is equally misplaced. Kelly was not a bribery case. In Kelly, the Supreme Court held that the scheme to commandeer the George Washington Bridge was "an exercise of regulatory power," such that obtaining money or property simply was not an object of the scheme. Id. at 1566, 1568-69. The labor costs of the employees who unwittingly were caught up in that exercise of regulatory power, while having some monetary value, was insufficient to support the charge because the value "was just the incidental cost of the regulation, rather than itself an object of the officials' scheme." Id. at 1569.

The facts here are inapposite: the government has alleged and intends to prove at trial that a primary object of the scheme was for defendant and his co-schemers to get money through a bribery scheme. Indeed, the government alleges that as part of the scheme, defendant helped Huizar and other public officials get money and also got money for himself and his son. This simply is not a case where the thing

7

1    of value alleged is a mere incidental byproduct of the scheme.

2    Instead, obtaining money was a primary objective of the scheme.  <u>See</u>

3    <u>United States v. Yates</u>, 16 F.4th 256, 266 (9th Cir. 2021) ("salaries

4    and other financial employment benefits are both forms of 'money'")

5    (citations omitted); <u>United States v. Granberry</u>, 908 F.2d 278, 280

6    (8th Cir. 1990) (new job and salary from fraudulent job application

7    sufficient to support fraud count); <u>United States v. Doherty</u>, 867

8    F.2d 47, 55–56 (1st Cir. 1989) (Breyer, J.) (same as to higher salary

9    from a promotion obtained under false pretenses).[7]

10         **B.    Defendant Fails to Show That the Government Seeks to
                    Constructively Amend the FSI Through the Jury Instructions**

11         In the filed Objections, defendant makes two separate challenges

12   that appear to allege constructive amendments to the FSI, but both

13   fail.

14         First, defendant, without citing any relevant authority, makes a

15   blanket objection to all the jury instructions on all the counts of

16   the FSI, arguing that the jury instructions "appear to be language

17   adopted by the Government rather than language from the Indictment."

18   (CR 962 at 2.)  Second, defendant challenges the government's

19   instructions on Counts 12 and 13, suggesting that the instructions

20   constructively amend the FSI by including a reference to "advise

21

22   _____

23        [7] To the extent that defendant's question – "Where are
     incidental labor costs defined and excluded?" – is aimed at the
24   formulation of the government's § 666 bribery instruction, he offers
     no alternative language to remedy the purported infirmity he
25   complains of.  And it appears to stem from a misunderstanding of the
     § 666 bribery theory charged here (which is not implicated by the
26   Supreme Court's <u>Kelly</u> concerns about whether "labor" costs were an
     object of the fraud scheme or an "incidental" effect of it.)  In any
27   event, the government's proposed instructions on bribery concerning
     programs receiving federal funds and aiding and abetting the same are
28   similarly supported by substantial authority set forth in the
     government's proposed instructions.  (<u>See</u> CR 942 at 66:20 – 67:18
     (Instruction No. 32), 71:26–72:13 (Instruction No. 33).)

1  another official" as part of the definition of "official act,"

2  because the word "advise" does not explicitly appear in the specific

3  charging language of Counts 12 and 13.

4      In Stirone v. United States, the Supreme Court held that:

5  "[A]fter an indictment has been returned its charges may not be

6  broadened through amendment except by the grand jury itself."  361

7  U.S. 212, 215-16 (1960).  Minor differences between an indictment and

8  the proof offered at trial could be dismissed as "nothing more than a

9  variance," id. at 217, whereas an impermissible constructive

10  amendment of the indictment "occurs when the charging terms of the

11  indictment are altered, either literally or in effect, by the

12  prosecutor or a court after the grand jury has last passed upon

13  them."  United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.

14  1984).  In determining whether the jury instructions in a criminal

15  case are an impermissible amendment of the indictment, the Ninth

16  Circuit has held that "[a] minor difference between the indictment

17  and the jury instructions that does not affect an essential element

18  of the offense does not risk blindsiding a defendant with an

19  unforeseeable basis of liability or prosecution strategy," and thus

20  does not constitute a constructive amendment.  United States v.

21  Hartz, 458 F.3d 1011, 1022-23 (9th Cir. 2006) (citing United States

22  v. Redd, 161 F.3d 793, 796 (4th Cir. 1998)) (rejecting assertion that

23  language of jury instructions that varied from indictment language

24  constituted impermissible "constructive amendment" of indictment).

