E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
 1500 United States Courthouse
 312 North Spring Street
 Los Angeles, California 90012
 Telephone: (213) 894-2091/0363/3289/3819
 Facsimile: (213) 894-6436
 E-mail: Mack.Jenkins@usdoj.gov
   Cassie.Palmer@usdoj.gov
   Susan.Har@usdoj.gov
   Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>    v.<br><br>RAYMOND SHE WAH CHAN,<br> aka "She Wah Kwong,"<br><br>   Defendant. | No. CR 2:20-326(A)-JFW-2<br><br>GOVERNMENT'S REDACTED OPPOSITION TO DEFENDANT'S MOTION FOR MISTRIAL; EXS. A-B; DECLARATION OF SUSAN S. HAR<br><br>Date:  March 22, 2023<br>Time:  8:00 a.m.<br>Location: Ctrm of the Hon. John F.<br>     Walter |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files the Government's Opposition to Defendant's Motion for Mistrial.

   The government's Opposition is based upon the attached memorandum of points and authorities, the supporting exhibits and

declaration, the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: March 20, 2023          Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney


                                   _/s/_____
                               SUSAN S. HAR
                               MACK E. JENKINS
                               CASSIE D. PALMER
                               BRIAN R. FAERSTEIN
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................ii

TABLE OF EXHIBITS..................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION...................................................1

II.   RELEVANT FACTS................................................1

      A.    Harland Braun's Representation of Defendant..............1

      B.    The Trial...............................................3

      C.    Current Record Regarding Harland Braun's Medical
            Condition...............................................5

      D.    Defendant's Motion for Mistrial........................11

III.  LEGAL STANDARD...............................................12

IV.   ARGUMENT.....................................................14

      A.    Denial of the Mistrial Best Protects Defendant's Right
            to His Chosen Counsel, Harland Braun...................14

      B.    The Current State of the Record Regarding Harland
            Braun's Medical Status Does Not Support a Mistrial.....17

      C.    The Court Can Make Accommodations, if Necessary, to
            Permit Harland Braun to Complete the Trial.............18

      D.    Preservation of Resources Supports Denial of the
            Mistrial...............................................19

      E.    Any Prolonged Recess Prejudices the Government.........21

V.    CONCLUSION...................................................24

**TABLE OF AUTHORITIES**

Page(s)

Cases

Arizona v. Washington,
  434 U.S. 497 (1978) ......................................... 12, 16
Citron v. Aro Corp.,
  377 F.2d 750 (3d Cir. 1967) ..................................... 23
Corley v. Cardwell,
  544 F.2d 349 (9th Cir. 1976) .................................... 12
Illinois v. Somerville,
  410 U.S. 458 (1973) ............................................ 13
Luis v. United States,
  578 U.S. 5 (2016) ............................................. 14
United States v. Banks,
  514 F.3d 959 (9th Cir. 2008) .................................... 12
United States v. Bates,
  917 F.2d 388 (9th Cir. 1990) ........................... 13, 16, 18
United States v. Benson,
  686 F.3d 498 (8th Cir. 2012) .................................... 21
United States v. Daniel,
  676 Fed. App'x 675 (9th Cir. 2017) ............................. 22
United States v. Diggs,
  649 F.2d 731 (9th Cir. 1981) ................................ 21, 24
United States v. Gonzalez-Lopez,
  548 U.S. 140 (2006) ............................................ 14
United States v. Hay,
  122 F.3d 1233 (9th Cir. 1997) .............................. 21, 22
United States v. Krohn,
  560 F.2d 293 (7th Cir. 1977) .................................... 16
United States v. Reed,
  762 F. App'x 173 (5th Cir. 2019) ............................... 12
United States v. Smith,
  44 F.3d 1259 (4th Cir. 1995) ........................... 19, 21, 24
United States v. Urqhart,
  469 F.3d 745 (8th Cir. 2006) .................................... 13
Wheat v. United States,
  486 U.S. 153 (1988) ............................................ 15

