1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,        )
                                      )
6              PLAINTIFF,             )    CASE NO.
                                      )
7              vs.                    )    CR 20-326A-JFW
                                      )
8    RAYMOND SHE WAH CHAN,            )
                                      )    PAGES 1 TO 39
9              DEFENDANT.             )
     _____)

10

11

12

13              REPORTER'S TRANSCRIPT OF
                   STATUS CONFERENCE
14             MONDAY, MARCH 6, 2023
                     10:01 A.M.
15            LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22

23    _____

24          MIRANDA ALGORRI, CSR 12743, RPR, CRR
             FEDERAL OFFICIAL COURT REPORTER
              350 WEST 1ST STREET, SUITE 4455
25            LOS ANGELES, CALIFORNIA 90012
                MIRANDAALGORRI@GMAIL.COM

1              **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         MARTIN ESTRADA
          UNITED STATES ATTORNEY
5         BY:  MACK JENKINS
          BY:  SUSAH HAR
6         BY:  CASSIE PALMER
          BY:  BRIAN FAERSTEIN
7         Assistant United States Attorney
          United States Courthouse
8         312 North Spring Street
          Los Angeles, California 90012
9

10   **FOR THE DEFENDANT:**

11        BRAUN & BRAUN, LLP
          BY:  BRENDAN PRATT
12        10880 Wilshire Boulevard
          Suite 1020
13        Los Angeles, California 90024

14   Also Present:

15        Special Agent Andrew Civetti

16

17

18

19

20

21

22

23

24

25

                    **MONDAY, MARCH 6, 2023; 10:01 A.M.**

                         **LOS ANGELES, CALIFORNIA**

                                -oOo-

10:00AM   THE CLERK:  Calling item 3, CR 20-326A-JFW,
United States of America versus Raymond She Wah Chan.

          Counsel, please state your appearances.

          MR. JENKINS:  Good morning, Your Honor.

          Mack Jenkins, Cassie Palmer, Susan Har,
10:01AM   Brian Faerstein on behalf of the United States.  Also at
counsel table is Special Agent Andrew Civetti of the FBI.

          MR. PRATT:  Good morning, Your Honor.

          Brendan Pratt on behalf of Defendant
Raymond Chan.

10:01AM   THE COURT:  And Mr. Chan is present.

          All right.  Good morning to all.  This matter is
on the Court's calendar for a status conference.

          On Sunday morning the Court received a letter
from Dr. Michael Gottlieb which was dated March 5th which was
10:01AM   provided by Mr. Pratt advising us of Mr. Braun's medical
condition.  Mr. Pratt not only provided the Court with a copy
of that letter but also the Government.

          Consistent with the discussion that we had with
the jury on Friday, Shannon contacted each of the jurors and
10:02AM   advised the jurors that they did not need to report for

1    resumption of their jury service today, tomorrow, or through

2    Wednesday.  And Shannon in her text message to each of the

3    jurors advised them that by Wednesday at noon the Court will

4    provide further information about the resumption of the trial.

10:02AM  5   And that was successfully communicated to all of the jurors by

6    Shannon yesterday afternoon.  All of the jurors acknowledged

7    that they had received Shannon's text.

8                   In light of the letter, I set the status

9    conference for this morning so that Mr. Pratt could give us an

10:03AM  10  update on Mr. Braun's condition and we could collectively make

11   some decisions with respect to the status of this matter.

12                  So, Mr. Pratt, I hope the news is good news.

13                  MR. PRATT:  I wish I had good news to deliver,

14   Your Honor.  I understand from Mr. Braun's son Adam Braun that

10:03AM  15  the doctors still have yet to determine the source of the

16   problem.  There is an ongoing infection with Harland, and it

17   might require further procedures and at the very least more

18   testing.  And as of now Mr. Braun does not know when he will be

19   discharged from the hospital.

10:04AM  20                 THE COURT:  All right.  And he did undergo,

21   according to Dr. Gottlieb's letter, surgery; correct?

22                  MR. PRATT:  That's correct, Your Honor.

23                  THE COURT:  Was that surgery successful?

24                  MR. PRATT:  From what I understand, that surgery

10:04AM  25  was merely a half-measure, and the doctors are still assessing

```
 1   what further treatment Mr. Braun might require.

 2              THE COURT:  Okay.  And do they have any -- my

 3   memory is he is at UCLA.  Is he still at UCLA?

 4              MR. PRATT:  That's correct, Your Honor.

 5              THE COURT:  Do the doctors have any indication or

 6   given any indication as to when they're going to have some more

 7   definite opinion?  Although I have dealt with doctors recently

 8   on family members.  They don't seem to want to be pinned down

 9   on anything.

10              MR. PRATT:  Yes, Your Honor.  The doctors

11   unfortunately have no more information to provide at this time.

12              THE COURT:  Are you -- who is your contact?  Is

13   it Mr. Braun's son, or are you dealing directly with -- if

14   Harland -- if Mr. Braun is able to communicate, are you dealing

15   with Harland?

16              MR. PRATT:  Most of my information comes from his

17   son Adam Braun.  Harland did give me a brief call yesterday

18   afternoon, and he sounded very weak and basically expressed his

19   concern that he does not know when he will be discharged from

20   the hospital.

21              THE COURT:  Okay.  Well, in light of the

22   uncertainty, I guess that raises a question of what we do with

23   the panel or what we advise the jurors on Wednesday.

24              It would be my -- who knows what's going to

25   happen.  Hopefully, as we move on or as the week rolls on, at
```

10:04AM (line 5)
10:05AM (line 10)
10:05AM (line 15)
10:05AM (line 20)
10:06AM (line 25)

1    some point in time the doctors will have a better idea of

2    whatever it is that is causing -- affecting Mr. Braun's health.

