John Hanusz (State Bar No. 277367)
HANUSZ LAW PC
515 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorneys for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYMOND SHE WAH CHAN,<br><br>Defendant. | Case No. 20-CR-326-JFW<br><br>**RAYMOND CHAN'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS 1, 12-15 and 28 OF THE FIRST SUPERSEDING INDICTMENT AND STRIKE OVERT ACTS**<br><br>**Date: January 8, 2024**<br>**Time: 8:00 a.m.**<br>**Ctrm: 7A - Hon. John F. Walter** |

**TO THE HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE, PLAINTIFF UNITED STATES OF AMERICA AND ITS ATTORNEYS OF RECORD,**

 **PLEASE TAKE NOTICE THAT** on January 8, 2024 at 8:00 a.m., or as soon thereafter as the mater may be heard, Defendant Raymond Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, will and

MOTION TO DISMISS

hereby does move to dismiss Counts One, Twelve, Thirteen, Fourteen, Fifteen, and Twenty-Eight of the First Superseding Indictment ("FSI") for failure to state an offense against him pursuant to Rule 12 of the Federal Rules of Criminal Procedure.

       This motion is based on this Notice, the attached Memorandum of Points and Authorities, all matters of which the Court may take judicial notice, and such other and further argument and evidence as may be presented to the Court at the hearing of this matter.

Dated: December 4, 2023              Respectfully submitted,

                                      */s/ John Hanusz*
                                      John Hanusz

                                      */s/ Michael G. Freedman*
                                      Michael G. Freedman

                                      Attorneys for Raymond Chan

# TABLE OF CONTENTS

I.      INTRODUCTION .........................................................................................1

II.     LEGAL STANDARD ...................................................................................1

III.    ARGUMENT.................................................................................................3

     A.   Counts Twelve through Fifteen must be dismissed under *Percoco v.
        United States*, and several overt acts in Count One must be stricken...3

        1.   The law on honest services wire fraud before *Percoco*
            emphasized the need for a defendant to have a fiduciary duty to
            another.........................................................................................3

        2.   In *Percoco*, the Supreme Court found that private citizens do
            not necessarily have a fiduciary duty to provide honest services
            to the public.................................................................................5

        3.   The logic of *Percoco* requires dismissal of Counts Twelve
            through Fifteen. ...........................................................................6

        4.   For the same reason, several overt acts in Count One must be
            stricken. ......................................................................................6

     B.   Count Twenty-Eight should be dismissed because Chan did not accept
        a bribe when he was an agent of an organization that accepted federal
        funds. ..................................................................................................7

     C.   Count One must be dismissed against Chan because it fails to
        establish a RICO conspiracy existed....................................................8

IV.    CONCLUSION............................................................................................12

iii

MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Patterson*, No. 16-CV-00181-MWB, 2016 WL 6434112 (D. Idaho Oct. 28, 2016) ...............................................................................................................11

*Elliott v. Foufas*, 867 F.2d 877 (5th Cir. 1989) ...............................................11

*Greenberg v. Blake*, No. 09 Civ. 4347(BMC), 2010 WL 2400064 (E.D.N.Y. June 10, 2010) ...................................................................................................11

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .....................10

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ...............................................4

*McNally v. United States*, 483 U.S. 350 (1987)...............................................4

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)...................................9, 10

*Percoco v. United States*, 598 U.S. 319 (2023) .............................................. 1, 5, 6

*Rao v. BP Prod. North America, Inc.*, 589 F.3d 389 (7th Cir. 2009).....................11

*Skilling v. United States*, 561 U.S. 358 (2010) ...............................................3, 4

*United States v. Bynum*, 327 F.3d 986 (9th Cir. 2003)......................................8

*United States v. Cabrera*, 328 F.3d 506 (9th Cir. 2003) ...................................8

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015)...............................9

*United States v. Ezeta*, 752 F.3d 1182 (9th Cir. 2014) .....................................2

*United States v. Gross*, 370 F. Supp. 3d 1139 (C.D. Cal. 2019) ..........................2

*United States v. Marlinga*, No. 04-80372, 2005 WL 517964 (E.D. Mich. Mar. 2, 2005)....................................................................................................2

*United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012)...............................3

*United States v. Nosal*, No. C 08-0237 MHP, 2010 WL 934257 (N.D. Cal. Jan. 6, 2010)....................................................................................................2

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) ..........................................2

*United States v. Ramirez*, 710 F.2d 535 (9th Cir. 1983)....................................2

