E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:   Mack.Jenkins@usdoj.gov
               Cassie.Palmer@usdoj.gov
               Susan.Har@usdoj.gov
               Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>RAYMOND SHE WAH CHAN,<br>  aka "She Wah Kwong,"<br><br>          Defendant. | No. CR 2:20-326(A)-JFW-2<br><br>GOVERNMENT'S OPPOSITION TO<br>DEFENDANT'S MOTION TO DISMISS<br>COUNTS AND STRIKE OVERT ACTS<br><br>Date:     January 8, 2024<br>Time:     8:00 a.m.<br>Location: Courtroom of the Hon.<br>          John F. Walter |

       Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Mack E. Jenkins,

Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files

the Government's Opposition to Defendant's Motion to Dismiss Counts

1, 12-15 and 28 of the First Superseding Indictment and Strike Overt

Acts.  (See Dkt. No. 1210 ["Mot."].)

1        The government's Opposition is based upon the attached

2   memorandum of points and authorities, the files and records in this

3   case, and such further evidence and argument as the Court may permit.

4    Dated: December 18, 2023          Respectfully submitted,

5                                      E. MARTIN ESTRADA
                                       United States Attorney
6

7                                            /s/
                                       _____
8                                      SUSAN S. HAR
                                       MACK E. JENKINS
9                                      CASSIE D. PALMER
                                       BRIAN R. FAERSTEIN
10                                     Assistant United States Attorneys

11                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   RELEVANT FACTS..................................................2

      A.    Allegations of the FSI....................................2

            1.    RICO Conspiracy (Count One).........................3

            2.    Honest Services Wire Fraud (Counts Twelve-
                  Fifteen)............................................7

            3.    Federal Program Bribery (Count Twenty-Eight)........7

      B.    Procedural History........................................8

III.  LEGAL STANDARD.................................................10

IV.   ARGUMENT.......................................................11

      A.    The FSI Sufficiently Alleges Honest Services Wire
            Fraud...................................................11

      B.    The FSI Sufficiently Alleges Federal Program Bribery.....16

      C.    This Court Already Denied Defendant's Motion to
            Dismiss Count One, and Defendant Fails to Meet the
            Standard for Reconsideration............................18

      D.    Count One Sufficiently Alleges a RICO Conspiracy,
            Including an Agreement That the CD-14 Enterprise with
            a Common Purpose Would Exist............................20

V.    CONCLUSION.....................................................22

i

**TABLE OF AUTHORITIES**

**Cases**                                                              **Page(s)**

Harsco Corp. v. Zlotnicki,
  779 F.2d 906 (3d Cir. 1985) .................................. 18

Orange Street Partners v. Arnold,
  179 F.3d 656 (9th Cir. 1999) ................................. 18

Percoco v. United States,
  598 U.S. 319 (2023) ..................................... 1, 11, 12

Salinas v. United States,
  522 U.S. 52 (1997) ....................................... 20, 22

United States v. Applins,
  637 F.3d 59 (2d Cir. 2011) ................................... 21

United States v. Armstrong,
  909 F.2d 1238 (9th Cir. 1990) ................................ 14

United States v. Blinder,
  10 F.3d 1468 (9th Cir. 1993) ......................... 10, 11, 17

United States v. Brooklier,
  685 F.2d 1208 (9th Cir. 1982) ................................ 22

United States v. Bynum,
  327 F.3d 986 (9th Cir. 2003) ................................. 18

United States v. Cabrera,
  328 F.3d 506 (9th Cir. 2003) ................................. 18

United States v. Fernandez,
  388 F.3d 1199 (9th Cir. 2004) ............................ 21, 22

United States v. Fiorelli,
  337 F.3d 282 (3d Cir. 2003) .................................. 18

United States v. Garcia,
  400 F.3d 816 (9th Cir. 2005) ................................. 14

United States v. Gaskins,
  849 F.2d 454 (9th Cir. 1988) ................................. 14

United States v. Givens,
  767 F.2d 574 (9th Cir. 1985) ............................ passim

United States v. Jensen,
  93 F.3d 667 (9th Cir. 1996) .................................. 10

United States v. Kelly,
  874 F.3d 1037 (9th Cir. 2017) ............................ 10, 19

United States v. Matta-Ballesteros,
  71 F.3d 754 (9th Cir. 1995) .............................. 16, 19

United States v. Rogers,
  751 F.2d 1074 (9th Cir. 1985) ................................ 10

United States v. Tille,
  729 F.2d 615 (9th Cir. 1984) ................................. 20

United States v. Torres,
  908 F.2d 1417 (9th Cir. 1990) ............................ 16, 19

United States v. Yousef,
  327 F.3d 56 (2d Cir. 2003) ............................... 16, 19

**Statute**

18 U.S.C. § 666(a)(1)(B) ..........................................17

**Rules**

Fed. R. Civ. P. 59(e) .............................................18
Fed. R. Civ. P. 60(b) .............................................18
Fed. R. Crim. P. 7(c)(1) ..........................................10
Fed. R. Crim. P. 12(c)(3) ......................................16, 20

**Other Authorities**

C.D. Cal. L.R. 7-18 ...............................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

More than nine months after his nearly completed criminal trial ended in a mistrial and new counsel substituted in to retry his case, defendant has turned back the clock and moved -- for a second time -- to dismiss counts from the First Superseding Indictment ("FSI"). Defendant does so more than three years after the FSI was returned and more than two years after the deadline to file Rule 12 motions to dismiss has passed.  Making matters worse, defendant filed his motion without providing any notice to the government, engaging in the required meet-and-confer, or seeking leave of the Court.

