John Hanusz (State Bar No. 277367)
HANUSZ LAW PC
515 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorneys for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYMOND SHE WAH CHAN,<br><br>Defendant. | **Case No. 20-CR-326-JFW**<br><br>**RAYMOND CHAN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS COUNTS 1, 12-15 and 28 OF THE FIRST SUPERSEDING INDICTMENT AND STRIKE OVERT ACTS**<br><br>Date: January 8, 2024<br>Time: 8:00 a.m.<br>Ctrm: 7A - Hon. John F. Walter |

Defendant Raymond Chan, by and through his counsel of record, John Hanusz and Michael Freedman, hereby files this reply in support of his Motion to Dismiss Counts One, Twelve, Thirteen, Fourteen, Fifteen, and Twenty-Eight of the First Superseding Indictment (Dkt. 1210). This reply is based on Chan's Motion to Dismiss, the attached Memorandum of Points and Authorities, all matters of which

REPLY IN SUPPORT OF MOTION TO DISMISS

the Court may take judicial notice, and such other and further argument and evidence as may be presented to the Court at the hearing of this matter.

Dated: December 25, 2023                             Respectfully submitted,

                                                                  */s/ John Hanusz*
                                                                  John Hanusz

                                                                  */s/ Michael G. Freedman*
                                                                  Michael G. Freedman

                                                                  Attorneys for Raymond Chan

## I.   INTRODUCTION

The government's opposition to Chan's motion to dismiss tries – but fails – to recharacterize the allegations in the First Superseding Indictment ("FSI") to avoid the limitations imposed on honest services fraud prosecutions by the Supreme Court's 2023 decision in *Percoco v. United States*. Recognizing, as it must, that Chan can no longer be liable for honest services fraud based on wire transfers and an email after he left public office, the government now tries to argue that the transfers and email somehow relate back to actions Chan allegedly took while still in office. But the government's new characterization of Counts Twelve through Fifteen is contradicted by the facts alleged therein and not supported by the law. Likewise, Count Twenty-Eight must be dismissed under the holding of *Percoco*, notwithstanding the government's attempts to recharacterize the deficient allegations of the FSI. Finally, the government's attempt to distinguish a RICO conspiracy from the substantive RICO elements lacks legal support and is insufficient to rescue this count either.[1]

---

[1] The government also raises a variety of purported procedural obstacles to the Court's consideration of Chan's motion. None of those arguments should preclude the Court from considering Chan's on the merits for several reasons. First, the Supreme Court issued its opinion in *Percoco* on May 11, 2023, days after Chan's new counsel substituted into the case (Dkt. 1045, 1047) and while the parties were in the process of finalizing their joint stipulation regarding trial deadlines. The parties filed their stipulation regarding proposed trial deadlines on May 18, 2023 (Dkt. 1067) and the Court issued its order regarding trial deadlines on May 22, 2023 (Dkt. 1071). That order addresses pretrial deadlines for motions *in limine*, exhibit and witness lists, jury instructions, and other trial documents as well as associated meet-and-confer deadlines, all of which Chan fully intends to comply with. Chan never understood this stipulation to also limit his ability to file a substantive motion under Federal Rules of Criminal Procedure Rule 12, nor could he have anticipated the directly relevant change in the law issued on May 11, 2023. Indeed, even if Chan was then precluded from filing a motion under Rule 12, the issuance of *Percoco* certainly constitutes good cause under Rule 12(c)(3) for the Court to consider the motion even if untimely. Second, neither Chan nor his

## II. ARGUMENT

### A. Counts Twelve through Fifteen relate to actions Chan allegedly took after leaving public office and must be dismissed.

