John Hanusz (SBN 277367)
HANUSZ LAW, PC
515 South Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorneys for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND SHE WAH CHAN,<br><br>Defendant. | Case No. 20-CR-00326-JFW<br><br>**JOINT MOTION *IN LIMINE* NO. 1: DEFENDANT'S MOTION TO EXCLUDE EVIDENCE CONCERNING THE DETAILS OF LAS VEGAS TRIPS**<br><br>Hearing Date: February 16, 2024<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Honorable John F. Walter |

Defendant Raymond Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, and Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby submit this Joint Motion *in Limine* No. 1: Defendant's motion to preclude evidence about the details of the Las Vegas trips, which Raymond Chan did not attend.

This Joint Motion *in Limine* is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 9, 2024         Respectfully submitted,

/s/ *John Hanusz*
JOHN HANUSZ

/s/ *Michael G. Freedman*
MICHAEL G. FREEDMAN

Attorneys for Raymond Chan


E. MARTIN ESTRADA
United States Attorney


/s/ *Susan S. Har**
SUSAN S. HAR
MACK E. JENKINS
CASSIE D. PALMER
BRIAN R. FAERSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

*Pursuant to L.R.5-4.3.4, I attest that that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *Michael G. Freedman*
MICHAEL G. FREEDMAN

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 1
DEFENSE MOTION .............................................................................................. 2
I. INTRODUCTION ................................................................................................ 2
II. ARGUMENT ....................................................................................................... 2
GOVERNMENT OPPOSITION ............................................................................ 5
I. INTRODUCTION ................................................................................................ 5
II. ARGUMENT ....................................................................................................... 5

    A.    Multiple Charges Against Defendant Require the Government to Prove the Underlying SZNW Bribery Scheme and the Vegas Trips ................ 5

    B.    Defendant Specifically Aided and Abetted the Vegas Trips .................. 8

III. CONCLUSION ................................................................................................... 9
DEFENSE REPLY ................................................................................................ 10

iv
CHAN'S MIL NO. 1 TO EXCLUDE DETAILS OF LAS VEGAS TRIPS

# TABLE OF AUTHORITIES

**Cases**

*Old Chief v. United States*, 519 U.S. 172 (1997) ...................................... 3, 7, 8, 10

*Rosemond v. United States*, 572 U.S. 65 (2014) ........................................................ 8

*Skilling v. United States*, 561 U.S. 358 (2010) .......................................................... 5

*United States v. Carpenter*, 923 F.3d 1172 (9th Cir. 2019) ..................................... 3

*United States v. Dean*, 980 F.2d 1286 (9th Cir. 1992) ............................................. 2

*United States v. Ellis*, 147 F.3d 1131 (9th Cir. 1998) ............................................... 3

*United States v. Garcia-Zarate*, 419 F. Supp. 3d 1176 (N.D. Cal. Jan. 1, 2020) .. 3

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ......................................... 7

*United States v. Hunt*, No. 18-CR-475-IM, 2022 WL 8632453 (D. Or. Oct. 15, 2022) ............................................................................................................................ 3

*United States v. Mann*, 811 F.2d 495 (9th Cir. 1987) .............................................. 5

*United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994) .......................................... 4

*United States v. Rivera Calderon*, 578 F.3d 78 (1st Cir. 2009) ............................. 4

*United States v. Sanchez*, 659 F.3d 1252 (9th Cir. 2011) ....................................... 3

*United States v. Skillman,* 922 F.2d 1370 (9th Cir. 1990) .................................... 10

**Statutes and Rules**

18 U.S.C. § 1962(d) ......................................................................................................... 6

18 U.S.C. §§ 666(a) ......................................................................................................... 6

Fed. R. Evid. 402 .............................................................................................................. 2

Fed. R. Evid. 403 ......................................................................................................... 2, 3

# STATEMENT OF ISSUES TO BE DECIDED

**Defense Position:** In Raymond Chan's previous trial, the government elicited lengthy testimony and introduced numerous exhibits about the details of what occurred when Jose Huizar, George Esparza, and others accompanied Chairman Wei Huang to Las Vegas. These trips – and their salacious details – are irrelevant and unnecessarily prejudicial to the case against Chan (who did not attend), and should be excluded as a result. They do not further any fact of consequence and will only serve to inflame the jury's sensibilities. Moreover, given the length of the testimony in this already-lengthy trial, allowing the witnesses to expand on the debauched nature of these trips would only waste the jury's time.

**Government Position:** Because defendant is charged with aiding and abetting the SZNW bribery scheme, the government must fully prove up the bribery scheme as to Jose Huizar and Shen Zhen New World. The Vegas trips (and everything they entailed) were an integral part of that scheme and the government further expects to present evidence that defendant played a crucial role in aiding and abetting that scheme, including by facilitating and encouraging the Vegas trips. Evidence of Vegas is therefore highly probative of defendant's guilt and properly admissible.

