John Hanusz (SBN 277367)
HANUSZ LAW, PC
515 South Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorneys for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 20-CR-326-JFW |
|---|---|
| Plaintiff, | |
| v. | **JOINT MOTION *IN LIMINE* NO. 2: DEFENDANT'S MOTION TO EXCLUDE TESTIMONY CONCERNING UNRELATED SCHEMES** |
| RAYMOND SHE WAH CHAN, | |
| Defendant. | Hearing Date: February 16, 2024<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Honorable John F. Walter |

Defendant Raymond Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, and Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby submit this Joint Motion *in Limine* No. 2: Defendant's motion to preclude the government from eliciting testimony about schemes that did not

involve Chan.

This Joint Motion *in Limine* is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 9, 2024         Respectfully submitted,

/s/ John Hanusz
JOHN HANUSZ

/s/ Michael G. Freedman
MICHAEL G. FREEDMAN

Attorneys for Raymond Chan

Dated: February 9, 2024         E. MARTIN ESTRADA
United States Attorney

/s/ Brian Faerstein*
BRIAN R. FAERSTEIN
MACK E. JENKINS
CASSIE D. PALMER
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

*Pursuant to L.R.5-4.3.4, I attest that that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ Michael G. Freedman
MICHAEL G. FREEDMAN

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

DEFENSE MOTION ........................................................................................................ 2

GOVERNMENT OPPOSITION ...................................................................................... 5

I. INTRODUCTION ......................................................................................................... 5

II. ARGUMENT ................................................................................................................ 5

    A.    The Government Should Be Permitted to Present Core, Relevant Evidence Underlying the RICO Conspiracy ................................................... 5

    B.    The Mateo & 940 Hill Schemes Are Relevant to the RICO Count ............. 8

    C.    Rule 403 Does Not Bar Admission of "Other Scheme" Evidence .............. 9

III. CONCLUSION ............................................................................................................ 9

DEFENSE REPLY .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Salinas v. United States*, 522 U.S. 52, 66 (1997) ....................................................... 3, 6, 10

*United States v. Brooklier*, 685 F.2d 1208 (9th Cir. 1982) ............................................. 7

*United States v. Carpenter*, 923 F.3d 1172 (9th Cir. 2019) ............................................ 4

*United States v. Dean*, 980 F.2d 1286 (9th Cir. 1992) .................................................... 3

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ........................................... 4

*United States v. Gartmon*, 146 F.3d 1015 (D.C. Cir. 1998) .......................................... 9

*United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994) ................................................. 4

*United States v. Rivera Calderon*, 578 F.3d 78 (1st Cir. 2009) ..................................... 4

*United States v. Sanchez*, 659 F.3d 1252 (9th Cir. 2011) ............................................... 4

*United States v. Shayota*, 784 F. App'x 986 (9th Cir. 2019) ......................................... 4

*United States v. Sheeran*, 699 F.2d 112 (3d Cir. 1983) ................................................. 7

**Rules**

Fed. R. Evid. 401 ............................................................................................................. 8

Fed. R. Evid. 402 .......................................................................................................... 3, 8

Fed. R. Evid. 403 ....................................................................................................... 3, 4, 9

# STATEMENT OF ISSUES TO BE DECIDED

**Defense Position:** In Raymond Chan's previous trial, the government elicited testimony about other schemes which Chan was not involved in or aware of at the time. These other alleged bribery schemes are irrelevant to the case against Chan and should be excluded. There is insufficient evidence of Chan's alleged involvement, this information is extraneous, would confuse the jury, and unnecessarily lengthen an already-long proceeding.

**Government Position:** Defendant is charged with RICO conspiracy based on his integral role within the hub of the CD-14 Enterprise. Defendant knowingly joined the agreement to conduct the affairs of the CD-14 Enterprise through a pattern of racketeering activity, and the law is clear that where conspirators pursue the same criminal objective, they can be held liable for each other's conduct even if they do not agree to commit every aspect of the conspiracy. Thus, the government should be permitted to present evidence of the full RICO conspiracy including the Mateo and 940 Hill bribery schemes, which bear all the same hallmarks of the objectives and means that defendant had and employed through his role in the conspiracy. This evidence will be limited in scope and will not present any danger of unfair prejudice at trial.[1]

