John Hanusz (State Bar No. 277367)
HANUSZ LAW PC
515 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: Michael@thefreedmanfirm.com

Attorneys for Raymond Chan

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAYMOND SHE WAH CHAN, <br><br> Defendant. | Case No. 20-CR-326-JFW <br><br> **JOINT MOTION IN LIMINE NO. 3: DEFENDANT'S MOTION TO EXCLUDE SPECULATIVE TESTIMONY ABOUT KNOWLEDGE, INTENT, MOTIVE, OR STATE OF MIND** <br><br> Hearing Date: February 16, 2024 <br> Hearing Time: 8:00 a.m. <br> Location: Courtroom of the Honorable John F. Walter |

Defendant Raymond Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, and Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby submit this Joint Motion in Limine No. 3: Defendant's motion to preclude the government from eliciting testimony

from witnesses about other individuals' knowledge, intent, motive, or other criminal state of mind.

 This Joint Motion *in Limine* is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Respectfully submitted,

DATED: February 9, 2024 By /s/ *John Hanusz*
          JOHN HANUSZ
          Attorney for Raymond Chan

         By /s/ *Michael G. Freedman*
          MICHAEL G. FREEDMAN
          Attorney for Raymond Chan

Dated: February 9, 2024 Respectfully submitted,

         E. MARTIN ESTRADA
         United States Attorney

         /s/ *Cassie D. Palmer**
         CASSIE D. PALMER
         MACK E. JENKINS
         SUSAN S. HAR
         BRIAN FAERSTEIN
         Assistant United States Attorneys
         Attorneys for Plaintiff
         UNITED STATES OF AMERICA

*Pursuant to L.R.5-4.3.4, I attest that that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

         /s/ *Michael G. Freedman*
         MICHAEL G. FREEDMAN

ii

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

DEFENSE MOTION ........................................................................................................ 2

GOVERNMENT OPPOSITION ...................................................................................... 5

    I. INTRODUCTION ................................................................................................. 5

    II. ARGUMENT ....................................................................................................... 5

    III. CONCLUSION ................................................................................................... 9

DEFENSE REPLY .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Carter v. DecisionOne Corp.*, 122 F.3d 997 (11th Cir. 1997) ......................................... 9

*United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) ........................................ 4

*United States v. Campo*, 840 F.3d 1249 (11th Cir. 2016) ................................................ 9

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ............................................... 8, 9

*United States v. Freeman*, 514 F.2d 1184 (10th Cir. 1975) ............................................. 9

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005) ..................................................... 8

*United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990) ....................................... 5, 7

*United States v. Graham*, 856 F.2d 756 (6th Cir. 1988) .............................................. 6, 8

*United States v. Guzzino*, 810 F.2d 687 (7th Cir. 1987) .............................................. 5, 6

*United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) ......................................... 3, 4, 5, 9

*United States v. Hill*, 931 F.2d 56 (6th Cir. 1991) ....................................................... 6, 7

*United States v. Mamic*, 90 F. App'x 532 (9th Cir. 2004) .............................................. 9

*United States v. Morton*, 391 F.3d 274 (D.C. Cir. 2004) ............................................ 5, 7

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) ................................................... 4, 6

*United States v. Russell*, 703 F.2d 1243 (11th Cir. 1983) ............................................... 6

*United States v. Tsekhanovich*, 507 F.3d 127 (2d Cir. 2007) ......................................... 8

**Rules**

Fed. R. Evid. 701 ............................................................................................... 1, 5, 6, 7, 8

Fed. R. Evid. 704(a) ......................................................................................................... 9

## STATEMENT OF ISSUES TO BE DECIDED

**Defense Position:** In Raymond Chan's previous trial, the government invited cooperating witnesses to opine about the criminal intent, knowledge, and state of mind of several individuals involved in the alleged conspiracy. The government's witnesses should be permitted to describe their own states of mind and the facts upon which other individuals' states of mind might be inferred. But the Court should preclude the government from asking questions designed to elicit testimony from witnesses about other individuals' criminal state of mind. If lay opinions about these individuals' thoughts are grounded in fact, the government should elicit the facts, argue, and let the jurors draw conclusions.

**Government Position:** The type of testimony defendant cites in his motion should not be precluded. In some instances, the witnesses merely described their own state of mind or own understanding of the facts as participants in the conspiracy, which is permissible. When the witnesses did express opinions, they were permissible because they were rationally based on the witnesses' perception and helpful to clearly understanding the testimony or to determining a fact in issue. See Fed. R. Evid. 701. Defendant primarily complains that the witnesses offered opinions without sufficient foundation, which not only is wrong (the cherry-picked quotes do not reference the foundational testimony proceeding them) but is an issue best dealt with on a case-by-case basis at trial.

