E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0363/3289/3819
    Facsimile: (213) 894-6436
    E-mail:   Cassie.Palmer@usdoj.gov
           Susan.Har@usdoj.gov
           Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RAYMOND SHE WAH CHAN,<br>  aka "She Wah Kwong,"<br><br>        Defendant. | No. CR 20-326(A)-JFW-2<br><br>JOINT STATEMENT REGARDING SECOND REVISED PRETRIAL GOVERNMENT AMENDED EXHIBIT STIPULATION; APPENDICES 1 AND 2<br><br>Trial Date: March 12, 2024<br>Trial Time: 8:30 A.M.<br>Location:  Courtroom of the Hon.<br>          John F. Walter |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, and defendant Raymond She Wah Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, hereby submit the parties' Joint Statement Regarding Second Revised Pretrial Government Amended Exhibit Stipulation.

1    In support of this Joint Statement, the parties are filing the

2  accompanying Second Revised Pretrial Government Amended Exhibit

3  Stipulation (Appendix 1).  Pursuant to the Court's prior order, the

4  parties also are providing a list of the "Disputed Exhibits Only"

5  from the Second Revised Pretrial Government Amended Exhibit

6  Stipulation (Appendix 2).  The parties have included in Appendix 2

7  only those exhibits for which a ruling still is required from the

8  Court, that is, the exhibits briefed in this Joint Statement.

9    Following the Court's rulings on Motions in Limine (MIL) Nos. 1

10 and 2, and in conjunction with further meet and confer efforts, the

11 parties have substantially reduced the remaining evidentiary disputes

12 into two categories: (1) objections defendant wishes to preserve

13 under MIL Nos. 1 or 2; and (2) objections to certain summary charts

14 based upon Federal Rules of Evidence 1006 and 611(a).

15    With respect to the objections defendant wishes to preserve

16 pursuant to his MILs, in accordance with the Court's instructions,

17 the "Def. Obj." column reads "MIL No. 1" or "MIL No. 2"; the "Gov't

18 Resp." column reads "Opp'n MIL No. 1" or "Opp'n MIL No. 2"; and the

19 newly added "Court Ruling" column reads "MIL No. 1-DENIED" or "MIL

20 No. 2-DENIED."  Defendant's objections as to those exhibits are based

21 solely on the arguments that defendant already raised in connection

22 with those two respective MILs, which the Court denied.  Accordingly,

23 the parties agree that defendant's objections based upon his MIL

24 arguments require no additional briefing.  Because there are no live

25 disputes for the Court to resolve with respect to exhibits for which

26 defendant's only objection is a MIL, the parties have not included

27 those exhibits in the Disputed Exhibits list (Appendix 2).

28

1    To address defendant's objections to certain summary charts--
2    **Government Exhibits 906; 908; 909; 910; 921; 922; 923; 924; 925; 926;**
3    **927; 930; 931; 932A; 940; 940A; 940B; 942; 942A; 942B; 943,** the
4    parties first provide responsive general legal arguments and then
5    specific arguments addressing admissibility by grouping the
6    challenged exhibits into three categories:

7    (1) **15 Timelines**: **Government Exhibits 908** (Carmel 2018
8    Timeline); **910** (Money Laundering Timeline - Huizar Family); **924, 925,**
9    **926** (SZNW Timelines); **930, 931, 932A** (Hazens Timelines); **940, 940A,**
10   **940B** (Hazens-Jacinto Timelines); **942, 942A, 942B** (ADC Timelines);
11   **943** (FBI Overt Timeline);

12   (2) **5 Calculations Summaries**: **Government Exhibits 906** (All
13   Benefits - Huizar); **Ex. 909** (Money Laundering Table – Huizar Family);
14   **Exs. 921 & 922** (Casino Trips – Chips & Group Benefits; Group Benefits
15   Only); **923** (Casino Trips - Excel Example); and

16   (3) **1 Visual Depiction of Voluminous Data**: **Government Exhibit**
17   **927** (Godoy Funds Flow Chart).
18   //
19   //

1     The parties respectfully request the opportunity to submit

2 additional briefing, as needed.

3  Dated: February 28, 2024      Respectfully submitted,

4                             E. MARTIN ESTRADA

                            United States Attorney
5

6

7                             CASSIE D. PALMER

                            SUSAN S. HAR
8                             BRIAN R. FAERSTEIN

                            Assistant United States Attorneys
9

10                             Attorneys for Plaintiff

                            UNITED STATES OF AMERICA
11

12  Dated: February 28, 2024      */s/ per email authorization*

13                             JOHN HANUSZ

                            MICHAEL G. FREEDMAN
14                             Attorneys for Defendant

                            RAYMOND SHE WAH CHAN
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES..............................................ii

I.   OVERVIEW: DEFENDANT'S OBJECTIONS PURSUANT TO RULES
     1006/611(A).................................................1

     A.   Defense Introduction and Overview of Rules 1006/611(a)....1

     B.   Government's Introduction and Overview of Rules
          1006/611(a)............................................3

II.  SPECIFIC ARGUMENTS RELATING TO TIMELINES......................7

     A.   Defense Objections to Timelines.........................8

     B.   Government's Response to Defense Objections to
          Timelines...............................................8

          1.   Admissibility of Underlying Records................9

          2.   The Timelines Are Based Upon Voluminous
               Underlying Records................................12

          3.   Presentation of Select Evidence...................17

          4.   Rule 611(a) Timelines.............................20

     C.   Defense Reply re: Objections to Timelines..............20

III. Specific Arguments Relating to the Calculations Summaries.....21

     A.   Defense Objections to Calculations Summaries...........21

     B.   Government's Response to Objections to Calculations
          Summaries.............................................22

     C.   Defense Reply re: Objections to Calculations Summaries...28

IV.  Specific Arguments Relating to Visual Depiction of
     Voluminous Data...........................................28

     A.   Defense Objection to Exhibit 927......................28

     B.   Government Response to Objection to Exhibit 927.........29

     C.   Defense Reply re: Godoy Funds Flow Chart...............30

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE(S)

**Federal Cases**

Alleyne v. United States,
   570 U.S. 99 (2013) ............................................. 27

Amarel v. Connell,
   102 F.3d 1494 (9th Cir. 1996) ................................. 9

United States v. Anekwu,
   695 F.3d 967 (9th Cir. 2012) ............................. 10, 17

United States v. Anieze-Smith,
   770 F. App'x 342 (9th Cir. 2019) ......................... 23, 29

United States v. Appolon,
   695 F.3d 44 (1st Cir. 2012) .............................. 11, 12

United States v. Aubrey,
   800 F.3d 1115 (9th Cir. 2015) ............................ 22, 29

United States v. Baker,
   10 F.3d 1374 (9th Cir. 1993) .............................. 2, 6

United States v. Bertoli,
   854 F. Supp. 975, (D.N.J. 1994) .............................. 15

United States v. Bishop,
   264 F.3d 535 (5th Cir. 2001) .................... 8, 11, 17, 18

