E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-2 |
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS; ATTACHMENT A |
| v. | |
| RAYMOND SHE WAH CHAN, aka "She Wah Kwong," | Trial Date: March 12, 2024<br>Trial Time: 8:30 A.M.<br>Location:   Courtroom of the Hon. John F. Walter |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files the Government's Objections to Defendant's Proposed Voir Dire Questions. (See Dkt. No. 1306.)

The government's objections are based upon the attached position, Attachment A, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 1, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

     /s/
SUSAN S. HAR
CASSIE D. PALMER
BRIAN R. FAERSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**GOVERNMENT'S POSITION**

**I.   OVERVIEW**

During jury selection for defendant's first trial, the Court posed 19 questions to the venire, in addition to seven standard background questions.  (See Att. A.)

For his re-trial, defendant submits 34 proposed voir dire questions falling into four categories: (1) Familiarity with the Case; (2) Case-Specific Issues; (3) Presumption of Innocence/Burden of Proof; and (4) Criminal Justice System.  (Dkt. No. 1306.)  Because the government anticipates that almost all of these topics will be covered sufficiently by the Court based on the Court's prior voir dire questions, defendant's proposed questions are largely unnecessary.  Moreover, many of defendant's questions as currently framed are overbroad and/or omit the key relevant inquiry for jury selection, i.e., whether anything about X will make it difficult for the juror to be fair and impartial in this case.  The government also objects to certain questions posed by defendant that intrude upon or may be inconsistent with the instructions on the law that the Court will provide to the jury.

The government agrees with the defense that two topics, which are not currently covered by the Court's prior questions, should be probed: (1) opinions on confidential informants and cooperating witnesses; and (2) experience with, and opinions on, political contributions.  With respect to those two topics, however, the Court should use the government's proposed questions (Dkt. No. 1305), which elicit more helpful information in a neutral manner.

**II. TOPICS COVERED BY THE COURT'S PRIOR VOIR DIRE QUESTIONS**

Defendant's voir dire questions fall into four categories: (1) Familiarity with the Case (Question Nos. 1-2); (2) Case-Specific Issues (Question Nos. 3-17); (3) Presumption of Innocence/Burden of Proof (Question Nos. 18-24); and (4) Criminal Justice System (Question Nos. 25-34).

The government expects that these four topics will largely be covered by the voir dire questions that the Court posed to the venire during the last trial. (See Att. A.) For instance, the Court previously asked jurors about any experience with or opinions on the criminal justice system (id., Nos. 1-8); media exposure to the case (id., No. 15); experience with elected officials (id., Nos. 10, 11); experience with and opinions on real estate, including the purchase of real estate in the United States by Chinese companies (id., Nos. 13, 14, 16); and the ability to follow the Court's instructions (id., Nos. 17, 18). The Court also asked a catch-all question about each juror's ability to be fair and impartial in this case. (Id., No. 19.)

Because the Court's prior questions adequately cover the pertinent issues--and are framed in a manner consistent with one another--defendant's proposed questions on the same or similar topics are largely unnecessary. Additionally, many of defendant's questions are overly broad or do not help identify jurors who cannot be fair and impartial to both sides. For example, defendant proposes to ask jurors if they have ever lived in Los Angeles (No. 3), ever had any dealings with the City of Los Angeles (No. 5), or ever read or heard anything about PACs (No. 13). (Dkt. No. 1306.) Such questions are

2

likely to elicit affirmative answers from all or most of the jurors and to prompt discussion on minimally relevant topics or tangential anecdotes that will prolong the jury selection process without yielding fruitful information about the juror's ability to serve in a fair and impartial manner.

### III. IMPROPER QUESTIONS INCONSISTENT WITH THE COURT'S INSUTRCTIONS

Several of defendant's questions invite jurors to discuss topics on which the Court will instruct them. Those questions, as framed by defendant, are improper. In Question No. 31, for example, defendant proposes broadly asking all jurors: "How do you evaluate whether someone is telling the truth?" Because the Court will instruct jurors on how to assess witness credibility, it is improper to invite discussion that is likely to be at odds with the Court's instructions and accordingly risks injecting misinformation and confusion on these important topics before trial even begins. This question also is neither helpful nor necessary to assess the central matter at issue during jury selection--whether the jurors can follow the Court's instructions and be fair and impartial to both sides at trial.

