E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:   Cassie.Palmer@usdoj.gov
               Susan.Har@usdoj.gov
               Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>RAYMOND SHE WAH CHAN,<br>  aka "She Wah Kwong"<br><br>          Defendant. | No. CR 2:20-326(A)-JFW-2<br><br>JOINT STATEMENT RE: GOVERNMENT'S PROPOSED ADDITIONAL RADAR SCREEN EXCERPT TRIAL EXHIBITS<br><br>Trial Date: March 12, 2024<br>Trial Time: 8:30 a.m.<br>Location:   Courtroom of the Hon.<br>            John F. Walter |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Cassie D. Palmer,

Susan S. Har, and Brian R. Faerstein, and defendant Raymond She Wah

Chan, by and through his counsel of record, John Hanusz and Michael

G. Freedman, hereby submit their Joint Statement Regarding the

Government's Proposed Additional Radar Screen Excerpt Trial Exhibits, pursuant to the Court's order on March 20, 2024.

On March 18, 2024, the government provided the defense with five additional excerpts of defendant's "Radar Screens" that the government has marked as Government Exhibits 40A, 40B, 42E, 42F, and 42G.  These five additional Radar Screen excerpt trial exhibits were prepared from two Identification Only Radar Screen exhibits (Government Trial Exhibits 40 and 42) that the government identified among its trial exhibits in the parties' Joint Pretrial Government Amended Exhibit Stipulation filed on January 31, 2024.  (See Dkt. No. 1289.)  The defense objects to the admissibility of these five additional Radar Screen excerpt trial exhibits.  Accordingly, the parties set forth their respective positions regarding the admissibility of these additional trial exhibits below.

//

//

//

This joint statement is based upon the attached memoranda of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 20, 2024   Respectfully submitted,

           E. MARTIN ESTRADA
           United States Attorney

           MACK E. JENKINS
           Assistant United States Attorney
           Chief, Criminal Division

             /s/
           BRIAN R. FAERSTEIN
           CASSIE D. PALMER
           SUSAN S. HAR
           Assistant United States Attorneys

           Attorneys for Plaintiff
           UNITED STATES OF AMERICA


Dated: March 20, 2024     /s/ per email authorization
           JOHN HANUSZ
           MICHAEL G. FREEDMAN
           Attorneys for Defendant
           RAYMOND SHE WAH CHAN

**GOVERNMENT'S POSITION**

During the course of its witness preparation during trial, the government identified five additional Radar Screen excerpts that pertain to material, contested issues in this case.  The five additional exhibits -- Government Exhibits 40A, 40B, 42E, 42F, and 42G, attached hereto[1] -- are excerpts from defendant's Radar Screens for 2013 (Exhibit 40) and 2015 (Exhibit 42), both of which are marked as Identification Only exhibits and the defense has had since the government's initial identification of trial exhibits for this retrial.  The defense has never objected to defendant's Radar Screens as exhibits, including the Radar Screen excerpts the government previously marked and moved into evidence at the beginning of trial.

The defense now objects to the five additional excerpt exhibits because the government identified these additional relevant excerpts during the course of trial.  The Court should overrule defendant's objections to these exhibits because they are admissible and relevant to issues in dispute (including the false statements count against defendant) and pertain to testimony the government intends to offer through Supervisory Special Agent Andrew Civetti during the second part of his trial testimony.[2]  During the course of the three prior trials in this case (Lee/940 Hill, Shen Zhen New World, and the first

---

[1] Pursuant to the defense's request, the parties are not publicly filing copies of the disputed exhibits along with this joint statement and will be emailing copies of the exhibits to the Court for the time being.  Those versions of the exhibits contain yellow highlights to direct the Court to the specific content within the exhibits for which the government seeks to admit them.  The versions of the exhibits that the government intends to use at trial and offer into evidence do not contain yellow highlights.

[2] Pursuant to the Court's order, the government has filed an offer of proof with respect to the anticipated content of the second part of Agent Civetti's trial testimony.  (Dkt. No. 1358.)

1    RICO/Chan trial), the government, with the Court's permission, added

2    exhibits that were identified during trial.  The government seeks to

3    do the same here for the following reasons.

4         **Government Exhibits 40A and 40B:**  Government Exhibits 40A and

5    40B are excerpts from defendant's combined Radar Screens for 2013

6    (Exhibit 40).  Both of these excerpt exhibits contain references to a

7    trip that defendant was helping coordinate for Jose Huizar to meet

8    Chairman Wei Huang of Shen Zhen New World Group in China in 2013,

9    prior to the sexual harassment lawsuit against Huizar being filed.

