E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:   Cassie.Palmer@usdoj.gov
               Susan.Har@usdoj.gov
               Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>RAYMOND SHE WAH CHAN,<br>  aka "She Wah Kwong,"<br><br>     Defendant. | No. CR 20-00326(A)-JFW-2<br><br>JOINT STATEMENT RE: GOVERNMENT'S UNOPPOSED MOTION IN LIMINE TO EXCLUDE INADMISSIBLE EVIDENCE OF DEFENDANT'S CHARACTER AND PRIOR GOOD ACTS AND OTHER TESTIMONY; EXHIBITS A-E<br><br>Trial Date: March 12, 2024<br>Trial Time: 8:30 a.m.<br>Location:  Courtroom of<br>         the Honorable<br>         John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, and defendant Raymond She Wah Chan, by and through his attorneys of record, John Hanusz and Michael G. Freedman, hereby submit this Joint Statement Re: Government's

Unopposed Motion in Limine to Exclude Inadmissible Evidence of Defendant's Character and Prior Good Acts and Other Testimony.

The parties have met and conferred regarding the government's objections and motion in limine to exclude certain potential testimony of prospective witnesses identified by the defense in its witness list filed on March 4, 2024.  (Dkt. No. 1317.)  The government's motion, which is set forth herein, is based primarily on information contained in witness interview summaries that the defense produced to the government pursuant to the Court's order as well as the defense trial presentation to date.

The defense does not oppose the government's motion.  The defense agrees with the government regarding the law regarding the admissibility of testimony from the defense witnesses, and the defense will not seek to elicit any statements that are impermissible under the law.

//
//
//
//
//
//
//
//
//
//
//
//
//

1    This joint statement is based upon the attached memorandum of

2  points and authorities, the accompanying exhibits, the files and

3  records in this case, and such further evidence and argument as the

4  Court may permit.

5  Dated: March 22, 2024          Respectfully submitted,

6                                 E. MARTIN ESTRADA
                                  United States Attorney
7
                                  MACK E. JENKINS
8                                 Assistant United States Attorney
                                  Chief, Criminal Division
9

10                                      /s/
                                  _____
                                  BRIAN R. FAERSTEIN
11                                CASSIE D. PALMER
                                  SUSAN S. HAR
12                                Assistant United States Attorneys

13                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
14

15

16  Dated: March 22, 2024          _/s/ per email authorization_
                                  _____
                                  JOHN HANUSZ
17                                MICHAEL G. FREEDMAN
                                  Attorneys for Defendant
                                  RAYMOND SHE WAH CHAN
18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................ii

TABLE OF EXHIBITS...................................................iv

GOVERNMENT MOTION <u>IN LIMINE</u> TO EXLCUDE.............................1

I.    INTRODUCTION..................................................1

II.   BACKGROUND....................................................2

      A.    Defense Witness List and Witness Statements...........2

      B.    Categories of Prohibited Character and "Good Acts"
            Evidence..............................................2

            1.    Testimony Regarding Improper Character Traits........3

            2.    "Good Acts" Regarding Prior Ethical Behavior,
                  Defendant's Refusal to Accept Gifts, and His
                  Purported Acts of Generosity........................4

      C.    Irrelevant Testimony Regarding Merits of Consolidation....5

III.  ARGUMENT......................................................6

      A.    Defendant's Proffered Witness Testimony Constitutes
            Inadmissible Character Evidence.......................6

      B.    Defendant May Only Offer Evidence of a Pertinent
            Character Trait Through Reputation or Opinion
            Testimony, Not Specific Instances of Conduct..............8

      C.    Defendant's "Good Acts" Evidence Is Irrelevant and
            Inadmissible If Offered to Prove Intent or Lack
            Thereof..............................................11

      D.    Rule 403 Further Bars Defendant's "Good Acts" Evidence...13

      E.    Evidence About the Merits of Consolidation Should Be
            Barred...............................................14

