ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

MAR 2 7 2024

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,       )   Case No. **CR 20-326(A)-JFW**
                                )
                Plaintiff,      )   **JURY INSTRUCTIONS**
                                )
        v.                      )
                                )
                                )
RAYMOND SHE WAH CHAN,           )
                                )
                Defendant.      )
_____ )

COURT'S INSTRUCTION NO. 1.

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. You will recall that you took an oath promising to do so at the beginning of the case. You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions, or into anything I may have said or done, any suggestion as to what verdict you should return -- that is a matter entirely up to you.

1

COURT'S INSTRUCTION NO. 2.


The charges against the defendant are contained in an indictment.  The indictment is not evidence.  The defendant has pleaded not guilty to the charges.  The defendant is presumed to be innocent unless and until the government proves the defendant guilty beyond a reasonable doubt.  In addition, the defendant does not have to testify or present any evidence.  The defendant does not have to prove innocence; the government has the burden of proving every element of the charges beyond a reasonable doubt.

COURT'S INSTRUCTION NO. 3.


Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

COURT'S INSTRUCTION NO. 4.

A defendant in a criminal case has a constitutional right not to testify.  In arriving at your verdict, the law prohibits you from considering in any manner that the defendant did not testify.

1                    COURT'S INSTRUCTION NO. 5.

2

3        The evidence you are to consider in deciding what the

4   facts are consists of:

5        First, the sworn testimony of any witness;

6        Second, the exhibits received in evidence; and

7        Third, any facts to which the parties have agreed.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 6.

The following things are not evidence, and you may not consider them in deciding what the facts are:

1.   Questions, statements, objections, and arguments by the lawyers are not evidence.  The lawyers are not witnesses. Although you must consider a lawyer's questions to understand the answers of a witness, the lawyer's questions are not evidence.  Similarly, what the lawyers have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2.   Any testimony that I have excluded, stricken, or instructed you to disregard is not evidence.  In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence in a limited way, you must do so.

3.   Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

COURT'S INSTRUCTION NO. 7.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which you can find another fact.

You are to consider both direct and circumstantial evidence.  Either can be used to prove any fact.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

7

COURT'S INSTRUCTION NO. 8.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account the following:

First, the opportunity and ability of the witness to see or hear or know the things testified to;

Second, the witness's memory;

Third, the witness's manner while testifying;

Fourth, the witness's interest in the outcome of the case, if any;

Fifth, the witness's bias or prejudice, if any;

Sixth, whether other evidence contradicted the witness's testimony;

Seventh, the reasonableness of the witness's testimony in light of all the evidence; and

Eighth, any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these

differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

COURT'S INSTRUCTION NO. 9.


    A separate crime is charged against the defendant in each count.   You must decide each count separately.   Your verdict on one count should not control your verdict on any other count.

COURT'S INSTRUCTION NO. 10.

You have received evidence about the City of Los Angeles Code of Ethics, including Exhibit 5, and Los Angeles Campaign Finance Ordinances, including Exhibit 9.  I instruct you that this evidence is admitted only for the limited purpose of establishing that the City of Los Angeles Code of Ethics and Los Angeles Campaign Finance Ordinances apply to public officials of the City of Los Angeles and as they relate to defendant's state of mind and intent.  Therefore, you must consider this evidence only for that limited purpose and not for any other purpose.  Defendant is not charged with crimes for violating the City of Los Angeles Code of Ethics or Los Angeles Campaign Finance Ordinances.  I will instruct you on the elements of the charged crimes in other instructions.

COURT'S INSTRUCTION NO. 11.


   The indictment alleges that certain acts and offenses were committed "on or about" certain dates.

   Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged in the indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

1                        COURT'S INSTRUCTION NO. 12.

2

3        The indictment alleges that approximate amounts of money

4   were involved in the crimes charged.   It is not necessary for

5   the government to prove the exact or precise amounts of money

6   alleged in the indictment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 13.


    You have heard testimony that a defendant made a
statement.   It is for you to decide (1) whether the defendant
made the statement, and (2) if so, how much weight to give to
it.   In making those decisions, you should consider all the
evidence about the statement, including the circumstances
under which the defendant may have made it.

COURT'S INSTRUCTION NO. 14.


You have heard testimony from George Chiang, George Esparza, and Morris Goldman, witnesses who pleaded guilty to a crime arising out of the same events for which the defendant is on trial and hope to receive benefits and favored treatment from the government in connection with this case. Their guilty pleas are not evidence against the defendant, and you may consider them only in determining the witnesses' believability.

For these reasons, in evaluating the testimony of George Chiang, George Esparza, and Morris Goldman you should consider the extent to which or whether their testimony may have been influenced by any of these factors. In addition, you should examine the testimony of George Chiang, George Esparza, and Morris Goldman with greater caution than that of other witnesses.

COURT'S INSTRUCTION NO. 15.


     You have heard testimony about the government's
investigation in this case and from an informant who was
involved in the government's investigation in this case.  Law
enforcement officials may engage in stealth and deception,
such as the use of informants, surreptitious recordings,
wiretaps, bugs, and ruses, in order to investigate criminal
activities.  Informants may assume the roles of members in
criminal organizations.

COURT'S INSTRUCTION NO. 16.

During the trial, certain charts and summaries were shown to you to help explain the evidence in the case.  These charts and summaries were not admitted into evidence and will not go into the jury room with you.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

COURT'S INSTRUCTION NO. 17.

Certain charts and summaries have been admitted into evidence. Charts and summaries are only as good as the underlying supporting material.  You should, therefore, give them only such weight as you think the underlying material deserves.

COURT'S INSTRUCTION NO. 18.

