John Hanusz (State Bar No. 277367)
HANUSZ LAW, PC
515 South Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 204-4200
Email: john@hanuszlaw.com

Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorneys for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND SHE WAH CHAN,<br><br>Defendant. | Case No. 20-CR-00326-JFW<br><br>**RAYMOND CHAN'S OBJECTIONS TO THE PRESENTENCE REPORT** |

Raymond Chan, by and through his counsel of record, John Hanusz and Michael G. Freedman, hereby files the following objections to the presentence report. The report was filed on May 6, 2024.

These objections are based on the attached Memorandum of Points and Authorities in support, all files and records in this case, and such argument and evidence as may be presented to the Court at the sentencing hearing in this matter.

Dated: May 20, 2024          Respectfully submitted,

*/s/ John Hanusz*
JOHN HANUSZ

*/s/ Michael G. Freedman*
MICHAEL G. FREEDMAN

Attorneys for Raymond Chan

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 27, 2024, Raymond Chan was found guilty after a jury trial of 12 counts relating to the CD-14 Racketeer Influenced and Corrupt Organizations (RICO) conspiracy. The Probation Office determined that the total offense level was 41. In making this finding, it erroneously applied a number of sentencing enhancements. PSR ¶¶ 91-111. Prior to sentencing, Chan will file his sentencing memorandum to address the calculation of the Sentencing Guidelines and the application of the Section 3553(a) factors, but initially submits the following objections to the presentence report (PSR) pursuant to Federal Rule of Criminal Procedure Rule 32(f).

## II. LEGAL OBJECTIONS

### A. Application of U.S.S.G. § 2C1.1(b)(2), § 2B1.1(b)(1)(I)

The Probation Office calculated a loss amount of $1,949,565 in bribe payments from four developers. PSR ¶ 97. This amount is a gross exaggeration of Chan's liability. The guideline does not value loss based on simply what was paid by the developers; instead, it asks this Court to arrive at a value based on payments/benefits received or obtained by the defendant or others acting with the defendant. U.S.S.G. § 2C1.1(b)(2).

While Chan was convicted of facilitating benefits for others, Chan did not himself receive or obtain many benefits or payments from his actions. For instance, he was not "acting with" Huizar such that he went on any of the trips that were intended to benefit Huizar. Nor was he given a share in any of the money/chips that went to Huizar. The only time Chan obtained any payments for his efforts was through his post-retirement work with Synergy. As far as the evidence demonstrated, Chan did not obtain more than $69,939 in payments

through his work with Synergy. PSR ¶ 55-57. The guidelines permit only a four-level enhancement for that loss calculation.

The remaining amount is derived from benefits that Chan did not receive. For example, $919,562 in benefits were paid to Huizar as part of the L.A. Grand Hotel scheme. Another $965,571 in benefits were payments related to the Luxe Hotel that Chiang, Huizar, and others received. Chan cannot and should not be held liable for benefits and payments he never received. An enhancement of four levels, instead of 16, represents the true gains that Chan received.

**B.     Application of U.S.S.G. § 2C1.1(b)(3)**

Citing U.S.S.G. § 2C1.1(b)(3), the Probation Office also applied a four-level enhancement for an offense involving an elected public official or any public official in a high-level decision-making or sensitive position. PSR ¶ 98-99. Application note 4 provides that this enhancement applies to those officials who have "direct authority to make decisions…." U.S.S.G. § 2C1.1(b)(3), app. n. 4(A). Here, the Probation Office relies on Chan's role as the General Manager of LADBS, where he oversaw building permit application and approval processes. However, California law states that the issuance of building permits "shall be presumed to be ministerial." Cal. Code Regs. Tit 14 § 15268(b)(1). California law further defines "ministerial" as "a governmental decision involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project." Cal. Code Regs. Tit. 14 § 15369. Moreover, "the public official merely applies the law to the facts as presented but uses no special discretion or judgment in reaching a decision." *Id.* No evidence was presented indicating that Chan was able to make direct decisions on such building permits, especially as to the LA Grand Hotel or Luxe projects. Consequently, this enhancement should not be applied.

### C. Application of U.S.S.G. § 3B1.1(b)

U.S.S.G. § 3B1.1(b) provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." The Probation Office applied this enhancement despite stating that Huizar was the main leader and manager of the enterprise. PSR ¶ 102. In doing so, it relied primarily on the contention that Chan recruited and mentored Chiang and his son, Jeremy Chan. PSR ¶ 103.

