E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal. Bar No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0363/3289/3819
    Facsimile: (213) 894-6436
    E-mail:   Cassie.Palmer@usdoj.gov
            Susan.Har@usdoj.gov
            Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-CR-326(A)-JFW-2 |
|         Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT RAYMOND CHAN'S MOTION FOR BAIL PENDING APPEAL (DKT. NO. 1456) |
|         v. | |
| RAYMOND SHE WAH CHAN, | Hearing Date: November 22, 2024 |
|   aka "She Wah Kwong," | Hearing Time: 8:00 a.m. |
|         Defendant. | Location:    Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files its opposition to defendant RAYMOND SHE WAH CHAN's Motion for Bail Pending Appeal (Dkt. No. 1456).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 1, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
BRIAN R. FAERSTEIN
CASSIE D. PALMER
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...............................................i

MEMORANDUM OF POINTS AND AUTHORITIES..............................1

I.    INTRODUCTION................................................1

II.   RELEVANT BACKGROUND.........................................2

      A.    Indictment and First Trial...........................2

      B.    Second Motion to Dismiss and Motions *in Limine*...........3

      C.    Second Trial.........................................4

      D.    Sentencing, Surrender Date, and Appeal...............5

III.  STANDARD FOR BAIL PENDING APPEAL............................6

IV.   DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL RAISES ANY
      SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN
      REVERSAL, A NEW TRIAL, OR A REDUCED SENTENCE................8

      A.    Defendant Fails to Raise a Substantial Question
            Regarding the Applicability of *Snyder v. United States*
            to His Federal Program Bribery Conviction (Count 28)......8

      B.    Defendant Fails to Raise a Substantial Question
            Regarding the Sufficiency of the Evidence of His SZNW-
            Related Substantive Aiding/Abetting Bribery
            Convictions.........................................12

      C.    Defendant Fails to Raise a Substantial Question
            Regarding the Court's Denials of His Motions *in Limine*...18

            1.    MIL #1: Evidence of Las Vegas Trips Details........19

            2.    MIL #2: Evidence of "Other Schemes".................21

            3.    MIL #3: Challenge to Purportedly Speculative
                  Testimony........................................22

      D.    Defendant Fails to Raise a Substantial Question
            Regarding the Court's Denial of His Juror Misconduct
            Mistrial Motion.....................................22

      E.    Defendant Fails to Raise a Substantial Question
            Regarding Any Aspect of the Court's Guidelines
            Calculations........................................25

      F.    Appealing the Restitution Order Does Not Provide a
            Basis for Bail Pending Appeal.......................29

V.    DEFENDANT ALSO FAILS TO ESTABLISH THAT HIS APPEAL IS NOT
      FOR THE PURPOSE OF DELAY.....................................29

VI.   DEFENDANT'S REQUEST TO STAY THE COURT'S RESTITUTION ORDER
      SHOULD BE DENIED............................................30

VII.  CONCLUSION.................................................34

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

<u>Beardslee v. United States</u>,
5     Nos. CR-94-0186-DLJ, C-01-0397-DLJ, 2008 WL 4334711 (N.D. Cal. Sept. 19, 2008) ................................................... 32

6

<u>Jackson v. Virginia</u>,
7     443 U.S. 307 (1979) ............................................ 14

8

<u>Morison v. United States</u>,
      486 U.S. 1306 (1988) ........................................ 8, 13
9

<u>Nken v. Holder</u>,
10    556 U.S. 418 (2009) ........................................ 30, 31

11

<u>Percoco v. United States</u>,
12    598 U.S. 319 (2023) .......................................... 3, 4

13

<u>Salinas v. United States</u>,
      522 U.S. 52 (1997) ............................................ 21
14

<u>Snyder v. United States</u>,
15    144 S. Ct. 1947 (2024) .............................. 1, 3, 8, 10

16

<u>Tom Doherty Assocs., Inc. v. Saban Ent., Inc.</u>,
      60 F.3d 27 (2d Cir. 1995) ..................................... 32
17

18

<u>United States v. Alvarez-Valenzuela</u>,
      231 F.3d 1198 (9th Cir. 2000) ............................. 14, 18
19

<u>United States v. Brooklier</u>,
20    685 F.2d 1208 (9th Cir. 1982) ................................. 21

21

<u>United States v. Bussell</u>,
      414 F.3d 1048 (9th Cir. 2005) ................................. 24
22

<u>United States v. Coluccio</u>,
23    No. CR-87-077, 1993 WL 217133 (E.D.N.Y. June 15, 1993) .......... 33

24

<u>United States v. Cox</u>,
25    324 F.3d 77 (2d Cir. 2003) ................................... 24

26

<u>United States v. Friedman</u>,
      854 F.2d 535 (2d Cir. 1988) ................................... 10
27

<u>United States v. Galan</u>,
28    804 F.3d 1287 (9th Cir. 2015) ................................. 32

*United States v. Garcia*,
　340 F.3d 1013 (9th Cir. 2003) ..................................... 7

*United States v. Gasca-Ruiz*,
　852 F.3d 1167 (9th Cir. 2017) .................................... 28

*United States v. Gaytan*,
　342 F.3d 1010 (9th Cir. 2003) ................................ 31, 32

*United States v. Givens*,
　767 F.2d 574 (9th Cir. 1985) ..................................... 9

*United States v. Goldtooth*,
　754 F.3d 763 (9th Cir. 2014) .................................... 15

*United States v. Gonzales*,
　No. CR-17-1311-PHX-DGC, 2022 WL 3082530 (D. Ariz. Aug. 2, 2022) .. 33

*United States v. Handy*,
　761 F.2d 1279 (9th Cir. 1985) ............................... passim

*United States v. Lillard*,
　No. CR15-270RSM, 2020 WL 2190656 (W.D. Wash. May 6, 2020) ........ 34

*United States v. Madrid*,
　842 F.2d 1090 (9th Cir. 1988) ................................... 24

*United States v. Miller*,
　753 F.2d 19 (3d Cir. 1985) ............................... 6, 8, 30

*United States v. Nevils*,
　598 F.3d 1158 (9th Cir. 2010) ................................... 15

*United States v. Rubio-Villareal*,
　967 F.2d 294 (9th Cir. 1992) .................................... 14

*United States v. Safahi*,
　No. 19-cr-404-SI, 2023 WL 3168323 (N.D. Cal. Apr. 28, 2023) ...... 28

*United States v. Schales*,
　546 F.3d 965 (9th Cir. 2008) ............................ 20, 21, 22

*United States v. Shen Zhen New World I, LLC*,
　115 F.4th 1167 (9th Cir. 2024) .............................. 13, 14

*United States v. Shoffner*,
　791 F.2d 586 (7th Cir. 1986) .................................... 30

*United States v. Sun-Diamond Growers of California*,
　526 U.S. 398 (1999) ............................................. 14

United States v. Wright,
  665 F.3d 560 (3d Cir. 2012) ...................................... 10

**Statutes**

18 U.S.C. § 666(a)(1)(B) ..................................... 9, 11

18 U.S.C. § 3143(b) ...................................... passim

18 U.S.C. § 3771(a)(6) .......................................... 33

**Rules and Guidelines**

Federal Rule of Criminal Procedure 38(e)(1) ........................ 30

Federal Rule of Criminal Procedure 38(e)(2)(C) ..................... 34

Federal Rule of Evidence 606(b)(1) ................................ 24

U.S.S.G. § 1B1.3(a)(1) ............................................ 27

U.S.S.G. § 2C1.1(b) ........................................... 26, 27

U.S.S.G. § 3B1.1(b) .............................................. 26

U.S.S.G. § 3C1.1 ................................................. 25

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3      Despite the jury's sweeping, across-the-board verdicts against

4 him, defendant Raymond Chan ("defendant") moves for bail pending

5 appeal.  Defendant's motion ("Motion" or "Mot.") adopts a scattershot

6 approach, citing myriad legal and factual claims, but failing to

7 explain why any of the Court's rulings were incorrectly decided, all

8 while ignoring the overwhelming evidence supporting his convictions.

9 Defendant's cursory and distorted analysis of the record is

10 insufficient to warrant bail pending appeal.

