Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

Attorney for Raymond Chan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-00326-JFW |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF RENEWED MOTION FOR STAY OF RESTITUTION ORDER OR REVISED PAYMENT SCHEDULE; EXHIBIT LODGED FOR UNDER SEAL FILING** |
| RAYMOND SHE WAH CHAN, | |
| Defendant. | |

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................1

    1.    The Lump-Sum Payment Is Not Supported .......................................1

    2.    Mr. Chan's Appeal Raises Serious Legal Questions with Respect
        to Restitution. ....................................................................................5

    3.    Both the Public Interest and the Interests of Justice Favor
        Permitting Mr. Chan to Retain Appellate Counsel. ..........................9

CONCLUSION .....................................................................................................11

REPLY IN SUPPORT OF RENENWED MOTION FOR STAY OF RESTITUTION

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Arizona*, 82 F.4th 863 (9th Cir. 2023)................................................6

*Ciminelli v. United States*, 598 U.S. 306 (2023) ..............................................7

*Cottenham v. Jamrog*, 248 F. App'x 625 (6th Cir. 2007) ................................11

*Evitts v. Lucy*, 469 U.S. 387 (1985)............................................................10, 11

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ......................................5

*Luis v. United States*, 578 U.S. 5 (2016) .........................................................10

*McNally v. United States*, 483 U.S. 350 (1987) ...............................................6

*United States v. Adorno*, 950 F. Supp. 2d 426 (E.D.N.Y May 24, 2013)..................................................................................................................7

*United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011) .......................................7

*United States v. Berger*, 574 F.3d 1202 (9th Cir. 2009)................................3, 4

*United States v. Calbat*, 266 F.3d 358 (5th Cir. 2001) ....................................9

*United States v. Day*, 418 F.3d 746 (7th Cir. 2005) .........................................9

*United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017) ......................................8

*United States v. Gaytan*, 342 F.3d 1010 (9th Cir. 2013)..................................7

*United States v. Harvey*, 532 F.3d 326 (4th Cir. 2008) ....................................8

*United States v. Hayes,* 385 F.3d 1226 (9th Cir. 2004)..............................5, 12

*United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022) ................................7

*United States v. Lillard*, 57 F.4th 729 (9th Cir. 2023) ...................................11

*United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015).....................................6

*United States v. Mustafa*, 238 F.3d 485 (3d Cir. 2001)....................................9

*United States v. Myers*, 198 F.3d 160 (5th Cir. 1999)......................................9

*United States v. Skowron*, 839 F. Supp. 2d 740 (S.D. N.Y 2012)....................7

*United States v. Swenson*, 971 F.3d 977 (9th Cir. 2020)..................................6

*United States v. Tran*, 234 F.3d 798 (2d Cir. 2000) .........................................9

*United States v. Wells*, 879 F.3d 900 (9th Cir. 2018)......................................10

*United States v. Williams,* 974 F.3d 320 (3d Cir. 2020).....................................9

**Statutes**

18 U.S.C. § 1346..................................................................................................7

18 U.S.C. § 3006A......................................................................................................10

18 U.S.C. § 3572(d)....................................................................................................3

18 U.S.C. § 3663A.................................................................................................6, 7

18 U.S.C. § 3664(f)(2).............................................................................................2, 3

18 U.S.C. § 3664(k)....................................................................................................4

REPLY IN SUPPORT OF RENENWED MOTION FOR STAY OF RESTITUTION

# ARGUMENT

Raymond Chan, by counsel of record, Michael G. Freedman, files his reply in support of his renewed motion to stay the restitution order pending the outcome of his appeal or, in the alternative, for a revised payment schedule. Relief is appropriate in light of the presentence report's lack of clarity with respect to the ownership of assets on which the Court relied in setting the restitution schedule and in denying Mr. Chan's initial motion for a stay. The joint ownership (with his wife and with his son) was set forth in financial documents provided to the probation office (lodged as Exhibit C with this reply for under seal filing) and discussed during the presentence interview. However, the PSR itself did not clearly set forth these distinctions.

The core substantive issues before this Court are:

- whether the $610,000 lump-sum restitution payment requirement is appropriate, or whether it was instead based on a misapprehension of Mr. Chan's financial situation;

- whether there is a "serious legal question" that the restitution order was erroneous; and

- whether the Chan family should be permitted to use any of their untainted assets to assist Mr. Chan in retaining appellate counsel.

