Davina T. Chen (State Bar No. 202272)
Law Office of Davina T. Chen
1751 Colorado Boulevard, No. 190
Los Angeles, California 90041
Telephone: (23)446-8791
Email: Davina@DavinaChen.com

Attorney for Defendant
Raymond Chan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND SHE WAH CHAN,<br><br>Defendant. | Case No. 20-CR-00326-JFW<br><br>**Notice of Motion; Motion for Order Re Disclosure of Financial Information in Presentence Investigation Report of George Chiang; Points and Authorities; Declaration of Counsel**<br><br>Date: April 27, 2026[1]<br>Time: 8:30 a.m. |

TO: FIRST ASSISTANT UNITED STATES ATTORNEY BILAL ESSAYLI AND ASSISTANT UNITED STATES ATTORNEY KEDAR BHATIA:

PLEASE TAKE NOTICE THAT on April 27, 2026, at 8:30 am, in the Courtroom of the Honorable John F. Walter, United States District Judge, defendant Raymond Chan, by attorney Davina T. Chen, will and hereby does move for an order permitting the disclosure of financial information of financial information in the Presentence Report of George Chiang.

---

[1] An Ex Parte Application to Shorten Time is being filed concurrently.

This application is based on the attached points and authorities, declaration of counsel, and exhibits, and any further information that may be provided to the Court at its request.

Dated: April 12, 2026                          Respectfully submitted,

                                               *s/ Davina T. Chen*
                                               Davina T. Chen

                                               Attorney for Raymond Chan

Motion for Order re Disclosure of PSR

## Memorandum Points and Authorities

Raymond Chan moves for an order permitting the disclosure of any financial information in cooperator George Chiang's presentence report. Specifically, Mr. Chan proposes that this Court review Mr. Chiang's presentence report to determine whether the statements about his financial resources therein support his testimony assertions at trial that he had held on to half of the Hazens money to distribute it later and, as of Mr. Chan's March 2024 trial, "most of those funds are sitting in the Synergy account minus expenses."

As set forth in the attached declaration of counsel, undersigned counsel has a good-faith belief that the presentence report is likely to contain information the government is required to disclose pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

"While a criminal defendant has no constitutional right to examine presentence reports, he is nevertheless entitled to disclosure of *Brady* material contained therein." *United States v. Alvarez*, 358 F.3d 1194, 1207 (9th Cir. 2004). "A defendant is entitled to material in a probation report that bears on the credibility of a significant witness in the case." *Id.* (cleaned up). When the government has possession of a presentence report, either actually or constructively, *Brady* obligations are triggered. *United States v. Cestoni*, 185 F. Supp. 3d 1184 (N.D. Cal. May 11, 2016). The court may either make an *in camera* inspection of the materials or rely on an examination by a probation officer. *Alvarez*, 358 F.3d at 1207.

The Ninth Circuit has held that "the prosecution's disclosure obligations do not end at trial, but instead continue until the conviction is final." *Payne v. Gipson*, No. 5:12-CV-01377-CAS-SP, 2025 WL 849613, at *9 (C.D. Cal. Feb. 28, 2025) (citing *Runningeagle v. Ryan*, 686 F/3d 758, 772 n. 6 (9th Cir. 2012);

Motion for Order re Disclosure of PSR

*Tennison v. San Francisco*, 570 F.3d 1978, 1093-94 (9th Cir. 2009)). Mr. Chan's convictions are on direct appeal and are thus not yet final. The government's *Brady* obligations continue.

As set forth in the attached declaration, counsel has a good-faith belief that the financial portions of Mr. Chiang's presentence report contain *Brady* material. A major theme at Mr. Chan's trial was that Mr. Chan had formed a 50/50 partnership with Mr. Chiang in 2014, and that he made a "calculated decision to hold off" on taking his 50 percent share of Hazens payments specifically to "avoid the feds" (TT 156[2])—which implied that the money was physically available and waiting for him. Mr. Chiang testified that Chan "held on to the defendant's half of the money" in the Synergy bank account and that Chan told him to "just distribute later" to avoid exposure. (TT 1918-1919). He testified that in December 2018, after the FBI search of Synergy's office, he went to the bank and "cut a cashier's check" for Chan. (TT 2033-35). On cross-examination, he claimed that "most of those funds are sitting in the Synergy account minus expenses." (TT 2076).