25      In the Objections, other than a broad reference to the

26  Constitution, defendant offers no authority requiring that the

27  language of the jury instructions on individual counts of the

28  indictment must track the language of the indictment word for word.

1   (CR 962 at 2.)  On the contrary, the Ninth Circuit has ruled in case

2   after case that district courts have discretion over the formulation

3   and wording of jury instructions.  See, e.g., United States v.

4   Rodriguez, 971 F.3d 1005, 1017 (9th Cir. 2020); United States v.

5   Kaplan, 836 F.3d 1199, 1214 (9th Cir. 2016).  Indeed, "[t]he trial

6   court has substantial latitude so long as its instructions fairly and

7   adequately cover the issues presented."  United States v. Hicks, 217

8   F.3d 1038, 1045 (9th Cir. 2000) (citation and internal quotation

9   marks omitted).

10       In addition, defendant fails to identify (save for one instance

11  discussed below) where any differences between the language of the

12  FSI and the government's proposed instructions constitute a

13  constructive amendment of the FSI.  As the objecting party, defendant

14  has the burden to explain how the language in the government's

15  proposed instructions represents a constructive amendment.  But

16  defendant does not and cannot meet that burden.  Any differences in

17  language between the FSI and the instructions are permissible

18  variances, that is, "minor difference[s] that do[] not affect an

19  essential element of the offense."  Hartz, 458 F.3d at 1022-23.

20  Defendant thus fails to show that the Court's adoption of the

21  government's proposed instructions would lead to a constructive

22  amendment of the FSI.

23       The same is true with respect to defendant's second constructive

24  amendment challenge, premised on the government's inclusion of the

25  language "advise another official" in the proposed instructions on

26  Counts 12 and 13, which defendant raised in the Objections and at the

27  Final Pretrial Conference.  Defendant's challenge ignores controlling

28  authority in McDonnell v. United States, 579 U.S. 550 (2016) and

10

corresponding guidance from Ninth Circuit Model Criminal Jury Instruction No. 10.1 (Official Act -- Defined (18 U.S.C. § 201(a)(3)) -- both of which include identical wording in their definitions of "official act."  See McDonnell, 579 U.S. at 574 ("That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official."); Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) (Official Act -- Defined (18 U.S.C. § 201(a)(3)) ("The official's decision or action may include using [his] official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official."); see also United States v. Kimbrew, 944 F.3d 810, 815 (9th Cir. 2019) (adopting McDonnell's definition of official act).  Thus, the government's proposed official act definition is supported by binding Supreme Court and Ninth Circuit precedent.

While defendant is correct that the words "advise another official" do not appear in the FSI, other language in the FSI plainly encompasses such conduct.  The FSI lists seven examples of "types of official acts, among others," including "(4) exerting pressure on other City officials to influence the approval process of projects." (FSI ¶ 45.b (emphasis added).)  In addition, the government alleged in other portions of the FSI that defendant used his official position to seek to influence or pressure others, and such conduct is consistent with "advising."  (See, e.g., FSI ¶ 4, introductory allegations ("Even for projects that were not going through the City

11

approval process, City officials could benefit a project or take
adverse action against a project by advocating for or against the
project, including by <u>pressuring or seeking to influence other City
officials, departments, business owners, and stakeholders</u>") (emphasis
added); FSI ¶ 42(b), RICO means ("(4) exerting pressure on other City
officials to influence the approval and/or permitting process of
projects"); FSI ¶ 43, Overt Act No. 194 ("defendant CHAN agreed with
George Chiang that Chiang would pay a portion of the Synergy
consulting fees to defendant CHAN, in exchange for defendant CHAN's
assistance on the Luxe Hotel Project in defendant CHAN's official
capacity as Deputy Mayor of Economic Development, <u>including for
exerting power over and influence on various City departments</u>,
including the Planning Department and the CPC, to benefit the Luxe
Hotel Project.") (emphasis added); FSI ¶ 43, Overt Act No. 199 ("On
February 8, 2017, defendant CHAN, <u>using his power and influence as
Deputy Mayor</u>, coordinated a meeting between the Deputy Planning
Director and representatives of Jia Yuan, including George Chiang and
Fuer Yuan.") (emphasis added); FSI ¶ 43, Overt Act Nos. 228-232 ("as
part of defendant CHAN's <u>plan to influence</u> Joel Jacinto's official
acts") (emphasis added).  Given these enumerated examples of
defendant seeking to wield his significant City influence expressly
described in the FSI, defendant cannot credibly claim he was
unprepared for a trial theory that describes him as having advised
other public officials to take certain actions as part of the alleged
scheme.