Rules

Fed. R. Crim. P. 26.3 ............................................ 13

ii

**TABLE OF EXHIBITS**

| Exhibit | Description | Cite |
|---------|-------------|------|
| A | Defendant's DRAFT Revised Witness List (Provided to the Government on March 5, 2023) | 4, 5 |
| B | March 12, 2023 Letter - **Filed Concurrently Under Seal** | 7-8 |

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      After days of providing the Court only limited medical

4 information from three different sources and offering contradictory

5 representations from his remaining counsel of record, Brendan Pratt,

6 and Mr. Pratt's supervisor, Adam Braun, about their continued efforts

7 to prepare the defense case (only to abruptly reverse course and

8 cease to comply with the Court deadlines without a credible

9 explanation), defendant Raymond Chan ("defendant") now seeks a

10 mistrial.  He does so on the basis that he is entitled to counsel of

11 his choice, whom he unequivocally identifies as Harland Braun.  (Dkt.

12 No. 996 ["Mot."].)  The government agrees that defendant should have

13 Harland Braun as his trial counsel when, as here, the current record

14 indicates that Harland Braun will make a full recovery.  For that

15 reason alone and on the current record, the motion for a mistrial

16 should be <u>denied</u>.

17      A mistrial should also be denied at this stage to preserve the

18 significant judicial, public, government, and defense resources that

19 have already been expended in the current trial.  If anything,

20 continuing the trial recess while Harland Braun recovers from his

21 health issues prejudices the government (not the defense), and the

22 Court can take precautionary measures to mitigate any prejudice to

23 the defense and make reasonable accommodations for Harland Braun to

24 resume the trial safely.

25

**II.   RELEVANT FACTS**

26

**A.    Harland Braun's Representation of Defendant**

27      The First Superseding Indictment ("FSI"), which charges

28 defendant with RICO conspiracy, honest services wire fraud, bribery,

1

and making false statements, was filed on November 12, 2020.  (Dkt. No. 74.)  On December 1, 2020, defendant made his initial appearance, represented by Harland Braun.  (Dkt. No. 97.)

According to his declaration, defendant retained Harland Braun approximately two years before the filing of the FSI, on or about November 9, 2018.  (Dkt. No. 996-1 ["Chan Decl."] ¶ 2.)  Defendant selected Harland Braun to be his counsel based on the hundreds of jury trials Harland Braun has conducted; Harland Braun's extensive experience in cases with media interest; and Harland Braun's belief in defendant and fearlessness in taking the case to trial.  (Id. ¶ 3.)

Following the filing of the FSI, Harland Braun met with defendant, on average, once a week over the past two and a half years.  (Chan Decl. ¶ 4.)  Leading up to the trial, the frequency of those meetings increased.  (Id.)  According to the declaration of Adam Braun, Harland Braun's law partner and son, Harland Braun and defendant met "once and sometimes twice per week for approximately two to three hours each time."  (Dkt. No. 996-2 ["Adam Braun Decl."] ¶ 3.)  Adam Braun declared that in the two months leading up to trial, those meetings took place "daily," including reportedly on the weekends, and lasted "many hours at a time."[1]  (Id.)

Both before and after his illness, Harland Braun has been significantly aided by defense counsel Brendan Pratt, who, with the support of defendant and Even Chan, has been the main point of

---

[1] This amounts to well over hundreds of meetings between Harland Braun and defendant over the life of this case to "review [defendant's] defense in the event it might one day be tried and to assess various developments in the co-defendants' cases."  (Chan Decl. ¶ 4.)

contact in addressing the defendant's exhibits during informal and formal meet and confers with the government and, more recently, in discussions with the Court.  (Har Decl. ¶ 3.)

According to defendant's sworn declaration, Harland Braun is his "lone trial attorney" and his "counsel of choice."  (Chan Decl. ¶ 7.) Defendant further declares that "[a]ttempting to proceed with the trial when Harland Braun is physically unable to participate" would deprive him of his counsel of choice, Harland Braun.  (Id.) Similarly, Adam Braun declares that "at no time was it envisioned that anyone other than Harland was the trial lawyer on the case." (Adam Braun Decl. ¶ 7.)