3                    We still don't really have a diagnosis, do we?

4                    MR. PRATT:  No, we do not, Your Honor.

10:06AM    5                    THE COURT:  Hopefully we will have a better

6    diagnosis.

7                    In terms of contacting the jurors on Wednesday,

8    consistent with Dr. Gottlieb's letter, although obviously

9    that -- his letter is subject to change depending upon

10:07AM   10    Mr. Braun's condition.  But Dr. Gottlieb indicated that after

11    Mr. Braun was released from the hospital, that he had a minimum

12    two-week recovery period and maybe more.  Obviously all of this

13    is in a state of flux and could change.

14                    In light of Dr. Gottlieb's letter on Sunday, what

10:07AM   15    I was going to propose is that Shannon communicate with the

16    jurors and indicate to them that we intend to resume the trial

17    on March 27th.  Then, if any of the jurors have any problem

18    with that date, then we can deal with those issues.  Assuming

19    we don't have any problems, it's just a matter of continuing to

10:08AM   20    receive updates on Mr. Braun's condition to see if that is

21    actually going to be a realistic date to start.  At least it's

22    a placeholder date that we can use, and as we get closer to

23    that date obviously you're going to have -- I want to have

24    certainly weekly status reports on Mr. Braun's prognosis.

10:08AM   25                    So that would be my suggestion or my intention of

how we deal with these jurors.  We're still -- even with the

March 27th date, we're still within the -- I believe within the

time that -- certainly within the 14 weeks that they were all

time-qualified for.  But as modified by the Court, I think I

10:08AM  indicated at the -- during the course of jury selection, it

would be six to seven weeks.  If we're fortunate enough to be

able to start on March 27th, that would still be within that

period of time.

Let me hear from the Government.

10:09AM  MR. JENKINS:  Yes, Your Honor.  I think two

things we want to raise.  First, the timing that the Court just

outlined makes sense in terms of the jurors' availability and

within the range the Court outlined.  I think it may be of

interest to the jury how long the remaining trial would be.  We

10:09AM  still believe our estimate of approximately three more days,

probably less, for the Government's case in chief.  I'm not

sure if the defense has had the chance to evaluate their

presentation, but it may just be helpful --

THE COURT:  I already told the jury on Friday

10:09AM  that I anticipated that the Government was going to rest within

a couple days.  In terms of the defense case, I don't think we

can make any determination until Mr. Braun is able to come back

to somewhat normalcy because he was -- on Thursday he was going

to go back and look at his witness list to determine whether or

10:10AM  not he could eliminate any of those witnesses.  Obviously he's

1    not in a position to do that.

2              So I don't have any information in terms of the

3    defense case to give to the jurors that would be of any

4    reliability.

10:10AM    5              MR. JENKINS:  That's fair, Your Honor.

6              The second point is just we would at some point,

7    as the status checks with the doctor continue, we had some

8    questions about the letter itself that -- again, it's a

9    delicate balance.  We don't want to invade Mr. Braun's privacy.

10:10AM   10   It's unclear from this letter if his primary care doctor is

11   talking to the surgical team, and the estimates seem unclear

12   about when he's going to be discharged.  So at some point, sort

13   of in line with the Court's questions, frankly, just to make

14   sure we're getting the best information to predict as much as

10:11AM   15   we can predict, at some point some more specificity about who

16   the doctor is talking to because it seems like most of the

17   letter's written in a passive voice, and he doesn't provide any

18   contact information.

19              It's up to the Court.  We don't want to make that

10:11AM   20   inquiry.  But at some point, some follow-up about what

21   conversations, particularly as to the two weeks following

22   discharge bedrest, where that is coming from and what that is

23   based on.

24              THE COURT:  I got the sense that Mr. Pratt can

10:11AM   25   probably help us, if he can, on that.  I will ask him to become

more familiar with the team of physicians that is treating

Mr. Braun.  It appeared that Dr. Gottlieb is Mr. Harland's

primary care physician and he was not the -- he was not the

surgeon that performed what I understand to be the procedure at

UCLA.

And I think it's a fair question.  We need to

actually have -- obviously Dr. Gottlieb's opinion is important,

but I think we need to have a better understanding from the

team of physicians at UCLA who are actually responsible for

Mr. Braun's day-to-day care, not that Dr. Gottlieb may not be

involved in that.  But I would feel more comfortable having you

communicate with the -- or through Mr. Braun's son and find out

the identity, the names of the doctors that are treating him at

UCLA so that we can have more -- we can be assured that we're

getting the best estimates and the best information with

respect to his diagnosis and his possible discharge.  Not that

I don't -- I'm certainly not implying -- I don't have any

question about Dr. Gottlieb and his letter.  I just think if we

have information from those people or the physicians and

medical staff at UCLA who are actually treating him on a

day-to-day basis that we will be able to make better

determinations or better judgments in terms of how we proceed

with the jury.

MR. PRATT:  Yes, Your Honor.

THE COURT:  Okay.  What I'm going to do is set

another status conference for -- so I'm going to tell Shannon

to advise the jurors that we expect that the trial is going to

resume on March 27th or we intend that the trial will resume on

March 27th and they're ordered to appear on March 27th.  And

10:13AM    then what I'm going to do is have another status conference on

Friday morning at 8:00 o'clock and ask Mr. Pratt to do whatever

it takes to get us some -- the information necessary so that we

can evaluate where we go.

           MR. PRATT:  Yes, Your Honor.

10:14AM    THE COURT:  All right.  Do you have anything

else, Mr. Jenkins, on this issue?

           MR. JENKINS:  No, Your Honor.

           THE COURT:  You can go visit Mr. Braun in the

hospital.

10:14AM    MR. JENKINS:  I do like UCLA and we do wish him

well and a speedy recovery.  I'm not sure if my presence will

expedite that, however.

           THE COURT:  I guess I won't make any comment as

to that.

10:14AM    MR. JENKINS:  Fair enough, Your Honor.  Thank

you.