*United States v. Turkette,* 452 U.S. 576 (1981) ...............................................9

iv

MOTION TO DISMISS

**Statutes, Rules, and Guidelines**

18 U.S.C. § 1343 ................................................................................................3

18 U.S.C. § 1346 ................................................................................................3

18 U.S.C. § 1961 ...........................................................................................9, 10

18 U.S.C. § 666(a)(1)(B) ...................................................................................7

Federal Rule of Criminal Procedure 12(b)(3)(B)(v)....................................1

Federal Rule of Criminal Procedure 7 ......................................................1, 2

v

MOTION TO DISMISS

# I.  INTRODUCTION

Earlier this year, the Supreme Court limited the reach of the honest services fraud statute, 18 U.S.C. § 1346, by holding that private citizens may only violate the statute when they have been delegated to act as an agent of the government. *Percoco v. United States*, 598 U.S. 319, 331 (2023). This limitation is critical to the allegations at issue here, because Raymond Chan retired from public service on June 30, 2017. Many of the overt acts in Count One, and the substance of Counts Twelve, Thirteen, Fourteen, Fifteen, and Eighteen, all relate to activity taken after Chan had already left public service, and when he was a private citizen who was not delegated to act as an agent of the government. Thus, Chan respectfully requests that this Court dismiss those counts and strike those overt acts from the First Superseding Indictment ("FSI").  Count Twenty-Eight, charging Chan with accepting a bribe, should be dismissed for similar reasons, because Chan was not an agent of an organization that accepted federal funds at the time he allegedly solicited the alleged bribe.

The FSI also alleges that that Chan participated in an "associated-in-fact enterprise," within the meaning of the Racketeer Influenced and Corrupt Organizations Act (RICO), without stating any facts required to demonstrate that the defendants had a common purpose, an ongoing organization, or any of the minimal attributes of a RICO enterprise. As a result, Chan respectfully requests that the Court dismiss Count One as well.

# II.  LEGAL STANDARD

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Rule 12(b)(3)(B)(v) provides that a defendant may file a motion to raise a defect in the indictment, including the indictment's "failure to state an offense." A court considering a motion to dismiss must accept the indictment's allegations as true but need not credit general

conclusory allegations "when they are belied by the more specific facts in the indictment." *United States v. Nosal*, No. C 08-0237 MHP, 2010 WL 934257, at *2 (N.D. Cal. Jan. 6, 2010) (dismissing multiple counts despite charging language that tracked the statute where specific allegations refuted general charging language), *aff'd en banc* 676 F.3d 854 (9th Cir. 2012) (cleaned up).

The indictment must provide sufficient details of the charges: "(1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Gross*, 370 F. Supp. 3d 1139, 1146 (C.D. Cal. 2019) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988)). "Dismissal of an indictment is appropriate when it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014).

Rule 7 separately empowers courts to "strike surplusage from the indictment." Fed. R. Crim. P. 7(d). The Ninth Circuit defines surplusage as "allegations . . . that are not necessary to establish a violation of a statute[.]" *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002). "The purpose of [a motion to strike] is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir. 1983). When a single count joins together actionable and non-actionable conduct – like in a multi-object conspiracy or scheme offense – a court can excise the legally-deficient portions of the count from the properly-pled ones by striking them from the indictment. *United States v. Marlinga*, No. 04-80372, 2005 WL 517964 (E.D. Mich. Mar. 2, 2005) (striking portions of bribery indictment under Rule 7(d)); *United States v. Pirro*, 212 F.3d 86, 88 (2d Cir. 2000) (affirming jurisdiction over orders "dismissing a portion of a count" that, if valid, would offer a discrete basis for liability).

2

MOTION TO DISMISS

## III.    ARGUMENT

**A.    Counts Twelve through Fifteen must be dismissed under *Percoco v. United States*, and several overt acts in Count One must be stricken.**

Counts Twelve through Fifteen are fatally defective because Chan did not owe anyone a fiduciary duty at the time of the alleged commission of the crimes contained in those counts, which is an essential element of honest services wire fraud. Honest services wire fraud, a violation of 18 U.S.C. §§ 1343 and 1346, prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" that is "transmitted by means of wire . . . in interstate . . . commerce." Section 1346 states that the term "scheme or artifice to defraud" "includes a scheme or artifice to deprive another of the intangible right of *honest services*." (Emphasis added).

### 1.    The law on honest services wire fraud before *Percoco* emphasized the need for a defendant to have a fiduciary duty to another.