Aside from these procedural violations, defendant's motion is based on a fundamental misunderstanding of what is alleged in the FSI and a misapplication of Percoco v. United States, 598 U.S. 319 (2023), which has no relevance to this case.

Relying on Percoco, defendant argues that the FSI improperly charges him with honest services wire fraud for conduct he engaged in as a private citizen when he no longer owed a fiduciary duty to the City of Los Angeles (the "City").  But that is not what defendant is charged with doing.  As the FSI sets forth in detail -- and as defendant well knows from the government's trial presentation earlier this year -- the relevant charges (Counts Twelve through Fifteen) are based on (1) defendant's breach of his fiduciary duties while he was still a public official, and (2) defendant's aiding/abetting of Huizar's breach of his fiduciary duties.  The FSI does not allege, nor do the government's theories of liability require proof, that defendant breached his fiduciary duty while he was a private citizen. Defendant's untimely challenge to the federal program bribery charge

(Count Twenty-Eight), premised on the same mistaken assumption about the timing of his criminal conduct, fails for the same reason.

Likewise, defendant's challenge to the RICO conspiracy count (Count One) for failure to allege an enterprise is meritless and easily rejected for three primary reasons. First, defendant's claim is nothing more than a disguised motion for reconsideration of the Court's denial of his original motion to dismiss Count One. (Dkt. No. 235.) But defendant presents no new material law or facts that were not reasonably discoverable at the time this Court first considered and rejected defendant's motion. Second, defendant conflates RICO <u>conspiracy</u>, which is what Count One charges, with a <u>substantive</u> RICO violation, which is not charged, and incorrectly contends that the FSI must allege an actual enterprise as an element. There is no such requirement for RICO conspiracy. And third, although it is not required, Count One nonetheless alleges in detail that the Council District-14 ("CD-14") Enterprise existed and that defendant was a knowing, critical, and active member of that criminal organization.

The Court should deny defendant's motion in full.

## II.  RELEVANT FACTS

### A.  Allegations of the FSI

On November 12, 2020, the grand jury returned the FSI charging defendant with RICO conspiracy, honest services wire fraud, federal program bribery, and making false statements. (Dkt. No. 74.) Defendant was employed by the City first as the General Manager of the Los Angeles Department of Building and Safety and then, starting in May 2016, as a Deputy Mayor. (FSI ¶ 15, p. 5.) The FSI alleges that while defendant was "a public official employed by the City,

1    [he] owed a fiduciary duty to the City and citizens of the City[.]"

2    (Id.)  In July 2017, defendant retired from the City and "officially"

3    began working as a lobbyist/consultant with George Chiang ("Chiang").

4    (Id.)

5            1.   RICO Conspiracy (Count One)

6        Count One charges defendant and Councilmember Jose Huizar

7    ("Huizar") with RICO conspiracy, in violation of 18 U.S.C.

8    § 1962(d).[1]  Count One alleges the existence of the criminal CD-14

9    Enterprise, defines the objectives of that enterprise, and sets forth

10   the manner and means by which defendant, Huizar, and other members

11   and associates of the enterprise agreed to conduct, and actually

12   conducted, its affairs.  (FSI ¶¶ 37-42, pp. 10-15.)  Among other

13   things, the means of the CD-14 Enterprise included enriching the

14   members/associates through the pay-to-play scheme in exchange for

15   official acts; maintaining political power, including by raising

16   funds for Huizar's wife's (Richelle Rios) election campaign for the

17   CD-14 City Council seat; and avoiding law enforcement detection,

18   including by lying to law enforcement and seeking to conceal bribes

19   and benefits.  (FSI ¶ 42, pp. 12-15.)  The FSI describes 452 overt

20   acts committed "in furtherance of the conspiracy and to accomplish

21   the object of the conspiracy."  (FSI ¶ 43, pp. 15-100.)

22        Count One alleges that defendant was a "member[] and

23   associate[]" of the CD-14 Enterprise who "conspired with" other

24   enterprise members/associates to conduct and participate "in the

25

26   ────────────────────

27       [1] Huizar, along with Chiang and George Esparza, have all pleaded
     guilty to the RICO conspiracy charge which defendant moves to dismiss
     a second time here.  (See Dkt. Nos. 910, 912 (Huizar guilty plea);

28   Case No. CR 20-203-JFW, Dkt. Nos. 1, 7, 29 (Chiang guilty plea); Case
     No. CR 20-208-JFW, Dkt. Nos. 1, 9, 27 (Esparza guilty plea).)