The government is incorrect to say that *Percoco* has no relevance to this case. *Percoco* is entirely relevant – and controlling. Like Chan, the defendant in *Percoco* was similarly charged with an ongoing conspiracy covering a period of time when he was a public official and when he was not a public official. *Percoco v. United States*, 598 U.S. 319, 324 (2023). In fact, the allegedly illegal actions the defendant took in that case – pressuring certain public officials to remove an impediment that a developer did not want – came days before the defendant resumed public office. *Id*. at 323. Similarly, the FSI here charges a long-standing conspiracy alleging a number of actions by Chan, some that occurred while he was a public servant and some that occurred after he left public service. Under the holding of *Percoco*, the wire transfers and email that occurred while Chan was in the private sector cannot form the basis for criminal liability, unless Chan was

---

counsel (based on their collective decades of experience in this district) agree with the government's position that Rule 12 or the Local Criminal Rules require a defendant to meet and confer with the government before filing a Rule 12 Motion. Chan fully intends to meet and confer on all pretrial issues requiring a meet and confer and as ordered by the Court. Notably, nowhere does the government suggest that a meet and confer on this motion would have swayed it such that this motion would not still be necessary. Finally, Chan provided proper notice of his motion upon filing it for a date listed as available by the Court and indeed filed his motion a week early so the government had an additional week to prepare its opposition. Nor does the government suggest it is not available on the noticed hearing date. Chan and his counsel are well aware of the deadlines and orders set by the Court, including the need to meet and confer with the government on numerous pretrial filings, and fully intend to do so. But on the issue of Mr. Chan's Rule 12 motion, the Court should not adopt the government's procedural challenges and deny Chan a hearing on the merits on these important legal issues that have arisen since he retained new counsel and that are distinct from any previously raised.

2

REPLY IN SUPPORT OF MOTION TO DISMISS

acting as an agent of the government when he received that money or was involved with the email, which he was not.

The government points to no authority to support the argument that criminal liability can attach to the wire transfers alleged in Counts Twelve and Thirteen. *See* Govt. Opp. at 13. Although the indictment does not say so, the government now argues that these payments were in exchange for official actions that happened *before* Chan left public service. *Id*. But even if the indictment made this allegation, the government still points to no authority that would support the interpretation that honest services wire fraud is somehow a continuing offense, whereby all actions taken in the beginning of the offense are related to other actions that allegedly occurred months, even years, later. In the absence of such authority, these counts cannot be premised on other alleged actions occurring before Chan left public service.

In fact, the Ninth Circuit has found that wire fraud is only a criminal act with respect to each use of the mail or wire, each of which constitutes a separate and complete act in and of itself. *See United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991), *overruled on other grounds by United States v. Scarano*, 76 F.3d 1471, 1477 (9th Cir. 1996) ("Here, the offenses at issue—18 U.S.C. §§ 1341 and 1343—criminalize each specific use of the mail or wire. Each offense is complete when the fraudulent matter is placed in the mail or transmitted by wire, respectively."). The wires at issue here occurred after Chan was already a private citizen. Any alleged offense connected to those wires therefore cannot have legally occurred until that point in time.

Secondly, the FSI directly contradicts the government's belated argument that these payments were for actions taken during Chan's time in public office. At the time Chan received those payments from George Chiang, he had been working privately with Chiang and Synergy for some time. The wire transfers occurred after Synergy received a large payment for work that occurred *after* Chan left

public service, namely successfully assisting its client with the City Planning Commission hearing, which happened in September 2017. (FSI ¶ 43, Overt Acts 209-215 at pp. 56-57). In other words, on the face of the indictment itself, the amounts alleged in Counts Twelve and Thirteen do not line up with actions that occurred during Chan's time in public service.

  Additionally, the government tries to argue that the payments in Count Twelve and Thirteen were made for official actions because Chan asked Chiang to wait to pay him for certain official acts. *See* Govt. Opp. at p. 13. But the FSI itself alleges that Chan asked Chiang to "wait until later" to pay him because he allegedly wanted a far larger sum all at once, not because he was going into the private sector. (FSI ¶ 43, OA 204 at p. 55).