# DEFENSE MOTION

## I. INTRODUCTION

In Raymond Chan's previous trial, witnesses for the government testified at length about what occurred during Jose Huizar's trips to Las Vegas with Chairman Wei Huang, and the government introduced numerous exhibits about these trips. This included information related to the size and luxury of accommodations and spending on restaurants and prostitutes. This evidence is wholly irrelevant as to Chan, is inflammatory and prejudicial, and should be excluded from this trial. In particular, the salacious details of what occurred during these trips are especially prejudicial and should be excluded. Chan did not partake in these trips and there is no indication that he knew what occurred during the trips. Details about the trips can only have been elicited at such length during the first trial for the purpose of inflaming the jury about the excessive and debauched nature of these trips, to paint a vision of corruption worthy of Hollywood, but that is irrelevant to the charges against Chan.

## II. ARGUMENT

"Only evidence that is relevant is admissible." *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) (internal quotation marks omitted). "For evidence to be relevant it must be probative of the proposition it is offered to prove, and the proposition to be proved must be one that is of consequence to the determination of the action." *Id*. (internal quotation marks and ellipsis omitted). Irrelevant evidence is thus inadmissible. Fed. R. Evid. 402. Moreover, even if relevant, the Court has wide discretion to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice "refers to an undue tendency to suggest decision on an improper basis,

2

commonly, though not necessarily, an emotional one or evidence designed to elicit a response from the jurors that is not justified by the evidence." *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998) (internal quotations omitted); *accord Old Chief v. United States*, 519 U.S. 172, 180 (1997). A defendant should not sustain a conviction "for reasons wholly irrelevant to his own guilt or innocence." *See United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011).

The government has principally charged Chan with agreeing to aid and abet Huizar in an honest services bribery scheme and a pay-for-play scheme. Beyond the fact that a developer paid for Huizar's travel, further details regarding these trips are not relevant to the charges against Chan. Indeed, the details of the trips are particularly salacious – including the prostitution and restaurants, the size of the villas, and similar details – and are not necessary for the jury to assess anything of consequence related to the charges against Chan. *See United States v. Garcia-Zarate*, 419 F. Supp. 3d 1176, 1178 (N.D. Cal. Jan. 1, 2020) (finding that the details of an individual's death were not relevant to the possession charges, beyond the fact that the death occurred); *United States v. Hunt*, No. 18-CR-475-IM, 2022 WL 8632453 *4 (D. Or. Oct. 15, 2022) (finding that while the fact of an overdose death might be relevant to explain how prosecutors were led to the defendant in a drug trafficking case, the details, including photos and discussions of the autopsy, are prejudicial).

Moreover, whatever may be the minimal probative value of the evidence concerning the details of what occurred during the Las Vegas trips is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Fed. R. Evid. 403. The Court must engage in the required balancing of the probative nature of the proffered evidence and any unfair prejudice resulting from its admission. *United States v. Carpenter*, 923 F.3d 1172, 1182 (9th Cir. 2019) (Rule 403 analysis required in conspiracy

case); *United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994) (same); *United States v. Rivera Calderon*, 578 F.3d 78, 94 (1st Cir. 2009) (same). Both Agent Andrew Civetti and Esparza, amongst others, testified at length about what occurred during these trips, all the while minimally referencing Chan. *See* Civetti Testimony Trial Tr. 2/22/23-2/23 at 282-332; Esparza Testimony Tr. 2/27/2023 at 811-61. Excluding such irrelevant testimony would serve to streamline this trial and would also prevent any possibility of the jury convicting Chan because of their disgust over the excessive and sexual nature of the activities that occurred on these trips.

**GOVERNMENT OPPOSITION**

**I.     INTRODUCTION**

A key part of the government's case against defendant relates to the Shen Zhen New World ("SZNW") bribery scheme, in which defendant played an integral role. Defendant is charged with, among other things, RICO conspiracy (Count 1); aiding and abetting honest services fraud in connection with SZNW (Counts 2, 3, and 4); aiding and abetting federal program bribery in connection with SZNW (Count 22); and making false statements denying knowledge of the SZNW bribery scheme (Count 39). For each of these counts, it is critical that the government prove up the underlying SZNW bribery scheme between Jose Huizar and Wei Huang—and their trips to Las Vegas as key bribes in that scheme. Because the government also expects to put on evidence of defendant's crucial role in orchestrating and facilitating that scheme, including the Vegas trips, such evidence is highly probative of defendant's guilt.