---

[1] Defendant's motion seeks only to exclude evidence "of the other schemes charged in the indictment concerning 940 Hill and Carmel Partners [the Mateo project]." (Mot. at 4; see also pp. 2-3 (examples regarding Mateo and 940 Hill projects only).) The government thus addresses this specific challenge to the admissibility of the Mateo and 940 Hill bribery schemes raised by the defense. Notably, in the parties' joint pretrial government amended exhibit stipulation, defendant cites "MIL No. 2" as the basis for his objection to numerous exhibits that do not pertain to either the Mateo scheme or 940 Hill scheme. (See Dkt. No. 1289.) Accordingly, as to those exhibits, the government has notated its response as "Outside Scope MIL No. 2" in the parties' joint exhibit stipulation to indicate the government's position that a ruling on MIL No. 2 would not impact the admissibility of those exhibits.

1

# DEFENSE MOTION

## I.   INTRODUCTION

Despite the fact that the government's indictment only charges Raymond Chan with participating in two schemes as part of the larger RICO conspiracy, (First Superseding Indictment ¶ 43, OA 1-84, 119-240), the government seeks to introduce a panoply of evidence relating to other conspiracies– evidence that is unrelated to the allegations involving Chan. This evidence is irrelevant, inflammatory, and prejudicial, and should be excluded from this trial. In severing trials in this matter, the Court has already concluded that there was no evidence connecting the participants in the various schemes (spokes) to each other, other than that the hub of the wheel, Jose Huizar, was the main official actor who participated in these schemes. Dkt. No. 413 at 18-19 ("The Government's offer of proof fails to establish by a preponderance of the evidence that there was an overall agreement among all alleged schemers that the spokes knew each other, that each of the spokes' benefits were probably dependent upon the spokes of others, or that they shared a common goal."). Chan asks for the same courtesy via the exclusion of evidence: that the evidence of spokes which were independent from him not be used against him. Doing so would similarly "permit [a] more streamlined trial." *Id*. at 26.

## II.   ARGUMENT

In Chan's previous trial, witnesses for the government testified about Chan's alleged role in the development of the L.A. Grand Hotel, though the introduction of Jose Huizar to Chairman Wei Huang of Shen Zhen New World I LLC, and the Luxe Hotel, through an introduction of Huizar to Chairman Fuer Yuan of Hazens. *See e.g.*, Trial Tr. 2/28/2023 at 1132-33. Yet, the government also repeatedly elicited lengthy testimony about schemes which did not involve Chan and to which he did not agree to commit.

For example, Morris Goldman testified at length about his relationship with Huizar as it pertained to Carmel Partners and the Mateo project. Trial Tr. 2/28/2023 at

2

1236-1270.  In that testimony, Goldman did not implicate Chan once in that scheme, which begs the question: why elicit lengthy testimony concerning that scheme? The only reference Goldman made to Chan was related to Goldman's "assumption" about how Chan felt about consolidation[2] and how Chan contributed to Richelle Rios' campaign for the CD-14 district seat. *Id*. at 1209-12, 1233-34, 1264-65. In other examples, George Esparza testified about the 940 Hill bribery scheme, which did not involve Chan. Trial Tr. 2/23/2023 at 737-756. Similarly, Agent Civetti testified about 940 Hill and Carmel Partners, even though Chan did not have any knowledge concerning those two schemes. Trial Tr. 2/23/2023 at 395-416.

"Only evidence that is relevant is admissible." *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) (internal quotation marks omitted). "For evidence to be relevant it must be probative of the proposition it is offered to prove, and the proposition to be proved must be one that is of consequence to the determination of the action." *Id*. (internal quotation marks and ellipsis omitted). Irrelevant evidence is thus inadmissible. Fed. R. Evid. 402. Moreover, even if relevant, the Court has wide discretion to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Where a RICO conspiracy is charged, the government must establish that an individual "knew about it and agreed to facilitate the scheme." *Salinas*, 522 U.S. at 66. Although the law allows for a defendant to be held liable even if they do not agree to commit every aspect of the conspiracy, "the partners must agree to pursue the same criminal objective." *Id*. at 63. Thus, while the law allows a co-conspirator to be liable for the acts of others, it does so only where the government can show that the co-

---

[2] Chan has separately filed a motion to exclude witnesses from testifying to the defendant's and other culpable parties' state of mind. (MIL No. 3). These statements would fall under that category. There is no foundation for Goldman's speculation.