## DEFENSE MOTION

In Raymond Chan's previous trial, the government repeatedly elicited unfounded testimony from witnesses about their understanding of what the intentions were of several alleged co-conspirators in the pay-for-play scheme. For example, when George Esparza was asked whether Jose Huizar intended to repay Wei Huang for the settlement loan, Esparza testified that Huizar did not.

> Q: Yeah Did you have an understanding of whether Jose Huizar was going to pay back this money to Chairman Huang?
> A: Yeah. He wasn't going to pay back the money.
> Q: Would Jose Huizar have had the money, over half a million dollars, to pay back?
> A: No, he wouldn't.

Trial Tr. 2/27/2023 at 894-95.  In another example, Esparza testified that Huizar involved a lawyer in the settlement loan, "to make sure things looked legitimate." *Id*. at 896. Just prior to the above-cited examples, Esparza did not provide any foundation as to what he observed that formed the basis for this "understanding." Moreover, in the Shen Zhen trial, Esparza admitted on cross that he knew nothing about the details of the loan or how it worked, and did not know that Huizar had been paying the bank for several years. Trial Tr. 11/02/2022 at 1025-31. In another example, Esparza testified that Huizar was asking him to change small amounts of money received on the Australia trip to avoid reporting the money to the IRS, while simultaneously admitting that he only "believed" that there would be IRS involvement in sums over 10,000. Tr. 2/7/2023 at 960.

In other examples, Morris Goldman testified about how Chan felt about consolidation, and Goldman stated that he did not speak to Chan about it, but that he assumed that Chan was worried about it. Trial Tr. 2/28/2023 at 1209-12. In another part of Esparza's testimony, Esparza stated that he had "formed the understanding that Chairman Wei Huang expected Jose Huizar's help on the L.A. Grand redevelopment because of the many financial benefits that he provided." Tr. 2/7/2023 at 1059.

However, earlier in Esparza's testimony, Esparza had stated that in a conversation with Ricky Zheng he developed the understanding that the L.A. Grand Hotel was the "big ask and the reason why Chairman Huang had been investing in Jose Huizar," without explaining what Zheng said to him to created that understanding. And, in another example, Esparza testified that Huizar introduced Ernie Camacho to Fuer Yuan "to start planting the seed that this is one of Jose Huizar's guys. He knew that they were going to start building at some point, so just kind of laying the foundation to see how he could get Ernie Camacho on the project." Trial Tr. 2/7/2023 at 972.

During the examination of a different witness, George Chiang, about his relationship with Chan and the Huizar and the development of the Synergy business, the government elicited testimony that Chan was part of the CD-14 conspiracy:

> Q And were you and Raymond Chan also members of that conspiracy?
> A Yes, we are.

Trial Tr. 3/2/2023 at 1896. Chiang's prior testimony had been based on his perception, largely discussing how Chan helped him start his consulting business. Consequently, this damning statement was, up to that point, unfounded and unhelpful to the jury, who could listen to the facts as he testified and come to their own conclusions.

In *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000), the Ninth Circuit found the admission of similar testimony from a government witness to be reversible error. There, as here, the case turned on knowledge and intent. *Id.* at 639. Over objection, the government elicited testimony from a witness that, based on the facts, the defendants must have known that the revenue reported in certain financial statements was false. *Id*. at 639-40. In reversing the defendants' convictions, the court explained that, where the jury has all of the facts on which that lay opinion about the defendants' intent was based – including testimony about the predicates for the opinion, several years of investigation, and input from all of the key actors except the defendants – the jury was equally well-suited to draw conclusions. *Id.* at 641-42. Under those circumstances, lay opinion testimony about the inner workings of a defendant's mind

3

added nothing helpful and, for that reason, was inadmissible. And because it went to the key issue in the case, the improper admission of that testimony was reversible error. *Id*. at 639-42; *see also United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) (lay opinion testimony about defendant's knowledge and intent was not helpful to the jury, which was equally well suited to draw inferences, and thus inadmissible); *United States v. Rea*, 958 F.2d 1206, 1219 (2d Cir. 1992) (same).

Here, consistent with *Henke*, the Court should preclude the government from asking questions designed to elicit testimony from witnesses about other individuals' state of mind, particularly Huizar's and the counterparties to the alleged bribes. If lay opinions about these individuals' thoughts are grounded in fact, the government should elicit the facts, argue, and let the jurors draw conclusions.

# GOVERNMENT OPPOSITION

## I.  INTRODUCTION

The type of testimony defendant cites in his motion should not be precluded. In some instances, the witnesses merely described their *own* state of mind or *own* understanding of the facts as participants in the conspiracy, which is permissible. See United States v. Morton, 391 F.3d 274, 277 (D.C. Cir. 2004) (witness's "testimony about his own state of mind is not opinion testimony"). When the witnesses *did* express opinions, they were permissible because they were "rationally based on the [witnesses'] perception," and "helpful to clearly understanding [their] testimony" *or* "to determining a fact in issue." Fed. R. Evid. 701.