United States v. Boesen,
   541 F.3d 838 (8th Cir. 2008) ................................. 4

United States v. Borders,
   829 F.3d 558 (8th Cir. 2016) .................... 8, 10, 25

United States v. Casamento,
   887 F.2d 1141 (2d Cir. 1989) .............................. 4, 19

United States v. Duncan,
919 F.2d 981 (5th Cir. 1990) ................................ 4, 9

United States v. Evans,
   10 F.2d 790 (11th Cir. 1990) ................................ 15

United States v. Gardner,
   611 F.2d 770 (9th Cir. 1980) ................................. 6

ii

1

**TABLE OF AUTHORITIES (CONTINUED)**

2      <u>DESCRIPTION</u>                                                    <u>PAGE</u>

3

4      United States v. Goldberg,
       401 F.2d 644 (2d Cir. 1968) .............................. 10, 15, 25

5
       United States v. Gonzalez,
6      658 F. App'x 867 (9th Cir. 2016) ............................ 23, 29

7      United States v. Hendrix,
       549 F.2d 1225 (9th Cir. 1977) ................................... 2

8
       United States v. Ho,
9      984 F.3d 191 (2d Cir. 2020) .......................... 4, 15, 17, 19

10
       United States v. Irvin,
11     682 F.3d 1254 (10th Cir. 2012) .................................. 2

12     United States v. Johnson,
       54 F.3d 1150 (4th Cir. 1995) ................................... 19

13
       United States v. Lemire,
14     720 F.2d 1327 (D.C. Cir. 1983) ................................. 11

15
       United States v. Milkiewicz,
16     470 F.3d 390 (1st Cir. 2006) .................................... 7

17     United States v. Nordby,
18     225 F.3d 1053 (9th Cir. 2000) ................................. 2, 6

19     United States v. Osum,
       943 F.2d 1394 (5th Cir. 1991) .................................. 10

20
       United States v. Pinto,
21     850 F.2d 927 (2d Cir. 1988) .................................... 15

22     United States v. Possick,
23     849 F.2d 332 (8th Cir. 1988) ............................... 12, 15

24     United States v. Rizk,
       660 F.3d 1125 (9th Cir. 2011) ......................... 4, 6, 9, 27

25
       United States v. Scales,
26     594 F.2d 558 (6th Cir. 1979) .................................... 7

27     United States v. Spires,
28     628 F.3d 1049 (8th Cir. 2011) ............................... 5, 17

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Stephens,
  779 F.2d 232 (5th Cir. 1985) .................................... 29

United States v. Stiger,
  413 F.3d 1185 (10th Cir. 2005) .................................. 27

United States v. Wells,
  No. 13CR-00008, 2019 WL 4196052 (D. Alaska. September 4, 2019) ... 21

United States v. White,
  890 F.2d 1012 (8th Cir. 1989) .................................... 2

United States v. Williams,
  952 F.2d 1504 (6th Cir. 1991) .................................... 8

United States v. Wood,
  943 F.2d 1048 (9th Cir. 1991) ................................ 1, 21

Weeks v. Angelone,
  528 U.S. 225 (2000) .............................................. 5

Zepeda v. U.S. Immigration and Naturalization Service,
  753 F.2d 719 (9th Cir. 1985) ..................................... 2

**Federal Rules**

Federal Rules of Evidence 611(a)..............................passim

Federal Rules of Evidence 1006................................passim

**Other Authorities**

31 Charles A. Wright & Victor J. Gold, Fed. Prac. & Proc. Evid.
  § 8044 (2d ed.) ................................................ 11

1  **I.    OVERVIEW: DEFENDANT'S OBJECTIONS PURSUANT TO RULES 1006/611(A)**

2       **A.    Defense Introduction and Overview of Rules 1006/611(a)**

3       The defense objects to the admission of these exhibits under

4  Federal Rules of Evidence 1006 and 611(a). Putting aside his

5  objections to some of these exhibits identified in the motions *in*

6  *limine*,[1] Defendant has no objection to the government's use of many

7  of these exhibits as demonstratives. Indeed, they are most akin to

8  the PowerPoint slides that the government will use in its closing

9  (which are not evidence). They are simply designed to advance the

10 government's argument and the government is impermissibly seeking to

11 admit them as evidence in order to provide them to the jury during

12 deliberation. But they are not admissible evidence and defendant

13 objects to their being admitted as evidence. They do not summarize

14 voluminous records, as the government also seeks to introduce the

15 vast majority of the underlying records as well, most of which are

16 not voluminous.

17      Rule 1006 allows a party to introduce a summary or a chart "to

18 prove the content of voluminous writings, recordings, or photographs

19 that cannot be conveniently examined in court." The government's

20 argumentative summaries and charts do not comport with the letter or

21 spirit of the Rule. *See*, *e.g.*, *United States v. Wood*, 943 F.2d 1048,

22 1053 (9th Cir. 1991) ("[C]harts or summaries of testimony or

23 documents already admitted into evidence are merely pedagogical

24 devices, and are not evidence themselves. … [S]uch pedagogical

25

26 _____

27      [1] Government Exhibits 921-924 relate to Mr. Chan's Motion in
   Limine No. 1, while Government Exhibits 906 and 908 relate to Mr.
   Chan's Motion in Limine No. 2. The defense understands that the Court
28 has denied the motions, and will overrule the objections set forth in
   the motions, but maintains the objections here for the record.

devices should be used only as a testimonial aid, and should not be admitted into evidence otherwise be used by the jury during deliberations."). The summaries and charts proffered by the government are inadmissible demonstratives and should not be admitted into evidence.

The defense also objects to the government's argument that the summaries are admissible under Federal Rule of 611(a). As the government notes, the Court has discretion as to whether it will admit the summaries under the Rule, but that does not mean that the Court *should* exercise that discretion and admit the summaries here.[2] As the Ninth Circuit has noted, summaries should only be admitted pursuant to Rule 611(a) in "exceptional cases," and remain subject to Rule 403 analysis. *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993), *as amended* (Dec. 13, 1993), *and overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). Moreover, summaries containing inadmissible evidence are not admissible under Rule 611(a). *United States v. Irvin*, 682 F.3d 1254, 1263 (10th Cir. 2012) (admission of summary charts containing inadmissible hearsay constituted error).

---

[2] The few cases addressing the admission of summary charts under Rule 611(a) – a rule which says nothing about summary charts – analyze the issue under an abuse-of-discretion analysis. As the Court is aware, when an appellate court affirms a trial court's ruling under this standard, it does not mean that "the approach taken [by the district court] to the problem was ideal," *United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977), or even that it was "the best course," *United States v. White*, 890 F.2d 1012, 1014 (8th Cir. 1989); see also *Zepeda v. U.S. Immigration and Naturalization Service*, 753 F.2d 719, 725 (9th Cir. 1985) ("[W]e will not reverse the district court simply because we would have reached a different result."). The Court has the discretion to exclude the charts, and should do so here.