In addition, while the government does not object to the general topics defendant attempts to address in the Presumption of Innocence/Burden of Proof section, several of those questions suffer from the same malady. In particular, several of these questions pose inappropriate hypotheticals, *e.g.*, Question No. 20a ("If the Court asked you to decide right now . . .") and No. 22 ("If you were charged with a crime, would you want to take the stand and proclaim your innocence?"). Others inject irrelevant considerations or invite value judgments on jurors' views on the burden of proof--as opposed

3

to asking questions to ensure whether jurors will follow the law on the burden of proof as instructed by the Court, e.g. Question No. 23 ("Do you think it is unfair to the government to require it to prove guilt beyond a reasonable doubt? If yes, please explain.").

During defendant's first trial, the Court sought to ensure all jurors would follow the Court's instructions through a central question probing whether any juror would have difficulty following and applying the law as given by the Court. (See Att. A, No. 17.) The government believes this question is sufficient to ensure all jurors will follow the Court's instructions, including with respect to the presumption of innocence and burden of proof. However, to the extent the Court is inclined to ask more specific questions regarding these topics, the government specifically objects to Question Nos. 18, 20a, 22, and 23 as currently framed.

**IV. ADDITIONAL TOPICS THAT WOULD BE HELPFUL TO JURY SELECTION**

**A. Confidential Informants and Cooperating Witnesses**

The use of confidential informants and cooperating witnesses is a topic that was not covered by the Court's prior questions, and the government generally agrees with defendant that such topic should be probed. However, the government objects to defendant's proposed Question No. 33, which asks "During the course of this trial, you will hear evidence from individuals who are testifying with the expectation of obtaining lenient treatment for their own criminal conduct and/or other benefits. How do you feel about that testimony?" (Dkt. No. 1306.) This question suggests that certain testifying witnesses expect lenient treatment. But each relevant witness will testify as to any hope they have with respect to

4

recommendations that may be made by the government, and voir dire should not be used to characterize that hope as an "expectation" or obliquely suggest that the government's potential future recommendation of a reduced sentence for cooperators who substantially assisted the government amounts to "lenient treatment."

The Court should adopt the government's proposed question Nos. 10-12 on this same topic. (Dkt. No. 1305 at 3-4.) Those questions seek to elicit information about the juror's opinions on cooperating witnesses and confidential informants based on specific facts relevant to this case (e.g., the use of wiretaps, covert recordings, offer of a beneficial plea agreement) and, importantly, how those opinions might impact the juror's ability to be fair and impartial.

### B. Political Contributions

The topic of political contributions is not covered by the Court's prior questions, and the government generally agrees with defendant that this topic should be probed.

With respect to a juror's experience with political contributions, the parties propose somewhat similar questions:

| Defense Question No. 12 | Government Question No. 16 |
|---|---|
| Have you ever donated to a political candidate or cause? | Have you, or has anyone close to you, ever contributed money to a political campaign? If yes (without providing any political affiliation or specific candidate), please state when. |

The government's Question No. 16 is better: it elicits more expansive information (to include contributions by someone close to

5

the juror) yet specific information (recency of the contribution) and importantly instructs jurors not to state their political affiliation.

With respect to a juror's <u>opinions or feelings</u> regarding political contributions, the government largely does not object to defendant's Question No. 11: "Do you have any strong negative feelings or opinions about political campaign financing in the United States?  If yes, please explain."  (Dkt. No. 1306 at 4.)  However, this question should be framed to probe whether the juror has any strong feelings or opinions -- negative <u>or positive</u> -- and whether such feelings or opinions would affect the juror's ability to be fair in this case.

Defendant's Question No. 11 (as modified above by the government) will adequately elicit the relevant information about a juror's opinion or feeling on political contributions.  Defendant's additional questions regarding opinions/feelings about political contributions are overly broad or argumentative.  For example, Question No. 14 asks: "Do you believe that political donations constitute legalized corruption?  If yes, please explain."  This question is untethered to the juror's ability to fairly assess the evidence and is vague and confusing.  Thus, it would not be helpful to the jury selection process.