10   Specifically, Exhibit 40A is a Radar Screen dated May 20, 2013,

11   containing the following language on page 2 under "Radar Screen –

12   Home":  "China Trip for JH (CW Chairman: invitation letter from

13   China)."  Similarly, Exhibit 40B is a Radar Screen dated June 17,

14   2013, containing the following language on page 2 under "Radar Screen

15   – Home":  "China Trip for JH (CW: chairman will prepare invitation

16   letter)."

17        Evidence of the China trip that defendant was helping Huizar

18   plan in 2013 is relevant to several issues in dispute.  First, the

19   defense repeatedly has asked witnesses whether defendant's name

20   appears on emails, text messages, or other documents during their

21   cross-examination of government witnesses.  The defense seeks to

22   imply that because defendant's name is not reflected in certain

23   correspondence and documents, he must not have had any knowledge or

24   involvement in certain aspects of Huizar's corrupt relationship with

25   Chairman Huang or other Chinese developers.  The Radar Screen

26   excerpts are necessary to rebut the implication of this defense line

27   of questioning and likely theory of defense in closing argument.

28

With respect to Exhibits 40A and 40B in particular, the excerpt exhibits reflect defendant's tracking of this planned China trip that was one of the financial benefits that defendant sought to facilitate from Chairman Huang to Huizar, undermining defendant's arguments that he did not know about financial benefits from Chairman Huang to Huizar simply because he was not on (by design) certain documents and correspondence.

Second, the location of the references to this planned China trip in defendant's Radar Screens also is relevant to how defendant often appeared to separate his official duties (under "Radar Screen – Work") from his unofficial -- and corrupt – activities (under "Radar Screen – Home") in his Radar Screens.  Other Radar Screen excerpt exhibits that are in evidence reflect, to some degree, defendant's system of concealing his corrupt activities in the "Home" portion of his Radar Screens.  Exhibits 40A and 40B, bearing upon an additional financial benefit that defendant sought to help confer upon Huizar at the outset of the corrupt relationship he cultivated between Huizar and Huang in 2013, provide further evidence of defendant's use of the "Home" section of his Radar Screens to track his illicit activities.

Finally, during his interview with the FBI, defendant falsely denied that he did not facilitate any trips for Huizar.  Exhibits 40A and 40B provide additional evidence of defendant's denial of that facilitation and general denial of the role he played in the relationship between Huizar and Chairman Huang; specifically, the exhibits reflect defendant's involvement in tracking the trip and providing a reminder to himself to "check with Chairman" ("CW Chairman") regarding an invitation letter for the trip.  The

government expects defendant will contest, among other things, that defendant made false statements to the FBI.  The government must prove that he acted willfully, that is, that he acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful.  Defendant's lies regarding all aspects of his knowledge and involvement in the corrupt relationship he cultivated between Huizar and Chairman Huang are relevant to the government's burden of proving the willfulness of his conduct.  The pervasiveness of defendant's lies to the FBI tends to undermine any possible argument that his misstatements were inadvertently wrong or otherwise made without willfulness.

The defense has never contested the evidentiary admissibility of the Radar Screen exhibits, including that they constitute admissions under Federal Rule of Evidence 801(d)(2)(A).  Nor can they credibly claim they have not had sufficient notice of what is reflected in the exhibits, as they have had the full copies of defendant's Radar Screen Identification Only exhibit for 2013 since the government's initial disclosure of its trial exhibits.  And the defense's claim that it was unfairly prevented from seeking to admit other portions of the Radar Screens on its own ignores the black letter law prohibition on a defendant putting in his own hearsay statements.[3]

---

[3] The defense claims that the government unfairly prejudiced the defense by preventing it from using certain Radar Screens during its cross-examination of Agent Civetti.  However, the government merely pointed out to the defense that the exhibits it had listed in its list of exhibits to be used during its cross-examination of Agent Civetti (Dkt. No. 1331) included the Identification Only full-year copies of defendant's Radar Screens (i.e., Exhibits 40, 41, 42, 43, 44, and 45).  Those exhibits have not been admitted into evidence and thus could not be published to the jury.  Nor could defendant have sought to admit his own Radar Screens -- whether the complete *(footnote cont'd on next page)*

The evidence is relevant and admissible when offered by the
government, and defendant's objections to Exhibits 40A and 40B should
be overruled.

**Government Exhibits 42E, 42F, and 42G:**  Government Exhibits 42E,
42F, and 42G are excerpts from defendant's combined Radar Screens for
2015 (Exhibit 42).  These excerpt exhibits all contain a table that
defendant used to track developers' (primarily Chinese developers)
financial commitments to two causes for which defendant helped secure
financial benefits for Huizar.  Specifically, Exhibit 42E is a Radar
Screen dated May 24, 2015, containing a table under "Radar Screen –
Home" on page 3 that tracks commitments to "School" (i.e., Salesian
High School) and "Account" (i.e., Huizar's CD-14 office holder
account and/or campaign debt).  Similarly, Exhibit 42F (Radar Screen
dated May 31, 2015) and Exhibit 42G (Radar Screen dated June 13,
2015) contain the same table in substance on page 3 of each exhibit,
but with updates to the numbers, font colors, or notes in the chart,
reflecting defendant tracking and updating these charts on an ongoing
basis.