IV.   CONCLUSION...................................................17

**TABLE OF AUTHORITIES**

**DESCRIPTION**                                                                 **PAGE**

**CASES**

In re Sealed Case, 352 F.3d 409 (D.C. Cir. 2003)......................7

Michelson v. United States, 335 U.S. 469 (1948)..................8, 9

United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982)..........14

United States v. Barry, 814 F.2d 1400 (9th Cir. 1987)..............8

United States v. Bush, 58 F.3d 482 (9th Cir. 1995)..................9

United States v. Chambers, 800 F. App'x 43 (2d Cir. 2020)..........12

United States v. Charley, 1 F.4th 637 (9th Cir. 2021)..............10

United States v. Dawkins, 999 F.3d 767 (2d Cir. 2021)..............12

United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992)................7

United States v. Dimora, 750 F.3d 619 (6th Cir. 2014)..............11

United States v. Fattah, 914 F.3d 112 (3d Cir. 2019)...............12

United States v. Giese, 597 F.2d 1170 (9th Cir. 1979))..............7

United States v. Hedgcorth, 873 F.2d 1307 (9th Cir. 1989)...........8

United States v. Keiser, 57 F.3d 847 (9th Cir. 1995)............9, 10

United States v. Marrero, 904 F.2d 251 (5th Cir. 1990).............13

United States v. Rewald, 889 F.2d 836 (9th Cir. 1989).........16, 17

United States v. Weber, No. CR 21-28-M-DLC, 2022 WL 2463039,
    (D. Mont. July 6, 2022).......................................7

**FEDERAL RULES**

Fed. R. Evid. 401..................................................15

Fed. R. Evid. 402..............................................15, 16

Fed. R. Evid. 403..........................................13, 14, 16

Fed. R. Evid. 404..............................................passim

Fed. R. Evid. 405...............................................8, 9

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

**OTHER AUTHORITIES**

1 McCormick on Evid. § 187 (8th ed.)................................10

Mueller & Kirkpatrick, 2 Federal Evidence § 4.44 (4th ed. 2013).....9

Wright & Miller, Federal Practice and Procedure, 22B Fed. Prac.
     & Proc. Evid. § 5267 (2d. ed. 2018)...........................10

1

**TABLE OF EXHIBITS**

2

**(Exhibits Filed Under Seal[1])**

3

| Exhibit | Description | Cite |
|---------|-------------|------|
| A | Defense interview memorandum – Witness 1 | Pgs. 3:3-9; 4:14-18 |
| B | Defense interview memorandum – Witness 2 | Pgs. 3:10-13; 4:24-5:9 |
| C | Defense interview memorandum – Witness 3 | Pgs. 3:14-22; 5:10-17 |
| D | Defense interview memorandum – Witness 4 | Pgs. 3:23-28; 5:18-22; 6:4-8; 14:20-22 |
| E | Defense interview memorandum – Witness 5 | Pgs. 4:1-7; 4:19-23; 5:26-6:4; 14:20-22 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[1] Pursuant to the defense's request, the government is filing concurrently herewith an _ex parte_ application to file under seal Exhibits A through E to this Joint Statement.

iv

1                        **GOVERNMENT MOTION TO EXLCUDE**

2   **I.    INTRODUCTION**

3        As part of his defense case, defendant RAYMOND CHAN seeks to

4   offer impermissible evidence of his "good acts" and character.

5   Defendant's proffered evidence ranges from testimony about his

6   purported generosity, caring attitude, and proclivity not to take

7   bribes to specific acts wherein he purportedly declined expensive

8   gifts and helped people and businesses unrelated to this case.  Apart

9   from other likely evidentiary hurdles such as hearsay, foundation,

10  and relevance, the proffered character and "good acts" evidence

11  unmistakably aims to appeal to the jury's sympathies and to confuse

12  the issues.  Defendant effectively seeks to offer evidence that he is

13  a "good guy" to tug at the jury's emotions, distract from the legal

14  issues at hand, and invite the jury to nullify.  The Federal Rules of

15  Evidence categorically bar such entreaties.

16       Defendant's intentions -- made plain by his witness list,

17  defense witness interview notes, and trial presentation to date --

18  implicate numerous prohibitions under the Federal Rules of Evidence.