The defendant is charged in Count One of the indictment with conspiracy to conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, Section 1962(d).  For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, there was an agreement between two or more persons that:

(a) an enterprise, namely, the Council District-14 ("CD-14") Enterprise, would exist, as alleged in the indictment; and

(b) a member or members of the CD-14 Enterprise would conduct or participate in the affairs of the CD-14 Enterprise, directly or indirectly, through a pattern of racketeering activity;

Second, defendant joined the agreement knowing of its purpose and personally agreeing and intending to help further or facilitate it;

Third, the CD-14 Enterprise would engage in, or its activities would affect, interstate or foreign commerce; and

Fourth, defendant agreed that one or more members of the conspiracy, not necessarily the defendant, would commit at least two racketeering acts in furtherance of the conspiracy.

/ / /

/ / /

19

<u>Definition of "Enterprise"</u>

An "enterprise" is a group of people associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, would have an ongoing organization, either formal or informal. In summary, an enterprise must include the following elements: (1) a group of people associated for a common purpose of engaging in a course of conduct and (2) the association of these people was an ongoing formal or informal organization.

The members of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. The name of the organization itself is not an element of the offense and does not have to be proved. The government is not required to prove that the CD-14 Enterprise actually existed.

<u>Definition of "Conduct or Participate in the Affairs of the CD-14 Enterprise"</u>

A person "conducts" the affairs of an enterprise if that person, directly or indirectly, operates, manages, or directs the affairs of an enterprise. A person "participates" in the conduct of the affairs of an enterprise if that person, directly or indirectly, performs acts, functions, or duties

/ / /

20

1   that are involved or relate in some way in the operation or
2   management of the enterprise.
3   Definition of "Pattern of Racketeering Activity"
4        A "pattern of racketeering activity" is established by
5   the following: (1) at least two acts of racketeering were
6   committed within a period of ten years of each other; (2) the
7   acts of racketeering were related to each other, meaning
8   there was a relationship between or among the acts of
9   racketeering; and (3) the acts of racketeering amounted to or
10  posed a threat of continued criminal activity.  With respect
11  to (2), acts of racketeering are related if they embraced the
12  same or similar purposes, results, participants, victims, or
13  methods of commission, or were otherwise interrelated by
14  distinguishing characteristics.  Sporadic, widely separated,
15  or isolated criminal acts do not form a pattern of
16  racketeering activity.  Two racketeering acts may be
17  sufficient, but are not necessarily sufficient, to establish
18  a pattern of racketeering activity.  The racketeering acts
19  may be the same type of crime, so long as they are distinct
20  acts.
21       The term "racketeering activity" as used in these
22  instructions refers to certain crimes chargeable under
23  provisions of federal and state law that are listed in the
24  RICO Act.  The government has alleged that a member or
25  members of the CD-14 Enterprise would engage in the following
26  six types of racketeering activity:
27       1.   Honest Services Wire Fraud, in violation of 18
28       U.S.C. §§ 1343, 1346;

21

1        2.   Bribery in violation of California Law,

2    including:

3            (a)   Giving or Offering a Bribe to a

4    Ministerial Officer, Employee, or Appointee of the City

5    of Los Angeles (or to someone acting on his behalf), in

6    violation of California Penal Code § 67.5;  and

7            (b) Giving or Offering a Bribe to a

8    Councilmember of the City of Los Angeles, or Receiving or

9    Agreeing to Receive a Bribe by a Councilmember of the

10   City of Los Angeles (or someone acting on his behalf), in

11   violation of California Penal Code § 165;

12       3.   Extortion, in violation of 18 U.S.C. § 1951;

13       4.   Interstate or Foreign Travel in Aid of

14   Racketeering Enterprise, in violation of 18 U.S.C. §

15   1952;

16       5.   Money Laundering, in violation of 18 U.S.C. §

17   1956; and

18       6.   Obstruction of Justice and Witness Tampering,

19   in violation of 18 U.S.C. § 1512.

20   You must find that defendant agreed that one or more

21   members of the conspiracy, not necessarily the defendant,

22   would commit at least two racketeering acts in furtherance of

23   the conspiracy.  You must all agree beyond a reasonable doubt

24   as to which type or types of racketeering activity you find

25   that the defendant agreed would be committed by one or more

26   members of the conspiracy, for example, at least two acts of

27   Honest Services Wire Fraud, or Bribery under California Law,

28   or Extortion, or Interstate or Foreign Travel in Aid of

                              22

Racketeering Enterprise, or Money Laundering, or Obstruction of Justice – Witness Tampering, or one of each, or any combination thereof. You may consider the evidence presented of racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs to determine whether the defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.

The government is not required to prove that defendant personally committed or agreed to personally commit any act or acts of racketeering activity. Indeed, it is not necessary for you to find that the purpose of the conspiracy was achieved or that any racketeering acts were committed at all. However, the evidence must establish that the defendant agreed and intended to help further or facilitate a scheme which, if completed, would include a pattern of racketeering activity committed by at least one other conspirator.

Definition of "Interstate or Foreign Commerce"

The government must prove that the CD-14 Enterprise would engage in, or its activities would affect, interstate or foreign commerce. Interstate commerce includes the movement of goods, services, money, and individuals between states. Foreign commerce includes the movement of goods, services, money, and individuals from one country to another. These goods and services can be legal or illegal. Only a minimal effect on commerce is required and the effect need only be probable or potential, not actual. It is not necessary to prove that the defendant personally engaged in interstate or

foreign commerce or that defendant's own acts affected interstate or foreign commerce as long as the enterprise's acts would have had such effect.

This requirement is met if the enterprise or its activities would engage in or would involve: (1) use of interstate communication devices (e.g., telephones, the Internet); (2) interstate or foreign transmission of money; or (3) interstate or foreign travel by members of the enterprise in furtherance of the activities or interests of the enterprise. The government is not required to prove that the enterprise actually engaged in, or its activities actually affected, interstate or foreign commerce. Rather, the government need only prove that defendant joined the conspiracy and that if the purpose of the conspiracy was achieved, the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

Defendant's Agreement Regarding Racketeering Acts

The government must prove that defendant agreed that one or more members of the conspiracy, not necessarily the defendant, would commit at least two racketeering acts in furtherance of the conspiracy.