Chan did not exercise control over Chiang or Jeremy Chan. Teaching Chiang and his son about local politics and real estate development is not the same thing as exercising "some degree of control or organizational authority" over that person. *United States v. Koenig*, 952 F.2d 267, 274 (9th Cir.1991) (quoting *United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir.1990)). Moreover, the two paragraphs of the PSR that describe Chan's interactions with both Chiang and his son do not evince control or organizational authority. PSR ¶ 49, 58. According to these paragraphs, Chan only advised them on strategy and introduced them to key players and told them how those key players could help their strategy. *See id*. Chan further objects to the PSR's conclusion that he formed an equal partnership with Chiang as far back as 2014. PSR ¶ 49.

Of the many factors listed in the commentary, two important factors are "the claimed right to a larger share of the fruits of the crime and the degree of participation in planning or organizing the offense." U.S.S.G. § 3B1.1 cmt. n. 4. The individual who profited the most from Synergy's work was not Chan, but Chiang. And Huizar was the main beneficiary who planned and organized the enterprise, not Chan. As a result, this enhancement should not be applied to Chan's conduct of mentoring Chiang and introducing him to key influencers. At most, a two-level enhancement under U.S.S.G. § 3B1.1(c) is applicable.

For the reasons set forth above, the defense respectfully submits that Chan's maximum total offense level should be 24.

### D. Application of U.S.S.G. § 3C1.1

The Probation Office applied an obstruction of justice enhancement under U.S.S.G. § 3C1.1 based on Chan's false-statements conviction under 18 U.S.C. § 1001. U.S.S.G. § 3C1.1 permits a two-level enhancement only if "[p]roviding a materially false statement to a law enforcement officer … significantly obstructed or impeded the official investigation or prosecution of the instant offense;" U.S.S.G. § 3C1.1, Application Note 4 (g). Application Note 5 provides examples of non-obstructive conduct. Example 5 (b) states: "making false statements, not under oath, to law enforcement officers, unless Application Note 4(g) above applies:" U.S.S.G. § 3C1.1, Application Note 5 (b).

The two-level adjustment is not warranted unless the false statement resulted "in a significant hindrance to the investigation or to [the defendant's] prosecution." *United States v. Solano-Godines*, 120 F.3d 957, 963 (9th 1997) (*citing United States v. Magana-Guerrero*, 80 F.3d 398, 401 (9th Cir. 1996); *United States v. Benitez*, 34 F.3d 1489, 1497 n.6 (9th Cir. 1994)); *see also United States v. McNally*, 159 F.3d 1215, 1217 (9th Cir. 1998) ("[W]hen a defendant makes a materially false, unsworn statement to a police officer, the false statement must constitute an actual impediment, rather than a mere attempt to impede the investigation.").

Chan's false statements did not hinder his prosecution. A conviction under 18 U.S.C. § 1001(a)(2) only requires that the false statement be material in the sense that it is relevant and could influence an agent, but it "does not actually have to influence the agency and the agency does not actually have to rely on the information for it to be material." *United States v. Silva*, 119 F. App'x 892, 894 (9th Cir. 2004) (*citing United States v. Service Deli Inc.*, 151 F.3d 938, 941 (9th

Cir. 1998)). As described above, the standard under U.S.S.G. § 3C1.1 is much more demanding, and the false statement had to impede the investigation in some way. There is no evidence of that here, so this enhancement should not apply.

### III.   FACTUAL OBJECTIONS

In addition to the legal objections referenced above, Chan makes the following factual objections to the PSR:

- Paragraph 129: the second and third sentences in this paragraph should be modified to make clear that they refer to Chan's schooling in Hong Kong, rather than in Canada.
- Paragraph 130: Chan's wife is 68 years old, not 67 years old.
- Paragraph 131: Chan's son, Jeremy Chan, played no role in his defense at trial. The payments referenced in this paragraph relate to the assistance that Even Chan, Chan's daughter in-law, provided prior to and during trial.
- Paragraph 139: the penultimate sentence in this paragraph should be revised to add falling and knee injuries to the list of difficulties Chan encounters on account of Type 2 Charcot-Marie-Tooth disease.
- Paragraph 148: the first sentence of this paragraph should be revised to make clear that Chan smoked marijuana while in college in Canada. The second sentence should be revised to make clear that he ceased smoking marijuana upon moving to Los Angeles. The third sentence of this paragraph should be revised to make clear that Chan smoked marijuana on only one occasion four years ago.
- Paragraph 160: the liabilities portion of this paragraph should clarify that the mortgage for the Olvera Way property and the personal loan are one and the same. As a result, Chan's overall liabilities should be reduced by $200,000 (to $542,920) and his net worth should be increased to $1,482,040 (from $1,282,040).

- Paragraph 163: this paragraph should be revised to make clear that Troy Augborne is Chan's martial arts colleague, rather than his martial arts student.

Chan also objects to the narrative set forth in the PSR at ¶¶ 26-73 regarding his purported criminal conduct.