11      Under the Bail Reform Act, detention at this stage is

12 presumptively mandatory, and defendant bears the burden of proving

13 that he is entitled to release pending appeal.  Among other things,

14 defendant must establish that his "appeal is not for the purpose of

15 delay and raises a substantial question of law or fact likely to

16 result in" reversal, a new trial, or a reduced term of imprisonment

17 shorter than the expected duration of his appeal.  18 U.S.C.

18 § 3143(b)(1)(B).  Defendant fails to meet his burden here.

19      None of the issues defendant raises pose a substantial question

20 of law or fact, much less one likely to impact his convictions or

21 sentence.  First, defendant's reliance on Snyder v. United States,

22 144 S. Ct. 1947 (2024), to contest one of his bribery convictions is

23 sorely misplaced, as the government's charges and evidence were not

24 premised on a gratuities theory.  Second, defendant's challenge to

25 the sufficiency of the evidence supporting his L.A. Grand Hotel

26 bribery scheme-based convictions completely disregards the

27 evidentiary record, in clear contravention of the standard of review.

28 Third, defendant's broadly stated intention to appeal the Court's

rulings on his motions *in limine*, second mistrial motion, and Guidelines enhancements fails, as he provides no analysis as to why the Court ruled incorrectly (it did not) nor how the rulings would impact his convictions or sentence (they will not).  Fourth, defendant's challenge to the Court's restitution order has no bearing on his term of imprisonment and thus is irrelevant to the question of bail pending appeal (nor does defendant establish that a stay of restitution is appropriate).  And finally, defendant fails to satisfy his burden of showing his appeal is not for purposes of delay.

In short, defendant falls far short of meeting the requirements for bail pending appeal.  The Court should deny his Motion.

**II.  RELEVANT BACKGROUND**

**A.   Indictment and First Trial**

On November 12, 2020, defendant was charged in the First Superseding Indictment ("FSI") with one count of Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, seven counts of honest services wire fraud and aiding and abetting the same, three counts of federal program bribery and aiding and abetting the same, and one count of false statements to a federal agency.  (See Dkt. No. 74 (FSI).)  The charges arose out of defendant's central role, along with Councilmember Jose Huizar ("Huizar"), in conceiving and operating a years-long, pay-to-play bribery scheme at the highest levels of government in the City of Los Angeles.

On February 21, 2023, defendant's first trial commenced and lasted approximately eight days before defendant's then-lead counsel fell ill.  (Dkt. Nos. 972, 986.)  The Court ultimately declared a mistrial based on his lead counsel's inability to proceed and set a retrial date of March 12, 2024.  (Dkt. Nos. 1034, 1071.)

**B.    Second Motion to Dismiss and Motions *in Limine***

On December 4, 2023, defendant, represented by new (and current) counsel, filed a second motion to dismiss/strike.[1]  (Dkt. No. 1210.) Defendant moved to dismiss the RICO conspiracy and other counts, as well as to strike certain overt acts.  (Id.)  Defendant principally relied on <u>Percoco v. United States</u>, 598 U.S. 319 (2023), erroneously contending that he did not deprive the City of his honest services (or engage in federal program bribery) because he began drawing money from the bribery scheme only after he left City employment.  (See Dkt. No. 1210 at 3-8.)  Defendant also claimed the government failed to allege the existence of a RICO enterprise.  (See id. at 8-12.)

The Court denied defendant's motion in its entirety.  (Dkt. No. 1238.)  The Court found that <u>Percoco</u> was "inapposite" as to both the honest services and federal program bribery counts, where the FSI clearly alleged defendant breached his fiduciary duties while he was still a public official and aided and abetted Huizar (a public official) in doing the same.  (Id. at 3-6.)  The Court also denied defendant's untimely challenge to Count 1, finding the government had adequately alleged defendant's involvement in the RICO conspiracy and the existence of the CD-14 Enterprise (although the latter was not required for pleading RICO conspiracy).  (Id. at 6-7.)

Defendant also filed three motions *in limine* ("MIL") prior to his retrial.  Defendant's MIL #1 sought to preclude the government from offering evidence regarding details of the bribe-laden Las Vegas

---

[1] Prior to his first trial, defendant joined in motions to dismiss/strike filed by his codefendants raising challenges to the RICO, honest services, and bribery counts, which the Court denied. (Dkt. Nos. 235, 251, 330.)  Defendant does not raise any of those challenges here as a basis for bail pending appeal.

trips involving Huizar, George Esparza, Shen Zhen New World I, LLC ("SZNW") Chairman Wei Huang, and others. (Dkt. No. 1292.) The Court rejected defendant's attempt to shield the jury from core evidence of his criminal scheme, finding the evidence was "highly probative" and "directly relevant" to defendant's guilt on multiple counts. (Dkt. No. 1461 (Hearing Transcript) at 11-14.)

Defendant's MIL #2 sought to bar evidence of alleged "unrelated schemes"--in particular, the 940 Hill and Mateo project bribery schemes--by pointing to his lack of direct involvement in those schemes. (Dkt. No. 1293.) The Court again denied defendant's motion, finding the 940 Hill and Mateo scheme evidence was probative to proving various aspects of the RICO conspiracy that defendant joined, was "central to the government's case," and would "not be unfairly prejudicial or confusing." (Dkt. No. 1461 at 21-25.)

As for MIL #3, defendant broadly challenged the government's ability to ask witnesses questions bearing upon their own states of mind and pertinent lay opinions rationally based on their own perceptions. (Dkt. No. 1294.) The Court denied this motion too, finding the inquiry required context, so the defense could object on a question-by-question basis at trial. (Dkt. No. 1461 at 27-28.)

**C.    Second Trial**

On March 12, 2024, defendant's retrial commenced and lasted just over two weeks. (Dkt. Nos. 1351, 1399.) The government called 12 witnesses (including FBI Supervisory Special Agent Andrew Civetti twice) and admitted nearly 800 exhibits. (Dkt. No. 1400.) The defense admitted over 80 exhibits and noticed five witnesses but ultimately did not call any of them to testify. (Id.)

As described more fully in the government's opposition to

4

defendant's second mistrial motion (see Dkt. No. 1406 at 2-6), the
government presented overwhelming evidence of defendant's guilt,
including extensive and detailed testimony from three cooperators and
one informant; testimony from City officials regarding their
communications with defendant as he carried out his criminal scheme;
hundreds of exhibits corroborating witness testimony in the form of,
among other things, written communications, public records, bank and
financial records, casino and other business records, phone/toll
records, phone notes, "Radar Screens," records from Huizar's office
and computer and defendant's Google Drive, photographs, and covertly
recorded audio/video recordings; numerous admissions by defendant in
emails, text messages, Radar Screens, and recordings; evidence of
defendant's concealment activities and obstructionist conduct; and
timeline summaries synthesizing the government's voluminous evidence.
On March 27, 2024, after less than two hours of deliberations, the
jury returned guilty verdicts on all 12 counts, making all special
findings in the verdict form.  (Dkt. Nos. 1399, 1401.)

Following trial, defendant moved for another mistrial, this time
based upon an innocuous comment a juror reportedly was overheard
making outside the courthouse to two other jurors about hoping the
jury would arrive at a quick verdict.  (Dkt. No. 1405.)  The Court
denied the motion, finding there was no juror misconduct and, even if
the comment had been construed as such, it would not have been
"serious" or caused prejudice to defendant.  (Dkt. No. 1413.)

D.    Sentencing, Surrender Date, and Appeal

On May 6, 2024, the United States Probation Office ("USPO")
issued its initial Presentence Investigation Report ("PSR").  (Dkt.
No. 1415.)  In calculating defendant's total offense level, the USPO

found multiple Guidelines enhancements applied, including: more than one bribe, bribe value of more than $1.5 million, offense involving elected or high-level public official, manager/supervisor, and obstruction of justice. (Id. ¶¶ 94-106.)  Defendant objected to almost all of these enhancements, (Dkt. Nos. 1418, 1429, 1436), as well as to the USPO's finding that he owed $752,457 in restitution to the City of Los Angeles.  (Dkt. No. 1429 at 37-39.)

The Court sentenced defendant to 12 years' imprisonment and ordered him to pay $752,457 in restitution to the City, with $185,000 due immediately, a second payment of $425,000 due within six months of sentencing, and the balance to be paid according to schedules while in prison and after release from custody.  (Dkt. Nos. 1446, 1447.)  In so doing, the Court rejected all of defendant's objections to the USPO's Guidelines calculations and arguments regarding the loss amount and restitution.  (See Dkt. No. 1468 (Transcript) at 11-31.)  The Court ordered defendant to surrender to serve his sentence by noon on January 6, 2025.  (Dkt. No. 1447.)