Addressing these questions in turn, Mr. Chan asserts that relief is warranted.

## 1.  The Lump-Sum Payment Is Not Supported

At sentencing, this Court adopted the Probation Office's recommendation and set a restitution schedule of (1) $185,000 immediately; (2) $425,000 within 6 months; and (3) not less than $8,000 monthly payments upon release from prison. (ECF 1414 at 1; 10/4/2024 RT 84). There was no discussion at the hearing of (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; or (C) any financial obligations of the defendant;

1

1    including obligations to dependents. 18 U.S.C. § 3664(f)(2).

2         In its order denying Mr. Chan's first motion to stay restitution, the Court

3    observed that Mr. Chan's net worth is over $1.4 million. (ECF 1476 at 6). But

4    Mr. Chan's net worth is over $1.4 million only if one counts all the cash,

5    securities, vehicles, and personal effects of both Mr. Chan and his wife (a 68-

6    year-old homemaker with no independent source of income), as well as all the

7    real property Mr. Chan owns jointly with his wife and his son. (PSR ¶ 160).

8    Although the financial documents Mr. Chan submitted to probation noted which

9    assets were jointly held, see Exhibit C filed under seal, the PSR's listing of assets

10   notes these distinctions only occasionally. (PSR ¶ 160). Its calculation of total

11   net worth makes no such distinctions. (*Id.*). As noted in Mr. Chan's renewed

12   motion (and undisputed by the government), Mr. Chan's portion of the real

13   property would, if liquidated, total approximately $389,980 to $412,920. (ECF

14   11 at 8 n.1). This, plus his approximately $185,000 in cash on hand, equals

15   $574,980 to $597,920. That is, if Mr. Chan was able to sell all the property he

16   jointly holds with his wife and son, including his personal home, and gave all his

17   cash and his share of all the proceeds to the Court, he still could not make the

18   $610,000 restitution that has been ordered.

19        The government does not dispute any of this. To repeat: The government

20   does not dispute that even if Mr. Chan persuaded his family members to sell both

21   their family home and all their income property, his share of the proceeds would

22   not be enough to pay the restitution as scheduled.

23        Instead, the government argues that—despite § 3664(f)(2)(A) and (C)'s

24   requirement that the court consider both whether the defendant's assets are

25   jointly controlled, and the defendant's financial obligations to dependents, in

26   setting a restitution schedule—the $610,000 lump-sum payment is nevertheless

27   appropriate because Mr. Chan's wife and his son (and his son's wife and

28   children) can all be required to liquidate their assets to pay Mr. Chan's

2

restitution. (ECF 15022 at 13–15).[1] For example, the government suggests that, to avoid selling the family home, the Chan family could sell **all** of its income property, with equity of approximately $580,000, to make restitution. (ECF 1502 at 13). Because those properties are jointly held, this would require both Mr. Chan's wife and his son to pay Mr. Chan's restitution and deprive themselves of future income. Or, the government suggests, the Chans could sell just one of their income properties and use Mrs. Chan's equity in the family home to purchase Mr. Chan's share of the other income property. (ECF 1502 at 15 n. 8). This would still require Mr. Chan's wife and his son to pay Mr. Chan's restitution, and it would additionally require Mrs. Chan to further encumber the family home. With no foreseeable increased income to make increased mortgage payments, this would dramatically increase the likelihood of foreclosure. None of the government's suggestions is consistent with 18 U.S.C. § 3664(f)(2). Given the PSR's lack of clarity with respect to Mr. Chan's finances, it is not at all clear that the Court contemplated these exertions when it set the restitution schedule.