During FBI Special Agent Andrew Civetti's cross-examination, he testified that George Chiang transferred funds to "Synergy's savings account," labeled MMA5878. (TT2538). On redirect, to explain why Synergy's *checking* account often had low monthly balances, FBI Special Agent Andrew Civetti testified about a "savings account" or "Money Market Account (MMA)," where the funds were kept. (TT2539-2540). He described this as a "high interest savings account." (TT2540). Civetti testified that the low monthly ending balances in the checking account (previously highlighted by the defense) did not

---

[2] TT refers to the trial transcript, excerpts of which are attached.

4

Motion for Order re Disclosure of PSR

reflect the "entirety of the funds available" because those records were "not documenting the savings account balances." (*Id.*).

As noted in the attached declaration, my review of the discovery has not yet disclosed the existence of any Synergy savings or money market account.

In addition, in view of the fact that Mr. Chiang decided to cooperate by February 2019, just a few months after the search of Synergy's office, I would have expected that he either have agreed to forfeit the money that he and Agent Civetti testified were being held for Mr. Chan, or the government to have sought forfeiture. But my review of the docket sheet in Mr. Chiang's case does not reflect any forfeiture agreement or action. I did note that the government's sentencing position stated that Mr. Chiang agreed to pay his complete fine of $250,000 within six months of judgment. (ECF 53 at 38), but I also noted that the same position paper states that the PSR opined that Mr. Chiang had an immediate ability to pay only $25,000, and a second payment of $200,000 within 180 days (ECF 53 at 37-38). If Mr. Chiang were holding Mr. Chan's "share" of the Hazens payments, I would have expected him to be able to pay the complete fine immediately.

Based on the above, as established in the attached declaration, I have a good-faith belief that the financial information contained in Mr. Chiang's PSR will contain *Brady* material. Therefore, Mr. Chan moves for disclosure of those portions of the PSR. If I receive them, I will treat the material as confidential and, should I need to file any portions in the Ninth Circuit, I would move that Court for permission to file those portions under seal.

For the foregoing reasons, Mr. Chan respectfully requests that this Court conduct a review of Mr. Chiang's presentence report to determine whether the financial resources described therein are consistent with Mr. Chiang's sworn

5

testimony at trial and, if not, to disclose them to undersigned counsel as confidential material.

Dated: April 12, 2026                    Respectfully submitted,

                                         *s/ Davina T. Chen*
                                         Davina T. Chen

                                         Attorney for Raymond Chan

Motion for Order re Disclosure of PSR

## DECLARATION OF DAVINA T. CHEN

I, Davina T. Chen, declare as follows:

1.      I am an attorney licensed in the State of California and in good standing with all California courts and the United States District Court for the Central District of California. I represent defendant Raymond Chan on appeal, and I prepare this declaration in support of Mr. Chan's Motion for Order Rehe disclosure of the financial information in the Presentence Report of George Chiang.

2.      Attached to this declaration are the portions of the trial to which I cite by trial transcript page number (TT) in the Memorandum of Points and Authorities: Government's opening statement, Chiang testimony, Civetti testimony.

3.      On March 23, 2026, I spoke on the telephone with Assistant United States Attorney Kedar Bhatia. He agreed to make efforts to provide me with the Synergy Alliance materials I had requested and to let me know, by March 26, 2026, the government's position on disclosure of the financial portions of Mr. Chiang's PSR. I explained to Mr. Bhatia that, based on the materials I had reviewed, I was concerned that the government had solicited false testimony: from Mr. Chiang that he had left Mr. Chan's share of the Hazens payment in the bank, and from Agent Civetti that Synergy had a separate savings account that accounted for the low balances in the checking account. I explained that, if Mr. Chiang's PSR reflected the existence of funds in such an account, that might inform my analysis, but that if it did not, I would consider that material impeachment.