   As previously explained, <u>McDonnell</u> makes clear that
"influencing" not only includes pressuring but also "advis[ing]
another official, knowing or intending that such advice will form the

12

1  basis for an 'official act' by another official." McDonnell, 579

2  U.S. at 574.  In other words, advising, as described in McDonnell, is

3  simply one way, or means, that a public official can take action

4  through exerting their influence on others.  Thus, despite the

5  absence of the terms "advise" or "advising" in the FSI, the language

6  in the FSI contemplates such conduct and does not "blindside[e]"

7  defendant "with an unforeseeable basis of liability or prosecution

8  strategy." Hartz, 458 at 1022-23.  The Court's adoption of the

9  "advise another official" language in the government's proposed

10 instructions, which is taken verbatim from McDonnell's and the Ninth

11 Circuit's model instruction definitions of "official act," is

12 appropriate and well within the Court's power and discretion to

13 provide definitions, descriptions, and illustrations to the jury to

14 aid jurors' understanding of the charges and the applicable laws

15 through jury instructions.  See Rodriguez, 971 F.3d at 1017 (district

16 court's formulation of jury instructions is within the court's

17 discretion); Kaplan, 836 F.3d at 1214 (district court has discretion

18 over wording of jury instructions); Hicks, 217 F.3d at 1045 (district

19 court has substantial latitude in crafting instructions if they

20 fairly and adequately cover the issues presented).  Any differences

21 in wording between Counts 12-13 and the government's proposed

22 instructions on those counts represent "nothing more than a variance"

23 that the Supreme Court and the Ninth Circuit have permitted.[8]

24 _____

25       [8] To be clear, the government does not contend nor concede that
   the inclusion of the "advise another official" language in the jury
26 instructions would constitute a variance – fatal or otherwise –
   because the evidence the government intends to marshal at trial will
27 not "prove[] facts materially different from those alleged in the
   indictment."  Von Stoll, 726 F.2d at 586 (citation
28 omitted).  Moreover, defendant has not, and cannot, establish
                        *(footnote cont'd on next page)*

                              13

1   *Stirone*, 361 U.S. 217; *Hartz*, 458 F.3d at 1022-23.  As with his broad

2   attack on Counts 1 through 27, defendant again fails to show that the

3   Court's adoption of the government's proposed instructions would lead

4   to a constructive amendment of Counts 12 through 13 of the FSI.

5       Accordingly, this Court should overrule defendant's non-specific

6   and unsupported objections and adopt the government's proposed jury

7   instructions and verdict form that are each supported by controlling

8   Supreme Court and Ninth Circuit precedent.

9   **III.  CONCLUSION**

10      For the foregoing reasons, the Court should deny the requests

11  and objections in defendant's Objections (CR 962) and unfiled

12  Commentary.

13

14

15

---

16  prejudice because he has notice both as to (1) what he is charged
    with and (2) the acts and events that are the subject of those

17  charges, that is, defendant's acts of using his office to influence,
    advise, and pressure other officials.  *See* United States v. Emery,

18  186 F.3d 921, 928 (8th Cir. 1999) (no fatal variance where indictment
    did not mention another person involved in crime and proof at trial

19  did because defendant had notice of charge and was not
    prejudiced); United States v. Wallace, 59 F.3d 333, 338 (2d Cir.

20  1995) (variance not prejudicial when indictment did not mislead
    defendant "as to the acts and events that were the subject of the

21  trial").  Further, the government's proposed instruction here, which
    adopts the definition of official act from McDonnell and the Ninth

22  Circuit's model, uses simple, straightforward language that would be
    helpful to the jury and is synonymous with the language used in the

23  indictment, alleging that defendant used his power and influence over
    other public officials.  *See* United States v. Lopez-Gonzalez, 183

24  F.3d 933, 935 (9th Cir. 1999) (no fatal variance because
    "deportation" in indictment and "removal" in conviction

25  synonymous); United States v. Baker, 63 F.3d 1478, 1499 (9th Cir.
    1995) (no fatal variance when indictment charged "receiving and

26  distributing" contraband and jury instructed regarding "selling and
    purchasing" because terms synonymous).

27

28