**B.   The Trial**

The trial in this matter began on February 21, 2023.  (Dkt. No. 972.)  Twelve jurors and six alternate jurors were impaneled and sworn.  The jury is time-qualified for 14 weeks, or until May 30, 2023.  (See Dkt. No. 898.)

On the first day of trial, counsel for the parties presented opening statements, with Harland Braun delivering the defense's one-hour opening statement.  (See Dkt. No. 972.)  During the next seven trial days, the government put on twelve witnesses, including FBI Special Agent Andrew Civetti, cooperators George Esparza and Morris Goldman, and City-related witnesses, Kevin Keller and David Ambroz. With the exception of Richelle Rios and two witnesses who established the interstate nature of the charged wires, Harland Braun actively cross-examined each of the government's witnesses.

Near the end of the trial day on Thursday, March 2 (Trial Day 8), the government started the direct examination of cooperating witness George Chiang.  After court was recessed for the day, Mr.

Pratt provided notice to the government and the Court that Harland Braun had fallen ill.  On March 3 (Trial Day 9), the jury reported, and the Court advised the jury that the trial would be in a recess. (See Dkt. No. 986.)  As of the date of this filing, the jury was last ordered to return to resume trial on March 27, 2023.  (See Dkt. No. 991.)

In the current trial, the government has completed presentation of approximately 75% of its case-in-chief.  The government has five witnesses remaining for its case-in-chief:

    (1) George Chiang (direct examination in progress)

    (2) Bert Minter[2]

    (3) Shawn Kuk

    (4) Businessperson A

    (5) FBI Special Agent Civetti

The government anticipates that it needs just approximately three more trial days to complete its case-in-chief.

In the latest draft version of the defense witness list Mr. Pratt provided to the government on March 5, 2023 (but not yet filed with the Court), defendant claims he intends to call 15 witnesses (including defendant).[3]  (Ex. A; see also Dkt. No. 924 [Defendant Response to 1/31/23 OSC], Ex. E [January 2023 calendar of defense witness interviews].)  In addition to Harland Braun, Mr. Pratt

---

[2] Consistent with the Court's direction on March 3, 2023, (3/3/2023 Hr'g Tr. at 18-19), the government proposed to the defense a fact stipulation on the interstate nature of the wires charged in Counts 12 and 13, which would obviate the need to call Mr. Minter from JP Morgan Chase, who will need to travel to Los Angeles from out of state to testify at trial.  The defense has not specifically responded to that proposal.

[3] The government notes that the defense sent this list with the notation "Draft for Discussion Purposes Only."

1   participated in at least six of these interviews, as evidenced by

2   written notes Mr. Pratt produced to government counsel, consistent

3   with the Court's defense Jencks statements order.   (Har Decl. ¶ 2.)

4   With the exception of defendant's testimony, the defense approximates

5   that the direct examinations of each of the defense witnesses will

6   last approximately 1-2 hours.   (Ex. A.)

7        **C.   Current Record Regarding Harland Braun's Medical Condition**

8        Per the Court's orders, the defense has supplied four letters

9   regarding Harland Braun's medical condition.[4]

10       1.   <u>March 5, 2023 Letter from APLA Health Dr. Gottlieb</u>



17   _____

18       [4] The government is moving concurrently herewith to file under
    seal the unredacted version of this opposition brief, as well as
19   Exhibit B, for the reasons set forth in that separate application.

2.   March 7, 2023 Letter from UCLA Dep't of Urology Dr. Marks

After Mr. Pratt presented Dr. Gottlieb's letter to the government and the Court, the Court indicated it needed "a better understanding from the team of physicians at UCLA who are actually responsible for Mr. Braun's day-to-day care[.]"  (3/6/2023 Hr'g Tr. at 9.)  Accordingly, Mr. Pratt provided a subsequent letter.



    3.    <u>March 12, 2023 Letter from UCLA Health Nurse Practitioner</u>

<u>Wehr</u>



During the status conference on Thursday, March 16, in response to the Court's questioning, Adam Braun disclosed that Harland Braun had been discharged four days prior, on Sunday, March 12, the same date of Ms. Wehr's letter.