           THE COURT:  As long as we have the time, I've got

a couple issues I want to discuss this morning.  The first

issue -- Mr. Pratt, I think it may be easier if you go to the

10:15AM    lectern on this.  That microphone is much better than at the

1    table.

2              This is the continuing issues with respect to the

3    defendant's trial exhibits.  On March 3rd after our hearing on

4    Friday, the Government filed Docket No. 985 which sets forth by

5    category, which I appreciate -- it was helpful -- setting forth

6    its position and objections to the defendant's pretrial or the

7    defendant's exhibit list, and Docket 985 attached defendant's

8    exhibit list as Docket No. 985-1.

9              I just want to confirm with the Government that

10   that is the same list that was filed by the defendant on the

11   26th which was Docket No. 976.  That was the list that

12   represented the withdrawal of various defense exhibits.

13             MS. HAR:  Yes and no, Your Honor.  The list that

14   the Government filed is slightly updated because the defense

15   thereafter provided us, just via e-mail, or further revised

16   that maintained the withdrawn exhibits that the Court is

17   referencing but made additional withdrawals --

18             THE COURT:  Wait a minute.  I'm not understanding

19   you.  So let's go back.

20             So on February 26 of 2023, the defendant filed an

21   exhibit list which is Docket No. 326, and that represented --

22   that exhibit list, which consisted of 48 pages, had various

23   strikeouts which represented the exhibits that the defendant,

24   pursuant to my request, had gone through their exhibit list and

25   withdrawn certain of the exhibits represented by the strikeouts

1    in Docket No. 976.  And now we have attached to the

2    Government's objections another defendant's exhibit list --

3    or I don't know if it's another or not -- which is 985-1.  So

4    985-1 is not the same as 976.

10:18AM   5              MS. HAR:  Correct.

6              THE COURT:  So where am I supposed to find the

7    exhibit list that comes in between 976 and 985, or is it not

8    necessary?

9              MS. HAR:  We don't believe it is necessary,

10:18AM   10   Your Honor, because the Government's filing that incorporated

11   our objections was based off of what the defense provided as

12   its at the time most revised and up-to-date exhibit list which

13   did things like remove additional exhibits that were --

14             THE COURT:  That microphone is just absolutely

10:18AM   15   terrible.  If you can get -- pull it close to you or get

16   another one.  The sound system in here is just awful.

17             MS. HAR:  Is this better, Your Honor?

18             THE COURT:  Yes.

19             MS. HAR:  So the Government's filing incorporates

10:19AM   20   the most revised version of what the defense provided to us.

21             THE COURT:  And where is that revised version?  I

22   don't have -- I don't have that; correct?

23             MS. HAR:  Not as its own standalone without the

24   Government's objection, no.

10:19AM   25             THE COURT:  So this is something that was

1   exchanged between defendant and the Government which

2   represents them.  And then who incorporated those changes or

3   those revisions or updates to come up with 985-1?

4              MS. HAR:  The Government added its objections

10:19AM   5   to --

6              THE COURT:  I understand you added objections.

7   But I'm talking about just the -- the exhibits themselves.  For

8   example, 976 -- I'm just looking at the first page --

9   Exhibit 200-2 was withdrawn, and 985-1 still has Exhibit 200-2

10:20AM   10   notwithstanding the fact it was withdrawn in 976 and the

11   Government objection is no objection, for ID only.  But it was

12   withdrawn.

13              MS. HAR:  Yes.

14              THE COURT:  So go ahead.  Explain to me what I'm

10:20AM   15   supposed to be doing with this.

16              MS. HAR:  Your Honor, I believe that for the --

17   when the defense provided internally just to the Government its

18   revised exhibit list, it did take some of the items that it had

19   indicated were struck out in 976 and then basically put them

10:20AM   20   back in but characterized them as "for identification only."

21   So that would explain that discrepancy.  But as far as the

22   Government is aware, what we have filed is the latest and

23   greatest version of the defense exhibit list as they

24   characterized it and drafted it up.

10:21AM   25              THE COURT:  So this was -- 985-1 was generated by

1   the exhibit numbers, and the description of the exhibits were

2   provided by the defense.  And what the Government has done is,

3   in the column for Government's objection, you have taken some

4   exhibit list that was provided to you by the defense and you

10:21AM   5   put in your objections.

6           MS. HAR:  Yes.  Everything in there is as

7   provided to the Government without any alterations other than

8   the addition of our objections in the Government objection

9   column.

10:21AM   10          THE COURT:  So, Mr. Pratt, why wouldn't you note

11   on your -- whatever you provided to the Government or -- why

12   isn't it consistent with 976 where you went through the

13   exercise of withdrawing approximately 70 exhibits?  Now, are

14   those exhibits back in this 985-1?

10:22AM   15          MR. PRATT:  Those exhibits are not back in,

16   Your Honor.  Late last evening we provided the Government,

17   because we spent some time this weekend further trimming down

18   our exhibit list and our witness list, responding to the

19   Government's objections in part by saying some exhibits were

10:22AM   20   explicitly being withdrawn and, therefore, the Government's

21   objection is moot.  And then, in addition to that, we provided

22   our own appendix which had substantive responses to the

23   Government's objections.  That was not provided to the Court

24   last night.  That was only circulated between ourselves and the

10:22AM   25   Government.

1    Given Harland's health condition, he has not had

2    a chance to review these changes I have made with the client or

3    is in any position to endorse them at this time.

4    THE COURT:  All right.  Because I had asked you

10:22AM 5    to file something over the weekend.  Obviously I'm not being

6    critical because you didn't have access to Mr. Braun.

7    So this is an effort to meet and confer with the

8    Government over its objections that were raised in the filing

9    on Friday.

10:23AM 10    MR. PRATT:  That's correct, Your Honor.