To be convicted for honest services wire fraud, "a breach of fiduciary duty is required." *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012) (*en banc*); *see also Skilling v. United States*, 561 U.S. 358 (2010). In *Skilling*, the Supreme Court considered a challenge to section 1346 for vagueness. 561 U.S. at 399-400.  In *Skilling*, the Supreme Court considered a challenge to the constitutionality of 18 U.S.C. § 1346, concluded that the statute should be "construed rather than invalidated," and opined on the meaning of the phrase "the intangible right of honest services." *Id.* at 404.

The Court considered the history of the mail fraud statute, including the amendment of the statute to prohibit not just "any scheme or artifice to defraud" but also "obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *Id.* The Supreme Court noted that appellate courts interpreted this amendment to "include deprivations not only of money or property,

3

MOTION TO DISMISS

but also of intangible rights," which developed into the "honest services" doctrine. *Id*. at 400.

However, in *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court "stopped the development of the intangible-rights doctrine in its tracks" by holding that the alleged scheme in that case did not qualify as mail fraud. *Skilling*, 561 U.S. at 401-02. In response to *McNally*, Congress enacted a new statute, 18 U.S.C. § 1346, "specifically to cover one of the intangible rights that lower courts had protected prior to *McNally*: the intangible right of honest services." *Id*. at 402 (citations and internal punctuation omitted).

Looking to the case law that developed before *McNally*, the Supreme Court in *Skilling* discerned that the "vast majority of the honest-services cases involved offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." *Skilling*, 561 U.S. at 407 (citation and quotations omitted) (emphasis added). The Court also invoked the rule of lenity, finding it appropriate for Section 1346, holding that lenity "is especially appropriate in construing Section 1346 because mail and wire fraud are predicate offenses under [RICO] and the money laundering statute." *Id*. at 411 (citation, quotation, and internal punctuation omitted).

More recently, in *Kelly v. United States*, the Supreme Court stressed that "not every [bad] act by state or local officials is a federal crime." *Kelly v. United States*, 590 U.S. __, 140 S. Ct. 1565, 1571 (2020). The Supreme Court further noted that even though Congress expanded the scope of wire and mail fraud prosecutions in 1988 by enacting 18 U.S.C. § 1346 to allow for the prosecution of public officials who deprive the public "of the intangible right of honest services," its own precedent has adopted a "limiting construction" of that statute, which "leaves much public corruption to the States (or their electorates) to rectify." *Id*.

4

MOTION TO DISMISS

**2.    In *Percoco*, the Supreme Court found that private citizens do not necessarily have a fiduciary duty to provide honest services to the public.**

In *Percoco*, the Supreme Court further limited the reach of the honest services fraud statute by precluding certain individuals acting in a private capacity from prosecution. *See Percoco,* 598 U.S. 319. The defendant in *Percoco* had served as executive secretary to the governor of New York, then resigned that post to manage the governor's re-election campaign, but resumed the post when the governor was re-elected. *Id*. at 323. During his time both in public service and in private service, the defendant exerted his political influence to perform favors for others who paid him. *Id*.  The question for the Supreme Court was how to hold the defendant liable for actions taken during the period that he was no longer in government service. *Id*.

The Supreme Court confirmed that the only way to find that a private defendant owes a duty of honest services to the public is when the defendant has been delegated the authority to act as an agent of the government. *Id*. at 329-30.

> Without becoming a government employee, individuals not formally employed by a government entity may enter into agreements that make them actual agents of the government. An "agent owes a fiduciary obligation to the principal," *see*, *e.g.*, 1 Restatement (Third) of Agency § 1.01, Comment *e*, p. 23 (2005), and therefore an agent of the government has a fiduciary duty to the government and thus to the public it serves.

*Id*.

But the district court in *Percoco* had instructed the jury that they could find the defendant guilty if, "first, . . . he dominated and controlled any governmental business and, second, that people working in the government actually relied on him because of a special relationship he had with the government." *Id.* at 324-25 (quotations omitted). Although the Second Circuit affirmed the conviction, the

5

MOTION TO DISMISS

Supreme Court reversed, holding that the instruction implied that the public had a right to a private individual's honest services when that individual's influence over government had reached some vague and ill-defined threshold. *Id*. In effect, these terms could criminalize the innocent and necessary but interested services of lobbyists or other political activists.