                                    3

conduct of the affairs of the CD-14 Enterprise through a pattern of racketeering activity" to include bribery and honest services fraud. (FSI ¶¶ 37, 40, pp. 10-12.)  Count One further alleges that defendant "agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise."  (FSI ¶ 41, p. 12.)

In detailed overt acts, the FSI describes defendant's critical and active roles in the L.A. Grand Hotel Bribery Scheme (FSI ¶ 43, OA 1-84, pp. 15-30) and the Luxe Hotel Bribery Scheme (FSI ¶ 43, OA 119-240, pp. 37-63), which span the time period of the activities underlying the alleged RICO conspiracy.  The FSI also describes other acts of bribe coordination and concealment that defendant undertook in furtherance of the objectives of the enterprise.

With respect to the L.A. Grand Hotel Bribery Scheme, defendant's role included facilitating bribe payments from Chairman Wei Huang to Huizar, including in the form of travel to China, Vegas trips, a $600,000 sham "loan" to settle a sexual harassment lawsuit against Huizar and save his political seat, and campaign contributions -- all in exchange for Huizar's official acts benefiting the future redevelopment of the L.A. Grand Hotel.

For the Luxe Hotel Bribery Scheme, defendant similarly facilitated bribe payments from Shenzhen Hazens (the owner of the Luxe Hotel) to Huizar in exchange for Huizar's official acts for the redevelopment project.  But defendant also forged his own corrupt arrangement with Chiang to obtain compensation for himself, ultimately to be paid out to defendant at a later date, in exchange for defendant's official acts as Deputy Mayor in furtherance of the Luxe Hotel redevelopment project.  Overt Acts 194 through 215 detail

this latter arrangement in a section of the FSI aptly titled

"Benefits from George Chiang to Defendant CHAN in Exchange for His

Official Acts."  (FSI p. 53.)

Overt Act 194 in particular explains that while defendant was

still employed by the City:

> CHAN agreed with George Chiang that Chiang would pay a
> portion of the Synergy consulting fees to defendant CHAN,
> in exchange for defendant CHAN's assistance on the Luxe
> Hotel Project in defendant CHAN's official capacity as
> Deputy Mayor of Economic Development, including for
> exerting power over and influence on various City
> departments, including the Planning Department and the CPC,
> to benefit the Luxe Hotel Project.

(FSI ¶ 43, OA 194, p. 53 (emphasis added).)  The overt acts that

follow (OA 195-205) explain various acts defendant took while in

public office pursuant to his corrupt arrangement with Chiang,

including "us[ing] his official position as Deputy Mayor to pressure"

subordinate City officials and a Mayor-appointed public official to

take favorable official acts on the Luxe Hotel Project.  (See, e.g.,

FSI ¶ 43, OA 200, 202, pp. 54-55.)  Although defendant's corrupt

arrangement with Chiang was hatched while defendant still was Deputy

Mayor and defendant performed his bargained-for official acts while

he was Deputy Mayor, defendant did not receive payment for the

official acts until he left City employment (by design).[2]  (FSI ¶ 43,

OA 212, 215, pp. 57-58.)  The FSI makes clear that, while defendant

was still Deputy Mayor, he instructed Chiang to "wait until later" to

provide defendant's share of the payments for the Luxe Hotel project,

---

[2] The wire transfers for these payments are alleged as the
predicate wires for the honest services wire fraud charges in Counts
Twelve and Thirteen of the FSI.  Defendant's act of corruptly
soliciting, demanding, and agreeing to accept these payments in
connection with the Luxe Hotel Project also underlies the federal
program bribery charge in Count Twenty-Eight.

and the payments defendant received in late 2017 were "for the official acts defendant CHAN performed on the Luxe Hotel Project while he was Deputy Mayor." (FSI ¶ 43, OA 204, 212, pp. 55, 57 (emphasis added).)

After defendant left the City, he continued to act as a member and associate of the CD-14 Enterprise, including by facilitating a $100,000 commitment on behalf of the Luxe Hotel project developer, Fuer Yuan ("Yuan"), to a Political Action Committee ("PAC") established for the benefit of Richelle Rios's ("Rios") City Council campaign. (FSI ¶ 43, OA 78, p. 29; OA 176-193, pp. 49-53.) That commitment was memorialized in two tracking spreadsheets.[3] (Id.)

The FSI also describes "Additional Pay-to-Play Conduct" and gives other examples of defendant's acts in furtherance of the CD-14 Enterprise's objectives, including defendant's direction to stonewall Shanghai Construction (Company G) for failure to "play" vis-à-vis the pay-to-play scheme (FSI ¶ 43, OA 342, p. 82); defendant's facilitation of bribe payments to Huizar in the form of campaign contributions and contributions to the school where Rios worked as a fundraiser (FSI ¶ 43, OA 351-355, pp. 85-86); and defendant's concealment efforts, including avoiding email documentation of the enterprise's illegal activities, attempted witness tampering, and making false and misleading statements to the FBI (FSI ¶ 43, OA 434-436, 450-452, pp. 96, 99-100).