  Similarly, the government does not sufficiently allege that Chan had any knowledge of the campaign contribution from Chairman Yuan at issue in the email that forms the basis for Counts Fourteen and Fifteen. These counts do not even state that Chan had anything to do with sending the email or the solicitation of the campaign contributions from Chairman Yuan that are at issue in the email. In fact, the FSI indicates that Huizar directly solicited this contribution from Yuan through Chiang and George Esparza, not Chan. (FSI ¶ 43, Overt Acts 176-181, at pp. 49-50). The first time the FSI mentions Chan's involvement with soliciting a contribution from Chairman Yuan is after the email had been sent. (FSI ¶ 43, Overt Act 182, at p. 50). The government makes no allegations in the FSI that indicate that Chan knew about soliciting the specific campaign contribution at issue in the email from Yuan before that. *See e.g., United States v. Dadanian*, 818 F.2d 1443, 1446 (9th Cir. 1987), modified, 856 F.2d 1391 (1988) ("[K]nowing participants in the scheme are legally liable" for their co-schemer's use of mails or wires). Longstanding Ninth Circuit precedent thus forecloses the government's novel arguments that these counts can be recharacterized to survive the holding in *Percoco*.

**B.    The payments underlying Count 28 do not relate to actions Chan took as a public servant.**

With respect to Count Twenty-Eight, the government again attempts to rescue the charge by arguing it ties back to factual allegations beginning in January 2017, before Chan left public office. *See* Govt. Opp. at 17. This mirrors the government's allegations in *Percoco*, and yet the Court still looked at what actions and activities took place *after* the defendant left public service, and determined that the defendant could not be held liable because he did not have a fiduciary duty once in the private sector. *Percoco*, 598 U.S. at 324, 329-331. Similarly here, the Court should look at what actions and activities took place after Chan left public service and became part of a private company that did not accept federal funds.

The government relies on the same arguments it did for Counts Twelve through Fifteen: that the payments in Count Twenty-Eight relate to actions Chan took when he was a public servant. *See* Govt. Opp. at 17. In doing so, the government merely refers to several overt acts in Count One. *Id*. But none of these overt acts reference the payments Chan allegedly solicited in Count Twenty-Eight, or connects those payments to actions Chan allegedly took when he was in public service. (FSI ¶ 43, Overt Acts 194-205, at pp. 53-55). Consequently, for the same reasons that Counts Twelve through Fifteen must be dismissed, Count Twenty-Eight also must be dismissed under the plain language of the statute.

**C.    The government must adequately plead the RICO elements in a RICO conspiracy.**

The government concedes that, in order to make out a RICO conspiracy, it would have to demonstrate that the defendant "knowingly agreed to facilitate a scheme which includes the operation of a RICO enterprise." *See* Govt. Opp. at 21 (citing *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004)). But this misses Chan's argument, which is that he was not aware that he was participating in any kind of enterprise. Not only was Chan not aware of the actions of others,

the FSI in no way alleges that Chan was aware that he was associated with these people or agreed to share anything in common with them.

The government glosses over the nuances of the Second Circuit case for the argument that it need not prove that an enterprise exists to make out a RICO conspiracy charge. *See* Govt. Opp. at 21 (citing *United States v. Applins*, 637 F.3d 59, 74-75 (2d Cir. 2011)). The Second Circuit was merely stating that the government can demonstrate that a defendant agreed to establish an enterprise, but also acknowledged its own precedent establishing that where the government seeks to prove the conspiracy by the actual racketeering acts, it still must prove that the enterprise existed. *See Applins*, 637 F.3d at 75 n.4. Here, the government, by its own admission, is trying to establish a conspiracy through overt acts allegedly committed by Chan without first proving the enterprise. *See* Govt. Opp. at 21.

Additionally, the government ignores Ninth Circuit precedent, which holds "that [a plaintiff's] failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see also Salinas v. United States*, 522 U.S. 52, 65 (1997) ("a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.") The Ninth Circuit has also found that "a defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Howard*, 208 F.3d at 751 (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal quotation marks omitted)). Thus, the elements of the substantive RICO offense still control in a prosecution for a RICO conspiracy.

The FSI does not adequately plead that there was an enterprise, and there are certainly no allegations in the FSI that Chan knew about the scope of the enterprise or agreed to participate in an enterprise. There is no connection between the alleged participants and no allegation that Chan had any concept of the scope or

6
REPLY IN SUPPORT OF MOTION TO DISMISS

nature of their activities or how it connected to his own. As such, the FSI fails to sufficiently allege an enterprise and Count One should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Raymond Chan respectfully requests that the Court dismiss Counts One, Twelve, Thirteen, Fourteen, Fifteen and Twenty-Eight of the First Superseding Indictment.