**II.    ARGUMENT**

    **A.     Multiple Charges Against Defendant Require the Government to Prove the Underlying SZNW Bribery Scheme and the Vegas Trips**

Counts 2, 3, and 4 charge defendant with aiding and abetting Huizar and/or SZNW with honest services wire fraud. (FSI ¶¶ 44-46, pp. 101-104.) These charges require the government to prove that Huizar or SZNW (or both) committed the underlying crime of honest services wire fraud in connection with at least one bribe. Skilling v. United States, 561 U.S. 358, 409 (2010); see also United States v. Mann, 811 F.2d 495, 497 (9th Cir. 1987) ("[A]s an element of the offense of aiding and abetting, the government must prove that someone committed the underlying crime."). Count 22 charges defendant with aiding and abetting Huizar and/or SZNW's crime of federal program bribery. (FSI ¶ 49, p.

111.)  That charge also requires the government to prove that Huizar or SZNW (or both) committed the underlying crime of federal program bribery and that it involved a thing of value, i.e., as relevant here, casino gambling chips, accommodations, or travel expenses.  See 18 U.S.C. §§ 666(a)(1)(B), (2).

Count 1 charging RICO conspiracy requires the government to prove that defendant agreed that members of the CD-14 Enterprise would conduct the affairs of the enterprise through a pattern of racketeering activity.  See 18 U.S.C. § 1962(d).  The charged predicate racketeering acts include honest services wire fraud, bribery in violation of California law, and Travel Act violations—each of which can be proved by the SZNW bribery scheme and, specifically, the Vegas trips.  (See FSI ¶ 40, pp. 11-12.)  Under Pinkerton liability, defendant would also be guilty of Counts 2, 3, 4, and 22 if another person (namely, Huizar or SZNW) committed those underlying substantive crimes as a reasonably foreseeable offense of defendant's RICO conspiracy.

On a broader level, the RICO conspiracy count alleges the shared objectives of the enterprise, which includes enriching its members and associates through bribery and concealing those activities.  (FSI ¶ 39, pp. 10-11.)  It alleges the means by which the objects of the conspiracy were to be accomplished, including through the pay-to-play scheme.  (FSI ¶ 42, pp. 12-15.)  The SZNW bribery scheme helps to prove those objectives and means for the broader conspiracy.

In short: proving the SZNW bribery scheme as to Huizar and SZNW is a direct predicate to proving multiple charges against defendant.

The Vegas trips are at the heart of the SZNW bribery scheme.  They are the fundamental *quids* of the quid pro quo (for honest services fraud) and the "thing of value" (for federal program bribery): that alone makes evidence of those bribes—and everything they entailed—clearly admissible.

None of this evidence is unduly prejudicial under Rule 403, whose "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).  Rather, the details of the Vegas trips are part of the "fair and legitimate weight" of evidence to "not only satisf[y] the formal definition of an offense, but [to] tell[] a colorful story with descriptive richness."  Old Chief v. United States, 519 U.S. 172, 187 (1997).  Evidence of the Vegas trips are essential to proving the corrupt relationship between Huizar and Huang.  That evidence is necessary for the jury to make sense of why a public official would corruptly sell his official acts when bribed with opulent experiences that included luxuries as big as penthouse villas and private jets, and indulgences as small as plush hotel bathrobes.  It explains Huang's motive to ply Huizar with hundreds of thousands of dollars in chips and illuminates the financial profits Huang stood to gain from his billion-dollar redevelopment of the LA Grand Hotel.  This evidence reveals the intent of the co-conspirators, including (1) the myriad ways Huang courted Huizar as the VIP in Vegas, from serving him first at the dinner table to giving him first pick of the prostitutes; (2) Huizar's prioritization of Huang as a "Friend of the Office" in return; and (3) the participants' shared efforts to conceal their trips, particularly after the scare at the Palazzo and subsequent "cooling off."  Even the prostitutes that Huang paid for in Vegas goes to another key aspect of the scheme: the $600,000 Huang secretly paid to settle the sexual harassment lawsuit against Huizar—the payment of which defendant helped structure and facilitate.  Huang refers back to those bribes (i.e., prostitution services) when he admits he was the one who paid the $600,000, calling it the "most expensive pussy" he ever paid for.  That settlement was designed to keep Huizar in power, a goal of the conspiracy and for defendant.

None of this is captured by the mere "fact that a developer paid for Huizar's travel." (Mot. at 3.) It is only by putting on the "persuasive power of the concrete and particular," as it is entitled to do, that the government can satisfy the jury of "the obligations that the law places on them." <u>Old Chief</u>, 519 U.S. at 187.