3

conspirator knowingly took part in the conspiracy. *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005) ("[a] defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'") *(quoting Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993)).

Here, Chan did not know about, much less agree to facilitate the criminal objectives of the other schemes charged in the indictment concerning 940 Hill and Carmel Partners. Since this evidence and testimony is unrelated to the charges against Chan, it should be excluded. Given the breadth of testimony related to the schemes that Chan was involved with, however minimally, the inclusion of additional information about schemes that Chan was not even aware of is "needlessly cumulative and a waste of time." *United States v. Shayota*, 784 F. App'x 986, 990 (9th Cir. 2019). A defendant should not sustain a conviction "for reasons wholly irrelevant to his own guilt or innocence." *See United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011).

Moreover, whatever may be the minimal probative value of the other scheme evidence "substantially outweighed by the danger . . . of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presented cumulative evidence." Fed. R. Evid. 403. The Court must engage in the required balancing of the probative nature of the proffered evidence and any unfair prejudice resulting from its admission. *United States v. Carpenter*, 923 F.3d 1172, 1182 (9th Cir. 2019) (Rule 403 analysis required in conspiracy case); *United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994) (same); *United States v. Rivera Calderon*, 578 F.3d 78, 94 (1st Cir. 2009) (same). Again, given the length of the testimony and evidence concerning schemes of which Chan did not participate or was not aware is grossly prejudicial, would only serve to waste a significant amount of time, and would confuse the jury.

**GOVERNMENT OPPOSITION**

## I.  INTRODUCTION

Unlike the severed developer defendants, defendant is charged with RICO conspiracy.  That fact principally distinguished defendant and co-defendant Jose Huizar from David Lee/940 Hill LLC and Shen Zhen New World I, LLC ("SZNW") when this Court severed the developer defendants' trials from the RICO trial.  This Court recognized that "the jury in the larger more complex RICO case would be able to focus on the evidence against defendants [Jose] Huizar and Chan and not worrying about parsing out the First Superseding Indictment counts and supporting evidence that apply to the other defendants."  (Dkt. No. 413 (3/7/22 Tr.) at 27:4-8.)

Defendant's motion to exclude the Mateo and 940 Hill bribery schemes rests on the faulty presumption that he is in the same shoes as the developer defendants and was not a knowing participant of the broader RICO conspiracy.  Defendant is wrong – he was integral to the RICO conspiracy and CD-14 Enterprise, falling squarely within its hub, not acting as a siloed spoke.  Thus in meeting its heavy burden on the RICO count, including proving an agreement as to the enterprise, its shared objectives, and a pattern of racketeering activity, the government should be permitted to present evidence of the full conspiracy.  The Mateo and 940 Hill schemes are key parts of the broader RICO conspiracy that bear all its same hallmarks, including using the pay-to-play to extract campaign contributions to maintain political control of the CD-14 seat through Huizar and Rios, and to leverage Huizar's official acts against developers to obtain bribes; these are the exact objectives and means that defendant had and employed through his role in the same conspiracy.  Given the highly probative nature of this evidence, and the limited scope of its presentation, defendant's motion should be denied.

## II.  ARGUMENT

### A.  The Government Should Be Permitted to Present Core, Relevant Evidence Underlying the RICO Conspiracy

Count One charges defendant with RICO conspiracy.  (FSI ¶¶ 40-41.)  To

convict defendant of this central charge, the government must prove, inter alia, that there was an agreement between two or more persons that the CD-14 Enterprise would exist and that a member would conduct or participate in its affairs through a pattern of racketeering activity. See 18 U.S.C. § 1962(d). To meet its burden, the government is entitled to present the full scope of the pattern of racketeering activity underlying the RICO conspiracy, consistent with the Enterprise's shared objectives and agreed-upon means, which defendant was pivotal in conceiving and carrying out.

It is black-letter conspiracy law that where conspirators pursue the same criminal objective, "the law allows for a defendant to be held liable even if they do not agree to commit every aspect of the conspiracy" – and defendant concedes as much. Salinas v. United States, 522 U.S. 52, 66 (1997); (see Mot. at 3). Indeed, a conspiracy may exist "even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." Salinas, 522 U.S. at 63. "The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." Id. at 63-64.