Defendant's reliance on United States v. Henke, 222 F.3d 633 (9th Cir. 2000) is misplaced. Henke stands for the unremarkable proposition that a witness may not testify to a conclusion that a defendant "must have known" something without personal knowledge of the predictive facts. This makes good sense because such testimony was neither based upon the witness's perception nor helpful to the jurors (who *did* have such predicative facts). The government does not intend to elicit such inadmissible testimony. But the cooperator testimony defendant challenges here is readily distinguishable from Henke. Defendant primarily complains that the witnesses offered opinions without sufficient foundation, which not only is wrong (the cherry-picked quotes do not reference the foundational testimony proceeding them) but is an issue best dealt with on a case-by-case basis at trial. United States v. Guzzino, 810 F.2d 687, 699 (7th Cir. 1987) (cleaned up) (admissibility issues are fact-intensive and "peculiarly suited to [the trial judge's] determination"). The Court should deny the motion.

## II.  ARGUMENT

A witness's testimony about his own state of mind is admissible and is not opinion testimony subject to Rule 701. See, e.g., Morton, 391 F.3d at 277 (officer's testimony that he believed the passenger did not know a gun was in the vehicle was not apparent opinion testimony); United States v. Giovannetti, 919 F.2d 1223, 1226 (7th

| | |
|---|---|
| 1 | Cir. 1990) ("What [the witness] called his 'opinion' [that it was possible that illegal bets were being taken out of a house rented by defendant] was actually a report of the contents of his mind, of which people are normally assumed . . . to have direct rather than inferential knowledge."). Testimony about the mental state of *another*, however, is "neither conclusively nor presumptively inadmissible." Guzzino, 810 F.2d at 699; see also United States v. Hill, 931 F.2d 56 (6th Cir. 1991) (unpublished table) ("[L]ay opinion testimony concerning a defendant's state of mind is admissible under some circumstances."). Such lay opinion testimony is permissible if it satisfies Rule 701: it must be "rationally based on the witness's perception," and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701; see United States v. Graham, 856 F.2d 756, 759 (6th Cir. 1988) (witness may offer lay opinion regarding his understanding of defendant's intent when making certain statements); United States v. Russell, 703 F.2d 1243 (11th Cir. 1983) (undercover agent could testify to his understanding that participants in recorded discussions intended to be involved in one scheme); United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (helpfulness requirement of Rule 701 "is designed to provide 'assurance against the admission of opinions which would merely tell the jury what result to reach'") (quoting Fed. R. Evid. 704, advisory committee's note on 1972 Proposed Rules)) (cleaned up). |

In support of his motion, defendant cites statements from three government cooperators, which defendant claims were inadmissible. But several statements merely describe the witnesses' *own* state of mind or *own* understanding as participants in the conspiracy. For example, George Chiang's statement about who he was in a conspiracy with was based upon his own state of mind, which falls outside of Rule 701. And Morris Goldman's testimony about consolidation specifically related to his personal observations: "Q: Based upon *your observations* of the defendant around this time . . . ." (Trial Tr. 1211 (emphasis added).) After Goldman said he had not discussed the issue with defendant and (incorrectly) used the word "assumption" to explain that he understood defendant was worried about consolidation, the prosecutor

cabined Goldman's response to facts Goldman personally witnessed. (See Trial Tr. 1211-12 ("Q: Did you around that time begin to see defendant Chan reaching out to people to try to curry support to keep his position? A: Yes. . . . Q: Can you describe that?").) These two witnesses merely reported the contents of their minds at a prior point in time, which courts repeatedly have held is admissible and not subject to Rule 701, even if expressed as a statement of opinion or belief. See Morton, 391 F.3d at 277; Giovannetti, 919 F.2d at 1226; Hill, 931 F.2d at 56 (no violation of Rule 701 because "each witness testified as to his own state of mind.").

Second, even when the challenged testimony took the form of opinions, those opinions were permissible because they were "rationally based on [the witnesses'] perception," and "helpful to clearly understanding [their] testimony" or "determining a fact in issue." Fed. R. Evid. 701. Esparza's two statements about his understanding of the $600,000 sham loan that Wei Huang funded were rationally based upon Esparza's perception, that is, *Esparza's* understanding that: (1) Huizar had no intention of paying back the loan, and (2) that Huizar used a lawyer in the transaction "to make sure things looked legitimate." Contrary to defendant's assertion, Esparza was not required to know the granular details of the loan's terms (Esparza admitted he did not) to offer these opinions. As Huizar's most trusted confidant, Esparza's opinions were rationally based on his deep inside knowledge and direct participation in structuring the loan as well as his knowledge the conspiracy's innerworkings and need for concealment. Esparza testified that he discussed the loan with Huizar and Zheng, including the amount of the loan; the solicitation of Huang to pay it; defendant's close involvement in structuring the loan through a shell company to hide Huang's involvement; and concerns that the sexual harassment lawsuit would harm Huizar's reelection. (Trial Tr. 882-914.) Esparza's testimony also established that, as Huizar's years-long right-hand man and middleman for the pay-to-play scheme, he was intimately aware of Huizar's conversations, financial situation, mounting debt, and lack of funds to repay the loan, and, having worked for Huizar for years, that Huizar did not pay when developers were