There is nothing so exceptional about this case that the Court should permit summaries that essentially constitute the government's closing argument to be admitted as evidence and thus submitted to the jury during its deliberations. Although the case may be a complicated one, it is complicated only because the government has chosen to make it so. The government has chosen to charge the case in the complicated way it has. The government has chosen to present hundreds of exhibits (mostly through a summary witness who is scheduled to testify for multiple days), many of which have nothing to do with any actions taken by Mr. Chan. To the extent that the government feels the need to break down its case in bite-sized morsels for the jury to digest, it is doing so because it has chosen to charge and present a sprawling, unwieldy case. But it should not be permitted to simultaneously present a sprawling case and then allow the jury to consider the case during its deliberations through the aid of one-sided and argumentative charts created by the government. It elevates the government's arguments – which are not evidence – to the status of actual evidence. It will encourage the jury to short-circuit the deliberative process by relying on summaries, rather than the actual evidence adduced at trial (including direct testimony, cross-examination, and defense exhibits). If the government wishes to display these charts in closing argument, the defense has no objection, as the charts are argumentative. But the *admission* of such argument as evidence is inherently unfair and should not be allowed by the Court.

**B. Government's Introduction and Overview of Rules 1006/611(a)**

The government's summary exhibits are admissible under Federal Rule of Evidence 1006, which provides that the proponent of evidence

3

1  "may use a summary, chart, or calculation to prove the content of

2  voluminous writings, recordings, or photographs that cannot be

3  conveniently examined in court."  Fed. R. Evid. 1006.  "The purpose

4  of [Rule 1006] is to allow the use of summaries <u>when the documents</u>

5  <u>are unmanageable *or* when the summaries would be useful to the judge</u>

6  <u>and jury</u>."  <u>United States v. Rizk</u>, 660 F.3d 1125, 1130 (9th Cir.

7  2011) (cleaned up and emphases added).  Thus, the Court must consider

8  whether the summary evidence "assist[s] the jury in understanding the

9  testimony already introduced" and "fairly summarizes" trial evidence.

10  <u>United States v. Boesen</u>, 541 F.3d 838, 848 (8th Cir. 2008).

11    With these principles in mind, courts long have "approved the

12  use of charts <u>in complex trials</u>, and ha[ve] allowed the jury to have

13  the charts in the jury room during its deliberations," so long as the

14  judge properly instructs the jury how to treat such summaries.

15  <u>United States v. Casamento</u>, 887 F.2d 1141, 1151 (2d Cir. 1989)

16  (emphasis added) (rejecting argument that "despite the judge's

17  instructions, the vast amount of evidence presented to the jury made

18  it inevitable that the jury would rely uncritically on the

19  government's summary charts," and noting that courts generally

20  "presume that juries follow the instructions given them by the trial

21  judge"); <u>United States v. Duncan</u>, 919 F.2d 981, 988 (5th Cir. 1990)

22  (courts "cannot rationally expect an average jury to compile

23  summaries and to create sophisticated flow charts to reveal patterns

24  that provide important inferences about the defendants' guilt").

25    The government has adopted a measured approach to its summary

26  exhibits and, to that end, has agreed to use several summary exhibits

27  for demonstrative purposes only.  But the remaining summary exhibits

28  involve underlying evidence that is admissible, objective, and

voluminous, and the summary exhibits will be useful to the jury in this particularly complex case.  Rizk, 660 F.3d at 1130; United States v. Ho, 984 F.3d 191, 209-10 (2d Cir. 2020) (no abuse of discretion in admitting charts summarizing hundreds of pages in complex fraud trial, where jury was properly advised of their duty to determine the accuracy of the underlying evidence).

The evidence underlying the summary exhibits not only is admissible (a fact defendant does not appear to dispute) but is sufficiently voluminous to satisfy Rule 1006.  Most of the exhibits summarize evidence constituting hundreds or even thousands of pages.  Contrary to defendant's argument, that the government has selected certain evidence and events to present in the summary exhibits does not render them inherently argumentative or inadmissible because "summaries may include assumptions and conclusions so long as they are based upon evidence in the record."  United States v. Spires, 628 F.3d 1049, 1053 (8th Cir. 2011) (cleaned up).  In this way, summaries are no different than any other evidence in a case: the government is permitted to present to the jury the evidence that best advances its theories, and the defense is then permitted to cross-examine about any evidence the government omitted or failed to highlight.  Defense counsel concedes they intend to do just that here.  Finally, although defendant vaguely concludes that the summaries will "encourage the jury to short-circuit the deliberative process by relying on summaries," the jury will be instructed how to properly treat the summary exhibits, including that the summaries are only as good as the underlying evidence.  See Ninth Cir. Model Criminal Jury Instructions, No. 3.17 (2022 ed.); Weeks v. Angelone, 528 U.S. 225,

234 (2000) ("[A] jury is presumed to follow [a court's] instructions.").

Lastly, although defendant argues this case is not extraordinary, it is.  This case has been designated a complex case for a reason: it involves a lengthy RICO conspiracy with various sub-schemes of both overlapping and different players; hundreds of exhibits, many of which themselves involve complex subject-matters, are lengthy, or are cumbersome to peruse; and numerous charges and theories of liability, including two kinds of bribery charges, each with three theories of liability.  Given the obvious complexity of this case, presenting the numerous documents underlying the summary exhibits one by one not only would be "unmanageable" but the summaries the government prepared most certainly "would be useful to the judge and jury."  Rizk, 660 F.3d at 1130.  For these reasons, and those discussed more fully below, the Court should admit these exhibits under Rule 1006.

Alternatively, the summary exhibits are admissible under Federal Rule of Evidence 611(a), which permits trial courts to "exercise reasonable control over the mode . . . of . . . presenting evidence so as to (1) make those procedures effective for determining the truth, [and] (2) avoid wasting time."  Fed. R. Evid. 611(a).  Relying on Rule 611(a), courts have admitted summaries where, as here, they "contribute[] to the clarity of the presentation to the jury, avoid[] needless consumption of time and [are] a reasonable method of presenting the evidence."  United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980) (summary chart admissible in tax evasion case under Rule 611(a)); United States v. Baker, 10 F.3d 1374, 1412 (9th Cir. 1993), as amended (Dec. 13, 1993), and overruled on other ground

by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000) (in large drug conspiracy case, holding admission of summary testimony and charts detailing valuation of drug transactions "was a valid exercise of the district court's discretion under Fed. R. Evid. 611(a)," where the court properly instructed jury on the limitations of such evidence and the chart preparer was extensively cross-examined); United States v. Scales, 594 F.2d 558, 563–64 (6th Cir. 1979) (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence already admitted" are authorized by Rule 611(a)); United States v. Milkiewicz, 470 F.3d 390, 396-98 (1st Cir. 2006) (noting that summaries are admissible under Rule 611(a) where they are "sufficiently accurate and reliable" and finding no abuse of discretion in admitting summary charts under Rule 611(a) depicting the allegedly fraudulent sales transactions and showing discrepancies in defendant's income tax reporting, where defendant had ample opportunity for cross-examination and court properly instructed jury how to treat the summaries).  The Court can (and should) exercise its discretion under Rule 611(a) because the exhibits are accurate and reliable and, of particular relevance, would clarify the presentation of complex scheme evidence and help avoid the needless consumption of time.  Thus, to the extent the Court declines to admit particular summary exhibits under Rule 1006, it should exercise its discretion to admit them under Rule 611(a).