Prior to trial, the government previously identified and moved
into evidence only one Radar Screen excerpt exhibit from 2015 that
contains this table (Exhibit 42A).  Consistent with its arguments
above, the government must be able to rebut one of defendant's
apparent theories of defense that he was simply helping Chinese
developers without any corrupt intent or cultivation of corrupt

---

Identification Only versions or excerpts of the defense's choosing --
as such constitutes inadmissible hearsay when offered by defendant.
Thus, defendant will not be prejudiced, much less unfairly
prejudiced, by the government admitting additional Radar Screen
excerpts during trial.

5

relationships between the developers and Huizar.  The progression of changes in the "School"/"Account" table in defendant's Radar Screens from May 3, 2015 (Exhibit 42A) through May 24 (Exhibit 42E), May 31 (Exhibit 42F), and June 13, 2015 (Exhibit 42G) reflect defendant updating the information in these charts on Huizar's behalf over the course of more than one month.  Defendant's active and consistent tracking of financial benefits for Huizar undermines the defense's contention at trial that defendant did not help facilitate Huizar's corrupt relationships as part of the Pay-to-Play scheme.

The evidence is relevant and admissible when offered by the government, and defendant's contentions about lack of notice are without merit as explained above.  The Court should overrule defendant's objections to Exhibits 42E, 42F, and 42G as well.

1

**DEFENSE POSITION**

2        The defense objects to the admission of further radar screen

3    excerpts.  The government initially filed its list of exhibits to be

4    used during its examination of Agent Civetti on March 11, 2024.

5    (Dkt. 1329).  The defense filed its initial list of exhibits to be

6    used during its cross-examination of Agent Civetti on March 13, 2024.

7    (Dkt. 1331).  In that filing, the defense indicated that it planned

8    to use numerous of the radar screen exhibits in its cross-

9    examination.

10       Upon reviewing the defense's filing, the government then

11   indicated to the defense that its position was that the defense could

12   only publish those portions of the radar screens that the government

13   had already pre-admitted by its March 11, 2024 pre-admission filing.

14   (Dkt. 1329).  The defense agreed to this limitation.

15       During the first portion of its cross-examination of Agent

16   Civetti on March 12, 2024, the defense was careful to only publish

17   excerpts of the radar screens that the government had already pre-

18   admitted.  Otherwise, there would have been other excerpts that the

19   defense intended to use.  On the evening of March 14, 2024, the

20   defense filed its supplemental and amended list of exhibits to be

21   used during Civetti's cross to comply with the government's request,

22   amongst other changes.  (Dkt. 1334).  Again during further cross-

23   examination on March 15, 2024, the defense refrained from cross-

24   examining Agent Civetti about radar screens it otherwise might have

25   used.

26       On the evening of March 18, 2024, the government for the first

27   time indicated that it now intended to use further excerpts of radar

28
                                    7

1   screens as exhibits and the defense objected.  The government has had
2   this evidence for years and has had months to decide which excerpts
3   to offer.

4           This request may not have been particularly prejudicial before
5   Agent Civetti testified, but now that the defense has limited its
6   cross-examination only to excerpts the government had already
7   admitted, it is deeply prejudicial for the government to change its
8   position and seek to belatedly offer further excerpts.  This is
9   especially so where it is clear the government is seeking to
10  introduce these exhibits to rebut defense arguments during trial.

11          As noted in its related filing (Dkt. 1360), the defense objects
12  to any further testimony by Agent Civetti, so these exhibits should
13  be excluded on that basis alone.  But even if he is allowed to
14  further testify, this should not also allow the government to
15  belatedly introduce further excerpts that it could have introduced
16  initially.  This is especially true because the defense was deprived
17  of the right to use these newly proposed excerpts, or any others,
18  during its initial cross.  The government should not then be allowed
19  to change its position for purposes of introducing rebuttal evidence
20  in its case in chief.

21          And this prejudice cannot be cured simply by further cross-
22  examination.  The defense is not eager to prolong Agent Civetti's or
23  any witness' testimony any longer nor to re-open issues that either
24  were already explored or should have already been explored.

25          In summary, there is no good cause to admit further excerpts at
26  this late stage and to do so would severely prejudice Mr. Chan.

27

28
                                        8