19  First, the government does not contest that defendant is permitted to

20  offer testimony regarding his character for law-abidingness and

21  truthfulness; however, the proffered testimony of his witnesses

22  appears to go well beyond the permissible bounds of Rule 404.

23  Second, even where character evidence is permitted, his method of

24  offering that evidence is flawed; he seeks to offer character

25  evidence through specific instances of conduct, not reputation or

26  opinion testimony as Rule 405 requires.  Third, his proffered "good

27  acts" evidence is pure propensity evidence not offered for any

28  identifiable limited purpose.  Finally, even if defendant's "good

acts" and character evidence cleared these numerous bars to admissibility, its limited probative value is substantially outweighed by the danger of unfair prejudice and other concerns identified by Rule 403.

Defendant also seeks to elicit testimony from two witnesses about the <u>merits</u> of the proposed consolidation of the Los Angeles Department of Building and Safety ("LADBS") and the Department of City Planning ("Planning"). While the government has presented evidence regarding defendant's efforts to stall and block the consolidation, the actual merits of the proposed merger of the departments is not relevant to any fact of consequence at trial and poses multiple dangers under Rule 403. The Court should exclude testimony regarding this topic as well.

## II. BACKGROUND

### A. Defense Witness List and Witness Statements

On March 4, 2024, defendant filed his witness list (Dkt. No. 1317) and provided the government with interview memoranda detailing the five witnesses' <u>Jencks</u> statements (Exs. A-E). Those five defense witnesses are (1) Witness 1, (2) Witness 2, (3) Witness 3, (4) Witness 4, and (5) Witness 5.[1]

### B. Categories of Prohibited Character and "Good Acts" Evidence

Certain categories of prospective testimony from defendant's witnesses would constitute impermissible character evidence, both in substance and in form, and improper "good acts" evidence. The problematic categories of evidence are detailed below.

---

[1] The witnesses' names are identified in the government's <u>ex parte</u> application to seal (which itself is being filed under seal) that is being filed concurrently herewith.

2

### 1.   Testimony Regarding Improper Character Traits

The defense witness list and corresponding interview memoranda summarize prospective testimony about certain character traits that are either impermissible character traits or not character traits at all.

For instance, Witness 1's proffered testimony includes observations that defendant is a "wonderful, selfless person, who [is] happiest when helping others." (Ex. A at 1.) He characterizes defendant as "giving," "generous," and "overly trusting of others." (Id. at 2.) He states that defendant has a general "desire" to "help others without receiving or expecting anything in return." (Id. at 1-2.)

Similarly, Witness 2 would testify that defendant was "ethical," "competent," "knowledgeable," "conscientious," "professional," and the "best leader." (Ex. B at 3-4.) He believes the charges against defendant are "out of character." (Id. at 4.)

Witness 3's proffered testimony includes that defendant "cared" about employees and "was respected by members of the business community because of his knowledge and desire to help." (Ex. C at 1-2.) She describes defendant's "traits" as "being generous and gracious," "helping and giving to others," and "help[ing] elevate the next generation." (Id. at 3-4.) She claims he is "ethical," "unselfish," and "trusting, sometimes to a fault." (Id.) As for the hiring of Deron Williams's son, she states that such "shenanigans" would have been "out of character" for defendant. (Id. at 3.)

Witness 4 would offer that defendant is a "good person and valuable public servant" and "genuinely cared for employees and the city." (Ex. D at 3.) Defendant "showed care and interest in his

3

efforts to save employees' jobs and to do what was right on behalf of the city."  (Id.)  One of his "attributes" was his constant "concern[] with accomplishing the task at hand."  (Id.)

Finally, Witness 5 would testify that defendant's "ethics are beyond reproach" and that he is "incapable of participating in government graft." (Ex. E at 2.)  According to Witness 5, one aspect of defendant's "character" was that he "always acted ethically and in the best interest of Los Angeles." (Id. at 1-2.)  "His assistance and willingness to get things done were always done without ethical or legal ambiguity," Witness 5 believes.  (Id. at 2.)