The defendant need not have personally participated in the operation or management of the CD-14 Enterprise or have agreed to personally participate in the operation or management of the CD-14 Enterprise.

COURT'S INSTRUCTION NO. 19.


For purposes of Count One, it is important that you understand how the various forms of alleged "racketeering activity" are defined. Accordingly, I will now instruct you on the law defining the types of alleged racketeering activity alleged. With respect to the first type of racketeering alleged in the indictment, honest services wire fraud, the government alleges that defendant committed, and aided and abetted others in committing, honest services wire fraud, as charged in Counts Two, Three, Four, Twelve, Thirteen, Fourteen, and Fifteen of the indictment. The elements for these counts appear in later instructions. If you find defendant guilty of one or more of these counts, you must then determine whether that count or those counts formed part of a pattern of racketeering activity as charged in Count One of the indictment.

COURT'S INSTRUCTION NO. 20.

I will now instruct you on the law defining the second type of racketeering activity alleged in the indictment, bribery under California law, namely: (1) the crime of giving or offering a bribe to a ministerial officer, employee, or appointee of the City of Los Angeles (the "City") (or to someone acting on his behalf), in violation of California Penal Code § 67.5; and (2) the crime of (a) giving or offering a bribe to a Councilmember of the City, or (b) receiving or agreeing to receive a bribe by a Councilmember of the City, in violation of California Penal Code § 165.

For an individual to be guilty of giving or offering a ministerial officer, employee, or appointee of the City in violation of California Penal Code § 67.5, the government must prove each of the following elements beyond a reasonable doubt:

First, the individual gave or offered a bribe to a ministerial officer, employee, or appointee of the City; and

Second, the individual acted with the corrupt intent to unlawfully influence the official act, decision, vote, opinion, or proceeding of the person to whom the bribe was given or offered.

A ministerial officer is an officer who has a clear and mandatory duty involving the performance of specific tasks without the exercise of discretion.

For an individual to be guilty of the crime of (a) giving or offering a bribe to a Councilmember of the City, or (b)

1   receiving or agreeing to receive a bribe by a Councilmember
2   of the City, in violation of California Penal Code § 165, the
3   government must prove each of the following elements beyond a
4   reasonable doubt:

5       First, the individual (a) gave or offered a bribe to a
6   Councilmember of the City, or (b) was a Councilmember of the
7   City who asked for, received, or agreed to receive a bribe;

8       Second, the individual (a) acted with the corrupt intent
9   to unlawfully influence the official act, decision, vote,
10  opinion, or proceeding of the Councilmember to whom the bribe
11  was given or offered, or (b) acted with corrupt intent, that
12  is, asked for, received, or agreed to receive a bribe based
13  upon an understanding that the Councilmember's opinion,
14  judgment, or action upon any official matter on which he may
15  be required to act would be influenced.

16      As used here, "bribe" means something of present or
17  future value or advantage valued over $950, or a promise to
18  give such a thing, that is given or offered with the corrupt
19  intent to unlawfully influence the public or official action,
20  vote, decision, or opinion of the person to whom the bribe is
21  given or offered.

22      A person acts with corrupt intent when he or she acts to
23  wrongfully gain a financial or other advantage for himself,
24  herself, or someone else.

25      The official act, decision, vote, opinion, or proceeding
26  the individual sought to influence must have related to an
27  existing subject that could have been brought before the
28  person to whom the bribe was given in his or her official

capacity.   It does not have to relate to a duty specifically given by statute to the person to whom the bribe was given.

Offering a bribe or requesting, receiving, or agreeing to receive a bribe does not require specific words or behavior, as long as the language used and the circumstances clearly show an intent to bribe or that the person is seeking a bribe from someone else.

The thing offered does not need to actually be given or exist at the time it is offered.   The thing agreed to be received does not need to actually be received or exist at the time it is agreed to be received.

The person who is offered the bribe does not need to have accepted the bribe, performed the requested act, deliberately failed to perform a duty, or actually have had the authority or ability to perform the requested act.

COURT'S INSTRUCTION NO. 21.


I will now instruct you on the law defining the third type of racketeering activity alleged in the indictment, namely, extortion, in violation of Title 18, United States Code, Section 1951. For an individual to be guilty of this crime, the government must prove each of the following elements beyond a reasonable doubt:

First, the individual induced or intended to induce the victim to part with property by wrongful threat of economic harm;

Second, the individual acted with the intent to obtain property; and

Third, commerce from one state to another was or would have been affected in some way.

A threat is wrongful if it is unlawful or if the individual knew he was not entitled to obtain the property.

COURT'S INSTRUCTION NO. 22.


I will now instruct you on the law defining the fourth type of racketeering activity alleged in the indictment, namely, interstate or foreign travel in aid of racketeering enterprise, in violation of Title 18, United States Code, Section 1952(a)(3).  For an individual to be guilty of this crime, the government must prove each of the following elements beyond a reasonable doubt:

First, an individual traveled, or caused another to travel, from one state to another, or from the United States to some place outside the United States;

Second, an individual did so with intent to promote, manage, establish, carry on, or facilitate an unlawful activity, including bribery in violation of California law, including California Penal Code sections 67.5 or 165; and

Third, an individual performed the act to promote, manage, establish, carry on, or facilitate bribery in violation of California Penal Code sections 67.5 or 165.

The government does not need to prove that the unlawful activity was the only or even primary reason the individual traveled.

COURT'S INSTRUCTION NO. 23.