Defendant filed a notice of appeal on October 17, 2024, and filed his Motion for bail the next day.  (Dkt. Nos. 1454, 1456.)

**III. STANDARD FOR BAIL PENDING APPEAL**

In enacting the Bail Reform Act of 1984, Congress intended "to reverse the presumption in favor of bail," United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985), and "to toughen the law with respect to bail pending appeal," United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985).  Thus, under 18 U.S.C. § 3143(b), a defendant who has been convicted and sentenced to imprisonment is ineligible for bail unless: (1) he proves "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any

other person or the community if released;" and (2) his "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1).  Defendant bears the burden of satisfying these requirements.  Handy, 761 F.2d at 1283.

In Handy, the Ninth Circuit explained that "the word 'substantial' defines the level of merit required in the question raised on appeal."  Id. at 1281.  A "substantial question" is one that is "fairly debatable" or "fairly doubtful."  Id. at 1283. Contrary to defendant's assertion, "fairly debatable" does not merely mean the issue is "not frivolous" (see, e.g., Mot. at 2, 8); rather, it "is one of more substance than would be necessary to a finding that it is not frivolous."  Handy, 761 F.2d at 1283 (emphasis added).[2]  "Fairly debatable" questions include those that are "novel and not readily answerable," or that pose issues "debatable among jurists of reason."  Id. at 1281-82 (quotation marks omitted).

As a separate consideration, "the phrase 'likely to result in reversal' defines the type of question that must be presented."  Id.

---

[2] In wrongly reducing the substantial question requirement to simply raising a "non-frivolous" issue, defendant relies on dicta from a footnote in United States v. Garcia, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).  Notably, the Ninth Circuit has cited Garcia only three times in over 20 years, in unpublished, one-page summary orders, none of which rely on Garcia's formulation of the substantial question standard nor repeat the "non-frivolous" language from the footnote defendant relies on.  Handy, which articulates the governing standard, expressly rejects the formulation defendant advances, stating that the substantial question standard is "stricter than the 'not frivolous' test."  761 F.2d at 1282 n.1.

at 1281.  The "substantial question" must be one that is "likely" to

result in reversal, a new trial, or a reduced sentence shorter than

the expected duration of the appeal.  18 U.S.C. § 3143(b)(1)(B).  It

cannot be one that would "be considered harmless, to have no

prejudicial effect, or to have been insufficiently preserved."

Miller, 753 F.2d at 23.  While this standard does not require that

reversal be more likely than not, Handy, 761 F.2d at 1281, neither is

it so toothless that it eviscerates Congress' intent to "tighten[]

the standards for bail pending appeal," id. at 1283.

Importantly, where, as here, there are multiple counts of

conviction, defendant must establish "his appeal is 'likely to result

in reversal' with respect to all the counts for which imprisonment

was imposed."  Morison v. United States, 486 U.S. 1306, 1306-07

(1988) (emphasis added) (denying bail where substantial question not

raised on all counts); see also Miller, 735 F.2d at 24 ("Obviously,

if the question deemed substantial is not related to all of those

counts, then the statutory criteria for bail pending appeal would not

be met as to the unaffected counts, and bail may be denied.").

**IV.  DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL RAISES ANY
SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN
REVERSAL, A NEW TRIAL, OR A REDUCED SENTENCE**

**A.  Defendant Fails to Raise a Substantial Question Regarding
the Applicability of *Snyder v. United States* to His Federal
Program Bribery Conviction (Count 28)**

Defendant first challenges his federal program bribery

conviction in Count 28, wrongly claiming that the charge was premised

on a gratuities theory--not bribery.  Defendant contends the Supreme

Court's opinion in Snyder v. United States, 144 S. Ct. 1947 (2024),

"confirmed" his previous argument in his Percoco-based motion to

dismiss that the payments he received after leaving City employment

were not bribes.  (Mot. at 4-5.)  Defendant gets it wrong on the

allegations, the law, and the facts, and does not raise any "fairly

debatable" or "fairly doubtful" issues.

First, the FSI plainly charged defendant with bribery under 18

U.S.C. § 666(a)(1)(B), and not merely accepting gratuities after he

left public office.  Count 28 alleged that starting in January 2017,

defendant, as "an agent of the City of Los Angeles," corruptly

"solicited, demanded, and agreed to accept" payments from George

Chiang, including $69,939.97 in payments to LABXG, Inc. (defendant's

company), "intending to be influenced and rewarded in connection with

the Luxe Hotel Project," including in pressuring officials to

expedite and approve the project on favorable terms.  (FSI ¶ 55, p.

117 (emphasis added).)  The FSI further detailed in the RICO count

allegations underlying defendant's corrupt arrangement with Chiang to

obtain bribes by way of Hazens' consulting fees and bonuses to

Synergy in exchange for defendant's official acts while he was Deputy

Mayor.  (FSI, Count 1, Overt Acts 194-205, pp. 53-56.)

Reading the FSI in its entirety and construing it according to

common sense, United States v. Givens, 767 F.2d 574, 584 (9th Cir.

1985), Count 28 alleged defendant engaged in bribery by striking an

up-front agreement for benefits, intending to be influenced for his

acts as a public official in connection with the Luxe Hotel project.

The Court rejected defendant's earlier version of this argument in

his Percoco-based motion, in which defendant blindly focused on the

timing but not the context of the $69,939.97 payments.  The Court

found, "it is clear that these payments were allegedly made in

exchange for Chan's official acts to benefit the Luxe Hotel Project

while Chan was still Deputy Mayor."  (Dkt. No. 1238 at 4.)  The same

1   reasoning holds here with respect to defendant's slightly reframed
2   yet still fatally flawed gratuities argument.

3       Second, Snyder hurts rather than helps defendant, because it
4   confirms the viability of a bribe theory based on an after-the-fact-
5   payment, which squarely aligns with the government's allegations and
6   evidence at trial against defendant. Snyder recognized that a "state
7   or local official can violate § 666 when he . . . agrees to a future
8   reward for a future official act." 144 S. Ct. at 1959. The Supreme
9   Court further observed that a defendant may not "defend against the
10  bribery charge by saying that the payment was received only after the
11  official act and therefore could not have 'influenced' the act" where
12  the government can prove that the after-the-fact payment was made in
13  furtherance of a preexisting agreement. Id. ("By including the term
14  'rewarded,' Congress made clear that the timing of the agreement is
15  the key, not the timing of the payment."). The agreement itself may
16  be proven through circumstantial evidence and reasonable inference.
17  See United States v. Wright, 665 F.3d 560, 569 (3d Cir. 2012)
18  ("Parties to a bribery scheme rarely reduce their intent to words,
19  but the law does not require that."); United States v. Friedman, 854
20  F.2d 535, 554 (2d Cir. 1988) ("[E]vidence of a corrupt agreement in
21  bribery cases is usually circumstantial, because bribes are seldom
22  accompanied by written contracts, receipts or public declarations of
23  intentions."). Thus, contrary to defendant's argument, Snyder
24  supports, not undermines, the bribery charge that the government
25  alleged and proved: defendant agreed to accept benefits from Hazens
26  intending to be influenced for his official acts and merely waited
27  until later to start drawing upon the money Hazens paid Synergy.

28      Moreover, Count 28 alleged not only that defendant "agreed to

accept" benefits, but also that he "corruptly solicited and demanded"
the benefits from Hazens, intending to be influenced for his official
acts. See 18 U.S.C. § 666(a)(1)(B) (covered conduct includes when
public official "corruptly solicits or demands . . . or accepts or
agrees to accept" a thing of value intending to be influenced or
rewarded). Defendant's alleged (and proven) acts of corruptly
soliciting and demanding payments from Hazens through Chiang/Synergy
for his official acts thus constituted another means of completing
the crime of bribery under 18 U.S.C. § 666(a)(1)(B)--long before
defendant directly took in any payments from Hazens.