Nor does the government explain how such exertions would be consistent with § 3664(f)(2). Rather, the government observes only that community property is not shielded from restitution. (ECF 1502 at 13–15). No doubt. But the fact that community property is not categorically shielded from restitution does not mean that a restitution schedule that requires the depletion of all or even most of a marital relationship's community property is consistent with § 3664(f)(2) or, indeed, the interests of justice, as required under 18 U.S.C. § 3572(d). *United States v. Berger*, 574 F.3d 1202 (9th Cir. 2009), which holds that community

---

[1] In its recommendation, the probation office did not purport to order the entire Chan family to pay Mr. Chan's restitution—its recommendation accounted only for Mr. Chan's "share of equity in jointly held real estate," which it estimated at $425,000. (PSR ¶ 169). The probation office did, however, appear to anticipate the sale of the Chan family home to permit Mr. Chan to receive his $425,000 share. (PSR ¶¶ 160, 169).

property is not categorically shielded as a matter of law, has nothing to do with what is appropriate under § 3664(f)(2). To the contrary, *Berger* involved the sale of a 290-unit apartment complex and the purely statutory question whether the $1.5 million in proceeds could be ordered deposited with the court for restitution even though the complex had been purchased with community property. *Id.* at 1203–04. *Berger* did not involve the practical and equitable questions presented by 18 U.S.C. §§ 3664(f)(2) and § 3742(d), such as whether a defendant's family should be ordered to sell or further encumber its family home to make restitution.

Moreover, the government's argument does not account at all for Mr. Chan's son's equity, which is not community property under State law or subject to seizure under Federal law. That is, even if the Court did desire Mrs. Chan to contribute her entire share of the income properties to restitution, Mr. and Mrs. Chan's shares would total around $270,000, far less than the $425,000 ordered.[2] Thus, the government's calculations require Mr. Chan's son also to contribute his share. But it cites no authority for the proposition that jointly held property that is *not* community property can be reached for restitution. The other option the government proposes is for the Chans to further encumber the family home. But, as noted, without any foreseeable increase in income, such an encumbrance would simply increase the chance of foreclosure.

Whether viewed as a "serious legal question" that the manner and schedule of payment is erroneous, a showing that Mr. Chan and his family will suffer irreparable harm if he is required to pay as scheduled, or a reason to revise the payment schedule under 18 U.S.C. § 3664(k), Mr. Chan's actual financial resources provide grounds for relief. Given the lack of clarity in the PSR, and the

---

[2] The equity in the two rental properties totals approximately $580,000. Accounting for transaction costs of 6% ($34,800), the net proceeds of the sale would be approximately $ 545,200, of which approximately $363,467 would constitute Mr. and Mrs. Chan's share. This is before accounting for 15% Federal and 13% State capital gains taxes totaling at least $100,000.

4

Court's adoption of the probation office's recommendation without discussion, it seems likely that this Court did not in fact intend to place the Chan family in the position that they find themselves as a result of the order.

Finally, the government's suggestion in its opposition to Mr. Chan's initial stay motion that Mr. Chan would not be irreparably harmed absent a stay because it would be able to recover restitution from the City of Los Angeles if he prevailed on appeal is not supported. (ECF 1473 at 32–33). Recovering funds at the end of an appeal does not repair the injury of losing one's family home. In addition, the City of Los Angeles is not a party to this action. Once the federal government distributes restitution to identifiable victims, a criminal defendant has no right to recover such funds from the federal government. *United States v. Hayes,* 385 F.3d 1226, 1230 (9th Cir. 2004). That Mr. Chan might have a civil suit he could file against the City for funds it should never have received is cold comfort. Therefore, regardless of what the Court decides, it should order that any restitution funds be deposited with the clerk of the court and not disbursed until the judgment is final.

## 2. Mr. Chan's Appeal Raises Serious Legal Questions with Respect to Restitution.

As noted in Mr. Chan's motion, in the context of a stay motion, a substantial case for relief on the merits requires the petitioner to show that he raises "serious legal questions." *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011). This does not require the petitioner to show that he more likely than not will win—that sort of "pre-adjudication adjudication" would defeat the purpose of the stay. *Id.* at 967. Although the government argues Mr. Chan does not raise any serious legal question, its own brief defeats this contention.