4.      On March 26, 2026, Mr. Bhatia responded by (1) asking me to send a 500 MB drive to permit the U.S. Attorney's Office to load the entire

Production 12 onto the drive to expedite my receipt of the materials, and (2) stating that the government opposed my request with respect to George Chiang's PSR.

5.    I sent a 500 MB drive to the U.S. Attorney's Office via Amazon.com, which was delivered to the USAO on March 27, 2026. As of the time I signed this declaration, I had not yet received the discovery requested,

6.    I am filing this motion for access to the financial portions of Mr. Chiang's PSR.

7.    On March 26, 2026, I advised George Chiang's attorney, Stanley Friedman, that I would be filing an application requesting this relief, and Mr. Friedman advised that Mr. Chiang opposes the relief sought.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 12th day of April, 2026, in Los Angeles, California

*/s/ Davina T. Chen*
Davina T. Chen

8

Motion for Order re Disclosure of PSR

1

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | |
| vs. | ) | CR 20-326A-JFW |
| | ) | |
| RAYMOND SHE WAH CHAN, | ) | |
| | ) | PAGES 1 TO 226 |
| DEFENDANT. | ) | |
| | ) | VOLUME 1 |

**REPORTER'S TRANSCRIPT OF**
**JURY TRIAL DAY 1**
**TUESDAY, MARCH 12, 2024**
**8:39 A.M.**
**LOS ANGELES, CALIFORNIA**

_____

**MIRANDA ALGORRI, CSR 12743, RPR, CRR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

he talked about a milestone payment that he was owed for his full body of work for Hazens.

(The audio commenced playing before the jury.)

MR. FAERSTEIN:  The defendant got himself bribes. But as a strategist, he was careful not to take his money while he was still employed by the City.  Instead, you will see he made the calculated decision to hold off for several months until after he left the City and until after he started working openly Synergy -- with Synergy.  And only then did he slowly start to take out his money.

But to add another layer of concealment, you will see that the defendant formed a separate corporate entity called LABXG to take in the funds from Synergy.  The evidence will show that the defendant purposefully did this to get his money while seeking to avoid the feds.

That brings us to act 3, paying bribes to other public officials.  After the defendant retired from the City in July 2017, he began openly working with George Chiang and his son Jeremy Chan as he had done secretly for years.  They continued with Synergy, but they also formed CCC Investment Group, the three Cs standing for Raymond Chan, Jeremy Chan, his son, and George Chiang.

As you will hear, the defendant's departure from the City did not change his involvement in the racketeering conspiracy.  As a private consultant to developers, the

1896

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,      )
                               )
          PLAINTIFF,           )      CASE NO.
                               )
          vs.                  )      CR 20-326A-JFW
                               )
RAYMOND SHE WAH CHAN,          )
                               )      PAGES 1896 TO 2138
          DEFENDANT.           )
                               )      VOLUME 7
_____)

REPORTER'S TRANSCRIPT OF
JURY TRIAL DAY 8
THURSDAY, MARCH 21, 2024
8:04 A.M.
LOS ANGELES, CALIFORNIA

_____

MIRANDA ALGORRI, CSR 12743, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

1918

had to put more people on payroll, but it was great, and the bonuses were great.

Q     And given the large influx of money that would be coming into Synergy at that time, did you and the defendant have a discussion regarding how you would distribute that large amount of money?

A     Yes.  Basically my job was simple.  Ray Chan would just tell me what I needed to do.  So there's -- he kept the calculation, and he basically tells me what to do.  I never really objected to anything that was --

Q     Now, the defendant was in the City at that point. Did he say, yes, go ahead and pay me my part of these $35,000 payments?

A     He would not risk the exposure while he was in the City.

Q     Is that what he said?  What did he tell you about what to do with that money?

A     He just told me, while he was still working at the City, he just told me we'll just distribute later.