4.   <u>March 18, 2023 Letter from UCLA Dr. Russell Kerbel</u>[8]

During the March 16 status conference, the Court identified several outstanding questions about Harland Braun's medical condition and prognosis that had not been sufficiently addressed by the three letters the defense had supplied, notwithstanding that these outstanding issues had been previously noted by the Court and the government.  Accordingly, the Court ordered Mr. Pratt and Adam Braun to provide under seal a letter from Harland Braun's actual treating physician detailing the nature of Harland Braun's illness, prognosis, treatment plan, and estimated recovery time, including when Harland Braun could resume his duties to continue with the trial.



_____

[8] Although the Court ordered defendant to provide this letter to the Court <u>and to the government</u> by the weekend (March 18-19), the government did not receive the letter until the morning of March 20 when it was provided by the Court's courtroom deputy clerk.  The government notes that this letter was dated March 18.  It remains unclear when Mr. Pratt or Adam Braun received the letter and why it was not timely provided to the government when it was received by them or, at the very least, provided to the Court.



█████████████████████████████████████████████

**D.   Defendant's Motion for Mistrial**

On March 14, 2023, defendant filed a motion for a mistrial. (See Dkt. No. 996.)  The motion is based upon defendant's right to counsel and, specifically, his right to his chosen counsel.  (See generally id.)  Defendant argues that a mistrial is necessary because Harland Braun "was rendered physically unable to proceed with trial (confirmed through documentation through his treating physicians)[.]"[9]  (Id. at 5.)  Based on the assumption that Harland Braun is unable to proceed with the trial, defendant requests that the Court grant a mistrial, vacate all extant trial filing deadlines, and grant defendant a reasonable amount of time to find and retain replacement trial counsel.  (Id. at 6.)

_____

[9] As of the date the motion was filed, defendant had not supplied to the government or the Court any documentation from Harland Braun's treating physicians.

11

During the status conference on March 16, 2023, the Court relieved the government of its obligations for the time being on pending trial filing deadlines.  As described above, the Court also ordered the defense to provide a detailed letter by Harland Braun's treating physician by March 19.  The Court also invited the defense to provide a declaration from Harland Braun, if he is able, regarding his ability to resume the trial (and if so, when).  In response, Adam Braun stated that he did not want to commit to providing such a declaration because Harland Braun was still weak.  As of the time of this filing, no declaration has been provided.

The Court then ordered the government to file a response to the motion for mistrial by March 20, 2023, the defense to file an optional reply by March 21, 2023, and set a hearing on the motion for March 22, 2023.

## III. LEGAL STANDARD

A defendant has a "valued right to have his trial completed by a particular tribunal." Arizona v. Washington, 434 U.S. 497, 503 (1978).  "As a mistrial is an extreme remedy, it should be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases." United States v. Reed, 762 F. App'x 173, 174 (5th Cir. 2019) (citation omitted).

The trial judge has "broad discretion" to grant or deny a mistrial, and, on appeal, the burden of the moving party is to establish an abuse of that discretion. Corley v. Cardwell, 544 F.2d 349, 351 (9th Cir. 1976) (emphasis added); United States v. Banks, 514 F.3d 959, 973, 974 (9th Cir. 2008) (district court has "wide discretion in deciding whether to declare mistrial"; "We generally review the district court's denial of a motion for a mistrial for

abuse of discretion."); see also United States v. Urquhart, 469 F.3d 745, 749 (8th Cir. 2006) (district court has "broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect" of any possible prejudice).

The law invests courts "with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." Illinois v. Somerville, 410 U.S. 458, 461 (1973). Because it is "impossible to define all the circumstances" in which a mistrial may be proper, courts are "to exercise a sound discretion on the subject." Id. There is no "mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." Id. at 462.

As a procedural matter, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. In reviewing whether the trial court abused its discretion by declaring a mistrial, courts look to four indicators: "Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial?" United States v. Bates, 917 F.2d 388, 395-96, 398 (9th Cir. 1990) (holding that the court abused its discretion by sua sponte declaring

13

a mistrial without defendant's consent, and that double jeopardy barred a retrial, in the absence of manifest necessity).