11    THE COURT:  Has the Government received that?

12    MS. HAR:  We did receive it last night,

13    Your Honor.

14    THE COURT:  All right.  What do counsel intend --

10:23AM 15    so what's the next step in this meet-and-confer process in

16    terms of a document that I will be able to review and make

17    determinations as to where we stand on the defense exhibits?

18    MR. PRATT:  Your Honor, given the late hour that

19    we provided the Government with our revised witness and exhibit

10:24AM 20    list, we would be amenable to either meeting and conferring in

21    person or via phone call to further discuss our edits -- the

22    defense's edits to the exhibit and witness list.

23    THE COURT:  That's fine.  We obviously have the

24    time now.  So it's not as time sensitive as it once was.  I'm

10:24AM 25    just trying to corral these defense exhibits so at some point

```
          1    in time I can make determinations because I spent the weekend

          2    going through -- not the weekend but on Saturday I went through

          3    the Government's filing and the various categories, and I

          4    became concerned with respect to certain of these categories

10:25AM   5    that we were not moving forward with the defense exhibits.

          6              For example, the Category No. 8 had -- is labeled

          7    missing translations, and the Government has set forth various

          8    exhibits that contain Chinese language for which defendant has

          9    not provided a translation.  I'm not going to repeat those for

10:25AM  10    the record, but there are several exhibits.  I thought that we

         11    had gone through this process earlier and that all of the

         12    exhibits that did contain Chinese language had been translated

         13    by the defense and provided to the Government.  But that

         14    appears, based upon Category No. 8, that that's not true.

10:25AM  15              Is the Government accurate?

         16              MS. HAR:  Yes, Your Honor.  It is our

         17    understanding that they -- the defense had provided a limited

         18    set of translations --

         19              THE COURT:  I'm asking Mr. Pratt.  Is the

10:26AM  20    Government's position accurate that these exhibits that are

         21    referred to on line 15 or Docket 985 there are Chinese

         22    language -- I don't know if it's all or part and that

         23    translation has not been provided by the defense to the

         24    Government.

10:26AM  25              Is that true?
```

1      MR. PRATT:  Sorry.  Just a moment, Your Honor.

2      Apologies, Your Honor.  So again, as to

3  Category 8, in response to the Government's concern that there

4  were missing translations, we withdrew several of those

5  exhibits.  And it is my understanding, working closely with the

6  defense team, that we have those exhibits in some type of file

7  repository that we can provide to the Government.

8      THE COURT:  To the extent you have withdrawn

9  those exhibits, that's fine.  To the extent there are exhibits

10  for which there are Chinese translations, as indicated by the

11  Government, that they haven't been provided with them, by

12  Thursday of this week, March 9th, those are to be delivered to

13  the Government.  And if you don't deliver them to the

14  Government, then I'm not going to let them in evidence.  So be

15  advised.

16      Then the next category that I had an issue with

17  is No. 9.  This the Government objects as to overinclusive text

18  messages, hearsay, and 403.  I can't address the hearsay and

19  403 issues until I know what they are.  I'm not going to start

20  going through the nine volumes of defense exhibits until first

21  the defense looks at each one of these text messages.  Again,

22  the exhibit numbers are set forth in the Government's filing

23  985 and makes a judgment or a determination -- I'm not telling

24  you what to cut out or what not to cut out.  But if there is

25  some overinclusiveness with respect to some of these text

messages, go through each one of those exhibits, and make a

determination as to whether or not you agree or disagree and

communicate that to the Government so we can finally hopefully

in Category No. 9 we can then have the version of the text

10:29AM  message that you actually want to offer into evidence.

MR. PRATT:  Yes, Your Honor.  And as to

Category 9, defense spent some time over the weekend

withdrawing overinclusive text messages, and we are in the

process of editing down and targeting the statements that we

10:29AM  intend to admit as evidence.

THE COURT:  Good.  So those will also be -- you

can deliver those to the Government again by Thursday so the

Government will then be in a position to react to those.

The other category that is very troublesome is

10:30AM  Category No. 11.  Those exhibits, according to the Government's

objections, are English transcript is not evidence.  Well,

that's obvious.  The more important part of that Category 11 is

that the transcripts are not verbatim.  And there are a number

of exhibits listed on page 7 under Category 11.

10:30AM  This issue, it seems to me, is twofold.  One, if

you're -- I'm just picking out an Exhibit 2456.  I don't even

know what it is.  But if this 2456 is an audio recording and

the audio recording is in English, then the exhibit should be

the excerpted portion of 2457 that you want to play for the

10:31AM  jury and a transcript of that portion that would be passed out

to the jury so they can follow along when that audio is being

played.  I mean, it's -- it's not rocket science.  It's just a

lot of hard work in terms of making sure you know what it is on

that audio that you want to play.

10:31AM          I did notice, when I was going through some of

the actual exhibits in the binders, that you seem to have

included numerous exhibit numbers that have -- that refer to or

that identify the FBI interview that Mr. Chan had.  I don't

know why you have so many different exhibit numbers.  If there

10:32AM  are certain portions of that recording or that interview that

you want to play, it would seem to me it would make sense to --

I don't know what number -- I guess it's the first -- you can

pick a number and then do -- if there are various portions of

that you want to play, you could do Exhibit 1A, Exhibit 1B,

10:32AM  Exhibit 1C, Exhibit 1D so everybody would know exactly which

portions of that interview that you want to play because right

now you have just -- in looking at the exhibit books, the

volumes I have, you just lump in there 30, 40 pages, and

there's no indication on those 30, 40 pages that bear that

10:33AM  particular exhibit number what portion of that interview is

represented by that exhibit number.

          So you have to go back and make sure that you

have all of these audio recordings identified with a transcript

so the Government knows what you want to play.  If you're going

10:33AM  to be allowed to play it, you're going to have a transcript

1    that the jury can have to follow along because obviously the

2    recording is the evidence and it's not the transcript.