> **3.** **The logic of *Percoco* requires dismissal of Counts Twelve through Fifteen.**

Under *Percoco*, the government cannot prosecute Chan for his actions after he left public office on June 30, 2017, unless it can demonstrate that he had contracted with the government to act as a government agent during this period. This includes Counts Twelve and Thirteen, where Chan allegedly did no more than the defendant in *Percoco*: he allegedly accepted payments in exchange for influencing/exerting pressure on certain government processes. While this may have allegedly been a violation of city rules, it was not a violation of federal law. Chan was not a government agent or official or employee, and therefore he did not owe the public any fiduciary duty or duty of honest services as proscribed by federal law. Similarly, the emails that form the bases of Counts Fourteen and Fifteen, where other individuals, not Chan, discussed contributions to Jose Huizar and his wife's political campaigns, were sent after Chan left public service. Any involvement Chan had with those emails occurred when Chan had no duty of honest services to the public, and he cannot be prosecuted for honest services fraud during that time period.

> **4.** **For the same reason, several overt acts in Count One must be stricken.**

Likewise, several of the overt acts in Count One allege conduct by Chan after he left the government and thus could not have violated the honest services statute. The following overt acts must be stricken for this reason:

6

MOTION TO DISMISS

Overt Act 78: September 4, 2018 conversation between Chan and George Chiang regarding fundraising;

Overt Act Nos. 83-84: Chan's November 2018 text messages with Huizar regarding fundraising;

Overt Act No. 171: Communication between Chan and Chiang in August 2017 regarding upcoming hearing;

Overt Acts Nos. 182, 186, 188, 191: Chan's 2018 meetings and communications regarding fundraising;

Overt Act Nos. 206-209: Chan's communications between June 22, 2017 and September 14, 2017;

Overt Act No. 212: On October 28, 2017, Chiang issued a check from Synergy to LABXG Inc., for $33,507.23 for Chan;

Overt Act No. 215: On December 27, 2017, Chiang issued a check from Synergy to LABXG Inc., for $33,507.23 for Chan, with "revenue split" in the memo line of the check;

Overt Act Nos. 217-220: Chan's meetings regarding and payments to Deron Williams' relative;

Overt Act Nos. 221-233: Chan's meetings regarding, and payments to, Ave Jacinto; and

Overt Act Nos. 234-240: Chan's meetings regarding and payments to Shawn Kuk.

**B.    Count Twenty-Eight should be dismissed because Chan did not accept a bribe when he was an agent of an organization that accepted federal funds.**

In Count Twenty-Eight, Chan is charged with accepting bribes in violation of 18 U.S.C. § 666(a)(1)(B). For a jury to find Chan guilty under this statute, Chan would have to have been "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" that received "benefits … under a

7

MOTION TO DISMISS

Federal program," at the time that he allegedly solicited the bribe. In *United States v. Cabrera*, the Ninth Circuit noted that "the [Supreme] Court [has] cautioned against 'turn[ing] every act of fraud or bribery into a federal offense ....'" 328 F.3d 506, 509 (9th Cir. 2003) (quoting *Fischer v. United States*, 529 U.S. 667, 681 (2000)). In *Cabrera*, the Ninth Circuit also specified that "following the language of the statute, we [have] ruled that only two elements are required to sustain a conviction under § 666: (i) the defendant must be an agent of a government agency receiving $10,000 or more in federal funding annually, and (ii) the [proscribed] transaction ... must exceed $5,000." *United States v. Bynum*, 327 F.3d 986, 991 (9th Cir. 2003) (citing *Cabrera*, 328 F.3d at 509) (internal quotations omitted). "These requirements parallel § 666 exactly." *Cabrera*, 328 F.3d at 509. Additionally, "[the Supreme Court] held that the defrauded program or agency must receive federal funding directly, and that entities receiving only indirect benefits of federal funding ... are not within the purview of [§ 666]." *Id*. at 509 (citing *United States v. Wyncoop*, 11 F.3d 119 (9th Cir.1993)).

However, for half of the time period alleged in this Count (January-December 2017), Chan was no longer in public service, and this Count does not specify any alleged conduct during the time period Chan was still working for the City (January-June 2017). Additionally, there is no allegation that either private organization that Chan was involved with (Synergy or LABXG) received benefits under a federal program. Consequently, Count Twenty-Eight must be dismissed under the plain language of the statute.