---

[3] Emails transmitting these two spreadsheets are alleged as the predicate wires for the honest services wire fraud charges in Counts Fourteen and Fifteen of the FSI.

2.   <u>Honest Services Wire Fraud (Counts Twelve-Fifteen)</u>

Counts Two through Seventeen allege a scheme to defraud the City of the right to the honest services of its public officials, including Huizar and defendant, beginning no later than February 2013.  (FSI ¶ 44, p. 101.)  As with the RICO conspiracy, defendant and other participants in the scheme employed similar means and methods, including soliciting and agreeing to accept benefits in exchange for performing official acts and engaging in acts of concealment to evade detection and protect the scheme.  (FSI ¶ 45, pp. 101-103.)

In connection with the Luxe Hotel Project, defendant is charged with honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346 in Counts Twelve through Fifteen.  The predicate wire transmissions for Counts Twelve and Thirteen are bank wires from Synergy's Chase bank account to defendant's personal East West Bank account (under the name LABXG, Inc.), transmitted in October and December 2017.  (FSI ¶ 46, p. 105.)  The predicate wire transmissions for Counts Fourteen and Fifteen are January 2018 emails attaching the tracking spreadsheets reflecting commitments to the PAC benefitting Rios.  (FSI ¶ 46, p. 106.)

3.   <u>Federal Program Bribery (Count Twenty-Eight)</u>

Count Twenty-Eight alleges federal program bribery, in violation of 18 U.S.C. § 666(a)(1)(B).  (FSI ¶ 55, p. 117.)  It alleges that starting in about January 2017, defendant, as "an agent of the City of Los Angeles," corruptly solicited, demanded, and agreed to accept "from George Chiang approximately $20,000 cash, $69,939 in check payments to LABXG, Inc., and $15,000 in check payments to CHAN Relative 1, intending to be influenced and rewarded in connection

7

with the Luxe Hotel Project, including in pressuring officials from the City Planning Commission, Planning Department, and other City departments to expedite and vote to approve the Luxe Hotel Project on favorable terms."  (Id.)

### B.  Procedural History

On May 13, 2021, the Court set a detailed briefing schedule with specific deadlines to file various pretrial motions.  (Dkt. No. 187.) The deadline to file pretrial motions to dismiss was September 7, 2021.  (Id.)  This deadline was never revised or extended.

On September 7, 2021, defendant, who was then-represented by Harland Braun, timely moved to dismiss portions of the FSI, including to dismiss/strike the allegations in Count One.  (Dkt. No. 235.)  On January 7, 2022, the Court denied the motion. (Dkt. No. 330.)

On February 21, 2023, defendant's jury trial began.  (Dkt. No. 972.)  Due to Mr. Braun's illness after the eighth day, the trial ended in a mistrial, and defendant sought to retain new counsel. (Dkt. No. 1034.)

On May 5, 2023, the Court granted defendant's request to substitute Mr. Braun with current defense counsel, John Hanusz and Michael Freedman.  (Dkt. No. 1046.)  During a May 12, 2023 status conference, the parties were ordered to submit a stipulation with proposed pretrial deadlines and retrial date.  (Dkt. No. 1056.) After multiple meet-and-confers, the parties reached a stipulation that set various deadlines for filing new motions in limine, but it did not include a deadline to file Rule 12 motions, including motions to dismiss.  (Dkt. No. 1067.)  The Court adopted the parties' proposal.  (Dkt. No. 1071.)  With respect to new motions in limine,

the Court still ordered the moving party to "first seek and obtain prior Court approval" before filing any such motion.  (Id. at 3.)

On December 4, 2023, more than two years after the September 2021 deadline to file Rule 12 motions to dismiss, defendant filed the present motion.  Defense counsel did not provide notice to the government of its forthcoming motion, much less engage in any meet-and-confer efforts regarding the motion.  Under the Local Rules for this district, prior to filing a motion, a moving party "must first contact opposing counsel to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution."  Local Civ. Rule 7-3; see Local Crim. Rule 57-1.  Moreover, that conference "must take place at least 7 days prior to the filing of the motion."  Local Civ. Rule 7-3.  Throughout this case, this Court has consistently required the parties to meet and confer on the substance of any litigation, as well as on scheduling issues and briefing deadlines.  (See, e.g., Dkt. No. 147, ¶ 7 (criminal trial order as to defendant, requiring meet-and-confer on motions in limine); Dkt. No. 169 (ordering counsel to meet and confer on pretrial dates); Dkt. No. 187 (order setting pretrial motion schedule following parties' meet-and-confer).)  Indeed, upon the substitution of defendant's current counsel, the Court ordered the parties to meet and confer on proposed dates for the retrial and related pretrial and case management deadlines.  (See Dkt. No. 1053.)

Defendant did not consult with the government when he filed and unilaterally noticed the motion for January 8.  Nor did defendant seek leave of this Court to file the motion and re-raise issues that have already been litigated and decided in this case.