### B. Defendant Specifically Aided and Abetted the Vegas Trips

The government intends to put on significant evidence of defendant's role in generally facilitating the corrupt relationship and specifically facilitating various aspects of the bribery scheme between Huizar and Huang. That evidence will show that defendant acted as the go-between and translator for Huizar and Huang, including by assisting Huang in obtaining Huizar's help relating to the LA Grand Hotel and assisting Huizar in obtaining bribes from Huang.

To prove aiding and abetting, the government need only show that defendant aided, counseled, or induced Huizar or SZNW with respect to just one element of the underlying crime with the intent to facilitate the crime before it was completed. <u>Rosemond v. United States</u>, 572 U.S. 65, 73 (2014) (defendant can be convicted as an aider and abettor "even if that aid relates to only one (or some) of a crime's phases or elements"). While that one element need not be specific to aiding and abetting the Vegas trips, the government anticipates putting on evidence of defendant's role in facilitating and encouraging exactly those trips.

For instance, the government expects that George Esparza will testify that defendant suggested Huizar should go to Vegas with Wei Huang (2/24/2023 Trial Tr. at 780-781) and that defendant "made sure" Huang "took care" of Esparza and Huizar in Vegas by providing gambling chips. (<u>Id.</u> at 836-837.) Defendant was well aware of what happened in Vegas and laughed along with others at the stories that Huizar and Huang relayed. (<u>See</u> 3/1/2023 Trial Tr. at

1510.)  The government also expects to put on evidence that defendant frequently acted as the trusted go-between for Huang and Huizar's corrupt conversations, including by facilitating the Vegas trips and the $600,000 payment for the settlement of the sexual harassment lawsuit.  (See, e.g., Exs. 364N, 364O (defendant to Huizar that the "plan" for Vegas "remains the same" and that he will "confirm the Vegas trip with [chairman] and report back to you").)  Indeed, one of the Vegas trips that defendant specifically encouraged was a trip over New Year's Eve that included Huizar's family, whom Huizar took as part of his and defendant's ongoing efforts to secure the $600,000 collateral from Huang by reassuring Huang that all was well with Huizar's marriage.  (See Ex. 364L (Defendant to Huizar: "I hope things are going good in Vegas and your family is enjoying the trip."); see also Ex. 366A (Harris Chan to Huizar: "Hi Jose, I just talked to the Chairman.  He fully endorses your plan, he is proud that your wife will support you in public if the other side filed a lawsuit.").)

Far from being "wholly irrelevant" to defendant (Mot. at 2), the Vegas trips were one of the bribes that defendant specifically aided and abetted and go directly to his own guilt.  Evidence of those trips should be admitted.

### III.  CONCLUSION

For the foregoing reason, defendant's motion to exclude details about the Vegas trips as "inflammatory and prejudicial" should be denied.[1]

---

[1] In the parties' joint exhibit stipulation for the government's exhibits, defendant cites "MIL No. 1" as the basis of his objection for numerous exhibits.  (See Dkt. No. 1289.)  But many of those exhibits only loosely refer or allude to Vegas and say nothing of its details.  Defendant's motion does not seek to exclude any and all mention of Vegas; to the contrary, he concedes that the trips themselves are relevant.  Rather, defendant's motion seeks to exclude or limit only the "salacious details" of the Vegas trips.  (Mot. at 2.)  Accordingly, as to those exhibits, the government has notated its response as "Outside Scope MIL No. 1" to indicate its position that a ruling on MIL No. 1 would not impact the admissibility of those exhibits.

**DEFENSE REPLY**

The evidence the government seeks to introduce goes well beyond adding the kind of "descriptive richness" that the Supreme Court allowed may be considered in the analysis under Rule 403. *Old Chief v. United States*, 519 U.S. 172, 187 (1997). *Old Chief*'s rationale was that the government may introduce evidence to enhance "the persuasive power of the concrete and particular" to "convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Id.* at 187-88. But here, the concrete and particular details of Huizar's trips to Las Vegas are not reasonably related to Chan. Chan did not go on the trips and there is no evidence that he knew of or approved the activities that went on during these trips.

The government is already seeking to prosecute Chan under a rather novel theory that, although Chan did not obtain any financial benefits in this pay for play scheme, or go to Las Vegas, he is still equally as morally and legally culpable as Huizar. The only relevant fact under this theory is that Huizar was treated to Las Vegas trips by Huang. Admitting additional evidence of the trips is a waste of the jury's time and could confuse the issues since Chan did not go on any of the trips.

To admit lengthy descriptions of the excess involved in the Las Vegas trips, which Chan was not on, would also run the risk of having the jury convict because it was disgusted by this activity generally, rather than its belief that Chan participated in an extensive RICO enterprise. *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.").