In an attempt to escape this well-established law of conspiracy, defendant argues that he did not know about "the criminal objectives of the other schemes charged in the indictment concerning 940 Hill and Carmel Partners." (Mot. at 4 (emphasis added).) This misapprehends the nature of the RICO conspiracy charge. The criminal objective is not any one specific bribe or official act in connection with a specific developer. Rather the central objective of the RICO conspiracy is to conduct and participate in the affairs of the CD-14 Enterprise through a pattern of racketeering activity, writ large. (FSI ¶ 40.) Accordingly, prosecution under the RICO statute is permissibly expansive:

> The purpose of the RICO statute is to allow a single prosecution of persons who engage in a series of criminal acts for an enterprise, even if different defendants perform different tasks or participate in separate acts of racketeering. The same persons need not commit or endorse the same acts of racketeering. It is sufficient if a defendant who participates

6

          in an enterprise through a pattern of racketeering knows that
the enterprise operates by a pattern of racketeering.

United States v. Brooklier, 685 F.2d 1208, 1222 (9th Cir. 1982).  Defendant does not argue or make any foundational showing that the Mateo and 940 Hill schemes fall outside the scope of the broader RICO conspiracy.  That sinks his argument.

        The government will present substantial evidence that defendant knowingly joined the agreement to conduct the affairs of the CD-14 Enterprise through a pattern of racketeering activity.  Throughout the five-year-long RICO conspiracy, defendant worked hand-in-hand with Huizar at its hub and eagerly and willfully promoted its objectives to obtain bribes, maintain political power, and avoid detection.  (FSI ¶ 39.) He acted as the essential go-between for years, facilitating the corrupt exchanges of bribes to Huizar and to himself from SZNW and Hazens for official acts and assistance on their development projects.  He was crucial to building relationships between Huizar and other Chinese companies (with projects in the City) that promised or provided financial benefits to Huizar.  He was instrumental in saving Huizar's political seat – and with it, the pay-to-play scheme itself – when he secured Wei Huang's $600,000 for Huizar to settle the sexual harassment lawsuit.  He helped to maintain Huizar's power by actively fundraising from 2013 through 2018 (even when his official position prohibited him from doing so), including for Huizar's wife's campaign.  And he consistently sought to conceal the activities of the Enterprise, including his own corrupt role (e.g., by acting as a shadow consultant behind Chiang on the Luxe Hotel project) while also attempting to obstruct cooperation with law enforcement.

        Given defendant's role in the RICO conspiracy, the government is entitled to present core, relevant evidence of the conspiracy's racketeering acts, including the Mateo and 940 Hill schemes.  See United States v. Sheeran, 699 F.2d 112, 118 (3d Cir. 1983) ("It is well established that acts in furtherance of a conspiracy, committed by co-conspirators not on trial, are admissible against a defendant even though that defendant did not participate in those particular acts.").  The government should not be

"foreclosed from presenting the strongest possible case, at least in the absence of a concession by the defendant." Id.

### B. The Mateo & 940 Hill Schemes Are Relevant to the RICO Count

Against this backdrop, the Mateo and 940 Hill schemes are highly relevant to the pattern of racketeering activity that typified the conduct and goals of the CD-14 Enterprise. Such evidence thus is presumptively admissible. Fed. R. Evid. 401, 402.

**Mateo Scheme**. The government will present limited testimony from FBI Supervisory Special Agent Andrew Civetti and Morris Goldman, a lobbyist/consultant for Carmel Partners on the Mateo project and a political fundraiser for Huizar, about the establishment of a Political Action Committee ("PAC") for Richelle Rios's City Council campaign (the "Rios PAC") that Huizar used to steer developers' bribes in the form of political contributions and commitments. The government will present evidence about how Huizar used the Mateo project to extract political contributions from Carmel Partners in exchange for official acts, consistent with how the conspirators sought to obtain PAC contributions from other developers seeking entitlements for DTLA projects. In fact, with defendant's critical assistance, Huizar obtained a commitment from Hazens for a $100,000 contribution to the Rios PAC in connection with the Luxe Hotel project. The CD-14 Enterprise's central goal of keeping Huizar (and his wife) in power as exemplified by the use of the Rios PAC in the Mateo scheme mirrors <u>defendant's</u> significant efforts to get Rios elected, including by committing Hazens to that same PAC, hosting a fundraiser for Rios with various Chinese developers, and seeking to maintain Huizar's power by obtaining contributions from developers for Huizar's campaigns, debt financing, and officeholder account.