7

1  involved. In other words, the basis for Esparza's opinions was his near-daily
2  perception and interactions with Huizar over many years. See United States v. Garcia,
3  413 F.3d 201, 212 (2d Cir. 2005) ("Rule 701 affords the jury an insight into an event
4  that was uniquely available to an eyewitness. In this respect, the rule recognizes the
5  common sense behind the saying that, sometimes, 'you had to be there.'").
6       Similarly, Esparza's testimony about *his* understanding of why Huang gave him
7  and Huizar benefits was based upon that same deep knowledge of and close
8  relationships with Huizar, Huang, and the other coconspirators, as well as the
9  conversations Esparza relayed in his role as a messenger, including Huang's numerous
10 "asks" of Huizar through Esparza for the LA Grand Hotel, knowledge which would not
11 have been readily available to the jury. Likewise, Esparza's understanding of why
12 Huizar introduced Chairman Yuan to Ernie Camacho was rationally based upon this
13 personal knowledge and perception, not speculation. As an insider to the scheme,
14 Esparza's testimony on these issues was helpful to the jury in determining facts in
15 issue. See United States v. Dawkins, 999 F.3d 767, 793 (2d Cir. 2021) (no abuse of
16 discretion in admitting lay witness testimony of cooperators regarding their
17 understanding of conversations with defendants where the cooperators "possessed the
18 required first-hand knowledge of their context—knowledge that would not have been
19 readily available to jurors on their own"); Graham, 856 F.2d at 759 (witness in Travel
20 Act prosecution could testify to his understanding that defendant's suggestion that he
21 contribute to county sheriff's re-election campaign was a suggestion to make a bribe
22 rather than a voluntary contribution); see United States v. Tsekhanovich, 507 F.3d 127,
23 129-30 (2d Cir. 2007) (per curiam) (testimony of cooperator's understanding of why
24 defendant sent him cars for repair in false insurance case was permissible and not
25 speculative, where witness had known defendant for a few years before conversations).
26      Nor is the challenged testimony impermissible merely because it may touch on
27 the coconspirators' intent. That a witness's lay opinion testimony (unlike expert
28 opinion) may embrace an ultimate issue, like a defendant's state of mind, "does not

8

make the testimony objectionable." United States v. Campo, 840 F.3d 1249, 1266–67 (11th Cir. 2016) (cleaned up) (no error in admitting testimony that witness believed the defendant killed victim, even though he did not see the killing but observed and testified to events that led to his opinion); Fed. R. Evid. 704(a) (lay "opinion is not objectionable just because it embraces an ultimate issue"); United States v. Freeman, 514 F.2d 1184, 1191 (10th Cir. 1975) (bank executive's testimony that there was no doubt in defendant's mind that he was selling all of his equipment was permissible in fraud prosecution even though it opined on an ultimate issue); Carter v. DecisionOne Corp., 122 F.3d 997, 1004 (11th Cir. 1997) (lay opinions regarding an ultimate issue "are properly admitted if they are based on the personal observations of the witness").

Henke is of no import here. There, the Ninth Circuit held it was error to admit lay opinion that the defendant "must have known" about a false revenue reporting scheme. 222 F.3d at 641-42. But the witness was neither involved in committing the scheme with the defendant (in contrast to the cooperators here) nor had any percipient knowledge of the underlying facts. Despite lacking such knowledge, the witness "was not questioned about the facts that [a board] investigation turned up or how those facts were discovered" yet repeatedly offered the opinion that defendant must have known about the illegal scheme, based upon the board's findings and the defendant's eventual firing. Id. at 639-41 & n.1. That opinion plainly was *not* rationally based upon the witness's perception. By contrast here, the cooperators will "testif[y] to [their] own understanding of the situation," based upon facts not readily available to the jury. United States v. Mamic, 90 F. App'x 532, 533 (9th Cir. 2004) (distinguishing Henke and upholding the admissibility of a lay witness's testimony that he believed a check defendant gave him was counterfeit); Dawkins, 999 F.3d at 793.

### III. CONCLUSION

The Court should deny defendant's Motion. Because this fact-intensive inquiry benefits from the development of a factual record, the Court instead should rule on the admissibility of such testimony at trial on a case-by-case basis.

**DEFENSE REPLY**

Chan believes that the existing briefing adequately frames the issue for decision.