II.  **SPECIFIC ARGUMENTS RELATING TO TIMELINES**

   **[Government Exhibits 908 (Carmel 2018 Timeline); 910 (Money Laundering Timeline – Huizar Family); 924, 925, 926 (SZNW Timelines); 930, 931, 932A (Hazens Timelines); 940, 940A, 940B (Hazens-Jacinto**

Timelines); 942, 942A, 942B (ADC Timelines); and 943 (FBI Overt Timeline)]

    **A.   Defense Objections to Timelines**

    These summaries consist of timelines of a number of facets of the government's investigation of this matter (including areas which have nothing to do with any actions on Mr. Chan's part, such as a seven-page timeline related to Jose Huizar's money laundering), ranging from one to eight pages. The number of events on each timeline is not so voluminous as to qualify for admission under FRE 1006. Moreover, these summaries present a false narrative of the progression of the case, and omit many key facts (such as texts and meetings) occurring these time periods, which will explored during the defense cross-examination of the government's witnesses. As such, they amplify the purported strengths of the government's case, as if there were no defense case to counter the government's narrative. Finally, these exhibits are argumentative – one even has "Finder's Fee" written on every page (see Exh. 942) – and the Court should exercise its discretion to exclude them under FRE 1006 and 611(a).

    **B.   Government's Response to Defense Objections to Timelines**

    Timelines and event summaries are commonly admitted as proper summaries helpful to the jury, particularly *in complex cases* like this, because they make the trial more efficient and help clarify evidence that otherwise would be cumbersome.  See, e.g., United States v. Williams, 952 F.2d 1504, 1519 (6th Cir. 1991) (affirming Rule 1006 admission of chart summarizing a "chronology of the significant events" that occurred on three days of significance in government-corruption prosecution, including telephone, limousine, and surveillance records and excerpts from recorded telephone

conversations); <u>United States v. Bishop</u>, 264 F.3d 535, 546 (5th Cir. 2001) (no abuse of discretion in admitting government's timeline of events where underlying "evidence was already before the jury" and jury was properly instructed on summary evidence); <u>United States v. Borders</u>, 829 F.3d 558, 567 (8th Cir. 2016) (holding no error in admitting government's summary timeline of the conspiracy under Rule 1006, holding "[s]ummary evidence is proper 'when it assists the jury in understanding the testimony already introduced and fairly summarizes trial evidence'") (citation omitted).  Where, as here, a key feature of the Timelines is to show recurring patterns that might not otherwise be apparent from the underlying evidence, courts have held admission under Rule 1006 is appropriate because "[w]e cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt."  <u>Duncan</u>, 919 F.2d at 988.

      1.   <u>Admissibility of Underlying Records</u>

As a threshold matter, defendant does not appear to challenge the fact that the Timelines are based upon admissible evidence that was produced to defendant well in advance of trial.[3]  <u>See</u> <u>Amarel v. Connell</u>, 102 F.3d 1494, 1516 (9th Cir. 1996) (proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection); <u>Rizk</u>, 660 F.3d at 1130 (materials underlying summary charts "must be admissible, but

---

[3] Indeed, defendant does not appear to challenge the admissibility of the underlying evidence with respect to *any* of the three categories of summary exhibits.

1   need not themselves be admitted into evidence") (citation omitted).
2   Nor could he.

3       Each of the challenged Timelines—depicting hundreds of events--
4   are based on admissible evidence in the form of text messages,
5   emails, public records, bank and financial records, business records,
6   casino records, flight records, phone/toll records, City calendars,
7   photographs, and defendant's statements in various communications,
8   Radar Screens, surreptitious recordings, and wiretap calls.
9   Importantly, defendant does not object to the underlying exhibits
10  supporting the Timelines--the vast majority of which are separately
11  on the government's exhibit list--and to the extent defendant did
12  object based on his MILs, those objections have been overruled.

13      A small handful of events are based on admissible testimony.
14  Specifically, **Exhibit 910** includes dates on which Andy Wang provided
15  cash payments to Huizar (about which Wang will testify), and **Exhibits**
16  **926 and 943** depict objective facts of FBI-related activity, such as
17  an FBI visit to Las Vegas and the dates of its interviews with
18  various individuals (about which FBI Supervisory Special Agent
19  ("SSA") Andrew Civetti will testify).  Because this limited testimony
20  is in and of itself properly admissible--and helpful to "assist[] the
21  jury in understanding the testimony" in context with other admissible
22  evidence--there is nothing improper about the inclusion of events
23  based on such limited testimony.  See Borders, 829 F.3d at 567; see
24  also United States v. Goldberg, 401 F.2d 644, 647-48 (2d Cir. 1968)
25  (affirming trial court's admission of charts that were constructed
26  "from the testimony of the government's witnesses and from ...
27  voluminous business records").

28

Indeed, defendant effectively concedes the underlying records are admissible when he argues the summary exhibits are inadmissible because "the vast majority of the underlying records" will also be admitted into evidence.  While defendant contends this fact should be weighed *against* the admissibility of the summaries, the fact that the jury will receive some or all of the underlying evidence does not render the Timelines inadmissible where the materials cannot be conveniently examined by the jury.  See United States v. Anekwu, 695 F.3d 967, 981–82 (9th Cir. 2012) (no abuse of discretion in admitting both a chart summarizing bank records and the underlying bank records, reasoning they served different purposes); United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991) (that reports regarding three bus accidents were already in evidence did not mean that in-court examination of that evidence would have been convenient under Rule 1006, so as to preclude admission of summary testimony synthesizing documentary information).  Nor does "[t]he fact that the underlying documents are already in evidence . . . mean that they can[not] be 'conveniently examined in court.'"  United States v. Lemire, 720 F.2d 1327, 1347 (D.C. Cir. 1983).  Indeed, that the vast majority of the underlying evidence will actually be admitted satisfies (not undermines) the threshold requirement that the summary be based on admissible evidence made available in advance to the defense.  See Bishop, 264 F.3d at 546 ("Summary charts in particular are admissible when (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is

available for cross-examination, and (4) the jury is properly instructed concerning use of the charts." (emphasis added)).