> ## 2.   "Good Acts" Regarding Prior Ethical Behavior, Defendant's Refusal to Accept Gifts, and His Purported Acts of Generosity

Defendant's witnesses may also testify about defendant's refusal on specific occasions to accept gifts, his acts of assistance to other individuals or entities irrelevant to the facts charged here, and his purported past ethical behavior.

Witness 1 would testify that defendant refused "a bottle of whiskey as a token of recognition of his efforts and help."  (Ex. A at 1.)  He believes "[t]his refusal was in keeping with [defendant's] desire to help others without receiving or expecting anything in return." (Id. at 1-2.)

Witness 5 would tell the jury about instances in which defendant never let Witness 5 pay the bill for their meals.  Defendant "always insisted that each pay for their own breakfast, as it would be inappropriate for him [defendant] to accept a meal based on his position in the city." (Ex. E at 2.)

Witness 2 would state that defendant "never asked for anything inappropriate" in their discussions about projects, never made

Witness 2 "feel uncomfortable," and "never observed [defendant] [] do anything unethical, immoral, or illegal." (Ex. B at 2.)  During meetings, defendant told "all members of the Synergy team to never bend the rules [] and to never use personal relationships at their previous city departments to curry favor." (Id.)  On one occasion, defendant told Witness 2 not to copy him on certain emails purportedly to avoid even the appearance of "unethical influence" by defendant.  (Id. at 3.)  Moreover, even when defendant solicited campaign contributions, "no pressure was applied by [defendant] or anyone else to donate, nor was there a suggestion that the contributions were tied to a project or would be reimbursed." (Id. at 4.)

In addition, defendant offers that Witness 3 will testify about instances in which he offered to "assist individuals without compensation." (Dkt. No. 1317 at 4.)  In each of her dealings with defendant, she observed that he "never expected anything for his helpful efforts to others." (Ex. C at 4.)  She would also testify about defendant's efforts in "helping small and minority owned businesses" and his generosity in hosting a birthday party at his home for her sister.  (Id. at 2, 4.)

Witness 4 similarly would testify that defendant worked to help other employees in the City.  He "worked to save jobs, find new city jobs for those laid off, and diligently tracked every effected [sic] employee" when 74 employees lost their jobs in the City.  (Ex. D at 3.)

### C.   Irrelevant Testimony Regarding Merits of Consolidation

Defendant also seeks to offer the testimony of two witnesses (Witness 4 and Witness 5) regarding the merits of the proposed

5

consolidation of LADBS and Planning in 2013.  Witness 5 worked for a large developer at the time which submitted a citizen letter to Mayor Garcetti opposing the proposed consolidation on the merits.  (Ex. E at 2.)  The defense has marked the letter as an exhibit for identification only (Defense Exhibit 2221), and the government expects the defense will seek to elicit Witness 5's opinions on the subject.  For his part, Witness 4 worked for the City and was part of a union that opposed the proposed consolidation.  Based on his witness statement, it appears Witness 4 will be called to testify almost exclusively about the merits of the proposed consolidation. (Ex. D at 2-3.)

## III. ARGUMENT

### A.   Defendant's Proffered Witness Testimony Constitutes Inadmissible Character Evidence

Federal Rule of Evidence 404(a)(1) prohibits the use of a "person's character or character trait" to "prove that on a particular occasion the person acted in accordance with the character or trait."  There is, however, a limited exception to this blanket prohibition for defendants in a criminal case, permitting a defendant to "offer evidence of the defendant's pertinent trait."  Fed. R. Evid. 404(a)(2)(A).  But if such evidence is admitted, "the prosecutor may offer evidence to rebut it."  Id.

Here, defendant seeks to offer testimony and evidence about, among other things, his generosity and caring attitude, his proclivity for trusting in other people, and his penchant for not taking bribes or accepting expensive gifts.  None of these alleged qualities, however, are pertinent character traits admissible under the Federal Rules of Evidence.