I will now instruct you on the law defining the fifth type of racketeering activity alleged in the indictment, namely, money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B). For an individual to be guilty of this crime, the government must prove each of the following elements beyond a reasonable doubt:

First, the individual conducted or intended to conduct a financial transaction involving property that represented the proceeds of a bribery or honest services wire fraud;

Second, the individual knew that the property represented the proceeds of some form of unlawful activity; and

Third, the individual knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds to avoid a transaction reporting requirement under state or federal law.

A financial transaction is a transaction involving (a) the movement of funds by wire or other means that affects interstate or foreign commerce in any way, (b) one or more monetary instruments that affect interstate or foreign commerce in any way, or (c) the use of a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way.

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the individual knew that the property involved in the transaction

31

represented proceeds from some form, though not necessarily
which form, of activity that constitutes a felony.   I
instruct you that bribery and honest services wire fraud are
felonies.

The laws of the United States require the reporting of
the receipt of more than $10,000 in cash in a single
transaction or in related transactions.

COURT'S INSTRUCTION NO. 24.

I will now instruct you on the law defining the sixth type of racketeering activity alleged in the indictment, namely, obstruction of justice through witness tampering, in violation of Title 18, United States Code, Sections 1512(b)(1), (b)(2) & (b)(3).

For an individual to be guilty under Section 1512(b)(1), the government must prove each of the following elements beyond a reasonable doubt:

First, the individual knowingly used intimidation, threatened, or corruptly persuaded a person, or attempted to do so, or engaged in misleading conduct toward another person;

Second, the individual acted with intent to influence or prevent a person from providing testimony in an official proceeding, that is, a grand jury proceeding;

Third, the individual knew or should have known that a grand jury investigation was pending or was likely to be instituted; and

Fourth, that the grand jury investigation was a federal proceeding.  However, the government does not need to prove that the individual knew that the proceeding was a federal proceeding.

* * *

For an individual to be guilty under Section 1512(b)(2), the government must prove each of the following elements beyond a reasonable doubt:

First, the individual knowingly used intimidation, threatened, or corruptly persuaded a person, or attempted to do so, or engaged in misleading conduct toward another person;

Second, the individual acted with intent to: (a) cause or induce the person to withhold testimony or a record or document from an official proceeding, that is, a grand jury investigation; (b) cause or induce the person to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in a grand jury investigation; or (c) cause or induce the person to evade legal process summoning the person to appear as a witness or to produce a record or document in a grand jury investigation;

Third, the individual knew or should have known that a grand jury investigation was pending or was likely to be instituted; and

Fourth, that the grand jury investigation was a federal proceeding.  However, the government does not need to prove that the individual knew that the proceeding was a federal proceeding.

* * *

For an individual to be guilty under Section 1512(b)(3), the government must prove each of the following elements beyond a reasonable doubt:

First, the individual knowingly corruptly persuaded a person, or attempted to do so, or engaged in misleading conduct toward another person;

34

Second, the individual acted with intent to hinder, delay, or prevent a person from communicating to a law enforcement authority information relating to the commission or possible commission of an offense;

Third, there was a reasonable likelihood that at least one of the communications targeted by the individual would have been made to a federal officer; and

Fourth, the information that would have been communicated related to the possible commission of a federal offense.

To "corruptly persuade" means to corrupt another person by persuading him or her to violate a legal duty, to accomplish an unlawful end or unlawful result, or to accomplish some otherwise lawful end or lawful result in an unlawful manner.

1                    COURT'S INSTRUCTION NO. 25.

2

3       Defendant is charged in Count One of the indictment with
4  conspiracy to conduct and participate in the conduct of the
5  affairs of an enterprise through a pattern of racketeering
6  activity.  A conspiracy is a kind of criminal partnership.
7  The crime of conspiracy is the agreement to do something
8  unlawful; it does not matter whether the crime agreed upon
9  was committed or whether the defendant was aware that his
10 actions were illegal.

11      For a conspiracy to have existed, it is not necessary
12 that the conspirators made a formal agreement or that they
13 agreed on every detail of the conspiracy.  It is not enough,
14 however, that they simply met, discussed matters of common
15 interest, acted in similar ways, or perhaps helped one
16 another.   With respect to a RICO conspiracy, you must find
17 that there was an agreement between two or more persons that
18 the CD-14 Enterprise would exist and that a member or members
19 of the CD-14 Enterprise would conduct or participate in the
20 affairs of the CD-14 Enterprise, directly or indirectly,
21 through a pattern of racketeering activity.

22      One becomes a member of a conspiracy by willfully
23 participating in the unlawful plan with the intent to further
24 or facilitate the purpose of the conspiracy, even though the
25 person does not have full knowledge of all the details of the
26 conspiracy.  Furthermore, one who willfully joins an existing
27 conspiracy is as responsible for it as the originators.  On
28 the other hand, one who has no knowledge of a conspiracy, but

happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

A conspiracy may be proven by circumstantial evidence and may exist without a formal agreement.  The elements may therefore be established by evidence of coordinated activities between the conspirators.

In determining whether the defendant was a member of a charged conspiracy, you may consider and weigh all of the evidence presented at trial, including, without limitation, the defendant's own conduct and actions, the defendant's own statements and declarations, and the acts and statements of other alleged co-conspirators that were made during the course of the conspiracy and in furtherance of it.

COURT'S INSTRUCTION NO. 26.

The defendant is charged in Counts Twelve and Thirteen of the indictment with honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. Honest services wire fraud is also a type of racketeering activity alleged in Count One of the indictment.  For the defendant to be found guilty of honest services wire fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a financial benefit in exchange for at least one official act by the defendant in connection with the approval of the redevelopment of the Luxe Hotel; the "exchange" may be express or may be implied from all the surrounding circumstances;

Third, the defendant owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, the defendant acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services; an intent to defraud is an intent to deceive and cheat;

Fifth, the defendant's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, the defendant used or caused to be used, an interstate wire communication to carry out or attempt to carry out the scheme or plan.