Finally, defendant misstates the facts in a futile attempt to
transform his bribery scheme into a gratuity offense. Defendant
claims that "[a]t trial, the government introduced evidence about two
payments, a total of $69,939.97, provided by George Chiang . . . to
Chan in 2017, after Chan retired from public service and had accepted
a job with Chiang's company Synergy." (Mot. at 4.) Defendant
further contends these "gratuities in question" bore "a far closer
temporal relationship" to other work he did for Synergy after
retiring. (Mot. at 4.) Defendant ignores the overwhelming evidence
at trial of his corrupt partnership with Chiang, his solicitation of
Chiang to form Synergy as their joint business, and the bribe
payments from Hazens to Synergy underlying the jury's guilty verdicts.

As the government has briefed extensively (see Dkt. No. 1429 at
15-20, 42-45; Dkt. No. 1434 at 9-15), the evidence at trial proved
that defendant instructed Chiang to establish Synergy as their 50/50
business, and then agreed to act on behalf of Hazens from inside the
City while directing Chiang to be Synergy's outward face. Defendant
and Chiang sold defendant's official acts (including his influence

11

over other public officials) to Hazens to secure Hazens' Luxe Hotel entitlement business.  And it was defendant's public office and influence over other officials, including Huizar, that enabled Synergy to secure Hazens' lucrative entitlement business from which funds flowed into Synergy starting in 2015.  In other words, the funds that Synergy obtained from Hazens, both through monthly fees and the six-figure "Milestone" payments, were bribes paid to ensure that defendant used his official position and influence to aid the Luxe Hotel project.  These funds constituted a bribe, not a gratuity.

Defendant thus fails to raise any substantial question under Snyder (or Percoco before it) as to his Count 28 conviction, much less one likely to result in reversal or a new trial.

### B.  Defendant Fails to Raise a Substantial Question Regarding the Sufficiency of the Evidence of His SZNW-Related Substantive Aiding/Abetting Bribery Convictions

Focusing on the SZNW-Huizar bribery scheme, defendant next argues "the government did not sufficiently prove that Chan aided and abetted any *quid pro quo* agreement" because he purportedly lacked knowledge that (1) Wei Huang corruptly intended to influence Huizar through benefits, as opposed to simply "curry[ing] favor," and (2) Huizar agreed he would "take official acts in exchange for money." (Mot. at 5-6.)  Defendant's argument is belied by the overwhelming evidence of his criminal intent to facilitate the L.A. Grand Hotel bribery scheme and does not raise any substantial question.[3]

At the outset, it is important to note the charges and conduct defendant's sufficiency challenge does not implicate.  While broadly

---

[3] Despite his sufficiency challenge here, defendant did not file any written Rule 29 or Rule 33 post-trial motions challenging the sufficiency or weight of the evidence.

12

casting this issue as relating to his "honest services and RICO convictions" (Mot. at 5), defendant only addresses the purported lack of evidence underlying his aiding and abetting the honest services wire fraud and federal program bribery counts with respect to the L.A. Grand Hotel bribery scheme (Counts 2, 3, 4, and 22).  Defendant's arguments do not impact Count 1 (RICO conspiracy), which is not contingent on proof of his knowledge of the SZNW-Huizar bribery scheme; indeed, the jury found defendant agreed that acts would be committed as part of the RICO conspiracy that lacked any *quid pro quo* requirement, such as money laundering and obstruction of justice.[4] (Dkt. No. 1401 at 3.)  Nor does he contest the evidence of *quid pro quo* intent underlying his direct and aiding/abetting liability for the Luxe Hotel bribery scheme (Counts 12-15, 27, and 28).[5]

Defendant also does not contest the sufficiency of the evidence regarding SZNW's and Huizar's underlying honest services wire fraud and federal program bribery offenses.  Nor could he.  In affirming SZNW's convictions, the Ninth Circuit concluded the evidence was "more than sufficient" to prove SZNW's "specific intent to give or receive something of value in exchange for an official act."  United States v. Shen Zhen New World I, LLC, 115 F.4th 1167, 1177, 1178 (9th

---

[4] Even as to the bribery-based racketeering acts, the jury heard significant evidence of non-SZNW-related bribery schemes, which defendant does not challenge.

[5] Similarly, with respect to his first claim based on Snyder (supra at 8-12), defendant challenges only his Count 28 bribery conviction but not his honest services convictions on Counts 12-15 that were the subject of his motion to dismiss under Percoco (Dkt. No. 1210).  (Mot. 4-5.)  Defendant also does not challenge his false statements to a government agency conviction (Count 39).  Thus, even if the Court were to find defendant meets his Section 3143(b)(1)(B) burden as to some counts, his Motion should still be denied because it fails to raise a substantial question likely to result in reversal or a new trial as to all counts for which imprisonment was imposed. Morison, 486 U.S. at 1306-07.

1  Cir. 2024) (quoting <u>United States v. Sun-Diamond Growers of</u>
2  <u>California</u>, 526 U.S. 398, 404-05 (1999)).  The court pointed to
3  Huang's "specific intent to acquire the L.A. Grand Hotel to build a
4  77-story mixed-use skyscraper that would constitute the tallest tower
5  in Los Angeles;" Huang's view of Huizar as "an investment" in his
6  plan; the extensive benefits that SZNW provided to Huizar; Huizar's
7  official act of the City resolution honoring Huang; and Huang's
8  efforts to conceal the many benefits he provided to Huizar.  <u>Id.</u> at
9  1178-79.  The government presented the same evidence (and more) of
10 Huang's *quid pro quo* intent at defendant's trial--as well as evidence
11 establishing Huizar's corresponding corrupt intent on the other side
12 of the bribery scheme.  Defendant provides no basis to call into
13 question the sufficiency of that evidence.

14      Rather, defendant narrowly contests his own "advance knowledge
15 of" and "intent to participate in" the Huizar-SZNW bribery scheme.
16 (Mot. at 5-6.)  But he fails to raise any substantial question under
17 the "highly deferential" standard of review.  <u>United States v. Rubio-</u>
18 <u>Villareal</u>, 967 F.2d 294, 296 (9th Cir. 1992) (en banc).  Sufficient
19 evidence exists where "viewing the evidence in the light most
20 favorable to the prosecution, <u>any</u> rational trier of fact could have
21 found the essential elements of the crime beyond a reasonable doubt."
22 <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original).
23 "[A]ll reasonable inferences are to be drawn in favor of the
24 government, and any conflicts in the evidence are to be resolved in
25 favor of the jury's verdict."  <u>United States v. Alvarez-Valenzuela</u>,
26 231 F.3d 1198, 1201-02 (9th Cir. 2000).  Courts "may not usurp the
27 role of the finder of fact by considering how it would have resolved
28 the conflicts, made the inferences, or considered the evidence at

1  trial."  <u>United States v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir. 2010)

2  (en banc).  It is only the "rare occasion[]" where the evidence

3  underlying a jury's verdict is insufficient to sustain a conviction.

4  <u>United States v. Goldtooth</u>, 754 F.3d 763, 768 (9th Cir. 2014).

5      Defendant concedes (at least in this section of his Motion) that

6  he knew Huang was "lavishing gifts on Huizar" and "plying" Huizar

7  with "trips to Vegas or a loan."  (Mot. at 5, 6.)  But he feigns

8  ignorance as to his knowledge of the corrupt purpose behind those

9  benefits.  With virtually no discussion of the evidence, defendant

10  puts his own spin on the trial record--in direct contravention of the

11  governing standards for a sufficiency challenge.  Indeed, there was

12  overwhelming evidence of defendant's knowledge, encouragement, and

13  facilitation of <u>both sides</u> of the SZNW-Huizar bribery scheme.[6]  The

14  government has detailed the extensive evidence of the L.A. Grand

15  Hotel bribery scheme in prior briefing, (<u>see</u> Dkt. No. 1429 at 10-14;

16  Dkt. No. 1434 at 5-9), and highlights here only some of that evidence,

17  which defendant wholly ignores in conjuring his false narrative.

18      Defendant's knowing facilitation of the SZNW-Huizar bribery

19  scheme began from day one.  Esparza testified about the lavish

20  introductory dinner between Huizar and Huang, where defendant served

21  as the translator and encouraged Huizar and Esparza to go to Las

22  Vegas with Huang while pumping up Huizar as the "big boss" of

23  downtown with vast influence over development projects.  During a

24  post-dinner "debrief," Huizar asked defendant if he thought Huang

25  "got it," in reference to providing benefits, and defendant reassured

26

27      [6] With respect to Counts 2-4, the jury was required to find that
    defendant <u>either</u> aided and abetted Huizar's <u>or</u> SZNW's honest services
28  wire fraud regarding the L.A. Grand Hotel scheme.  (Dkt. No. 1398 at
    42-46.)  The evidence nonetheless proved he aided and abetted both.