First, on the question whether the MVRA even applies, the government contends that honest services fraud is *either* an offense "against property" *or* an offense in which "an identifiable victim" suffered "pecuniary loss." (ECF 1502 at

REPLY IN SUPPORT OF RENENWED MOTION FOR STAY OF RESTITUTION

6–9 & n. 4). But, for the MVRA to apply, the government must show *both* that
the offense was "against property" *and* that an identifiable victim suffered
pecuniary loss. 18 U.S.C. § 3663A(c)(1)(A)(ii), (B). There are serious legal
questions whether the government can meet either requirement. Indeed, the
government offers *no* explanation for why, if the *Mandatory* Victim Restitution
Act applies, the government did not seek restitution as to Mr. Chiang. And,
although the government suggests that the "plain error" standard will apply on
appeal, it will not. Mr. Chan did raise the claim that no restitution was
appropriate under the MVRA. (ECF 1429 at 37–38; 10/4/2024 RT 10–11). "As
the Supreme Court has made clear, it is claims that are deemed waived or
forfeited, not arguments." *Brown v. Arizona*, 82 F.4th 863, 873 (9th Cir. 2023)
(en banc) (quoting *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th
Cir. 2004); *United States v. Lloyd*, 807 F.3d 1128, 1174 (9th Cir. 2015) (holding
that plain-error review is not triggered where appellant raises alternative
argument to support what has been his consistent claim from the beginning.). Mr.
Chan may raise any argument on appeal to support his consistent claim that no
restitution is appropriate. As a legal question, review will be de novo. *United
States v. Swenson*, 971 F.3d 977, 980–81 (9th Cir. 2020).

The government contends that honest services fraud is an "offense against
property" under § 3663A(c)(1)(A)(ii). But this is inconsistent with its own
position that the proper Sentencing Guideline was § 2C1.1, which applies to
frauds involving the deprivation of the intangible right to honest services, not a
Guideline under Chapter 2, Part B, which applies to economic offenses. (ECF
1429 at 6). Moreover, the Supreme Court has been quite clear as to what
constitutes property and what does not. For example, in *McNally v. United
States*, 483 U.S. 350, 358, 360 (1987), the Court held that the federal mail fraud
statute did not reach the intangible right of honest services because the statute
was limited in scope to the protection of property rights, and the intangible right

REPLY IN SUPPORT OF RENENWED MOTION FOR STAY OF RESTITUTION

1   of honest services is not property. It's true that Congress responded swiftly by
2   enacting 18 U.S.C. § 1346, which provides that "the term 'scheme or artifice to
3   defraud' includes a scheme or artifice to deprive another of the intangible right of
4   honest services," but this does not turn the intangible right to honest services into
5   property. To the contrary, if the intangible right to honest services were property,
6   *McNally* would have come out the opposite way, and there would have been no
7   need to enact § 1346 at all. More recently, in *Ciminelli v. United States*, 598 U.S.
8   306, 309 (2023), the Court likewise rejected the idea that "potentially valuable
9   economic information necessary to make discretionary economic decisions"
10  constituted property and thus held that the Second Circuit's "right-to-control"
11  theory of property fraud was invalid. The government's contention that honest
12  services fraud is an "offense against property" is unsupported and anachronistic.[3]
13         Nor can the government satisfy 18 U.S.C. § 3663A(c)(1)(B), the second
14  requirement for the MVRA to apply. As argued below, the government did not
15  show that the City of Los Angeles directly and proximately suffered any
16  pecuniary harm as a result of Mr. Chan's actions. (ECF 1429 at 38). The Court,
17  in ordering restitution, relied solely on *United States v. Gaytan*, 342 F.3d 1010,
18  1012 (9th Cir. 2013): "As the 9th Circuit has held in the *Gaytan* case at 342 F.3d
19  1010, when a public official of the City accepts bribe money, the City suffers a
20  loss in that amount." (10/4/2024 RT 22). But, at most, *Gaytan* holds that a
21  defendant may be ordered to disgorge any bribe money the bribe-taker still
22
23         [3]None of the cases the government cites holds otherwise. Whether honest
24  services fraud is an offense against property was neither raised nor decided in
    *United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011). "[C]ases are not
25  precedential for propositions not considered or for matters that are simply
    assumed." *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022). In
26  *United States v. Adorno*, 950 F. Supp. 2d 426, 428–31 (E.D.N.Y May 24, 2013),
27  the district court held that the MVRA did *not* apply to a defendant convicted of
    federal-program bribery. *United States v. Skowron*, 839 F. Supp. 2d 740, 752
28  (S.D.N.Y 2012), is a case involving a conspiracy to commit securities fraud.

7

1  retains. (ECF 1477 at 8). It does not provide—and indeed the government now

2  disclaims the argument—that the bribe-taker's gain can always be used as a

3  proxy for loss under the MVRA. (ECF 1502 at 16).