Q     And did you then just keep that in the Synergy bank account?

A     Yes.

Q     So notwithstanding that you held on to the defendant's half of the money, did you believe that that money still belonged to him?

A       Of course.

Q       Now, did Jeremy consider these large payments that were coming in -- did he consider -- did Jeremy Chan consider those partly his as well?

A       Yes.

MS. PALMER:  Now if we can go to Exhibit 592U at 2.

Q       BY MS. PALMER:  And this is a text message chain between you and Jeremy Chan.

If we could -- sorry, Your Honor.  If we could zoom in on the first message there.

Does this relate to Jeremy Chan being in a car accident?

A       Yes.

Q       And he said, "I'm okay but the car is done."  Was his car totaled at that time?

A       Yes.

Q       And this is, again, just for timing.  This is January 2017; right?

A       Yes.

Q       So right around the same time that you guys are getting into this more lucrative contract; is that correct?

A       Yes.

MS. PALMER:  Now, if we could zoom out and go to page 5 and the bottom two messages.

2033

Q      And was the distribution planned around the time when the FBI came to your office?

A      I have already contacted Jason, Jason Pu.  And we were supposed to meet the following week from the search to actually assign the shares to Ray Chan -- assign the company shares to Ray Chan.

MS. PALMER:  If we can zoom in on the top portion there.

Q      BY MS. PALMER:  Just to be clear, this radar screen, is this something you guys used in your meetings in the open?  And the date on that is October 21st, 2018.

A      Yes.

Q      So this would be before the FBI came to Synergy; is that correct?

A      Yes.

Q      Looking at balance, does that reflect the money Synergy and CCC had in their accounts as of October 28, 2018?

A      Yes.  Ray keeps the balances on the radar screen.

Q      Then to go below that, it says, "*Dailo* and *seilo* to go to WF branch and add *dailo* on account."

Do you see that?

A      Yes.

Q      And was that what you were talking about that you guys had planned -- or one of the things you were doing was planning to actually add him to the account, formalize the

partnership, and split the funds?

A    Yes.  Assign the company shares, distribute whatever that was owed to Ray Chan and to give him access to the account.

MS. PALMER:  And if we can go ahead and take that down.

Q    BY MS. PALMER:  Did you ultimately pay the defendant his portion of the money to Synergy and CCC?

A    No.

Q    Did he continue to follow up with you repeatedly?

A    Yes.  He was calling me, asking me constantly and -- throughout that period in 2018.

Q    Did you actually cut a check to the defendant that you intended to give him?

A    Yes.  But I didn't tell Ray about it.  I didn't tell Ray Chan about it.

Q    Did you cut a cashier's check for the defendant?

A    I actually went to the bank and cut a cashier's check, and it was in December and I was intending on giving it to him.

Q    And without getting into any substance of what you discussed, did you later meet with an attorney after you had cut that check?

A    I hired my attorney and --

Q    Just yes or no.  Did you meet with an attorney

after cutting that check?

A       Yes.

Q       After meeting with that attorney, did you decide not to give that check to Raymond Chan?

A       Yes.

Q       Based upon this chain of events, did you ultimately decide to cooperate with the Government?

A       Yes, I did.

MS. PALMER:  Your Honor, one moment, please.

No further questions, Your Honor.

THE COURT:  All right.  Cross-examination.

MR. HANUSZ:  Thank you, Your Honor.  May I have a moment to get set up?

THE COURT:  Yes, you may.

MR. HANUSZ:  Thank you.

**CROSS-EXAMINATION**

BY MR. HANUSZ:

Q       Good afternoon, Mr. Chiang.

A       Hi.  How are you?

Q       I'm well.  How are you?

A       I'm good.

Q       My name is John Hanusz.  I'm one of Ray Chan's attorneys which you can probably have guessed at this point.

You and I have never met before, have we?

A       No.

Q        Would you call this a 50/50 split?

A        That's what the agreement was, yes.

Q        Does the financial -- does the money trail reflect a 50/50 split?