## IV.  ARGUMENT

Here, the Court should exercise its broad discretion and deny a mistrial at this juncture, based on the totality of the circumstances and the current record.  Denying a mistrial so that Harland Braun can resume the trial best protects defendant's right to chosen counsel. The current record regarding Harland Braun's medical condition does not support a finding that he is unable to complete the trial, and the Court can consider reasonable accommodations so that Harland Braun can safely complete the trial.  Continuing with the current trial, as opposed to declaring a mistrial, will also preserve the significant judicial, public, government, and defense resources that already have been expended.  Finally, any prejudice with respect to a recess in the middle of trial is to the government, not the defense.

Under these circumstances, denial of the motion is appropriate and promotes the ends of justice.

### A.  Denial of the Mistrial Best Protects Defendant's Right to His Chosen Counsel, Harland Braun

In his motion, defendant correctly points out that he has a right to his counsel of choice.  (Mot. at 4-5.)  Although that right is "circumscribed" and not absolute, it is generally true that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire."  United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006); see also Luis v. United States, 578 U.S. 5, 11-12 (2016) ("[T]he

1   Sixth Amendment grants a defendant a fair opportunity to secure

2   counsel of his own choice." (citation omitted)).[10]

3       What defendant gets _wrong_ in his motion is the notion that

4   granting a mistrial here will preserve or protect his right to chosen

5   counsel.  As defendant's own declaration unequivocally establishes,

6   his current counsel of choice is Harland Braun with whom he has

7   prepared his defense for many hundreds of hours over the life of this

8   case.  (Chan Decl. ¶ 4; see also Adam Braun Decl. ¶ 3.)  Defendant

9   also acknowledges that he believed it would be "helpful" to have Mr.

10  Pratt provide support leading up to and during trial (Chan Decl.

11  ¶ 5), which Mr. Pratt has done, particularly with respect to leading

12  the effort on the defense exhibits with both Harland Braun's and

13  defendant's consent.  Indeed, Harland Braun previously told the Court

14  that Mr. Pratt was the one handling the defense exhibits, and Mr.

15  Pratt did precisely that, both in hearings and during various meet-

16  and-confers with the government, including while defendant was

17  present.  (3/3/2023 Hr'g Tr. at 14-15; 3/6/2023 Hr'g Tr. at 25; see

18  also Har Decl. ¶ 3.)

19      In the motion, defendant appears to be overly concerned with the

20  prospect of resuming the current trial with only Mr. Pratt as trial

21  counsel.  These concerns are unfounded, as the government does not

22  propose, and has never proposed, that the trial move forward with Mr.

23  Pratt as defendant's sole attorney, absent defendant's consent.  To

24  the contrary, what the government proposes as the proper course of

25

26      [10] A different standard would apply if defendant were financially
    unable to afford retained counsel.  See Wheat v. United States, 486
27  U.S. 153, 159 (1988) ("[A] defendant may not insist on representation
    by an attorney he cannot afford . . . .").  However, at this stage,
28  the government has no information to suggest that defendant is
    financially eligible for, or requires, appointed counsel.

15

action is for defendant to "have his trial completed by [this] particular tribunal" of impaneled jurors, Arizona, 434 U.S. at 503, with his chosen counsel: Harland Braun.  Defendant has retained Harland Braun throughout the life of this case, well before the filing of the FSI.  The best course is for defendant to continue to have the representation of the counsel whom he specifically hired for this trial and to whose firm, Braun & Braun LLP, defendant has undoubtedly paid significant sums of money for years of Harland Braun's zealous representation.  And as explained below, the current record does not support a finding that Harland Braun is unable to complete this trial.

Other than bad-faith gamesmanship, which would not be a proper basis for a mistrial, defendant would not otherwise "benefit from the declaration of mistrial."  Bates, 917 F.2d at 396; see United States v. Krohn, 560 F.2d 293, 297 (7th Cir. 1977) (district court did not err by denying defense's motion for mistrial where defense engaged in gamesmanship; "We strongly disapprove such a gamesmanship approach to criminal justice.").  According to defendant, a mistrial would mean that he would need to "investigate who is available with requisite experience to serve as [his] trial counsel" (Chan Decl. ¶ 9), and then presumably pay that new counsel to get up to speed on this complex and significant case.