3            But we need to have that in place so everybody is

4    on the same page because the Government is at a disadvantage.

10:33AM  5    They don't know what you want to play.  Giving 40 pages of the

6    interview -- I'm not going to let -- 40 pages is not going to

7    be played to the jury.  I assume there are certain things you

8    want out of there.  But you have to make those determinations.

9    And somebody has made those determinations already because you

10:34AM  10   assigned different exhibit numbers to them.

11           So that's what's very concerning about Category

12   No. 11 that you haven't provided the Government with the exact

13   excerpt of the audio that you intend to play accompanied by a

14   full transcript.  It can't be line sheets.  It can't be

10:34AM  15   somebody's summary of that conversation.  It has to be a

16   verbatim transcript because we can't give the jury a line sheet

17   and say follow along because it's not the way it works.

18           My concern, based upon Category No. 11, is that

19   that has not been done and it's going to take -- presumably

10:34AM  20   it's going to take some time to do it.

21           MR. PRATT:  Yes, Your Honor.  And over the

22   weekend, again, we trimmed down all the exhibits as to

23   Category No. 11 substantially.  As of now, we're focusing on,

24   perhaps, a handful, four to six, of those transcripts.  And we

10:35AM  25   can provide those to the Government.

THE COURT:  That's great.  If you need more time

on that, that's fine.  But if you're down to just a few, then I

guess the Thursday date -- might as well make it consistent.

But if you need more time, I'm willing to give you more time.

10:35AM   This is the time now we've got to get it done right in terms of

making sure the Government has an opportunity to make its

specific objections because they're just -- I know what's going

to happen.  They're going to come back with specific objections

and then you're going to come back with a response to those

10:35AM   objections and then I will be able to rule based upon the joint

statement that I'm going to order counsel to file with respect

to each of those recordings.

You're going to set out what the recording is,

and then the Government is going to have an opportunity to

10:36AM   object, and then you can respond to the objection so I will

have a full understanding of what the objections and the

responses are.  But I'm glad to see that you're cutting down

some of these exhibits.

The last category was -- yes.  Category 3.  These

10:36AM   are the summary charts and timelines.  Have you made any

determination in terms of whether or not you're going to

continue to seek the admission of those exhibits that are

referred to on page 3?

MR. PRATT:  Yes, Your Honor.  But we will have

10:37AM   to -- in light of the Government's objections, we will have to

go back through those timelines and scrub out argumentative

language as well as language as they related to an entrapment

defense that has not been raised.

THE COURT:  Okay.  Again, you can -- obviously

that needs to be accomplished.  You can re-present those to the

Government, and then the Government can make an -- if it has an

objection to specific timeline, it can make the objection.

As to Category No. 3, to those remaining

timelines, I'm going to ask counsel to file -- and these joint

statements are going to be separate -- the joint statement as

to Category No. 3.  Set out the exhibit, the Government's

objection, the defendant's response, and attach a copy of in

this case the exhibit which will be the timeline so I can

easily -- I can have one document that covers all of the issues

with respect to Category 3 and I can look at the timeline -- I

can look at the objection, the response, and I can actually

look at the timeline and make a determination.

MR. PRATT:  Yes, Your Honor.

THE COURT:  The rest of the categories, it seems

to me, there are specific -- there is specific evidentiary

objections that I can rule on except I think -- same thing with

respect to Category 7 that we talked about with respect to

Category 11.  Again, you need to set out what the alleged

statements of Mr. Chan are that are represented by the exhibits

that are contained in -- that are referred to by the

1    Government.

2                    Have you gone through and made any determination

3    as to whether or not all those exhibits are going to be

4    necessary?

10:39AM    5                    MR. PRATT:  We have also trimmed down exhibits in

6    this category, Your Honor.

7                    THE COURT:  Okay.  And these are statements of

8    Mr. Chan during his FBI interview.  What's the -- what is the

9    source of these statements of Mr. Chan?  Where do they appear?

10:39AM   10                    MR. PRATT:  I believe they are transcripts of

11   wiretap conversations, and the majority of these exhibits are

12   conversations between Mr. Chan and Mr. George Chiang concerning

13   the collection of a debt from one of Mr. Chan's marshal art

14   students.

10:40AM   15                    THE COURT:  Are these in English or Chinese or a

16   combination?

17                    MR. PRATT:  It's a combination, Your Honor.

18                    THE COURT:  Okay.  Again, to the extent they're a

19   combination, you're going to need the translation.

10:40AM   20                    MR. PRATT:  Apologies.  I misspoke.  They're in

21   English.

22                    THE COURT:  They're in English.  Okay.  And those

23   have all been -- apparently the Government has all those since

24   you referred in Category 6 by specific exhibit numbers?

10:40AM   25                    MS. HAR:  Correct.  We do have them although some

1    of them may have an overlap with other issues like

2    overinclusive text messages and that sort of thing.  But, yes,

3    we have them.

4                    THE COURT:  All right.  Is there anything -- and

10:40AM  5    what I'm going to do with respect to the joint statement is I'm

6    going to ask counsel to file that joint statement with respect

7    to various of these categories by March 15th.  So all the

8    production will be done by Thursday.  Then you have an

9    opportunity to meet and confer, and then you can prepare the

10:41AM 10   joint statements and file them by March 15th.  Then I will have

11   an opportunity to look at them.

12                   What I'm also going to ask the defense to do,

13   since you have cut down apparently many of these exhibits, I'm

14   going to ask you to prepare a courtesy copy -- two courtesy

10:41AM 15   copies of binders that contain all of the defense exhibits that

16   are going to be subject to Government objections.  And I want

17   them -- first of all, you haven't -- the hole punch that you

18   used in the binders I have is the small hole punch, and you're

19   supposed to be using the larger hole punch.  So I can eliminate

10:42AM 20   the eight -- not eliminate, but I don't have to go through

21   eight volumes of defense exhibits, I can just focus on those

22   exhibits that are at issue so I will have hopefully one or two

23   discrete binders which has the table of contents listing all of

24   the disputed exhibits and have them tabbed.