## C.   Count One must be dismissed against Chan because it fails to establish a RICO conspiracy existed.

The basic requirements of a RICO conspiracy must be met in order to prevent overzealous lawyers from imagining a RICO enterprise exists where individuals with legitimate relationships are engaging in disparate racketeering acts with different objectives. However, here, that is exactly what happened. The

8

MOTION TO DISMISS

government has imposed a RICO enterprise based on the relationship between Huizar, Chan, and others when no such enterprise existed.[1]

A RICO offense is established by "proof of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (citing *United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004) (internal quotation marks omitted)). The RICO statute defines the term "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). More specifically, an "association-in-fact enterprise," under 18 U.S.C. § 1961(4), "does not require any particular organizational structure, separate or otherwise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc). Nevertheless, to allege an "association-in-fact enterprise," the charging document must describe "'a group of persons associated together for a common purpose of engaging in a course of conduct[ ]' ... [and] must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette,* 452 U.S. at 583. Although "[t]his expansive definition is 'not very demanding,'" *Christensen*, 828 F.3d at 780 (citing *Odom*, 486 F.3d at 548), it still requires the government to demonstrate that there was "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552. Thus, a RICO enterprise has three elements: (1) a common purpose, (2) an ongoing organization, and (3) a continuing unit. *Id.*

---

[1] Chan previously joined Jose Huizar's Motion to Dismiss and/or Strike as to Count One (Dkt. No. 235), but that motion was focused on the indictment's failure to sufficiently describe "racketeering acts," not the absence of an enterprise.

MOTION TO DISMISS

Similarly, a "pattern of racketeering activity" also requires that the government demonstrate an ongoing relationship between the members of the alleged enterprise. The statute minimally "requires at least two acts of racketeering activity" that occur within ten years of one another. 18 U.S.C. § 1961(5). Nevertheless, the Supreme Court has found that "while two acts are necessary, they may not be sufficient." *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237-38 (1989) (internal quotation marks omitted). "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *Id*. at 238 (emphasis in original). Accordingly, "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle" that matters. *Id*. While "Congress ... had a fairly flexible concept of a pattern in mind," a pattern cannot be formed by "sporadic activity"; "[i]t is [the] factor of *continuity plus relationship* which combines to produce a pattern." *Id*. at 239 (emphasis in original) (quotation marks omitted). With this in mind, "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related...." *Id*. "Relatedness" considers the relationship of the defendant's criminal acts one to another, focusing on whether the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240 (quoting 18 U.S.C. § 3575(e)).

The government has not alleged that there is a common relationship with a common ongoing purpose between the individuals alleged to have formed the enterprise in this case. Instead, the so-called "CD-14 enterprise" appears to have had different participants working on different development projects throughout Downtown Los Angeles, without the necessary relationship to each other or to a single purpose. *See Odom*, 486 F.3d at 552 (finding that an associated-in-fact

enterprise existed when two corporations had the common purpose of increasing the number of people using their products through fraudulent means); *Rao v. BP Prod. North America, Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (dismissing RICO claim on the basis that plaintiff's "allegations do not indicate how the different actors are associated and do not suggest a group of persons acting together for a common purpose or course of conduct."); *Greenberg v. Blake*, No. 09 Civ. 4347 (BMC), 2010 WL 2400064, at *4 (E.D.N.Y. June 10, 2010) (a plaintiff "must provide solid information regarding the hierarchy, organization, and activities of the alleged enterprise, from which [the court] could fairly conclude that its members functioned as a unit…. Lack of proof of such an independently existing separate enterprise dooms a RICO claim").

As relevant to Chan, he had zero role in a number of the schemes alleged in Count One, nor is there any allegation that he knew about those schemes or acted with a common purpose to those schemes. Dkt. No. 74 at 30-37 ("940 Hill Bribery Scheme); 63-76 ("Mateo Project Bribery Scheme"); 77-81 ("Businessperson A Schemes"). While Chan and Huizar had a relationship based on their roles in government, and allegedly worked in concert to commit at least a handful of acts of racketeering, that fact is not sufficient to satisfy the requirement that they were involved in a distinct ongoing enterprise. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) ("If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business."). For example, in *Baker v. Patterson*, No. 16-CV-00181-MWB, 2016 WL 6434112 at *5 (D. Idaho Oct. 28, 2016), the court found that a surgery center was not in a RICO enterprise with a doctor who was using non-FDA approved breast implants and botox on his patients, even though they knew about it because they did not have a common purpose. The surgery center's purpose was to collect rent from the doctor, whereas the doctor's purpose was to profit from using non-FDA approved materials. *Id*. Such was the case here

11

MOTION TO DISMISS

as well, where Chan had no role in (or even knowledge of) many of the schemes alleged in Count One, and did not act with a common purpose with the others named in that count.

## IV.   CONCLUSION

For the foregoing reasons, Raymond Chan respectfully requests that the Court dismiss Counts One, Twelve, Thirteen, Fourteen, Fifteen and Twenty-Eight of the First Superseding Indictment.

12

MOTION TO DISMISS