### III. LEGAL STANDARD

"In determining whether an indictment charges a cognizable offense, [courts] are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." United States v. Kelly, 874 F.3d 1037, 1047 (9th Cir. 2017). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.... The Court should not consider evidence not appearing on the face of the indictment." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

Indictments must "be a plain, concise, and definite written statement of the essential facts of the offense charged ..." Fed. R. Crim. P. 7(c)(1). An indictment need only "set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." United States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993) (citation omitted). "[I]t need not explain all factual evidence to be proved at trial." Id. (citation omitted). Generally, an indictment that "tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense. The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1985) (citations omitted).

Dismissal of an indictment is a "drastic step" that is disfavored as a remedy. United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985).

**IV.   ARGUMENT**

   **A.   The FSI Sufficiently Alleges Honest Services Wire Fraud**

Counts Twelve through Fifteen charge defendant with honest services wire fraud, including aiding and abetting these crimes. (FSI pp. 101-106.)  Defendant does not claim that the FSI provides insufficient facts to inform him of "the specific offense with which he is charged."  Blinder, 10 F.3d at 1476.  Nor does he seriously question that these counts, which track the words of the statute, "set forth the elements" of honest services wire fraud.  Id. Defendant only argues that these counts are impermissibly based on his conduct as a private citizen and therefore cannot state a claim under Percoco v. United States.[4]

That case has no relevance here.  There, the defendant, an on-and-off-and-then-on-again public official, was charged (and convicted) for conspiring to commit honest services wire fraud based on his activities solely during an "off" window in his public service.  Percoco, 598 U.S. at 323.  Specifically, the defendant was solicited by a developer to advocate to a state agency to drop a "labor peace agreement" requirement, and the defendant (1) agreed to the developer's request; (2) received payments totaling $35,000; and (3) successfully urged a senior official with that state agency to drop the requirement -- all while the defendant was a private person. Id. at 323.  The defendant petitioned for review, arguing that a private citizen can never be convicted of depriving the public of

---

[4] Percoco is the only case cited in defendant's motion that was decided after the FSI was returned in 2020.  However, given how inapposite Percoco is to the allegations at issue here (as explained further herein), the government submits that reliance upon Percoco is an improper basis to bring a new legal challenge to the FSI, much less to anchor and retread other untimely challenges to the charges.

honest services.  Id. at 325.  The Supreme Court, while rejecting defendant's pitch for an absolute rule insulating all private citizens from honest services charges, reversed and remanded because the jury instructions issued in that case relied on an overly vague "dominated and controlled" and "special relationship" standard for determining whether a private citizen owed a duty to provide honest services to the public.  Id. at 330-33.

Defendant does not point to a single allegation in the FSI that the charged crimes are based on defendant's deprivation of his honest services as a private citizen -- and none exists.  Instead, defendant narrowly focuses on the timing of the predicate wires for Counts Twelve through Fifteen.  Because those wires post-date defendant's departure from the City in July 2017, defendant erroneously presumes those counts must be based on defendant's acts when he no longer owed any fiduciary duty to the City and public.  Ergo, defendant reasons, these counts are fatally flawed under Percoco and "the government cannot prosecute Chan for his actions after he left public office on June 30, 2017."  (Mot. at 6.)  Defendant's presumptions are flatly wrong and directly contradicted by the allegations of the FSI.

The FSI lays out two different ways in which defendant committed honest services wire fraud; neither theory is based on defendant's breach of his own fiduciary duty as a private citizen.

First, the FSI alleges that defendant "would demand, solicit, accept, and agree to accept" benefits *while he was still a public official* in exchange for defendant "agree[ing] to perform and perform[ing]" official acts, including "exerting pressure on other City official to influence the approval process of projects."  (FSI ¶ 45, pp. 101-02.)  The FSI alleges that the scheme to defraud began

no later than February 2013 –– more than four years <u>before</u> defendant left public service in July 2017.  (FSI ¶¶ 15, 44, pp. 5, 101.)

The wires for Counts Twelve and Thirteen relate to Synergy payments to defendant after he left the City.  But the detailed overt acts in Count One explain exactly why that occurred.  <u>See</u> <u>Givens</u>, 767 F.2d at 584 (indictment should be read in its entirety and construed according to common sense).  Overt Acts 194 through 205 detail defendant's corrupt arrangement with Chiang to obtain consulting fees "in exchange for defendant CHAN's assistance on the Luxe Hotel Project <u>in defendant CHAN's official capacity as Deputy Mayor of Economic Development</u>."  (FSI ¶ 43, OA 194, p. 53 (emphasis added).)  The overt acts describe a non-exhaustive list of acts defendant, "who was then Deputy Mayor of Economic Development," took, including strategizing ways to place Synergy in control of the Luxe Hotel Project (OA 195); "using his power and influence as Deputy Mayor" to coordinate a meeting with the Planning Department (OA 199); "us[ing] his official position as Deputy Mayor to pressure subordinate City officials to take favorable official acts on the Luxe Hotel Project" (OA 200); conferring on negotiations of Synergy's consulting fees and bonus payments (OA 201); and "exert[ing] pressure over a Mayor-appointed public official and urg[ing] Planning Commission Official 1 to approve the Luxe Hotel Project" (OA 202).  The FSI alleges that defendant directed Chiang "to wait until later" (<u>i.e.</u>, until after he left the City) to pay him (OA 204) and makes clear that those payments were "for the official acts defendant CHAN performed on the Luxe Hotel Project while he was Deputy Mayor."  (FSI ¶ 43, OA 212, p. 57; <u>see also</u> OA 194.)