**940 Hill Scheme**. Similarly, the government will present limited testimony from Agent Civetti and George Esparza regarding the 940 Hill scheme, focused on the exchange of cash for an official act that exemplifies the overall pay-to-play scheme. Just as Huizar leveraged his official acts to resolve the union appeal against the 940 Hill project in exchange for the cash, defendant leveraged his official acts as deputy

8

mayor in favor of the Luxe Hotel project in exchange for financial benefits in the form of consulting fees. Just as Huizar and David Lee relied on middlemen (Esparza and Justin Kim, respectively) to conduct the actual solicitation and exchange of the cash bribes, defendant used his middleman (Chiang) to coordinate and transact his bribes.[3] Just as Huizar directed Esparza to hold onto the $200,000 cash for him to conceal the bribe, defendant directed his (undisclosed) business partner, Chiang, to keep defendant's share of Hazens's money until defendant left City employment.

The Mateo and 940 Hill schemes are part and parcel of the RICO conspiracy to which defendant agreed, employ the same means that defendant used, and further the same objectives of the conspiracy that defendant promoted. That makes those schemes squarely relevant and admissible.

### C. Rule 403 Does Not Bar Admission of "Other Scheme" Evidence

None of the Rule 403 grounds cited by defendant substantially outweigh the strong probative value of the Mateo/940 Hill evidence in proving the broader RICO conspiracy and its members' agreement to a pattern of racketeering activity. The evidence is limited in scope and is neither confusing nor cumulative. Rule 403 "does not generally require the government to sanitize its case, to deflate witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even 'prejudicial' evidence." United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (citations omitted). There is nothing inflammatory about the Mateo and 940 Hill schemes, much less anything <u>unfairly</u> prejudicial warranting exclusion.

### III. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion <u>in limine</u> to exclude testimony concerning "unrelated schemes."

---

[3] Kim also served as a fundraiser for Huizar and discussed other aspects of the pay-to-play scheme in recorded wiretap calls with Chiang and Esparza. In that respect, this evidence not only is relevant to the RICO count but also inextricably intertwined with the relationships between the coconspirators and how the Enterprise worked. <u>See</u> <u>United States v. Loftis</u>, 843 F.3d 1173, 1177-78 (9th Cir. 2016).

**DEFENSE REPLY**

The government concedes that to prove its conspiracy charge, it must demonstrate that Chan knew about the pattern of racketeering activity and agreed to it, even if he did not participate in every act. (Opp. at 6-7); *see Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor…but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.") The government cannot demonstrate that Chan knew about or intended to adopt the goals of the 940 Hill or Mateo schemes, nor did he agree to their commission. Participation is not the same thing as knowledge. While the government need not show that Chan participated, they must show that he knew about it and agreed to it. And yet, the government cannot.[4]

The government has overstepped the boundaries by including Chan in the CD-14 enterprise based on a series of disparate actions by Huizar that ultimately sought the same goal as Chan's by virtue of the very nature of Huizar's position. Huizar's role as councilmember involved many activities that were not inherently illegal, such as conducting official business with developers. Chan's official duties overlapped with these legitimate activities. The fact that Huizar broke the law in certain instances through his own activities with developers, does not mean that he always did in all his activities with developers. Nor does it prove that Chan's own activities with developers were also illegal or that Chan knew about Huizar's illegal activities. The government's alleged RICO theory cannot be interpreted so broadly to assume that Chan's participation in one allegedly illegal set of conduct serves as circumstantial evidence of knowledge of Huizar's illegal conduct in a different set of circumstances.

---

[4] Chan, as stated in his motion to dismiss, does not believe that a group CD-14 enterprise ever existed, or that if it did, it only existed as to Huizar. *Odom v. Microsoft Corp.,* 486 F.3d 541, 548 (9th Cir. 2007) ("A single 'individual' is an enterprise under RICO."; *Salinas*, 522 U.S. at 65 ("an 'enterprise' under § 1962(c) can exist with only one actor to conduct it…").

10