>    2.   The Timelines Are Based Upon Voluminous Underlying
>         Records

Defendant next argues that the Timelines, which range from "one to eight pages," do not involve events so voluminous as to qualify for admission under Rule 1006.  (See supra page 8.)  But "Rule 1006 does not provide a precise test for determining when source materials may be considered voluminous."  31 Charles A. Wright & Victor J. Gold, Fed. Prac. & Proc. Evid. § 8044 (2d ed.).  "Instead, district courts are advised to carefully weigh the volume and complexity of the materials.  These two factors have an inversely proportionate relationship: as either the volume or complexity increases, relatively less is required of the other factor."  United States v. Appolon, 695 F.3d 44, 61 (1st Cir. 2012) (citing id.); United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988) (Rule 1006 does not require "that it be literally impossible to examine all the underlying records [before a summary chart may be utilized], but only that in-court examination would be an inconvenience.").

The Timelines are based on records that are sufficiently voluminous--oftentimes hundreds or even thousands of pages of documents--including toll and phone records, business records, public records, calendars, text messages, emails, and bank and other financial records.  Further, the reality is that the relevant "timeline" is a single timeline of the entire RICO conspiracy, depicted through its various sub-schemes.  The government could have prepared a single timeline combining the hundreds of events collectively described in the 15 challenged Timelines across six

years--and defendant could not have credibly challenged the "voluminous" nature of such an exhibit.  At the same time, the reason the government did not create a single RICO conspiracy timeline is self-evident: such a document would be altogether unwieldy, confusing, and unhelpful to the jury.  Accordingly, the government has elected to break up the pertinent events in a logical manner--based on sub-scheme or even by year or several years within a particular sub-scheme, depending on the complexity of certain sub-schemes--to present a more readily digestible timeline for the ease and convenience of the jury's review and understanding.  Nothing about that fact, or the fact that the timelines were marked as separate exhibits as opposed to combined to form a single 54-page exhibit, detracts from the voluminous nature of the hundreds of events that explain the sprawling RICO conspiracy of which defendant was a key participant.

Indeed, the underlying records within the sub-schemes are sufficiently voluminous:

- **Carmel Partners**: **Exhibit 908** relates to the Carmel Partners sub-scheme.  It alone depicts nearly 40 unique entries.  Each of those entries are based on at least one or more underlying documents that themselves span a few pages and up to hundreds of pages each (like Huizar's City calendars).  In other words, the materials underlying these timelines easily encompass many hundreds, if not thousands, of pages, and the sequencing of the events provides information that would not otherwise be apparent from each discrete document on its own.

- **Huizar Money Flow**: **Exhibit 910** relates to Huizar's Las Vegas trips and the financial activities of Huizar's family members

13

and George Esparza.  It depicts over 64 unique events based on voluminous bank and financial records, casino records, flights records, text messages, and photographs.  As explained above, each unique event in the Timelines refers to at least one and up to four underlying records; this is the case for all of the entries described below.

- **SZNW**: Three of the timelines relate to the SZNW sub-scheme, broken up by a year or several years: **Exhibits 924** (2013-2014), **925** (2016), and **926** (2017-2018).  **Exhibits 924, 925,** and **926** collectively depict over 120 unique entries.

- **Hazens**: The following six timelines relate to the Hazens sub-scheme: Exhibits **930** (2014-2015), **931** (2017-2018), **932A** (2016), and **940, 940A, and 940B** (Hazens-Jacinto), and they collectively depict around 178 entries.  The timeline for the 2017-2018 period alone **(Ex. 931)** has 84 unique events.  The most succinct of these exhibits--**Exhibit 940**--contains 11 events from April to May 2018 that relate to defendant's efforts to obtain Joel Jacinto's assistance on the Hazens project while simultaneously facilitating indirect benefits to Joel Jacinto through payments to his wife via Andy Wang.[4] The government could have included these same 11 events in **Exhibit 931** as part of the 2017 to 2018 timeline, but such an approach would have added a sub-sub-scheme to an already extensive and complex timeline and would defeat the purpose of a summary chart: to be useful to the jury and fairly summarize the pertinent evidence.

---

[4] **Exhibits 940A** and **940B** are further breakdowns of the same events in **Exhibit 940**, which the government prepared for use with the appropriate foundational witness.  Specifically, **Exhibit 940A** consists of the events to which George Chiang is the percipient witness and **Exhibit 940B** consists of the events to which Andy Wang is the percipient witness.

- **Arts District Center**: Exhibits **942, 942A,** and **942B** relate to defendant's efforts from April to November 2018 for the Arts District Center ("ADC") project, which occurred at the same time as defendant's efforts to pay Shawn Kuk a "finder's fee" through Andy Wang. Even for that eight-month period, there are approximately 47 events depicted on **Exhibit 942.**[5]

- **FBI Overt Investigation**: Exhibit **943** shows 11 events between September and November 2018. While that is a fewer number of events than some of the other Timelines, **Exhibit 943** is part of the broader RICO conspiracy investigation timeline and could also fairly be considered as part of the SZNW sub-scheme (based on defendant's lies to the FBI concealing his role in the settlement agreement and Chairman Huang's flight) or part of the ADC sub-scheme (based on his witness tampering of Andy Wang).

The Timelines are based upon sufficiently voluminous evidence to satisfy Rule 1006. See Ho, 984 F.3d at 209–10 (hundreds of pages sufficient); United States v. Evans, 910 F.2d 790, 800 (11th Cir. 1990) (no abuse of discretion in admitting summary chart that "brought together a total of sixty $100 per month payments that [the defendant] received over a five year period"); Possick, 849 F.2d at 339. Given the complexity of the trial and the number of sub-schemes, participants, and complex principles, as Rule 1006 recognizes, "it often takes a great deal of court time to introduce a legion of documents to establish a single point." United States v.

---

[5] Like with the **Exhibit 940** series, the government broke down the ADC-related events based on the foundational witness; specifically, **Exhibit 942A** are events with Shawn Kuk as the percipient witness and **Exhibit 942B** are events with Andy Wang as the percipient witness.

Bertoli, 854 F. Supp. 975, 1049-50, (D.N.J. 1994), vacated in part on other grounds, 40 F.3d 1384 (3d Cir. 1994).  Here, to avoid a "grueling waste of time to examine all of the underlying evidence in court," which the government would be forced to do absent the Timelines, the Court can properly admit (and indeed should admit) the timelines as summaries under Rule 1006.  Id.; see also United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988) (no abuse of discretion in admitting summary charts identifying phone participants, conspirators' numbers and addresses, and the locations from which calls were placed or received); United States v. Goldberg, 401 F.2d 644, 647-48 (2d Cir. 1968) (affirming trial court's admission of charts that were constructed "from the testimony of the government's witnesses and from ... voluminous business records"); Ho, 984 F.3d at 209-10 (affirming Rule 1006 admission of timelines of hundreds of pages of certain text messages, emails, and other documents in complex trial).