1       "The Ninth Circuit has previously recognized that honesty,

2  truthfulness, law-abidingness, peaceableness, and being 'a violent

3  and angry person' are 'character traits' within the meaning of Rule

4  404(a)."  United States v. Weber, No. CR 21-28-M-DLC, 2022 WL

5  2463039, at *2 (D. Mont. July 6, 2022) (collecting cases); see also

6  United States v. Diaz, 961 F.2d 1417, 1419 (9th Cir. 1992)

7  (recognizing validity of "general traits such as 'lawfulness' and

8  'law-abidingness.'"); In re Sealed Case, 352 F.3d 409, 412 (D.C. Cir.

9  2003) ("specific character traits for truthfulness and honesty"

10  admissible both when defendant testifies and when charge includes

11  "fraud or falsehood [a]s one of its statutory elements").

12       The defense cannot seek to evade these guardrails by framing the

13  character evidence as a more narrow purported trait, such as his

14  propensity not to take bribes.  In United States v. Diaz, the Ninth

15  Circuit held that while a defendant in a narcotics case may offer

16  evidence of his general propensity or lack thereof to commit crimes,

17  he may not venture into the more granular inquiry of propensity to

18  "engage in large scale drug dealing."  961 F.2d at 1419-20.

19  Propensity to engage or not engage in a specific type of crime is not

20  a character trait.  Id.; Weber, 2022 WL 2463039 at *2 ("But the Ninth

21  Circuit has resisted recognizing narrower character traits directly

22  involving the conduct for which a defendant is charged.  The parties

23  correctly identify Diaz as the seminal case on this issue.").

24       Based on the RICO conspiracy, bribery, and false statements

25  charges here, defendant's character for law-abidingness and

26  truthfulness are implicated traits and fair ground for character

27  witness testimony, with appropriate bounds.  But being a caring and

28  generous person, being an overly trusting person, and not being prone

7

to accept gifts or engage in bribery are not pertinent character traits within the meaning of Rule 404(a)(2).

Defendant's witness list and trial presentation thus far suggest his intent to go beyond the permissible bounds of his law-abidingness and truthfulness and offer evidence of his supposed noncorrupt behavior, altruism, and good deeds.  Defendant should not be permitted to continue even further down this path with impermissible character evidence during his case-in-chief or in closing argument. As the Federal Rules of Evidence require, defendant must be limited to offering character evidence as to traits like honesty or general law-abidingness, and that evidence should be limited to reputation or opinion testimony as described further below.

**B.   Defendant May Only Offer Evidence of a Pertinent Character Trait Through Reputation or Opinion Testimony, Not Specific Instances of Conduct**

Just as important, defendant's planned method of offering character evidence through specific acts plainly violates Rule 405. Where a trait of character is admissible, Rule 405(a) limits the manner and method of proving that trait.  On direct, only "testimony about the person's reputation or by testimony in the form of an opinion" is permissible.  Fed. R. Evid. 405(a); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) ("[W]hile a defendant may show a character for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible.") (citing Michelson v. United States, 335 U.S. 469, 476 (1948)).  Thus,

specific acts evidence is generally prohibited when offered by a
defendant.[2]  Id.

The only limited exception under Rule 405 is where a defendant's
trait of character is an "essential elemental of a charge, claim, or
defense."  Fed. R. Evid. 405(b).  The Advisory Committee Notes to
Rule 405 make clear why the limitation on specific acts evidence is
narrowly-tailored: such evidence "possesses the greatest capacity to
arouse prejudice, to confuse, to surprise, and to consume time," and
"[c]onsequently the rule confines the use of evidence of this kind to
cases in which character is, in the strict sense, in issue and hence
deserving of a searching inquiry."  Fed. R. Evid. 405 advisory
committee notes (emphasis added).