Interstate Wire Communications

The interstate wire communication charged in Count Twelve of the indictment is a bank wire of approximately $36,432.74 transmitted on or about October 28, 2017 from Synergy Chase Bank account ending in 7753 to defendant's East West Bank account ending in 9279.

The interstate wire communication charged in Count Thirteen of the indictment is a bank wire of approximately $33,507.23 transmitted on or about December 27, 2017 from Synergy Chase Bank account ending in 7753 to defendant's East West Bank account ending in 9279.

A wire communication is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

Scheme to Defraud

In determining whether a scheme to defraud exists, you may consider not only the defendant's and co-schemers' words

39

1  and statements, but also the circumstances in which they are
2  used as a whole.
3  <u>Official Act</u>
4       "Official act" means any decision or action on a
5  question, matter, cause, suit, proceeding, or controversy
6  involving the formal exercise of governmental power.  The
7  question, matter, cause, suit, proceeding, or controversy
8  must be pending, or be able by law to be brought, before a
9  public official, and the question, matter, cause, suit,
10  proceeding, or controversy must be something specific and
11  focused, rather than a broad policy objective.
12       The official's decision or action may include using his
13  official position to exert pressure on another official to
14  perform an official act, or to advise another official,
15  knowing or intending that such advice will form the basis for
16  an official act by another official.  The bribe recipient
17  need not be the final decisionmaker.
18       The government does not need to prove that the official
19  ever actually intended to perform an official act or that the
20  official ever did, in fact, perform an official act.
21       Merely arranging a meeting, hosting an event, or giving a
22  speech does not qualify as the taking of a specific action.
23  <u>Public Official and Fiduciary Duty</u>
24       A "public official," includes an agent of a State or
25  local government, or any agency thereof, that is, a person
26  authorized to act on behalf of a government, including an
27  employee, officer, manager, or representative.
28

40

A public official serves as a trustee for the citizens and the local government, and thus owes a fiduciary duty to the citizens and the local government.  A public official has a fiduciary duty to act only for the benefit of the public.

COURT'S INSTRUCTION NO. 27.

The defendant is charged in Counts Two, Three, Four, Fourteen, and Fifteen of the indictment with aiding and abetting honest services wire fraud in violation of Title 18, United States Code, Sections 1343, 1346, and 2(a).

A defendant may be found guilty of honest services wire fraud, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime.

To prove a defendant guilty of honest services wire fraud by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed honest services wire fraud;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of honest services wire fraud;

Third, the defendant acted with the intent to facilitate honest services wire fraud; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with

1  the knowledge and intention of helping that person commit
2  honest services wire fraud.
3      A defendant acts with the intent to facilitate the crime
4  when the defendant actively participates in a criminal
5  venture with advance knowledge of the crime.
6
7  Someone Else Committed Honest Services Wire Fraud – First
8  Element
9      The government alleges that defendant aided and abetted
10 (1) José Huizar (Counts Two, Three, Four, Fourteen, Fifteen);
11 (2) Shen Zhen New World I, LLC ("Shen Zhen") (Counts Two,
12 Three, and Four); and/or (3) Hazens (Counts Fourteen and
13 Fifteen), with respect to at least one element of honest
14 services wire fraud.
15
16 ***José Huizar's Honest Services Fraud Involving Shen Zhen***
17     To demonstrate that José Huizar committed honest services
18 wire fraud as charged in Counts Two, Three, and Four, the
19 government must prove the following:
20     First, José Huizar devised or knowingly participated in a
21 scheme or plan to deprive the City of Los Angeles or its
22 citizens of their right of honest services;
23     Second, the scheme or plan consisted of a financial
24 benefit in exchange for at least one official act by José
25 Huizar in connection with the approval of the redevelopment
26 of the L.A. Grand Hotel (the "exchange" may be express or may
27 be implied from all the surrounding circumstances);
28

43

Third, José Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, José Huizar acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services (an intent to defraud is an intent to deceive and cheat);

Fifth, José Huizar's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, José Huizar used or caused to be used an interstate wire communication to carry out or attempt to carry out the scheme or plan.

### *José Huizar's Honest Services Fraud Involving Hazens*

To demonstrate that José Huizar committed honest services wire fraud as charged in Counts Fourteen and Fifteen, the government must prove the following:

First, José Huizar devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a financial benefit in exchange for José Huizar's explicit promise to perform a particular official act or acts in connection with the approval of the redevelopment of the Luxe Hotel (the terms of the "exchange" must be clear and unambiguous, but need not be verbally explicit);

Third, José Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, José Huizar acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services (an intent to defraud is an intent to deceive and cheat);

Fifth, José Huizar's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, José Huizar used or caused to be used an interstate wire communication to carry out or attempt to carry out the scheme or plan.

**_Shen Zhen Honest Services Fraud Involving José Huizar_**

To demonstrate that Shen Zhen committed honest services wire fraud as charged in Counts Two, Three, and Four, including through the acts of their agents, the government must prove the following:

First, Shen Zhen devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a financial benefit from Shen Zhen in exchange for at least one official act by José Huizar in connection with the approval of the redevelopment of the L.A. Grand Hotel (the "exchange" may be express or may be implied from all the surrounding circumstances);

Third, José Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

45

Fourth, Shen Zhen acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services (an intent to defraud is an intent to deceive and cheat);

Fifth, Shen Zhen's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, Shen Zhen used or caused to be used an interstate wire communication to carry out or attempt to carry out the scheme or plan.