Huizar he would work on Huang.  The jury heard testimony from
Esparza, Chiang, and Harris Chan about defendant's close relationship
with Huang, which was corroborated by numerous text messages showing
how defendant, who was often in person "with Chairman" or "at
Chairman's house," facilitated extensive communications between Huang
and Huizar throughout the bribery scheme.  And in fact, after the
introductory dinner, defendant served as the indispensable
facilitator, aiding Huang <u>both</u> with providing benefits to Huizar and
with securing Huizar's help with the L.A. Grand Hotel.

In addition to text messages and testimony (including from
Esparza and Harris Chan) showing defendant's facilitation and
knowledge of the Las Vegas trips, Chiang testified about defendant
expressing concern about the risks the trips posed in potentially
exposing Huang's and Huizar's corrupt relationship.  Indeed, after
casino security approached Huizar as a politically exposed person,
defendant was consulted and concurred with the attendees (Huizar,
Huang, Esparza, and Ricky Zheng) that they should let Vegas "cool
off."  During a covertly recorded conversation with Andy Wang in
2017, defendant admitted his knowledge of the means (<u>e.g.</u>, private
jets, fake names, Esparza exchanging Huizar's chips) the conspirators
employed to conceal the illicit benefits Huang was providing Huizar.
In fact, during the same conversation, defendant reassured Wang that
he was safe from the FBI "as long as you never take any official to
anywhere and as long as you didn't pay off anybody . . . as long as
you didn't buy them like Huang Wei and Korean people."  Wang
testified that he understood this statement to reflect defendant's

knowledge that Huang paid bribes to Huizar and Esparza through the Las Vegas trips.[7]

Defendant's orchestration of the scheme to settle the Godoy sexual harassment lawsuit only further illustrated his intent to conceal Huang's bribes to Huizar. Esparza testified that Huizar asked defendant to speak with Huang about helping with the settlement; Huizar had an initial meeting with defendant and Huang to discuss the issue; defendant came up with the idea for structuring the convoluted collateral arrangement to hide the money trail from Huang to Huizar; and Huizar, grateful for defendant's integral assistance, gave defendant "full access" to Huizar's office. Contemporaneous text messages showed that defendant was the person who shepherded Huizar and Huang's communications; defendant tracked Huizar's private loan (backed by Huang's collateral) in his Radar screens; and later covert recordings confirmed that defendant structured the whole thing and took credit for saving Huizar's career.[8]

Defendant was just as vital on the other side of the *quid pro quo*, working closely with Huang/SZNW in 2015 and 2016 to advance

---

[7] Defendant incorrectly described this conversation with Wang as taking place in 2018 (Mot. at 5), as opposed to in 2017 after Wang first met with the FBI and defendant pumped him for information about that meeting. While this recording corroborated earlier real-time evidence showing defendant's knowledge, facilitation, and concerns about the Las Vegas trips, defendant's admissions in this recording standing alone strongly support the jury's verdict under the "highly deferential" standard.

[8] The evidence also proved that while defendant was facilitating Huang and Huizar's corrupt relationship, he also was requesting Huizar's help in scuttling the planned consolidation of City departments that threatened defendant's leadership position at the Los Angeles Department of Building and Safety (LADBS). Wang further testified that Huang had instructed Huizar to help save defendant's job, further illustrating the close relationship between defendant and Huang. Huizar readily provided such assistance, including by reading defendant's talking points at City Council and voting against consolidation (which Huizar had previously supported).

Huang's plan for the 77-story redevelopment of the L.A. Grand Hotel. Defendant helped coordinate a meeting at Huizar's CD-14 office with Huizar, the Planning Department, and the SZNW project team (including Huang) to promote the project.  He took part in other meetings and communications with SZNW's project team, as reflected in emails and documents found in defendant's Google Drive.  And he tracked issues relating to the project's Transfer of Floor Area rights entitlement on his Radar Screens.  Defendant also participated in the infamous smoke break at Huang's Sheraton Hotel with Huang, Huizar, Esparza, and Zheng, where Huang asked for Huizar's support on the project, Huizar assured Huang he would support his "big dick" over downtown, and defendant provided his reassurances as well.

On the strength of all this evidence, the jury easily found that defendant lied to the FBI when he falsely denied any involvement in the Godoy settlement and that Huang had anything in front of Huizar's district or ever asked Huizar for anything.  (Dkt. No. 1401 at 23-24.)  Defendant's lies to the FBI were yet further evidence of his consciousness of guilt that Huang's benefits to Huizar were bribes and not merely Huang seeking to "curry favor."

Thus, there was extensive evidence of defendant's knowledge and facilitation of both sides of the *quid pro quo* at the heart of the L.A. Grand Hotel bribery scheme.  Defendant fails to raise any "fairly debatable" question, drawing "all reasonable inferences . . . in favor of the government," as to the sufficiency of that evidence on appeal.  <u>Alvarez-Valenzuela</u>, 231 F.3d at 1201-02.

**C.    Defendant Fails to Raise a Substantial Question Regarding the Court's Denials of His Motions *in Limine***

Without any analysis or examples of how the evidence he

challenged was used at trial, defendant claims the Court's rulings on
his MILs allowed in "highly prejudicial or inadmissible" evidence
that "merit[s] a new trial." (Mot. at 6-7.) Defendant fails to show
how any of the Court's rulings on his MILs raise a substantial
question on appeal (they do not). Nor does he explain how the
government's limited use of the evidence at issue would require a new
trial. Defendant's barebones pleading is insufficient to meet <u>his
burden</u> under § 3143(b)(1)(B). <u>Handy</u>, 761 F.2d at 1283. The Court
should reject this purported basis for bail for this reason alone.

The government nonetheless summarizes why the Court's rulings on
defendant's MILs were correctly decided and not fairly debatable, and
do not pose any danger of reversible error.

### 1.   MIL #1: Evidence of Las Vegas Trips Details

The Court correctly denied defendant's MIL #1 to preclude
evidence of the details of the Las Vegas trips between Huizar, Huang,
and others. As the government explained in its opposition to MIL #1
(Dkt. No. 1292 at 5-9), the trips constituted the <u>actual bribes</u>
(along with the Godoy lawsuit settlement) that were at the heart of
the L.A. Grand Hotel bribery scheme. This evidence was central to
numerous charges, including RICO conspiracy (Count 1); aiding and
abetting honest services wire fraud as to SZNW (Counts 2, 3, and 4);
aiding and abetting federal program bribery as to SZNW (Count 22);
and making false statements regarding the SZNW bribery scheme (Count
39). Details of the bribes thus were directly relevant and highly
probative of the underlying SZNW bribery scheme between Huizar and
Huang as well as defendant's facilitation of it.

The government assumes defendant will retread on appeal his oft
repeated claim that evidence of the <u>details</u> of the Las Vegas trips is

19

1   irrelevant because "there is no evidence that he knew of or approved

2   the activities that went on during these trips."  (Dkt. No. 1292 at

3   10; <u>see also</u> Dkt. No. 1429 at 31 ("The Las Vegas trip benefits to

4   Huizar and others – and not Chan – were not foreseeable to Chan.").)

5   Defendant's claims of ignorance are flatly belied by the evidence of

6   his knowledge and facilitation of the Las Vegas trips detailed above

7   and in the government's prior briefing.  But more to the point, the

8   details of the Las Vegas trips did not pose any "fairly debatable"

9   danger under Rule 403, <u>Handy</u>, 761 F.2d at 1283, much less one that

10  would substantially outweigh the high probative value of that

11  evidence to multiple counts and contested issues.  The Court did not

12  abuse its discretion in admitting this evidence, <u>United States v.</u>

13  <u>Schales</u>, 546 F.3d 965, 976 (9th Cir. 2008), and the denial of MIL #1

14  does not raise a substantial question on appeal.