4      Second, even if the MVRA applied, Mr. Chan raises a serious legal

5  question with respect to the calculation of the amount. As noted above, this

6  Court's calculation was based entirely on *Gaytan*, which even the government

7  now acknowledges does not mean that a bribe-taker's gain can always be used as

8  a proxy for loss under the MVRA. (ECF 1502 at 6). The government's

9  acknowledgement is well-taken: Such an expansive reading of *Gaytan* would not

10  only constitute a sharp break from Ninth Circuit cases decided both before and

11  after *Gaytan*, which recognize that restitution may not be calculated based on the

12  defendant's gain (ECF 1477 at 6–7 (collecting cases)), but would also create a

13  circuit split with at least the Second and Fourth Circuits, *see United States v.*

14  *Finazzo*, 850 F.3d 94 (2d Cir. 2017); *United States v. Harvey*, 532 F.3d 326 (4th

15  Cir. 2008). The government purports to distinguish *Harvey* on the ground that

16  there the government failed to present sufficient evidence of actual loss, whereas

17  the court here found the opposite. (ECF 1502 at 9). But the actual loss the Court

18  found here was based only on its finding of Mr. Chan's gain (10/4/2024 RT at

19  22–23)—the precise analysis the Fourth Circuit rejected in *Harvey*, 532 F.3d at

20  340–41. As the government implicitly acknowledges, the Second Circuit has

21  likewise rejected this analysis.

22      Moreover, the new declaration prepared by Agent Civetti does not, as the

23  government argues, "corroborate" the government's contention that George

24  Chiang "held funds for" Mr. Chan. (ECF 1502 at 11). The calculation of

25  $752,457 in restitution was based on 50% of Hazen's payments to Synergy from

26  January 2015 to July 2018, on the theory that Mr. Chan directed George Chiang

27  to create Synergy as their 50/50 business. (ECF 1476 at 6). Throughout this case,

28  the government has proffered different explanations for how this 50/50 business

REPLY IN SUPPORT OF RENEWED MOTION FOR STAY OF RESTITUTION

would profit Mr. Chan: whether by secret payments, directions to reinvest in
Synergy, or a check that Mr. Chiang was to cut but did not on the advice of
counsel. Its newest theory appears to be that Mr. Chan was paid approximately
50% of Synergy's profits *after* he retired. (ECF 1502 at 12; 1502–1 at ¶¶ 5.b,
6.b). Whatever can be said about the government's newest theory, it does not
"corroborate" that George Chiang "held funds for" Mr. Chan.

And third, as described above, Mr. Chan also raises a serious legal
question whether a restitution payment schedule that would require either Mr.
Chan's son to pay his restitution, on the one hand, or Mr. Chan and his wife to
sell their family home, on the other, is an erroneous application of 18 U.S.C.
§ 3664(f)(2). *See, e.g., United States v. Williams,* 974 F.3d 320, 377 (3d Cir.
2020) (remanding for consideration of defendant's ability to pay in light of
§ 3664(f)(2) factors); *United States v. Day*, 418 F.3d 746, 761 (7th Cir. 2005)
(same); *United States v. Calbat*, 266 F.3d 358, 366 (5th Cir. 2001) (same);
*United States v. Mustafa*, 238 F.3d 485, 497 (3d Cir. 2001) (same); *United States
v. Tran*, 234 F.3d 798, 814 (2d Cir. 2000) (same); *United States v. Myers*, 198
F.3d 160, 169 (5th Cir. 1999) (same).

### 3.   Both the Public Interest and the Interests of Justice Favor Permitting Mr. Chan to Retain Appellate Counsel.

Finally, the government contends that the fact that Mr. Chan and his
family seek to use their untainted funds to retain counsel shows that the City of
Los Angeles will be injured by a stay of his restitution order. (ECF 1502 at 15–
16). As an initial matter, although the government is certainly within its rights to
protect its ability to collect restitution on behalf of the City of Los Angeles,
should such restitution ultimately be upheld on appeal, it must not interfere with
Mr. Chan's representation on that appeal. The Ninth Circuit has warned that the
government's "decision to insert itself into the important determination of [a
criminal defendant's] fair representation carries with it a reproachable air of