A        The actual checks that were written does not justify that.

Q        I'm not sure what you mean by the term justify.

A        Justify meaning the amount of checks written to Ray Chan does not justify the 50/50 partnership.

Q        It is --

A        If you are referring to -- if that's what your question was.

Q        I'm asking you if it's a 50/50 split.

A        The partnership is a 50/50 split.

Q        But the proceeds from the partnership are not. Is that your testimony?

A        Not the -- those are the checks that are -- in reality, there is a distribution, a share allocation that was going to take place. And we're going to split, as you were referring to, the 50/50, but that did not happen yet at that time.

Q        Right.  So you took the overwhelming majority of the funds that had come in from Hazens.

A        Most of those funds are sitting in the Synergy account minus expenses.

2413

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE


UNITED STATES OF AMERICA,          )
                                   )
          PLAINTIFF,               )     CASE NO.
                                   )
          vs.                      )     CR 20-326A-JFW
                                   )
RAYMOND SHE WAH CHAN,              )     VOLUME 10
                                   )     PAGES 2413 TO 2570
          DEFENDANT.               )
_____)


REPORTER'S TRANSCRIPT OF
JURY TRIAL DAY 10
MONDAY, MARCH 25, 2024
8:05 A.M.
LOS ANGELES, CALIFORNIA


_____

MIRANDA ALGORRI, CSR 12743, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

correct.

Q        That's those two LABXG checks?

A        Yes.  That is correct.

Q        In May these -- these are the electronic withdrawals.  It looks like there's an $80,000 online transfer.  Do you see that?

A        That is a transfer with the savings account I believe for Synergy.

Q        From online transfer to MMA5878?

A        Yes.  Synergy had both checking and savings.  There were times in which the money would transfer between savings and checkings.  So the 80,000 there is a transfer to Synergy's savings account.

Q        Then you have another Amex payment for George Chiang?

A        There is an Amex payment for Synergy.  It doesn't specifically say it's for George Chiang.

Q        Do you see the Chase Quickpay electronic transfer?  That one is to George Chiang; right?

A        Yes.  That is one of the transfers that makes up the $56,000 total that I discussed earlier.

Q        All right.  I'm going to move ahead to July now.

So in July, the ending balance is 26,000; right?

A        That's correct.

Q        Now, in August -- by August Mr. Chan is working

there; right?

A        Openly, that is correct.

Q        And the ending balance at that point is $6,800 and some change?

A        Yes.  6,800.

Q        And then in September it's $8,490.30.

A        That is correct.

MR. FREEDMAN:  Can I have just a moment, Your Honor?

THE COURT:  Yes, you may.

MR. FREEDMAN:  Thanks.  I don't have any further questions, Your Honor.  Thank you.

THE COURT:  All right.  Does the Government have any redirect?

MS. HAR:  Yes, Your Honor.

**REDIRECT EXAMINATION**

BY MS. HAR:

Q        Agent Civetti, I want to start with the financials that the defense counsel just asked you about.  Was that -- he just walked you through the 2017 Chase checking account for Synergy.

Do you recall that?

A        Yes.  That is correct.

Q        Did Synergy have another bank account?

A        Yes.  The savings account.

Q        Was that notated in those documents as MMA?

A        Yes.  It is my understanding that is a money market account, so it is a high interest savings account.

Q        So when the statements that defense counsel showed you showed the ending balance for each of those months, was that only with respect to the checking account?

A        That's only the checking account.  That's correct.

Q        Does that reflect the entirety of the funds available at the end of the month to Synergy?

A        No.  It is not documenting the savings account balances.

Q        Now, you were asked about your discussions with George Chiang today and yesterday.

Do you recall that?

A        Yes, I do.

Q        And you were asked about -- you stated on cross that you had not asked him about the K-1 S Corp related information on his tax form.

Do you recall that line of questioning?

A        Yes.  I specifically did not ask George Chiang about that.

Q        Why didn't you ask him about that?

A        Because through the course of the investigation I already had an understanding of the way in which S Corps are