At this juncture, where the jury has been time-qualified through May 30, 2023, denying the mistrial and continuing to recess the trial until Harland Braun can safely return to complete the trial, with appropriate accommodations such as shorter trial days, allowing him to remain seated, or other similar measures (discussed further below), will best protect defendant's right to his chosen counsel.

16

### B.   The Current State of the Record Regarding Harland Braun's Medical Status Does Not Support a Mistrial

Nothing in the current, credible record supports a finding that Harland Braun cannot resume this trial. ███████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

Given the paucity of substantive information in the first three letters, ██████████████████████████████████████ ███████████████ and the defense's seeming reluctance to providing clear and detailed information (see Dkt. No. 1003-1 [Sealed Ex. B]), a mistrial on the basis of Harland Braun's medical condition is unsupported by the current record.

Should the Court have continued questions regarding Harland Braun's medical condition and the estimated recovery time, an under-seal inquiry by the Court with a direct treating physician, like Dr. Kerbel, may be appropriate.  The letters are limited, in that they do not provide an opportunity to ask follow-up or clarifying questions.

Even if telephonically conducted, the Court through a live inquiry could efficiently obtain accurate and reliable information regarding Harland Braun's medical condition.  As the Court has already observed during the March 16 status conference, the vague, piecemeal letters that the defense furnished had been insufficient.  Dr. Kerbel's letter, while providing some helpful details, raises a number of other questions, including what Harland Braun's current physical symptoms are; what will be the difference in the progress of Harland Braun's recovery in 15 days versus 30 days versus 90 days from now;

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

and what specific aspects of the trial present a risk to Harland Braun's safety.  The Court may also wish to inquire with the physician as to what accommodations could be made to the trial to permit Harland Braun to proceed safely.  An inquiry conducted by the Court would allow it to ask any unresolved questions and receive direct answers from the treating physician without further delay.

### C.   The Court Can Make Accommodations, if Necessary, to Permit Harland Braun to Complete the Trial

In considering a motion for a mistrial, this Court should "consider[] the alternatives to a mistrial" and "adopt one if less drastic and less harmful to the defendant's rights than a mistrial." Bates, 917 F.2d at 396.

In order to accommodate completing the current trial with defendant's chosen counsel, the government respectfully suggests the Court consider reasonable accommodations for Harland Braun, if necessary.  For example, the Court might consider providing an additional break in the current six-hour trial day schedule, or even

1   shortening the trial hours per day, should Harland Braun's treating

2   physician recommend as such.[11] ████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ██████████████████████████  Of course, it would be up to Harland

6   Braun and his treating physician to make those specific requests and

7   bring them to the Court's attention.  The point is that other good-

8   faith alternatives to a mistrial should be considered and followed to

9   permit defendant to complete the current trial with his trial counsel

10  of choice, while also preserving resources.

11       **D.**   **Preservation of Resources Supports Denial of the Mistrial**

12       Denying the mistrial motion is appropriate to preserve the

13  significant judicial, public, defense, and government resources that

14  have already been expended on the current trial.  "To grant a

15  mistrial is a drastic remedy that results in additional expense to

16  the judicial system as well as to all the parties."  United States v.

17  Smith, 44 F.3d 1259, 1268 (4th Cir. 1995).

18       The Court expended tremendous time and energy in presiding over

19  months of pretrial litigation, as well as the current trial, in this

20  matter.  The Court undertook the procedure to time-qualify a large

21  venire of jurors for this case.  After jury selection, the impaneled

22  jurors put their lives on hold and spent nine court days coming to

23  the courthouse and, during eight of those days, listening to jury

24

25

26       [11] Even with such accommodations, the trial in this matter would

27  likely be concluded far sooner than the alternative option of a
mistrial, which may require defendant to obtain new counsel, for that

28  new counsel to become sufficiently familiar with the case, and then
for the parties to start over with trial.

instructions and opening statements and receiving live testimony from twelve witnesses.