10:42AM 25                   And don't change any numbers.  All these numbers

1    are frozen now.  And I will ask you to deliver that on the 15th

2    to chambers.  I want two copies of that.

3              MS. HAR:  Your Honor, the Government would also

4    really appreciate a copy of that as well if that will be --

10:42AM   5              THE COURT:  Okay.

6              MR. PRATT:  Yes, Your Honor.

7              THE COURT:  So you are going to become the trial

8    exhibit expert, and based upon Mr. Braun's comments when he

9    was -- when we were talking about the exhibits, he pointed to

10:43AM   10   you as the prime mover in these exhibits.  So for better or for

11   worse, it -- and obviously you're going to consult with

12   Mr. Braun.  I'm not going to preclude, to the extent there was

13   an exhibit that was withdrawn that Mr. Braun, when his health

14   permits him to look at this and wants to put it back on the

10:43AM   15   exhibit list, I'm not going to preclude it from going on.  But

16   right now we need to start whittling down these exhibits and

17   make determinations.

18              MR. PRATT:  Yes, Your Honor.

19              MS. HAR:  If I can make a point of clarification,

10:43AM   20   for the joint statement by March 15th, would the Court like

21   separate filings, sort of as Your Honor previously indicated,

22   for --

23              THE COURT:  By categories.  I don't want it to be

24   a -- I don't want it to be unmanageable.  So the number of

10:44AM   25   exhibits by category, given what counsel has said he whittled

1    down, I think it will be much easier to deal with.

2                MS. HAR:  So if there are, for example, five

3    categories of objections remaining, on March 15 we will submit

4    five joint statements.

10:44AM  5                THE COURT:  Right.  Joint statement re category

6    No. 2, No. 3, whatever it is.  As long as we are now getting

7    focused on some of these exhibits, let's continue to be

8    consistent.

9                MS. HAR:  Understood, Your Honor.  Thank you.

10:44AM 10                THE COURT:  All right.  So that's with respect to

11   the exhibits.

12                Now I have the jury instructions.  For this maybe

13   Ms. Palmer can approach the lectern.

14                All right.  I have several filings.  I have --

10:45AM 15   the first one yesterday afternoon was the first revised

16   proposed jury instructions end of trial which was

17   Docket No. 987.  And then I think it was yesterday afternoon or

18   maybe last evening the Government filed the Government's second

19   revised proposed jury instructions end of trial.  The first

10:45AM 20   revision was Docket No. 987.  The second is No. 990.

21                My first question is what is the difference

22   between the first revised proposed jury instructions and the

23   second revised jury instructions?

24                MS. PALMER:  The main difference relates to the

10:46AM 25   campaign contributions language.  When I was reviewing it to

prepare the chambers copy, I realized that in crafting that

language, we had indicated that one of the provisions was from

the bribee's perspective and it should have been from the

briber's prospective.  So I amended that.

10:46AM       THE COURT:  A single instruction that you

amended?

        MS. PALMER:  Yes.  But then we also saw some -- I

just went through the whole thing again to make sure there

weren't any other errors for the hundredth time, and we found a

10:46AM  few more typos and just small items that we cleaned up.

        THE COURT:  Substantively it was the -- which

instruction?

        MS. PALMER:  It's the instruction -- actually,

the language appears in two instructions.  So it's the

10:47AM  McCormick language that we added.

        THE COURT:  Which instructions?

        MS. PALMER:  So that appears in

Instruction No. 28 and in Instruction No. 32.

        THE COURT:  Okay.  The rest of the changes or

10:47AM  modifications went to typos and other -- but non-substantive

changes.

        MS. PALMER:  Correct, Your Honor.

        THE COURT:  Is there a reason why in the second

revised proposed jury instructions you didn't in the

10:48AM  introductory pages indicate what the changes were that required

1    the second revision just as you told me this morning rather

2    than having another 90 pages of jury instructions and then I've

3    got to figure out why I'm looking at the second revised set?

4              MS. PALMER:  I did provide the Court with a red

5    line.

6              THE COURT:  But that's not helpful.  So a red

7    line is I have to go through and look at each page and each

8    jury instruction.  If I'm just trying to overall decide which

9    version to use, it would be helpful to in the second revised

10   set to indicate to the Court that the only substantive change

11   is to Exhibit 28 and Exhibit 32.  The rest of them were

12   technical errors, spelling, grammar, or whatever so then I

13   could put aside the first revised proposed jury instructions

14   and start my analysis or my review with the second set.

15             Instead, I'm trying to figure out what's the

16   difference between the first and second set, and I just don't

17   have the time to go through and figure that out.  The red line

18   doesn't help.  It isn't helpful.

19             But the other issue is and what I'm going to ask

20   you to do is you should be preparing a memorandum with respect

21   to the jury instructions pointing out to the Court, not in a

22   red-lined version, but what it is that you changed from the

23   original set to now the second revised proposed jury

24   instructions so I can look at that memorandum and I can

25   understand that, okay, we discussed X, Y, Z on that whatever

date it was that we discussed it and now you have attempted to
change that and the change is reflected in Element No. 2 of the
RICO.  Something where I don't have to sit there with a
red-lined version.

It's just a colossal -- it takes a colossal
amount of time for me to do that.  You know what you've done,
and a memorandum telling me and walking me through what the
revisions are --

MS. PALMER:  Absolutely, Your Honor.  I'm happy
to put that together.