Incredibly, defendant completely ignores these allegations -- including those describing the bargained-for acts defendant took as a public official -- in arguing that Percoco requires dismissal of the honest services counts.  (Mot. at 6.)  Yet in virtually the same breath, defendant misleadingly seeks to strike (among others) Overt Acts 206-209, 212 (explaining what the delayed payment was for), and 215, all of which immediately follow upon and directly relate to the prior overt acts describing defendant's official acts while still a Deputy Mayor.  (Mot. at 7.)  Defendant's cursory and selective reasoning ignores the full import of the FSI, disregards the law, and borders on the frivolous.

Second, the FSI alleges that defendant committed the charged crimes by aiding and abetting Huizar's honest services wire fraud violations, which are based on Huizar's breach of his fiduciary duty as a public official.  The Ninth Circuit has repeatedly held that "aiding and abetting is embedded in every federal indictment for a substantive crime."  United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005) (collecting cases); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) ("[A]ll indictments for substantive offenses must be read as if the alternative provided by 18 U.S.C. § 2 were embodied in the indictment.").  While the FSI specifies section 2(b) in the honest services fraud counts, the "specific referral" of one section 2 theory does not "preclude the implication" of the other.  United States v. Armstrong, 909 F.2d 1238, 1242 (9th Cir. 1990); see also id. ("If both subsections are implied in every indictment, specifically mentioning one does not mean that the other cannot be implied.").

Counts Fourteen and Fifteen pertain to 2018 emails with tracking spreadsheets for Rios' PAC campaign contributions, including the commitment by Yuan facilitated by defendant. Importantly, under the charged scheme to defraud, all of the bribes and benefits are alleged to have been provided in exchange for "official acts," including Huizar's official acts. (FSI ¶ 45b, p. 102.) No bribes are alleged to have been in exchange for the acts of a private citizen. Indeed, the overt acts make clear that defendant helped facilitate numerous benefits to Huizar in exchange for Huizar's official acts favorable to both the L.A. Grand Hotel and Luxe Hotel projects. (See, e.g., FSI ¶ 43, OA 2, p. 15; OA 25-26, p. 17; OA 29-30, 33, p. 19; OA 35, 39, p. 20; OA 47-48, p. 22; OA 57-59, p. 24; OA 71, p. 27; OA 78, p. 29; OA 83-84, p. 30; OA 122, 124-125, p. 38; OA 127, p. 39; OA 171, p. 48; OA 182, pp. 50-51; OA 186, 188, pp. 51-52; OA 191-192, pp. 52-53; OA 216, p. 58; OA 354, pp. 85-86.) The overt acts describing Huizar's official acts on the Luxe Hotel project and defendant and Chiang's facilitation of Yuan's PAC campaign commitments fall under the subheading "Additional Benefits from George Chiang and Defendant HUIZAR's Official Acts." (See generally FSI pp. 45-53.)

By reading the entire FSI, exercising common sense, and considering necessarily implied facts -- as the law requires, Givens, 767 F.2d at 584 -- the allegations underlying Counts Fourteen and Fifteen sufficiently allege that defendant (a then private person) aided and abetted Huizar's breaches of his fiduciary duties by facilitating campaign commitments to Rios' PAC on behalf of Yuan (defendant's then-client).

The FSI sufficiently alleges honest services wire fraud against defendant, both for his conduct while he was a public official

1    (Counts Twelve and Thirteen) and for aiding and abetting Huizar's

2    honest services wire fraud (Counts Fourteen and Fifteen).[5]

3         **B.   The FSI Sufficiently Alleges Federal Program Bribery**

4         Relying on the same flawed premise that defendant's bribe

5    payments were for acts he took as a private citizen, defendant moves

6    to dismiss the federal program bribery count charged in Count Twenty-

7    Eight.  Defendant's challenge is untimely and, in any event,

8    meritless for the same reasons that his challenge to the honest

9    services wire fraud counts fails.

10        First, defendant relies solely on Ninth Circuit case law from

11   2003 in challenging the sufficiency of Count Twenty-Eight's

12   allegations.  (Mot. at 7-8.)  But defendant was well aware of this

13   authority (or reasonably could have been) when the Rule 12 motion

14   deadline came and went in September 2021.  Defendant has provided no

15   good cause under Federal Rule of Criminal Procedure 12(c)(3) for why

16   he failed to raise this claim in his first motion to dismiss, and the

17   Court can reject this grossly untimely challenge on this basis.  See,

18   e.g., United States v. Matta-Ballesteros, 71 F.3d 754, 766 (9th Cir.