To put a finer point on it: the government intends to use the Timelines just as it did during the first trial against defendant, namely, to present its case more efficiently by obviating the need to display all or most of the exhibits underlying the entries on Timelines.  Previously, after laying a foundation regarding how the Timelines work, the government displayed only selected documents when reviewing the Timelines with the appropriate witnesses, opting not to display routine but cumbersome documents like calendars and records of public hearings.  If the Courts limits the government's use of the Timelines to demonstrative purposes only, the government will need to go over the entries more thoroughly and display all or nearly all of the documents underlying the Timelines during witness examinations

1  and then again in closing argument, which would be inconvenient to

2  the jury and result in an unnecessary expenditure of time.

3          3.   Presentation of Select Evidence

4          Finally, defendant argues that the Timelines are inadmissible

5  because they "present a false narrative of the progression of the

6  case, and omit many key facts (such as texts and meetings) occurring

7  [at] these time periods, which will [be] explored during the defense

8  cross-examination of the government's witnesses."  (See supra page

9  8.)  Defendant also offhandedly remarks that **Exhibit 910** (Huizar

10 money flow timeline) relates to "areas which have nothing to do with

11 any actions on Mr. Chan's part" (see supra pages 7-8), but this

12 argument rests on the same meritless arguments advanced by defendant

13 in his MILs that the Court has rejected.

14         As a preliminary matter, defendant undercuts his own claim that

15 the Timelines are "false narrative[s]" when he states he does not

16 object to these exhibits as demonstratives that can be presented to

17 the jury and used during witness examination.  More importantly,

18 however, the fact that the government has selected certain evidence

19 and events to present in the summary exhibits does not render them

20 inherently argumentative or inadmissible.  "[S]ummaries may include

21 assumptions and conclusions so long as they are based upon evidence

22 in the record."  Spires, 628 F.3d at 1053 (cleaned up).  That is

23 plainly the case here because (as defendant points out) the "vast

24 majority" of the underlying evidence will be admitted.  Moreover,

25 "[a] summary may include only evidence favoring one party, so long as

26 the witness does not represent to the jury that he is summarizing all

27 the evidence in the case."  Bishop, 264 F.3d at 547; Ho, 984 F.3d at

28 209-10 (rejecting defendant's argument that the while the

                                17

government's "timelines of certain text messages, emails, and other documents admitted into evidence," were accurate, they were inadmissible under Rule 1006 because they were "created for the purpose of generating a narrative supporting the prosecution's theory of the case," and the underlying materials were "easily . . . examined by the jury") (ellipses in original).

As noted above, summary charts are no different than other evidence that the government is permitted to select in order to present its best evidence to the jury.  Of course, the defense will have ample opportunity to cross-examine the witnesses about any relevant evidence the government omitted or failed to highlight on the Timelines and to admit evidence through the government's witnesses and defendant's own witnesses.  Courts have reasoned that the ability to cross examine the chart's preparer ensures fairness, and here, the charts' preparer, SSA Civetti, will be available for cross-examination, including about the methods he used in compiling the charts.  See Anekwu, 695 F.3d 982 (ability to cross examine summary chart's preparer is positive factor in affirming admission of summaries); Bishop, 264 F.3d at 546.

Defendant also summarily complains that the Timelines are "argumentative," but offers only one specific example: the fact that **Exhibit 942** "has 'Finder's Fee' written on every page."[6]  There is nothing argumentative about noting "Finder's Fee" on **Exhibit 942**. That term is fairly based on admissible evidence to which defendant does not object.  Specifically, "Finder's Fee" is a direct quote from

---

[6] Despite the parties' numerous meet-and-confers regarding the government's exhibits, defendant never made this claim regarding **Exhibit 942,** and the government learned of this specific objection for the first time when defendant provided his briefing above.

18

defendant on June 14, 2018 when he announced to Andy Wang that defendant had enlisted Shawn Kuk to "help" and that Wang needed to simply pay Kuk a "little finder's fee."  (See Ex. 840B.)  The subsequent events depicted on **Exhibit 942** on the bottom half of the timeline (below the bar) relate to communications, meetings, and Radar Screens about Kuk's finder's fee, as dictated by defendant. The events on the top half of the timeline (above the bar), by contrast, depict ADC-project-related activity.  In any event, should the Court conclude that including the term "Finder's Fee" on **Exhibit 942** is argumentative, that language could be removed to resolve defendant's objection.  But the Court should reject defendant's otherwise boilerplate claim that all the Timelines are "argumentative."

Finally, although defendant vaguely concludes that the summaries will "encourage the jury to short-circuit the deliberative process by relying on summaries," the Court will properly instruct the jury in accordance with Ninth Circuit precedent on how to treat the summary exhibits, including that they are only as good as the underlying evidence, which instruction the jury is presumed to follow.  See Ninth Cir. Model Criminal Jury Instructions, No. 3.17 (2022 ed.) (instructing jury that charts and summaries admitted into evidence are "only as good as the underlying supporting material" and the jury "should, therefore, give them only such weight as you think the underlying material deserves"); Casamento, 887 F.2d at 1151; Ho, 984 F.3d at 210 (noting as positive factor in affirming admission of summary timelines that district court properly instructed the jury "to first determine that [the timelines] accurately reflected the evidence on which they were based").

19

1    The Court should overrule defendant's objections and admit the

2    Timelines.

3          4.    Rule 611(a) Timelines

4    Alternatively, as explained above in Section 1.B supra, the

5    Timelines are admissible under Rule 611(a) because they are accurate

6    and reliable and would greatly clarify the presentation of evidence

7    to the jury and help avoid needless consumption of time in this

8    particularly complex case.  Further, the Court will adopt "safeguards

9    to minimize" any "possible prejudice to a defendant by (1) ensuring

10   that the individual who prepared the chart--as well as the evidence

11   upon which the preparer relied--was available for cross-examination

12   by the defendant to test the competence of the evidence as presented

13   in the summary chart, and, (2) ensuring that . . . the jury [is

14   properly instructed] concerning the manner in which they were to

15   consider the charts."  United States v. Johnson, 54 F.3d 1150, 1159

16   (4th Cir. 1995) (affirming admission of organizational chart

17   diagramming drug transactions among members of drug conspiracy under

18   Rule 611(a) in seven-day drug trial, reasoning that "[i]n light of

19   the complex nature of the extended drug conspiracy and the large

20   number of witnesses presented, we conclude that the summary chart

21   likely helped the jury in sifting through the testimony in the case")

22   (citations omitted).  For these reasons, the Court should admit the

23   Timelines under Rule 1006, or alternatively, under Rule 611(a).

24   **C.  Defense Reply re: Objections to Timelines**

25   The Court should exercise its discretion and decline to admit

26   the Timelines. Although the government complains that the defense

27   objections are "boilerplate" and untethered to the summaries

28   themselves, the defense objection is a simple one: the use of

timelines here will encourage the jury to rely on purported "evidence" created by the offering party for this litigation, rather than relying on the actual evidence gathered during the course of the government's investigation. To be clear, the government has chosen to charge a sprawling racketeering conspiracy case. The government has chosen to introduce one thousand exhibits into evidence. To the extent that this case is unwieldy, it is because the government has made it so. At the same time, it is unfair to allow the government to seek simultaneously to uncomplicate its own case through the introduction of otherwise inadmissible charts designed to lessen the jury's work in determining whether to convict Mr. Chan without having to review the actual admissible evidence. The Court has ample discretion to exclude these timelines from the jury's consideration, and should do so here.