Here, defendant's trait of character is not an "essential
element" of any charge, claim, or defense.  In fact, "[a]lmost never
is character an 'element' of a charge or defense in criminal cases."
Mueller & Kirkpatrick, 2 Federal Evidence § 4.44 (4th ed. 2013)
(emphasis in original).  "The relevant question should be: would
proof, or failure of proof, of the character trait by itself actually
satisfy an element of the charge, claim, or defense?  If not, then
character is not essential and evidence should be limited to opinion
or reputation."  United States v. Keiser, 57 F.3d 847, 856 (9th Cir.
1995).  In other words, if the existence of the character trait at

---

[2] The government, however, may inquire "into relevant specific
instances of the person's conduct" on cross-examination of a defense
character witness.  Fed. R. Evid. 405(a).  "A witness who has
endorsed the character of the defendant may be cross-examined about
whether he's heard about prior bad acts of the defendant."  United
States v. Bush, 58 F.3d 482, 489 (9th Cir. 1995); see also Michelson,
335 U.S. at 479 ("The price a defendant must pay for attempting to
prove his good name is to throw open the entire subject which the law
has kept closed for his benefit and to make himself vulnerable where
the law otherwise shields him.").

issue is not dispositive of an element, but merely circumstantial evidence that the jury can consider along with other evidence, the trait is not an essential element under Rule 405(b).  For instance, in United States v. Charley, the Ninth Circuit explained that "[e]ven were it proven that [defendant] is an exceedingly violent person, a jury would still be required to assess the factual circumstances underlying her conduct on the night of the charged offense . . . ." 1 F.4th 637, 646 (9th Cir. 2021) (affirming the Keiser test for whether a trait of character constitutes an "essential element").[3]

So too here, none of the RICO conspiracy, honest services wire fraud, bribery, or false statement offenses, or any defenses to those charges, contains an element, in the "strict sense," Fed. R. Evid. 405 advisory committee notes, that "rises nor falls on [defendant's] success in proving" a particular character trait.  Keiser, 57 F.3d at 857.  Even if the jury believed that defendant was generally law-abiding or honest, the jurors must still evaluate whether he engaged in the specific corrupt acts or made the specific false statements as alleged in this case, taking into account, among other things, their views based on circumstantial reputation/opinion testimony regarding those traits.  Accordingly, any evidence of a pertinent character trait under Rule 405 must be limited to reputation or opinion

---

[3] See also Fed. R. Evid. 404 advisory committee notes (describing two illustrative examples of narrow instances of character as essential element: "the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver"); Wright & Miller, Federal Practice and Procedure, 22B Fed. Prac. & Proc. Evid. § 5267 (2d ed. 2022) ("Judges will see few cases in which character is truly in issue."); 1 McCormick on Evid. § 187 (8th ed.) ("[C]ourts must ascertain whether a character trait is an 'operative fact' -- one that under the substantive law determines rights and liabilities of parties.").

10

testimony on direct and not offered by way of specific instances of conduct.

### C.   Defendant's "Good Acts" Evidence Is Irrelevant and Inadmissible If Offered to Prove Intent or Lack Thereof

Defendant may claim that he does not plan to offer his other good acts, assistance to others, and refusal of gifts as evidence of a character trait but, rather, as evidence of his lack of intent under Rule 404(b)(2).  But that sidestep is inconsistent with applicable law.  Courts have consistently denied defendants' attempts to offer evidence of their own good deeds and noncorrupt acts under Rule 404(b) in public corruption and white-collar cases.

For instance, in United States v. Dimora, a public official "had hoped to present evidence of other 'good acts' -- that on several occasions he helped constituents 'without asking for . . . or receiving anything of value.'"  750 F.3d 619, 630 (6th Cir. 2014).  In affirming the district court's exclusion of such evidence, the Sixth Circuit explained: "Rule 404(b) precludes the use of other-acts evidence to 'prove a person's character,' but it allows such evidence for other purposes, such as proving intent.  Before admitting other-acts evidence for such a non-character purpose, however, the district court must decide whether the evidence is probative of that limited purpose."  Id.  The Sixth Circuit found that "[a]ll [defendant's evidence] would have shown is that, in situations unrelated to the charges, Dimora did favors for people who did not pay him bribes.  For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes."  Id.