### Hazen's Honest Services Fraud Involving José Huizar

To demonstrate that Hazens committed honest services wire fraud as charged in Counts Fourteen and Fifteen, including through the acts of their agents, the government must prove the following:

First, Hazens devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a financial benefit from Hazens in exchange for José Huizar's explicit promise to perform a particular official act or acts in connection with the approval of the redevelopment of the Luxe Hotel (the terms of the "exchange" must be clear and unambiguous, but need not be verbally explicit);

Third, José Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

46

Fourth, Hazens acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services (an intent to defraud is an intent to deceive and cheat);

Fifth, Hazens' act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, Hazens used or caused to be used, an interstate wire communication to carry out or attempt to carry out the scheme or plan.

Interstate Wire Communications

The interstate wire communication charged in Count Two of the indictment is a bank wire of $570,000 transmitted on or about September 23, 2014 from José Huizar's East West Bank account ending in 0407 to a Wells Fargo account ending in 7209.

With respect to Count Two only, in order for the defendant to be found guilty, the government also must prove beyond a reasonable doubt that the scheme or plan to defraud affected at least one financial institution. The scheme or plan "affects" a financial institution if it exposes a financial institution to a new or increased risk of loss. A financial institution need not have actually suffered a loss in order to have been affected by the scheme or plan.

The interstate wire communication charged in Count Three of the indictment is an e-mail sent on or about October 19, 2016 from Ricky Zheng to José Huizar, forwarding an e-mail

47

and attachment from Wei Huang regarding the redevelopment of the L.A. Grand Hotel.

The interstate wire communication charged in Count Four of the indictment is an e-mail sent on or about December 19, 2016 from José Huizar to Ricky Zheng providing recommendations for consultants for the redevelopment of the L.A. Grand Hotel.

The interstate wire communication charged in Count Fourteen of the indictment is an e-mail sent on or about January 9, 2018 from George Esparza to José Huizar, attaching two documents titled "Copy of Commitments" and "IE Huizar Strategy."

The interstate wire communication charged in Count Fifteen of the indictment is an e-mail sent on or about January 16, 2018 from José Huizar to his fundraiser, attaching a document titled "Initial Commitments to PAC."

Campaign Contributions

Counts Fourteen and Fifteen concern alleged financial benefits in the form of campaign contributions.  With respect to these counts,  the Government must prove that the campaign contribution was solicited, demanded, accepted, or agreed to have been accepted in exchange for the public official's explicit promise to perform a particular official act or the campaign contribution was given, offered, or agreed to have been given in exchange for an explicit promise by the public official to perform a particular official act.

48

1    In other words, a public official soliciting, demanding,
2    accepting, or agreeing to accept a campaign contribution does
3    not, in itself, constitute a violation of the law even though
4    the donor has business pending before the official.  However,
5    if a public official solicits, demands, accepts, or agrees to
6    accept a campaign contribution in exchange for a specific
7    requested exercise of official power, such a demand or
8    acceptance does constitute a violation of the law regardless
9    of whether the payment is made in the form of a campaign
10   contribution.
11   Similarly, an individual giving, offering, or agreeing to
12   give a campaign contribution to a public official does not,
13   in itself, constitute a violation of the law even though the
14   individual has business pending before the official.
15   However, if an individual gives, offers, or agrees to give a
16   campaign contribution to a public official in exchange for a
17   specific requested exercise of official power, the giving of,
18   the offering of, or the agreement to give such a contribution
19   does constitute a violation of the law regardless of whether
20   the payment is made in the form of a campaign contribution.
21   The agreement must be clear and unambiguous but need not
22   be verbally explicit.  In addition, the promise need not
23   actually be carried out.  It is sufficient if the promise to
24   act is given in exchange for the campaign contribution.
25
26   In prior instructions, I have explained the law relating
27   to honest services wire fraud and defined the terms "wire
28

49

1  communication," "scheme to defraud," "official act," and
2  "public official" and "fiduciary duty."

COURT'S INSTRUCTION NO. 28.

If you decide that the defendant was a knowing participant or member of a scheme to defraud and that the defendant had the intent to defraud, the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.

For the defendant to be guilty of an offense committed by a co-schemer in furtherance of the scheme, the offense must be one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.

51

COURT'S INSTRUCTION NO. 29.


The government alleges that defendant aided and abetted corporate entities with respect to at least one element of honest services wire fraud.  Specifically, the government alleges that defendant aided and abetted (1) Shen Zhen with respect to Counts Two, Three, and Four; and (2) Hazens with respect to Counts Fourteen and Fifteen.

Corporate entities, like individuals, may be found liable of a criminal offense.  Under the law a corporation is considered a person and all persons are equal before the law. A corporation is entitled to the same fair and conscientious consideration by you as any other person.

A corporate entity can act only through its agents, that is, its members, managers, directors, officers, employees, and other persons authorized to act for it or with authority to direct others to act for it.  The knowledge obtained by agents of a corporate entity acting within the scope of their employment is imputed to the corporate entity.  Accordingly, if a specific agent knows something within the scope of his or her employment, then the corporate entity can be said to know the same thing.

To find a corporate entity criminally liable, you must find beyond a reasonable doubt that:

First, each element of the crime was committed by one or more of the corporate entity's agents;

Second, in committing those acts the agent(s) intended, at least in part, to benefit the corporate entity; and

52

Third, each act was within the scope of employment of the agent who committed it.

For an act to be within the scope of an agent's employment, it must relate directly to the performance of the agent's general duties for the corporate entity. It is not necessary for the act itself to have been authorized by the corporate entity.

If an agent was acting within the scope of his or her employment, the fact that an agent's act was illegal, contrary to his or her employer's instructions, or against the corporate entity's policies will not relieve the corporate entity of criminal responsibility for it.

COURT'S INSTRUCTION NO. 30.

The defendant is charged in Count Twenty-Eight of the indictment with bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2).