15      Even if it did, the government's evidence regarding the <u>details</u>

16  of the Las Vegas trips (as distinguished from the fact that the trips

17  took place) was limited compared to the overwhelming evidence of

18  defendant's guilt.  Agent Civetti and Esparza testified about a

19  selection of photographs and videos reflecting the private villas,

20  private jets, and nightlife and gambling activities in Las Vegas, and

21  the government presented evidence of defendant's own surreptitiously

22  recorded admissions regarding some of these details.[9]  But the full

23  scope of the government's evidence and the jury's across-the-board

24  guilty verdicts--including on every count relating to the Luxe Hotel

25  project bribery scheme that had nothing to do with the Las Vegas

26

27      [9] The government pre-admitted additional photographs and videos
    of gambling activities, villas, and private jets but limited the
28  exhibits that it displayed to the jury during trial testimony to
    those necessary to illustrate the nature of the bribes at issue.

1  trips--demonstrate that any error in admitting details of the Las

2  Vegas trips did not "more likely than not affect[] the verdict." Id.

3  (citation omitted).  Thus, any such error is not likely to result in

4  reversal or a new trial.  18 U.S.C. § 3143(b)(1)(B).

5          2.  MIL #2: Evidence of "Other Schemes"

6       The Court also correctly denied defendant's MIL #2 seeking to

7  preclude purported "other schemes" evidence regarding the 940 Hill

8  and Mateo project bribery schemes.  Defendant's factual and legal

9  premises underlying MIL #2 were fundamentally flawed, as explained in

10  the government's opposition.  (Dkt. No. 1293 at 5-9.)  Defendant

11  likened himself to the developer defendants on the spokes of the RICO

12  conspiracy while in fact he was charged (and convicted) alongside

13  Huizar in the hub.  He also disregarded core principles of conspiracy

14  law, especially in the expansive context of RICO, that a conspiracy

15  may exist "even if a conspirator does not agree to commit or

16  facilitate each and every part of the substantive offense."  Salinas

17  v. United States, 522 U.S. 52, 63 (1997); see also United States v.

18  Brooklier, 685 F.2d 1208, 1222 (9th Cir. 1982) ("The purpose of the

19  RICO statute is to allow a single prosecution of persons who engage

20  in a series of criminal acts for an enterprise, even if different

21  defendants perform different tasks or participate in separate acts of

22  racketeering.").  The government further explained how the 940 Hill

23  and Mateo schemes were probative of the conduct and goals of the CD-

24  14 Enterprise, dovetailing and overlapping with various aspects of

25  defendant's involvement in the RICO conspiracy.  (See Dkt. No. 1293

26  at 8-9.)  Defendant's argument boiled down to a denial that he joined

27  and participated in the RICO conspiracy--a contention the jury

28  plainly rejected in its sweeping verdicts against him.

1   Any error in the admission of the 940 Hill and Mateo evidence

2   also did not "more likely than not affect[] the verdict." Schales,

3   546 F.3d at 976.  The government's evidence regarding these schemes

4   was limited in scope and content.  Agent Civetti testified briefly

5   about both schemes, providing basic background about the projects and

6   the bribes they entailed.  Esparza and Morrie Goldman followed up

7   with limited testimony about the 940 Hill and Mateo schemes,

8   respectively, showing how they fit into the overall pay-to-play

9   bribery scheme and RICO conspiracy.  No one testified that defendant

10  was directly involved in either scheme, which the defense emphasized

11  in its cross-examinations.  The denial of MIL #2 thus does not raise

12  a substantial question likely to result in reversal or a new trial.

13          3.   MIL #3: Challenge to Purportedly Speculative Testimony

14  Defendant also states he will appeal the Court's ruling on "co-

15  conspirators' statements about Chan's intent or motive," in reference

16  to his MIL #3.  (Mot. at 6-7.)  The Court denied MIL #3, recognizing

17  that it would need to assess objections in context of testimony as

18  they arose at trial.  However, defendant does not cite a single

19  example of testimony from his retrial that he intends to challenge on

20  appeal--indeed, the defense made few objections during the

21  government's examination of witnesses--making it impossible for the

22  Court to assess whether defendant raises a substantial question, much

23  less one likely to result in reversal or a new trial.  Defendant's

24  empty rhetoric does not satisfy his burden under Section 3143.

25      D.   **Defendant Fails to Raise a Substantial Question Regarding
         the Court's Denial of His Juror Misconduct Mistrial Motion**

26

27  Defendant's intention to "appeal the Court's denial of an

28  evidentiary hearing in relation to his request for a mistrial based

22

1  on juror misconduct" also fails to raise a substantial question
2  likely to result in reversal or a new trial.  (Mot. at 7.)  After
3  interviewing the courtroom deputy who overheard the juror's comment
4  at issue, the Court carefully considered the factual record and
5  governing law, and exercised its broad discretion in deciding an
6  evidentiary hearing was unnecessary.  (Dkt. No. 1413 at 2-3, 4-5.)

7       Defendant yet again completely misstates the record and the
8  Court's findings, exposing the fatal infirmities of his position.  He
9  claims that the three jurors whom the CRD overheard were "discussing
10 the case amongst themselves."  (Mot. at 7.)  But the Court found that
11 "no substantive discussion about the case took place," as reflected
12 in the benign and "understandable expression of hope that a verdict
13 would be reached quickly."  (Dkt. No. 1413 at 3.)  Defendant asserts
14 that the juror's comment was made before "actual deliberations had []
15 begun," presumably attempting to spin the comment as proof of jury
16 defiance of the Court's instructions not to deliberate during trial.
17 (Mot. at 7.)  But as the Court found and the facts bore out, the
18 comment was made "after the close of evidence, after the Court
19 instructed the jury, [and] after deliberations commenced."  (Dkt. No.
20 1413 at 3 (emphasis in original).)  And defendant inexplicably argues
21 that the comment "demonstrated the existence of extraneous
22 influences."  (Mot. at 7.)  But as the Court rightly found, there was
23 "no colorable claim that any extraneous prejudicial information was
24 brought to the jury's attention or that any outside influence was
25 improperly brought to bear on any juror."  (Dkt. No. 1413 at 4-5.)

26      Defendant peddles a counterfactual narrative that best suits his
27 attempt to turn this molehill into a mountain.  However, based on the
28 record and the Court's "broad flexibility" in investigating claims of

23

juror misconduct "when the alleged prejudice results from statements
by the jurors themselves, and not from . . . outside influences,"
United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003), the Court
correctly concluded that "an evidentiary hearing would be a waste of
judicial resources and be nothing more than a fishing expedition."
(Dkt. No. 1413 at 5.)  As the Court also recognized, Federal Rule of
Evidence 606(b)(1) restricted the Court from inquiring about the
"effect or impact that the juror's 'quick verdict' comment had on any
other juror," making an evidentiary hearing all the more futile and
unnecessary.  (Id.)  The Court did not abuse its discretion in
denying defendant's motion, United States v. Bussell, 414 F.3d 1048,
1054 (9th Cir. 2005), and defendant provides no credible basis to
transform this non-issue into a substantial question on appeal.

Even if the Ninth Circuit were to find the Court abused its
ample discretion by failing to hold an evidentiary hearing, this
issue still would not likely lead to reversal or a new trial.  The
Court correctly found that any claimed misconduct "was not 'serious'
and does not warrant a new trial." (Dkt. No. 1413 at 4.)  The Ninth
Circuit recognizes that "[c]onsiderable deference is paid to the
trial judge" when it comes to claims of juror misconduct, "since the
trial judge is uniquely qualified to appraise the probable effect of
information upon the jury, the materiality of the extraneous
material, and its prejudicial nature." United States v. Madrid, 842
F.2d 1090, 1092 (9th Cir. 1988) (citations omitted).  Where, as here,
the comment was innocuous and did not involve any extraneous
material, even defendant's sought-after fishing expedition, limited
substantially by Rule 606(b)(1), would be unlikely to undermine the
jury's resounding verdicts against him.

24

### E.    Defendant Fails to Raise a Substantial Question Regarding Any Aspect of the Court's Guidelines Calculations

Similar to his conclusory claims regarding his MILs, defendant challenges the Court's denials of his Guidelines objections without any explanation or analysis as to why those rulings raise substantial questions.  (Mot. at 7-8.)  Defendant again fails to meet his burden under § 3143(b)(1)(B), <u>Handy</u>, 761 F.2d at 1283, and the Court should reject his Guidelines-based bail arguments on this basis alone.