REPLY IN SUPPORT OF RENEWED MOTION FOR STAY OF RESTITUTION

1   stacking the deck, for which we cannot offer tacit acceptance." *United States v.*
2   *Wells*, 879 F.3d 900, 912 (9th Cir. 2018). Mr. Chan anticipates retaining new
3   counsel, attorney Davina T. Chen, for his appeal. Ms. Chen is an attorney with
4   over 25 years' experience in federal criminal defense, including over 15 years
5   handling federal criminal appeals. Especially to the extent that the government
6   suggests that the factual questions discussed in section 1, and the legal questions
7   discussed in section 2, above, as well as the other issues raised in Mr. Chan's
8   motion for bail pending appeal, were not fully litigated below, the government
9   may play no role in determining who will present those issues on appeal. When it
10  comes to questions touching on a criminal defendant's legal representation, "the
11  Government should tend to its own knitting." *Id.*

12      Ordering Mr. Chan to deplete nearly all his marital community's assets to
13  make an immediate payment of restitution would effectively prohibit Mr. Chan
14  and his family from spending their untainted funds to retain appellate counsel.
15  The right to effective assistance of counsel continues through a first direct
16  appeal, *Evitts v. Lucy*, 469 U.S. 387, 396–97 (1985), and if Mr. Chan is not able
17  to retain counsel, counsel will need to be appointed pursuant to the CJA, 18
18  U.S.C. § 3006A. In this respect, both the public interest with respect to a stay
19  order, and the interests of justice with respect to 18 U.S.C. § 3572(d)(1), favor
20  permitting Mr. Chan to retain counsel.

21      The government acknowledges, as it must, that a defendant has a Sixth
22  Amendment right to use his own untainted funds to pay for trial counsel of his
23  choice and thus that pretrial restraint of funds a defendant needs to pay trial
24  counsel violates the Constitution. *Luis v. United States*, 578 U.S. 5, 12 (2016).
25  But the government appears to contend, either that the right to effective
26  assistance of counsel does not continue on appeal, or that the right to counsel of
27  choice is irrelevant to a restitution schedule. Neither contention would be correct.
28  Criminal defendants have a constitutional right to effective assistance of counsel

on appeal, *Evitts*, 469 U.S. at 396–97, and this right includes a qualified right to appellate counsel of choice. *Cottenham v. Jamrog*, 248 F. App'x 625, 636 (6th Cir. 2007). As for restitution orders, the case the government cites, *Lillard*, addressed a *prior* restitution order from a *prior* conviction dating back 19 years. *United States v. Lillard*, 57 F.4th 729, 733 (9th Cir. 2023). As the Ninth Circuit explained, Mr. Lillard did not dispute the validity of either the restitution order or the judgment in that prior case. *Id.* Here, by contrast, Mr. Chan disputes both the judgment and the restitution order. And he requires counsel to present that dispute to the Court of Appeals.

In any event, Mr. Chan's contention is not that he has an absolute right to retain his counsel of choice, but that his family should be permitted to help him to retain an attorney. As noted, they have agreed to seek a mortgage on one of their income properties. In combination with his cash on hand, this would permit Mr. Chan to pay his attorney's fees, as well as over $70,000 in restitution and special assessment fees. Mr. Chan's qualified right to retain his counsel of choice is another factor for the Court to consider in determining whether restitution should be stayed or, in the alternative, the restitution schedule modified.

## CONCLUSION

For the foregoing reasons, and those set forth in Mr. Chan's renewed motion, this Court should stay his restitution order pending appeal. To address the government's concern with depletion of assets, Mr. and Mrs. Chan would agree to an order prohibiting them from either selling or further encumbering their family home without permission from the court, while the appeal is pending.

In the alternative, the Court should modify the payment schedule to an immediate lump-sum payment of $69,939.87 and monthly payments of $1,000.

In any event, the Court should order that any restitution paid be deposited into an interest-bearing account with the court and disbursed only when Mr.

11

Chan's conviction becomes final. *Hayes*, 385 F.3d at 1229–30. If the funds are disbursed to the City of Los Angeles, there will be no way for Mr. Chan to recover them even if he prevails on appeal.

Dated: December 27, 2024                              Respectfully submitted,

                                              By:    *s/ Michael G. Freedman*
                                                     Michael G. Freedman

                                                     Attorney for Raymond Chan