The government likewise has expended significant time and resources preparing for this trial and putting on three-quarters of its case-in-chief.  Any retrial would necessarily require the government to re-prepare and, of course, re-present its case.  All twelve of the witnesses who have already testified in the government's case (some of whom required travel to testify) would be inconvenienced and burdened by having to testify yet again in a retrial.  And because some of those testifying witnesses are cooperating with the government, a mistrial resulting in a prolonged delay before any future retrial will necessarily delay the sentencings in those other criminal case matters and leave them pending on the Court's docket.

A mistrial would also undoubtedly cause significant expense to defendant.  In seeking a mistrial, defendant requests a "reasonable amount of time to find replacement trial counsel with the requisite experience to adequately defend him."  (Mot. at 4.)  Although defendant does not specify what a "reasonable" amount of time is, Adam Braun previously suggested that it would be approximately 30 days just to "identify" new trial counsel.  (Dkt. No. 1003-1 at 2.) Thereafter, defendant undoubtedly would seek additional time for his new counsel to learn the case and prepare for trial.  Although defendant does not specify how long he and his new counsel would require to become sufficiently ready for trial, it would be duplicative, at least in part, of the work and preparation for which defendant has already paid Harland Braun.

1        **E.   Any Prolonged Recess Prejudices the Government**

2        The trial court has "full discretion in determining whether the

3   jury shall be allowed to separate at any particular time during the

4   course of the trial." United States v. Diggs, 649 F.2d 731, 738 (9th

5   Cir. 1981).  For a jury separation to constitute reversible error, a

6   defendant must show that he suffered actual, as opposed to

7   hypothetical, prejudice.  Id. (holding that denial of a mistrial for

8   an 11-day separation was not an abuse of discretion; collecting

9   cases); United States v. Benson, 686 F.3d 498, 504 (8th Cir. 2012)

10  (no abuse of discretion resulting in clear prejudice in court's

11  denial of a mistrial based on a three-week mid-trial continuance for

12  defendant to get new counsel); Smith, 44 F.3d at 1269 (district court

13  did not abuse its discretion in declining to grant a mistrial because

14  of a 32-day hiatus in the trial; no showing of actual prejudice); but

15  see United States v. Hay, 122 F.3d 1233, 1235-36 (9th Cir. 1997)

16  (abuse of discretion for district court to order a 48-day recess, as

17  opposed to proceeding with the trial, to accommodate juror vacations

18  between the close of evidence and the start of closing arguments

19  where alternate juror was available and both defendants had requested

20  the trial proceed with less than twelve jurors if necessary; length

21  of separation was inherently lacking in due process and did not

22  require showing of actual prejudice where, among other things, jury

23  had heard "nearly four months" of "complex, technical evidence

24  against two defendants" prior to recess).  The government is aware of

25  at least one case in this district where the Court granted an

26  extended mid-trial recess of approximately four months at defense

27  counsel's request where defense counsel was not "physically and

28  emotionally able to appear" following a serious car accident

                                21

involving a family member.  (See United States v. Christine Daniel,
No. 2:09-cr-00993-RJT (trial held from Mar. 16, 2011 through Sept.
26, 2011).)  When trial ultimately resumed four months later, the
court granted the defendant's motion to represent herself for the
remainder of trial.  (Id., Dkt. No. 182.)  The Ninth Circuit affirmed
the eventual convictions but did not directly address the
reasonableness of the recess.  United States v. Daniel, 676 Fed.
App'x 675 (9th Cir. 2017) (unpublished).[12]

Here, defendant's motion makes clear that he would oppose the
immediate resumption of the trial, in the absence of Harland Braun.
(See Mot. at 5 ("However, if CHAN were forced to proceed at trial
with the novice and inexperienced Mr. Pratt as trial counsel, CHAN
will have no choice but to assert his right to effective assistance
of counsel under the 6th Amendment").)  Defendant's motion does not
raise any objection to continuing to recess the trial (and separation
of the jury) until Harland Braun is able to resume the trial.
Rather, the motion only presumes that because Harland Braun is
currently "physically unable to proceed with trial" that he cannot,
once recovered, resume and complete the trial.  (See id.)  However,
as explained above, the defense's presumption in that regard is
unsupported.