THE COURT:  And the other thing is I guess you
were not aware of my longstanding rule, which we had in the
prior two cases in this prosecution, that you are not to change
the jury instruction numbers from the originals, that the
original jury instruction numbers remain sacred because, for
purposes of dealing with these instructions not only at the
trial court level but also at the appellate level, that if we
have an issue with respect to Exhibit No. 20, that -- I'm
sorry -- with respect to Instruction No. 20, that number never
changes.  So at the end of the trial when we have argument
about the jury instructions, No. 20 that's been discussed all
through the trial and revised and whatever, remains
Exhibit No. -- Instruction No. 20.  And also for appellate
review.  The appellate court knows that the issue was with
respect to Instruction No. 20 and that Instruction No. 20 was

filed on "X" date.  It was revised 15 different times but never

changed numbers.

So you were not aware of that?

MS. PALMER:  No, Your Honor.  I believe in the

10:51AM  past we, in fact, inserted other instructions and deleted other

instructions.

THE COURT:  Right.  But the numbers don't change.

So if you have an omission, for example, Jury

Instruction No. 2, you simply put on the table of contents

10:52AM  "deleted" or "omitted."  If you have a new instruction, it

picks up with the next consecutive number -- I don't know what

number we're at here -- and it takes on its own number.  But

none of the numbers change.

MS. PALMER:  Understood, Your Honor.

10:52AM  THE COURT:  Were you not -- Mr. Jenkins didn't

tell you about that rule?

MS. PALMER:  When I did the jury instructions in

940 Hill, that was not what my understanding was of how we did

it, but I obviously am mistaken.

10:52AM  THE COURT:  Okay.  I'm not going to make you go

back.  I'm going to treat the second revised proposed jury

instructions, which are 990, as the initial set of

instructions.  It's just going to be too confusing to go back

and start -- because I know you renumbered some of these

10:52AM  instructions.  So this is now going to be the set of

```
 1   instructions.  The numbers are frozen, and there will be no
 2   changes -- no numbering changes -- this is 1 through --
 3              MS. PALMER:  43.
 4              THE COURT:  It's 33.  Okay.
 5              MS. PALMER:  43.
 6              THE COURT:  43.  Okay.  So that will eliminate
 7   having to go back and redo the numbering.  No numbering
 8   changes.  If you omit something, just take it out and note on
 9   the next table of contents or on the actual exhibit that it's
10   been removed.  And if you add one, it's going to be -- what's
11   the last number of these?
12              MS. PALMER:  43, Your Honor.
13              THE COURT:  If there's another instruction or new
14   instruction that you're going to offer, it will become No. 44,
15   and it will have its own sacred number that will never be
16   changed.
17              MS. PALMER:  And to the extent it makes sense to
18   logically include it higher in the instructions, could we do an
19   A or something like that, if needed?
20              THE COURT:  No.  Because what I do at the end of
21   the trial is, when we have our final jury -- when I make final
22   rulings on the jury instructions, I make the rulings, and then
23   I put them in the order that I think they should be given.
24   It's a waste -- it's not a waste of time, but it's just more
25   confusing to try to figure out how I'm going to do them because
```

```
 1    I may not like the order.  So I will make the determination in
 2    terms of what order I'm going to read the jury instructions.
 3              MS. PALMER:  Understood, Your Honor.
 4              THE COURT:  Okay.  Now, the substantive questions
 5    I have are the following.  And I haven't had a chance to digest
 6    all of these, but I did note a couple of items that I wanted to
 7    have here.
 8              We discussed the proposed instruction that
 9    identifies the second type of racketeering act as bribery in
10    violation of California law, and we had the discussion about
11    the amendment to the Indictment, but I haven't seen that
12    request to amend the Indictment yet.  Is that going to be
13    coming soon?
14              MR. JENKINS:  Yes, Your Honor.  The quick answer
15    is debating whether to just change the portion that relates to
16    the defendant in Count 1 or to make the changes as to other
17    counts that don't reflect this defendant.  But we will file
18    that shortly after today -- shortly after this hearing.
19              THE COURT:  You don't have to file it today.
20    Just get it on file this week so we can deal with it.
21              MR. JENKINS:  Yes, Your Honor.  Will do.
22              THE COURT:  All right.  And then the second
23    revised proposed instruction -- again, this is 20, you have
24    apparently eliminated -- before you had, in addition to the
25    honest services wire fraud, you had included that the
```

10:54AM

10:55AM

10:55AM

10:56AM

10:56AM

Government has alleged that the CD-14 Enterprise engaged in the following forms of racketeering activity, and you had six forms.  The revised set of instructions only has five, and apparently you have eliminated the sixth which was "Any act which is indictable under the Currency and Foreign Transaction Reporting Act including structuring to evade reporting requirements in violation of 31 United States Code Section 5324."

MS. PALMER:  That's correct, Your Honor.

THE COURT:  Why has that been eliminated?

MS. PALMER:  We eliminated that based upon our agreement with the Court that we should include that the defendant agreed to those -- sorry -- that the enterprise would commit two racketeering acts and -- instead of new or contemplated.  And given that language and what the evidence has been at trial, we decided not to go forward on that particular type of crime.

THE COURT:  What is the agreement you think you had with the Court?  I didn't have any agreements.

MS. PALMER:  We agreed with the Court regarding the agreed language so that the element number --

THE COURT:  So you agreed with the language -- proposed language change, but you decided on your own to eliminate the sixth type of racketeering act because you didn't think the evidence at trial sustained that yet?

1          MS. PALMER:  Correct, Your Honor.

2          THE COURT:  Okay.  All right.  See, again, that's

3   why the memo is helpful so I can have an understanding of what

4   the reason is.  All right.