19   1995), opinion amended, 98 F.3d 1100 (9th Cir. 1996) (Rule 12 motion

20   denied as untimely where filed over two months after cut-off set by

21   court); United States v. Torres, 908 F.2d 1417, 1424 (9th Cir. 1990)

22   (Rule 12 motion denied as untimely where filed three months after

23   motions cut-off date).[6]

24   _____

25       [5] For the same reasons, defendant's motion to strike overt acts
     in Count One based on Percoco and "conduct by Chan after he left the

26   government" should be denied.  (Mot. at 6-7.)

         [6] While defendant's new counsel may argue they were retained

27   earlier this year (albeit solely for the purpose of retrying this
     case), the decisions of defendant's prior counsel do not insulate him

28   from waiver.  See, e.g, United States v. Yousef, 327 F.3d 56, 124-25
     *(footnote cont'd on next page)*

Second, accepting the truth of the allegations, as defendant must, the FSI alleges that starting in January 2017, defendant, as "an agent of the City of Los Angeles," corruptly "solicited, demanded, and agreed to accept" payments from Chiang, including cash, payments to LABXG, Inc. (defendant's bank account), and $15,000 to CHAN Relative 1, "intending to be influenced and rewarded in connection with the Luxe Hotel Project," including in pressuring officials to expedite and approve the project on favorable terms. (FSI ¶ 55, p. 117.)  On its face, Count Twenty-Eight alleges that defendant corruptly sought compensation in connection with the Luxe Hotel project as early as January 2017, when he still was a public official.  Count Twenty-Eight "tracks the words of the statute" and "unambiguously set[s] forth all elements," Givens, 767 F.2d at 584, making it sufficient for Rule 7 purposes.  (Compare FSI ¶ 55, with 18 U.S.C. § 666(a)(1)(B).)

Defendant contends that because he was "no longer in public service" "for half of the time period alleged in this Count," the charge is insufficient for failing to "specify any alleged conduct during the time period [defendant] was still working for the City." (Mot. at 8.)  An indictment, however, "need not explain all factual evidence to be proved at trial."  Blinder, 10 F.3d at 1476.  But even putting this basic canon of pleading aside, defendant once again completely ignores Overt Acts 194 to 205, which describe the very conduct that defendant protests is missing from Count Twenty-Eight. (See supra pp. 13-14.)  Reading the indictment in its entirety and

(2d Cir. 2003) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish cause" for untimely pretrial motion practice).

1 construing it according to common sense, Count Twenty-Eight

2 sufficiently alleges that defendant intended to be influenced and

3 rewarded for his pre-July 2017 acts as a public official and agent of

4 the City in connection with the Luxe Hotel project, in violation of

5 18 U.S.C. § 666(a)(1)(B).[7]  Givens, 767 F.2d at 584.

6      **C.   This Court Already Denied Defendant's Motion to Dismiss
            Count One, and Defendant Fails to Meet the Standard for
7            Reconsideration**

8      Finally, defendant moves a second time to dismiss Count One.

9 This Court previously rejected defendant's motion to dismiss this

10 count more than one year before trial commenced.  (Dkt. Nos. 235,

11 330.)  Defendant's challenge here amounts to nothing more than an

12 improper motion for reconsideration, which falls far short of meeting

13 the standards for this exceptional relief.

14      Motions for reconsideration in criminal cases are governed by

15 Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b)).  United States v.

16 Fiorelli, 337 F.3d 282, 286 (3d Cir. 2003).  The purpose of a motion

17 under Rule 59(e) is to "correct manifest errors of law or fact or to

18 present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779

19 F.2d 906, 909 (3d Cir. 1985).  Relief under Rule 59(e) "should not be

20 granted ... unless the district court is presented with newly

21 discovered evidence, committed clear error, or if there is an

22 intervening change in the controlling law."  389 Orange Street

23 Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).  In this

24 district, motions for reconsideration are also governed by Local Rule

25

26      [7] Because the charge is not premised on defendant's acts as a
private citizen, defendant's argument that Synergy or LABXG did not
27 receive benefits under a federal program is irrelevant.  So too are
the two cases defendant relies upon for this point -- United States
28 v. Cabrera, 328 F.3d 506 (9th Cir. 2003), and United States v. Bynum,
327 F.3d 986 (9th Cir. 2003).

7-18, which may be made <u>only</u> on the grounds of:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

C.D. Cal. L.R. 7-18 (emphasis added).