**III. Specific Arguments Relating to the Calculations Summaries**

**[Government Exhibits 906 (All Benefits - Huizar); Ex. 909 (Money Laundering Table – Huizar Family); Ex. 911 (Benefits from Wang to Huizar - Details); Ex. 912 (Benefits Wang to Huizar - Totals); Exs. 921 & 922 (Casino Trips – Chips & Group Benefits; Group Benefits Only); 923 (Casino Trips - Excel Example); Ex. 941 (Chan-Jacinto Payments)]**

**A. Defense Objections to Calculations Summaries**

These exhibits consist of single-page charts of benefits received by members of the alleged conspiracy. None of these charts reference any underlying exhibits. None of the charts summarize voluminous evidence. As such, these are precisely the sort of "pedagogical devices" that should not be submitted to the jury during its deliberations. *Wood*, 943 F.2d at 1053; *see also United States v.*

*Wells*, No. 13CR-00008, 2019 WL 4196052, *5 (D. Alaska. September 4, 2019) (declining to admit video clips). The Court should exercise its discretion and exclude these exhibits under FRE 1006 and 611(a).

### B.   Government's Response to Objections to Calculations Summaries

The Calculation Summaries the government seeks to admit[7] constitute a classic--and consistently court-approved--use of Rule 1006 to summarize complex and voluminous financial information for the convenience of the jury.  Rule 1006 authorizes the use of "calculations" to prove the content of underlying evidence.  Fed. R. Evid. 1006.  The Calculations Summaries are admissible under Rule 1006 because they are accurate and reliable, summarize voluminous records (hundreds or thousands of pages of underlying documents), and help avoid needless consumption of time.

Defendant raises two conclusory objections to these exhibits without any individualized consideration or analysis of the actual Calculations Summaries or the information that underlies them.

First, defendant contends that "none of these charts reference any underlying exhibits."  (See supra page 21.)  Yet in virtually the same breath, defendant contests the admissibility of the summary charts more broadly because the government purportedly "seeks to introduce the vast majority of the underlying records as well."  (See supra page 1.)  Thus, defendant objects to the Calculations Summaries because they do not refer to underlying exhibits, but simultaneously

---

[7] The government has agreed to use for demonstrative purposes certain Calculations Summaries that it previously sought to admit, including **Exhibits 911, 912,** and **941.**  Defendant's counsel has stated they do not object to the government's use of these summaries for demonstrative purposes during witness testimony and in closing arguments.

1  argues they should not be admitted since the government also marks

2  and seeks to offer the underlying exhibits.

3      Putting aside the Catch-22 of defendant's argument, he is wrong

4  as a legal matter.  There is no requirement that the government mark

5  as exhibits the evidence synthesized in a summary (so long as that

6  evidence is admissible), much less that the government cite to those

7  exhibits in the actual summary.  Rather, per Rule 1006, the proponent

8  of the summary must only "make the originals or duplicates available

9  for examination or copying, or both, by other parties at a reasonable

10 time and place," and, if so ordered, "produce them in court."  Fed.

11 R. Evid. 1006.  The proponent complies with this requirement by

12 producing the underlying records in discovery--which is exactly what

13 the government did here.  See United States v. Aubrey, 800 F.3d 1115,

14 1130-31 (9th Cir. 2015) (government "made the documents [in bankers'

15 boxes] underlying the summary available to defendant" by "deliver[ing

16 them] to Aubrey in discovery"); see also United States v. Anieze-

17 Smith, 770 F. App'x 342, 345 (9th Cir. 2019) (summary charts

18 admissible where "underlying documents were made available to" the

19 defense); United States v. Gonzalez, 658 F. App'x 867, 870 (9th Cir.

20 2016) (telecommunications and TECS data summary charts admissible

21 where underlying evidence "provided . . . in discovery").  Defendant

22 has never questioned the sources of the data underlying the

23 Calculations Summaries nor questioned the accuracy or admissibility

24 of the underlying evidence.  His passing complaint here that specific

25 exhibits are not referenced in the charts is the first the government

26

27

28

23

has heard from the defense on this issue, but there is no requirement the summaries catalog exhibits in any event.[8]

Second, defendant summarily contends that "none of the charts summarize voluminous evidence." (See supra page 21.) Not so. Defendant undertakes no independent analysis of the Calculations Summaries that he challenges, all of which reflect calculations synthesized from voluminous records:

- **Ex. 909 (Money Laundering Table – Huizar Family):** This exhibit traces the money flow from the bank accounts of four separate individuals (Jose Huizar and his mother, brother, and wife) over a period of more than three and a half years. The summary exhibit reflects data identified from underlying bank account and credit card records comprising several hundred pages in the aggregate, and sequences relevant transactions from those records into one chart. Specifically, the summary traces (1) cash deposits into Jose Huizar's family members' bank accounts, and (2) payments out of those accounts to pay Huizar's debts (credit cards, lawyers, loan interest, taxes, a hotel). The summary also provides calculations, as Rule 1006 expressly contemplates, of the total amounts deposited and withdrawn from the relevant accounts, reflecting the scale of Huizar's money laundering activities through his family members. The summary exhibit will aid the jury in isolating the relevant information that pertains directly to Jose Huizar's money laundering activities from the several hundred pages of bank account and credit card records.

---

[8] Nonetheless, the government has listed sources of records and information listed at the bottom of **Exhibits 909, 921,** and **922,** and the information contained within **Exhibit 923** derives entirely from one source (Cosmopolitan business records).

24

- **Exs. 921 & 922 (Casino Trips – Chips & Group Benefits; Group Benefits Only):** **Exhibits 921** and **922** summarize the total value of benefits Wei Huang/SZNW provided to Huizar across 20 different Las Vegas trips from 2013 to 2017, including the group benefits that Huang/SZNW conferred to Huizar and others. The financial information underlying **Exhibits 921** and **922** was compiled from business records obtained from four separate hotels/casinos from 20 separate trips (with records obtained from two separate hotel/casinos during seven of those trips), comprising hundreds of pages of financial information in the aggregate. As noted below in the discussion of **Exhibit 923,** some of the records underlying the Calculations Summary themselves are difficult for a jury to peruse, like Excel spreadsheets that have numerous values and embedded mathematical computations. **Exhibits 921** and **922** are additionally based on other admissible evidence, like flight records. Notably, the government expects the specific information in **Exhibit 921** regarding casino chips that Huizar and George Esparza received during the Las Vegas trips will be elicited through Esparza's testimony at trial. However, this limited testimony is independently admissible and helpful to the jury and, as previously explained, there is nothing improper about the inclusion of events in summary exhibits based on such testimony.[9] See Borders, 829 F.3d at 567; Goldberg, 401 F.2d at 647-48. In sum, the underlying records are plainly voluminous, and the calculations synthesize information in these summary exhibits, which will aid the jury in reviewing this evidence.