Similarly, in United States v. Dawkins, the Second Circuit affirmed a district court's exclusion of evidence that a defendant had not offered bribes to other potential recipients, rejecting defendant's claim that those other instances showed he "lacked specific intent to commit the charged [bribery] offenses." 999 F.3d 767, 792 (2d Cir. 2021). The court recognized that a defendant may not attempt to establish his innocence "through proof of the absence of criminal acts on specific occasions." Id. (citation omitted). "No less than evidence of a defendant's prior 'bad acts' used to show that he committed the crime charged, such 'good acts' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts -- i.e., if we make the exact propensity inference Rule 404(b)(1) is designed to prohibit." Id.

The Third Circuit reached a similar conclusion in United States v. Fattah, affirming the district court's rejection of good act evidence offered to undermine intent relating to bribery charges. 914 F.3d 112, 175-76 (3d Cir. 2019). One of the defendants in Fattah sought to call a witness from American University to testify that the defendant "agreed, on more than fifty instances, to financially assist students" at that school to "refut[e] the Government's argument that he agreed to guarantee the tuition expenses of [a congressman's] au pair as a way of bribing the congressman." Id. at 175. The Third Circuit upheld the exclusion of the proffered testimony, explaining that while the defendant "offered evidence of his prior gift-giving to prove intent -- 'a proper non-propensity

12

purpose -- he failed to show why the proposed testimony was 'relevant to that identified purpose.'" Id. (citation omitted).[4]

The same is true here. Defendant seeks to offer evidence of his alleged good acts of helping people and projects, supposedly with nothing to gain, while purportedly rejecting expensive gifts and asking for nothing in return. Moreover, each of these proffered scenarios has nothing to do with the bribes charged here. Taken together, this "good acts" evidence is unmistakably calibrated at luring the jury to find that, because he did not commit other separate uncharged crimes, defendant could not have acted with corrupt intent as alleged here -- i.e., that he did not have the propensity to solicit, facilitate, or offer the bribes underlying the charges in this case. As the above cases illustrate, Rule 404(b)(1) expressly prohibits this misuse of evidence of other instances of conduct, whether good acts or bad, for propensity purposes.

   **D.   Rule 403 Further Bars Defendant's "Good Acts" Evidence**

Even if the Court finds some probative value to defendant's proffered character evidence and that it is not barred under Rules 404 and 405 as explained above, the Court should still exclude it under Federal Rule of Evidence 403. Under Rule 403, courts may exclude evidence, even if it is otherwise admissible, where its probative value is "substantially outweighed by a danger of one or

---

[4] See also United States v. Chambers, 800 F. App'x 43, 46 (2d Cir. 2020) ("[Defendant's] argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe [the public official] is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit."); United States v. Marrero, 904 F.2d 251, 259-60 (5th Cir. 1990) ("The fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment.").

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant's proposed "good acts" evidence here implicates a number of these concerns, especially when balanced against its minimal probative value.

Defendant's attempt to shift focus to isolated instances when he declined gifts or assisted people with matters unrelated to this case will confuse the relevant facts the jury should consider and mislead it about the import of those other acts. Defendant's "good acts" evidence further raises a significant danger of unfair prejudice, as it necessarily seeks to "provoke[] an emotional response in the jury" separate and apart from "its judgment as to his guilt or innocence of the crime charged." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982), overruled on other grounds, Huddleston v. United States, 485 U.S. 681 (1988). Defendant's proffered evidence of helping people with unrelated matters and turning away gifts is undeniably targeted at appealing to the jurors' sympathies that he is an honorable man who should not be punished and thereby encourage the jury to ignore or discount evidence that he committed the charges crimes. Rule 403 aims to preclude this very type of emotional appeal that interferes with a jury's duty to follow its oath.

**E.   Evidence About the Merits of Consolidation Should Be Barred**

Finally, the proposed testimony of Witness 4 and Witness 5 regarding the merits of the proposed consolidation of LADBS and Planning should be precluded.

During trial, the government has presented evidence regarding the proposed consolidation of LADBS and Planning, how that proposed

14

consolidation threatened to eliminate defendant's position as General Manager of LADBS, and defendant's successful solicitation of Councilmember Jose Huizar's support in scuttling the City's consolidation plan and saving defendant's job.  Huizar's assistance in helping preserve defendant's leadership role at LADBS, largely in consideration of defendant's facilitation of Huizar's corrupt relationship with Chairman Wei Huang of Shen Zhen New World Group, helped solidify defendant and Huizar's mutually beneficial criminal partnership in the early stages of the alleged RICO conspiracy.