In order to prove that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant was an agent of a local government, specifically, the City of Los Angeles;

Second, the defendant solicited, demanded, accepted, or agreed to accept a thing of value; namely, approximately $69,939 in check payments to LABXG, Inc. and $15,000 in check payments to Jeremy Chan;

Third, the defendant acted corruptly, that is, with an intent to be influenced in connection with any business, transaction, or series of transactions of the City involving anything of value of $5,000 or more; specifically, the government must prove that the defendant intended to be influenced in connection with the redevelopment of the Luxe Hotel, including in exerting pressure on or advising officials from City Council, the City of Los Angeles Planning Commission, Planning Department, or other departments to take an official act to benefit the redevelopment of the Luxe Hotel; and

Fourth, the City received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy,

54

1  loan, guarantee, insurance, or other form of Federal
2  assistance in any one-year period.
3      The term "agent" means a person authorized to act on
4  behalf of a local government, including an employee, officer,
5  manager, or representative.
6      The term "local" means of, or pertaining to, a political
7  subdivision within a State of the United States.
8      The phrase "in any one-year period" means a continuous
9  period that commences no earlier than 12 months before the
10 commission of the offense or that ends no later than 12
11 months after the commission of the offense.  Such period may
12 include time both before and after the commission of the
13 offense.
14     The government does not need to prove that any of the
15 Federal benefits in excess of $10,000 received by the City of
16 Los Angeles were misappropriated or otherwise connected to
17 the commission of the offense.
18
19
20
21
22
23
24
25
26
27
28

COURT'S INSTRUCTION NO. 31.

The defendant is charged in Counts Twenty-Two and Twenty-Seven of the indictment with aiding and abetting bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Sections 666(b)(1)(B), 2(a).

A defendant may be found guilty of bribery concerning programs receiving federal funds, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission.  To "aid and abet" means intentionally to help someone else commit a crime.

To prove a defendant guilty of bribery concerning programs receiving federal funds by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed bribery concerning programs receiving federal funds;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of bribery concerning programs receiving federal funds;

Third, the defendant acted with the intent to facilitate bribery concerning programs receiving federal funds; and

Fourth, the defendant acted before the crime was completed.

In Instruction No. 27, I have explained the law of aiding and abetting.

Someone Else Committed Bribery Concerning Programs Receiving Federal Funds - First Element

In Counts Twenty-Two and Twenty-Seven, the government alleges that defendant aided and abetted José Huizar to commit bribery concerning programs receiving federal funds.

***Jose Huizar Bribery Involving Shen Zhen***

To demonstrate that José Huizar committed bribery concerning programs receiving federal funds as charged in Count Twenty-Two, the government must prove the following:

First, José Huizar was an agent of a local government -- specifically, the City of Los Angeles;

Second, José Huizar solicited, demanded, accepted, or agreed to accept a thing of value; namely, casino gambling chips, accommodations, or travel expenses, or approximately $575,000 in collateral applied to Huizar's personal loan from East West Bank;

Third, José Huizar acted corruptly, that is, with an intent to be influenced in connection with any business, transaction, or series of transactions of the City involving anything of value of $5,000 or more; specifically, the government must prove that the defendant intended to be influenced in connection with the redevelopment of the L.A. Grand Hotel, including in: (1) presenting motions and resolutions in various City committees to benefit the redevelopment of the L.A. Grand Hotel; (2) voting on the

1   redevelopment of the L.A. Grand Hotel in various City
2   committees, including the PLUM Committee, and City Council;
3   (3) taking action in the PLUM Committee to expedite the
4   approval process of the redevelopment of the L.A. Grand
5   Hotel; or (4) exerting pressure on or advising other City
6   officials to take an official act to benefit the
7   redevelopment of the L.A. Grand Hotel; and

8        Fourth, the City received benefits in excess of $10,000
9   under a Federal program involving a grant, contract, subsidy,
10  loan, guarantee, insurance, or other form of Federal
11  assistance in any one-year period.

12

13  ***Jose Huizar Bribery Involving Hazens***

14       To demonstrate that José Huizar committed bribery
15  concerning programs receiving federal funds as charged in
16  Count Twenty-Seven, the government must prove the following:

17       First, José Huizar was an agent of a local government --
18  specifically, the City of Los Angeles;

19       Second, José Huizar solicited, demanded, accepted, or
20  agreed to accept a thing of value, namely a $100,000 campaign
21  contribution commitment to benefit Richelle Rios' campaign
22  for the CD-14 seat, in exchange for his explicit promise to
23  perform at least one of the following particular official
24  acts: (1) voting to approve the Luxe Hotel Project in the
25  PLUM Committee and City Council, or (2) presenting a
26  resolution in the PLUM Committee to benefit the Luxe Hotel
27  Project, with all of you agreeing on the particular official
28  act or acts that Huizar promised to perform (the terms of the

1  "exchange" must be clear and unambiguous, but need not be

2  verbally explicit);

3      Third, José Huizar acted corruptly, that is, with an

4  intent to be influenced in connection with any business,

5  transaction, or series of transactions of the City involving

6  anything of value of $5,000 or more, namely, with an intent

7  to: (1) vote to approve the Luxe Hotel Project in the PLUM

8  Committee and City Council or (2) present a resolution in the

9  PLUM Committee to benefit the Luxe Hotel Project; and

10     Fourth, the City received benefits in excess of $10,000

11  under a Federal program involving a grant, contract, subsidy,

12  loan, guarantee, insurance, or other form of Federal

13  assistance in any one-year period.

14

15     In Instruction No. 30, I have explained the crime of

16  bribery concerning programs receiving federal funds and

17  defined the terms "agent," "local," and "in any one-year

18  period."

19

20  Campaign Contributions

21     Count Twenty-Seven concerns an alleged thing of value in

22  the form of a campaign contribution.  With respect to this

23  count,  the Government must prove that the campaign

24  contribution was solicited, demanded, accepted, or agreed to

25  have been accepted in exchange for the public official's

26  explicit promise to perform a particular official act or

27  acts.