On the merits, the four Guidelines challenges that defendant cites--"the obstruction of justice enhancement, the organizer/leader [supervisor/manager] enhancement, the decision-making enhancement, and the loss amount calculation" (Mot. at 7)--all fail as well.[10] Briefly as to each:

***Obstruction of Justice (U.S.S.G. § 3C1.1).***  Defendant's offenses of conviction and relevant conduct unquestionably involved his obstruction of justice.  The jury specially found in Count 1 that defendant agreed that a member of the conspiracy would engage in "Obstruction of Justice – Witness Tampering."  (Dkt. No. 1401 at 3.) The government also presented evidence of defendant's extensive obstructive conduct (as squarely contemplated by comment 4 to U.S.S.G. § 3C1.1), including his deletion of text messages with co-conspirators, deceitful withholding of incriminating evidence as purportedly "attorney-client privileged," and pressuring of Chiang and Wang to adopt his false narratives of events (including through scripts).  In his objections, defendant ignored all this evidence and the jury's special finding on the RICO count, focusing solely on

---

[10] Defendant does not challenge the USPO's and Court's rejection of the Zero Point Offender reduction that he sought at sentencing.

whether his false statements conviction constituted obstruction--
which was another valid and independent basis for the enhancement.
(Dkt. No. 1418 at 6-7.)  Defendant's disregard of the trial record
does not raise a substantial question on appeal.

*Manager/Supervisor (U.S.S.G. § 3B1.1(b)).*  In its sentencing
position, the government analyzed the evidence supporting the
manager/supervisor enhancement under the seven factors identified in
the Guidelines.  (See Dkt. No. 1434 at 22-25 (analyzing factors under
U.S.S.G. § 3B1.1, cmt. n.4).)  Defendant ignored virtually all this
evidence (and most of the relevant factors) in his sentencing papers,
instead attacking Chiang's credibility and pressing his frequent
refrain that he simply was mentoring Chiang and did not profit from
the scheme more than the $69,939 he received from Chiang in late 2017.
(See Dkt. No. 1418 at 5-6; Dkt. No. 1436 at 4-5.)  The jury rebuffed
defendant's attacks on Chiang's testimony and the vast corroborating
evidence supporting it.  Defendant's reliance on these rejected
arguments does not pose any "fairly debatable" issues on appeal.

*Elected Official/High-Level Decision-Making Official (U.S.S.G.
§ 2C1.1(b)(3)).*  Defendant's objection to this enhancement similarly
disregarded uncontroverted facts and was frivolous.  Incredibly,
defendant ignored that the enhancement expressly applied to an
"offense involv[ing] an elected public official," i.e., Huizar,
despite having been convicted of conspiring with Huizar and aiding
and abetting him in multiple bribery schemes.  (Dkt. No. 1418 at 4.)
Defendant also selectively focused on his role as General Manager of
LADBS--which alone qualifies him for the enhancement, as perhaps best
demonstrated by his resume admitted at trial--and pretended as if he
never served in his other "high-level decision-making" role of Deputy

26

Mayor.  (Id.)  The government marshalled all this evidence (and more)
in support of the enhancement.  (Dkt. No. 1434 at 20-22.)  This is
not a "fairly debatable" issue on appeal.

    ***Loss/Bribe Amount (U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)).***
Defendant's final Guidelines challenge presumably will rehash his
claim that only a 6-level enhancement (bribe value of at least
$40,000) and not a 16-level enhancement (bribe value of at least $1.5
million) should have applied.  In the parties' joint statement
regarding the loss calculation, the government analyzed in depth and
proved up its (still-conservative) loss calculation of $1,949,565 in
bribes attributable to defendant's criminal conduct, as found by the
USPO in the PSR.  (Dkt. No. 1429 at 6-21.)  The government's analysis
was supported by scores of trial exhibits that complemented and
corroborated key trial testimony.  (Dkt. No. 1432 (Trial Exhibits
Supplement, attaching 77 exhibits).)  In responding to this vast
evidentiary record, defendant fell back on his meritless claims that
he was just a bystander, there weren't any bribes, and/or the bribes
at the heart of bribery schemes that he directed or aided and abetted
"were not foreseeable" to him.  (Dkt. No. 1429 at 31-37; Dkt. No.
1436 at 2-4.)  However, the evidence and the jury's verdicts prove
well beyond a preponderance of the evidence that the $1,949,565 loss
calculation was correctly based on defendant's core offense conduct
(U.S.S.G. § 1B1.3(a)(1)(A)) and jointly undertaken criminal activity
that was reasonably foreseeable to him (U.S.S.G. § 1B1.3(a)(1)(B)).
Based on this factual record, the Court found that the loss amount
was supported by the bribes identified in the PSR, (Dkt. No. 1468 at
11-22), and those findings cannot be said to be "fairly doubtful."
That is especially so on appeal, where the Ninth Circuit will review

1    this Court's factual findings for clear error and its application of

2    the Guidelines to the facts for abuse of discretion.    United States

3    v. Gasca-Ruiz, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

4         Even if defendant had raised a substantial question on one or

5    more of these enhancements, his Guidelines-based bail arguments still

6    fail because he has not shown his new sentence likely would "not

7    include a term of imprisonment" or be reduced to a term "less than

8    the total of the time already served plus the expected duration of

9    the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iii), (iv).  In the

10   fantastical event that the Ninth Circuit agreed with all four (let

11   alone any) of defendant's sentencing challenges, his new total

12   offense level would be 22, yielding a revised range of 41-51 months.

13   But even a low-end sentence of three-and-a-half years in prison would

14   be well beyond the "average time to resolve an appeal on the merits

15   of a criminal case in the Ninth Circuit [of] 12.1 months."[11]    United

16   States v. Safahi, No. 19-cr-404-SI, 2023 WL 3168323, at *3 (N.D. Cal.

17   Apr. 28, 2023) (denying bail where defendant's sentencing arguments

18   were "speculative" and did "not show[] that even a successful appeal

19   would likely result" in term of imprisonment less than duration of

20   appeal).  Moreover, defendant assumes the Court would not vary

21   upward--which, of course, it would have discretion to do--due to any

22   new Guidelines range not sufficiently accounting for the seriousness

23   of defendant's offense conduct under Section 3553(a).

24        In sum, defendant provides nothing but pure speculation that his

25   sentencing challenges, factually and legally flawed as they are,

26

27

28        [11] In fact, even the custodial sentence defendant recommended at
     sentencing (33 months) would be more than double the average duration
     of appeals in the Ninth Circuit.

                                     28

would likely result in a reduced sentence warranting bail.

**F.    Appealing the Restitution Order Does Not Provide a Basis for Bail Pending Appeal**

Curiously, defendant posits his intent to appeal the Court's restitution order as a ground for bail pending appeal. (Mot. at 8-9.) It is not. As Section 3143(b)(1)(B) requires, the substantial question must be one that would lead to reversal, a new trial, or a reduced <u>term of imprisonment</u>. The Ninth Circuit's decision on defendant's restitution challenge will not affect any of these bases for relief and thus is irrelevant to his request for bail.[12]

\*          \*          \*

In sum, none of the issues defendant intends to raise on appeal present a substantial question likely to affect his convictions or sentence. Having failed to meet his burden on this requirement, defendant's Motion should be denied.

**V.    DEFENDANT ALSO FAILS TO ESTABLISH THAT HIS APPEAL IS NOT FOR THE PURPOSE OF DELAY**

Aside from a conclusory assertion that his appeal is "not a delay tactic," (Mot. at 3), defendant makes no effort to demonstrate that his appeal is not for the purpose of delay. <u>See</u> 18 U.S.C. § 3143(b)(1)(B). The Ninth Circuit interprets this requirement as distinct from raising a substantial question on appeal. <u>See</u> <u>Handy</u>, 761 F.2d at 1283. Not only does defendant fail to address this independent issue, but also his cursory discussion of his alleged substantial questions, with virtually no analysis of the record,

---

[12] Nor does defendant's appeal of the Court's restitution order justify a stay of the order for the reasons discussed in Section VI below.

suggests a dilatory purpose for his appeal.  Defendant thus fails to meet his burden of demonstrating his appeal is not a delay tactic.