Any prejudice caused by an extended recess--the sole purpose of
which would be to permit defendant's chosen counsel of over four

---

[12] Through public reporting, the government is also aware that
the Los Angeles Superior Court trial against Robert Durst had an over
14-month recess due to the COVID-19 pandemic.  See, e.g.,
https://www.latimes.com/california/story/2021-05-17/robert-durst-
trial-resume-long-covid-delay-the-jinx.  Durst was subsequently
convicted and sentenced to life imprisonment.
https://www.latimes.com/california/story/2021-10-14/robert-durst-
sentenced-to-life-in-prison-for-susan-berman-murder.

years, Harland Braun, to recover and return to the trial--falls on
the government, not defendant.  As the party with the burden of
proof, the government faces a tactical disadvantage in having had the
presentation of its case-in-chief unexpectedly interrupted mid-
stream.  See Citron v. Aro Corp., 377 F.2d 750, 752 (3d Cir. 1967)
(prolonged recesses placed plaintiff under a "tactical disadvantage"
that would be "considerably minimized if the trial is moved along
with reasonable continuity so as to permit the orderly and
intelligible presentation of testimony").  When the trial resumes,
the government will have only a few witnesses left to present, while
defendant will have the opportunity to present his entire case-in-
chief uninterrupted, which jurors will then receive fresh in their
minds and soon before they enter the jury deliberation room.  The
government's task in meeting its already high burden will be elevated
further still, particularly during closing arguments as government
counsel endeavors to remind the jury of the entirety of the
prosecution's evidence, which by that point will be weeks in the
rearview mirror.

Moreover, to the extent there may be any potential prejudice to
defendant based on an extended recess, the Court can take the
cautionary measures approved by the Ninth Circuit, namely:

> The district judge repeatedly admonished the
> jurors not to discuss the case with anyone, or
> even to allow anyone to approach and address them
> concerning it.  He further instructed them not to
> form or express any opinion about the case until
> it was formally submitted to them following
> closing arguments.  The jurors had ample
> opportunity to refresh their memories with
> respect to the evidence by listening to tapes of
> testimony given during the trial and re-examining
> exhibits.

1    _Diggs_, 649 F.2d at 738; _see also_ _Smith_, 44 F.3d at 1268 (approving of

2    the district court's mitigating measures, including "repeated

3    instructions to the jurors . . . to keep the case fresh in their

4    minds and to keep an open mind until all the evidence was in";

5    inviting counsel to seek leave for extended time to make closing

6    arguments; ensuring that the jury was provided with all of the

7    exhibits and had access to their respective notes).[13]

8         Here, any prejudice caused by an extended recess is to the

9    _government_, not defendant.  In the context of continuing to recess

10   the trial to await Harland Braun's recovery, defendant has not

11   identified any actual prejudice he would suffer from the denial of a

12   mistrial.  Notwithstanding the potential prejudice the government may

13   incur in continuing the trial after a recess, the government

14   currently believes--in the absence of further information--that the

15   interests of all parties and the preservation of judicial resources

16   are best served by proceeding with and completing the current trial

17   when conditions so permit.

18   **V.   CONCLUSION**

19        For the foregoing reasons, defendant's motion for mistrial

20   should be denied.  The government respectfully requests that, in its

21   next contact with the jury (absent a further recess), the Court

22   repeat its admonishments to the jurors not to discuss the case with

23   anyone, not to allow anyone to approach and address them concerning

24

25   _____

26        [13] In _United States v. Christine Daniel_, the Court granted the
     recess after 37 days of trial, when the government was in the midst

27   of its rebuttal case, and sent the jurors two letters informing them
     about the recess and admonishing them, among other things, not to

28   discuss the case with anyone or form any opinions or tentative
     factual findings based on the evidence presented to them thus far.
     (Case No. 2:09-cr-00993-RJT, Dkt. Nos. 157, 175.)

it, and not to form or express any opinion about the case until it is formally submitted to them following closing arguments.

Should the Court believe it would be helpful and appropriate, a sealed inquiry by the Court with the treating physician could also be conducted to address any outstanding questions regarding Harland Braun's medical condition, recovery time, and reasonable accommodations to permit his safe return to the trial.