10:58AM   5          The next is the -- oh, yeah.  In the revised --

6   the revised -- second revised proposed Jury Instruction No. 27,

7   you have changed the account numbers which -- the account

8   number from Synergy Chase Bank account ending in -- what you

9   originally had was 9050, and you changed it to 7753.  That is

10:59AM  10  in each of those counts 12 and 13.  But the First Superseding

11  Indictment charges 9050.  So how are we simply changing the

12  jury instruction from the allegation of the First Superseding

13  Indictment?

14          Am I incorrect that the -- am I missing something

11:00AM  15  that the First Superseding Indictment -- it charged account

16  No. 9050; correct?

17          MS. PALMER:  Your Honor, that's a typo --

18          THE COURT:  What's a typo?

19          MS. PALMER:  -- in the First Superseding

11:00AM  20  Indictment.  So the check number was 9050 but the account

21  number is 7753, and that's the evidence that we put forward at

22  trial.

23          THE COURT:  Well, you have to have some

24  explanation as to how you're changing the Indictment.

11:00AM  25          MS. PALMER:  It's the same check that has been

1   identified, the same account.

2          THE COURT:  I understand what the evidence is,

3   but isn't there a legal issue with respect to changing the

4   account number as alleged in the First Superseding Indictment

11:00AM   5   to conform to the evidence?  I mean, it's certainly not a typo.

6   9050 and 7753 are two distinct numbers.  It's not like it's off

7   by a digit.

8          In your memorandum, you can explain to me why

9   that should be permitted.  You don't see any issue with that?

11:01AM   10          MS. PALMER:  I don't think there's any notice

11   issue.  We produced the check themselves, the account.  But we

12   can brief that issue, Your Honor.  We will.

13          THE COURT:  Okay.  All right.

14          When would be convenient for you to file the

11:01AM   15   memorandum explaining to me the changes?  And I don't mean --

16   the little changes I can certainly figure out.  These are the

17   only substantive changes that I was able to pick out, but I

18   didn't know which revised set I was supposed to be looking at.

19          MS. PALMER:  Understood, Your Honor.  Would

11:02AM   20   tomorrow by 4:00 be sufficient time for the Court?

21          THE COURT:  You can have the next day by 4:00.

22   We have time now.  I want to make sure we do this right.  This

23   goes to the defense and the Government.  As long as we have

24   time -- obviously, if we were still in trial and getting close

11:02AM   25   to the end of the trial, these things would become obviously

1   more urgent.  But in the next couple days, if you want to file

2   it by Wednesday, that's fine with me.

3            MS. PALMER:  Thank you, Your Honor.

4            THE COURT:  Explain to me what the reasoning

11:02AM   5   was with respect to -- I think the new verdict form is

6   incredibly confusing.  I've got the first revised verdict form

7   which was filed.  It's 998.

8            MS. PALMER:  That's the most recent version.

9            THE COURT:  There is no second revised version.

11:03AM   10            MS. PALMER:  Correct, Your Honor.  The only

11   substantive change is the unanimity requirement with respect to

12   the RICO predicates.  That's the only substantive change to

13   that.

14            THE COURT:  Right.  So explain to me.  Question

11:03AM   15   No. 2 now has "We the jury having found the defendant guilty of

16   Count 1 of the Indictment further unanimously find" dot, dot,

17   dot, "would have committed at least two racketeering acts in

18   furtherance of the conspiracy consisting of at least one of the

19   following types of racketeering activity."

11:03AM   20            MS. PALMER:  Correct.

21            THE COURT:  Isn't that inconsistent or confusing?

22   And then you have broken down, instead of using the

23   racketeering acts that we have instructed the jury, you now

24   have characterized these in terms of what you believe are types

11:04AM   25   of racketeering activities.

1        MS. PALMER:  I'm realizing that these -- yes.  I

2   apologize, Your Honor.  I realize a few of them should be

3   combined into one.  The purpose of this is to -- as far as it

4   being inconsistent, it's two racketeering acts, but they can be

11:04AM   5   of the same type.

6        The reason why we wanted the jury to let us know

7   which type is because there are cases where courts have found

8   after the fact that there was insufficient evidence as to one

9   type.  But because there was not unanimity, the Court could not

11:05AM   10   determine what evidence the jury relied on in reaching their

11   verdict on the RICO count, and that's why we have included

12   those.

13        But I agree they should mirror exactly what we

14   have laid out in the jury instructions, and so I will revise

11:05AM   15   that.

16        THE COURT:  Well, that's the problem that -- and,

17   again, I just -- when I read it, I couldn't -- I understood it,

18   but I thought you're talking about committing at least two

19   racketeering acts in furtherance of the conspiracy, and then

11:05AM   20   you go to types of racketeering activity.  And that's where I

21   think a potential confusion is going to come in with respect to

22   the jury the way it's stated, but I will let you take a look at

23   that.

24        MS. PALMER:  Thank you, Your Honor.

11:05AM   25        THE COURT:  All right.  I don't have anything

1    else.

2                    Does the Government have anything else?

3                    MR. JENKINS:  No, Your Honor.

4                    THE COURT:  Okay.  Defense?

11:06AM    5                    MR. PRATT:  No, Your Honor.

6                    THE COURT:  All right.  You all have a lot of

7    work to do, and I appreciate -- now that we have the time, I

8    would be appreciative of counsel's efforts if you can address

9    the issues we discussed this morning so hopefully we will be

11:06AM   10    prepared to go forward, and we will have a lot of these issues

11    resolved now that we have the luxury of time.

12                    So we will be in recess.

13                    And give my best to Mr. Braun.

14                    MR. PRATT:  I will, Your Honor.  Thank you.

11:06AM   15                    MR. JENKINS:  Thank you, Your Honor.

16                    (Proceedings concluded at 11:06 a.m.)

17

18

19

20

21

22

23

24

25

1             CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5             I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13  THE UNITED STATES.

14

15             DATED THIS  15TH  DAY OF MARCH, 2023.

16

17

18             /S/ MIRANDA ALGORRI

19             _____
               MIRANDA ALGORRI, CSR NO. 12743, CRR
20             FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25