Defendant drops a one-sentence footnote in an attempt to distance his previous motion (a challenge based on "racketeering acts") from his present one (a challenge to "enterprise").  (Mot. at 9 n.1.)  But defendant's core challenge is to the sufficiency of the elements of Count One as pled in the FSI.  And defendant's motion to dismiss Count One is not based on any new law.  Nor is it based on any new facts, given that motions to dismiss an indictment are confined to "the four corners of the indictment," which defendant has had since November 2020.  <u>Kelly</u>, 874 F.3d at 1047.  There is no justifiable reason why defendant could not have raised this most recent challenge to Count One at the time he joined the motion to dismiss Count One over two years ago.  To hold otherwise would be to give defendant endless bites at the apple to make piecemeal attempts to attack the same count years after the FSI has been returned and the time for pretrial motions has lapsed.[8]

---

[8] Even if the Court were to find defendant's present challenge sufficiently distinct from his first motion to dismiss to evade motion for reconsideration scrutiny, defendant's challenge here still is untimely for the same reasons discussed above as relates to Count Twenty-Eight.  <u>See</u> Fed. R. Crim. P. 12(c)(3); <u>Matta-Ballesteros</u>, 71 F.3d at 766; <u>Torres</u>, 908 F.2d at 1424; <u>Yousef</u>, 327 F.3d at 124-25.

1

2

     **D.   Count One Sufficiently Alleges a RICO Conspiracy, Including an Agreement That the CD-14 Enterprise with a Common Purpose Would Exist**

3

4

5

6

     Defendant's motion to dismiss Count One, arguing that "no [] enterprise existed," also fails on the merits.  (Mot. at 9.)  This challenge fundamentally misunderstands the FSI and, like defendant's other claims, ignores the allegations of the FSI.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

     Count One charges a RICO conspiracy, in violation of 18 U.S.C. § 1962(d).  A substantive RICO offense, which is the object of the alleged conspiracy, requires the government to prove "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Salinas v. United States, 522 U.S. 52, 62 (1997).  A RICO conspiracy charge, on the other hand, requires showing that defendant agreed and "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of" the substantive RICO offense.  Id. at 65; United States v. Tille, 729 F.2d 615, 619 (9th Cir. 1984) ("Proof of an agreement the objective of which is a substantive violation of RICO . . . is sufficient to establish a violation of section 1962(d)." (emphasis added).)  As with general criminal conspiracy, a RICO conspiracy may exist whether or not the substantive crime is achieved.  Salinas, 522 U.S. at 65 ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.").  Indeed, the RICO conspiracy statute "is even more comprehensive than the general conspiracy offense in § 371" because it contains no overt act or specific act requirements.  Id. at 63.

27

28

     Defendant concedes that Count One "alleges that [] Chan participated in an 'associated-in-fact enterprise' within the meaning

of" RICO, but claims that it fails to "stat[e] any facts required to demonstrate that the defendants had a common purpose, an ongoing organization, or any of the minimal attributes of a RICO enterprise." (Mot. at 1.)  In other words, defendant argues that Count One is deficient because "no [RICO] enterprise existed."  (Mot. at 9.)  But as the Supreme Court in Salinas explained, the conspiracy count requires only proof that defendant "knowingly agreed to facilitate a scheme which includes the operation of a RICO enterprise" -- not proof of his success in completing the substantive RICO violation. United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004) (cleaned up; emphasis added); see also United States v. Applins, 637 F.3d 59, 74-75 (2d Cir. 2011) (establishment of an enterprise is not an element of the RICO conspiracy offense).

Nevertheless, while not required, the FSI amply alleges that the CD-14 Enterprise did in fact exist and that defendant was a participating member and associate.  It alleges the shared objectives of the enterprise (e.g., enriching members through bribes, maintaining political power, and avoiding law enforcement detection) and specific overt acts describing defendant's direct participation and the ways he specifically achieved the enterprise's objectives, particularly in connection with the L.A. Grand Hotel and Luxe Hotel Bribery Schemes, amounting to a pattern of racketeering activity. Defendant may not wish to credit those allegations, but that is not the proper standard in evaluating the sufficiency of an indictment.

The real crux of defendant's argument seems to be that the absence of facts alleging that defendant had a role in the 940 Hill, Mateo Project, and Businessperson A schemes negates all the other allegations that defendant agreed and intended to further the CD-14

21

Enterprise knowing of its purpose and that he was in fact part of the CD-14 Enterprise sharing in its common purpose.  This again reflects a misapprehension of RICO conspiracy law.

For a RICO conspiracy, just like general conspiracy, "it is not necessary that each conspirator knows all of the details of the plan or conspiracy."  United States v. Brooklier, 685 F.2d 1208, 1222 (9th Cir. 1982).  A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.  Salinas, 522 U.S. at 63.  In Salinas, the Court affirmed that a sheriff's deputy could be convicted of RICO conspiracy for his role in a scheme that violated the federal bribery statute even though he neither committed nor agreed to commit the predicate acts required for the substantive RICO violation under § 1962(c).  Id. at 66; see also Fernandez, 388 F.3d at 1229.  Accordingly, there is nothing about defendant's lack of involvement with certain developers or projects that undermines the FSI's clear allegation that he still agreed "to conduct and participate in the conduct of the affairs of the CD-14 Enterprise through a pattern of racketeering activity" and that a conspirator would commit at least two racketeering acts.  (FSI ¶¶ 40-41, pp. 11-12.)

## V.   CONCLUSION

For the foregoing reasons, defendant's motion should be denied in full.