---

[9] The government will not seek to offer **Exhibit 921** until after Esparza provides his anticipated testimony regarding the casino chips that he and Huizar received from Huang in Las Vegas.

- **Exhibit 923 (Casino Trips – Excel Example):** **Exhibit 923** is related to **Exhibits 921** and **922,** as it is an Excel spreadsheet that calculates all the line items for the group benefits for just <u>one</u> of the 20 Las Vegas trips described above (a stay at the Cosmopolitan from August 5-7, 2016).  This information has been compiled as its own summary chart as an example of the breakdown of costs (and benefits) from one of Huizar's Las Vegas trips with Huang and will be used in explaining the process employed to prepare **Exhibits 921** and **922.  Exhibit 923** has over 150 entries with mathematical computations, and each entry is based on underlying casino records, which themselves consist of multiple pages that are not readily organized into discrete categories for the jury's understanding of the evidence.

- **Ex. 906 (All Benefits - Huizar):** This exhibit summarizes the benefits Jose Huizar received through the RICO conspiracy from real estate developers.  Two entries in this chart alone--"Casino Chips" and "Group Benefits"--rest on the <u>same</u> voluminous underlying evidence and calculations described above regarding **Exhibits 921** and **922.**  That alone demonstrates that the evidence underlying **Exhibit 906** is voluminous.  But, of course, there are numerous additional entries, which required SSA Civetti to comb through Political Action Committee documents, consulting agreements and invoices and other business records, bank records, text messages, emails, phone notes, receipts, photographs, and more.  The jury simply would not be able to recreate these figures on its own and should not be expected to memorize them or conduct their own accounting during the trial.

As detailed above, the case law is replete with examples where summaries are admitted under Rule 1006 to distill business records,

phone records, and bank records.  This makes good sense because this type of concrete, objective information is capable of accurate presentation in chart or summary form.  The vast majority of information underlying the Calculations Summaries constitutes the very types of voluminous evidence courts have consistently found to be properly synthesized into summaries, charts, and calculations for the convenience of the jury.  To the extent certain limited information in the Calculations Summaries derives from witness testimony (e.g., Esparza's testimony about the casino chips), such testimonial information supplements the already-voluminous information summarized in the Calculations Summaries, which is limited and admissible in its own right.

Overall, the Calculations Summaries of voluminous evidence will help the jury to understand the scope of financial benefits relating to the RICO conspiracy and its various sub-schemes.  Certainly, the alternative is untenable: expecting the jury to comb through thousands of pages of bank records, watch videos depicting gambling chip exchanges, and review lengthy text message exchanges as presented by disparate witnesses in order to extract the relevant figures and then engage in mathematical computations to add up those figures.  Instead, the Calculations Summaries, which prove the content of voluminous records through mathematical calculations, will be helpful to the jury and avoid great inconvenience at trial.  See Rizk, 660 F.3d at 1130.  For these reasons, the Court should admit them under Rule 1006.  Alternatively, the Calculations Summaries are admissible under Rule 611(a).  See United States v. Stiger, 413 F.3d 1185, 1198 (10th Cir. 2005) abrogated in part on other grounds by Alleyne v. United States, 570 U.S. 99 (2013) (summary chart of total

drug amounts testified to at trial was "properly admitted [under Rule 611(a)]" in narcotics conspiracy trial "because it was undoubtedly helpful to the jury in this particularly complex case," the court gave appropriate limiting instructions, and the chart was based on admitted evidence).

### C. Defense Reply re: Objections to Calculations Summaries

The government has chosen to place in front of the jury thousands, if not tens of thousands, of pages of evidence (most of which will be admitted without objection by the defense), yet it complains that the jury's consideration of such evidence will be "untenable" if it cannot consider it through the lens of the summary charts created by the government for  this litigation. This is a problem of the government's creation, and the government should not be permitted to fix the problem by encouraging the jury to ignore the evidence that the government has itself proffered. Nor should the Court allow the jury to believe that the government's own argumentative charts are themselves evidence against Mr. Chan. The government may certainly – and undoubtedly will – use these charts in its closing argument. But these charts are themselves argument, plain and simple, and should not be submitted to the jury. The Court should exercise its discretion and decline to admit them.

### IV. Specific Arguments Relating to Visual Depiction of Voluminous Data

[Government Exhibit 927 (Godoy Funds Flow Chart)]

### A. Defense Objection to Exhibit 927

This exhibit, which depicts the flow of funds relating to the loan relating to the Huizar settlement, is a flow chart consisting of a single page. It does not summarize voluminous amounts of evidence.

It does not reference any exhibits. It is a demonstrative exhibit, pure and simple, and should be excluded under FRE 1006 and 611(a).

**B.   Government Response to Objection to Exhibit 927**

The Godoy Settlement Money Flow Chart is admissible under Rule 1006 or, in the alternative, Rule 611(a) because it is based upon voluminous bank and financial records and business records from multiple accounts and sources, including JPMorgan Chase, Wells Fargo, East West Bank, and business records provided by Guodi Sun.  The fact that this chart is a "single page" counsels <u>in favor</u> of its admission as a summary chart.  **Exhibit 927** summarizes pertinent, discrete financial transactions from otherwise dense financial records and depicts the type of tracing analysis of funds that is complex, particularly where, as here, defendant and Huang intentionally designed the transaction to evade detection.  Providing a visual depiction that traces the flow of funds through the various entities and accounts will be helpful for the jury to understand this complex information in a manner that is not readily discernable from the voluminous records themselves and difficult to follow based solely on witness testimony.  <u>See</u> <u>United States v. Stephens</u>, 779 F.2d 232 (5th Cir. 1985) (no abuse of discretion in admitting charts, including simple flow charts tracing use of the loan proceeds because evidence was indisputably complex, and examination of the underlying materials would have been inconvenient without the charts).  Nor, as explained above, does the law require that a summary chart "reference" the underlying evidence (already produced in discovery) on which it is based.  <u>Aubrey</u>, 800 F.3d at 1130-31; <u>Anieze-Smith</u>, 770 F. App'x at 345; <u>Gonzalez</u>, 658 F. App'x at 870.

**C.    Defense Reply re: Godoy Funds Flow Chart**

There is nothing so complex about the financial transaction at issue to merit a chart regarding the same to be considered by the jury during deliberations. The defense expects that the government will present information regarding the Huizar settlement loan from multiple sources – but primarily through its summary witness, Agent Civetti – and trusts that the jury will be able to fairly consider the government's allegations relating to the Huizar settlement based on this testimony and actual loan documents without needing to rely on the government's chart. As with the other summary exhibits, this chart will encourage the jury to short-circuit the deliberative process, and the Court should exercise its discretion and not permit it to be introduced into evidence.