The government's evidence regarding consolidation itself principally has focused on the <u>fact</u> of the proposed consolidation and defendant's strident efforts and communications with Huizar to prevent it.  Defendant's perception that the consolidation was going to happen, and the steps he and Huizar took in response, are relevant to the foundation of their corrupt relationship.

The actual merits of the consolidation plan, on the other hand, are wholly irrelevant.  The government has not elicited testimony or introduced evidence about the wisdom of the proposal or the support it garnered (or did not garner) from City stakeholders.[5]  Whether the Planning Department and LADBS would or would not run more efficiently as a combined entity is not a fact "of consequence in determining the action."  Fed. R. Evid. 401(b).  Nor does the prospective testimony of Witness 5 and Witness 4, representing two isolated voices with unique motives and lacking context as to the broader discussion

---

[5] At defendant's first trial, Bud Ovrom, the former General Manager of LADBS, testified about, among other things, the consolidation plan and defendant's strong opposition to it.  The government is not calling Ovrom to testify at defendant's retrial or any other witnesses who would testify about the merits of consolidation.

regarding departmental consolidation in the City, have "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The testimony is irrelevant to the issues in dispute in this case and should be inadmissible on this basis alone. Fed. R. Evid. 402.

The proffered testimony also introduces multiple dangers under Rule 403 that substantially outweighs any possible minimal probative value of the evidence, including confusing the issues, misleading the jury, undue delay, and wasting time. Fed. R. Evid. 403. "Rule 403 recognizes that as the probative value of evidence decreases, the potential increases for it to be substantially outweighed by the dangers identified in the rule." United States v. Rewald, 889 F.2d 836, 853 (9th Cir. 1989). The disparity between the probative value of the evidence and the Rule 403 concerns is especially pronounced as to the proposed testimony.

Allowing the defense to elicit testimony about the merits of consolidation would inject extraneous questions as to the complexities of City bureaucracy and the intricacies of various stakeholders' respective interests in the consolidation plan. And attempting to adjudicate the merits of consolidation would require a mini-trial necessitating evidence and discussion of political theory and policy issues ill-suited to factfinding at trial. Whether departmental consolidation was a good idea or a bad one is irrelevant to the fact of defendant's back-channel efforts (e.g., sending Huizar talking points and a pre-drafted motion to disrupt the planned consolidation) to commandeer Huizar's support in stopping the plan in its tracks.

1   But the defense's introduction of the proffered testimony would
2   leave the jury with the misleading and one-sided impression that the
3   proposed consolidation universally was viewed negatively -- which
4   would require the government to put on evidence and potential
5   witnesses to rebut this mischaracterization.  This sideshow of an
6   issue having no relevance to the foundations of defendant and
7   Huizar's relationship would "require delving into particular
8   transactions and events that are far afield from this prosecution."
9   Rewald, 889 F.2d at 836 ("Admission of this evidence posed the
10  substantial risk of permitting the trial to degenerate into an
11  unfocused presentation of facts and testimony that would confuse the
12  issues and mislead the jury.").  The government's presentation of
13  additional testimony and evidence to correct the record on this
14  collateral issue also would cause undue delay and waste the jury's
15  time.  Testimony regarding the merits of consolidation thus should be
16  precluded under Rule 403 as well.

17  **IV.   CONCLUSION**

18  For the foregoing reasons, the government respectfully requests
19  that this Court exclude defendant's proffered evidence of "good acts"
20  and impermissible character evidence, including precluding witnesses
21  who will testify only as to impermissible character traits,
22  propensity to commit good acts, and specific "good acts" and by
23  limiting the scope of other defense witnesses' testimony consistent
24  with the principles discussed herein.

25  The government further respectfully requests that this Court
26  preclude the defense from offering testimony regarding the merits of
27  consolidation, including precluding witnesses who will testify only
28  as to this issue.