28

1    A public official soliciting, demanding, accepting, or
2  agreeing to accept a campaign contribution does not, in
3  itself, constitute a violation of the law even though the
4  donor has business pending before the official.  However, if
5  a public official solicits, demands, accepts, or agrees to
6  accept a campaign contribution in exchange for a specific
7  requested exercise of official power, such a demand or
8  acceptance does constitute a violation of the law regardless
9  of whether the payment is made in the form of a campaign
10 contribution.

11    The agreement must be clear and unambiguous but need not
12 be verbally explicit.  In addition, the promise need not
13 actually be carried out.  It is sufficient if the promise to
14 act is given in exchange for the campaign contribution.

COURT'S INSTRUCTION NO. 32.

The fact that an act is motivated, in part, by friendship is no defense.  Actions taken with a dual motive constitute bribery so long as one of the motives is to influence the public official.  It is no legal defense that the official acts were good for the community or were acts that the public official would have or should have taken without the bribe. On the other hand, if actions were entirely motivated by legitimate reasons, like friendship, then they do not constitute bribery.

1                    COURT'S INSTRUCTION NO. 33.

2

3       Each member of the conspiracy is responsible for the
4  actions of the other conspirators performed during the course
5  and in furtherance of the conspiracy.  If one member of a
6  conspiracy commits a crime in furtherance of a conspiracy,
7  the other members have also, under the law, committed that
8  crime.

9       Therefore, you may find the defendant guilty of Honest
10 Services Wire Fraud as charged in Counts Two, Three, Four,
11 Twelve, Thirteen, Fourteen, and Fifteen of the indictment
12 and/or Bribery Concerning Programs Receiving Federal Funds as
13 charged in Counts Twenty-Two, Twenty-Seven, and Twenty-Eight
14 of the indictment if the government has proved each of the
15 following elements beyond a reasonable doubt:

16      First, a person named in the count committed the crime of
17 Honest Services Wire Fraud or Bribery Concerning Programs
18 Receiving Federal Funds as alleged in that count;

19      Second, the person was a member of the RICO conspiracy
20 charged in Count One of the indictment;

21      Third, the person committed the crime of Honest Services
22 Wire Fraud or Bribery Concerning Programs Receiving Federal
23 Funds in furtherance of the RICO conspiracy;

24      Fourth, the defendant was a member of the RICO conspiracy
25 at the time the offense charged in the Honest Services Wire
26 Fraud or Bribery Concerning Programs Receiving Federal Funds
27 count was committed; and

28

                                62

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

COURT'S INSTRUCTION NO. 34.

With respect to Honest Services Wire Fraud as charged in Counts Two, Three, Four, Twelve, Thirteen, Fourteen, and Fifteen of the indictment and Bribery Concerning Programs Receiving Federal Funds as charged in Counts Twenty-Two, Twenty-Seven, and Twenty-Eight of the indictment, defendant may be found guilty of those crimes even if the defendant did not personally commit the acts constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States. A defendant who puts in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.

COURT'S INSTRUCTION NO. 35.

The defendant is charged in Count Thirty-Nine of the indictment with knowingly and willfully making a false statement in a matter within the jurisdiction of a governmental agency or department in violation of Title 18, United States Code, Section 1001(a)(2).  For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI");

Third, the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and

Fourth, the statement was material to the activities or decisions of the FBI; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.  The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.

All of you must agree as to which statement or statements were false and material.

The materiality of defendant's false statements should be assessed at the moment he uttered them.  A delayed admission does not reduce the materiality of the earlier false statements.

COURT'S INSTRUCTION NO. 36.

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

COURT'S INSTRUCTION NO. 37.


When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially.  You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances.  Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may

consciously reject but may be expressed without conscious
awareness, control, or intention.

It is your duty as jurors to consult with one another and
to deliberate with one another with a view towards reaching
an agreement if you can do so.  During your deliberations,
you should not hesitate to reexamine your own views and
change your opinion if you become persuaded that it is wrong.

1          COURT'S INSTRUCTION NO. 38.

2

3      Because you must base your verdict only on the evidence
4 received in the case and on these instructions, I remind you
5 that you must not be exposed to any other information about
6 the case or to the issues it involves.  Except for discussing
7 the case with your fellow jurors during your deliberations:

8      Do not communicate with anyone in any way and do not let
9 anyone else communicate with you in any way about the merits
10 of the case or anything to do with it.  This restriction
11 includes discussing the case in person, in writing, by phone,
12 tablet, computer, or any other means, via email, text
13 messaging, or any Internet chat room, blog, website or any
14 other forms of social media.  This restriction applies to
15 communicating with your family members, your employer, the
16 media or press, and the people involved in the trial.  If you
17 are asked or approached in any way about your jury service or
18 anything about this case, you must respond that you have been
19 ordered not to discuss the matter and to report the contact
20 to the court.

21      Do not read, watch, or listen to any news or media
22 accounts or commentary about the case or anything to do with
23 it; do not do any research, such as consulting dictionaries,
24 searching the Internet or using other reference materials;
25 and do not make any investigation or in any other way try to
26 learn about the case on your own.

27      The law requires these restrictions to ensure the parties
28 have a fair trial based on the same evidence that each party

has had an opportunity to address.  A juror who violates
these restrictions jeopardizes the fairness of these
proceedings.  If any juror is exposed to any outside
information, please notify the court immediately.

COURT'S INSTRUCTION NO. 39.


Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

COURT'S INSTRUCTION NO. 40.

The punishment provided by law for this crime is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

COURT'S INSTRUCTION NO. 41.

A verdict form has been prepared for you.  Please closely follow the instructions on the verdict form, which include requiring you to answer specific questions and make certain findings, if proven, on certain counts.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

COURT'S INSTRUCTION NO. 42.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the guilt of the defendant, until after you have reached a unanimous verdict or have been discharged.