Defendant's failure on this point is telling, as he has every reason to delay serving his custodial sentence.  As he emphasized in his sentencing position, defendant believes the "combination of [his] age and health will make prison difficult for him."  (Dkt. No. 1436 at 29; see also id. at 29-31, 33-35 (detailing his concerns about imprisonment).)  It is reasonable for the Court to infer that defendant is attempting to avoid as long as possible the service of his sentence.  However, delay for these reasons is not appropriate. In enacting the Bail Reform Act, Congress made a clear policy choice that bail pending appeal should be confined to a limited few:

> Congress' desire to reverse what it perceived as a
> "presumption in favor of bail even after conviction" under
> prior bail law demonstrates its recognition that harm
> results not only when someone is imprisoned erroneously,
> but also when execution of sentence is delayed because of
> arguments that in the end prove to be without merit. Some
> showing is therefore necessary to assume [sic] that post-
> conviction bail is confined to those who are among the more
> promising candidates for ultimate exoneration.

United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986). Defendant has not made the required showing here, and his Motion should be denied for this reason as well.

## VI.  DEFENDANT'S REQUEST TO STAY THE COURT'S RESTITUTION ORDER SHOULD BE DENIED

The Court also should deny defendant's separate request to stay his restitution order pending appeal under Federal Rule of Criminal Procedure 38(e)(1).  (Mot. at 9-11.)  The question of whether to stay restitution is fact-specific and defendant "bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion."  Nken v. Holder, 556 U.S. 418, 433-34 (2009) ("A stay is

1  not a matter of right, even if irreparable injury might otherwise

2  result."). Defendant fails to meet his burden as to all relevant

3  factors: he does not (1) make a "strong showing" that he is likely to

4  succeed on the merits; (2) demonstrate he will be irreparably injured

5  absent a stay; (3) demonstrate that issuance of a stay will not

6  substantially injure the other parties interested in the proceeding;

7  or (4) show that the public interest lies in staying the order. See

8  id. at 434 (citing factors).

9      As to the merits, the parties briefed their arguments regarding

10  the applicability and amount of restitution. (See Dkt. No. 1429 at

11  21-27, 45-46 (Gov't arguments); id. at 37-38 (Def. arguments).) At

12  sentencing, the Court found that restitution applies to defendant

13  under United States v. Gaytan, 342 F.3d 1010 (9th Cir. 2003), and

14  that defendant's restitution obligation encompassed his 50 percent

15  share ($752,457) of the bribe money that Hazens paid Synergy for his

16  official acts as part of the Luxe Hotel bribery scheme. (Dkt. No.

17  1468 at 22-23.) Defendant contends he did not "receive" the money

18  that he was ordered to pay in restitution, simply repeating his

19  incorrect assertion that he "received" only $69,939.97 and ignoring

20  the evidence to the contrary, as detailed above. (See discussion

21  supra at 11-12.) While defendant correctly notes that restitution

22  should be based upon the actual amount of the bribes he received,

23  instead of the intended or promised amount (though he characterizes

24  it as "loss"), (Mot. at 9), he fails to recognize that is precisely

25  what the Court calculated here.[13] How defendant directed the use of

---

[13] The out-of-circuit cases defendant cites distinguishing actual
losses from ill-gotten gains (Mot. at 9) are inapposite because the
Ninth Circuit specifically rejected that argument in evaluating
*(footnote cont'd on next page)*

1  the bribe payments from Hazens to Synergy <u>after</u> receiving them--
2  whether investing them back into Synergy, directing them to his son
3  or others, or transferring them into his personal accounts--is
4  immaterial.  The Court's calculations and underlying factual findings
5  were correct, and defendant fails to establish the requisite "strong
6  showing" of likelihood of success on the merits, especially given the
7  deferential standard applied to such findings on appeal.  <u>See</u> <u>United</u>
8  <u>States v. Galan</u>, 804 F.3d 1287, 1289 (9th Cir. 2015) (restitution
9  amount reviewed for abuse of discretion; factual findings supporting
10 restitution order reviewed for clear error).

11      Nor is the restitution order likely to cause irreparable harm to
12 defendant absent a stay.  Defendant's sole argument on this point is
13 that he "will need to sell property that he otherwise would not have
14 to sell."  (Mot. at 10.)  But defendant owns three residences, two of
15 which are out-of-state investment properties whose value, in the
16 aggregate, is higher than his restitution obligation.  (Dkt. No. 1441
17 (Revised PSR) ¶ 160.)  Thus, to pay full restitution, defendant would
18 not be required to sell his own home.  Defendant's purported injury
19 is not "actual and imminent" as opposed to "remote or speculative,"
20 which does not constitute irreparable harm.  <u>Tom Doherty Assocs.,</u>
21 <u>Inc. v. Saban Ent., Inc.</u>, 60 F.3d 27, 37 (2d Cir. 1995).

22      Further, defendant would be entitled to reimbursement of any
23 prior payments if the Court's restitution order were reversed.  <u>See,</u>
24 <u>e.g.</u>, <u>Beardslee v. United States</u>, Nos. CR-94-0186-DLJ, C-01-0397-DLJ,
25 2008 WL 4334711, at *3 (N.D. Cal. Sept. 19, 2008) ("The fact that the
26

27 restitution for public officials like defendant.  <u>Gaytan</u>, 342 F.3d at
   1011 ("The Supreme Court long ago dismissed the argument that a
28 public official may keep his ill-gotten gains because there is no
   'loss' to the government.").

monetary penalties could be reversed on appeal is unpersuasive; if the judgment is reversed, [the defendant] can move that the government return her money."). The City of Los Angeles is a public entity, which minimizes risk of non-repayment of any reimbursement owed following an appeal. Cf. United States v. Coluccio, No. CR-87-077, 1993 WL 217133, at *1 (E.D.N.Y. June 15, 1993), aff'd, 9 F.3d 1536 (2d Cir. 1993) (no irreparable harm by having to sell property to satisfy a fine where defendant could "recover from the United States the value of any property sold to satisfy his debt" following a successful appeal); United States v. Gonzales, No. CR-17-1311-PHX-DGC, 2022 WL 3082530, at *2 (D. Ariz. Aug. 2, 2022) (denying stay of restitution where payments would be deposited into district court's registry to ensure availability if defendant prevailed on appeal).

The final two factors are related and also disfavor a stay. A stay of restitution risks injuring the City through the depletion of defendant's assets during the pendency of appeal, and thus the public interest also strongly counsels against a stay. The Crime Victims' Rights Act provides that victims of crime have the "right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6) (emphasis added). The potential depletion of assets available for defendant to satisfy his restitution obligation is of particular concern because he is retired and lives on a fixed income. (Revised PSR ¶ 160.) Despite bearing the burden, defendant does not even attempt to explain why staying the restitution order would not result in the depletion of his assets. The government's concern is only heightened by the fact that, as of the date of this filing, defendant appears not to have made his initial lump sum restitution payment of $185,000--despite being ordered by the Court to do so "immediately,"

1    (Dkt. No. 1447 (Judgment) at 2), and having the assets on hand (cash

2    and securities) to make the payment, (Revised PSR ¶ 160).[14]  These

3    factors therefore also weigh against a stay.

4         Finally, to the extent the Court agrees to stay the restitution

5    order, it also should order defendant to deposit $610,000 (consisting

6    of the lump sum of $185,000 due immediately and the additional

7    $425,000 partial payment within six months) into the district court's

8    registry pursuant to Federal Rule of Criminal Procedure 38(e)(2)(C).

9    Imposing such an order will ensure that defendant's assets are not

10   depleted pending appeal and consequently limit any potential

11   prejudice to the City while defendant pursues his appeal.  See, e.g.,

12   United States v. Lillard, No. CR15-270RSM, 2020 WL 2190656, at *2

13   (W.D. Wash. May 6, 2020) (requiring deposit of portion of restitution

14   obligation under Rule 38(e)(2)(C) pending defendant's appeal).

15        Thus, the Court should deny defendant's request to stay the

16   restitution order.  If the Court grants the stay, it should order

17   defendant to deposit $610,000 into the district court's registry.

18   **VII. CONCLUSION**

19        For the foregoing reasons, the government respectfully requests

20   that the Court deny defendant's Motion, specifically, denying

21   (1) defendant's request for bail pending appeal, and (2) defendant's

22   request to stay the Court's restitution order.

23

24

25

26

27

28        [14] Defendant also is required to make an additional partial
     payment of $425,000 within six months of sentencing.  (Judgment at 2.)